# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Douglas H. Wigdor**
dwigdor@wigdorlaw.com

July 1, 2022

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

   Re: *Flores, et al. v. The National Football League, et al*.; No. 22 Civ. 00871 (VEC)

Dear Judge Caproni,

We, along with Elefterakis, Elefterakis & Panek, represent Plaintiffs and write pursuant to the Court's order dated May 2, 2022 to seek an order compelling Defendants to produce discovery related to the pending motion to compel arbitration (the "Motion").  Dkt. Nos. 43, 47-50.  Defendants' Motion is a critical moment in this litigation, as its outcome will determine whether this proceeding will either remain in an open public forum and be decided by a jury of Plaintiffs' peers, or be moved to a private setting with the arbitration forum, procedure and/or merits decided by a biased arbitrator.  Respectfully, for reasons described herein, Defendants' Motion cannot be decided without appropriate discovery.

## I. Standard on a Motion to Compel Arbitration

Courts regularly note that "[i]n a typical motion to compel arbitration, the Court would apply a standard similar to that of a summary judgment motion . . . and ***some discovery may be allowable or necessary***." Aleksanian v. Uber Techs. Inc., 524 F. Supp. 3d 251, 258 (S.D.N.Y. 2021) (emphasis added), recon. denied, No. 19 Civ. 10308 (ALC), 2021 WL 6137095 (S.D.N.Y. Dec. 29, 2021) (citing Lismore v. Societe Generale Energy Corp., No. 11 Civ. 6705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012)); see also Ryan v. JPMorgan Chase & Co., 924 F. Supp. 2d 559, 561 (S.D.N.Y. 2013) (in "motions to compel arbitration . . . the court applies a standard similar to that [of a] motion for summary judgment . . . [and consider if] pleadings, ***discovery materials before the Court***, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law") (emphasis added) (citations omitted).

Given the summary judgment standard, it hardly needs to be cited that such standard can only be applied "***after adequate time for discovery***."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis added).  Therefore, discovery must be permitted on a motion to compel arbitration when it is relevant to the adverse party's defenses.  See, e.g., L. Enf't Sys., Inc. v. Am. Express Co., No.

**WIGDOR LLP**

ATTORNEYS AND COUNSELORS AT LAW

Hon. Valerie E. Caproni
July 1, 2022
Page 2

03 Civ. 3371 (DLI)(KAM), 2006 WL 2034435, at *1 (E.D.N.Y. July 17, 2006) (affirming magistrate judge's order compelling motion-related discovery "[b]ecause the discovery at issue is relevant to plaintiffs' defenses against a motion to compel arbitration"); Hudson v. Babilonia, No. 3:14 Civ. 01646 (MPS), 2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015) (permitting discovery into matters relevant to motion to compel arbitration).

Defendants have moved to compel arbitration and have unilaterally attached to their Motion documents and affidavits—i.e. discovery—that they believe to be operative and that they desire for the Court to consider. However, Plaintiffs have not had any opportunity to conduct any discovery, much less "adequate discovery," in support of their opposition arguments, and thus are not in a position do to the same. It would be manifestly unfair for Plaintiffs to be limited with a documentary and discovery record created by Defendants in this Motion of utmost importance to their rights and the public's interest in this matter. Accordingly, Plaintiffs have requested narrow and appropriate discovery from Defendants. See Ex. A. As per the NFL's "standard operating procedures," Defendants have refused to engage in any discovery. See Ex. B. The parties met and conferred, and Defendants did not modify this position.

## II.      Discovery Regarding Arbitration Agreements, Policies and Procedures

Defendants argue that Plaintiffs each entered into arbitration agreements with the respective NFL teams named as parties. Defendants attached to the Motion various employment contracts as well as the NFL Constitution & Bylaws as evidence of such agreements. Defendants have asked the Court to consider these contracts and nothing else in determining whether Plaintiffs entered into arbitration agreements with the NFL teams and, if so, the terms of any such arbitration agreements.

Plaintiffs have requested that Defendants produce documents regarding Defendants' policies and procedures related to arbitration (see Ex. A at No. 1) and any agreements between Plaintiffs and Defendants that might bear on the issue of arbitration (i.e. any other contracts, employee handbooks and/or onboarding documents) (see id. at No. 2). The basis for these requests is simple—to the extent other documents exist which cover the topic of arbitration or dispute resolution, those could very likely impact the outcome of this Motion. For instance, but only as an example, if any Plaintiffs and Defendants entered into any other contract containing a merger/integration clause (i.e. stating that the agreement supersedes all other agreements) or containing any other dispute resolution terms, such documents would likely bear on the enforceability of the arbitration agreements at issue. As another example, if Defendants provided Plaintiffs with employee handbooks or similar materials describing dispute resolution terms that differ from the employment contracts, such documents also might undermine Defendants' argument as to how the parties agreed to resolve disputes.

