# Exhibit C

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BRIAN FLORES, et al.,

              Plaintiffs

         v.                              22 Civ. 871 (VEC)
                                             Conference
THE NATIONAL FOOTBALL LEAGUE
et al.

              Defendants
------------------------------x
                                         New York, N.Y.
                                         May 2, 2022
                                         11:00 a.m.
Before:

                   HON. VALERIE E. CAPRONI

                                         District Judge

                         APPEARANCES

WIGDOR LLP
     Attorneys for Plaintiffs
DOUGLAS WIGDOR

DAVID GOTTLIEB
– and –
ELEFTERAKIS ELEFTERAKIS & PANEK
     Attorneys for Plaintiffs
JOHN ELEFTERAKIS
JOHNSON ATKINSON


PAUL WEISS RIFKIND WHARTON & GARRISON LLP
     Attorneys for Defendants
LORETTA LYNCH
BRAD KARP
BRETTE TANNENBAUM
MAIA USUI


ALSO PRESENT:  DOLORES DIBELLA
```

1            (In open court; case called)
2            DEPUTY CLERK:  Counsel, please state your appearance
3    for the record.
4            MR. WIGDOR:  Good morning, your Honor.  Douglas
5    Wigdor, Wigdor LLP.  And with me, I have my partner David
6    Gottlieb; John Elefterakis from Elefterakis Elefterakis and
7    Panek; and his colleague, Johnson Atkinson.
8            THE COURT:  Good morning, Mr. Wigdor, Mr. Gottlieb,
9    Mr. Elefterakis, and Mr. Atkinson.  Front table should sit
10   down.
11           MS. LYNCH:  Good morning, your Honor.  For the
12   defendants, Loretta Lynch from the firm of Paul Weiss Rifkind
13   Wharton & and Garrison, along with my partners, Mr. Brad Karp,
14   Ms. Brette Tannenbaum, my associate, Maia Usui.  We also have a
15   client representative, Ms. Delores Dibella, the VP of legal
16   affairs for the league.
17           THE COURT:  Good morning, Ms. Lynch, Mr. Karp,
18   Ms. Tannenbaum and Ms. Usui.  Back table may sit down.
19           The rules of the courtroom are you're allowed to
20   remove your masks when you're speaking.  I would ask that you
21   do that.  It makes it easier for me to understand and for the
22   court reporter to understand.
23           Just as full disclosure, as many of you may know,
24   Ms. Lynch and I were AUSAs together in the U.S. Attorney's
25   Office in Brooklyn many years ago, and we dine together on

1  occasion.

2  With that, let me ask, actually, the NFL, or
3  Ms. Lynch, can you just help me a little bit with what is the
4  legal relationship between the NFL and the teams?

5  MS. LYNCH:  Your Honor, the legal relationship is that
6  the league is a trade association and the teams are members of
7  that association.  While the league does set rules and
8  standards for its members to abide by, some of which will be an
9  issue in this case, the teams are separate legal entities.
10  They have separate management structures from the league
11  itself, and they also, for purposes of this case, most
12  relevant, have separate hiring and management decision
13  structures.

14  THE COURT:  Right.  But the NFL signs the contracts.

15  MS. LYNCH:  Ultimately, the contracts are established
16  between an individual in various positions and a team, and then
17  the NFL reviews them to ensure that they do comply with rules
18  in the constitution, but the terms of the agreement are struck
19  between an individual and the relevant team which will
20  ultimately employ them.

21  THE COURT:  I'm taking that for what it's worth, and I
22  recognize that these things are disputed.  I just couldn't
23  quite figure out how these things worked together.

24  Mr. Wigdor, do I read your letter correctly that you
25  have not yet filed a complaint with the EEOC?

1  MR. WIGDOR: That is correct, your Honor. We
2  anticipate doing that in the coming week or two, so we
3  obviously don't have our right to sue and have not asserted any
4  Title VII claims at this point.
5  THE COURT: Understood. It strikes me, kind of
6  notwithstanding the parties letters and requests for massive
7  amount so pages to do the motion to dismiss that the critical
8  path here, at least the first step of the critical path, is
9  whether your case has to go to arbitration.
10  So I guess my question is: Why isn't it more
11  efficient to start with that issue as stand-alone issue? If
12  you stay in federal court, then the defendants can make their
13  standard motion to dismiss. If you get sent off to
14  arbitration, then all of this is really irrelevant to me, and
15  it's really a matter for the arbitration.
16  Mr. Wigdor.
17  MR. WIGDOR: Your Honor, on behalf of the plaintiffs,
18  we don't disagree with that contention, your Honor. In fact,
19  we think that we should be able to have limited discovery on
20  the contemplated motion to compel arbitration.
