USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/04/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

BRIAN FLORES, STEVE WILKS, and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

                      Plaintiff,

-against-

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE, TITANS and JOHN DOE TEAMS 1 through 26,

                      Defendants.

22-CV-0871 (VEC)

OPINION AND ORDER

------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Three individuals who have been coaches in the National Football League ("NFL") have sued the NFL and several of its teams for discrimination in violation of 42 U.S.C. § 1981, the New York State Human Rights Law, the New York City Human Rights Law, and the New Jersey Law Against Discrimination. Am. Compl., Dkt. 22. Defendants moved to compel arbitration and to stay the current proceedings. Mot. to Compel Arbitration, Dkt. 47. Plaintiffs moved for discovery in advance of their anticipated response to the motion to compel arbitration, Mot. for Discovery, Dkt. 54, and Defendants opposed the motion, Defs. Resp., Dkt 55. For the reasons stated below, Plaintiffs' motion for discovery is DENIED.

## BACKGROUND

Plaintiffs Brian Flores, Steve Wilks, and Ray Horton are coaches in the NFL. Each of them have allegedly experienced "systemic racial discrimination" in the course of their employment relationship with the NFL. Am. Compl., Dkt. 22 ¶ 1. On February 1, 2022, Mr. Flores filed this putative class action alleging that the NFL discriminates against minority coaches, including by interviewing them for head coaching positions solely to fulfill the "Rooney Rule," an internal requirement to interview minority candidates for select leadership positions, without intending to hire them. *Id.* at ¶¶ 44–112, 118–19, 178–206. Mr. Flores further alleges that the NFL retaliated against him for bringing this lawsuit. *Id.* at ¶¶ 207–26. In an amended complaint filed on April 7, 2022, Plaintiffs Steve Wilks and Ray Horton brought additional claims of discrimination. Mr. Wilks alleges that he "was not given any meaningful chance to succeed" as a coach for the Arizona Cardinals and was "discriminatorily fired." *Id*. at ¶ 19. Mr. Horton alleges that, like Mr. Flores, he was only offered head coach interviews to comply with the Rooney Rule and was never actually considered as a candidate for head coach. *Id.* at ¶¶ 22–25, 267.

On June 21, 2022, Defendants moved to compel arbitration and to stay the current proceedings based on arbitration agreements contained in Plaintiffs' employment contracts and in the NFL's constitution, which was referenced in those contracts. Mot. to Compel Arb., Dkt. 47; Defs. Mem. of Law, Dkt. 48 at 6–9. On July 1, 2022, Plaintiffs moved for discovery on the motion to compel arbitration, seeking documents concerning the parties' agreement to arbitrate and applicable arbitration policies, the arbitrator's relationship with the NFL and his history of arbitration rulings, as well as the NFL's relationship with NFL teams. Mot. for Discovery, Dkt. 54. On July 8, 2022, Defendants opposed Plaintiffs' motion for discovery. Defs. Resp., Dkt. 55.

**LEGAL STANDARD**

Although the Court evaluates a motion to compel arbitration under a "standard similar to that of a summary judgment action," *Aleksanian v. Uber Techs. Inc.*, 524 F. Supp. 3d 251, 258 (S.D.N.Y. 2021), the standards for evaluating discovery requests in the context of a motion for summary judgment and a motion to compel arbitration are not similar. While the Court evaluates the motion to compel arbitration in the context of any "discovery materials before the Court," *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 562 (S.D.N.Y. Feb. 21, 2013), the Court does not compel the production of discovery materials as freely as it may when deciding a motion for summary judgment. In the face of a motion for summary judgment, the plaintiff is almost always entitled to discovery before summary judgment can be granted against it. *See Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."). In contrast, given the "strong federal policy favoring arbitration as an alternative means of dispute resolution," *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation omitted), courts do not grant discovery requests related to a motion to compel arbitration as a matter of course.

An agreement to arbitrate is binding on the parties unless the agreement is invalid under state contract law. *See Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 328 (S.D.N.Y. 2003). Thus, on a motion to compel arbitration, the Court's analysis is generally limited to determining whether there is a valid agreement to arbitrate, whether one party has failed to perform its duties under that agreement, and whether the agreement, properly interpreted, encompasses the dispute at hand. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing 9 U.S.C. §§ 2–4). This inquiry is not, however, as crabbed as Defendants suggest. *See* Def. Opp., Dkt. 55 at 1. Once the parties establish that they agreed to arbitrate, courts must

also determine whether there are any valid "grounds as exist at law or in equity for the revocation of any contract," including unconscionability, that affect the arbitration agreement. 9 U.S.C. § 2 (2020); *see also Ciago*, 295 F. Supp. 2d at 328 (noting the availability of unconscionability as a defense against a motion to compel arbitration).

