UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>      Defendants. | Civil Action No.: 22-cv-00871 (VEC) |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO
<u>COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS</u>**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Page

A. The Arbitration Agreements Are Binding and Enforceable ................................................... 1

B. Plaintiffs' Derivative Claims Against the NFL Are Subject to Arbitration ......................... 7

C. Mr. Flores Must Arbitrate All of His Claims Against the Member Club Defendants ................................................................................................. 9

## TABLE OF AUTHORITIES

**CASES**

*Addit, LLC* v. *Hengesbach*, 341 So. 3d 362 (Fla. Dist. Ct. App. 2022) ........................................... 6

*Am. Fam. Life Assurance Co. of N.Y.* v. *Baker*, 848 F. App'x 11 (2d Cir. 2021) ............................ 7

*Basulto* v. *Hialeah Auto.*, 141 So. 3d 1145 (Fla. 2014) ................................................................. 3, 4

*Carboni* v. *Lake*, 562 F. Supp. 2d 585 (S.D.N.Y. 2008) .................................................................. 2

*Carey* v. *Kirk*, 2021 WL 3115879 (S.D. Fla. July 26, 2021) ........................................................... 4

*CPR (USA) Inc.* v. *Spray*, 187 F.3d 245 (2d Cir. 1999) ............................................................... 9, 10

*Doe* v. *Trump Corp.*, 6 F.4th 400 (2d Cir. 2021) ............................................................................ 8

*Dumitru* v. *Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328 (S.D.N.Y. 2010) ............................. 7

*Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ....................................................... 2

*Hanson* v. *Cable*, 2015 WL 1739487 (Cal. Ct. App. Apr. 15, 2015) .............................................. 4

*Henry* v. *New Orleans Louisiana Saints L.L.C.*, 2016 WL 2901775 (E.D. La. May 18, 2016) ...... 4

*Herrera* v. *Katz Comm'ns, Inc.*, 532 F. Supp. 2d 644 (S.D.N.Y. 2008) ......................................... 6

*Hojnowski* v. *Buffalo Bills, Inc.*, 995 F. Supp. 2d 232 (W.D.N.Y. 2014) ........................................ 4

*Hooters of America, Inc.* v. *Phillips*, 173 F.3d 933 (4th Cir. 1999) ............................................ 5, 6

*Koenig* v. *Ritz-Carlton Hotel Co.*, 2021 WL 5855608 (E.D. La. June 24, 2021) ............................ 9

*Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*,
    729 F.3d 99 (2d Cir. 2013) .......................................................................................................... 5

*Lang* v. *PTC, Inc.*, 2021 WL 5277190 (D.N.J. Nov. 12, 2021) ....................................................... 3

*Machado* v. *System4 LLC*, 28 N.E.3d 401 (Mass. 2015)..........................................................3, 6

*Maxwell* v. *Fid. Fin. Servs., Inc.*, 907 P.2d 51 (Ariz. 1995)..............................................................3

*Mitchell* v. *Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492 (Tenn. Ct. App. 2008).............3

*Montero* v. *Carnival Corp.*, 523 F. App'x 623 (11th Cir. 2013)......................................................9

*Neely* v. *Bechtel Corp.*, 2008 WL 2120085 (M.D. Ala. May 20, 2008)..........................................9

*NFL Mgmt. Council* v. *NFL Players Ass'n*, 820 F.3d 527 (2d Cir. 2016).................................4, 5

*NFL Players Ass'n* v. *NFL*, 874 F.3d 222 (5th Cir. 2017)................................................................5

*NFL Players Ass'n ex rel. Peterson* v. *NFL*, 831 F.3d 985 (8th Cir. 2016) ................................4, 5

*Osprey Health Care Ctr.* v. *Pascazi*, 329 So. 3d 177 (Fla. Dist. Ct. App. 2021) ...........................3

*Piantes* v. *Pepperidge Farm, Inc.*, 875 F. Supp. 929 (D. Mass. 1995)............................................4

*Ragone* v. *Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010) ...................................6, 8, 9

