UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

        Plaintiffs,

  v.

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,

        Defendants.
------------------------------------------------------------ X

Civil Action No.: 22-cv-00871 (VEC)

**ORAL ARGUMENT REQUESTED**

## PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS

**WIGDOR LLP**

Douglas H. Wigdor
Michael J. Willemin
David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com

*Counsel for Plaintiffs*

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

John Elefterakis
Nicholas Elefterakis
Raymond Panek
Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: (212) 532-1116
Facsimile: (212) 532-1176

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

I.   DEFENDANTS ARE NOT CATEGORICALLY EXEMPT FROM THE
     UNCONSCIONABILITY DOCTRINE ...............................................................................1

II.  THERE CAN BE NO DOUBT THAT THE COMMISSIONER IS BIASED ...................3

III. THE COURT CANNOT SIMPLY "SEVER" THE UNCONSCIONABLE
     PROVISIONS OF THE ARBITRATION AGREEMENTS ................................................4

IV.  THE POTENTIAL JAMS DELEGATION CLAUSE DOES NOT "SAVE" THE
     ARBITRATION AGREEMENTS FROM UNCONSCIONABILITY ................................9

     A.   The Constitution Does Not Have Any JAMS Delegation Provision ........................9

     B.   The Commissioner is the Automatic Arbitrator in the First Instance ......................9

     C.   JAMS Cannot Administer the Dispute ..................................................................10

CONCLUSION ........................................................................................................................11

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

Am. Fam. Life Assur. Co. of N.Y. v. Baker,
    848 Fed. App'x 11 (2d Cir. 2008) ........................................................................... 5, 7

Basulto v. Hialeah Auto.,
    141 So. 3d 1145 (Fla. 2014) ......................................................................................... 3

Bratton v. Bratton,
    136 S.W.3d 595 (Tenn. 2004) ..................................................................................... 5

Capili v. Finish Line, Inc.,
    No. 15 Civ. 16657, 2017 WL 2839504 (9th Cir. July 3, 2017) ................................... 7

Dortch v. Quality Rest. Concepts, LLC,
    No. 12 Civ. 198 (CLC), 2013 WL 1789603 (E.D. Tenn. Apr. 26, 2013) .................... 5

Dumitru v. Princess Cruise Lines, Ltd.,
    732 F. Supp. 2d 328 (S.D.N.Y. 2010) ......................................................................... 5

Gessa v. Manor Care of Florida, Inc.,
    86 So. 3d 484 (Fla. 2011) ............................................................................................ 5

Hanson v. Cable,
    No. A138208, 2015 WL 1739487 (Cal. Ct. App. Apr. 15, 2015) ................................ 3

Henry v. New Orleans Louisiana Saints L.L.C.,
    No. Civ. 15-5971, 2016 WL 2901775 (E.D. La. May 18, 2016) ................................. 2

Herrera v. Katz,
    532 F. Supp. 2d 644 (S.D.N.Y. 2008) ......................................................................... 5

Hojnowski v. Buffalo Bills, Inc.,
    995 F. Supp. 2d 232 ..................................................................................................... 3

Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,
    729 F.3d 99 (2d Cir. 2013) .......................................................................................... 4

Lang v. PTC, Inc.,
    No. 21-04451 (KM) (ESK), 2021 WL 5277190 (D.N.J. Nov. 12, 2021) .................. 10

NFL Mgmt. Council v. NFL Players Ass'n,
    820 F.3d 527 (2d Cir. 2016) ........................................................................................ 2

NFL Players Ass'n v. NFL,
    831 F.3d 985 (8th Cir. 2016) .................................................................................................. 2

Place at Vero Beach, Inc. v. Hanson,
    953 So. 2d 773 (Fla. 4th DCA 2007) ..................................................................................... 6

Ragone v. Atlantic Video at Manhattan Center,
    595 F. 3d 115 (2d Cir. 2010) .................................................................................................. 5

Rizzio v. Surpass Senior Living, LLC,
    251 Ariz. 413 (2021) .............................................................................................................. 5

Rosenbloom v. Mecom,
    478 So. 2d 1375 (La. Ct. App. 1985) ..................................................................................... 3

Shotts v. OP Winter Haven, Inc.,
    86 So. 3d 456 (Fla. 2011) ................................................................................................... 5, 6

Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.,
    307 F.3d 617 (7th Cir. 2002) .................................................................................................. 2

Ward v. Ernst & Young U.S. LLP,
    468 F. Supp. 3d 596 (S.D.N.Y. 2020) .................................................................................... 5

Williams v. NFL,
    582 F.3d 863 (8th Cir. 2009) .................................................................................................. 2

Ziglar v. Express Messenger Sys. Inc.,
    No. 16 Civ. 02726 (PHX) (SRB), 2017 WL 6539020 (D. Ariz. Aug. 31, 2017) ...................... 7

Plaintiffs respectfully submit this Sur-Reply Memorandum of Law in Further Opposition to Defendants' Motion to Compel Arbitration and Stay Further Proceedings.

## PRELIMINARY STATEMENT

Defendants are asking Your Honor to be the first Court in the history of United States jurisprudence to find that a clearly biased arbitrator—one who is the chief executive of the defendant and already said the "claims . . . are without merit"—can preside over statutory employment discrimination claims. In doing so, Defendants are asking the Court to completely disregard the doctrine of unconscionability and the requirement, under Supreme Court precedent, that discrimination victims be afforded a legitimate forum in which they can effectively vindicate their rights. Furthermore, in tacit acknowledgment that the Arbitration Agreements[1] at issue are unlawfully unconscionable, Defendants ask the Court to simply "rewrite" the terms and "sever" the offending provisions—further ignoring that the unconscionable terms are not independent stand-alone provisions but are essential and indivisible from the remaining terms. If the Court were to rewrite the terms as Defendants suggest, it would provide an incentive for all employers to overreach in drafting arbitration as there would be no downside in doing so.

### I. DEFENDANTS ARE NOT CATEGORICALLY EXEMPT FROM THE UNCONSCIONABILITY DOCTRINE

Defendants argue that they can enforce the Arbitration Agreements, despite the fact that Mr. Goodell will be a biased arbitrator, simply because that is what the parties agreed to do. That is obviously not the law; if it were, the unconscionability doctrine could not exist. Indeed, the entire point of the unconscionability doctrine is to void unconscionable provisions that were, in the first instance, agreed to by the parties. To that end, Defendants' cited cases for the proposition that Plaintiffs must arbitrate before a biased arbitrator are easily distinguishable.

---

[1] Plaintiffs use the same defined terms set forth in Plaintiffs' Opposition Brief. Dkt. No. 62.

For instance, <u>NFL Mgmt. Council v. NFL Players Ass'n</u>, 820 F.3d 527 (2d Cir. 2016), was a dispute involving player discipline governed by a collective bargaining agreement, and the court analyzed the arbitration agreement under the post-hearing vacatur provision in the Federal Arbitration Act ("FAA"), not the doctrine of unconscionability.  As the doctrine of unconscionability was not even addressed, and the dispute did not involve any statutory employment claims, Defendants' reliance on this case is unavailing.

Likewise, <u>Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.</u>, 307 F.3d 617 (7th Cir. 2002) was also decided under a post-hearing vacatur standard rather than the unconscionability standard and did not involve statutory discrimination claims.  Moreover, the arbitrator in question was only one of three arbitrators that included an arbitrator selected by each party and a third appointed by the party-appointed arbitrators.  As the court explained, "as far as we can see, this is the first time since the Federal Arbitration Act was enacted in 1925 that a federal court has set aside an award because a party-appointed arbitrator on a tripartite panel, as opposed to a neutral, displayed 'evident partiality.'  The lack of precedent is unsurprising, because in the main party-appointed arbitrators are *supposed* to be advocates."  <u>Id.</u> at 620. Ultimately, the court found that the arbitrator in question did not even demonstrate "evident partiality."  <u>Id.</u>

Defendants' cited cases for the proposition that "numerous courts have recognized the authority of the Commissioner and his designee to arbitrate disputes under arbitration agreements similar to those here" are also not controlling.  See <u>NFL Players Ass'n v. NFL</u>, 831 F.3d 985, 998 (8th Cir. 2016) (decided under the vacatur standard, and noting that the agreement was enforceable because it was the subject of collective bargaining); <u>Williams v. NFL</u>, 582 F.3d 863, 886 (8th Cir. 2009) (same); <u>Henry v. New Orleans Louisiana Saints L.L.C.</u>, No. Civ. 15-5971, 2016 WL 2901775, at *9 (E.D. La. May 18, 2016) (claim was against one individual team, not

