# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Douglas H. Wigdor**
dwigdor@wigdorlaw.com

October 14, 2022

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

Re:     *Flores, et al. v. The National Football League, et al.*; No. 22 Civ. 00871 (VEC)

Dear Judge Caproni,

We represent Plaintiffs and write to inform the Court about new persuasive authority relevant to Defendants' pending motion to compel arbitration.  Specifically, on October 12, 2022, Judge Nancy L. Allf issued a written decision denying the NFL's motion to compel arbitration in the matter of Gruden v. The National Football League, *et. al.*, Case No.: A-21-844043-B (NV Dist. Ct. Clark Cty)  Previously, Judge Allf had only issued a decision on the record at oral argument (transcript attached to Plaintiffs' opposition papers as Ex. G).  The written decision – which was rendered after Plaintiffs' filed their sur-reply – is attached hereto as Exhibit A.

As relevant to this matter, the Gruden decision held:

- The NFL is not a covered party under the arbitration agreement contained in Gruden's contract with the Raiders (pp. 8-9) (Gruden's contract with the Raiders appears to be substantially the same as Plaintiffs' contracts with their respective teams);

- The NFL cannot take advantage of the arbitration agreement contained in Gruden's contract with the Raiders on the basis of equitable estoppel (p. 10); and

- The arbitration provisions in Gruden's contract with the Raiders, as well as the arbitration provision contained in the NFL Constitution, are unconscionable for a host of reasons (pp. 12-15) ("the arbitration provisions on which the NFL Parties rely are unconscionable because they would designate Commissioner Goodell as the arbitrator") citing *inter alia* Nostalgic Partners, LLC v. N.Y. Yankees P'ship, No. 656724/2020, slip op. at 2 (N.Y. Sup. Ct. Dec. 17, 2021) ("Based on the appearance of impropriety, the Commissioner of Major League Baseball should not arbitrate a dispute of claims that are asserted against Major League Baseball in the Amended Complaint filed in this action.").



The Honorable Valerie E. Caproni
October 14, 2022
Page 2

Plaintiffs respectfully request that the Court consider the decision in <u>Gruden</u> in connection with the pending motion to compel arbitration.

We thank You Honor for the Court's time and consideration of this matter.

Respectfully submitted,

Douglas H. Wigdor

Enc.

cc:  All counsel (via ECF)

# Exhibit A

Electronically Filed
10/12/2022 4:28 PM
Steven D. Grierson
CLERK OF THE COURT

1   **NEOJ**
Adam Hosmer-Henner, Esq. (NSBN 12779)

2   Jeff Silvestri, Esq. (NSBN 5779)
Rory Kay, Esq. (NSBN 12416)

3   Chelsea Latino, Esq. (NSBN 14227)

4   Jane Susskind, Esq. (NSBN 15099)
Zachary Noland, Esq. (NSBN 15075)

5   McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200

6   Las Vegas, Nevada 89102
(702) 873-4100

7   ahosmerhenner@mcdonaldcarano.com

8   jsilvestri@mcdonaldcarano.com
rkay@mcdonaldcarano.com

9   clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com

10  znoland@mcdonaldcarano.com

11  *Attorneys for Plaintiff Jon Gruden*

12                          **DISTRICT COURT**

13                      **CLARK COUNTY, NEVADA**

14  JON GRUDEN,                          CASE NO.:  A-21-844043-B
                                         DEPT. NO.: XXVII
15              Plaintiff,

16  v.
                                         **NOTICE OF ENTRY OF ORDER**
17  THE NATIONAL FOOTBALL LEAGUE;        **DENYING DEFENDANTS' MOTION TO**
    ROGER GOODELL; DOES 1-10; and ROE    **COMPEL ARBITRATION**
18  ENTITIES 11-20, inclusive,

19              Defendants.

20

21          PLEASE TAKE NOTICE that an **ORDER DENYING DEFENDANTS' MOTION TO**

22  **COMPEL ARBITRATION** was entered in the above-captioned case on the 12th day of

23  October, 2022, a copy of which is attached hereto.

24  / / /

25

26  / / /

27

28  / / /

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Dated this 12th day of October, 2022.

McDONALD CARANO LLP

By: /s/ *Adam Hosmer-Henner*
      Adam Hosmer-Henner, Esq. (NSBN 12779)
      Jeff Silvestri, Esq. (NSBN 5779)
      Rory Kay, Esq. (NSBN 12416)
      Chelsea Latino, Esq. (NSBN 14227)
      Jane Susskind, Esq. (NSBN 15099)
      Zachary Noland, Esq. (NSBN 15075)
      2300 West Sahara Avenue, Suite 1200
      Las Vegas, Nevada 89102

      *Attorneys for Plaintiff Jon Gruden*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of McDonald Carano LLP, and that on October 12, 2022, a true and correct copy of the foregoing **NOTICE OF ENTRY OF ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION** was electronically served with the Clerk of the Court via the Clark County District Court Electronic Filing Program which will provide copies to all counsel of record registered to receive such electronic notification.

