**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated, | : : : |
| Plaintiffs, | : : |
| v. | : : |
| THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26, | : : : : : : : : : : : : |
| Defendants. | : |

Civil Action No.: 22-cv-00871 (VEC)

------------------------------------------------------------- X

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ASPECTS OF THE COURT'S MARCH 1, 2023 ORDER PARTIALLY GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**WIGDOR LLP**

Douglas H. Wigdor
Michael J. Willemin
David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com

*Counsel for Plaintiffs*

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

John Elefterakis
Nicholas Elefterakis
Raymond Panek
Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: (212) 532-1116
Facsimile: (212) 532-1176

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT ...........................................................................................................................2

I.      LEGAL STANDARDS ................................................................................................2

II.     THE COURT SHOULD RECONSIDER ITS DETERMINATION THAT THE
UNCONSCIONABILITY DOCTRINE DOES NOT APPLY WHERE PARTIES
AGREE TO MANIFESTLY UNJUST TERMS FOR ARBITRATION ...........................3

        A.     The Court Overlooked that The Unconscionability Doctrine Makes *Irrelevant*
Whether the Parties "Agreed to" Manifestly Unjust Terms ...................................3

        B.     The Court Respectfully Overlooked Aspects of the Decision in *Nat'l Football
League Mgmt. Council* Which Make it Wholly Distinguishable...........................3

        C.     The Court Respectfully Overlooked Aspects of the Decision in *Gilmer* Which
Make it Wholly Distinguishable .............................................................................7

        D.     The Court Respectfully Overlooked Aspects of the Decision in *Garcia* Which
Make it Wholly Distinguishable .............................................................................8

        E.     The Court Overlooked the Fact that the Arbitration Agreements in this Matter
Give Defendants *More* Control Over the Arbitration Selection Process,
Thereby Rendering them *More* Unconscionable, than the Agreements
Invalidated in *Hooters, McMullen, Walker* and *Pokorny* ......................................11

III.    THE COURT SHOULD RECONSIDER ITS DETERMINATION THAT THE
ARBITRATION AGREEMENTS AT ISSUE DO NOT VIOLATE THE
EFFECTIVE VINDICATION DOCTRINE....................................................................14

IV.    FAILURE TO RECONSIDER THE COURT'S ORDER WILL RESULT IN
MANIFEST INJUSTICE................................................................................................15

CONCLUSION.......................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

Am. Exp. Co. v. Italian Colors Rest.,
    570 U.S. 228 (2013)...................................................................................... 14

Cole v. Burns Intern. Sec. Services,
    105 F. 3d 1465 (D.C. Cir. 1997)................................................................... 15

Cross & Brown Co. v. Nelson,
    4 A.D.2d 501 (1st Dep't 1957) ...................................................................... 13

Delta Mine Holding Co. v. AFC Coal Properties,
    280 F.3d 815 (8th Cir. 2001) .......................................................................... 5

FL-Carrollwood Care, LLC v. Gordon,
    72 So. 3d 162 (Fla. 2d D.C.A. 2011) .............................................................. 3

Floss v. Ryan's Fam. Steak Houses, Inc.,
    211 F.3d 306 (6th Cir. 2000) ........................................................................ 15

Garcia v. Church of Scientology Flag Service Organization, Inc.,
    No. 18-13452, 2021 WL 5074465 (11th Cir. Nov. 2, 2021) ........................... 8, 9, 10

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991)...................................................................................... 7, 8

Hooters of America Inc. v. Phillips,
    173 F. 3d 933 (4th Cir. 1999) ....................................................................... 11

McCarthy v. Manson,
    714 F.2d 234 (2d Cir. 1983)........................................................................... 2

McMullen v. Meijer, Inc.,
    355 F.3d 485 (6th Cir. 2004) ........................................................................ 11

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985)..................................................................................... 14

Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,
    820 F.3d 527 (2d Cir. 2016)........................................................................ 3, 4, 6, 7

Pokorny v. Quixtar, Inc.,
    601 F. 3d 987 (9th Cir. 2010) ...................................................................... 12

<u>Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church</u>,
   393 U.S. 440 (1969) ............................................................................ 10

