**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated, <br><br>                 Plaintiffs, <br><br> v. <br><br> THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26, <br><br>                 Defendants. | Civil Action No.: 22-cv-00871 (VEC) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S MARCH 1, 2023 ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

LEGAL STANDARD.................................................................................................... 2

ARGUMENT ............................................................................................................... 3

I.     The Court Correctly Held that Plaintiffs' Allegations of Bias Do Not Invalidate
the Arbitration Agreements........................................................................................ 3

         A.     The Parties' Arbitration Agreements, Including Their Agreements to
Designate the Commissioner as Arbitrator, Should Be Enforced........................... 4

         B.     Plaintiffs' Claims of Bias Are Premature ............................................... 6

         C.     Plaintiffs' Claims of Bias Do Not Render the Arbitration Agreements
Unconscionable............................................................................................ 7

II.    Plaintiffs Are Not Prevented from Vindicating Their Rights in Arbitration ................... 11

III.   The Court's Decision Is Fully Consistent with Controlling Law and Need Not Be
Disturbed...................................................................................................... 12

CONCLUSION................................................................................................. 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Anwar* v. *Fairfield Greenwich Ltd.*,
  164 F. Supp. 3d 558 (S.D.N.Y. 2016)........................................................................2

*Cole* v. *Burns International Security Services*,
  105 F.3d 1465 (D.C. Cir. 1997) .............................................................................12

*Delta Mine Holding Co.* v. *AFC Coal Properties*,
  280 F.3d 815 (8th Cir. 2001) ..................................................................................5

*Floss* v. *Ryan's Family Steak Houses, Inc.*,
  211 F.3d 306 (6th Cir. 2000) .................................................................................12

*Garcia* v. *Church of Scientology Flag Organization, Inc.*,
  2021 WL 5074465 (11th Cir. Nov. 2, 2021).........................................................7, 8

*Gilmer* v. *Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ........................................................................................6, 7, 13

*United States ex rel. Grubea* v. *Rosicki, Rosicki & Assocs., P.C.*,
  319 F. Supp. 3d 747 (S.D.N.Y. 2018)...............................................................2, 6, 10

*Hooters of America, Inc.* v. *Phillips*,
  173 F.3d 933 (4th Cir. 1999) ..................................................................................8

*Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013)......................................................................................2

*McMullen* v. *Meijer, Inc.*,
  355 F.3d 485 (6th Cir. 2004) ..................................................................................8

*NFL Management Council* v. *NFL Players Association*,
  820 F.3d 527 (2d Cir. 2016).................................................................................4, 5

*Parisi* v. *Goldman, Sachs & Co.*,
  710 F.3d 483 (2d Cir. 2013)..................................................................................13

*Pokorny* v. *Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) ..................................................................................9

*Walker* v. *Ryan's Family Steak Houses, Inc.*,
  400 F.3d 370 (6th Cir. 2005) ..............................................................................8, 12

*Williams* v. *NFL*,
  582 F.3d 863 (8th Cir. 2009) ...................................................................................5

*Winfrey* v. *Simmons Foods, Inc.*,
  495 F.3d 549 (8th Cir. 2007) ...................................................................................5

**STATUTES**

9 U.S.C. § 10(a)(2) ...........................................................................................................6

**OTHER AUTHORITIES**

Local Civil Rule 6.3 ..........................................................................................................2

## PRELIMINARY STATEMENT

The Court correctly ruled that Brian Flores's claims against the Dolphins, Steve Wilks's claims against the Cardinals, and Ray Horton's claims against the Titans, as well as Plaintiffs' related claims against the NFL, should be compelled to arbitration.  Still unwilling to abide by their express agreements to arbitrate, Plaintiffs now urge the Court to reconsider those aspects of its decision.  Yet Plaintiffs point to no new facts and identify no controlling authority that the Court overlooked.  Instead, Plaintiffs rehash the same arguments that they have already made and that this Court already considered and rejected when it decided to enforce Plaintiffs' binding arbitration agreements.  Plaintiffs' motion is an improper second bite at the apple, does not satisfy the standard for reconsideration in this Court, and should be denied.

