```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  07/25/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BRIAN FLORES, STEVE WILKS, and RAY       :
HORTON, as Class Representatives, on      :
behalf of themselves and all others similarly  :
situated,                                 :
                                          :
                              Plaintiffs,  :
                                          :
            -against-                      :
                                          :
THE NATIONAL FOOTBALL LEAGUE; NEW  :
YORK FOOTBALL GIANTS, INC. d/b/a NEW  :
YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a :         22-CV-0871 (VEC)
MIAMI DOLPHINS; DENVER BRONCOS     :
FOOTBALL CLUB d/b/a DENVER BRONCOS;  :         OPINION AND ORDER
HOUSTON NFL HOLDINGS, L.P. d/b/a      :
HOUSTON TEXANS; ARIZONA CARDINALS  :
FOOTBALL CLUB LLC d/b/a ARIZONA       :
CARDINALS; TENNESSEE TITANS          :
ENTERTAINMENT, INC. d/b/a TENNESSEE,   :
TITANS and JOHN DOE TEAMS 1 through 26, :
                                          :
                              Defendants.  :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        Plaintiffs, who are current and former coaches for NFL teams, have sued the NFL and

various member teams for racial discrimination and retaliation in violation of 42 U.S.C. § 1981

and several state laws.[1]  *See* Am. Compl., Dkt. 22.  The Court granted in part and denied in part

Defendants' motion to compel arbitration in an opinion dated March 1, 2023.  Op. ("Arbitration

Opinion"), Dkt. 76.  The Court compelled arbitration of the claims brought by Ray Horton

against the Tennessee Titans, Steve Wilks against the Arizona Cardinals, and Brian Flores

against the Miami Dolphins, as well as all related claims against the NFL; the Court denied the

---

[1]      These include the New York State Human Rights Law, the New York City Human Rights Law, the New
Jersey Law Against Discrimination, and the Florida Private Whistleblower Statute.  Am. Compl., Dkt. 22.

motion to compel arbitration of Mr. Flores's claims against the New York Giants, the Denver Broncos, and the Houston Texans, as well as his related claims against the NFL.  *Id.*

Plaintiffs moved for reconsideration of the portions of the Arbitration Opinion granting the motion to compel arbitration, and Defendants cross-moved for reconsideration, seeking to compel arbitration of the remaining claims.[2]  Pls. Mot., Dkt. 79; Defs. Mot., Dkt. 81.  Each party opposed their adversary's motion.  *See* Defs. Opp., Dkt. 89; Pls. Opp., Dkt. 93.  For the reasons discussed below, the motions for reconsideration are DENIED.

## DISCUSSION

### I.      Legal Standard

The standard under which courts evaluate a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . ."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration may be granted if the movant demonstrates "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted); *see also Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) ("[A] party moving for reconsideration must set forth 'the matters or controlling decisions which counsel believes the Court has overlooked.'" (quoting Local Civil Rule 6.3)).  Whether to grant a motion for reconsideration is a decision within "the sound discretion of the district court . . . ."  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

---

[2]      Defendants previously argued that Mr. Flores's arbitration agreement with the Miami Dolphins applied retroactively to his claims against the Denver Broncos.  *See* Op., Dkt. 76 at 10.  The Court held that the arbitration agreement could not be applied retroactively under Florida law, *see id.*, and Defendants do not seek reconsideration of that portion of the Arbitration Opinion.

A motion for reconsideration is not a party's "opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *United States v. Posada*, 206 F. Supp. 3d 866, 868 (S.D.N.Y. 2016) (internal quotation omitted) (collecting cases).  Additionally, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Schrader*, 70 F.3d at 257. "[N]ewly discovered evidence" can be a basis for reconsideration, but only if the evidence was not available prior to entry of the order at issue.  *Marhone v. Cassel*, No. 16-CV-4733, 2021 WL 142278, at *2 (S.D.N.Y. Jan. 14, 2021).  "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court."  *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (citation omitted).

