**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated, | : : : |
| Plaintiffs, | : : |
| v. | : : : |
| THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26, | : : : : : : : : : : : : : |
| Defendants. | : |

Civil Action No.: 22-cv-00871 (VEC)

**ORAL ARGUMENT REQUESTED**

------------------------------------------------------------ X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b)**

**WIGDOR LLP**

Douglas H. Wigdor
Michael J. Willemin
David E. Gottlieb
Marjorie Mesidor

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com
mmesidor@wigdorlaw.com
*Counsel for Plaintiffs*

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

John Elefterakis
Nicholas Elefterakis
Raymond Panek
Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: (212) 532-1116
Facsimile: (212) 532-1176
*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND .................................................................................................................1

PROPOSED QUESTIONS OF LAW FOR APPEAL.........................................................3

ARGUMENT .......................................................................................................................3

I.      LEGAL STANDARD................................................................................................3

II.     PLAINTIFFS' APPEAL CONCERNS CONTROLLING QUESTIONS OF LAW..........4

        A.      Reversal of the District Court's Opinion, Even Though Not Resulting in
                Dismissal, Could Significantly Affect the Conduct of the Action .........................4

        B.      The Certified Issue Has Precedential Value for a Large Number of Cases ...........9

III.    PLAINTIFFS' PROPOSED APPEAL INVOLVES SUBSTANTIAL GROUND FOR
        DIFFERENCE OF OPINION ...........................................................................................12

        A.      There Is "Substantial Ground for Disagreement" As to Whether the Doctrine
                of Unconscionability Renders an Arbitration Agreement Unenforceable
                Where It Fails to Provide for an Unbiased Forum and/or Arbitrator....................16

        B.      There Is "Substantial Ground for Disagreement" As to Whether the "Effective
                Vindication of Rights" Doctrine Renders an Arbitration Agreement
                Unenforceable Where It Fails to Provide for an Unbiased Forum and/or
                Arbitrator.............................................................................................................21

IV.     AN IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE
        TERMINATION OF THE LITIGATION .........................................................................23

CONCLUSION....................................................................................................................24

## <u>**TABLE OF AUTHORITIES**</u>

<u>Cases</u>                                                                                          <u>Page(s)</u>

<u>Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.</u>,
    769 F.3d 135 (2d Cir. 2014) ................................................................................. 3

<u>Balintulo v. Daimler AG</u>,
    727 F.3d 174 (2d Cir. 2013) ............................................................................... 4, 9

<u>BDO Seidman v. Miller</u>,
    949 S.W.2d 858 (Tex. App. 1997)....................................................................11, 14

<u>BDO USA, LLP v. Jia-Sobota</u>,
    283 A.3d 699 (D.C. 2022)................................................................................11, 15

<u>Buhrer v. BDO Seidman, LLP</u>,
    No. 022190C, 2003 WL 22049503 (Mass. Super. July 7, 2003) .........................11, 14

<u>Coinbase, Inc. v. Bielski</u>,
    143 S. Ct. 1915 (2023)........................................................................................ 2

<u>Cole v. Burns Intern. Sec. Services</u>,
    105 F. 3d 1465 (D.C. Cir. 1997)......................................................................... 22

<u>Consub Del. LLC v. Schalin Engenharia Limitada</u>,
    476 F. Supp. 2d 305 (S.D.N.Y. 2007) ................................................................. 5

<u>Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>,
    585 F.3d 58 (2d Cir. 2009) ................................................................................. 5

<u>Cross & Brown Co. v. Nelson</u>,
    4 A.D.2d 501 (1st Dep't 1957)............................................................................ 14

<u>FL-Carrollwood Care, LLC v. Gordon</u>,
    72 So. 3d 162 (Fla. Dist. Ct. App. 2011).............................................................. 16

<u>Floss v. Ryan's Fam. Steak Houses, Inc.</u>,
    211 F.3d 306 (6th Cir. 2000) .............................................................................. 22

<u>Forsyth v. Kleindienst</u>,
    599 F.2d 1203 (3d Cir. 1979) ............................................................................. 7

<u>Garcia v. Church of Scientology Flag Service Organization, Inc.</u>,
    No. 18-13452, 2021 WL 5074465 (11th Cir. Nov. 2, 2021) .............................. 18, 19

Gilmer v. Interstate/Johnson Lane Corp.,
   500 U.S. 20 (1991) ................................................................................................ 18

Gramercy Advisors, LLC v. Coe,
   No. 13 Civ. 9069 (VEC), 2014 WL 5847442 (S.D.N.Y. Nov. 12, 2014) ............................. 3, 4

Greenwald v. Weisbaum,
   785 N.Y.S. 2d 664 (N.Y. Sup. Ct., N.Y. Cty. 2004) ................................................... 11

Harriscom Svenska AB v. Harris Corp.,
   947 F.2d 627 (2d Cir. 1991) ..................................................................................... 7

Hart v. Rick's Cabaret Int'l, Inc.,
   73 F. Supp. 3d 382 (S.D.N.Y. 2014) ......................................................................... 4

Hooters of America Inc. v. Phillips,
   173 F. 3d 933 (4th Cir. 1999) ........................................................................... 13, 19

In re A2P SMS Antitrust Litig.,
   No. 12 Civ. 2656 (AJN), 2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) ...................... 4, 6, 12, 24

In re Duplan Corp.,
   591 F.2d 139 ............................................................................................... 4, 23

In re Flor,
   79 F.3d 281 (2d Cir.1996) ..................................................................................... 12

In re Lloyd's Am. Trust Fund Litig.,
   No. 96 Civ. 1262(RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ............................. 7, 8

In re MF Glob. Holdings Ltd.,
   296 F. Supp. 3d 662 (S.D.N.Y. 2017) ....................................................................... 18

In re Oxford Health Plans, Inc.,
   182 F.R.D. 51 (S.D.N.Y. 1998) ............................................................................... 22

Islam v. Lyft, Inc.,
   No. 20 Civ. 3004 (RA), 2021 WL 2651653 (S.D.N.Y. June 28, 2021) ................... 7, 12, 18, 24

J.S. ex rel. N.S. v. Attica Cent. Sch.,
   386 F.3d 107 (2d Cir. 2004) ..................................................................................... 3

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
   Amministrazione Straordinaria,
   921 F. 2d 21 (2d Cir. 1990) ..................................................................................... 9

iii

McMullen v. Meijer, Inc.,
    355 F.3d 485 (6th Cir. 2004) ............................................................................. 13, 19

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ................................................................................................. 22

Murray v. UBS Sec., LLC,
    No. 12 Civ. 5914 (KPF), 2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014) ................................ 6, 18

Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,
    820 F.3d 527 (2d Cir. 2016) ............................................................................. 16, 17

New York Gaslight Club, Inc. v. Carey,
    447 U.S. 54 (1980) ................................................................................................. 12

Nixon v. Warner Communications,
    435 U.S. 589 (1978) ................................................................................................. 8

Osuji v. U.S. Bank, Nat'l Ass'n,
    285 F. Supp. 3d 554 (E.D.N.Y. 2018) ................................................................................................. 12