Defendants have refused to provide the requested documents, stating that "the issue of arbitrability is one that can be decided based solely on the relevant contractual provisions" and the "discovery you seek is not only premature and wholly irrelevant, it is also unnecessary for Plaintiffs to oppose—or for the Court to resolve—Defendants' pending motion." See Ex. B. For the reasons

# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

set forth above, these documents clearly meet the broad relevance standard for discovery under Fed. R. Civ. P. 26(b)(1), particularly given the significance of the issues at stake in the Motion.

## III.    Discovery Regarding Arbitrator Bias

As explained to the Court, Plaintiffs intend to oppose Defendants' Motion, in part, on the basis that any purported arbitration agreement is unenforceable due to NFL Commissioner Roger Goodell's obvious bias and inability to be impartial.  See Ex. C at 6:22-8:6.  Despite Defendants' awareness of this argument, they neither denied such bias nor even addressed the issue in their moving papers, likely aware that doing so would open them up to discovery on that topic.  But Defendants' decision not to address Mr. Goodell's bias does not somehow convert it into a non-issue.

An arbitration agreement can be rendered unenforceable by virtue of its failure to provide for a fair, neutral and impartial forum free from bias.  See, e.g., Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 941 (4th Cir. 1999) ("By promulgating this system of warped rules, Hooters so skewed the process in its favor that Phillips has been denied arbitration in any meaningful sense of the word. To uphold the promulgation of this aberrational scheme under the heading of arbitration would undermine, not advance, the federal policy favoring alternative dispute resolution."); Floss v. Ryan's Family Steak Houses, 211 F. 3d 306, 314 (6th Cir. 2000) (refusing to compel arbitration, stating "the neutrality of the forum is far from clear in light of the uncertain relationship between [defendant] and [arbitral provider] . . . in light of [arbitral provider's] role in determining the pool of potential arbitrators, any such bias would render the arbitral forum fundamentally unfair"); McMullen v. Meijer, Inc., 355 F. 3d 485, 494 (6th Cir. 2004) (refusing to compel arbitration where there was "risk of bias inherent" in the arbitrator selection process such that it was "not an effective substitute for a judicial forum"); Walker v. Ryan's Family Steak Houses, 400 F.3d 370, 385 (6th Cir. 2005) (affirming invalidity of arbitration where the forum received substantial income from defendant and defendant was effectively choosing the entire panel; "a court cannot enforce the agreement as to a claim if the specific arbitral forum provided under the agreement does not allow for the effective vindication of that claim."); Cole v. Burns Int'l Sec. Servcs., 105 F. 3d 1465, 1482 (D.C. Cir. 1997) ("At a minimum, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections").

Plaintiffs seek discovery on the bias inherent in the NFL's arbitration program which requires that Mr. Goodell act as arbitrator and/or gatekeeper—a bias that prevents Plaintiffs from vindicating their statutory claims under federal and state anti-discrimination laws.  The risk of bias here is already supported by a factual predicate, as set forth at the initial conference.  Specifically, Mr. Goodell is not only a direct employee of the NFL, but also serves at the leisure of the NFL's teams.  Mr. Goodell governs the NFL and is responsible for, inter alia, its financial and reputational health.  Mr. Goodell cannot possibly be an impartial arbiter of any aspect of this proceeding, when a decision against the NFL and/or its teams would harm the league both financially and reputationally.  Moreover, the NFL and its teams reportedly paid Mr. Goodell approximately $127.8 million in compensation over the last two years.  See, e.g., Ex. D.  Mr. Goodell has also been and remains directly represented by the NFL's counsel in this matter, Paul,

**WIGDOR LLP**

ATTORNEYS AND COUNSELORS AT LAW

Hon. Valerie E. Caproni
July 1, 2022
Page 4

Weiss, Rifkind, Wharton & Garrison ("Paul Weiss").  Furthermore, the NFL publicly stated, after this action was filed, that Mr. Flores' claims "are without merit."  See Ex. E.  Thus, having already established a substantial predicate of bias, we should not be limited to merely publicly available material that has escaped the NFL's closed circuit of information.  Plaintiffs should be entitled to take legitimate discovery on this issue to properly present this important matter to the Court.

Accordingly, Plaintiffs have requested the following:

- Documents regarding Mr. Goodell's compensation, his dialogue regarding same, and the NFL teams' evaluation of his job.  See Ex. A at Nos. 3, 4 and 5.  These documents will demonstrate Mr. Goodell's extreme personal financial interest in maintaining his position and the level to which he is financially beholden to the NFL and its teams.  These documents will also demonstrate that he negotiates directly with the teams named as Defendants in this action and that he reports directly to those teams given that they assess his performance.