21  THE COURT: Tell me about that.
22  MR. WIGDOR: As your Honor pointed out -- your Honor,
23  may I go to the lectern if that's okay?
24  THE COURT: If you're more comfortable, that's fine.
25  MR. WIGDOR: Thank you.

1         So, your Honor, the NFL and its member teams are
2  seeking to adjudicate this matter behind closed doors and in a
3  confidential arbitration proceeding.  And as your Honor knows,
4  arbitration is a creature of contract.  And you can't add terms
5  to an arbitration agreement that do not exist, and you cannot
6  enforce an arbitration agreement where it is unconscionable or
7  where the plaintiffs are unable to vindicate their statutory
8  rights.
9         And if we look at the applicable agreements here --
10 and I don't think your Honor has a copy of those.
11         THE COURT:  I don't think so.  If I do, I certainly
12 haven't looked at it.
13         MR. WIGDOR:  If it's okay with your Honor, I would
14 like to share with you the applicable arbitration agreements
15 and explain to you why ultimately any motion to compel
16 arbitration will be denied in this case; namely, because it is
17 unconscionable, and because it would effectively make the
18 plaintiff's ability to vindicate their statutory rights
19 impossible.  And, more importantly, the easy questions would be
20 that the NFL is not subject to the arbitration agreements, only
21 the club teams, and the arbitration agreements would not cover
22 Mr. Flores's failure-to-hire claims because at the point he was
23 interviewing for positions at the Giants and also with the
24 Broncos and for the Texans, he was not subject to any
25 arbitration clause.  He was not under any contract.

1           If it's okay with your Honor, I would like to just
2   walk you through the arbitration agreements and explain why
3   they are on their face unconscionable and why they would not
4   permit the plaintiffs to effectively pursue their statutory
5   rights.
6           THE COURT:  Here's the thing.  I am not going to
7   decide it orally here.  And, therefore, it strikes me as this
8   is sort of a classic issue where there are contracts and they
9   need to be looked at.  I understand your point, which is he
10  wasn't subject to any kind of a contract for purposes of his
11  failure-to-hire a claim, and that may ultimately mean that
12  those pieces of whatever of your claim don't get arbitrated.
13  But putting that to one side -- so I don't want to hear on the
14  merits.  What I do want to hear is that you seem to think that
15  there is discovery that's relevant -- that will be relevant to
16  a motion to compel arbitration.
17          MR. WIGDOR:  Yes.
18          THE COURT:  And typically motions to compel
19  arbitration are straightforward contract cases where other than
20  the contract that the defendant is relying on, there's no
21  discovery that's appropriate or ordered.
22          MR. WIGDOR:  Well, this is a unique circumstance.
23          THE COURT:  Every case thinks they're unique.
24          MR. WIGDOR:  You have an employment agreement, and you
25  have the NFL constitution and bylaws which are the applicable

1   documents here.  They call for none other than Commissioner
2   Goodell to be the arbitrator.  And Commissioner Goodell, and
3   the discovery that we would take that we already know, is an
4   employee of the teams.  He earned approximately $120 million
5   over the last two years, salaries paid for by the teams.  He
6   claimed, after we filed the lawsuit, that the claims were
7   without merit, and he is represented by Paul Weiss and has been
8   represented by Paul Weiss in the past.
9            That's what we just know now, but I believe we're
10  entitled to further discovery that would show this
11  unconscionable bias of the arbitrator who is the arbitrator
12  that would be overseeing this case, and in motions to compel
13  arbitration, they are typically looked at in sort of the same
14  context as a summary judgment motion where you have affidavits
15  and you have other evidence, especially on the issue of bias.
16           On the issue of bias or on the issue of effective
17  vindication of rights, both of those issues go beyond the
18  contract because they go to why the contract should not be
19  enforceable and a lot of those things require other materials.
20  Even the things I've listed, I would need to show your Honor
21  the documents to support that what I'm saying is actually true,
22  but I also believe there would be further evidence to show that
23  it would be unconscionable bias, and it would be impossible for
24  the plaintiffs to effectively vindicate their rights if the
25  Commissioner Goodell, given what I've shared just with your

1   Honor, were to oversee this arbitration process.