Accordingly, in the Second Circuit, discovery on a motion to compel arbitration is appropriate "when the party opposing arbitration 'comes forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Morton v. Maplebear*, 2016 WL 616343, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting *Guidotti v. Legal Helpers Debt Resol.*, LLC, 716 F.3d 764, 774 (3d Cir. 2013)) (cleaned up); *see also AMC Ent. v. Entretenimineto GM de Mex. S.A. de C.V.*, 555 F. App'x 12, 14 (2d Cir. 2014).

## DISCUSSION

Plaintiffs have failed to carry their burden of offering "facts or evidence to place the validity of the [a]greement to arbitrate in issue" in their motion for discovery. *Morton*, 2016 WL 616343, at *5. Plaintiffs do not dispute that they agreed to be bound by the arbitration agreement contained in their employment agreements. Nor do Plaintiffs allege any grounds on which this Court may find their agreement to be invalid. Instead, Plaintiffs seek "agreements between Plaintiffs and Defendants that might bear on the issue or arbitration" in part to determine whether any subsequent contract invalidated their agreement to arbitrate. Mot. for Discovery, Dkt. 54 at 2. Because Plaintiffs should know whether they entered into any other contracts or agreements that would affect their agreement to arbitrate,[1] the Court can only assume that they are attempting to embark on an impermissible fishing expedition. *See Olsen v. Charter Comms.*,

---

[1] In their Opposition, Defendants note that they provided copies of several of these agreements to Plaintiffs in April 2022. Opp., Dkt. 55 at 2.

*Inc.*, 2019 WL 3779190, at *6–7 (S.D.N.Y. Aug. 9, 2019) (courts cannot delay ruling on a motion to arbitrate based on conclusory statements that one party's consent was deficient).

In support of their argument that discovery is necessary for the Court to evaluate Defendants' motion to compel arbitration, Plaintiffs cite a string of non-binding caselaw from beyond the Second Circuit. In those cases, the rules of arbitration were so obviously lopsided that discovery would not have been required to demonstrate that the arbitration agreement was unconscionable. *See Ciago*, 295 F. Supp. 2d at 329–30. The first in this line of cases is *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), in which Hooters "promulgat[ed] so many biased rules" — including rules enabling it to dictate the membership of the arbitral panel — that arbitration became "a sham system unworthy even of the name of arbitration." *Id.* at 940; *see also Beletsis v. Credit Suisse First Bos., Corp.,* 2002 WL 2031610, at *6 (S.D.N.Y. Sept. 4, 2002) ("an overabundance of invalid provisions can void an entire agreement" (citing *Hooters*, 173 F.3d at 940)). The Fourth Circuit itself, however, limited *Hooters* to the facts of that case, where one party bore the sole responsibility of setting the arbitration rules and so baldly manipulated the rules in its favor that it "completely failed in performing its contractual duty" to provide a fair arbitration forum. *Hooters*, 173 F.3d at 940.

The Sixth Circuit decisions that Plaintiffs cite similarly declined to grant an employer's motion to compel arbitration because the arbitration rules were so skewed that they were void. In both cases, which involved employee arbitration agreements with Ryan's Family Steak Houses, Inc., the Sixth Circuit invalidated an arbitration agreement in which the employer had complete control over the arbitration rules, to the point that it could unilaterally alter the arbitration rules and appoint its own employees to arbitrate the claim. *See Floss v. Ryan's Fam. Steak Houses*, 211 F.3d 306, 313 n.7, 315–16 (6th Cir. 2000); *Walker v. Ryan's Fam. Steak Houses*, 400 F.3d 370, 378, 386 (6th Cir. 2005) (citing *Floss*, 211 F.3d at 314). In *McMullen v.*

*Meijer*, 355 F.3d 485 (6th Cir. 2004), the Sixth Circuit similarly found that the parties' arbitration agreement did not allow an employee to effectively vindicate her claims. In that case, the arbitration agreement gave the employer "unilateral control over the pool of potential arbitrators;" the Court voided that portion of the agreement. *Id.* at 492 (citing *Floss*, 211 F.3d at 310; *Hooters*, 173 F.3d at 938); *see also id.* at 491 (holding that failure to provide an arbitral forum in which a claim may be effectively vindicated voids the agreement as a matter of contract law).

Without the type of clear substantive or procedural bias baked into the arbitration agreement that was present in the *Hooters* line of cases, courts "decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)). Moreover, the Federal Arbitration Act (FAA) already contemplates a route through which parties can seek judicial protection against arbitrator bias; courts can "overturn arbitration decisions 'where there was evident partiality or corruption in the arbitrators.'" *Id.* at 31 (quoting 9 U.S.C. § 10(b)); *see also id.* at 21 (noting that fair arbitration rules "protect against biased panels"); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997) (same). Plaintiffs may well be able to argue that the proposed arbitrator is so biased against them that the motion to compel arbitration should not be granted, but they do not need discovery to do so.