*Rizzio* v. *Surpass Senior Living LLC*, 459 P.3d 1201 (Ariz. Ct. App. 2020),
    *aff'd in relevant part*, 492 P.3d 1031 (Ariz. 2021) ..................................................................6

*Rosenbloom* v. *Mecom*, 478 So. 2d 1375 (La. Ct. App. 1985) ........................................................4

*Salzano* v. *Lace Ent. Inc.*, 2014 WL 3583195 (S.D.N.Y. July 18, 2014).........................................9

*Sphere Drake Ins. Ltd.* v. *All Am. Life Ins. Co.*, 307 F.3d 617 (7th Cir. 2002) ...............................4

*Stokes* v. *Allenbrooke Nursing & Rehabilitation Ctr. LLC*,
    2020 WL 5536704 (Tenn. Ct. App. Sept. 15, 2020).................................................................6

*Trigg* v. *Little Six Corp.*, 457 S.W.3d 906 (Tenn. Ct. App. 2014) ..................................................3

*United States* v. *City of New York*, 717 F.3d 72 (2d Cir. 2013)....................................................10

*Ward* v. *Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596 (S.D.N.Y. 2020)......................................7

*Williams* v. *NFL*, 582 F.3d 863 (8th Cir. 2009).........................................................................4, 5

**STATUTE**

9 U.S.C. § 10(a)(2)........................................................................................................................2, 3

**OTHER AUTHORITIES**

Ken Belson, *Dolphins Lose 2 Draft Picks; Owner Suspended for Tampering with
    Brady*, N.Y. Times (Aug. 2, 2022), https://tinyurl.com/belsondolphins ................................5

Plaintiffs' opposition brief confirms that all of Plaintiffs' claims belong in arbitration under the multiple arbitration agreements they entered during their long NFL careers. Plaintiffs effectively concede Defendants' central arguments that compel arbitration here: They do not contest that they entered into the relevant arbitration agreements. They do not contest that the plain language of those arbitration agreements covers all of their claims against the member club defendants. And they do not contest that their claims against the NFL are entirely derivative of their claims against the member club defendants.

Instead, Plaintiffs seek to avoid arbitration on three primary grounds. First, they speculate that NFL Commissioner Roger Goodell is biased against them, rendering the arbitration agreements unconscionable, even though Plaintiffs indisputably agreed on multiple occasions to multiple provisions expressly appointing the Commissioner as arbitrator, and even though the agreements permit the referral of the dispute to an alternative arbitral forum. Second, Plaintiffs argue that the NFL, as a non-signatory to the arbitration agreements, cannot compel arbitration of the claims against it, even though the NFL is entitled, under settled principles of equitable estoppel, to rely on those agreements. Third, Mr. Flores argues that none of his arbitration agreements applies to his post-employment claims against the Dolphins or his claims against the Broncos, Giants, and Texans, even though each of those claims involves rights that arise under his employment agreements or events that took place while those agreements were in effect, and even though the NFL Constitution separately requires arbitration of those claims. As set forth below, none of Plaintiffs' arguments has merit, and all of their claims should be compelled to arbitration.

### A.     The Arbitration Agreements Are Binding and Enforceable

Plaintiffs contend that the multiple arbitration agreements they entered into are unconscionable because they "dictate that Mr. Goodell will be the arbitrator." Opp. 14. As an initial matter, that is not what the agreements say. Each employment agreement provides—either

in the agreement itself or through incorporation of the NFL's Dispute Resolution Procedural Guidelines (the "Guidelines")—that disputes that are not wholly "football-oriented" may be referred to an alternative dispute resolution provider. Mot. 7–8. Plaintiffs' claims of bias are thus premature, and the Court need not, and should not, "speculate[]" about who will arbitrate this dispute or the arbitrator's bias. *See Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991); *Carboni* v. *Lake*, 562 F. Supp. 2d 585, 588 (S.D.N.Y. 2008). Any claim of actual bias should be addressed, if at all, only after an award is entered. *See* 9 U.S.C. § 10(a)(2).