2

the NFL, and decision did not address unconscionability standard); Hojnowski v. Buffalo Bills, Inc., 995 F. Supp. 2d 232, 239 n.1. (W.D.N.Y. 2014) (court expressly stated that it did not address whether the arbitration agreement allowed plaintiff to "effectively vindicate" his rights because that argument was not advanced); Hanson v. Cable, No. A138208, 2015 WL 1739487, at *8 (Cal. Ct. App. Apr. 15, 2015) ("uncitable" opinion involving claims against a coach and team, not the NFL); Rosenbloom v. Mecom, 478 So. 2d 1375, 1378 (La. Ct. App. 1985) (analyzed vacatur not unconscionability standard, and involved a claim against a team, not NFL).

Of course, among the most significant facts distinguishing the instant matter from Defendants' cases is that the Commissioner has already issued a statement that the claims brought herein are "without merit."[2]  Pls.' Ex. B.

## II. THERE CAN BE NO DOUBT THAT THE COMMISSIONER IS BIASED

Defendants' efforts to "prove" that Mr. Goodell is unbiased are inappropriate and miss the mark.  First, Defendants rely in large part on extra-judicial material to support this position, despite Defendants having opposed Plaintiffs' requests for discovery concerning bias by arguing that their motion to compel arbitration would rely solely on the arbitration provisions at issue. See Dkt. Nos. 55, 58.  Defendants should not be permitted to have it both ways.  It would plainly be impossible on this record to determine that Mr. Goodell is not biased.[3]

---

[2]  It also bears noting that Defendants' presentation of Florida's law on unconscionability is misleading.  It is true that Florida courts have held that an arbitration agreement can be voided only where there is both procedural and substantive unconscionability.  See Basulto v. Hialeah Auto., 141 So. 3d 1145, 1157 (Fla. 2014).  However, the Basulto court went on to explain that even a modicum of procedural unconscionability—such as a take it or leave it offer extended by a party with significantly more bargaining power—will suffice where there is substantive unconscionability.  Id. at 1159.  As the court explained, "unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  Id. at 1160 (emphasis in original, quotations/citations omitted).  As such, "both the procedural and substantive aspects of unconscionability must be present, although not necessarily to the same degree, and both should be evaluated interdependently rather than as independent elements." Id. at 1161.  Here, there is no question that Plaintiffs had no meaningful choice in connection with the Arbitration Agreements.
[3]  On the other hand, for reasons already set forth, a finding of unconscionability is easily made, see Dkt. No. 58 at p. 6, ("Plaintiffs may well be able to argue that the proposed arbitrator is so biased against them that the

3

Second, Defendants point to an alleged "long history of rendering decisions at odds with the interests of the NFL's member clubs." Defs.' Reply Br. at p. 5. However, the cases they point to nearly all involve player discipline. It is an insult to the Court to argue that holding a *player* accountable for conduct that is criminal or calls into question the integrity of the game or in any way relevant to the matter at bar. Permitting the Commissioner to discipline a player (or a team, as the case may be) for tarnishing the NFL's image is plainly in the NFL's best interests— that is why they agreed to the process in the collective bargaining agreement. But such decisions are a far cry from a determination that the *NFL as an institution* and its member clubs have engaged in longstanding discriminatory conduct towards an entire class of Black coaches and executives.

Finally, Defendants cite Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) for the proposition that a mere "appearance of bias" is insufficient to disqualify an arbitrator. However, Kolel (decided under the vacatur provisions not the unconscionability doctrine) actually cuts in Plaintiffs' favor. The court made clear that "'proof of actual bias is not required'" and that "partiality can be inferred 'from objective facts inconsistent with impartiality.'" Id. (citations omitted). For all of the reasons already provided, Mr. Goodell's bias can clearly be inferred following a review of the relevant facts.