 /s/  *CaraMia Gerard*
An employee of McDonald Carano LLP

Electronically Filed
10/12/2022 2:09 PM

CLERK OF THE COURT

**ODM**
Adam Hosmer-Henner, Esq. (NSBN 12779)
Jeff Silvestri, Esq. (NSBN 5779)
Rory Kay, Esq. (NSBN 12416)
Chelsea Latino, Esq. (NSBN 14227)
Jane Susskind, Esq. (NSBN 15099)
Zachary Noland, Esq. (NSBN 15075)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
(702) 873-4100
ahosmerhenner@mcdonaldcarano.com
jsilvestri@mcdonaldcarano.com
rkay@mcdonaldcarano.com
clatino@mcdonaldcarano.com
jsusskind@mcdonaldcarano.com
znoland@mcdonaldcarano.com

*Attorneys for Plaintiff Jon Gruden*

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| JON GRUDEN,<br><br>       Plaintiff,<br><br>v.<br><br>THE NATIONAL FOOTBALL LEAGUE;<br>ROGER GOODELL; DOES 1-10; and ROE<br>ENTITIES 11-20, inclusive,<br><br>       Defendants. | CASE NO.:  A-21-844043-B<br>DEPT. NO.: XXVII<br><br><br>**ORDER DENYING DEFENDANTS'<br>MOTION TO COMPEL ARBITRATION** |

This matter came before the Court on May 25, 2022 on the Motion to Compel Arbitration ("Motion") filed by Defendants the National Football League and Roger Goodell. Adam Hosmer-Henner, Jeff Silvestri, Rory Kay, and Chelsea Latino of McDonald Carano LLP appeared on behalf of Plaintiff Jon Gruden. Maximilien Fetaz of Brownstein Hyatt Farber Schreck, LLP and Kannon K. Shanmugam and Tiana Voegelin of Paul, Weiss, Rifkind, Wharton & Garrison LLP appeared on behalf of Defendants. The Court, having considered the Motion, Plaintiff's Opposition to the Motion, Defendants' Reply thereto, and the argument of counsel at the hearing on this matter, makes the following findings of fact, conclusions of law, and issues this Order:

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

McDONALD CARANO

McDONALD ⚖ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**FINDINGS OF FACT RELEVANT TO THE COURT'S DECISION**

Plaintiff Jon Gruden ("Gruden" or "Plaintiff"), the former head coach of the Las Vegas Raiders ("Raiders"), commenced this action against the National Football League ("NFL") and Commissioner of the NFL, Roger Goodell ("Commissioner Goodell") (collectively, the "NFL Parties"), on November 11, 2021. The Complaint alleges that the NFL Parties pressured Gruden's employer, the Raiders, to fire him and that the NFL Parties selectively released private emails to the press to harm Gruden. *See generally* Compl.

As the Complaint alleges, Gruden's professional coaching career spans nearly four decades. *Id.* ¶ 62. He began coaching in the NFL in 1990 with the San Francisco 49ers. *Id.* Gruden served as the head coach of the Oakland Raiders from 1998 until 2002, when he was traded by the Oakland Raiders to the Tampa Bay Buccaneers. *Id.* ¶¶ 63–64. After he coached the Buccaneers for seven seasons, ESPN hired Gruden in 2009 to co-host the network's Monday Night Football franchise. *Id.* ¶¶ 64–65. He worked for ESPN until 2018, when the Oakland Raiders hired Gruden as their head coach under a 10-year, $100-million contract. *Id.* ¶¶ 65, 67. When the Raiders moved to Las Vegas, Nevada, in 2020, Gruden came with the team and became the very first head coach for the Las Vegas Raiders. *Id.* ¶ 68. Gruden coached the Raiders until October 11, 2021, when Gruden alleges that the NFL Parties' malicious and orchestrated campaign forced him to resign. *See id.* ¶ 59.

The Complaint alleges that the NFL Parties obtained Gruden's private emails in June 2011 during an unrelated, confidential investigation into the Washington Football Team. *Id.* ¶¶ 2, 25–43. That investigation was originally launched by the Washington Football Team in July 2020, following reports that 15 women who previously worked for the Washington Football Team had experienced sexual harassment and verbal abuse. *Id.* ¶¶ 25–26. By August 31, 2020, the NFL had assumed full oversight of the confidential investigation, which ultimately concluded in July 2021. *Id.* ¶¶ 26, 28. Though the NFL's traditional practice is to prepare and release a formal written report of its internal investigations, the NFL did not release a written report or any specific details surrounding the investigation and did not officially release any of the 650,000 emails that it uncovered during the investigation. *Id.* ¶¶ 32–34. Instead, the NFL Parties refused to release the

documents and reports despite increased scrutiny and demands from the public, the former employees of the Washington Football Team who had made the allegations, the Congressional Committee on Oversight, individual Congressional Representatives, and the NFL Players Association. *Id.* ¶¶ 34–40. The NFL Parties deemed the documents and emails confidential and protected them from public disclosure. *Id.*

The Complaint alleges that the NFL Parties Defendants obtained private emails between Gruden and Bruce Allen ("Allen"), the Washington Football Team general manager at the time. *Id.* ¶¶ 2, 44–46. These emails were sent between 2011 and 2018, during which time Gruden was not working as a coach in the NFL but as an employee of ESPN. *Id.* ¶ 2. Commissioner Goodell reviewed the emails and summaries together with the NFL's senior executives. *Id.* ¶ 48. The Complaint alleges that rather than initiate a genuine investigation or provide Gruden with due process, the NFL Parties demanded that the Raiders fire Gruden and directly leaked documents to the media to further their goals. *Id.* The NFL Parties also provided certain documents and emails and their own summaries of the documents to the Raiders. Mot. to Dismiss 8.