<u>Shrader v. CSX Transp., Inc.</u>,
   70 F.3d 255 (2d Cir. 1995) ................................................................... 2

<u>U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.</u>,
   182 F.R.D. 97 .......................................................................................... 2

<u>United States v. Del Villar</u>,
   No. 20-CR-295 (VEC), 2021 WL 5180048 (S.D.N.Y. Nov. 7, 2021) ................................ 2, 14

<u>Van Buskirk v. United Grp. of Cos., Inc.</u>,
   935 F.3d 49 (2d Cir. 2019) ................................................................... 2

<u>Walker v. Ryan's Family Steak Houses</u>,
   400 F.3d 370 (6th Cir. 2005) ............................................................. 12, 13

<u>Winfrey v. Simmons Foods, Inc.</u>,
   495 F.3d 549 (8th Cir. 2007) ............................................................. 3, 4, 5

<u>Other Authorities</u>

Rule 59 of the Federal Rules of Civil Procedure ......................................................... 2

Local Rule 6.3 ...................................................................................... 2

Plaintiffs Brian Flores, Steve Wilks and Ray Horton, by and through counsel, respectfully move the Court to reconsider aspects of the Court's Opinion and Order dated March 1, 2023 (the "Order"), which partially granted Defendants' Motion to Compel Arbitration.

## PRELIMINARY STATEMENT

We respectfully implore the Court to reconsider aspects of the Order which partially granted Defendants' Motion to Compel Arbitration as it is the first and only decision that holds that a defendant-employer can require its employees to arbitrate statutory discrimination claims in front of an obviously biased senior executive under the premise that the parties "agreed to" use such arbitrator.   The Order respectfully overlooks (i) that the unconscionability doctrine precludes the enforcement of  manifestly unfair agreements even where the parties "agreed to" the unconscionable terms in the first instance, (ii) that the caselaw stating that "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen" arises in the context of completely inapposite collectively bargained labor disputes with party arbitrators, and (iii) the effective vindication doctrine requires access to a forum in which statutory claims can be legitimately pursued.  Furthermore, the broad implications of the Order would completely upend an extensive and well-developed body of case law requiring that arbitration be a reasonable replacement for a judicial forum—the Order will give employers a complete "green light" to insert completely biased arbitrators (including the employer's own executives) into arbitration agreements with judicial assurance that the unconscionability doctrine will not apply.  Respectfully, the Court should apply the law to ensure that employees are protected from this egregious abuse by employers of arbitration agreements.

# ARGUMENT

## I.      LEGAL STANDARDS

"The standards governing motions to alter or amend judgment pursuant to Rule 59(e) [of the Federal Rules of Civil Procedure] and motions for reconsideration or reargument pursuant to Local Rule 6.3 are the same." Henderson v. Metropolitan Bank & Trust Co., 502 F.Supp.2d 372, 375 (S.D.N.Y. 2007). Local Civil Rule 6.3 allows the Court to correct errors of law or fact, and whether to grant a motion for reconsideration is within the "'sound discretion of a district court judge.'" U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (quoting McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir.1983)).

A motion for reconsideration is properly granted if the movant identifies "data that the court overlooked" that would "alter the conclusion reached by the court." United States v. Del Villar, No. 20-CR-295 (VEC), 2021 WL 5180048, at *1 (S.D.N.Y. Nov. 7, 2021) (citing Van Buskirk v. United Grp. of Cos., Inc., 935 F.3d 49, 54 (2d Cir. 2019) (quotation omitted)). While the standard is not met merely by rearguing points the Court has already considered and rejected, reconsideration is justified where there is a "need to correct a clear error or prevent manifest injustice." Id. (citations omitted). In other words, courts consider matters "that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Plaintiffs respectfully submit that the Order overlooked matters that would reasonably be expected to alter its decision and, the decision will result in manifest injustice if it is not reconsidered and reversed.