Plaintiffs' first and primary argument—that their arbitration agreements are unenforceable, because they designate the NFL Commissioner as arbitrator—has already been exhaustively briefed, considered, and rejected.  The Court, consistent with settled authority, correctly held that where, as here, the parties expressly assented to arbitrate their disputes before the Commissioner, those agreements must be enforced.  Plaintiffs' motion identifies no reason for the Court to revisit that conclusion other than their previously made and unsupported claims that the Commissioner will be biased against them.  The Court has already rejected those claims as speculative and premature, and insufficient to demonstrate unconscionability.  It should do so again here.

Plaintiffs' second, corollary argument—that Plaintiffs cannot effectively vindicate their rights in arbitration—is yet another attempt to relitigate old issues.  The Court already squarely rejected that argument, holding that hypothetical arbitrator bias does not bar Plaintiffs from vindicating their rights, and Plaintiffs can cite to no new law or fact that suggests otherwise.

As for Plaintiffs' final argument—that the Court's decision, left to stand, will result in "manifest injustice"—Plaintiffs' conclusory criticisms are wholly unfounded.  Unable to identify

any clear error in the Court's reasoning, Plaintiffs instead mischaracterize the Court's decision as an unprecedented ruling that endorses unfair arbitration agreements. Not so. The Court's decision to compel Plaintiffs' claims to arbitration is perfectly consistent with the Federal Arbitration Act and with a long line of controlling precedents that enforce and honor, as here, valid agreements to resolve disputes, including employment disputes, through arbitration. The Court's decision to hold the parties here to their express bargain was correct. Plaintiffs' dissatisfaction with that outcome— and their implicit invitation for this Court to do what Congress has declined to do, by voiding valid agreements to arbitrate employment disputes—is not a legitimate basis for reconsideration.

For these reasons, Plaintiffs' motion is meritless and should be denied.

## LEGAL STANDARD

The standard for granting a motion for reconsideration is settled and strict. Under Local Civil Rule 6.3, reconsideration is appropriate only where the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). "[M]ere disagreement" with the Court's decision does not suffice. *United States ex rel. Grubea* v. *Rosicki, Rosicki & Assocs., P.C.*, 319 F. Supp. 3d 747, 752 (S.D.N.Y. 2018). Instead, a successful movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* at 751 (citation omitted).

As this Court has cautioned, motions for reconsideration are "not designed to allow wasteful repetition of arguments already briefed, considered[,] and decided." *Anwar* v. *Fairfield Greenwich Ltd.*, 164 F. Supp. 3d 558, 560 (S.D.N.Y. 2016). A motion that serves merely as "a vehicle for relitigating old issues, presenting the case under new theories . . . or otherwise taking a second bite at the apple" should be denied. *Grubea*, 319 F. Supp. 3d at 751 (citation omitted).

## ARGUMENT

Plaintiffs' motion falls far short of—and indeed, completely disregards—the strict standard for reconsideration.  Unable to identify any new law or facts, Plaintiffs instead reiterate the very same arguments they already advanced multiple times in their opposition brief, sur-reply, and supplemental briefing in response to Defendants' motion to compel arbitration.  The Court has already carefully considered and rejected those arguments, and should do so again here.