## II.     Defendants' Motion for Reconsideration Is Denied

Defendants sought to compel arbitration of Mr. Flores's claims against the Denver Broncos, New York Giants, and Houston Texans arguing, *inter alia*, that the arbitration provisions in his recent contract with the Pittsburgh Steelers ("Flores-Steelers Agreement"), and the NFL Constitution incorporated therein, applied retroactively to claims against any NFL team. *See* Op. at 9.  Defendants alternatively sought to compel arbitration of Mr. Flores's claims against the Denver Broncos because those claims arose when Mr. Flores was coaching for the New England Patriots.  *See id*.  His contract with the Patriots ("Flores-Patriots Agreement") had an arbitration agreement that applied to claims against any NFL team.  *See id*.

The Court held that Mr. Flores did not have a valid arbitration agreement with the Steelers because Defendants had not proven that the arbitration agreement was part of a valid contract.  *See id*. at 13.  Section 12 of the Flores-Steelers Agreement states that the contract would "become valid and binding upon each party only when and if it shall be approved by the

3

Commissioner of the NFL;" in the version of the contract filed by Defendants in support of their motion to compel arbitration, the Commissioner's signature line was blank. *See* Second DiBella Decl. Ex. 4 ("Flores-Steelers Agreement"), Dkt. 73. Accordingly, the Flores-Steelers Agreement submitted by Defendants, by its own terms, was not "valid and binding." *Id*.; *see also* Op. at 13. The Court also held that the arbitration agreement contained in the NFL Constitution and incorporated into the Flores-Patriots Agreement was unenforceable because the NFL retained the unilateral right to modify the NFL Constitution and the arbitration agreement, rendering the arbitration agreement illusory according to Massachusetts state law. Op. at 21–22.

### A.  The Flores-Steelers Agreement Is Not Binding

In their motion for reconsideration, Defendants ask the Court to reconsider its prior decision with respect to the Flores-Steelers Agreement based on a newly-filed version of the Flores-Steelers Agreement that contains the NFL Commissioner's signature. Defs. Mem., Dkt. 82 at 13. The signed contract, which is new evidence, cannot be considered on a motion for reconsideration because it was available to Defendants before the Court issued the Arbitration Opinion. *See Marhone*, 2021 WL 142278, at *2. Defendants acknowledge that they possessed a fully-signed version of the Flores-Steelers Agreement when the motion to compel arbitration was being briefed. *See* Defs. Mem. at 13 n.7; *see also* Smith Decl., Dkt. 98 ¶ 2 (stating that Commissioner Goodell approved the Flores-Steelers Agreement on June 17, 2022). The Court credits Defendants' statement of regret for "not having supplemented the record with a Commissioner-signed version of the agreement" during the eight months that the motion to compel arbitration was pending. Defs. Mem. at 13 n.7. But a motion for reconsideration is not a means to mend holes in the record with neglected evidence. *See Horsehead Res. Dev. Co., Inc. v. B.U.S. Envt'l Serv. Inc.*, 928 F. Supp. 287, 289 (S.D.N.Y. 1996) ("[A] motion for

reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Id.* (cleaned up).)

Defendants alternatively argue that the Flores-Steelers Agreement was valid and binding even without Commissioner Goodell's signature. Defs. Mem. at 14. The contract plainly states, however, that it is "valid and binding upon each party only when and if it shall be approved by the Commissioner of the NFL." Flores-Steelers Agreement § 12. "Courts do not assume a contract's language was chosen carelessly," and must give effect to the "clear and unequivocal" language of a contract. *Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 623 (Pa. 2005). The Flores-Steelers Agreement clearly establishes that it would not be binding on the parties until it was signed by Commissioner Goodell.

In sum, as the parties moving to compel arbitration, Defendants carried the burden of proving the existence of a written agreement binding the parties to arbitrate the present matter. *See* Op. at 14 (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (collecting cases); *Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 552–53 (2d Cir. 2009)). When Defendants moved to compel arbitration, they failed to do so.

Defendants argue that because Mr. Flores actually served as the Steelers' coach, there is an enforceable contract between the Steelers and Mr. Flores. *See* Defs. Mem. at 14. They posit that the Commissioner's signature was "[a]t most . . . a condition precedent to the parties' obligations to perform under the agreement, which was waived and excused when Mr. Flores performed, and accepted performance from the Steelers, under that very same agreement."[3] *Id*. Defendants failed to raise this argument as part of the underlying motion to compel arbitration,

---

[3]     Pennsylvania law, which governs the Flores-Steelers Agreement, *see* Flores-Steelers Agreement § 20, provides that "if a condition precedent is not satisfied, the obligations of the non-performing party are discharged." *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 620 (E.D. Pa. 1998).