Pokorny v. Quixtar, Inc.,
    601 F. 3d 987 (9th Cir. 2010) ............................................................................. 14, 19, 20

Primavera Familienstifung v. Askin,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001) ................................................................................................. 23

Rein v. Socialist People's Libyan Arab Jamahiriya,
    162 F.3d 748 (2d Cir. 1998) ................................................................................................. 1

Republic of Colombia v. Diageo N. Am. Inc.,
    619 F. Supp. 2d 7 (E.D.N.Y. 2007) ................................................................................................. 7

Rossi v. SCI Funeral Servs. of New York, Inc.,
    No. 15 Civ. 473 (ERK) (VMS), 2016 WL 11472746 (E.D.N.Y. Mar. 25, 2016) ..................... 13

S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc.,
    579 F. Supp. 1049 (S.D.N.Y. 1984) ................................................................................................. 6, 24

S.E.C. v. Credit Bancorp, Ltd.,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000) ................................................................................................. 7, 12

Sakaogan Gaming Enter. Corp. v. Tushie–Montgomery Assocs.,
    86 F.3d 656 (7th Cir.1996) ................................................................................................. 4

Santiago v. Pinello,
  647 F. Supp. 2d 239 (E.D.N.Y. 2009) ..................................................................... 10

Swint v. Chambers County Commission,
  514 US 35 (1995) ....................................................................................................... 1

Tantaros v. Fox News Network, LLC.,
  465 F. Supp. 3d 385 (S.D.N.Y. 2020) ....................................................................... 4

Thakur v. Rani,
  No. 22 Civ. 02008 (DG), 2023 WL 1368307 (E.D.N.Y. Jan. 31, 2023) ................... 12

United States v. Prevezon Holdings Ltd.,
  No. 13 Civ. 06326 (TPG), 2016 WL 187936 (S.D.N.Y. Jan. 15, 2016).............. 22, 23

United States v. Sattar,
  471 F. Supp. 2d 380 (S.D.N.Y. 2006) ........................................................................ 8

Walker v. Ryan's Family Steak Houses,
  400 F.3d 370 (6th Cir. 2005) ........................................................................ 14, 19, 20

Winfrey v. Simmons Foods, Inc.,
  495 F.3d 549 (8th Cir. 2007) ................................................................................... 17

Statutes

28 U.S.C. §1292(b) ............................................................................................. passim

Other Authorities

16 Federal Practice and Procedure § 3930, at 159 (1977) ............................................ 9

Brian Flores's Employment Discrimination Lawsuit Against the NFL: A Game Changer or
  Business As Usual?,
  29 Jeffrey S. Moorad Sports L.J. 299 (2022).......................................................... 13

Plaintiffs Brian Flores, Steve Wilks and Ray Horton respectfully move the Court for an order, pursuant to 28 U.S.C. §1292(b), certifying for appeal the aspects of the Court's orders dated March 1, 2023 ("Arbitration Order") and July 25, 2023 ("Reconsideration Order") (Dkt. Nos. 76 and 102, respectively) (together, the "Orders"), granting aspects of Defendants' motion that compelled arbitration.

## PRELIMINARY STATEMENT

Consistent with the standards set forth in 28 U.S.C. §1292(b), Plaintiffs simply seek the right to appeal to the Second Circuit from the same Orders from which Defendants are already appealing.  Plaintiffs' proposed appeal not only seeks clarity from the Second Circuit on "controlling questions of law" for which there is a "substantial ground for difference of opinion," it does so without creating any additional judicial proceedings while at the same time accelerating the ultimate conclusion of this litigation.  Plaintiffs' proposed appeal will serve significant judicial efficiency, aid the public at large and advance the underlying litigation in an expeditious and prudent manner.  Accordingly, Plaintiffs respectfully ask the Court to certify the Arbitration Order and Reconsideration Order for an interlocutory appeal.[1]

## BACKGROUND

On February 1, 2022, Plaintiff Brian Flores filed a Complaint alleging widespread and systemic discrimination across the NFL with respect to the hiring, retention and advancement of Black coaches and executives.  Dkt. No. 1.  On April 7, 2023, Plaintiffs Steve Wilks and Ray Horton joined this action through an Amended Complaint.  Dkt. No. 22.  Plaintiffs have set forth

---

[1]      Contemporaneous with this motion, Plaintiffs are also filing a Notice of Cross-Appeal.  Plaintiffs believe the Second Circuit has pendant appellate jurisdiction over the proposed cross-appeal under the standards set forth in Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 757–58 (2d Cir. 1998) (adopting dicta from Swint v. Chambers County Commission, 514 US 35, 51 (1995)).  However, the Second Circuit will not determine whether to exercise such jurisdiction until after the appeal is fully briefed.  Plaintiffs' proposed appeal under this motion in accordance with §1292(b) seeks to obtain the Second Circuit's jurisdiction pursuant to a different standard.

objective statistical evidence of racial inequality within NFL teams, as well as numerous examples of specific instances of discrimination in the NFL.  Id. at ¶¶ 64-92, 113-155, 156-336. The NFL has even acknowledged that "there is a double standard . . . that we need to fix in the system."  Id. at ¶ 113.  Nonetheless, immediately after this action was filed and without having conducted any investigation, the NFL issued a public statement that this lawsuit is "without merit."  Id. at ¶ 107.

On June 21, 2023, Defendants filed a motion to compel arbitration as to all asserted claims.  See Dkt. No. 47.  On March 1, 2023, the Court issued its Arbitration Order which granted in part and denied in part Defendants' motion.  See Dkt. No. 76.  In particular, the Arbitration Order granted Defendants' motion as to Mr. Flores' claims against the Miami Dolphins, Mr. Wilks' claims against the Arizona Cardinals and Mr. Horton's claims against the Tennessee Titans; but, it denied Defendants' motion as to Mr. Flores' claims against the New York Giants, Houston Texans and Denver Broncos and related class claims.  Id.  Plaintiffs and Defendants both filed motions for reconsideration as to the aspects of the Arbitration Order which were adverse to the respective parties.  See Dkt. Nos. 79-82, 88-98.  The Court denied both motions in the Reconsideration Order.  See Dkt. No. 102.

On August 21, 2023, Defendants filed a Notice of Appeal, the first step in seeking a reversal of the Arbitration Order and the Reconsideration Order from the Second Circuit.  See Dkt. No. 113.  Defendants also sought a stay of this action pursuant to Coinbase, Inc. v. Bielski, 143 S. Ct. 1915 (2023), which was granted.  See Dkt. No. 114-115.  Through this motion, Plaintiffs request the Court's order certifying the aspects of the Arbitration Order and Reconsideration Order for appeal pursuant to 28 U.S.C. §1292(b).

## PROPOSED QUESTIONS OF LAW FOR APPEAL

Plaintiffs respectfully request that the Court certify the proposed appeal for the reasons set forth below.  Plaintiffs expect to present the following questions on appeal:[2]

1.   Whether an arbitration agreement that is not the result of collective bargaining is unenforceable under the doctrine of unconscionability, where it fails to provide for an unbiased forum and/or arbitrator to resolve statutory discrimination claims, and in particular designates a party representative as arbitrator.