- Documents regarding Mr. Goodell's involvement as an arbitrator in any dispute involving an NFL team, including pleadings and documents related to Mr. Goodell's arbitral rulings, determinations and orders.  See Ex. A at No. 6.  These documents will show, *inter alia*, the number of times Mr. Goodell has arbitrated matters for the NFL teams, the fairness of the rulings, orders and determinations Mr. Goodell has made in such matters, and the number of times Mr. Goodell has actually issued an award against an NFL team.

- Documents regarding Mr. Goodell's relationships with NFL team executives and/or with defense counsel.  We proposed, as an alternative, for Mr. Goodell to provide a full disclosure describing any such relationships.  See Ex. A at Nos. 7 and 8.  These are commonplace and non-controversial disclosures for a fact finder to provide to avoid the appearance of bias or impropriety.  Defendants have refused to consider this request.  See, e.g., Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 137 (2d Cir. 2007) ("An arbitrator who knows of a material relationship with a party and fails to disclose it meets [the] 'evident partiality' standard: A reasonable person would have to conclude that an arbitrator who failed to disclose under such circumstances was partial to one side.").

- A deposition of Mr. Goodell, limited in scope to the matters at issue in the Motion.  See Ex. A at No. 11.  For the same reasons the documents requested above are relevant, Plaintiffs should be entitled to question Mr. Goodell regarding the above-referenced documents and matters to be able to present to the Court any and all evidence of arbitrator bias.

Plaintiffs are entitled to this arbitration-related discovery which directly bears on issues in the pending Motion.  See, e.g., Nat'l Hockey League Players' Ass'n v. Bettman, No. 93 Civ. 5769 (KMW), 1994 WL 38130, at *2 (S.D.N.Y. Feb. 4, 1994) ("requested discovery that is plainly relevant to colorable claims of arbitral bias or misconduct may properly be granted") (collecting cases); Metro. Delivery Corp. v. Teamsters Loc. Union 769, No. 19-22649 Civ., 2019 WL

**WIGDOR LLP**

ATTORNEYS AND COUNSELORS AT LAW

Hon. Valerie E. Caproni
July 1, 2022
Page 5

3752245, at \*2 (S.D. Fla. Aug. 8, 2019) ("If discovery reveals, for example, that the Arbitrator and Defendant had an extensive working relationship and/or business dealings then Plaintiff will have a far more compelling argument that the arbitration award is tainted with bias.")

### IV.    The NFL's Reliance on Arbitration Agreements to Which it is Not Even a Party

The NFL argues that even though it is a not a party to the contracts at issue, it should be able to avail itself of the arbitration agreements to compel arbitration.  The NFL claims that it has a "close relationship" with the NFL teams such that Plaintiffs somehow knowingly agreed that the terms extended to claims against the NFL.  See Dkt. No. 48 at p. 21-24.  Let us be very clear here: the NFL asks the Court to make a factual determination—on the basis of nothing other than the contracts—that, *as a matter of law*, Plaintiffs all intended to arbitrate claims with the NFL when they purportedly agreed to arbitrate claims against the respective NFL teams.

There is a wealth of recent case law in the Second Circuit on the precise issue of when a non-signatory can avail itself of an arbitration agreement.  See, e.g., Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115 (2d Cir. 2010); Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F. 3d 354 (2d Cir. 2008).  Courts will consider whether, *inter alia*, "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Ragone, 595 F.3d at 127 (citations omitted).  This does not mean, the Ragone Court explained,

> that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate . . . [I]n addition to the "intertwined" factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.

Ragone, 595 F.3d at 127 (citing Sokol 542 F.3d at 359).  The Second Circuit has held that any such determination must be "consistent with the basic principle that ***one does not give up one's right to court adjudication except by consent*** . . . [t]he cases, in other words, are consistent with the black letter rule that the obligation to arbitrate depends on consent." Sokol, 542 F. 3d at 361 (emphasis added).  To that end, it is very clear that such a determination can only be made following "***a careful review of the 'relationship among the parties***,'" and "***we have cautioned that this estoppel inquiry is fact-specific***." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177-78 (2d Cir. 2004) (emphasis added) (citations omitted).  A careful, cautioned, fact-specific inquiry cannot be accomplished by accepting arguments as fact—it requires discovery.

Plaintiffs have attempted to engage in this fact-specific inquiry by requesting an exchange of information from Defendants related to this argument.  See Ex. A at No. 10.  Defendants have refused, in contravention of the fact-specific inquiry required by the Second Circuit.



Hon. Valerie E. Caproni
July 1, 2022
Page 6

### V.    <u>Conclusion</u>

For the reasons set forth herein, Plaintiffs respectfully request an order compelling Defendants to produce the discovery described above and requested as set forth in Exhibit A.  Also as set forth in Exhibit A, Plaintiffs acknowledge that discovery requires cooperation between the parties and Plaintiffs are ready, willing and able to promptly meet and confer with Defendants to ensure the expeditious completion of the discovery requested herein.

Respectfully submitted,

Douglas H. Wigdor

cc:  All counsel of record (*via* ECF)

Encl.