2   So, that is the reason why on that issue, putting
3   aside the other issues regarding single employer, putting aside
4   the tolling issues, I agree with your Honor we should tackle
5   this issue first, but I believe that we should be entitled to
6   some limited discovery before they move to compel arbitration.

7   Again, the NFL is not going to be subject to the
8   arbitration clause anyway, neither is the failure to hire a
9   claim, so some piece of this claim is going to be in this
10  court regardless of whether your Honor finds unconscionable
11  bias and/or the inability to effectively vindicate rights.

12  THE COURT: Okay. So your view is that the
13  arbitration doesn't cover everything; it only would cover the
14  claims against the teams?

15  MR. WIGDOR: It would only cover the claims that are
16  unrelated to the failure-to-hire claims. So it would only
17  cover the termination claims by Mr. Flores when he was
18  terminated by the Dolphins. It would include the
19  failure-to-promote claim arguably by Mr. Horton, and it would
20  include the termination claim of Mr. Wilks. Those would be the
21  only claims that I would see would be even arguably subject to
22  the arbitration clause because the other claims, which are the
23  failure-to-hire claims, Mr. Flores was not subject to any
24  arbitration agreement at that point in time.

25  THE COURT: Okay. Got it.

1          Ms. Lynch?  The real question -- the question on the
2  table, whoever is arguing, the question on the table is whether
3  I should take this in bite-size pieces and start with the
4  arbitration, recognizing that Mr. Wigdor is going to presumably
5  respond to your motion or to compel arbitration with a request
6  for discovery, which may or may not be granted.
7          MS. LYNCH:  Well, your Honor, I certainly think that
8  in terms of efficiency, you have outlined an incredibly
9  efficient way to begin because it is the defendant's position--
10         THE COURT:  I love efficient ways of proceeding.
11         MS. LYNCH:  That -- it is the defendant's position
12 that all of the matters that have been raised by plaintiffs,
13 and we can see, of course, that they are serious matters, all
14 of them are covered by the relevant arbitration agreements.
15 They're individual ones that each plaintiff has signed
16 specifically with their respective employers, the teams, and
17 those agreements specifically incorporate a portion of the NFL
18 Constitution, which also sets forth in greater detail
19 arbitration proceedings, and, in fact, allows for arbitration
20 of -- not as Mr. Wigdor views it in the limited and somewhat
21 truncated manner that only relate to the failure-to-hire and
22 the claims for Mr. Horton and Mr. Wilks, but in fact does
23 discuss the nature of claims that are here.  In fact, mentions
24 discrimination claims as possibly being subject to arbitration
25 as well, and those are different procedures.

1    THE COURT: How are you -- I'm sorry to interrupt, but
2    so Mr. Wigdor argues that it's not going to cover, but
3    presumably because there is no contract, failure-to-hire
4    claims. How does -- what's the defendant's theory on how
5    failure-to-hire is included within the arbitration agreement?
6    MS. LYNCH: Well, your Honor, we feel that it is, and
7    certainly that will be set forth in our motion. We do think
8    that the arbitration agreements essentially say that all claims
9    shall be dealt with, and the inclusion and the incorporation of
10   the constitution covers all relevant claims, and that that
11   certainly gives us the jurisdiction for arbitration over those
12   claims. Of course, that will be up to the Court to decide once
13   you see the papers.
14   But more to the point, your Honor, nothing in those
15   issues calls for premotion discovery. Nothing in the issues,
16   as elucidated by Mr. Wigdor or the questions as raised by the
17   Court, require additional discovery from the defendants on any
18   of the points that have been raised in order to decide these
19   issues. It is our position that the contracts themselves and
20   the arguments that will be made will be clear. They will be
21   provided to Mr. Wigdor. I believe he has some. We're happy to
22   provide others, if he does not have the ones -- if, you know,
23   he wants to provide us information as to what else he might
24   require, and we think that this is, as the Court has noted, a
25   contract issue. The issue is, is there a valid agreement to

1  arbitrate?  Does it in fact cover the types of claims that are
2  here?  And that will be decided from those literal papers.
3           THE COURT:  So here is what I'm prepared to do:  I'm
4  prepared to set a schedule on just the motion to compel.
5           Mr. Wigdor, after you see the defendant's motion to