Plaintiffs also seek to compel the NFL to produce any "contract[s] . . . containing … dispute resolution terms," Mot. for Discovery, Dkt. 54 at 2, presumably so that they can determine whether the arbitration rules demonstrate the type of bias present in the *Hooters* line of cases; Plaintiffs should know whether they entered into any such agreements. Plaintiffs'

remaining discovery requests relating to arbitrator bias, including their request for documents regarding Mr. Goodell's history of arbitration decisions and his relationship with the NFL, do not bear on the issue of whether the arbitration agreement is contractually valid.

Plaintiffs do not cite a single case in which the court ordered discovery focused on the dealings and rulings of an individual arbitrator in the context of a motion to compel arbitration.[2] Instead, the cases upon which Plaintiffs rely concern challenges to arbitration decisions. *See, e.g.*, *Nat'l Hockey League Players' Assoc. v. Bettman*, 1994 WL 38130, at *3 (S.D.N.Y. Feb. 4, 1994) (affording plaintiffs the opportunity for discovery regarding arbitral bias on a motion for summary judgment after arbitration had concluded); *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 138 (2d Cir. 2007) (discussing impact of arbitrators' failure to disclose conflicts of interest on a motion to set aside an arbitration award); *Metro. Delivery Corp. v. Teamsters Loc. Union 769,* 2019 WL 3752245, at *1 (S.D. Fla. Aug. 8, 2019) (permitting discovery regarding bias in a motion to set aside an arbitration award)*.* The parties in those cases all sought relief under the FAA's failsafe provision that allows courts to set aside arbitration awards rendered by biased arbitrators; they do not support Plaintiffs' claim that they are entitled to discovery in order to establish that they can avoid arbitration altogether because they fear the arbitrator is biased.

Plaintiff's final ground for seeking discovery — the fact that the NFL was not a direct party to the arbitration agreement — does not go to whether Plaintiffs' "intend[ed] to be bound by the arbitration agreement." *Morton*, 2016 WL 616343, at *4.  While Plaintiffs correctly note that they must have actually consented to release their right to adjudicate claims against the NFL

---

[2]  The parties appeared to have exchanged discovery regarding the arbitrator's prior rulings at the trial court level in *McMullen v. Meijer, Inc.*, No. 2:99-cv-71206 (E.D. Mich. Oct. 26, 2004). *See id.* Dkt. 12 at 12-13. Notably, the Sixth Circuit did not rely on that evidence in either of its opinions in the case. *See McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004); *McMullen v. Meijer, Inc.*, 166 F. App'x 164 (6th Cir. 2006).

in court, Mot. for Discovery, Dkt. 54 at 5, they do not dispute that their agreement to arbitrate covered all disputes falling within the scope of their arbitration agreement, whether that may also include claims against the NFL.  Plaintiffs argue that discovery is necessary because the Court must consider the "relationship among the parties" as one factor in determining whether the NFL, a non-signatory to the arbitration agreements, can enforce those agreements.  Mot. for Discovery, Dkt. 54 at 5 (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir. 2010)).  In evaluating whether the NFL may compel arbitration pursuant to arbitration agreements to which it is not itself a party, the Court must determine whether the NFL teams were, "or would predictably become, with [Plaintiffs'] knowledge and consent, affiliated or associated with [the NFL] in such a manner as to make it unfair to allow [Plaintiffs] to avoid [their] commitment to arbitrate on the ground that [the NFL] was not the very entity with which [Plaintiffs] had a contract."  *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008) (collecting cases).  Given the high-level nature of this inquiry, courts generally decide this question based on the pleadings alone.  *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *9 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010).  Plaintiffs' requested discovery of "[a]ll documents regarding, supporting or undermining Defendants' contention that Plaintiffs agreed to arbitrate their claims with the NFL" is not required, nor would it be useful, for the Court to evaluate whether the NFL may appropriately compel Plaintiffs to arbitrate the present dispute.  Mot. for Discovery Ex. A., Dkt. 54-1 ¶3.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for discovery is DENIED.  Plaintiffs' response to the motion to compel arbitration must be filed no later than **Friday, August 19, 2022**.  Defendants' reply brief must be filed no later than **Friday, August 26, 2022**.

**SO ORDERED.**

|  |  |
|---|---|
| **Date:  August 4, 2022**<br>New York, New York | _____<br>**VALERIE CAPRONI**<br>United States District Judge |