Recognizing as much, Plaintiffs suggest that the Commissioner cannot delegate the dispute to an alternative provider because the only alternative permitted by the agreements is arbitration under JAMS's Comprehensive Rules, which include a default fee-sharing rule that supposedly conflicts with JAMS's Minimum Standards governing employment arbitrations. *See* Opp. 17–18. Plaintiffs thus proclaim that "JAMS is precluded from administering this case." Opp. 18.

That is demonstrably not true. Mr. Wilks's agreement with the Cardinals requires arbitration before JAMS under JAMS's Employment Arbitration Rules and Procedures, which do not implicate the fee-sharing issue that Plaintiffs identify. *See* Wilks-Cardinals Agreement ¶ 10c–d; Opp. 18 n.13. And the Guidelines authorize the referral of non-football-oriented disputes to any "alternative dispute resolution provider agreed to by the parties"; JAMS is identified as an option only if the parties fail to reach agreement. Flores-Dolphins Agreement, Ex. A, ¶¶ 1.7–1.8. In addition, JAMS's Minimum Standards do not apply where the arbitration agreement was individually negotiated or the employee was represented by counsel during the hiring process. Pls. Ex. M at 3; Opp. 18 n.14. Plaintiffs make no showing to the contrary. Finally, the Comprehensive Rules allow the parties to agree on a different allocation of fees than the default rule. *See* Pls. Ex. K, § 31(a). Not surprisingly, at least one court has squarely rejected Plaintiffs' very argument.

*See Lang* v. *PTC, Inc.*, 2021 WL 5277190, at *4–5 (D.N.J. Nov. 12, 2021).  So, too, here.[1]

Further, it would not be unconscionable for Commissioner Goodell to arbitrate the merits of this dispute.  Under the law governing Mr. Flores's agreements (as opposed to New York law, on which Plaintiffs erroneously rely[2]), Mr. Flores must show both procedural and substantive unconscionability to invalidate a contract.  *See Basulto* v. *Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014); *Machado* v. *System4 LLC*, 28 N.E.3d 401, 414 (Mass. 2015).  Under Tennessee law, which governs the Horton-Titans Agreement, courts consider both forms of unconscionability together, weighing "the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract."  *Trigg* v. *Little Six Corp.*, 457 S.W.3d 906, 912 (Tenn. Ct. App. 2014).  And under Arizona law, which governs the Wilks-Cardinals Agreement, substantive unconscionability alone can suffice.  *See Maxwell* v. *Fid. Fin. Servs., Inc.*, 907 P.2d 51, 59 (Ariz. 1995).  Regardless, neither form of unconscionability is present here.

Plaintiffs—who are experienced, sophisticated, and well-compensated NFL coaches—do not (and cannot) show the requisite "absence of meaningful choice" to support procedural unconsionability.  *E.g.*, *Osprey Health Care Ctr., LLC* v. *Pascazi*, 329 So. 3d 177, 182 (Fla. Dist. Ct. App. 2021); *Mitchell* v. *Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 499 (Tenn. Ct.

---

[1] Plaintiffs suggest that it would be unconscionable for Commissioner Goodell to make the threshold determination as to whether this dispute is football-oriented. Opp. 8 n.5.  Plaintiffs fail to develop that argument, much less explain why the risk of "bias" in that determination cannot be adequately remedied by judicial review of any ultimate arbitral award.  9 U.S.C. § 10(a)(2).

[2] Flores-Dolphins Agreement ¶ 19 ("[T]his Agreement shall be governed by, and construed and enforced in accordance with applicable NFL Rules and the decisions of the Office of the Commissioner of the NFL.  To the extent such rules do not apply, this Agreement shall be governed by the laws of the State of Florida without regard to the conflicts of law principles of such State."); Flores-Patriots Agreement ¶ 21 ("This Agreement has been made and construed under the laws of the Commonwealth of Massachusetts."); Wilks-Cardinals Agreement ¶ 23 ("This Agreement will be construed in accord with and any dispute or controversy arising from any breach or asserted breach of this Agreement will be governed by the laws of the State of Arizona."); Horton-Titans Agreement ¶ 11(d) ("This Agreement shall be governed by and interpreted pursuant to Applicable Law of Tennessee without resort or regard to choice of law rules.").