### III.  THE COURT CANNOT SIMPLY "SEVER" THE UNCONSCIONABLE PROVISIONS OF THE ARBITRATION AGREEMENTS

Defendants incorrectly argue that the Court should simply "sever" Mr. Goodell's role as arbitrator from the Arbitration Agreements even though it is a term incapable of separation and goes to the essence of the entire arbitration program. Defendants did not even bother to address

---

motion to compel arbitration should not be granted"), just as was found with even less basis in Gruden v. NFL, No. A-21-844043-B, Dkt. No. 52 at p. 30 (Nev. Dist. Ct., Clark Cty., May 25, 2022).

the numerous other substantively unconscionable aspects of the Arbitration Agreements (see Pls.' Opp. Br. at pp. 9-10) as those concern unconscionable omissions and lack of safeguards. Defendants' request that the Court "rewrite" the arbitration terms and forgive Defendants' attempt at unconscionable overreaching should respectfully be rejected.

The first step in determining whether an offensive provision in an arbitration agreement can be removed and the remainder enforced is to assess the whether the parties intended for the contract to operate in that manner—typically, this is accomplished through a severability clause. See e.g. Shotts v. OP Winter Haven, Inc., 86 So. 3d 456, 460-61, 475-78 (Fla. 2011) (Florida law, severability provision demonstrates "intention of the parties"); Gessa v. Manor Care of Florida, Inc., 86 So. 3d 484, 489-491 (Fla. 2011) (same);  Rizzio v. Surpass Senior Living, LLC, 251 Ariz. 413, 416 (2021) (Arizona law; noting that the "severability clause in the [arbitration] [a]greement permitted severance of the oppressive [] provision"); Bratton v. Bratton, 136 S.W.3d 595, 602 (Tenn. 2004) (Tennessee law; "[a]n agreement may either be entire or severable according to the intention of the parties"); Dortch v. Quality Rest. Concepts, LLC, No. 12 Civ. 198 (CLC), 2013 WL 1789603, at *8 (E.D. Tenn. Apr. 26, 2013) (Tennessee law; "because the agreement contains a severability clause . . . [the offending provision] can be removed from the agreement without affecting the enforceability of the rest of the agreement. . .").[4]

As an initial matter, the Constitution does not contain any severance provision.  Defs.' Ex. 1 at §8.3 et seq.  For that reason, Defendants distance themselves from the Constitution and

---

[4] Defendants' cited cases in the Second Circuit say nothing different and all contained severability clauses. See Dumitru v. Princess Cruise Lines, Ltd., 732 F. Supp. 2d 328, 346 (S.D.N.Y. 2010) (arbitration agreement contained severability clause; "A court may not rewrite clear and unambiguous contracts.  However, the presence of a severability clause demonstrates that severance was a contingency contemplated"); Herrera v. Katz, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008) (arbitration agreement contained severability clause); Am. Fam. Life Assur. Co. of N.Y. v. Baker, 848 Fed. App'x 11 (2d Cir. 2008) (same); Ragone v. Atlantic Video at Manhattan Center, 595 F. 3d 115 (2d Cir. 2010) (same); Ward v. Ernst & Young U.S. LLP, 468 F. Supp. 3d 596 (S.D.N.Y. 2020).

5

pivot focus to the Relevant Employment Contracts. But the Constitution is the NFL's superseding document by which all employment contracts are qualified. See Defs.' Ex. 2 at §7; Ex. 5 at §9. Thus, Defendants' entire argument should rise or fall on the enforceability of Section 8.3.

As to the Employment Contracts, Defendants acknowledge that only some of the Relevant Employment Contracts even contain severance provisions. See Defs.' Reply Br. at p. 6 (stating that "most" of the contracts at issue here have severance provisions). However, even the severability clauses that exist require close review as they do not permit severance of portions of a separately incorporated document. The Flores-Dolphins contract provides that "if any portion or aspect of this provision of *this Agreement* is found to be unenforceable for any reason, in whole or in part, the parties agree that the unenforceable portion or aspect of *this Agreement* will be severed and the remainder of the provision, including the agreement to submit to binding arbitration, will remain valid and in effect." See Defs.' Ex. 2 at §12.4 (emphasis added). However, the "Agreement"—defined to be the employment contract itself—is not the document containing the arbitration rules or procedure—those are contained in a stand-alone incorporated document, the NFL's DRPG. Nothing in the DRPG permits severance of any portion thereof. See e.g. Shotts, 86 So. 3d at 477 ("While the Agreement did contain a severability clause, *the clause allows provisions, not portions of provisions*, of the Agreement to be severed") (emphasis in original) (citing The Place at Vero Beach, Inc. v. Hanson, 953 So. 2d 773 (Fla. 4th DCA 2007)). The Wilks-Cardinals Contract suffers from the same issue. See Defs.' Ex. 5 at §10(f) (only permitting severance of any "unenforceable portion or aspect of this Agreement").