The Complaint alleges that on October 8, 2021, the Wall Street Journal, through reporter Andrew Beaton, published a report ("WSJ Report") about a July 2011 email from Gruden, sent while Gruden was an employee of ESPN. *Id.* ¶ 49. Gruden alleges that the NFL Parties selectively leaked only a single email that they knew would harm Gruden. *Id.* ¶ 50.

The Complaint alleges that the NFL Parties released that email to the Wall Street Journal. *Id.* ¶ 50. The Complaint also alleges that the NFL Parties pressured the Raiders to fire Gruden. *Id.* ¶ 52. The NFL Parties directly contacted the Raiders and sent them documents and summaries relating to Gruden. Mot. to Dismiss 8. The Complaint further alleges that when the Raiders had not terminated Gruden after the WSJ Report, the NFL Parties added pressure by intimating that more documents would become public if Gruden remained employed with the Raiders. *Id.* ¶ 55.

The Complaint alleges that on October 11, 2021, the New York Times published a report ("NYT Report") outlining additional emails that were sent between Gruden and Allen. The Complaint alleges that these emails were leaked by the NFL Parties despite being treated as confidential as part of the Washington Football Team investigation. *Id.* ¶ 56. The Complaint alleges

that the emails contained insulting and derogatory language against Commissioner Goodell and that the NFL Parties pressured the Raiders to fire Gruden due, at least in part, to the insults to Commissioner Goodell. *Id.* ¶¶ 21, 56. Gruden alleges that the NFL Parties purposefully leveraged these emails with the Raiders and the media to cause the termination of Gruden's coaching contract, endorsements, and sponsorships. *Id.* ¶ 58.

Gruden alleges significant financial and reputation damage, including but not limited to the termination of his $100 million contract with the Raiders, less offsets, which was to run through the 2027 season, loss of endorsement contracts with footwear and apparel company Skechers and other companies, and significant damage to his reputation that will affect his future employment prospects and endorsement opportunities. *Id.* ¶¶ 60–73. Based on these allegations, Gruden asserts seven claims for relief: (1) Intentional Interference with Contractual Relations; (2) Tortious Interference with Prospective Economic Advantage; (3) Negligence; (4) Negligent Hiring; (5) Negligent Supervision; (6) Civil Conspiracy; and (7) Aiding and Abetting. *Id.* ¶¶ 74-128.

On January 19, 2022, the NFL Parties filed their Motion, seeking to compel arbitration pursuant to provisions in the contract governing Gruden's employment with the Raiders ("Agreement"), Mot. Ex. 2, and the NFL Constitution and Bylaws dated September 14, 2016, Mot. Ex. 3, ("NFL Constitution"). Specifically, the NFL Parties rely on paragraph 10 of the Agreement, which was entered into on January 8, 2018 "by and between the Oakland Raiders . . . and Jon Gruden."[1] Mot. Ex. 2. Paragraph 10 provides in relevant part as follows:

> *Gruden shall abide by and be legally bound by the Constitution, Bylaws, and rules and regulations of the NFL or any successor thereto, in their present form and as amended from time to time hereafter (including specifically but not limited to 2008 Resolution GS), which are hereby made a part of this Agreement, and by the decisions of the Commissioner thereof, which decisions shall be final, conclusive, and unappealable. . . . Gruden hereby acknowledges that he has read the NFL*

---

[1] Commissioner Goodell also signed the Agreement to indicate his approval but did not sign as a party or on behalf of the NFL as a party. Mot. Ex. 2, at 7. At the May 25, 2022 hearing, counsel for the NFL Parties conceded that Commissioner Goodell did not sign the Agreement as a party, and further conceded "that the Agreement is an agreement by its terms between Gruden and the Raiders." Tr. at 10:5–10. Commissioner Goodell's approval was not required or provided for the termination of the Agreement by the Raiders and Gruden.

*Constitution and By-Laws and applicable NFL rules and regulations, and understands their meaning. Gruden and Club agree that all matters in dispute between Gruden and Club, including without limitation any dispute arising from the terms of this Agreement, shall be referred to the NFL Commissioner for binding arbitration, and his decision shall be accepted as final, conclusive, and unappealable.*

Mot. Ex. 2, ¶ 10.

The Agreement between the Raiders and Gruden, which did not contain a survival clause or a delegation clause, was terminated in October 2021 and Gruden entered into a confidential settlement with the Raiders. Mot. at 9:4–5, 17:4.  The NFL Parties did not introduce evidence that the settlement with the Raiders obligated either Gruden or the Raiders to arbitrate this dispute or evidence that the arbitration clause in the Agreement survived the settlement.