## II.   THE COURT SHOULD RECONSIDER ITS DETERMINATION THAT THE UNCONSCIONABILITY DOCTRINE DOES NOT APPLY WHERE PARTIES AGREE TO MANIFESTLY UNJUST TERMS FOR ARBITRATION[1]

### A.   The Court Overlooked that The Unconscionability Doctrine Makes *Irrelevant* Whether the Parties "Agreed to" Manifestly Unjust Terms

The Court found that the Arbitration Agreements at issue are not unconscionable because "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen," citing Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 548 (2d Cir. 2016), which in turn cited the Eighth Circuit's decision in Winfrey v. Simmons Foods, Inc., 495 F.3d 549, 551 (8th Cir. 2007).  For the reasons explained below, those decisions are inapplicable and distinguishable here for reasons, respectfully, the Court overlooked.  However, the proposition that a party must be held to a term that it agreed to is completely at odds with the entire doctrine of unconscionability.  The unconscionability doctrine *requires* that a court *not enforce* and find the *absence of an agreement* when a contractual term is "so outrageously unfair as to shock the judicial conscience."  FL-Carrollwood Care, LLC v. Gordon, 72 So. 3d 162, 165 (Fla. 2d D.C.A. 2011) (Florida standard, similar in each applicable jurisdiction as previously cited).  The Court respectfully overlooked that the unconscionability doctrine trumps any supposed arbitration "agreement" and that the applicable case law supports this conclusion.

### B.   The Court Respectfully Overlooked Aspects of the Decision in *Nat'l Football League Mgmt. Council* Which Make it Wholly Distinguishable

The Court's Order acknowledged that the arbitration agreements at issue "create[ ] a risk of biased adjudication" and that "the NFL statement on the day the case was filed is worrisome."

---

[1]   Plaintiffs' motion for reconsideration includes the aspect of the Order which delegated to arbitration the issue of arbitrability as to Plaintiff Steve Wilks' claims against the Arizona Cardinals, which respectfully overlooked the same issues related to unconscionability as the underlying arbitration agreements.

Dkt. No. 76 at p. 23.  Nevertheless, citing the decision in Nat'l Football League Mgmt. Council, 820 F.3d at 548, the Court granted aspects of Defendants' motion to compel arbitration on the basis that "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen."  Dkt. No. 76 at p. 22.  However, this language from Nat'l Football League Mgmt. Council is not controlling in this matter, nor is it even persuasive, for the following reasons that were overlooked by the Court.

First, in support of its contention that "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen," the Second Circuit relied on the Eighth Circuit's decision in Winfrey v. Simmons Foods, Inc., 495 F.3d 549 (8th Cir. 2007).  The facts in Winfrey, from which the language at issue derives, are not even remotely similar to those presented herein.  Unlike the matter at bar, the arbitration agreement in Winfrey was the result of collective bargaining and it provided, as many labor arbitrations do, that each party would select one arbitrator—i.e., a "party-arbitrator"—and that the two party-arbitrators would then jointly select a third neutral arbitrator, which, of course, would render impartial the panel overall.  495 F.3d at 550-551.  After losing the arbitration, the Winfrey plaintiffs sought vacatur on the basis that the defendants' party arbitrator was biased.  Id.[2]

The district court denied the motion, and the Eighth Circuit agreed, holding that "[w]here an agreement entitles the **parties** to select interested arbitrators, 'evident partiality' cannot serve as a basis for vacating an award under § 10(a)(2) absent a showing of prejudice."  Id. (emphasis added).  In other words, it was the specific nature of the arbitration agreement at issue—one that

---

[2]    Of note, in Winfrey the defendants' complaint was in part that the plaintiffs' party-arbitrator had failed to make required disclosures.  Id. at 552.  In this case, Mr. Goodell is not required to make *any* disclosures, which runs directly contrary to the processes set forth in the rules of every legitimate provider of arbitration services.

permitted **both** parties to select a biased arbitrator—that led to the court's conclusion.  Indeed,

when read in context, the language relied upon by the Court is plainly inapplicable here:

> As we have observed in a previous case, the "parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Delta Mine Holding Co. v. AFC Coal Properties,* 280 F.3d 815, 821 (8th Cir. 2001) (internal quotations marks and citation omitted)[3], *cert. denied,* 537 U.S. 817, 123 S. Ct. 87, 154 L.Ed.2d 23 (2002). "[W]here the parties have expressly agreed to select partial party **arbitrators**, the award should be confirmed unless the objecting party proves that the arbitrator's partiality prejudicially affected the award."