## I.   THE COURT CORRECTLY HELD THAT PLAINTIFFS' ALLEGATIONS OF BIAS DO NOT INVALIDATE THE ARBITRATION AGREEMENTS

The Court correctly found that Mr. Flores's claims against the Dolphins, Mr. Wilks's claims against the Cardinals, and Mr. Horton's claims against the Titans, as well as their related claims against the NFL, all fell within the broad scope of their valid arbitration agreements with those clubs.  Dkt. 76 at 11–13, 15–20.  In their motion, Plaintiffs do not challenge the validity of those agreements.  Nor do they dispute that those agreements properly encompass their claims. Instead, Plaintiffs rely on the same argument they briefed at length in opposition to Defendants' motion to compel arbitration—namely, that those agreements are unenforceable because they designate the NFL Commissioner, who Plaintiffs speculate will be biased against them, as the arbitrator in the first instance.  Dkt. 80 at 3–14; Dkt. 62 at 5–15, Dkt. 67 at 1–9, Dkt. 75 at 4–5.

Plaintiffs' efforts to shoehorn this rehash into the reconsideration standard—by claiming that the Court "overlooked" portions of decisions on which it relied, or reasons why those cases are distinguishable from this one—amount to nothing more than second-guessing of the Court's analysis.  Far from "overlooking" the issue, the Court expressly considered Plaintiffs' argument and rejected it, properly concluding that "Plaintiffs' concern" about the Commissioner's supposed bias "is insufficient reason not to enforce [their] arbitration agreements."  Dkt. 76 at 26.  There is no basis (and Plaintiffs certainly identify none) for the Court to revisit that conclusion.

### A. The Parties' Arbitration Agreements, Including Their Agreements to Designate the Commissioner as Arbitrator, Should Be Enforced

In enforcing Plaintiffs' arbitration agreements, the Court correctly applied the basic principle that "arbitration is a matter of contract, and consequently, the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen." *Id*. at 22 (citation omitted). Here, where Plaintiffs expressly assented to arbitration before the Commissioner, the Court properly held that Plaintiffs cannot now avoid that bargained-for agreement. *Id*. at 22–26.

The Court's conclusion is fully consistent with controlling law. In particular, the Court appropriately relied on *NFL Management Council* v. *NFL Players Association*, 820 F.3d 527, 548 (2d Cir. 2016), where "the Second Circuit rejected the argument that, as a matter of law, the NFL Commissioner cannot fairly arbitrate claims regarding the NFL's conduct." Dkt. 76 at 22. In that case, as here, the parties specifically contracted to arbitrate claims before the Commissioner, "knowing full well . . . that the Commissioner would have a stake . . . in every arbitration brought." *Id*. (citing *NFL Mgmt. Council*, 820 F.3d at 548). And in that case, as here, the court saw no reason not to enforce that express bargain. *Id*. at 22–23; *NFL Mgmt. Council*, 820 F.3d at 548. Numerous courts have reached the same conclusion and recognized the authority of the NFL Commissioner (or his designee) to arbitrate disputes under agreements like the ones here. *See* Dkt. 64 at 4 & n.3.

In their motion, Plaintiffs argue that the sound reasoning in *NFL Management Council*—a binding Second Circuit decision that squarely addresses an agreement to arbitrate disputes before the NFL Commissioner—is neither "controlling . . . nor . . . persuasive." Dkt. 80 at 4. Yet each of Plaintiffs' renewed attempts to distinguish that decision (which both parties already addressed in their briefing, Dkt. 48 at 15; Dkt. 64 at 4; Dkt. 67 at 2) fails.

Plaintiffs first argue that the decision in *NFL Management Council* is inapposite because it cites to supposedly distinguishable cases involving agreements to arbitrate before panels of

arbitrators, including "party arbitrators" selected separately by each party, as opposed to a single arbitrator jointly designated by the parties.  Dkt. 80 at 4–5.  That argument fails.  As an initial matter, there is no question that the Second Circuit's decision in *NFL Management Council*—the actual decision that this Court relied on—involved an agreement that designated a single arbitrator who was also *the very same arbitrator* the parties mutually agreed to designate here:  the NFL Commissioner.  820 F.3d at 548.  The Court's reliance on that decision was therefore entirely apt.