and the Court will not consider it now.  Defendants' suggestion that the Court should now revise its prior decision based on this new legal theory because neither party previously briefed the issue flips the standard for motions for reconsideration on its head.  It is black letter law that, "[e]xcept where a movant is relying on new facts that could not have been previously discovered or newly promulgated law, additional facts or new legal theories cannot be asserted by way of a motion for reconsideration." *Bloomfield Inv. Res. Corp. v. Daniloff*, No. 17-CV-4181, 2021 WL 2310446, at *2 (S.D.N.Y. June 7, 2021) (internal quotation omitted).[4]

### B. Flores-Patriots Contract

Defendants further dispute the Court's conclusion that the Flores-Patriots Agreement is illusory under Massachusetts law because Defendants retained the right unilaterally to modify the terms of the NFL Constitution, which contained the arbitration agreement applicable to Mr. Flores's disputes with other teams, without notice.  *See* Defs. Mem. at 1; Op. at 21.  Defendants alternatively argue that even if the agreement is unenforceable, the unilateral modification provision should be severed from the arbitration agreement.  *See* Defs. Mem. at 1–2.  For the reasons discussed in the Arbitration Opinion and further detailed below, Massachusetts law precludes enforcement of the arbitration agreement incorporated into the Flores-Patriots Agreement because the contract is illusory; because an illusory contract is no contract at all, severance is not possible.

---

[4]     Even if the Court were to consider Defendants' new argument, Defendants' motion would likely still fail. While some courts applying Pennsylvania law have excused compliance with conditions precedent when the parties accepted partial performance of the contract, *see McDermott*, 11 F. Supp. 2d at 622, Defendants did not previously, nor have they now, introduced evidence that might allow the Court to conclude, as a matter of law, that there was partial performance. *See MBR Constr. Servs., Inc. v. IBEW Local*, No. 14-CV-1694, 2016 WL 815566, at *7 (M.D. Pa. Mar. 2, 2016) (noting that Pennsylvania law requires the party seeking to compel performance of a contract to prove that any conditions precedent are satisfied).

### 1.  Unilateral Modification Provision

In holding the Flores-Patriots Agreement illusory, the Court relied on *Jackson v. Action for Boston Community Development, Inc.*, 525 N.E.2d 411 (Mass. 1988), which held that a former employee could not contractually enforce the terms of her employment manual.  The *Jackson* court considered several factors in finding that the employee manual did not constitute an enforceable contract, including the fact that the manual could be unilaterally modified by the employer.  *See id.* at 414–15.  Although the manual provided that employees would be notified of any changes, the *Jackson* court found it significant that the employer did not call "special attention" to the manual, such as reviewing the manual during orientation, and the plaintiff did not sign the manual or otherwise manifest assent to the terms of the manual.  *See id.* at 416 (internal citations omitted).  *Jackson* observed that the fact "that the defendant retained the right to modify unilaterally the personnel manual's term . . . tends to show that any 'offer' made by the defendant in distributing the manual was illusory."  *Id.* at 415.  The court also noted that it was significant that the record did not "reveal[] any negotiation over the terms of the personnel manual."  *Id.*

*O'Brien v. New England Telephone & Telegraph Co.*, 664 N.E.2d 843, 847 (Mass. 1996), clarified the fact-intensive inquiry that courts must undertake in evaluating whether a document subject to unilateral modification is an enforceable contract while emphasizing that the "[p]rinciples stated in the *Jackson* opinion remain sound."  *Id.* at 847.  The *O'Brien* court refrained from "defin[ing] the extent to which management may effectively reserve its right to change or withdraw a manual" because the employer in that case had not expressly reserved the right to make unilateral changes, although it did distribute new policy manuals annually.  *See id.* at 849; *see also id.* at 848 n.3.  The court held that "the context of the manual's preparation and

7

distribution is, to us, the most persuasive proof that it would be almost inevitable for an employee to regard it as a binding commitment . . . ." *Id.* at 849 (internal quotation omitted).