2.   Whether the "effective vindication" doctrine renders an arbitration agreement unenforceable where it fails to provide for an unbiased forum and/or arbitrator to resolve statutory discrimination claims, and in particular designates a party representative as arbitrator.

## ARGUMENT

### I.   LEGAL STANDARD

Under 28 U.S.C. §1292(b), federal appellate courts may "exercise appellate jurisdiction over certain appeals from non-final orders when the district court advises, and the court of appeals agrees, that the district court's decision involves 'a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation.'"  Gramercy Advisors, LLC v. Coe, No. 13 Civ. 9069 (VEC), 2014 WL 5847442, at *3 (S.D.N.Y. Nov. 12, 2014) (citing Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co., 769 F.3d 135, 143 n. 15 (2d Cir. 2014)).  Once the district court certifies an order for appeal, the appellate court "may thereupon, in its discretion, permit an appeal to be taken from such order."  28 U.S.C. §1292(b).

---

[2]   See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 115 (2d Cir. 2004) (the Second Circuit's "jurisdiction is not confined to the precise question certified by the district court.").

While leave to appeal under Section 1292(b) is warranted only in "exceptional circumstances . . . when a question meets the standards set forth in 1292(b) and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'"  Tantaros v. Fox News Network, LLC., 465 F. Supp. 3d 385, 391 (S.D.N.Y. 2020) (quoting Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013).  For the reasons set forth below, Plaintiffs' proposed appeal meets these standards.

## II.     PLAINTIFFS' APPEAL CONCERNS CONTROLLING QUESTIONS OF LAW

As this Court and others have stated, "In determining whether a controlling question of law exists, the district court should consider whether: [1] reversal of the district court's opinion could result in dismissal of the action; [2] reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; **or** [3] the certified issue has precedential value for a large number of cases."  Gramercy Advisors LLC, 2014 WL 5847442, at *3 (emphasis added) (collecting cases).  Relevant here are factors [2] and [3].

### A.     Reversal of the District Court's Opinion, Even Though Not Resulting in Dismissal, Could Significantly Affect the Conduct of the Action

As to prong [2], courts have held that a "question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."  In re A2P SMS Antitrust Litig., No. 12 Civ. 2656 (AJN), 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015) (citing Sakaogan Gaming Enter. Corp. v. Tushie–Montgomery Assocs., 86 F.3d 656, 659 (7th Cir.1996)); see also In re Duplan Corp., 591 F.2d 139, 148 n. 11 (2d Cir. 1978) (Friendly, J.) (noting that a "controlling question of law" under § 1292(b) "include[s] a procedural determination that may importantly affect the conduct of an action.").  Courts generally look to whether there is a "'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."  Hart v. Rick's Cabaret Int'l, Inc., 73 F.

4

Supp. 3d 382, 393 (S.D.N.Y. 2014) (citing Consub Del. LLC v. Schalin Engenharia Limitada, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), aff'd, 543 F.3d 104 (2d Cir. 2008), abrogated in part on other grounds by Ship. Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 67 (2d Cir. 2009)).

As an initial matter, Plaintiffs' proposed appeal involves "pure questions of law" capable of determination at this stage without study of any substantial record.[3]  Plaintiffs' proposed appeal will involve purely legal questions regarding the doctrine of unconscionability as it relates to the enforcement of arbitration agreements and the contours of the "effective vindication of rights" doctrine.  Just as the legal questions presented were capable of determination by this Court on the current record (albeit in a manner to which Plaintiffs respectfully disagree), the Second Circuit will be able to address these purely legal arguments without delay and on the same exact record as the appeal already being submitted by Defendants.

There is also no question that a reversal of the Court's Order would "significantly affect the conduct of this action."  Absent reversal, Plaintiffs' claims will each proceed in three separate individual arbitrations which will each require extensive litigation—including at the start several steps of threshold motion practice related to whether the dispute is "football oriented" and/or if any potentially delegated arbitrator or forum (i.e. JAMS) is capable of hearing this dispute.  See e.g. Dkt. No. 62 at pp. 4, 8, 17-19.  After threshold issues are determined in each action, likely to take several months alone, each litigation will involve potential motions to dismiss,[4] extensive discovery, discovery rulings, dispositive motions, admissibility disputes and a hearing on the merits.  Given that there will be three separate actions, there could be inconsistent rulings on numerous disputes along the way.  At the hearings, many of the same

---

[3]    While Plaintiffs believe they were entitled to discovery in advance of the motion to compel arbitration, that issue was resolved by the Court and Plaintiffs do not currently seek to appeal the discovery order.  See Dkt. No. 58.
[4]    Defendants have already indicated an intention to move to dismiss Mr. Flores' claims.  See Dkt. No. 35.

witnesses, including non-parties, will have to be called to testify three separate times for each proceeding.  Following the conclusion of each of those proceedings, appeals will follow which could invalidate all the arbitral proceedings entirely.  That will very likely mean three separate appeals to this Court and likely three separate appeals thereafter to the Second Circuit.  If any of those appeals results in an invalidation of the arbitration, the matter will revert back to this Court for class-based litigation—in what will likely be more than two years from now.[5]

Plaintiffs acknowledge that generally the mere potential reversal of an order compelling arbitration—obviating substantial time and resources expended by parties and counsel in an arbitration proceeding—does not typically satisfy this prong.  See e.g. Murray v. UBS Sec., LLC, No. 12 Civ. 5914 (KPF), 2014 WL 1316472, at *4 (S.D.N.Y. Apr. 1, 2014) ("To be sure, reversal could affect the 'conduct' of the action by eliminating the arbitration, but such a consequence is not sufficient to warrant certification") (citing cases).  However, this factor is frequently considered by courts and the unique circumstances of this particular matter merit such attention.  See e.g. S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc., 579 F. Supp. 1049, 1050-51 (S.D.N.Y. 1984) (granting leave for interlocutory appeal: "This Court's decision to compel arbitration of these claims . . . and to stay litigation in this forum for what may be as long as two years is . . . 'a procedural determination that [is certain to] importantly affect the conduct of [the] action' . . . [a]s such the decision clearly involves 'a controlling question of law'") (citations omitted); In re A2P SMS Antitrust Litig., 2015 WL 876456, at *4 (granting interlocutory appeal because, "If this [order] is reversed, any arbitration proceedings that have taken place would need to be vacated because any initial determination reached by the arbitrators . . . would have been in excess of their powers.  And if this Court's order is affirmed, any cloud

---

[5]     Notably, if Defendants were to prevail on their appeal without the Second Circuit having a chance to weigh in on Plaintiffs' proposed appeal, the result would be *six* such separate proceedings, each of which would go through the processes set forth above, and be subject to likely appeals back to this Court and then to the Second Circuit.

hanging over the arbitration panel's initial determination would be lifted, thereby removing a basis for vacating that determination in this Court."); Islam v. Lyft, Inc., No. 20 Civ. 3004 (RA), 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021), motion to certify appeal denied, No. 20 Civ. 3004 (RA), 2021 WL 5762211 (S.D.N.Y. Dec. 3, 2021) ("If the Second Circuit hears the appeal and holds that Plaintiff cannot be compelled to arbitrate, it will have saved the parties the expense and burden of arbitration, and allow the case to proceed to resolution in district court.").