6  compel arbitration, if you still are of the view that some
7  level of discovery is necessary in order to adequately respond
8  to that, meet and confer with the defendants.  If the parties
9  agree on some amount of limited discovery, that's great.  If
10 you can't agree, you can write a letter to me no more than five
11 single-spaced pages explaining to me why you need discovery and
12 why you need to adjourn your time to respond to the motion.  At
13 that point I will give the defendant time to respond to that,
14 and will decide that.
15          But otherwise here's your schedule, assuming the
16 plaintiff decides that in fact the motion to compel arbitration
17 is not a motion where you are either likely to either need or
18 get discovery.  So the defendant's motion to compel is due
19 June 21.  That is the date that you are otherwise going to file
20 the mega motion for those associates back at the camp that have
21 been working on everything else.  So sorry.  On the other hand,
22 they get their May and June reprieve.  That's limited to the
23 standard 25 pages for a motion.  You don't need 50 pages on
24 that.  The plaintiff's response will be due July 22; again,
25 standard 25 pages.  The defendant's reply is due August 5,

1  standard size.

2  I'm not going to enter a case management plan until
3  that has decided.  So no discovery will go forward at this
4  point.  There just doesn't seem to be any point until we know
5  where we're going to be litigating this case.

6  I realize that this is probably a non-starter, but I
7  always ask parties every time they're in front of me whether
8  they are interested in a referral for a settlement conference.
9  This sort of seems like the kind of dispute that might benefit
10 from the parties talking to each other about settling it.  I
11 recognize it's very early in the process, but nevertheless.

12 Any interest in a settlement conference, Mr. Wigdor?

13 MR. WIGDOR:  As we put in a letter to the Court, we've
14 always been interested in talking about a way of making the NFL
15 a place that actually represents Black players exactly as the
16 coaches, so if part of those discussions are part of monetary
17 and non-monetary resolutions, we would be more than happy to
18 meet with your Honor, a magistrate judge, or anybody else.

19 THE COURT:  Ms. Lynch.

20 MS. LYNCH:  Your Honor, you also expressed the league
21 is focused also on important on the important issues and has in
22 fact begun to take steps there.  We have invited Mr. Wigdor and
23 his clients to participate in those discussions with the league
24 on specific issues that could in fact, in our view, greatly
25 advance the causes that are important to both sides.  To date

1  they've declined to do so.  We respect that view on their part.
2  We hope that they will reconsider, but to date they've declined
3  to meet with us.  So at this point, we don't see that
4  settlement conferences would be useful.
5          MR. WIGDOR:  Can I just be clear on that, your Honor?
6  Which is that just the distinction that Ms. Lynch made might
7  not have been caught by your Honor, which is that we were
8  unwilling to meet without the assistance of a neutral, an
9  experienced magistrate judge or district court judge or a
10 mediator.  We felt that a neutral would be very important in
11 the process in discussing, so we're ready and prepared to do
12 that.  We're not prepared to meet with Commissioner Goodell who
13 might even be overseeing this arbitration and then have him
14 decide what he wants to do.
15         THE COURT:  Got it.  So NFL is not interested in
16 meeting with a neutral, I take it?
17         MS. LYNCH:  We feel that our arbitration process will
18 set up a neutral process, your Honor.
19         THE COURT:  I read that as a no.  Fine.
20         Again, I will be asking you the same question every
21 time I see you.  I will tell you again this strikes me as a
22 case that could benefit from settlement, but that's -- if
23 you're not ready for that at this point, you're not ready for
24 that at this point.
25         Anything further from the plaintiff?

1    MR. WIGDOR:  No, your Honor.  I just want to thank
2    your Honor for having us in court.  This is my first time back.
3    THE COURT:  Welcome back to court.  I bet this is the
4    first time most of you have been back in a courtroom.
5    MR. WIGDOR:  It's very nice to be here, and I
6    appreciate it.
7    THE COURT:  It's wonderful.  I love having you back.
8    The courtrooms are secure.  We've got really good ventilation.
9    Anything further from the defendants?
10   MS. LYNCH:  Nothing further, only to echo Mr. Wigdor's
11   thanks to the Court.
12   THE COURT:  Glad to see you all in courtrooms.  Come
13   back many times.
14   (Adjourned)