3

App. 2008). Nor do they seriously argue that unfair surprise is present. *E.g.*, *Basulto*, 141 So. 3d at 1157. Plaintiffs instead contend that the NFL "Constitution was not attached to the[ir] contracts nor were instructions on where to access the document provided." Opp. 9. That assertion is belied by each Plaintiff's attestation in his employment agreements that he had read and understood the NFL Constitution. Mot. 9. That Plaintiffs entered into multiple employment agreements containing the same basic arbitration provisions further rebuts any suggestion of unfair surprise. *See Piantes* v. *Pepperidge Farm, Inc.*, 875 F. Supp. 929, 936 (D. Mass. 1995); *Carey* v. *Kirk*, 2021 WL 3115879, at *6 (July 26, 2021) (adopted magistrate ruling). Indeed, Plaintiffs effectively concede that they cannot show procedural unconscionability when they argue that this is the "exceptional case[]" where substantive unconscionability alone can suffice. Opp. 8 n.6.

Plaintiffs' substantive unconscionability arguments likewise fail. Plaintiffs argue it would be substantively unconscionable for Commissioner Goodell to serve as the arbitrator because he is "biased in favor of the NFL." Opp. 6. But as the Second Circuit has explained, "arbitration is a matter of contract," and "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen." *NFL Mgmt. Council* v. *NFL Players Ass'n,* 820 F.3d 527, 548 (2d Cir. 2016); *see Sphere Drake Ins. Ltd.* v. *All Am. Life Ins. Co.*, 307 F.3d 617, 620 (7th Cir. 2002). Numerous courts have recognized the authority of the Commissioner and his designee to arbitrate disputes under arbitration agreements similar to those here.[3] Plaintiffs expressly assented to arbitration before the Commissioner; they cannot now avoid that bargained-for exchange.

As for bias, while the Commissioner may be a "direct employee" of the NFL, Opp. 6,

---

[3] *See NFL Mgmt. Council*, 820 F.3d at 548; *NFL Players Ass'n ex rel. Peterson* v. *NFL*, 831 F.3d 985, 989 (8th Cir. 2016); *Williams* v. *NFL*, 582 F.3d 863, 885–86 (8th Cir. 2009); *Henry* v. *New Orleans Louisiana Saints L.L.C.*, 2016 WL 2901775, at *5, *11 (E.D. La. May 18, 2016); *Hojnowski* v. *Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 239–40 (W.D.N.Y. 2014); *Hanson* v. *Cable*, 2015 WL 1739487, at *5–7 (Cal. Ct. App. Apr. 15, 2015); *Rosenbloom* v. *Mecom*, 478 So. 2d 1375, 1378 (La. Ct. App. 1985).

Plaintiffs are flatly wrong that he either cannot or will not treat them fairly, and they have not remotely made the required showing. The NFL has an overriding interest in combating racism, as it has repeatedly affirmed through its statements and actions. *See* Mot. 4–5; Pls. Ex. B. If the Commissioner showed bias against Plaintiffs, it would undermine not only that interest but also the League's interest in upholding its system of internal dispute resolution. Further, the Commissioner and his designees have a long history of rendering decisions at odds with the interests of the NFL's member clubs, thus rebutting Plaintiffs' accusations of bias.[4] In fact, here, the Commissioner recently imposed serious sanctions on one defendant club and its owner. *See* Ken Belson, *Dolphins Lose 2 Draft Picks; Owner Suspended for Tampering With Brady*, N.Y. Times (Aug. 2, 2022), https://tinyurl.com/belsondolphins. Fundamentally, Plaintiffs' arguments relate at most to a speculative "appearance of bias," which is insufficient to disqualify an arbitrator. *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).

Plaintiffs' remaining arguments are no more persuasive. While the NFL did state in a press release that it would "defend against [Plaintiffs'] claims, which are without merit," Pls. Ex. B, that statement represents the NFL's position as a league. Any inference that the Commissioner himself has prejudged this lawsuit is unsupportable. So, too, is Plaintiffs' bald assertion that the Commissioner "will be a witness in this matter." Opp. 8. Plaintiffs fail to explain what information they need to seek directly from the Commissioner, underscoring that their argument is designed only to avoid arbitration, and not based on any genuine discovery needs.