Furthermore, even where a fully applicable severability clause does exist, severance is not a viable remedy where the offending provisions are central to and indivisible from the rest.

6

See e.g. Shotts, 86 So. 3d at 478 (Florida law; arbitration provision dictating application of rules which eliminated punitive damages not severable despite a severance clause because "the imposition of the ALHA rules is not severable from the remainder of the agreement . . . [which] goes to the very essence of the agreement"); Ziglar v. Express Messenger Sys. Inc., No. 16 Civ. 02726 (PHX) (SRB), 2017 WL 6539020, at *3-4 (D. Ariz. Aug. 31, 2017) (Arizona law; arbitration agreement with limitations on damages and cost-splitting provisions not subject to severance because "[t]he Arbitration Provision at issue here is so permeated by unconscionability that . . . [it] would force the [c]ourt to rewrite, rather than interpret, the parties' [agreement]") (citing Capili v. Finish Line, Inc., No. 15 Civ. 16657, 2017 WL 2839504, at *2 (9th Cir. July 3, 2017)) ("Although the FAA articulates a preference for the enforcement of arbitration agreements, employers may not stack the deck unconscionably in their favor to discourage claims, then force courts to 'assume the role of contract author rather than interpreter'") (quotations omitted); Am. Fam. Life, 848 Fed. App'x at 13 (provision can only be severed if it is a "single, isolated provision") (quotation omitted).

Here, there is no way to "sever" the offending provisions and otherwise hold the Arbitration Agreements intact. The designation of Mr. Goodell as arbitrator in the first instance is at the very heart of Defendants' entire arbitral scheme.

As to the NFL Constitution, the entire arbitration provision simply states that "[t]he Commissioner shall have full, complete and final jurisdiction and authority to arbitrate" certain types of disputes. See Defs.' Ex. 1 at §8.3. Mr. Goodell's designation as arbitrator is the entire essence of Section 8.3 because that is all it says. Therefore, to "sever" Mr. Goodell's role would be to eliminate the arbitration provision entirely. Defendants do not even address this obvious flaw in their proposed severance approach. Moreover, the other unconscionable aspects of

7

Section 8.3—the lack of any procedural safeguards or any entitlement to discovery—are not capable of severance as those refer to oppressive omissions.

The same is true under the Relevant Employment Contracts and/or DRPG,[5] which make Mr. Goodell an indispensable first step and gatekeeper of the entire arbitration process. If Mr. Goodell's designation is found to be unconscionable, no aspect of the DRPG can be "severed" to create an enforceable agreement as there would be no mechanism for the arbitration to commence in the first instance. Even the provision permitting JAMS to potentially administer proceedings first requires a discretionary delegation by the Commissioner—something that cannot occur if the term is severed. Defendants also ignore this logical conundrum.

The indivisible role of Mr. Goodell is also abundantly clear throughout the Relevant Employment Contracts and the DRPG. In the Flores-Dolphins contract, the entire arbitration provision is titled "COMMISSIONER'S AUTHORITY TO ARBITRATE DISPUTES" and describes that all arbitrations will be referred "to the Commissioner" and that Mr. Flores agrees to be bound by the "decisions of the Commissioner." Defs.' Ex. 2 at §12; see also Ex. 5 at §10. The Commissioner also has an omnipotent role under the DRPG, where he retains "sole discretion" to determine all gatekeeping issues and has no obligation to delegate anything to JAMS if he does not see fit to do so for any reason. Defs.' Ex. 2; Ex. 5 at §10.[6]

In sum, the unconscionable provisions (or lack of provisions) of the Arbitration Agreements are at the "very essence of the agreement" and are "indivisible" from the remainder.

---

[5] The Horton-Titans contract does not contain any arbitration provision.
[6] Under DRPG §1.1, a claimant literally has to write the Commissioner a letter "asking him to hear and decide the matter" to start the arbitration process. Thus, bias and unconscionability notwithstanding, a claimant cannot even start the process unless they certify and commit in writing that they desire to have Mr. Goodell serve as the arbitrator and "decide the matter." See Defs.' Ex. 2 at §1.1; Ex. 5 at §1.1.