The NFL Parties also rely on section 8.3(E) of the NFL Constitution, which was introduced into the record as a version dated revised as of September 14, 2016. Mot. Ex. 3. Section 8.3 provides as follows:

*The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate:*

*(A)   Any dispute involving two or more members of the League or involving two or more holders of an ownership interest in a member club of the League, certified to him by any of the disputants;*

*(B)   Any dispute between any player, coach, and/or other employee of any member of the League (or any combination thereof) and any member club or clubs;*

*(C)   Any dispute between or among players, coaches, and/or other employees of any member club or clubs of the League, other than disputes unrelated to and outside the course and scope of the employment of such disputants within the League;*

*(D)   Any dispute between a player and any official of the League;*

*(E)   Any dispute involving a member or members in the League or any players or employees of the members of the League or any combination thereof that in the opinion of the Commissioner constitutes conduct detrimental to the best interests of the League or professional football.*

Mot. Ex. 3, § 8.3.

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1    The NFL Parties did not produce any evidence showing that Commissioner Goodell was of

2  the opinion that the instant dispute constituted conduct detrimental to the best interests of the NFL

3  or professional football or any evidence showing that Commissioner Goodell had made such a

4  decision or issued such an opinion. The NFL Parties did not introduce a declaration from

5  Commissioner Goodell or any other similar evidence related to Section 8.3. The Court lacks the

6  factual record to determine the opinion of Commissioner Goodell as to whether the matters in

7  dispute constitute conduct detrimental to the best interests of the League or professional football.

8    Gruden filed an Opposition to the Motion on March 4, 2022. In his supporting declaration,

9  Gruden states he "was never provided a copy of the version of the NFL Constitution and Bylaws

10  that was attached to Defendants' Motion to Compel Arbitration as Exhibit 3," "never received a

11  communication from the National Football League or Commissioner Goodell in which any

12  allegations in my Complaint or any aspect of the above-captioned dispute was deemed to be conduct

13  detrimental to the best interests of the League or professional football," and "never received notice

14  of any disciplinary action by the National Football League or Commissioner Goodell regarding my

15  emails, the leaking of my emails, or any related aspect of the above-captioned dispute." Opp'n Ex.

16  1, ¶¶ 2–3. The NFL Parties did not introduce evidence disputing the statements in Gruden's

17  declaration and did not demonstrate that Gruden was provided with any copy of the NFL

18  Constitution and Bylaws or that he was specifically provided with a copy that contained the

19  arbitration clause or clauses on which NFL Parties attempted to rely. The NFL Parties also did not

20  introduce evidence that the version of the NFL Constitution and Bylaws introduced into the record

21  was, in fact, the effective version at the time Gruden signed the Agreement. The NFL Parties filed

22  a Reply on April 4, 2022, and the Court heard oral argument on May 25, 2022.

23                              **CONCLUSIONS OF LAW**

24  **I.    Applicable Law**

25    Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, and NRS 38.221(1)(b), the "first

26  principle" when considering whether to compel arbitration is that "[a]rbitration is strictly 'a matter

27  of consent.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010); *Clark Cnty.*

28  *Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 591, 798 P.2d 136, 138 (1990). Accordingly, "a court

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co.*, 561 U.S. at 297; *see also* NRS 38.221(3) ("If the court finds that there is no enforceable agreement, it may not . . . order the parties to arbitrate.").

Whether a dispute is arbitrable "is a matter of contract interpretation." *State ex rel. Masto v. Second Jud. Dist. Ct.*, 125 Nev. 37, 44, 199 P.3d 828, 832 (2009); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (recognizing "the 'fundamental principle that arbitration is a matter of contract'" (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010))). A contract must be enforced "as written where the language is clear and unambiguous," and the intent of the parties discerned "from the four corners of the contract" and any writings incorporated therein by reference. *MMAWC, LLC v. Zion Wood Obi Wan Tr.*, 135 Nev. 275, 279, 448 P.3d 568, 571–72 (2019) (quotations omitted). A "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," so arbitration will not be ordered where "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 650 (1986) (quotations omitted); *see also Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 874 (9th Cir. 2021) ("Arbitration agreements are contracts, and the [FAA] does not 'purport[ ] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them).'" (second alteration in original) (quoting *Arthur Andersen v. LLP v. Carlisle*, 556 U.S. 624, 630 (2009))).

Here, the parties dispute the validity, enforceability, applicability, and scope of the arbitration provisions at issue. Such gateway questions of arbitrability "are presumptively for the court, not the arbitrator, to resolve." *Principal Invs., Inc. v. Harrison*, 132 Nev. 9, 16, 366 P.3d 688, 693 (2016). The parties agreed that it was proper for this Court to decide whether their dispute was arbitrable. *See, e.g.,* Mot. 11-13; Reply 3-4. Accordingly, the gateway questions of arbitrability are properly before the Court for resolution. *See Pearson*, 106 Nev. at 590, 798 P.2d at 137.