Id. at 551 (emphasis added).  All that Winfrey stands for is the unremarkable proposition that

when **both** parties have the opportunity to select biased arbitrators, **who in turn select a third**

**party to inject impartiality into the process**—that those party arbitrators are permitted to be

biased without rending the process unconscionable.

Here, there is no collectively bargained arbitration process and the process employed

lacks any concept of neutrality and fairness.  In effect, contrary to Winfrey, here only **one party,**

**the NFL,** has a "party-arbitrator"—Plaintiffs have no reciprocal "party arbitrator" and there is no

neutral arbitrator balancing out the agreed upon partiality.  Moreover, the sole party-arbitrator

has already said the claims are without merit, has no disclosure obligations, has no obligation to

permit discovery, and is not subject to any other procedural safeguards.  Furthermore, Mr.

Goodell has hired and is currently represented by the same attorneys representing Defendants in

this matter and in any potential arbitration.

As such, the decision relied on in Nat'l Football League Mgmt. Council further

demonstrates that the language relied upon by the Court in partially granting Defendants' motion

should have had no bearing on this case.

---

[3]     The decision in Delta Mine also involved party arbitrators.

Second, like <u>Winfrey</u>, the arbitration agreement at issue in <u>Nat'l Football League Mgmt.</u> <u>Council</u> was the result of collective bargaining between the NFL Players Association and the NFL.  820 F.3d at 548.  This fact is critical because, unlike in the matter at bar, the arbitration agreements in <u>Nat'l Football League Mgmt. Council</u> and <u>Winfrey</u> were heavily negotiated rather than being forced upon an individual as a term and condition of employment.  To that end, immediately following the language cited by this Court, the <u>Nat'l Football League Mgmt.</u> <u>Council</u> decision reads:

> [T]the parties contracted in the CBA to specifically allow the Commissioner to sit as the arbitrator in all disputes brought pursuant to Article 46, Section 1(a). They did so knowing full well that the Commissioner had the sole power of determining what constitutes "conduct detrimental," and thus knowing that the Commissioner would have a stake both in the underlying discipline and in every arbitration brought pursuant to Section 1(a). **Had the parties wished to restrict the Commissioner's authority, they could have fashioned a different agreement.**

820 F.3d at 548 (emphasis added).

In contrast to the collective bargaining agreement at issue in <u>Nat'l Football League</u> <u>Mgmt. Council</u>, the arbitration agreements proffered to Plaintiffs were "take it or leave it" agreements that no Plaintiff had the ability to negotiate or modify.  Put another way, this case is distinguishable from <u>Nat'l Football League Mgmt. Council</u> because Plaintiffs could not have "fashioned a different agreement."  Adding to the problem, there are literally only 32 NFL Head Coach positions available and they are all held by a single monopolistic organization. Accordingly, even assuming that Plaintiffs had any power to negotiate the arbitration provisions at issue—and they did not—Plaintiffs' respective bargaining power was negligible at best.  As such, the circumstances involved in <u>Nat'l Football League Mgmt. Council</u> are inapposite to those herein.

Third, the decision in <u>Nat'l Football League Mgmt. Council</u> is also fundamentally inapposite to the facts of this case because that decision involved player discipline, whereas this matter involves the federal statutory rights.  It is normal for an employer (or an agent of an employer) to make decisions concerning employee discipline.  Indeed, employers and agents of employers make countless disciplinary decisions in connection with a variety of matters across the country on a daily basis.  In contrast, an employer is never the arbiter of whether it has violated an employee's rights under statutory law.  That decision is for the courts or a neutral arbitrator to decide, and it shocks the conscious to put in the hands of an employer the power to determine (with little recourse for the employee) whether it has violated the anti-discrimination laws.