As for the decisions cited in *NFL Management Council*, those decisions are not to the contrary, and in fact support this Court's ruling.  In *Williams* v. *NFL*, 582 F.3d 863, 885–86 (8th Cir. 2009) (a decision that Plaintiffs conveniently ignore), the Eighth Circuit, relying on the parties' express agreement to arbitrate disputes before "the [NFL] Commissioner or his designee" (as well as the lack of any evidence of partiality), denied a petition to vacate arbitral awards on the ground of bias.  And in *Winfrey* v. *Simmons Foods, Inc*., 495 F.3d 549, 551–53 (8th Cir. 2007), the Eighth Circuit likewise declined to vacate an award rendered by a panel that was selected in accordance with the terms of the parties' contract.  Contrary to Plaintiffs' arguments, nowhere in *Winfrey* did the court hold that an arbitration agreement must allow each party to select their own arbitrator.[1]  Rather, the decisions cited in *NFL Management Council* all reinforce the basic proposition that parties to an arbitration agreement must adhere to "the method they have chosen," which here indisputably is arbitration before the NFL Commissioner.  Dkt. 76 at 22.

Plaintiffs next seek to distinguish *NFL Management Council* by reiterating arguments already made in their prior briefing, Dkt. 67 at 2, contending that the case is "inapposite" because

---

[1]  Plaintiffs note that *Winfrey*, in turn, relied on the decision in *Delta Mine Holding Co*. v. *AFC Coal Properties*, 280 F.3d 815 (8th Cir. 2001), which "also involved party arbitrators."  Dkt. 80 at 5 n.3.  But *Delta Mine* also supports this Court's decision, making clear that parties to an arbitration agreement must adhere to the procedures they have chosen, even where those procedures require arbitration before a potentially "partisan arbitrator[]."  280 F.3d at 821.

it arose in the context of a "heavily negotiated" collective bargaining agreement and did not involve arbitration of federal statutory claims.  Dkt. 80 at 6–7.  These arguments should be rejected.  In particular, Plaintiffs' bald and unsupportable assertion that the agreements here were "forced" on Plaintiffs—all experienced, sophisticated, and well-compensated NFL coaches—without any negotiation, *id*. at 6, are belied by the terms of the employment contracts themselves, which vary widely by plaintiff and by club.  As the Court correctly found, Plaintiffs here "agreed to a particular arbitration structure, including a specific arbitrator," Dkt. 76 at 23, and must now abide by those agreements.  Further, those agreements apply with full force to Plaintiffs' statutory claims of employment discrimination:  not only are such claims arbitrable under longstanding precedents, Dkt. 48 at 11–12, but this Court has also already held, correctly, that these claims in particular fall within the scope of Plaintiffs' broadly-worded arbitration agreements.  Dkt. 76 at 11–13, 15–18.

The Court's decision to enforce Plaintiffs' arbitration agreements is consistent with controlling law, and Plaintiffs' "mere disagreement" with that decision is no basis for reconsideration.  *Grubea*, 319 F. Supp. 3d at 752.

## B.  Plaintiffs' Claims of Bias Are Premature

In rejecting Plaintiffs' bias-based challenges, the Court also correctly held that, consistent with the FAA's broad enforcement mandate, "[c]ourts must avoid presupposing that the [parties'] selected arbitrator will not serve as a conscientious and impartial arbitrator."  Dkt. 76 at 23.  As the Court noted, the FAA provides a specific remedy for parties who face allegedly biased arbitrators, in the form of judicial review after an arbitral award is entered, 9 U.S.C. § 10(a)(2), and Plaintiffs' speculation as to the Commissioner's ability to fairly arbitrate their claims, "at this early stage" of the proceedings, is thus wholly premature.  Dkt. 76 at 23.