*Buttrick v. Intercity Alarms, LLC*, 929 N.E.2d 357 (Mass. App. Ct. July 1, 2010),[5] applied *Jackson* and its progeny to find that the employee manual in that case was a binding contract.  In *Buttrick*, the employer had required the employee to sign the manual, had distributed numerous copies of the manual, and had personally reviewed the manual's terms with the employees.  *See id.* at *1–2.  Given the "special attention" paid to the manual, *Buttrick* held that there was an enforceable contract, notwithstanding the employer's reservation of rights to make unilateral modifications.  *Id.* at *1.  The court reiterated, however, that "[w]hether an implied contract based upon the terms of the manual [existed] . . . was a fact-bound inquiry," while observing that "a number of factors weighed against the finding of a binding contract."  *Id.*

Numerous courts have applied *Jackson* and its progeny to decline to enforce contracts that permit one party unilaterally to modify the terms without notifying the counterparty of any changes.[6]  *See, e.g.*, *Douglas v. Johnson Real Est. Invs., LLC*, 470 F. App'x 823, 826 (11th Cir. 2012); *Fawcett v. Citizens Bank, N.A.*, 297 F. Supp. 3d 213, 221 (D. Mass. 2018) (collecting cases); *McNamara v. S.I. Logistics, Inc.*, No. 17-CV-12523, 2018 WL 6573125, at *3–4 (D. Mass. 2018) (collecting cases); *Wainblat v. Comcast Cable Comm'ns, LLC*, No. 19-10976, 2019 WL 5698446, at *4 (D. Mass. 2019); *Murray v. Grocery Delivery E-Servs. USA Inc.*, 460 F. Supp. 3d 93, 97–98 (D. Mass. 2020); *see also Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033,

---

[5]      *Buttrick v. Intercity Alarms, LLC*, 929 N.E.2d 357 (Mass. App. Ct. 2010), is a nonprecedential opinion that was issued with a caveat that it "may not fully address the facts of the case or the panel's decisional rationale," *id.* at *1.

[6]      *Ferguson v. Host International, Inc.*, 757 N.E.2d 267 (Mass. App. Ct. 2001), is not to the contrary. Although the employer retained the right to amend the manual without notice, the employer had in fact distributed the amended manual to employees, *id.* at 269.  The *Ferguson* court noted that the employer's distribution of the manual conveyed to employees its importance as a binding document.  *Id.* at 272.

1041 n.10 (Mass. 2021) (criticizing a terms of usage agreement permitting unilateral
modification without notice and noting that courts have held that such contracts are
unenforceable).[7]

     Defendants have not demonstrated that they paid the type of "special attention" to the
NFL Constitution that is necessary to make its terms part of an implied contract under
Massachusetts state law.  Although Mr. Flores signed a contract that incorporated by reference
the NFL Constitution,[8] that does not automatically mean that the NFL Constitution is
enforceable.  The Supreme Judicial Court of Massachusetts has held that an employee's
signature on the manual itself would suggest, at most, that finding an implied contract exists
"may be justified."  *Weber v. Comm. Teamwork, Inc.*, 752 N.E.2d 700, 714 (Mass. 2001).

     In the context of employee manuals, Massachusetts courts have made clear that "the
context of the preparation and distribution of the employment policies is the most persuasive
proof" in determining whether employment policies are implied contracts.  *LeMaitre v. Mass.*

---

[7]    While Defendants assert that these cases improperly single out arbitration agreements for application of the
unilateral modification rule, *see* Defs. Mem., Dkt. 82 at 11–12, Massachusetts courts find that contracts containing a
unilateral modification provision are illusory in a wide variety of contexts, including employee manuals, which, like
the NFL Constitution, set forth general policies governing the conduct of both employer and employee.  *See infra*
pp. 7–8*; see also Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133, 147–48 (D. Mass. 2021) (applying *Jackson* to
academic catalogs).

     Defendants also attempt to analogize the instant case to *Gilbert v. Dell Technologies, Inc.*, 415 F. Supp. 3d
389 (S.D.N.Y. 2019), which applied *Jackson* to enforce an arbitration agreement provided to an employee in
conjunction with her employment agreement.  Defs. Mem. at 7–8.  In that case, the employer retained authority
unilaterally to modify the arbitration policies but not the arbitration agreement itself.  *See id*. at 393–94, 398.  Those
policies were, as here, incorporated into the employment agreement.  *See id*. at 393.  The employer in *Gilbert*,
however, had drawn special attention to the arbitration policies by placing the contractual clause that incorporated
the arbitration policies "prominently above the signature line."  *Id*. at 396; *see also id*. at 393.