Moreover, judicial economy—a critical component of the §1292(b) analysis—is also substantially served by certifying Plaintiffs' proposed appeal. See e.g. S.E.C. v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 226-27 (S.D.N.Y. 2000) ("the institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b). The efficiency of both the district court and the appellate court are to be considered . . . .") (citing Forsyth v. Kleindienst, 599 F.2d 1203 (3d Cir. 1979), cert. denied, 453 U.S. 913 (1981)); Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 631 (2d Cir. 1991)); Republic of Colombia v. Diageo N. Am. Inc., 619 F. Supp. 2d 7, 9 (E.D.N.Y. 2007) ("The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b). Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases.") (citing In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262(RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997) (citations omitted)).

As the Court is aware, Defendants are already appealing aspects of the Arbitration Order and Reconsideration Order to the Second Circuit (and have been granted a stay of proceedings during the pendency of such appeal). Therefore, Plaintiffs' proposed appeal will not create any additional proceedings—the Second Circuit is already going to hear an appeal involving overlapping issues on the same record. By certifying Plaintiffs' proposed appeal, the Second

7

Circuit will simply be able to address all parties' legitimately disputed issues—rather than only the disputes from one party—over which there is substantial ground for disagreement (see infra at §III) in one proceeding and at the same time.  It would also be patently unfair and incongruous for Defendants, on the one hand, to be permitted to appeal and prevent Plaintiffs from advancing this litigation; yet, for Plaintiffs, on the other hand, to be prevented from appealing the same orders to the same court while forcing Plaintiffs expended resources advancing their claims in an utterly biased forum which may ultimately be deemed invalid.  Id.  Thus, certifying Plaintiffs' proposed appeal will serve judicial economy.

Finally, because this entire litigation is unquestionably a matter of public interest and concern,[6] the public's First Amendment right of access will be significantly affected by the outcome of the proposed appeal.  In arbitration as currently compelled, the public will have no access to any aspect of the proceedings, all of which would be conducted in a private and secretive arbitral setting.  However, if the Second Circuit were to reverse the Order, Plaintiffs claims would be litigated in a forum where the First Amendment rightly affords the public an inherent right of access.  See e.g. United States v. Sattar, 471 F. Supp. 2d 380, 384 (S.D.N.Y. 2006) ("The public has a qualified right of access to judicial proceedings and documents, under both the common law and the First Amendment") (citing Nixon v. Warner Communications, 435 U.S. 589, 597–98 (1978)).

For the reasons set forth above, Plaintiffs' proposed appeal will "significantly affect the conduct of this action," meeting that standard of §1292(b).

---

[6]      For the sake of brevity, Plaintiffs do not cite the hundreds of articles and reports that have been written about this matter, let alone the thousands of social media posts.  However, we ask the Court to take judicial notice that this litigation is a matter of public concern.

**B.**    **The Certified Issue Has Precedential Value for a Large Number of Cases**

Furthermore, as to prong [3], the matter at bar unquestionably has "precedential value for a large number of cases."  For a proposed appeal to have such "precedential value" it need not impact any specific volume of pending or potential cases.  See e.g. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria, 921 F. 2d 21, 24 (2d Cir. 1990) ("[non-movants argue] resolution of the question must also have precedential value for a number of pending cases.  We disagree.").  Rather, court may consider "the system-wide costs and benefits of allowing the appeal."  Id. (citing inter alia C. WRIGHT, A. MILLER, E. COOPER & E. GRESSMAN, 16 FEDERAL PRACTICE AND PROCEDURE § 3930, at 159 (1977) ("[t]he suggestion . . . that the question must be important to a large number of other suits . . . is not supported by any statutory purpose.")).

The precedential value and civil justice benefits "system wide" to an adjudication of Plaintiffs' proposed appeal is clear.  Plaintiffs' proposed appeal will allow the Second Circuit to address two issues of first impression – (1) whether the doctrine of unconscionability precludes enforcement of a non-collectively bargained arbitration agreement designating a biased forum and/or arbitrator to rule on statutory discrimination claims; and (2) whether the "effective vindication" doctrine precludes the same enforcement.

While we acknowledge, as we must, that this Court used precedential decisions in deciding the underlying motion, we respectfully ask the Court to further consider the factual and legal differences in those decisions which do not render them strictly determinative of the questions presented by Plaintiffs' proposed appeal.  Thus, Plaintiffs' proposed appeal would likely create controlling precedent within the Second Circuit and persuasive precedent in other jurisdictions as to the precise issues presented.  See e.g. Daimler 727 F.3d at 186 (where an

appeal "involves a new legal question or is of special consequence, then the district court 'should not hesitate to certify an interlocutory appeal.") (citations omitted); Santiago v. Pinello, 647 F. Supp. 2d 239, 244 (E.D.N.Y. 2009) (§1292(b) appeal permissible where the issue is 'difficult,' one of first impression, or made in the face of conflicting authority."). The potential precedent created by the Second Circuit opining on these issues would be of broad significance to a large number of cases.

First, the NFL alone likely has thousands of employees who are subject to identical arbitration agreements as those at issue here. As we understand, all NFL coach and executive contracts incorporate the NFL Constitution and By-Laws ("NFL Constitution") by reference and requires a dispute resolution process before Mr. Goodell. The NFL Constitution requires such contracts to be approved by the Commissioner so the NFL can confirm all contracts contain those terms. See Dkt. No. 49, Ex. 1 at §8.14(A). Thus, innumerable NFL employees' rights with respect to statutory discrimination claims and many other claims which carry important public interest will be directly impacted by the Second Circuit hearing the proposed appeal.

Second, it is widely known that other professional sports leagues employ a similar arbitral system, see e.g. Nostalgic Partners, LLC v. New York Yankees Partnership, et al., No. 656724/2020 (BO), Dkt. No. 108 at p. 2 ("Based on the appearance of impropriety, the Commissioner of Major League Baseball should not arbitrate a dispute of claims that are asserted against Major League Baseball") (Ex. A),[7] Dkt. No. 110 at p. 26 (N.Y. Cty. Sup. Ct. Dec. 17, 2021) ("Commissioner of Major League Baseball should not arbitrate a dispute of claims that are asserted against Major League Baseball") (Ex. B); thus, hundreds or thousands of employees of those leagues will also have their rights and remedies clarified by a Second Circuit decision.

---

[7]    All citations to "Ex. __" are references to the exhibits attached to the accompanying Declaration of David E. Gottlieb.