Plaintiffs' cited cases are entirely inapposite. The arbitration agreement in *Hooters of*

---

[4] *See, e.g.*, *NFL Players Ass'n* v. *NFL*, 874 F.3d 222, 224 (5th Cir. 2017) (Commissioner's decision to suspend Dallas Cowboys running back Ezekiel Elliott); *NFL Mgmt. Council*, 820 F.3d at 531–32 (Commissioner's arbitral award upholding suspension of New England Patriots quarterback Tom Brady); *Peterson*, 831 F.3d at 989–90 (Commissioner's decision to suspend Minnesota Vikings running back Adrian Petersen affirmed by Commissioner's designated arbitrator); *Williams*, 582 F.3d at 871 (Commissioner-designated arbitrator's decision to uphold suspensions of five New Orleans Saints and Vikings players).

*America, Inc.* v. *Phillips*, 173 F.3d 933, 940 (4th Cir. 1999), was unconscionable because the employer had imposed "so many biased rules" that arbitration became "a sham." Dkt. 58 at 5. Meanwhile, Plaintiffs' Sixth Circuit cases, Opp. 12–14 & nn. 9–12, involved "clear substantive or procedural bias baked into the arbitration agreement," Dkt. 58 at 6, because there the employers had unfair and uneven control over the arbitrator selection process. Here, in contrast, all parties agreed to the identity of the arbitrator at the outset, during arms-length contract negotiations.

As another ground for invalidating their arbitration agreements, Plaintiffs argue that the agreements preclude the "effective vindication" of their statutory rights under the federal anti-discrimination laws. Opp. 15–17; *see* Mot. 11–12 (compiling cases compelling arbitration of statutory discrimination claims). But that argument rises and falls with the unconscionability argument, because both depend on the same assertions of arbitrator bias. As shown above, Plaintiffs' arguments about bias are unavailing.

Finally, even if (contrary to fact) the arbitration agreements were unconscionable in some respect or interfered with the vindication of federal statutory rights, "the appropriate remedy . . . is to sever the improper provision of the arbitration agreement, rather than void the entire agreement." *Ragone* v. *Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124–25 (2d Cir. 2010) (citation omitted).[5] "Any other approach would serve to thwart the very essence of the arbitral agreement the parties have reached." *Herrera* v. *Katz Commc'ns, Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008).

Indeed, most of the employment agreements contain severability clauses that unambiguously express the parties' intent to preserve their agreements to arbitrate. For example, Mr. Flores specifically agreed with the Dolphins that any "unenforceable portion or aspect of

---

[5] *Accord Rizzio* v. *Surpass Senior Living LLC*, 459 P.3d 1201, 1207 (Ariz. Ct. App. 2020), *aff'd in relevant part*, 492 P.3d 1031 (Ariz. 2021); *Addit, LLC* v. *Hengesbach*, 341 So. 3d 362, 370–71 (Fla. Dist. Ct. App. 2022); *Machado*, 28 N.E.3d at 415–16; *Stokes* v. *Allenbrooke Nursing & Rehabilitation Ctr. LLC*, 2020 WL 5536704, at *5–6 (Tenn. Ct. App. Sept. 15, 2020).

th[eir] Agreement will be severed and the remainder of the provision, *including the agreement to submit to binding arbitration*, will remain valid and in effect." Flores-Dolphins Agreement ¶ 12.4 (emphasis added); *see also, e.g.*, Wilks-Cardinals Agreement ¶ 10f. The agreements also expressly contemplate alternative mechanisms for the arbitration of non-football-oriented disputes; thus, even if the provisions designating the Commissioner as arbitrator were to be severed, the remainder of the agreements to arbitrate could still easily be enforced. *Cf. Dumitru* v. *Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 346 (S.D.N.Y. 2010) (severing unconscionable venue provision where arbitration agreement contemplated alternative venue). Severance, not invalidation, is thus the appropriate remedy if the Court concludes that any provision of Plaintiffs' arbitration agreements is unconscionable. *See Am. Fam. Life Assurance Co. of N.Y.* v. *Baker*, 848 F. App'x 11, 13 (2d Cir. 2021); *Ward* v. *Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 606–07 (S.D.N.Y. 2020).