8

Thus, the Court cannot engage in the exercise of severing and rewriting the Arbitration Agreements for Defendants to make them enforceable.

## IV. THE POTENTIAL JAMS DELEGATION CLAUSE DOES NOT "SAVE" THE ARBITRATION AGREEMENTS FROM UNCONSCIONABILITY

### A. The Constitution Does Not Have Any JAMS Delegation Provision

Defendants argue that the Arbitration Agreements at issue are salvageable because the DRPG permits Mr. Goodell to delegate the arbitration to JAMS. However, despite arguing that Section 8.3 is one of the operable agreements the Court should enforce, it does not contain any reference to JAMS. Thus, this argument is completely inapplicable to the Constitution.

### B. The Commissioner is the Automatic Arbitrator in the First Instance

As stated, the DRPG only permits JAMS as a forum after Mr. Goodell first serves as arbitrator in the first instance. In this initial stage, the claimant must submit a detailed description of the claims, the facts, and the remedies and amounts sought. The respondent must then assert its defenses, additional relevant facts and/or counterclaims. The Commissioner must then decide, under applicable law, and based on a legal interpretation of claims, defenses, evidence, defenses and wording of the Constitution, whether the dispute is "football-oriented"—in whole or in part—as that term is defined in the DRPG. The process the Commissioner follows at this stage—the timing of submissions, whether to hold an oral argument, etc.—is all subject to Mr. Goodell's discretion. Even then, if Mr. Goodell determines that a dispute is not football-oriented, the DRPG only states that he "may" refer some or all of it to JAMS. Thus, Mr. Goodell is required to be arbitrator at the very least in the first instance and for purposes of making critical gatekeeping determinations. Mr. Goodell's obvious bias disqualifies him from this role.

9

### C. JAMS Cannot Administer the Dispute

Finally, Defendants are wrong that JAMS can administer this dispute under its rules. JAMS' Minimum Standards urge employers against condition-of-employment arbitration agreements and encourage "voluntary arbitration that is not a condition of initial or continued employment." Pls.' Ex. M. JAMS will only administer employment arbitrations if the "clause or agreement" meets the Minimum Standards, including that the arbitration agreement must require the employer to responsible for fees. The Flores-Dolphins contract fails the Minimum Standards because it provides for the JAMS Comprehensive Rules which imposes fee sharing.[7]

Defendants also misrepresent the terms of an exclusion from the Minimum Standards, which states: "if the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations." Pls.' Ex. M. Defendants do not claim the Flores-Dolphins arbitration agreement was individually negotiated, or that there were any negotiations over it through counsel. For that reason, Defendants mis-paraphrased the exclusion as follows: "JAMS's Minimum Standards do not apply where the arbitration agreement was individually negotiated or the employee was represented by counsel during the hiring process." (emphasis added). See Defs.' Reply Br. at p. 2. The JAMS exclusion clearly refers to representation of counsel during the negotiation of the arbitration agreement and does not include the "during the hiring process" phrase.

---

[7] Defendants cite Lang v. PTC, Inc., No. 21-04451 (KM) (ESK), 2021 WL 5277190, at *4–5 (D.N.J. Nov. 12, 2021). But Lang is not controlling and was incorrectly decided. The court, without basis, found that JAMS could simply superimpose the Minimal Standards on proceedings notwithstanding the employer's imposition of the Comprehensive Rules. This cannot be correct. The Minimum Standards is a policy and not a set of agreed-to rules. The entire purpose of the Minimum Standards is to obligate employers to provide employees with certain rights and to refuse such assignments that do not comply. Notably, the Comprehensive Rules do not incorporate the Minimum Standards and nor do they state that they will be read to be in conformity with the Minimum Standards.

## CONCLUSION

For the reasons set forth herein, Defendants' motion should be denied.

Dated: October 7, 2022
       New York, New York       Respectfully submitted,

**WIGDOR LLP**

By: _____
    Douglas H. Wigdor
    Michael J. Willemin
    David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*

- and -

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

By: _____/s/_____
    John Elefterakis
    Nicholas Elefterakis
    Raymond Panek
    Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212-532-1176

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*