## II.    The NFL Parties' Motion to Compel Arbitration

In seeking to compel arbitration, the NFL Parties must show that a valid, written agreement to arbitrate exists and encompasses the dispute at issue. *See Granite Rock Co.*, 561 U.S. at 303. The Court finds that the NFL Parties have failed to meet their burden.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

### A.     The Terminated Agreement

The Court finds that the NFL Parties are not parties to the Agreement and that the issues in dispute in this action are not encompassed by the Agreement. The NFL Parties conceded awareness of the confidential settlement and acknowledged that the confidential settlement with the Raiders contained a separate arbitration provision. Tr. 28:21-23. The NFL Parties cannot rely on the Agreement, because it was terminated by the parties thereto before the Complaint was filed, and the NFL Parties have not established through competent, admissible evidence the existence of a valid agreement to arbitrate.

The Agreement was entered into on January 8, 2018 "by and between the Oakland Raiders . . . and Jon Gruden." Mot. Ex. 2. The Agreement's arbitration clause provides that "Gruden and Club agree that all matters in dispute *between Gruden and Club*, including without limitation any dispute arising from the terms of this Agreement, shall be referred to the NFL Commissioner for binding arbitration . . . ." Mot. Ex. 2, ¶ 10 (emphasis added). In their Motion, the NFL Parties argue (1) a valid arbitration agreement exists in the Agreement; and (2) Gruden's claims fall under the Agreement's arbitration clause because they are centered on the termination of that Agreement and thus arise from the terms of the Agreement. At oral argument, counsel for the NFL Parties conceded that Goodell did not sign the Agreement as a party and further conceded "that the Agreement is an agreement by its terms between Gruden and the Raiders." Tr. at 10:5–10. It is also undisputed that the Raiders are not a party to this lawsuit and that Gruden entered into a confidential settlement with the Raiders following termination of the Agreement. *See* Mot. at 9, 17. It is also undisputed that all of Gruden's conduct referenced by the NFL Parties occurred prior to the signing of the Agreement and while Gruden was not an employee of the Raiders or the NFL. Whatever ability the NFL Parties may have had to compel arbitration under the Agreement expired as soon as Gruden and the Raiders terminated the Agreement. The Court finds that the NFL Parties' arguments fail for these reasons.

### 1.     The Arbitration Clause in the Terminated Agreement

The arbitration clause in the Agreement covers only "matters in dispute between Gruden and Club" with a dependent clause, "including without limitation any dispute arising from the terms

of this Agreement," addressing only a subset of disputes between Gruden and the Raiders. Mot. Ex. 2, ¶ 10. The Court rejects the NFL Parties' argument that this dependent clause, which is subordinate to the "matters in dispute between Gruden and Club" clause, covers all claims "arising out of that agreement." Mot. 3. The arbitration clause in the Agreement expressly limits arbitration to disputes exclusively between Gruden and the Raiders. *See Elijahjuan v. Super. Ct.*, 147 Cal. Rptr. 3d 857, 861 (Ct. App. 2012) ("The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs." (citations omitted)); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 634, 189 P.3d 656, 660 (2008) (explaining that arbitration agreements "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract"). The Court concludes that the unambiguous terms of the Agreement require arbitration of only those disputes "between Gruden and [the Oakland Raiders]," and that this plain language controls. *Granite Rock*, 561 U.S. at 301.[2]

This Court likewise rejects the NFL Parties' remaining arguments about the scope of the arbitration provision in the Agreement. The Agreement's arbitration provision is not susceptible of an interpretation that Gruden agreed to arbitrate any disputes except those "between Gruden and [the Raiders].". If the Raiders and Gruden had intended to send any disputes between each of them and the NFL Parties to arbitration, the Agreement could have expressly provided so, but it does not. The claims by Gruden against the NFL Parties are not ones that could have been asserted against the Raiders and rest on a different factual predicate.

### 2. The Arbitration Clause in the Terminated Agreement Does Not Encompass Gruden's Tort Claims

The NFL Parties acknowledge that Gruden entered a confidential settlement with the Raiders following termination of the Agreement. Mot. at 9, 17; Tr. 28:21-23. At this procedural

---

[2]  Further, even current disputes between Gruden and the Raiders would not be governed by this clause but by the dispute-resolution provision in their settlement agreement.

McDONALD ❦ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

stage, the Court agrees with Gruden that any contractual claims under the Agreement were resolved via that confidential settlement with the Raiders. The Court concludes that Gruden's present claims do not arise out of contractual obligations in the Agreement but are directed at the NFL Parties' allegedly tortious conduct. Gruden alleged that the NFL Parties leaked documents to the media and provided documents and summaries to the Raiders in order to cause him harm. Additionally, Gruden has alleged damages including the loss of the balance of his contract as well as other endorsement contracts with third parties such as Skechers. Compl. ¶¶ 70, 71. Therefore, the Court concludes that Gruden alleges tortious conduct by the NFL Parties that falls outside the arbitration clause in the Agreement.