## C. The Court Respectfully Overlooked Aspects of the Decision in *Gilmer* Which Make it Wholly Distinguishable

The Court's also respectfully overlooked aspects of the decision in <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 30 (1991) for the proposition that "Courts must avoid presupposing that the selected arbitrator will not serve as a conscientious and impartial arbitrator."  Dkt. No. 76 at p. 23.  Respectfully, the Court overlooked crucial facts in the <u>Gilmer</u> case that make it readily distinguishable from the matter at bar.

<u>Gilmer</u> involved an arbitration agreement which had a process by which the parties would mutually select a panel of **neutral** arbitrators.  500 U.S. at 30.  Indeed, the Court specifically noted that the "NYSE arbitration rules, which [were] applicable to the dispute in [<u>Gilmer</u>], **provide protections against biased panels.**"  <u>Id.</u> (emphasis added).  Those protections included (i) a process to challenge prospective arbitrators through the use of preemptory challenges, as well as unlimited challenges for cause, and (ii) substantial arbitral disclosures, including their employment histories, backgrounds and "any circumstances which might

preclude [them] from rendering an objective and impartial determination."  It was for these reasons the Court stated, "[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators."  Id. 500 U.S. at 30.  Thus, this line in Gilmer stands for the unremarkable proposition that where there is a reasonable, neutral process, courts should not intervene and make presuppositions regarding potential arbitrator bias.

But that is not even remotely the case here.  The process dictated by the NFL's arbitration agreements is at complete odds with the terms in Gilmer.  The NFL imposes as arbitrator its own biased Commissioner who has already stated that the matter is "without merit," serves only at the leisure of the NFL team owners, has been paid and stands still to be paid hundreds of millions of dollars if he remains employed, and is even personally represented by the same counsel as the NFL and teams in this litigation.  Furthermore, none of the procedural safeguards mentioned in Gilmer exist here.

For these reasons, which respectfully were not addressed, the Court's reference to and reliance on Gilmer overlooked critical aspects of that decision.  Respectfully, Plaintiffs do not ask the Court to presuppose that a neutral arbitrator may harbor bias as in Gilmer, but to the contrary, to find that what the NFL is attempting to do—fully undermine the anti-discrimination laws by having its own Commissioner act as arbitrator—completely shocks the conscience and should not be permitted.

### D.    The Court Respectfully Overlooked Aspects of the Decision in *Garcia* Which Make it Wholly Distinguishable

The Court also respectfully miscited Garcia v. Church of Scientology Flag Service Organization, Inc., No. 18-13452, 2021 WL 5074465, at *12 (11th Cir. Nov. 2, 2021). Specifically, the Court stated that the Garcia court found that an arbitration agreement was

enforceable despite the fact that the "lead arbitrator" made "various comments . . . reflecting bias in favor of the church."  Dkt. No. 76 at p. 26.  However, that is not what Garcia held.

There were two holdings in Garcia: (i) that the lower court did not err in compelling arbitration; and (ii) that the lower court did not err in vacating the arbitrator's decision. Respectfully, the Court's Order conflates the two holdings.

With respect to the latter holding—which is irrelevant given the procedural posture of this case—the Garcia court refused to vacate the arbitration award after noting that "[j]udicial review of an arbitration award 'is among the narrowest known to the law'" and determining that the plaintiffs could not establish "evident partiality."  Garcia, 2021 WL 5074465, at *10-11. This was largely because, as in Nat'l Football League Mgmt. Council, the arbitration procedure at issue provided for party arbitrators who were expected to demonstrate bias.  Id.  Accordingly, the court determined that nothing untoward—i.e., no improper bias—had been demonstrated during the arbitration that would warrant vacatur.

As to the holding on the motion to compel arbitration—the holding that would be relevant to this case if it were applicable—the Garcia court did not even consider the effect of arbitrator bias because it found that the dispute at issue was one that concerned religious doctrines and that "[t]he Supreme Court has made clear that the First Amendment forbids civil courts to decide legal disputes involving churches by "resolving underlying controversies over religious doctrine."  2021 WL 5074465, at * 9.  The decision goes on:

> Based on these well-established precedents, the district court correctly ruled that the First Amendment prevented it from entertaining the argument that Scientology doctrine rendered the arbitration agreements substantively unconscionable. Although the Garcias presented evidence to support their interpretation of Scientology doctrine, the International Justice Chief offered a conflicting interpretation. The First Amendment barred the district court from resolving this underlying controversy about church

> doctrine. *See Presbyterian Church*, 393 U.S. at 449. To do so would
> have required it to decide whether the Garcias or the Justice Chief
> "more correctly perceived the commands of [the Scientology
> religion]."