In support of this conclusion, the Court properly relied on the Supreme Court's decision in *Gilmer* v. *Interstate/Johnson Lane Corp*., 500 U.S. 20 (1991), a case that both parties cited in their

prior briefing.  Dkt. 62 at 5–6; Dkt. 64 at 2.  In *Gilmer*, the Supreme Court held that an arbitration agreement was enforceable and applied to statutory discrimination claims, rejecting plaintiff's "speculat[ion]" that the designated arbitrators "will be biased."  500 U.S. at 30.  While Plaintiffs seek belatedly to distinguish *Gilmer*, arguing that the arbitrator selection process in that case was different, Dkt. 80 at 7–8, Plaintiffs are unable to explain why the process here—where all parties indisputably agreed and knew, at the time of contracting, that the designated arbitrator of their disputes would be the Commissioner—gives Plaintiffs' allegations of bias any more weight.  More to the point, Plaintiffs ignore the key premise underlying the Supreme Court's reasoning in *Gilmer* (and properly applied by this Court), which is that courts should "decline to indulge the presumption" that arbitrators will be biased, especially where the FAA already "protects against bias" through judicial review of arbitral awards.  500 U.S. at 30.  As in *Gilmer*, Plaintiffs cannot show that those protections "are inadequate to guard against potential bias."  *Id*.  Their speculative claims of bias thus remain premature and provide no legitimate ground for reconsideration.

### C.  Plaintiffs' Claims of Bias Do Not Render the Arbitration Agreements Unconscionable

The Court also correctly rejected Plaintiffs' argument—now raised multiple times—that "the risk" of bias on the Commissioner's part "renders the arbitration agreements unconscionable."  Dkt. 76 at 24–26.  In their improper bid to resurrect this failed argument, Plaintiffs once again fail to identify any controlling authority or fact that the Court overlooked.

Plaintiffs first challenge the Court's reading of *Garcia* v. *Church of Scientology Flag Organization, Inc*., 2021 WL 5074465 (11th Cir. Nov. 2, 2021), which the Court properly relied on to conclude that Florida law, which governs Mr. Flores's agreement with the Dolphins, requires that agreement to be enforced.  Dkt. 76 at 25–26.  In *Garcia*, the Eleventh Circuit upheld an arbitral award, notwithstanding "various comments made by the lead arbitrator reflecting bias in favor" of

7

defendants.  2021 WL 5074465, at *12.  The Eleventh Circuit further held, faced with the same facts, that the agreement to arbitrate was not unconscionable under Florida law, because the plaintiffs there, as here, did not meet their burden to prove both procedural and substantive unconscionability.  *Id*. at *9.  While Plaintiffs quibble with how the Court characterized these two holdings, and again point to superficial differences in the arbitration procedures at issue, Dkt. 80 at 8–10, *Garcia* fully supports the Court's conclusion.  *Garcia* establishes that, where parties have "agreed to a method of arbitration" that arguably contains some risk of "inherent partiality," they "cannot . . . seek to vacate [an] award based on that very partiality," much less refuse to comply with their agreement to arbitrate from the outset.  2021 WL 5074465, at *12.

Plaintiffs next take aim at the Court's analysis of four federal court decisions that Plaintiffs "rel[ied] heavily on" to support their unconscionability challenge.  Dkt. 80 at 11–13; Dkt. 76 at 25.  Plaintiffs have sought to analogize to those cases multiple times before, first in their unsuccessful motion seeking discovery, Dkt. 54 at 3, then again in their opposition to Defendants' motion to compel arbitration.  Dkt. 62 at 11–15.  The Court has now considered and rejected those arguments *twice*, correctly finding both times that Plaintiffs' cited cases are "inapposite."  Dkt. 76 at 25; *see* Dkt. 58 at 5–6.  In *Hooters of America, Inc*. v. *Phillips*, 173 F.3d 933, 939 (4th Cir. 1999), *McMullen* v. *Meijer, Inc*., 355 F.3d 485, 488 (6th Cir. 2004), and *Walker* v. *Ryan's Family Steak Houses, Inc*., 400 F.3d 370, 386 (6th Cir. 2005), the courts declined to enforce arbitration agreements where, among other one-sided terms not present here, one party effectively had "unrestricted control" over the potential pool of arbitrators.  *Hooters*, 173 F.3d at 939.  As the Court noted, the arbitration agreements here are fundamentally different, in that they "grant Defendants no discretion over the choice of the arbitrator:  it must be the NFL Commissioner" in the first instance, as all parties knew at the time of contracting.  Dkt. 76 at 25.  Indeed, Plaintiffs