[8]    One provision of the Flores-Patriots Agreement stated that Mr. Flores received a copy of the 124 NFL
Constitution and understood his obligations therein.  Flores-Patriots Agreement § 15; *see also* Second DiBella Decl.
Ex. 1 ("NFL Constitution"), Dkt. 73.  Mr. Flores disputes that he received a copy of the NFL Constitution at the
time of signing.  He has submitted no evidence to support that assertion, Pls. Opp. to Arb. Mem., Dkt. 62 at 9, and
Defendants submitted no evidence to show that he was given a copy of the constitution at that time.  Because the
Court finds that whether Mr. Flores received a copy of the NFL Constitution is not dispositive in light of the totality
of circumstances, the Court need not resolve this dispute.

9

*Turnpike Auth.*, 897 N.E.2d 1218, 1220 (Mass. 2008) (employment manual that was regularly distributed created contractual rights and obligations); *see also LeMaitre v. Mass. Turnpike Auth.*, 876 N.E.2d 888, 893 (Mass. Ct. App. 2007) (noting that the manual was "regularly distributed").  Mr. Flores argues, and Defendants do not dispute, that neither the NFL nor the Patriots reviewed with him the obligations of the NFL Constitution, required him to sign the NFL Constitution itself, or distributed to him subsequently-amended versions of the NFL Constitution.  *See* Pls. Opp. to Arb. Mem., Dkt. 62 at 9; Pls. Opp. at 8; Defs. Reply, Dkt. 99 at 4. *See, e.g.*, *Buttrick*, 2010 WL 2609364, at *1–2.  Nor could Mr. Flores have reasonably negotiated the terms of the NFL Constitution, which, by its terms, may only be amended by a vote of all NFL member clubs.  *See Jackson*, 525 N.E.2d at 414–15 (considering lack of negotiation the terms of an employment manual as one factor in determining that a unilateral modification provision rendered the agreement illusory).

Finally, Defendants belatedly argue that the Court need not address the fact that the NFL has the unilateral power to modify the NFL Constitution because it may simply enforce the version of the NFL Constitution that was in force when the Flores-Patriots Agreement was signed.[9]  *See* Defs. Mem. at 4 n.1; Defs. Reply at 3 n.1.  Defendants forfeited this argument by failing to raise it in their briefs filed in conjunction with their motion to compel arbitration and by failing to submit the version of the NFL Constitution that was in effect when the Flores-Patriots Agreement was signed with their motion to compel arbitration.  They offer no explanation for their oversight, and the Court will not consider this argument now.[10]  *See*

---

[9]      Defendants point to a court filing in a class-action litigation in an out-of-district case regarding NFL players' concussion injuries that attached as an exhibit a prior version of the NFL Constitution as proof that the NFL did not amend the arbitration provision after the Flores-Patriots Agreement was executed.  Defs. Mem. at 4 n.1.

[10]     Even if the Court were to consider this argument, however, serious questions would remain regarding the enforceability of the arbitration agreement in light of the NFL's ability unilaterally to modify the NFL Dispute Resolution Procedural Guidelines, which govern any arbitral proceeding between a coach and the NFL.  *See Flores-*

*AlexSam, Inc. v. Aetna, Inc.*, No. 13-CV-1025, 2021 WL 3268853, at *9 n.8 (D. Conn. July 30, 2021) (noting that judicial notice of additional facts was inappropriate on a motion for reconsideration where the petitioner "has not explained any reason for failing to include [the additional facts] in its earlier filings").

### 2.   Severability

Defendants finally argue that, even if the unilateral modification provision renders the arbitration agreement unenforceable, the Court should sever the unilateral modification provision and enforce the remainder of the parties' contract.  *See* Defs. Mem. at 9–10.  The Federal Arbitration Act ("FAA") requires courts to treat arbitration clauses "as severable from the contract in which it appears . . . unless the validity challenge is to the arbitration itself . . . ." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298–99 (2010).  The fact that agreements to arbitrate are "severable does not mean that they are unassailable;" if the party seeking to avoid arbitration challenges the arbitration provision specifically, as Plaintiffs have, courts may appropriately consider whether the arbitration agreement is so defective that severance cannot save it.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010); *see also* Pls. Opp. to Arb. Mot. at 9.