Third, other large employers throughout the country currently employ one-sided, biased arbitral programs which are impacting the rights of hundreds of individuals. For example, judicial opinions reflect that BDO USA LLP, one of the largest accounting firms in the world, has an arbitration program in which firm partners act as arbitrators for all claims including statutory discrimination claims. See e.g. Romer v. BDO Seidman, No. 1995/7807 (N.Y. Sup. Ct. Feb. 15, 1996) (Ex. C); BDO Seidman v. Miller, 949 S.W.2d 858, 861 (Tex. App. 1997), writ dismissed w.o.j. (Dec. 11, 1997); Buhrer v. BDO Seidman, LLP, No. 022190C, 2003 WL 22049503, at *3 (Mass. Super. July 7, 2003), order vacated (Feb. 1, 2005), BDO USA, LLP v. Jia-Sobota, 283 A.3d 699, 711 (D.C. 2022).[8] Thus, an appeal will provide guidance to all parties to such arbitration agreements as to their enforceability.

Fourth, the precedential value of an appeal will benefit all employers due to the expanding reach of arbitration. Arbitration has for many years been a fast-growing alternative dispute resolution mechanism, covering as many as 60 million workers. See e.g. Alexander J.S. Colvin, *The Growing Use of Mandatory Arbitration*, Econ. Pol'y Inst (April 6, 2018); *The Enforcement Opportunity: From Mass Arbitration to Mass Organizing*, Harv. L. Rev. 1562 (April 9, 2023) ("arbitration clauses are estimated to have eliminated up to ninety-eight percent of employment claims from being pursued at all. Employers have taken advantage of this claim-suppressive effect: today, more than half of nonunion, private-sector employers mandate arbitration. Consequently, more than half of all workers are now subject to mandatory arbitration"). All employers who force employees to sign arbitration agreements have an interest in knowing whether certain aspects of those arbitration agreements are enforceable or not.

---

[8]     While these courts found the arbitration agreements at issue unenforceable, other courts have found BDO's arbitration agreements enforceable. This only further substantiates the "substantial ground for disagreement" prong discussed below. See e.g. Greenwald v. Weisbaum, 785 N.Y.S. 2d 664 (N.Y. Sup. Ct., N.Y. Cty. 2004).

Fifth, the precedential value of an appellate order will impact the enforcement mechanisms of the civil rights laws.  The anti-discrimination laws are intended to correct societal problems of insidious discrimination by individuals acting as "private attorneys general" and seeking redress.  See e.g. New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 63 (1980) ("Congress has cast the Title VII plaintiff in the role of 'a private attorney general,' vindicating a policy 'of the highest priority.'").  Society at large and the individuals who are collectively responsible for enforcing these critical laws deserve to know whether their employers can force them to litigate such disputes in biased forums where the employer itself acts as judge and jury.

Accordingly, Plaintiffs can easily demonstrate that the proposed appeal will have a "precedential value for a large number of cases" and there are "the system-wide costs and benefits of allowing the appeal," which, again, serves judicial economy.  See e.g. Credit Bancorp, Ltd., 103 F. Supp. 2d at 226-27 ("the institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)"); Islam, 2021 WL 2651653, at *5 ("if the Circuit decides to hear this appeal, it would provide valuable guidance to a great number of litigants and lower court judges.").

## III.    PLAINTIFFS' PROPOSED APPEAL INVOLVES SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

With respect to the second factor, "courts have indicated that there is a 'substantial ground for difference of opinion' on a question of law where there is conflicting authority on the issue or the issue is particularly difficult and of first impression."  Thakur v. Rani, No. 22 Civ. 02008 (DG), 2023 WL 1368307, at *2 (E.D.N.Y. Jan. 31, 2023) (citing Osuji v. U.S. Bank, Nat'l Ass'n, 285 F. Supp. 3d 554, 558 (E.D.N.Y. 2018)).  The court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is

truly one on which there is substantial ground for dispute." In re A2P SMS Antitrust Litigation,
2015 WL 876456, at *2 (quoting In re Flor, 79 F.3d 281, 284 (2d Cir.1996)).

Respectfully, there is a substantial and legitimate difference of opinion as to this Court's
Order; specifically, as to whether a non-collectively bargained arbitration agreement designating
a biased forum and/or arbitrator to resolve statutory discrimination claims is unenforceable under
the doctrine of unconscionability or the "effective vindication" doctrine. There is no definitive
case law answering these questions by the Supreme Court or the Second Circuit, and,
respectfully, the case law relied on in the Order does not decisively cut in the manner interpreted
by this Court. See e.g. Rossi v. SCI Funeral Servs. of New York, Inc., No. 15 Civ.
473ERKVMS, 2016 WL 11472746, at *1 (E.D.N.Y. Mar. 25, 2016) ("Because there is no
controlling Supreme Court or Second Circuit precedent on point and the only available guiding
precedent does not cut decisively in either direction, I certify this interlocutory order for appeal
pursuant to 28 U.S.C. § 1292(b)") (citations omitted).

That substantial disagreement is demonstrated in part by the fact that a group of 12 legal
scholars whose scholarship includes specific focus on arbitration agreements and proceedings
submitted an amicus brief setting forth the basis for their disagreement with the Court's Order in
detail and with citation to substantial authority. See Dkt. No. 86.[9] The amici argued, *inter alia*,
that the arbitration agreements here are "unconscionable and an egregious violation of
fundamental fairness" because there is broad agreement among "leading arbitration organizations

---

[9]      Differences of opinion with the Court's Order have also been published outside the courtroom. See e.g.
Michael Conklin, Jennifer Barger-Johnson & Marty Ludlum, *Brian Flores's Employment Discrimination Lawsuit
Against the NFL: A Game Changer or Business As Usual?*, 29 Jeffrey S. Moorad Sports L.J. 299 (2022)
("Unfortunately for the NFL, case law is clear regarding the essential nature of arbitrator neutrality.").

. . . that workers must have the right to participate meaningfully in the selection of an arbitrator."

<u>Id.</u> at pp. 9, 12.  Thus, there is demonstrated disagreement in the academic legal community.[10]

There are also several courts which have found, contrary to this Court, that biased

arbitrators and/or unfair arbitration processes should render arbitration agreements unenforceable

based on either the unconscionability or "effective vindication of rights" doctrines.  <u>See</u> <u>e.g.</u>

<u>Hooters of America Inc. v. Phillips</u>, 173 F. 3d 933 (4th Cir. 1999), <u>McMullen v. Meijer, Inc.</u>, 355

F.3d 485 (6th Cir. 2004), <u>Pokorny v. Quixtar, Inc.</u>, 601 F. 3d 987, 1002-3 (9th Cir. 2010), <u>Walker</u>

<u>v. Ryan's Family Steak Houses</u>, 400 F.3d 370 (6th Cir. 2005); <u>New York Yankees P'ship</u>, No.

656724/2020; <u>Gruden v. The Nat'l Football League, et al.</u>, No. A-21-844043-B, at 13-14 (Nev.