### B. Plaintiffs' Derivative Claims Against the NFL Are Subject to Arbitration

Plaintiffs' argument that their claims against the NFL are not subject to arbitration—because the League is not a signatory to their arbitration agreements—also fails. As Defendants have explained, the NFL is entitled to rely on those agreements because it has a "close relationship" with the member clubs, and Plaintiffs' claims against the NFL are derivative of, and thus intertwined with, their claims against those clubs. Mot. 21–24. The NFL Constitution's arbitration provisions also expressly cover claims involving two or more member clubs and claims between any coach and any member club. Mot. 24. Plaintiffs do not dispute that their claims against the NFL are intertwined with those against the clubs. Their arguments to the contrary lack merit.

Plaintiffs first contend that they "could not have believed that the NFL was effectively a party to [those] agreements." Opp. 21. That is not remotely credible. The NFL was required to approve Plaintiffs' contracts—indeed, the Commissioner is a signatory to them—and the Commissioner was designated by those contracts to resolve disputes between coaches and clubs.

7

*See* Mot. 22, 24.  Indeed, Plaintiffs themselves allege that they "reasonably believed that the NFL was their employer," Am. Compl. ¶ 356, underscoring that they could have foreseen being required to arbitrate their claims against the NFL.  Plaintiffs also mischaracterize the law.  Plaintiffs assert that their "knowledge of, and consent[] to," the arbitration of claims against a non-signatory is dispositive, and misleadingly quote from *Doe* v. *Trump Corp.*, 6 F.4th 400 (2d Cir. 2021), in support.  Opp. 21.  But *Doe* holds only that "there must be a *close relationship* among the signatories and non-signatories *such that it can reasonably be inferred* that the signatories had knowledge of, and consented to, the extension of their agreement to arbitrate to the non-signatories."  6 F.4th at 414 (emphasis added).  Proof of actual knowledge or consent is thus not required.  Here, the NFL is not just some "third-party wrongdoer," *id*. at 413–14, but has exactly the kind of "close relationship" with the member clubs that entitles it to rely on the arbitration agreements.  Mot. 21–24.

Plaintiffs next contend that they could not have foreseen being required to arbitrate their claims against the NFL, because the NFL Constitution outlines five specific categories of claims that are subject to arbitration.  Opp. 21.  Setting aside that Plaintiffs incorrectly claim to have lacked access to the NFL Constitution, *see* p. 4, *supra*, the five specific categories do not limit the scope of disputes that Plaintiffs agreed to arbitrate in their employment agreements, nor do they foreclose the NFL from relying on those agreements.  Plaintiffs argue that the NFL could have specifically mandated that the arbitration provisions in those agreements encompass claims against the League.  *Id*.  But Plaintiffs cite no decision supporting that argument, and numerous cases confirm that express inclusion of a non-signatory is not required.  *See* Mot. 21–24.

Finally, Plaintiffs attempt, but fail, to distinguish the Second Circuit's decision in *Ragone*, 595 F.3d 115, arguing that their work most directly "benefit[ed] the teams."  Opp. 22.  But *Ragone*

8

did not turn on which party received the most direct benefit of the contract, and Plaintiffs were well aware of their "close relationship" with the NFL, as their principal role as coaches for NFL member clubs was to lead their teams to victory in NFL-sanctioned games against other NFL teams. *Id*. Because Plaintiffs' claims against the NFL are also intertwined with their claims against the clubs (as Plaintiffs concede), Plaintiffs must arbitrate their claims against the NFL.

C. **Mr. Flores Must Arbitrate All of His Claims Against the Member Clubs**

Mr. Wilks and Mr. Horton do not dispute that their arbitration agreements cover their claims against their former employer member clubs. Mr. Flores, however, argues that he need not arbitrate certain claims against the Dolphins, or his claims against the Broncos, Giants, and Texans. Those arguments have no basis in the law or his own complaint.