### 3. The NFL Parties Cannot Rely on Equitable Estoppel

The Court concludes that the NFL Parties cannot invoke arbitration under the Agreement based on equitable principles. The Court does not accept the NFL Parties' argument that "Gruden's claim is, at bottom, for wrongful termination against the Raiders." Mot. 18. The plain language of the Complaint clearly and unmistakably identifies that Gruden has not asserted any claims against the Raiders for wrongful termination or any other similar cause of action. Gruden's claims against the NFL Parties are also not variations on wrongful termination but relate to independently actionable wrongs.  It would be inequitable to force Gruden to arbitrate when he could not have filed initially an arbitration demand under the same arbitration clauses on which the NFL Parties now rely. Based on review of the allegations by Gruden and the evidence presented by the parties, the balance of the equities supports the denial of the Motion.

### B. The NFL Constitution

Section 8.3(E) of the NFL Constitution is titled "Jurisdiction to Resolve Disputes" and provides that Commissioner Goodell has authority to arbitrate "[a]ny dispute involving a member or members in the League or any players or employees of the members of the League or any combination thereof that in the opinion of the Commissioner constitutes conduct detrimental to the best interests of the League or professional football." Mot. Ex. 3, § 8.3. The Court concludes that the NFL Parties cannot compel arbitration under this provision as the factual record does not support its application.

### 1. The NFL Constitution Does Not Constitute a Valid Agreement to Arbitrate for Gruden

The NFL Parties did not demonstrate by competent, admissible evidence that the version of the NFL Constitution attached to the Motion was the effective version of the NFL Constitution at the time Gruden signed the Agreement. Gruden's sworn statements, including that he was never presented with this version of the NFL Constitution before he executed the Agreement, were unrefuted by contradictory evidence from the NFL Parties.

### 2. No Evidence Supports the Application of Section 8.3(E) of the NFL Constitution Here.

The Court concludes that the NFL Parties have not established that section 8.3(E) is applicable or encompasses Gruden's claims. Section 8.3(E) is not written broadly to cover any dispute that relates to or arises from "conduct detrimental." Mot. Ex. 3, § 8.3(E). Instead, it applies only when the "dispute" itself "constitutes conduct detrimental." *Id.* The "dispute" here is limited to the claims Gruden has asserted and those claims relate exclusively to the actions of Commissioner Goodell and the NFL. In any event, this Court lacks any factual basis to conclude that Commissioner Goodell made any determination on which section 8.3(E) could be invoked. That section applies to a dispute that "in the opinion of the Commissioner" constitutes conduct detrimental to the NFL. Mot. Ex. 3, § 8.3(E). Commissioner Goodell did not submit a declaration or testimony in support of the Motion that would provide his opinion. The Court cannot speculate or guess as to Commissioner Goodell's opinion.

### 3. Section 8.3(E) of the NFL Constitution Does Not Cover Former Employees

The Court finds that the scope of section 8.3(E) does not cover former employees. Section 8.3(E) applies to disputes "involving a member or members in the League or any players or employees of the members of the League or any combination thereof." Mot. Ex. 3. By its plain language, it applies only to current "players or employees of the members of the League" and not to every former player or employee. Moreover, the emails at issue were sent while Gruden was not employed by any member of the League.

### C.     Unconscionability

The Court also agrees with Gruden that the arbitration provisions are unenforceable as they pertain to this litigation. The arbitration provisions in the Agreement and NFL Constitution are illusory, cannot be considered "a contract to arbitrate, but an engagement to capitulate," and must "be denied enforcement on grounds of unconscionability." *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 176 (Cal. 1981). The factual record demonstrates that Gruden could not have filed a demand for arbitration in November 2021 because, among other things, Commissioner Goodell had not issued an opinion or made a determination as to whether this dispute constituted conduct detrimental to the NFL or to professional football; thus, it would be unconscionable to now compel Gruden to arbitrate a dispute that was not arbitrable at its inception.

An agreement to arbitrate may be invalidated as unconscionable if some degree of procedural and substantive unconscionability exist. *See OTO, L.L.C. v. Kho*, 447 P.3d 680, 689–90 (Cal. 2019) (recognizing that unconscionability "may be applied to invalidate arbitration agreements without contravening the FAA or California law" (internal quotation marks omitted)).[3] Substantive unconscionability "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided," whereas the "procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Id.* As the degree of each element is analyzed on a sliding scale, the stronger a showing of either procedural or substantive unconscionability, the less

---

[3]  Though the unconscionability analysis is similar under Nevada law, the Court applies California law here because the Agreement provides that California law will apply and is not contrary to Nevada public policy, and California has a substantial relationship with the Agreement insofar as the Oakland Raiders franchise was formed under California law. *See Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 171, 327 P.3d 1061, 1063–64 (2014) (providing that Nevada courts will honor choice-of-law provision for purposes of determining the validity and effect of a contract where the situs fixed by the agreement has a substantial relationship with the transaction and the agreement comports with Nevada public policy); *see also FQ Men's Club, Inc. v. Doe Dancers I*, No. 79265, 2020 WL 5587435, at \*2–5 (Nev. Sept. 17, 2020) (demonstrating that Nevada applies the same standards as California in determining the enforceability of an arbitration agreement); *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553–54, 96 P.3d 1159, 1162–63 (2004) (same), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 415 P.3d 32 (2018).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

evidence is required for the other. *Id.* ("The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable. Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (quotations and citations omitted)). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* (quoting *Sanchez v. Valencia Holding Co.*, 353 P.3d 741 (Cal. 2015)). Both procedural and substantive unconscionability are present here.