Id.  Accordingly, the Garcia court did not bless a biased process in compelling arbitration.

Rather, it held that the First Amendment barred the court from assessing substantive

unconscionability.  Id.  It should also be noted that this determination was made only after the

court held an evidentiary hearing on the motion to compel arbitration, whereas in this case

Plaintiffs were not afforded discovery.  Id.

Even putting aside the First Amendment issue, the arbitration agreement in Garcia

provided a far more impartial forum than those at issue herein.  In Garcia, while the arbitration

agreement required the parties to select arbitrators that were in good standing with the church, it

provided each party with an opportunity to select an arbitrator (whom, together, would appoint a

third neutral arbitrator).  Id. at * 2.  Moreover, there is no indication that the arbitrators in Garcia

(who were eventually selected by the district court from a list of 500 potential arbitrators) were

being paid anything by the church, much less tens of millions of dollars.  Nor did the agreement

in that case require the parties to arbitrate before an arbitrator who had already deemed the

claims to be without merit.

Finally, because the underlying claims involved interpretations of religious doctrine, and

not alleged violations of the antidiscrimination law, it intuitively makes sense that the arbitrators

would be individuals who are familiar with and ostensibly faithfully live by such doctrine.  In the

same way, it is not necessarily inherently problematic that Mr. Goodell would decide issues

related to player discipline.  But it is another matter entirely to say that a biased arbitrator can

determine violations of the antidiscrimination laws.

Accordingly, for a myriad of reasons, the Garcia case is irrelevant.

E.   **The Court Overlooked the Fact that the Arbitration Agreements in this Matter Give Defendants *More* Control Over the Arbitration Selection Process, Thereby Rendering them *More* Unconscionable, than the <u>Agreements Invalidated in *Hooters*, *McMullen*, *Walker* and *Pokorny*</u>**

Having overlooked critical distinctions between this matter and the cases relied upon in the Order, we respectfully submit that the Court correspondingly did not  give adequate weight and/or overlooked aspects of the litany of analogous persuasive authority cited by Plaintiffs. Indeed, while the Court did draw distinctions between Plaintiffs' caselaw and the facts of this case, we respectfully submit that it overlooked the fact that those distinctions cut in favor, and not against, Plaintiffs' position herein.

First, the Court distinguished <u>Hooters of America Inc. v. Phillips</u>, 173 F. 3d 933 (4th Cir. 1999) and <u>McMullen v. Meijer, Inc.</u>, 355 F.3d 485 (6th Cir. 2004) on the basis that the arbitration agreements in those cases gave the employers full discretion over the pool of potential arbitrators, whereas here Defendants have no discretion as all parties are required to arbitrate before Mr. Goodell.  Dkt. No. 76 at p. 25.  However, that distinction, respectfully, ignores various critical facts that demonstrate that the agreements at issue in this case are even more unconscionable than those at issue in <u>Hooters</u> and <u>McMullen</u>.

To begin, the suggestion that the NFL is somehow in a worse position than the employers in <u>Hooters</u> and <u>McMullen</u> because it is somehow "stuck" with Mr. Goodell overlooks the fact that it is Defendants' take-it-or-leave-it agreements that include the NFL's Commissioner as the arbitrator.  Plaintiffs are not better off—they are in a far worse position—than the plaintiffs in <u>Hooters</u> and <u>McMullen</u>.  In those cases, the plaintiffs were at least involved in the arbitrator selection process, even if the potential arbitrators were initially identified by their employers. The plaintiffs could still select the best out of a group of theoretically employer-friendly arbitrators, rather than being stuck with an arbitrator who has been paid tens of millions of

dollars by the employer and has already declared that the claims at issue were without merit. Given that Hooters and McMullen invalidated the arbitration agreements at issue, it necessarily follows that those courts also would have invalidated Plaintiffs' arbitration agreements. We respectfully submit that this Court reconsider its Order and do the same.