themselves acknowledge that here the Commissioner was designated as the arbitrator "up front," and in the express terms of the contracts themselves. Dkt. 80 at 12. *Pokorny* v. *Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010), is similarly distinguishable, as the Court noted, because the agreement in that case, unlike here, allowed defendants to "use[] the threat of financial hardship" (in the form of additional fees) to skew the arbitrator selection process in their favor. Dkt. 76 at 25 n.24.

Plaintiffs do not meaningfully engage with the Court's careful analysis distinguishing these cases. Instead, Plaintiffs merely reiterate their presupposition that, because of the Commissioner's alleged bias, the arbitration process here is likely to be "far worse" than what was contemplated in their cited cases. Dkt. 80 at 11–13. This is exactly the kind of unfounded speculation that this Court properly declined to entertain, and Plaintiffs identify no controlling authority—other than the same cases they have repeatedly cited—that compels a ruling otherwise.

Plaintiffs also rehash their prior contention that this Court should follow two non-binding decisions from other jurisdictions in which courts, in circumstances not present here, declined to enforce arbitration agreements designating sports league commissioners as arbitrators. *Id.* at 13–14 (citing *Nostalgic Partners LLC* v. *New York Yankees P'ship*, No. 656724/2020 (N.Y. Sup. Ct. Dec. 17, 2021); *Gruden* v. *NFL*, No. A-21-844043-B (Nev. Dist. Ct. Clark Cty. Oct. 12, 2022)); Dkt. 62 at 10; Dkt. 68.[2] The Court properly declined that invitation, for the simple reason that,

---

[2]   The NFL has appealed the decision in *Gruden*, and proceedings in that matter have been stayed pending resolution of that appeal. In any event, as Defendants have previously explained, Dkt. 69, the Nevada state court's decision in *Gruden* is inapposite because, among many other crucial distinctions, the plaintiff in that case has asserted no claims against any clubs, unlike here, where Plaintiffs have expressly asserted claims against the clubs that employed them and with which they entered into binding arbitration agreements. As for *Nostalgic Partners LLC*, the New York state court's decision in that case arose in a distinguishable context—a dispute between an MLB club and a minor league club—and the matter was settled before an appeal from that decision could be resolved. No. 2022-00539 (N.Y. App. Div. Jan. 19, 2023).

because those cases arose under inapplicable state law, they are "not controlling." Dkt. 76 at 25 n.25. Plaintiffs do not explain how this was error, other than to argue, without any citation to case law, that "the standards for unconscionability are similar in each jurisdiction." Dkt. 80 at 13. Even if that were true, the Court's decision to adhere to controlling precedents rather than follow non-binding, inapplicable state court decisions was plainly proper.

Recognizing that they have failed to demonstrate any substantive unconscionability, Plaintiffs also attempt, belatedly, to pivot to a theory they mentioned only in passing in their prior briefing, asserting repeatedly that their arbitration agreements were "take-it-or-leave-it" contracts that Plaintiffs supposedly had no "power to negotiate." *Id*. at 6, 11–12. These suggestions of procedural unconscionability are not only false—as stated, there is no question that Plaintiffs, each a sophisticated and experienced coach, negotiated these highly lucrative contracts at arm's length—they are also belied by Plaintiffs' prior actions. Until now, Plaintiffs have deliberately avoided advancing or developing arguments based on procedural unconscionability (recognizing, no doubt, that such arguments would stretch credulity).[3] In fact, Plaintiffs effectively conceded that they cannot demonstrate procedural unconscionability by suggesting that this is the "exceptional case[]" where substantive unconscionability alone can suffice. Dkt. 62 at 8 n.6. Plaintiffs' belated efforts to manufacture a showing of procedural unconscionability, now that they have come up short on the substantive prong, is thus, at best, an impermissible bid to "present[] . . . [a] new theor[y]" under the guise of a motion for reconsideration. *Grubea*, 319 F. Supp. 3d at 751 (citation omitted). It is also, in any event, meritless: the applicable state laws require courts