The focus of *Jackson* and its progeny is whether, in the broader context of the contractual relationship, one party's ability unilaterally to change the terms of a contract renders that contract illusory.[11]  *See Jackson*, 525 N.E.2d at 415; *see also O'Brien*, 664 N.E.2d at 848;

---

Patriots Agreement § 17; Second DiBella Decl. Ex. 2 at 13–17 ("NFL Dispute Resolution Procedural Guidelines"), Dkt. 73.

[11]   *Emmanuel v. Handy Technologies, Inc.*, 992 F.3d 1 (1st Cir. 2021), is not to the contrary; it did not address the plaintiff's argument that the unilateral modification provision rendered the contract illusory because, *inter alia*, plaintiff did not direct that argument to the arbitration agreement specifically, *see id*. at 10–11.

Similarly, *Joule, Inc. v. Simmons*, No. SUCV200904929A, 2011 WL 7090714 (Mass. Super. Ct. Dec. 5, 2011), did not opine on the issue of whether the employer's ability unilaterally to modify the arbitration procedures,

*Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 398 (S.D.N.Y. 2019) ("Under Massachusetts law, an agreement to arbitrate can be illusory if the agreement can be modified unilaterally by one party."). Massachusetts courts view unilateral modification provisions as posing a challenge to contract formation because the fact that the offeror retains the right unilaterally and retroactively to alter the terms of the offer "tends to show that any 'offer' made . . . was illusory," such that there was no offer at all. *Jackson*, 525 N.E.2d at 415; *see also O'Brien*, 664 N.E.2d at 848. Thus, severance cannot be an appropriate remedy because there is no otherwise valid agreement from which the Court might sever invalid terms.

Defendants' "argument that any illusory provision of the contract could simply be severed and the remainder of the contract stand would require [the Court] to engage in an absurd process," essentially "reviving a contract [it] found was never formed for its lack of consideration, omitting the change-in-term provision clause that was fatal to the contract's proper formation, to therefore conclude a contract was formed." *Nat'l Fed. of the Blind v. The Container Store*, 904 F.3d 70, 87 (1st Cir. 2018); *see also McNamara*, 2018 WL 6573125, at *3 (collecting cases).[12]

---

but not the arbitration agreement, rendered the contract illusory because, after remand from the Supreme Judicial Court, the only issue remaining for consideration was whether the contract was unconscionable. *See id.* at *2. In *Joule*, the employer had drawn special attention to the document containing arbitration procedures by appending it to the agreement "at the time that [the employee] signed it." *Id.* at *4. The Flores-Patriots Agreement states only that Mr. Flores had reviewed the document at an unspecified time, and the version of the Flores-Patriots Agreement in the record did not append the NFL's Constitution or Dispute Resolution Procedural Guidelines, which were both subject to the NFL's unilateral modification. *See supra*, page 10, note 10.

[12]   Even if the Court were to find that there was a valid agreement from which it could sever the unilateral modification provision in order to create a valid arbitration agreement, severance would still be inappropriate. The existence of a severance clause in a contract containing unenforceable terms "is not dispositive of the question whether those terms may in fact be severed" under Massachusetts law. *Machado v. System4 LLC*, 989 N.E.2d 464, 472 n.15 (Mass. 2013). Rather, courts must examine whether severance would alter the basic agreement to arbitrate, or the defect is so pervasive that severance would be inappropriate. *See Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 848 F. App'x 11, 13 (2d Cir. 2021); *Feeney v. Dell Inc.*, 908 N.E.2d 753, 769 (Mass. 2009).