Dist. Ct. Clark Cty. Oct. 12, 2022) (Ex. D)[11]; <u>see also</u> <u>Cross & Brown Co. v. Nelson</u>, 4 A.D.2d

501, 503 (1st Dep't 1957) ("no party to a contract, or someone so identified with the party as to

be in fact, even though not in name, the party, can be designated as an arbitrator to decide

disputes under it. Apart from outraging public policy, such an agreement is illusory; for while in

form it provides for arbitration, in substance it yields the power to an adverse party to decide

disputes under the contract . . . Unless we close our eyes to realities, the agreement here

becomes, not a contract to arbitrate, but an engagement to capitulate"); <u>Miller</u>, 949 S.W.2d at

861 ("To allow a party to act as its own judge necessarily taints the process and is repugnant to a

proper sense of justice . . . the agreement to arbitrate is invalid on its face"); <u>Buhrer</u>, 2003 WL

22049503, at *3 ("Use of such arbitrators, who owe a fiduciary duty to one party, creates an

inherent inequity of having [a party] serve as its own arbitrator to determine matters under the -

contract.  Indeed, the financial interests of the arbitrators are identical to those of the defendant;

---

[10]      In fact, even major arbitral providers have rules prohibiting administration of proceedings where the
arbitrator of an employment dispute is biased.  <u>See</u> <u>e.g.</u> JAMS Policy on Employment Arbitration Minimum
Standards of Procedural Fairness ("Standard No. 2: Arbitrator Neutrality.  The arbitrator(s) must be neutral, and an
employee must have the right to participate in the selection of the arbitrator(s).") (Ex. E).
[11]      The <u>Gruden</u> decision is pending an appeal to the Nevada State Supreme Court.

this is clearly inequitable and unjust. It is beyond question that [t]o allow a party to act as its own judge necessarily taints the process and is repugnant to a proper sense of justice.") (citations omitted); Jia-Sobota, 283 A.3d 699, 711 (D.C. 2022) (Deahl, J., concurring) ("I want to highlight how extraordinarily oppressive this arbitration clause [which designates BDO partners as arbitrators] is when applied to a former partner []. This speaks to the clause's substantive unconscionability, which concerns when contractual terms are unreasonably favorable to one party . . . it defies common sense to presume that an individual with a direct and substantial financial stake in the outcome of a controversy is not operating as "a judge in his own cause" when they might directly line their pockets through their decision.").

In fact, even this Court "acknowledge[d] that this structure [with Mr. Goodell acting as arbitrator] creates a risk of biased adjudication and that the NFL statement on the day the case was filed is worrisome." Dkt. No. 76 at p. 23.  The Court went on to agree that "Plaintiffs' descriptions of their experiences of racial discrimination—which allegedly are only the most recent chapter in the NFL's long history of systematic discrimination toward Black players, coaches, and managers—are incredibly troubling[, and g]iven the number of Black men who play and coach football, it is difficult to understand how it could be that, at the time Plaintiffs initiated this lawsuit, the NFL had only one Black Head Coach." Id. (internal citations omitted); see also Id. n. 16 ("Nothing in this Opinion should be read to suggest that the Undersigned harbors no concern about whether the process the NFL has apparently chosen to implement in this sort of dispute with coaches will be, and will be publicly perceived to be, fair')  We respectfully implore the Court to further acknowledge, therefore, that the issues presented in the Court's Order and Plaintiffs' proposed appeal are "particularly difficult."

For consideration of this motion, Plaintiffs refer the Court to the arguments already
extensively articulated in Plaintiffs' opposition to Defendants motion to compel arbitration and
Plaintiffs' motion for reconsideration and incorporate those arguments herein by reference.  See
Dkt. Nos. 79-80, 93.  While Plaintiffs understand the Court's position on these issues and do not
seek to relitigate the same issues yet again, Plaintiffs summarize those arguments for purposes of
demonstrating that there is at the very least a "substantial ground for difference of opinion."

A.      **There Is "Substantial Ground for Disagreement" As to Whether the Doctrine
of Unconscionability Renders an Arbitration Agreement Unenforceable
<u>Where It Fails to Provide for an Unbiased Forum and/or Arbitrator</u>**

In brief, the Court found that the arbitration agreements delegating Mr. Goodell as
arbitrator are not unconscionable because "the parties to an arbitration can ask for no more
impartiality than inheres in the method they have chosen," citing <u>Nat'l Football League Mgmt.
Council v. Nat'l Football League Players Ass'n</u>, 820 F.3d 527, 548 (2d Cir. 2016).  As
previously argued, that proposition is completely at odds with the entire doctrine of
unconscionability, which asks not whether the parties agreed to the terms at issue but whether,
even if there was an agreement, the terms are too unfair to be enforced.  The unconscionability
doctrine *requires* that a court *not enforce* and find the *absence of an agreement* when a
contractual term is "so outrageously unfair as to shock the judicial conscience."  <u>FL-Carrollwood
Care, LLC v. Gordon</u>, 72 So. 3d 162, 165 (Fla. Dist. Ct. App. 2011).

To the extent the Court found that an agreement dictating a biased arbitrator is not
unconscionable on the basis of <u>Nat'l Football League Mgmt. Council</u>, that decision is easily
distinguishable and not controlling here on the issue of unconscionability—or at the very least
there is a "substantial ground for difference of opinion."  As previously explained, the Second

16

Circuit relied on <u>Winfrey v. Simmons Foods, Inc.</u>, 495 F.3d 549 (8th Cir. 2007), an out-of-circuit case where arbitration was *collectively bargained* and *provided an unbiased process*.

The arbitration agreement in <u>Winfrey</u> provided that each party would select one arbitrator—*i.e.*, a "party-arbitrator"—and that the two party-arbitrators would jointly select a neutral arbitrator, making the panel balanced.  495 F.3d at 550-551.  The court held that "[w]here an agreement entitles the *parties* [plural] to select interested arbitrators, 'evident partiality' cannot serve as a basis for vacating an award under § 10(a)(2) absent a showing of prejudice." <u>Id.</u> (emphasis added).  In other words, it was the specific nature of the arbitration agreement—one that permitted **both** *parties* to select a biased arbitrator—that led to the court's conclusion.  As such, <u>Winfrey</u> simply stands for the proposition that one cannot complain a fair process has some component of bias if one agreed to that fair process in the first instance.

Like <u>Winfrey</u>, the arbitration agreement in <u>Nat'l Football League Mgmt. Council</u> was also the result of collective bargaining—thus making it clear why that case was cited there but inapplicable here.  820 F.3d at 548.  To that end, immediately following the language cited by this Court, the <u>Nat'l Football League Mgmt. Council</u> decision reads:

> [T]**he parties contracted in the CBA** to specifically allow the Commissioner to sit as the arbitrator in all disputes brought pursuant to Article 46, Section 1(a). They did so knowing full well that the Commissioner had the sole power of determining what constitutes "conduct detrimental," and thus knowing that the Commissioner would have a stake both in the underlying discipline and in every arbitration brought pursuant to Section 1(a). **Had the parties wished to restrict the Commissioner's authority, they could have fashioned a different agreement.**

820 F.3d at 548 (emphasis added).  In contrast to <u>Nat'l Football League Mgmt. Council</u>, the arbitration agreements here were "take it or leave it" agreements.