Regarding the Dolphins, Mr. Flores argues that any obligation to arbitrate his post-employment retaliation claims ended when "the Dolphins terminated his contract." Opp. 25. Numerous courts—including in a decision cited by Plaintiffs—have rejected similar arguments. *See, e.g.*, *Neely* v. *Bechtel Corp.*, 2008 WL 2120085, at *4 (M.D. Ala. May 20, 2008) (cited at Opp. 25); *Montero* v. *Carnival Corp.*, 523 F. App'x 623, 627 (11th Cir. 2013); *Salzano* v. *Lace Ent. Inc.*, 2014 WL 3583195, at *4 (S.D.N.Y. July 18, 2014); *Koenig* v. *Ritz-Carlton Hotel Co.*, 2021 WL 5855608, at *3 (E.D. La. June 24, 2021). As the Second Circuit held in *CPR (USA) Inc.* v. *Spray*, 187 F.3d 245, 255 (2d Cir. 1999), an arbitration agreement is presumed to remain in force after contract termination with respect to disputes involving (i) "facts and occurrences that arose before expiration," or (ii) an infringement of rights that "accrued or vested" under the relevant contract. Contrary to Mr. Flores's assertions, Opp. 24–25, *CPR* does not require express language preserving the arbitration agreement. Thus, Mr. Flores's post-employment retaliation claims easily satisfy the requirements for arbitration: the gravamen of those claims is that the Dolphins retaliated against Mr. Flores by failing to pay him severance and seeking the return of certain compensation

9

that was allegedly owed or paid under the very employment agreement that contains his binding arbitration provision with the Dolphins. Mot. 10.

Regarding the Broncos, Mr. Flores acknowledges that he "was under contract with the Patriots when he interviewed" with them, but nevertheless claims that the arbitration provision in his Patriots contract is "strictly limited to disputes with the Patriots." Opp. 24. That is irrelevant, because Defendants' argument is based on Mr. Flores's obligation as a Patriots coach to comply with the *NFL Constitution*—which requires the arbitration of any dispute between a coach and a member club. Mot. 18. Mr. Flores offers no response to *that* argument—nor can he.

As for the Giants and Texans, Mr. Flores does not dispute that his claims against those clubs also fall within the scope of the NFL Constitution's arbitration provisions. Nor does he dispute that his allegations of past discrimination involve events that "took place while Mr. Flores was under contract with the Patriots or Dolphins." Opp. 24. Mr. Flores even acknowledges that, on the merits, he intends to argue that the alleged "history of discrimination" is "relevant to proving unlawful bias." Opp. 25. He nevertheless contends that those allegations are "irrelevant" to the question of whether he must arbitrate his claims against the Giants and the Texans. *Id.* There is no basis, however, for that self-serving distinction. Mr. Flores's claims against the Giants and Texans are indisputably premised, at least in part, on allegations of league-wide discrimination that he claims took place while he was subject to arbitration agreements with other member clubs. In fact, proof of past discrimination is a required element of Mr. Flores's pattern-or-practice claims against the Giants. *See United States* v. *City of New York*, 717 F.3d 72, 83 (2d Cir. 2013). Mr. Flores's claims against the Giants and Texans are thus subject to arbitration, as are all of the other claims asserted in the complaint. *See CPR*, 187 F.3d at 255.

*   *   *

The motion to compel arbitration and stay further proceedings should be granted.

|  |  |
|---|---|
| Dated: New York, New York<br>September 16, 2022 | **PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP**<br><br>By: */s/ Loretta E. Lynch*<br>Loretta E. Lynch<br>Brad S. Karp<br>Lynn B. Bayard<br>Brette Tannenbaum<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Telephone: (212) 373-3000<br>Fax: (212) 757-3900<br>lelynch@paulweiss.com<br>bkarp@paulweiss.com<br>lbayard@paulweiss.com<br>btannenbaum@paulweiss.com<br><br>*Attorneys for the National Football League, New York Giants, Miami Dolphins, Denver Broncos, Houston Texans, Arizona Cardinals, and Tennessee Titans* |