### 1.      The Arbitration Clauses Fail for Lack of a Neutral Arbitrator

The terms of the arbitration provisions on which the NFL Parties rely are unconscionable because they would designate Commissioner Goodell as the arbitrator. Mot. Ex. 2, ¶ 10; *id.* at Ex. 3, § 8.3. Gruden's claims are properly brought against Commissioner Goodell based on the specific actions he allegedly took, individually and as a representative of the NFL, against Gruden. Whether Commissioner Goodell hears the arbitration or selects a designated substitute arbitrator is irrelevant as the process forecloses any prospect of a meaningful and fairly conducted arbitration.[4] *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1003 (9th Cir. 2010) (concluding that arbitration provision was substantively unconscionable because it required selection of an arbitrator from a list of those who had received training from the defendant); *Nostalgic Partners, LLC v. N.Y. Yankees P'ship*, No. 656724/2020, slip op. at 2 (N.Y. Sup. Ct. Dec. 17, 2021) ("Based on the appearance of

---

[4]  The Court cannot appoint a substitute arbitrator in order to salvage the arbitration clause. The Court finds that the arbitration provision here specifically and exclusively designates the Commissioner as the arbitrator, and thus any inability of the Commissioner to arbitrate, such as bias or lack of neutrality, invalidates the arbitration clause. *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006). If the selection of an arbitrator is integral to an arbitration clause, then the Court should invalidate the arbitration clause as a whole. *Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 WL 3485933, at *6 (W.D. Wash. Oct. 26, 2009) (identifying "compounding problems that threaten to eviscerate the core of the parties' agreement" as a result of any attempt to rewrite the parties' agreement by substituting a new arbitrator). The NFL Parties have taken the position that it is the Commissioner's unique expertise in internal NFL matters that makes him suitable to arbitrate internal disputes. Mot. 14. The Court's appointment of a substitute arbitrator would exceed the language of the arbitration provisions and countermand their purpose.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

impropriety, the Commissioner of Major League Baseball should not arbitrate a dispute of claims that are asserted against Major League Baseball in the Amended Complaint filed in this action.").

The Court concludes that Gruden had no opportunity to negotiate the terms of the NFL Constitution, which could be amended only by member vote under Article 25, and he has no ability to participate in the arbitrator-selection process. Mot. Ex. 3, §§ 25.1–.4. Given these procedural circumstances of oppression and surprise, together with the other grounds set forth by Gruden, and given the substantive unconscionability of installing Commissioner Goodell as final arbiter of claims asserted against him and the NFL, the arbitration provisions are unconscionable and unenforceable against Gruden.

### 2.    The Arbitration Clauses Fail for Lack of Mutuality

The Raiders and Gruden agreed to arbitrate disputes between themselves, but while Gruden agreed to be bound to arbitration under section 8.3(E) of the NFL Constitution, there is not a similar commitment from the Raiders in the Agreement. Thus, there is a lack of mutuality that renders the arbitration clause unconscionable. "Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a modicum of bilaterality." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (quotations omitted).

Paragraph 10 of the Agreement states that "Gruden shall abide by and be legally bound by the Constitution, Bylaws, and rules and regulations of the NFL," but it does not similarly bind the Raiders. Mot. Ex. 2; *see, e.g.,Sniezek v. Kansas City Chiefs Football Club*, 402 S.W.3d 580, 584–85 (Mo. Ct. App. 2013) (A "mere mention of the NFL's constitution and bylaws in the Agreement" did not result in the incorporation of the terms of those documents into the agreement . . . while the "Chiefs' relationship with the NFL may have required them to comply with the NFL's constitution and bylaws, nowhere in the Agreement did the Chiefs promise Sniezek that, in the context of their employment relationship with her, they would comply with the arbitration provision or any other provision in the NFL's constitution and bylaws."); *Stanfield v. Tawkify, Inc.*, 517 F. Supp. 3d 1002, 1008 (N.D. Cal. 2021) (invalidating arbitration agreement where the employer placed "no reasonable parameters on its exemption from a mutual obligation to arbitrate"). If the Agreement had not been terminated, the Raiders could have contractually forced Gruden to arbitrate certain

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

disputes before Commissioner Goodell, but Gruden could not contractually have forced the Raiders to arbitrate the same disputes, so the arbitration provisions fail entirely for lack of mutuality.

### 3. The Arbitration Clauses are Circular and Illusory

The arbitration clauses here are unconscionable and unenforceable because they are circular illusory. Under the NFL Parties' interpretation, Commissioner Goodell can unilaterally determine whether this dispute would be arbitrable or not, based on the exercise of his sole opinion. This interpretation would eliminate the ability of this Court to determine arbitrability. Accordingly, the arbitration clause is illusory because Commissioner Goodell can unilaterally expand or contract its scope.