Second, the Court's comments with respect to Pokorny v. Quixtar, Inc., 601 F. 3d 987, 1002-3 (9th Cir. 2010) similarly suggest that the arbitration agreements at issue herein provide a more biased forum than those at issue in that case. In the Order, the Court acknowledged that the plaintiffs could select between: (i) a list of neutral JAMS arbitrators who had attended a defendant-led orientation who would be paid at a fixed rate, or (ii) select from a list of neutral JAMS arbitrators who had not attended a defendant-led orientation and who would be paid at the arbitrator's presumably higher published rate. While it is true that financial pressure might make it more likely that the plaintiffs would select the arbitrators who had attended a defendant-led orientation, the plaintiffs in Pokorny at least had a choice. The mere pressure to choose an arbitrator who had attended a defendant-led orientation—which, in any event, does not inherently give rise to any serious risk of bias—is nowhere near as problematic as being forced to arbitrate claims in front of an inherently biased arbitrator.

Third, the Court's analysis of Walker v. Ryan's Family Steak Houses, 400 F.3d 370 (6th Cir. 2005) also supports Plaintiffs' position. As the Court noted (Dkt. No. 76 at p. 26), the Walker court invalidated an arbitration agreement where the "arbitrator-selection process itself [was] fundamentally unfair." However, in Walker, the arbitrator process, while unusual, at least created the possibility of a neutral panel. See Dkt. No. 62 at p. 12. Here, there is no process at all. Instead, the unfairness is baked right into the arbitration agreement itself, as it required, up front and in take-it-or-leave it fashion, for Plaintiffs to submit all disputes to the NFL's chief

executive.  As in Hooters, McMullen and Pokorny, the plaintiffs in Walker were at least involved in the arbitration process and were in a far better position to mitigate bias than Plaintiffs are here.

Finally, the Court dismissed various other persuasive authority on the grounds that they were decided based on inapplicable state law.  See Dkt. No 76 at p. 25, n. 25 (citing, *inter alia*, Nostalgic Partners LLC v. New York Yankees P'ship, No. 656724/2020, at 2 (N.Y. Sup. Ct. Dec. 17, 2021); Gruden v. The Nat'l Football League, et al., No. A-21-844043-B, at 13-14 (Nev. Dist. Ct. Clark Cty. Oct. 12, 2022).  While these cases may have been decided under alternate state law, the standards for unconscionability are similar in each jurisdiction and Court did not distinguish those state law principles from those applicable here.  Moreover, for the reasons cited above, none of the cases cited by the Court in support of its Order are any more controlling— though they are far less persuasive—than Nostalgic and Gruden, both of which are squarely on point and hold that it is unconscionable to require an employee to arbitrate claims before the employer's chief executive.  See Nostalgic, Dkt. No. 108 at p. 2 ("Based on the appearance of impropriety, the Commissioner of Major League Baseball should not arbitrate a dispute of claims that are asserted against Major League Baseball."); Gruden, Dkt. No. 52 at p. 30 ("the enforcement of the arbitration would be unconscionable both procedurally, as well as substantive[ly]").

Moreover, Nostalgic and Gruden are consistent with other persuasive and longstanding authority.  See, e.g., Cross & Brown Co. v. Nelson, 4 A.D.2d 501, 503 (1st Dep't 1957) ("What we do hold is that no party to a contract, or someone so identified with the party as to be in fact, even though not in name, the party, can be designated as an arbitrator to decide disputes under it. Apart from outraging public policy, such an agreement is illusory; for while in form it provides for arbitration, in substance it yields the power to an adverse party to decide disputes under the

contract . . . Unless we close our eyes to realities, the agreement here becomes, not a contract to arbitrate, but an engagement to capitulate").

In sum, Plaintiffs respectfully submit that the Court overlooked matters that should "alter the conclusion reached by the court." Del Villar, 2021 WL 5180048, at *1. This is particularly true because, as explained below, a failure to reconsider and reverse the aspects of the Order that granted Defendants' motion to compel arbitration would unquestionably result in manifest injustice, have wide ranging and negative consequences for employees across the country, undermine the very principles of the FAA and, perhaps most importantly, drive a stake through the ability of employees to vindicate their rights under federal antidiscrimination laws.