---

[3]  In their prior briefing, Plaintiffs suggested only in footnotes, and in wholly cursory fashion, that "Plaintiffs did not negotiate" the arbitration agreements contained in their employment contracts. Dkt. 62 at 18 n.14; *see id*. at 8 n.6; Dkt. 67 at 3 n.2. Plaintiffs have never offered any factual support for this assertion, no doubt recognizing what is already obvious from the face of their employment contracts: that each of those contracts was highly negotiated.

to consider both procedural and substantive unconscionability,[4] and Plaintiffs can show neither.

The arguments raised by Plaintiffs' *amici* are similarly unavailing.  In their brief, *amici* largely duplicate Plaintiffs' laundry list of criticisms against the Commissioner, *compare* Dkt. 88 at 11 *with* Dkt. 62 at 6–8, 14, all of which the Court has already considered and deemed insufficient to set aside these arbitration agreements.  Dkt. 76 at 22–26.

Because Plaintiffs and their *amici* identify nothing that the Court overlooked, there is no reason to reconsider Plaintiffs' unconscionability-based challenges to the arbitration agreements.

## II.   PLAINTIFFS ARE NOT PREVENTED FROM VINDICATING THEIR RIGHTS IN ARBITRATION

In enforcing Plaintiffs' arbitration agreements, the Court appropriately rejected Plaintiffs' corollary and conclusory argument that the Commissioner's "alleged bias would prevent them from effectively vindicating" their statutory rights in arbitration.  *Id*. at 24.  As this Court noted, "[t]he Supreme Court has recognized two types of arbitration agreements" that may be set aside under the effective vindication doctrine:  agreements that "forbid[] the assertion of certain statutory rights," and agreements that impose arbitration fees "so high as to make access to the forum impracticable."  *Id*. (citation omitted).  Because Plaintiffs' allegations of arbitrator bias "fall[] into neither category," the Court properly held—consistent with a long line of controlling precedents confirming that employment disputes involving statutory rights can be arbitrated—that the effective vindication doctrine does not apply.  *Id*.; *see* Dkt. 48 at 11–12 (citing cases).

In their motion, Plaintiffs make another run at this failed argument, relying on two out-of-

---

[4]   Florida and Tennessee law, which govern Mr. Flores's agreement with the Dolphins and Mr. Horton's agreement with the Titans, require courts to weigh both procedural and substantive unconscionability.  Dkt. 64 at 3.  Mr. Wilks's agreement with the Cardinals contains a valid delegation provision which, as the Court correctly held, requires issues of arbitrability—including any potential unconscionability under governing Arizona law—to be determined by an arbitrator.  Dkt. 76 at 15–17.

circuit cases that they already cited in their prior briefing, Dkt. 62 at 12 n.9, 15–16, and which the Court already expressly considered and distinguished.  Dkt. 76 at 24 n.22.  Contrary to Plaintiffs' arguments, neither case establishes that a "neutral" arbitrator is an "obligatory component" under the effective vindication doctrine.  Dkt. 80 at 15.  As the Court correctly noted, the decision in *Cole* v. *Burns International Security Services*, 105 F.3d 1465, 1480–83 (D.C. Cir. 1997), which upheld the validity of an arbitration agreement, nowhere states that "lack of access to a neutral arbitrator [is] dispositive" of whether parties can effectively vindicate their rights in arbitration. Dkt. 76 at 24 n.22.  *Floss* v. *Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000), is similarly inapposite, given that, as this Court noted, the Sixth Circuit "expressly" declined to resolve the issue of effective vindication.  Dkt. 76 at 24 n.22.[5]  Plaintiffs' renewed attempt at this argument thus fails under the strict standard for reconsideration and on the merits.