Defendants argue that severance would be "especially straightforward" and merely require revising section 15 of the Flores-Patriots Agreement to delete the requirement that Mr. Flores adhere to the NFL Constitution "as amended from time to time hereafter." Defs. Reply, Dkt. 99 at 5 (internal quotation omitted). This assertion ignores

### III.   Plaintiffs' Motion for Reconsideration Is Denied

Plaintiffs' motion for reconsideration extensively relitigates their arguments that the

arbitration agreements are unconscionable and prevent effective vindication of Plaintiffs'

statutory claims, which the Court previously considered at length and rejected.  Without

rehashing the entirety of the Arbitration Opinion, the Court briefly explains why the arbitration

agreements contained in Mr. Flores's contract with the Miami Dolphins ("Flores-Dolphins

Agreement"), Mr. Wilks' contract with the Arizona Cardinals ("Wilks-Cardinals Agreement"),

and Mr. Horton's contract with the Tennessee Titans ("Horton-Titans Agreement") are

enforceable.

As in their opposition to the motion to compel arbitration, Plaintiffs primarily base their

arguments on their speculation that the NFL Commissioner will necessarily be biased as an

arbitrator.  *See, e.g.*, Pls. Mem., Dkt. 80 at 3–5.  The Second Circuit has already rejected the

argument that the NFL Commissioner cannot fairly "adjudicate the propriety of his own

conduct," even when he acts as the sole arbitrator.[13]  *Nat'l Football League Mgmt. Council v.*

*Nat'l Football League Players Ass'n*, 820 F.3d 527, 548 (2d Cir. 2016); *see also* Op. at 22–23.

While Plaintiffs attempt to distinguish that case on the grounds that it involved a contract

that was the process of collective, rather than individual, bargaining and concerned a dispute

---

the fact that sections 16 and 17 of the Flores-Patriots Agreement also require Mr. Flores to adhere to subsequent amendments of NFL rules, including the NFL's Dispute Resolution Procedural Guidelines, which govern arbitration.  Furthermore, the NFL Constitution generally grants the NFL Commissioner the unilateral power to set and amend all NFL rules and regulations, including the NFL Dispute Resolution Procedural Guidelines, and to promulgate other arbitration-related rules in the future that would bind Mr. Flores.  *See* NFL Constitution § 8.5.   In sum, multiple portions of the parties' agreement grant the NFL unilateral authority to modify the contract; those provisions infect "fundamental elements of the arbitration regime" that cannot be severed from the whole.  *Feeney*, 908 N.E.2d at 769.

[13]   That case concerned "quarterback Tom Brady's involvement in a scheme to deflate footballs used during the 2015 American Football Conference Championship Game to a pressure below the permissible range."  *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 531 (2d Cir. 2016).

over player discipline instead of federal statutory rights, the Second Circuit relied on neither fact in reaching its decision. *See* Pls. Mem. at 5–6; *Nat'l Football League Mgmt. Council*, 820 F.3d 527 at 548. Furthermore, it is well-established that "[m]ere inequality in bargaining power . . . is not a sufficient reason" to invalidate arbitration agreements; "the FAA's purpose was to place arbitration agreements on the same footing as other contracts."[14] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 33 (1991). As the Second Circuit emphasized in *National Football League Management Council*, "arbitration is a matter of contract, and consequently, the parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen."[15] 820 F.3d at 548; *see also Garcia v. Church of Scientology Flag Serv. Org,, Inc.*, No. 18-13452, 2021 WL 5074465, at *12 (11th Cir. 2021) (holding that because the plaintiff "agreed to a method of arbitration with inherent partiality" it was bound to the results of the arbitration).

The FAA contemplates that federal courts should address issues of bias in the administration of arbitration by examining whether the arbitrator demonstrated "evident partiality" in presiding over the arbitration; if he did, the arbitration award may be overturned. *Gilmer*, 500 U.S. at 30; *see also* 9 U.S.C. § 10(a)(2). Plaintiffs argue that *Gilmer* limits this rule to cases in which neutral procedures govern arbitration. *See* Pls. Mem. at 7–8. While *Gilmer* noted that the existence of unbiased procedures favored enforcing the arbitration agreement at issue, that was not central to its holding. *See Gilmer*, 500 U.S. at 30. Rather, *Gilmer* held that the FAA already contemplates protection against bias by permitting courts to overturn arbitration

---

[14]     *Amici* law professors take issue with the trajectory of the Supreme Court's jurisprudence regarding the Federal Arbitration Act generally and suggest that *Gilmer* was wrongly decided. Amici Mem., Dkt. 88 at 6–7, 6 n.11. Whatever the merits of the learned professors' argument, this Court is, of course, bound by *Gilmer* and its progeny.