Nat'l Football League Mgmt. Council is also fundamentally inapplicable—or at least there is substantial ground for disagreement as to its applicability—because that decision involved player discipline, whereas this matter involves federal statutory rights.  It is normal for an employer to make decisions concerning employee discipline, but an employer is never the arbiter of whether it has violated an employee's statutory anti-discrimination rights.  That decision is for the courts or a neutral arbitrator to decide.  It "shocks the conscious" to put in the hands of an employer the power to decide whether it has violated the anti-discrimination laws.

There is also "substantial ground for disagreement" as to the Court's interpretation of Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991) for the proposition that "Courts must avoid presupposing that the selected arbitrator will not serve as a conscientious and impartial arbitrator."  Dkt. No. 76 at p. 23.  Gilmer involved a fair process involving selection of neutral arbitrators and numerous other protections against bias or abuse.  500 U.S. at 30.  Thus, the Court stated, "[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators."  Id.  In sum, Gilmer stands for the unremarkable proposition that a neutral process should not be second-guessed by the court in the first instance.

The Court's reliance on Garcia v. Church of Scientology Flag Service Organization, Inc., No. 18-13452, 2021 WL 5074465, at *12 (11th Cir. Nov. 2, 2021) only further substantiates a "substantial ground for disagreement."[12]  The Garcia court found that an arbitration agreement was enforceable despite the "lead arbitrator" making "various comments . . . reflecting bias in

---

[12]  Though some courts hold that the "substantial ground for disagreement" should not look outside the Second Circuit, Murray, 2014 WL 1316472, at *6 (stating inapplicability of "disagreement among courts outside the Second Circuit") (citing cases), many other courts disagree.  See e.g. In re MF Glob. Holdings Ltd., 296 F. Supp. 3d 662, 666 (S.D.N.Y. 2017) (finding his prong met due to disagreement on the issue between the S.D.N.Y, S.D. Fla. and Seventh Circuit); In re A2P SMS Antitrust Litigation ,2015 WL 876456, at *3 (citing contrary opinions in the Third and Sixth Circuits and noting that the issue, "may draw support from competing opinions of the Supreme Court and lower court precedent throughout the country.").  Islam, 2021 WL 2651653, at *5 (citing numerous district courts and circuits in disagreement on the issues presented).

favor of the church."  Dkt. No. 76 at p. 26.  However, the <u>Garcia</u> court did not even consider the effect of arbitrator bias because it found that the dispute at issue was one that concerned religious doctrines and that "[t]he Supreme Court has made clear that the First Amendment forbids civil courts to decide legal disputes involving churches by "resolving underlying controversies over religious doctrine."  2021 WL 5074465, at * 9 ("Based on these well-established precedents, the district court correctly ruled that the First Amendment prevented it from entertaining the argument that Scientology doctrine rendered the arbitration agreements substantively unconscionable.").  Thus, the <u>Garcia</u> court did not bless a biased process as interpreted by this Court—or, at least, there is a "substantial ground for disagreement."[13]

Having relied on legitimately debatable interpretations of <u>Nat'l Football League Mgmt. Council</u>, <u>Winfrey</u> and <u>Garcia</u>, the Court chose not to follow other authority favoring Plaintiffs' position that is far more persuasive and analogous to the matter at bar—creating further basis for a "substantial ground for disagreement."  The Court specifically failed to follow alternative holdings—which are respectfully more persuasive, or at least arguably so—from <u>Hooters of America Inc. v. Phillips</u>, 173 F. 3d 933 (4th Cir. 1999), <u>McMullen v. Meijer, Inc.</u>, 355 F.3d 485 (6th Cir. 2004), <u>Pokorny v. Quixtar, Inc.</u>, 601 F. 3d 987, 1002-3 (9th Cir. 2010), <u>Walker v. Ryan's Family Steak Houses</u>, 400 F.3d 370 (6th Cir. 2005), <u>Nostalgic Partners LLC v. New York Yankees P'ship</u>, No. 656724/2020, at 2 (N.Y. Sup. Ct. Dec. 17, 2021) and <u>Gruden v. The Nat'l Football League, et al.</u>, No. A-21-844043-B, at 13-14 (Nev. Dist. Ct. Clark Cty. Oct. 12, 2022).

The Court distinguished <u>Hooters of America Inc.</u>, 173 F. 3d at 933 and <u>McMullen</u>, 355

---

[13]    The arbitration agreement in <u>Garcia</u> also provided a far more impartial forum than those at issue herein. While it required the parties to select arbitrators that were in good standing with the church, it still provided each party with an opportunity to select an arbitrator, whom, together, would appoint a third neutral arbitrator..  <u>Id.</u> at * 2. There is no indication that the arbitrators in <u>Garcia</u> (who were eventually selected by the district court from a list of 500 potential arbitrators) were being paid anything by the church.  Nor did the agreement in that case require the parties to arbitrate before an arbitrator who had already deemed the claims to be "without merit."

F.3d at 485 on the basis that the employers had full discretion over the *pool* of potential arbitrators; but the situation before this Court is far more unconscionable.  In both <u>Hooters</u> and <u>McMullen</u>, the plaintiffs were at least involved in the arbitrator selection process, even if the initial pool was chosen by their employers.  The plaintiffs could still select the best out of a group of theoretically employer-friendly arbitrators, rather than being stuck with the dingle most biased arbitrator who has already declared that the claims at issue were "without merit."  Given that <u>Hooters</u> and <u>McMullen</u> invalidated those arbitration agreements, it necessarily follows that those courts also would have invalidated Plaintiffs' arbitration agreements.  This Court is thus at odds with two other Circuit Courts of Appeal.

<u>Pokorny</u>, 601 F. 3d at 1002-03, also invalidated an arbitration agreement that was *less* unconscionable than the matter at bar.  In <u>Pokorny</u>, the agreement permitted a claimant to pick from potentially biased list of arbitrators who had attended an employer-led training or select from a list or arbitrators who had not—the costs to the claimant would be higher to use the latter option.  While it is true that financial pressure might lead to the potential for a bias arbitrator selection, the <u>Pokorny</u> plaintiffs at least had a choice.  The mere pressure to choose an arbitrator who had attended a defendant-led orientation—which, in any event, does not inherently give rise to any serious risk of bias—is nowhere near as problematic as being forced to arbitrate claims in front of an inherently biased arbitrator.  We understand the Court disagrees, but we respectfully submit that the Court should recognize the substantial ground for disagreement as to the proper applicability of this decision.

In <u>Walker</u>, 400 F.3d at 370, the court invalidated an arbitration agreement where the "arbitrator-selection process itself [was] fundamentally unfair."  In <u>Walker</u>, the arbitrator process,

while unusual,[14] at least created the possibility of a reasonably neutral panel.  See Dkt. No. 62 at

p. 12.  But that is not the case here because there is no process at all—the arbitration agreements

at issue with the NFL fully guarantee fundamental unfairness from the start.