Second, this dispute is purportedly only arbitrable if Commissioner Goodell opines that Gruden's conduct was detrimental to the best interest of the NFL or professional football. Mot. 3. Proceeding to arbitration, Gruden cannot win without invalidating the arbitration process. If Gruden prevails and his conduct was not detrimental, then Commissioner Goodell's initial determination was incorrect and the dispute should not have been referred to arbitration. Accordingly, Commissioner Goodell could only reach one conclusion in the arbitration without negating the arbitrability of the dispute, which this Court concludes is fundamentally unfair and unconscionable.

### 4. Public Policy

Arbitration agreements may be invalidated under California law when they contain provisions that are "unconscionable or contrary to public policy." *Armendariz v. Found. Health Psychcare Serv.'s, Inc.*, 6 P.3d, 669680 (Cal. 2000). Given the scope of Commissioner Goodell's claimed powers, NFL Parties' interpretation of section 8.3(E) would violate public policy by sharply curtailing employees' rights and require the waiving of rights and procedures in the arbitration context.

To the extent that any of the NFL Parties' other arguments specific to its Motion are not specifically addressed herein, the Court considered all of the arguments and defenses raised in the NFL Parties' Motion and Reply, as well as all arguments made during oral argument, and the Court finds them without merit.

/ / /

1    Accordingly, good cause appearing:

2                              **<u>ORDER</u>**

3        **IT IS HEREBY ORDERED** that the NFL Parties' Motion is DENIED in its entirety.

4                                              **Dated this 12th day of October, 2022**

5                                              *Nancy L Allf*
                                                                        MA

6                                              **36A 36B 7830 0CF1**
                                               **Nancy Allf**
7                                              **District Court Judge**

8    Submitted by:                             Approved as to form by:

9    McDONALD CARANO LLP                       BROWNSTEIN HYATT FARBER
                                                SCHRECK, LLP
10    /s/ *Adam Hosmer-Henner*
     Adam Hosmer-Henner, Esq. (NSBN 12779)      *Disapproved*
11   Jeff Silvestri, Esq. (NSBN 5779)          Mitchell J. Langberg, Esq. (NSBN 10118)
     Rory Kay, Esq. (NSBN 12416)               Maximilien D. Fetaz, Esq. (NSBN 12737)
12   Chelsea Latino, Esq. (NSBN 14227)         100 North City Parkway, Suite 1600
     Jane Susskind, Esq. (NSBN 15099)          Las Vegas, NV 89106-4614
13   Zachary Noland, Esq. (NSBN 15075)
     2300 West Sahara Avenue, Suite 1200       PAUL, WEISS, RIFKIND, WHARTON &
14   Las Vegas, Nevada 89102                   GARRISON LLP
                                               Brad S. Karp, Esq. (*pro hac vice*)
15   *Attorneys for Plaintiff Jon Gruden*      Kannon K. Shanmugam, Esq. (*pro hac vice*)
                                               Lynn B. Bayard, Esq. (*pro hac vice*)
16                                             Tiana Voegelin, Esq. (*pro hac vice*)
                                               1285 Avenue of the Americas
17                                             New York, NY 10019-6064

18                                             *Attorneys for Defendants The National Football*
                                               *League and Roger Goodell*

19

20

21

22

23

24

25

26

27

28

**CSERV**

## DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| Jon Gruden, Plaintiff(s) | CASE NO: A-21-844043-B |
| vs. | DEPT. NO.  Department 27 |
| The National Football League, Defendant(s) | |

## <u>AUTOMATED CERTIFICATE OF SERVICE</u>

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Denying was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 10/12/2022

| | |
|---|---|
| Travis Chance | tchance@bhfs.com |
| Maximillen Fetaz | mfetaz@bhfs.com |
| Mitchell Langberg | mlangberg@bhfs.com |
| Adam Hosmer-Henner | ahosmerhenner@mcdonaldcarano.com |
| Jeff Silvestri | jsilvestri@mcdonaldcarano.com |
| Brian Grubb | bgrubb@mcdonaldcarano.com |
| Pam Miller | pmiller@mcdonaldcarano.com |
| CaraMia Gerard | cgerard@mcdonaldcarano.com |
| Lynn Bayard | lbayard@paulweiss.com |
| Tiana Voegelin | tvoegelin@paulweiss.com |
| Brad Karp | bkarp@paulweiss.com |

Rory Kay                         rkay@mcdonaldcarano.com

Chelsea Latino                   clatino@mcdonaldcarano.com

Jane Susskind                    jsusskind@mcdonaldcarano.com

Zachary Noland                   znoland@mcdonaldcarano.com

Kerissa Barron                   kbarron@paulweiss.com

Caitin Pagni                     cpagni@mcdonaldcarano.com

Kannon Shanmugam                 kshanmugam@paulweiss.com

Marian Massey                    mmassey@fisherphillips.com

Brittany Falconi                 media@ournevadajudges.com