## III. THE COURT SHOULD RECONSIDER ITS DETERMINATION THAT THE ARBITRATION AGREEMENTS AT ISSUE DO NOT VIOLATE THE EFFECTIVE VINDICATION DOCTRINE

The effective vindication doctrine exists to protect the Congressional intent underlying the rights afforded to individuals by federal statutes. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) ("**so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum**, the statute will continue to serve both its remedial and deterrent function") (emphasis added); Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) ("[I]n Mitsubishi Motors, . . . we expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operate . . . as a prospective waiver of a party's *right to pursue* statutory remedies.'") (emphasis added).

While the Court did consider the effective vindication doctrine, the Order just as quickly disregarded its import due to the limited successful judicial application of the doctrine. Respectfully, the Court's decision overlooked the fact that there is no caselaw holding that the effective vindication doctrine *only* applies when an arbitral forum forbids the assertion of

statutory claims or imposes costs which make pursuit of claims impracticable.  To the contrary, the effective vindication doctrine is intended to cover any situation in which an arbitration agreement prevents individuals from effectively vindicating statutory rights.

The case law is clear, and it is self-evident, that the provision of a neutral forum is an obligatory component of being able to effectively vindicate one's rights.  See e.g. Cole v. Burns Intern. Sec. Services, 105 F. 3d 1465, 1482 (D.C. Cir. 1997) ("an employee cannot be required . . . to waive access to a neutral forum in which statutory employment discrimination claims may be heard"; "statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections"); Floss v. Ryan's Fam. Steak Houses, Inc., 211 F.3d 306, 314 (6th Cir. 2000) (expressing "serious reservations" that a forum lacking in neutrality could permit effective vindication of rights).  Respectfully, the Court overlooked the statement of law by the Cole court and instead focused on the fact that the arbitration there did provide for a neutral forum—the American Arbitration Association.  Similarly, in stating that Floss was decided on alternative grounds, the Court overlooked that the alternative grounds upon which it was decided was that of unconscionability—effectively a state contract law corollary to the effective vindication doctrine.

Respectfully, the Court should reconsider the Order as it overlooked these aspects of the case law and did not fully address or apply the effective vindication of rights doctrine to the matter at bar.

## IV.     FAILURE TO RECONSIDER THE COURT'S ORDER WILL RESULT IN MANIFEST INJUSTEST

Respectfully, the Court's Order will upend decades of jurisprudence which have sought to uphold the enforcement of arbitration agreements but also protect the rights of employees from employer abuse and overreaching.  To ensure the integrity of arbitration, neutrality of the

arbitrator is of paramount importance.  Numerous courts have held—as previously cited—that while arbitration agreements are enforceable, they must have basic indicia of fairness and resemble a reasonable substitute for a judicial forum.  However, the Court's Order gives employers *carte blanche* to include terms, no matter how unfair or unconscionable, with assurance that those terms will be enforced because of the extreme expansion of the phrase "the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen."  Employers across the country, in reliance on the Order, could now appoint their own CEOs or another clearly biased person as arbitrator.  Employers could do away with neutral arbitral selection processes, mandatory arbitral conflict disclosures, required discovery or numerous other procedural safeguards typically included in arbitration agreements to ensure they will be enforced.  The result will be the eroding of employee rights in a way that Congress never intended when the FAA was passed and the Supreme Court never envisioned in Gilmer and its progeny.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request the Court's reconsideration and reversal of the Order, and for such other and further relief deemed just and proper.

Dated: March 14, 2023
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
     Douglas H. Wigdor
     Michael J. Willemin
     David E. Gottlieb
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com
*Counsel for Plaintiffs*

     - and -

**ELEFTERAKIS, ELEFTERAKIS & PANEK**


By: _____/s/_____
     John Elefterakis
     Nicholas Elefterakis
     Raymond Panek
     Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212 -532-1176
*Counsel for Plaintiffs*