## III.   THE COURT'S DECISION IS FULLY CONSISTENT WITH CONTROLLING LAW AND NEED NOT BE DISTURBED

Unable to point to any clear error in the Court's decision, Plaintiffs finally assert, in vague and conclusory terms, that the Court should reverse its careful reasoning in order to prevent "manifest injustice."  Dkt. 80 at 15–16.  In support, Plaintiffs mischaracterize the Court's decision as an unprecedented ruling that opens the door to "egregious abuse by employers of arbitration agreements."  *Id*. at 1.  These self-serving criticisms of the Court's decision (which Plaintiffs' *amici* duplicate in their own brief, Dkt. 88 at 12–14) are wholly unfounded.

Indeed, the Court's decision to enforce Plaintiffs' valid and binding arbitration agreements

---

[5]   Contrary to Plaintiffs' arguments, Dkt. 80 at 15, *Floss* also does not support a finding of unconscionability.  The Court has already distinguished the arbitration agreements in *Floss*, which were "identical" to the agreement in *Walker* and effectively gave defendants unilateral control over the pool of potential arbitrators, unlike here, where the parties have jointly designated the Commissioner as arbitrator and Defendants have no such discretion.  Dkt. 76 at 25–26; *Walker*, 400 F.3d at 378–79, 386.

is fully consistent with, and compelled by, controlling law.  As the Court properly recognized, the FAA reflects a "liberal federal policy favoring arbitration agreements."  Dkt. 76 at 6 (citation omitted).  The FAA's "preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims," including "claims arising under a statute designed to further important social policies." *Parisi* v. *Goldman, Sachs & Co*., 710 F.3d 483, 486–87 (2d Cir. 2013).  As the Supreme Court and numerous other courts have confirmed (and even Plaintiffs' *amici* acknowledge, Dkt. 88 at 6), statutory claims of employment discrimination can be and routinely are subject to mandatory arbitration.  *Gilmer*, 500 U.S. at 26; *see* Dkt. 48 at 11–12.  Far from "upend[ing] decades of jurisprudence," Dkt. 80 at 15, the Court's decision is entirely in line with longstanding precedents reaffirming the enforceability of arbitration agreements like the ones Plaintiffs entered into here.  Plaintiffs' implicit invitation, echoed by their *amici*, to revisit binding Supreme Court precedent and engage in judicial abrogation of the FAA—overriding the clear intent behind that statute and doing what Congress has declined to do—should be rejected.

In sum, Plaintiffs cannot show, and have not shown, that the Court's decision to enforce the parties' express arbitration agreements is anything but a correct outcome.  Importantly, the Court's decision in no way endorses "unfair or unconscionable" arbitration agreements, *id*. at 16, and does not erode any of the valid defenses that parties in other contexts may assert against truly unenforceable or unconscionable arbitration agreements.  The Court's decision holds simply that *the agreements here*—where NFL coaches and their employer clubs negotiated at arms' length and mutually and knowingly agreed to arbitrate their disputes before the NFL Commissioner—can and should be enforced.  Plaintiffs' and their *amici*'s personal dissatisfaction with that decision does not render it "unjust," and provides no basis for reconsideration.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: New York, New York
      March 31, 2023

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

By:  */s/ Loretta E. Lynch*
Loretta E. Lynch
Brad S. Karp
Lynn B. Bayard
Brette Tannenbaum
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3900
lelynch@paulweiss.com
bkarp@paulweiss.com
lbayard@paulweiss.com
btannenbaum@paulweiss.com

*Attorneys for the National Football League, New York Giants, Miami Dolphins, Denver Broncos, Houston Texans, Arizona Cardinals, and Tennessee Titans*