[15]     There are numerous reasons why Plaintiffs rationally could have consented to select the NFL Commissioner as arbitrator, including the fact that the Commissioner possesses unique subject-matter expertise on matters related to the NFL.

awards that are marred by evident partiality of the arbitrator.  The Court noted only in passing

that "[i]n any event," the arbitration rules applicable to that dispute protected "against biased

panels."  *Id*.  In short, "it is well established that a district court cannot entertain an attack upon

the . . . partiality of arbitrators until after the conclusion of the arbitration and the rendition of the

award."  *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) (internal quotation

omitted).

Plaintiffs alternatively ask the Court to find that the arbitration agreement is

unenforceable because the alleged structural bias prevents Plaintiffs from effectively vindicating

their statutory claims.  Pls. Mem. at 14–15.  As the Court previously explained in its Arbitration

Opinion, the effective vindication doctrine is a highly circumscribed judge-made exception to the

FAA.  *See Am. Express v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013); Op. at 24.  The

Supreme Court has never expanded it to encompass structural bias, and the nonbinding caselaw

cited by Plaintiffs is unpersuasive for the reasons already discussed in the Arbitration Opinion.

*See* Op. at 24.  While Plaintiffs accuse the Court of breaking new ground in compelling

arbitration of their claims and causing manifest injustice, this result was anticipated by Justice

Kagan, who expressed concern that the Supreme Court's limitations on the effective vindication

doctrine would permit companies to "appoint as an arbitrator an obviously biased person — say,

the CEO . . . ."  *Am. Express*, 570 U.S. at 242 (Kagan, J. dissenting); Op. at 24 n.23.[16]

Finally, Plaintiffs once again argue that the arbitration agreements are unconscionable

under the applicable state contract laws.  Pls. Mem. at 11–13.  Plaintiffs did not initially, nor do

---

[16]     Nothing in this Opinion should be read to suggest that the Undersigned harbors no concern about whether
the process the NFL has apparently chosen to implement in this sort of dispute with coaches will be, and will be
publicly perceived to be, fair.  The Court is ruling only that, given the current legal structure, it must await the
outcome of the arbitration to decide whether Plaintiffs' fears of unfairness were warranted or whether the NFL
Commissioner gave them a fair shake to prove their claims.

they now, cite any binding caselaw holding that arbitration agreements in which one party consents to the appointment of the counterparty's representative as arbitrator are unconscionable. While some courts have declined to enforce arbitration agreements in which the arbitrator selection procedures were so one-sided as to render the agreement unconscionable under applicable state law, those cases are inapplicable when the party seeking to avoid arbitration has consented to resolving his dispute before a specific arbitrator.  *See* Op. at 24–25; *see also Gainseville Health Care Ctr., Inc. v. Weston*, 857 So.2d 278, 286 (Fla. Dist. Ct. App. 2003) (noting that Florida state courts "decline to indulge the presumption that the . . . arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators" in determining whether an arbitration agreement is unconscionable (quoting *Gilmer*, 500 U.S. at 30)).

Plaintiffs, in essence, ask the Court to fashion a specific rule out of whole cloth to protect them from potential arbitrator bias that may never manifest itself.  To do so would be in direct violation of the FAA's admonition against carving out rules disfavoring the enforcement of arbitration agreements from generally applicable contract law.  *See Gilmer*, 500 U.S. at 24.

## CONCLUSION

For the foregoing reasons, both Plaintiffs' and Defendants' motions for reconsideration are DENIED.  The Clerk of Court is respectfully directed to terminate the open motions at docket entries 79 and 81.

The parties are ordered to appear for a pretrial conference on **Friday, August 4, 2023, at 10:00 A.M.** in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New

York, New York, 10007.  By **July 27, 2023**, the parties must submit a joint letter, the contents of which are described on pages 29 and 30 of the Arbitration Opinion.


**SO ORDERED.**

**Date:  July 25, 2023**                                                       _____
      **New York, NY**                                                      **VALERIE CAPRONI**
                                          **United States District Judge**