 While relying on out-of-jurisdiction case law cited above—albeit, in a manner that is

legitimately debatable and disputed—the Court chose to simply dispatch with and disregard

other out-of-jurisdiction case law on the basis that those cases were out of jurisdiction.  See Dkt.

No 76 at p. 25, n. 25 ("Because none of the applicable contracts selects Missouri, New York, or

Nevada law, those cases are interesting but not controlling.").  However, whether controlling or

not, the rationale from those cases applies here and further demonstrates substantial

disagreement.  See New York Yankees P'ship, No. 656724/2020, at 2 ("Based on the appearance

of impropriety, the Commissioner of Major League Baseball should not arbitrate a dispute of

claims that are asserted against Major League Baseball."); Gruden, No. A-21-844043-B, at 13-14

("the enforcement of the arbitration would be unconscionable both procedurally, as well as

substantive[ly]").

 **B.** **There Is "Substantial Ground for Disagreement" As to Whether the "Effective Vindication of Rights" Doctrine Renders an Arbitration Agreement Unenforceable Where It Fails to Provide for an Unbiased Forum and/or Arbitrator**

 There is also "substantial ground for disagreement" with respect to the Court's analysis

of the "effective vindication of rights" doctrine.  That doctrine exists to protect the Congressional

intent underlying the rights afforded to individuals by federal statutes, such as in particular the

---

[14] In Walker, three arbitrators would be selected, one from each of three selection pools; the three selection pools were (i) managers from other employers who contracted with arbitration provider, (ii) hourly employees from other employers who contracted with arbitration provider and (iii) attorneys and former judges associated with neither party; any arbitrator could be struck for cause by either party and replaced by the arbitration provider; the parties would take turns striking names until one person remained in each pool.  400 F.3d at 375-76, 385-386.

anti-discrimination laws.  See e.g. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
473 U.S. 614, 637 (1985).

There is absolutely no caselaw holding that the "effective vindication" doctrine only
applies when an arbitral forum expressly forbids the assertion of statutory claims or imposes
costs which make pursuit of claims impracticable.  Yet, the Court did not apply the "effective
vindication" doctrine to the matter at bar because neither of those situations apply.  See Dkt. No.
76 at p. 24 ("The Supreme Court has recognized two types of arbitration agreements to which
this doctrine may apply: an agreement 'forbidding the assertion of certain statutory rights' and an
agreement imposing arbitration fees 'so high as to make access to the forum impracticable.'
Alleged structural bias falls into neither category.'") (citations omitted).  However, the mere fact
that structural bias does not fit into the categories previously found to preclude vindication does
not mean that such fundamental bias cannot meet the "effective vindication" standard.

Respectfully, the doctrine is intended to cover any situation where a plaintiff cannot
effectively vindicate statutory rights—including, as some courts have held, where a reasonably
neutral forum is unavailable.  See e.g. Cole v. Burns Intern. Sec. Services, 105 F. 3d 1465, 1482
(D.C. Cir. 1997) ("an employee cannot be required . . . to waive access to a neutral forum in
which statutory employment discrimination claims may be heard"; "statutory rights include both
a substantive protection and access to a neutral forum in which to enforce those protections");
Floss v. Ryan's Fam. Steak Houses, Inc., 211 F.3d 306, 314 (6th Cir. 2000) (expressing "serious
reservations" that a forum lacking in neutrality could permit effective vindication of rights).

The Court seemingly disagreed with the statement of law by the Cole court and instead
focused on the fact that the arbitration there provided for a neutral forum—the American
Arbitration Association.  See Dkt. No. 76 at n. 22.  Similarly, in stating that Floss was decided on

alternative grounds, the Court seems to have disregarded the grounds upon which it was decided was that of unconscionability—effectively a state contract law corollary to the effective vindication doctrine.  Taken together, while there is admittedly limited case law on the scope of the "effective vindication of rights" doctrine, there is certainly sufficient "substantial ground for disagreement" as to whether it applies here.

## IV.   AN IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION

An "immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial." United States v. Prevezon Holdings Ltd., No. 13 Civ. 06326 (TPG), 2016 WL 187936, at *4 (S.D.N.Y. Jan. 15, 2016) (citing In re Oxford Health Plans, Inc., 182 F.R.D. 51, 53 (S.D.N.Y. 1998) (citations omitted).  This element "is closely tied to the requirement that the order involve a controlling question of law as to which there is a substantial mground for a difference of opinion."  Id., 2016 WL 187936, at *4 (citing In re Duplan Corp., 591 F.2d 139, 148 n.11 (2d Cir. 1978); Primavera Familienstiftung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)).

For reasons articulated above, see supra at §II(A), an immediate appeal will materially advance the termination of this litigation.  Absent reversal, the aspects of this matter compelled to arbitration before Mr. Goodell must be litigated to conclusion, in the form of three separate actions (or six separate actions if Defendants prevail on their appeal) each likely to involve substantial motion practice, discovery and hearing testimony, only for the issues of unconscionability and effective vindication of rights to be addressed by this Court and then the Second Circuit following three (or six) multi-year arbitral litigations.  If the Second Circuit disagrees with the Court's Order, it would be an extensive waste of time and resources and create unreasonable and unnecessary delay, when the issue at bar is ripe for adjudication.

The circumstances at bar satisfy this aspect of the §1292(b) analysis.  See e.g. S.A. Mineracao Da Trindade-Samitri, 579 F. Supp. at 1050-51 ("an immediate appeal may materially advance the ultimate termination of this litigation.  Should, for example, the Court of Appeals determine that this Court was incorrect in its ruling on the arbitrability of the fraud claims, not only will the legal community at large be well served by an early determination of the issue, but also the parties to this litigation will not have wasted two years in arbitrating claims that are later held to be nonarbitrable."); In re A2P SMS Antitrust Litig., 2015 WL 876456, at *5 ("regardless of whether the Court certifies an appeal now, the Second Circuit will be confronted with an appeal on this precise issue prior to any final judgment in this action.  This is because . . . the losing party . . . will seek to vacate . . . before this Court. The losing party of that determination will almost certainly appeal that decision to the Second Circuit[.]  A reversal of this Court's [o]rder would moot that second appeal, and an affirmance of the [o]rder would likely obviate that second appeal or, at a minimum, substantially narrow the grounds on which it rests[.] [R]esolving the question . . . will have a momentous effect on this [] action."); Islam, 2021 WL 2651653, at *5 ("If the Second Circuit hears the appeal and holds that Plaintiff cannot be compelled to arbitrate, it will have saved the parties the expense and burden of arbitration, and allow the case to proceed to resolution in district court.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request an order certifying Plaintiffs' proposed appeal from the Court's Arbitration Order and Reconsideration Order, and for such other and further relief as may be deemed just and proper.

Dated: September 5, 2023
     New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____

    Douglas H. Wigdor
    Michael J. Willemin
    David E. Gottlieb
    Marjorie Mesidor

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com
mmesidor@wigdorlaw.com

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*

    - and -

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

By: _____/s/_____

    John Elefterakis
    Nicholas Elefterakis
    Raymond Panek
    Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212 532-1176

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*