**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ X

BRIAN FLORES, STEVE WILKS and RAY HORTON, as :
Class Representatives, on behalf of themselves and all :
others similarly situated, :

                             Plaintiffs, :

               v. :

THE NATIONAL FOOTBALL LEAGUE; NEW YORK :
FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; :
MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; :
DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER :
BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a :
HOUSTON TEXANS; ARIZONA CARDINALS :
FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; :
TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a :
TENNESSEE TITANS and JOHN DOE TEAMS 1 through :
26, :

                         Defendants. :

Civil Action No.: 22-cv-00871
(VEC)

------------------------------------------------------------------------ X

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION FOR RECONSIDERATION</u>

**WIGDOR LLP**

Douglas H. Wigdor
David E. Gottlieb
Michael J. Willemin

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
mwillemin@wigdorlaw.com
*Counsel for Plaintiffs*

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

John Elefterakis
Nicholas Elefterakis
Raymond Panek
Johnson Atkinson

80 Pine Street, 38th Floor
New York, NY 10005
Telephone: (212) 532-1116
Facsimile: (212) 532-1176
*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ......................................................................................................................... 8

I.      Applicable Statement ................................................................................................ 8

II.     The Court's Order Requires Reconsideration Following the Second Circuit's
        Decision in *Flores v. National Football League*, No. 23-1185 (2d Cir. Aug. 14, 2025).....9

        A.      The Second Circuit's Order ......................................................................... 9

        B.      The Court's Order Compelling Arbitration of the Flores/Dolphins Claims Should
                be Reconsidered .......................................................................................... 11

        C.      The Court's Order Compelling Arbitration of the Horton/Titans Claims Should be
                Reconsidered ............................................................................................... 11

        D.      The Court's Order Compelling the Issue of Arbitrability of the Wilks/Cardinals
                Claims to Arbitration Should be Reconsidered ........................................ 11

III.    The Matters at Bar Remain Within the Court's Jurisdiction ............................. 15

CONCLUSION .................................................................................................................... 17

## TABLE OF AUTHORITIES

Cases                                                                                                  Page(s)

Abbot Laboratories v. Takeda Pharmaceutical Co. Ltd.,
    476 F.3d 421 (7th Cir. 2007) ................................................................................ 4

Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,
    492 F.3d 132 (2d Cir. 2007) ................................................................................. 6

Commonwealth Coatings Corp. v. Continental Cas. Co.,
    393 U.S. 145 (1968) ............................................................................................. 6

Coregis Ins. Co. v. American Health Foundation, Inc.,
    241 F.3d 123 (2d Cir. 2001) ................................................................................. 4

Flores v. National Football League et al.,
    658 F. Supp. 3d 198 (S.D.N.Y. 2023) ...................................................2, 3, 11, 14

Flores v. National Football League et al.,
    No. 22 Civ. 0871 (VEC), 2023 WL 4744191 (S.D.N.Y. July 25, 2023).................... 3

Flores v. National Football League et al.,
    No. 23-1185, 2025 WL 2349199 (2d Cir. Aug. 14, 2025) ................................ passim

Griggs v. Provident Consumer Disc. Co.,
    459 U.S. 56 (1982) ............................................................................................. 15

Hooters of Am., Inc. v. Phillips,
    173 F.3d 933 (4th Cir. 1999) ...............................................................................11

Huffington v. T.C. Group, LLC,
    637 F.3d 18 (1st Cir. 2011).......................................................................... 4, 5, 6

In re OpenAI, Inc., Copyright Infringement Litig.,
    No. 24 Civ. 01514 (SHS), 2025 WL 1707564 (S.D.N.Y. June 18, 2025).................. 8

Kairam v. W. Side GI, LLC,
    No. 18 Civ. 1005 (AT), 2024 WL 2853598 (S.D.N.Y. June 5, 2024) ........................ 8

McMullen v. Meijer, Inc.,
    355 F.3d 485 (6th Cir. 2004) ...............................................................................11

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ............................................................................................. 1

Morales v. Trans World Airlines, Inc.,
    504 U.S. 374 (1992) ............................................................................................ 4

Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,
    820 F.3d 527 (2d Cir. 2016) ...............................................................................11

Nat'l Football League v. Gruden,
    No. 85527, 2025 WL 2317407 (Nev. Aug. 11, 2025) ........................................ 8

New York State Nat. Org. for Women v. Terry,
    886 F.2d 1339 (2d Cir. 1989) ............................................................................ 15

Olivieri v. Stifel, Nicolaus & Co., Inc.,
    No. 21 Civ. 0046 (JMA) (ARL), 2023 WL 2740846 (E.D.N.Y. Mar. 31 2023) ........................ 9

Peconic Baykeeper, Inc. v. Harvey,
    No. 13 Civ. 6261 (JMA) (SIL), 2021 WL 4755623 (E.D.N.Y. May 21, 2021) ........................ 9

Shrader v. CSX Transp., Inc.,
    70 F.3d 255 (2d Cir. 1995) ................................................................................ 9

Transaero, Inc. v. La Fuerza Aerea Boliviana,
    99 F.3d 538 (2d Cir. 1996) ................................................................................ 8

Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,
    956 F.2d 1245 (2d Cir. 1992) ............................................................................ 9

Statutes

9 U.S.C.A. § 2 ........................................................................................................ 1
Ariz. Rev. Stat. Ann. § 12-3012 ........................................................................... 6
Fla. Stat. Ann. § 682.041 ...................................................................................... 6
Tenn. Code Ann. § 29-5-313 ................................................................................ 6

Rules

Fed. R. Civ. P. 54 .................................................................................................. 8
Fed. R. Civ. P. 60 .................................................................................................. 8

Plaintiffs Brian Flores, Steve Wilks and Ray Horton respectfully submit this Memorandum of Law in Support of a Motion for Reconsideration of aspects of the Court's order dated March 1, 2023 (the "Order"). For the reasons set forth herein, including the order of the Court of Appeals for the Second Circuit in Flores v. National Football League, No. 23-1185, 2025 WL 2349199 (2d Cir. Aug. 14, 2025) (Ex. A),[1] aspects of the Court's Order compelling arbitration of certain claims should be reconsidered.[2]

## PRELIMINARY STATEMENT

The Second Circuit decision in Flores v. National Football League, No. 23-1185, 2025 WL 2349199 (2d Cir. Aug. 14, 2025) held that an arbitration agreement conferring unilateral arbitral authority on NFL Commissioner Roger Goodell is an illegitimate arbitration agreement that lacks the protection of the Federal Arbitration Act, 9 U.S.C.A. §2 et seq. ("FAA") and is unenforceable because it "fails to guarantee that Flores can vindicate his statutory cause of action in an arbitral forum." Id. at *1 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) (internal formatting removed). The Flores decision constitutes definitive controlling law that requires a reconsideration of this Court's Order compelling arbitration of Mr. Flores, Mr. Wilks and Mr. Horton's claims to the unilateral authority of Mr. Goodell. Any attempt by the NFL to further delay and avoid litigation of these claims should respectfully be rejected.

---

[1]     All references to "Ex. __" and "¶__" are references to the exhibits and paragraphs, respectively, set forth in the accompanying Declaration of David E. Gottlieb ("Gottlieb Decl.").

[2]     Prior to filing this motion, the NFL declined to consent to the relief requested herein. Gottlieb Decl. ¶ 22.

**BACKGROUND**

On February 1, 2022, Mr. Flores filed the original Complaint in this action against the National Football League ("NFL"), Miami Dolphins ("Dolphins"), New York Giants ("Giants") and Denver Broncos ("Broncos")[3] alleging claims of, *inter alia*, discrimination and retaliation. See Dkt. No. 1.  On April 7, 2022, Mr. Flores, joined by Mr. Wilks and Mr. Horton, filed an Amended Complaint, including additional claims by Mr. Flores against the Houston Texans ("Texans"), Mr. Wilks against the Arizona Cardinals ("Cardinals") and Mr. Horton against the Tennessee Titans ("Titans").  See Dkt. No. 22.

On June 21, 2022, Defendants moved to compel arbitration of all the claims on the basis of, *inter alia*, arbitration provisions contained within specific employment contracts and the arbitration provision contained within the NFL Constitution.  See Dkt. Nos. 47-50.  Plaintiffs opposed the motion on the basis that, *inter alia*, all the arbitration agreements were unenforceable due to unconscionability and/or the effective vindication doctrine, arguing that the designated arbitrator—NFL Commissioner Roger Goodell—was biased and partial.  See Dkt. Nos. 62-63.  The Court later requested briefing with respect to the enforceability of a delegation clause in the Wilks-Cardinals Agreement.[4]  See Dkt. Nos. 70-75.

On March 1, 2023, the Court issued the Order which: (i) compelled Flores/Dolphins[5] and Horton/Titans to arbitration on the basis of the arbitration agreements contained within their respective employment agreements; (ii) compelled Wilks/Cardinals to arbitration on the basis that the parties agreed to delegate the issue of arbitrability to an arbitrator; and (iii) denied the motion to compel as to Flores/Giants, Flores/Texans and Flores/Broncos.  See Flores v. National Football League, 658 F. Supp. 3d 198 (S.D.N.Y. 2023).  With respect to all matters compelled to

---

[3]    Formal names of each Defendant are set forth in the Complaint.
[4]    For reference, we refer to the employment contracts with the format: "[Name]-[Team] Agreement."
[5]    For reference, we refer to the individual disputes using the format: "[Name]/[Team]."

arbitration, the Court stayed the pending federal court action pending the outcome of arbitration. Id. Thereafter, the parties filed dueling motions for reconsideration as to the aspects of the Order adverse to the respective parties. See Dkt. Nos. 79-82;88-89; 93-95; 97-99. On July 25, 2023, the Court denied the parties' dueling motions for reconsideration. See Flores v. National Football League, No. 22 Civ. 0871 (VEC), 2023 WL 4744191 (S.D.N.Y. July 25, 2023) (the "Reconsideration Order").

On August 21, 2023, Defendants filed a notice of appeal as to the aspects of the Court's Order and Reconsideration Order that denied their motion to compel arbitration as to Flores/Giants, Flores/Texans and Flores/Broncos. See Dkt. No. 113. In their appellate submissions, the NFL and related Defendants largely reiterated the arguments previously submitted to this Court. See Flores v. National Football League, No. 23-1185 at Dkt. Nos. 96, 138, 153, 154. In opposition, Mr. Flores argued that those aspects of the Order and Reconsideration Order should be affirmed on alternative grounds to those contained within the Order. Specifically, Mr. Flores argued, *inter alia*, that the arbitration agreements at issue on appeal were unenforceable on grounds of unconscionability and under the effective vindication doctrine. Id. at Dkt. Nos. 127, 155.

On June 4, 2024, while the appeal was pending, Mr. Flores, Mr. Wilks and Mr. Horton filed with Mr. Goodell a consolidated Statement of Claim, asserting their claims against the Dolphins, Cardinals and Titans, respectively. See Ex. B. Under Section 1.5 of the NFL's Dispute Resolution Procedural Guidelines ("DRPG"),[6] as an initial arbitral act Mr. Goodell had to make the following determination:

---

[6]     A version of the DRPG was attached to the Flores-Dolphins Agreement. No DRPG was attached to the Wilks-Cardinals Agreement or the Horton-Titans Agreement. See Exs. C, D and E, respectively. Defendants have never explained whether the DRPG changed over time, whether different versions of the DRPG have been used or why no DRPG was attached to the Wilks-Cardinals or Horton-Titans Agreements.

> [W]hether the dispute is football-oriented (defined as a dispute relating to or arising out of the Constitution and Bylaws of the National Football League or any NFL or Club policies, rules or regulations) or **not football-oriented** (defined as a dispute that does not relate to or arise out of the Constitution and Bylaws of the National Football League or any NFL or Club policies, rules or regulations and which could arise between any employer and employee, **such as a dispute relating to or arising out of discrimination**, wage and hour or family and medical leave issues).

See Ex. F (emphasis added).  This initial arbitral decision is critical because, under DRPG Sections 1.6 and 1.7, if the matter is determined to be football-oriented, the NFL would retain jurisdiction over the arbitration and if it is determined not to be "football-oriented," JAMS[7] rather than Mr. Goodell would administer the arbitration.  Accordingly, motion practice ensued with respect to the determination of this issue, and the parties submitted legal briefs to Mr. Goodell.[8]  See Exs. B, G, H, I, J.  Despite the fact that the claims at issue clearly "relate to and arise out of[9] discrimination," the issue was contested in an effort to get the NFL to retain control over the arbitration.  Id.

---

[7]      JAMS is an acronym for "Judicial Arbitration and Mediation Services, Inc."

[8]      In addition to Mr. Goodell being tasked with making an arbitral determination on the issue of whether the disputes were "football-oriented" and the arbitral forum in which the claims would be litigated, the parties also engaged in motion practice over whether Mr. Flores, Mr. Wilks and Mr. Horton's claims would remain consolidated as a single action or should be separated and litigated individually.  See Exs. G, I.  Nothing in the DRPG even permitted Mr. Goodell to make any arbitral determination at that stage other than the "football-oriented" issue.  Mr. Flores, Mr. Wilks and Mr. Horton pointed this out to Mr. Goodell but he ruled on that issue nonetheless.  See Ex. K.

[9]      It is universally accepted that the phrase "related to" should be read as extremely broad.  See e.g. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (J. Scalia) (citing Black's Law Dictionary 1158 (5th ed. 1979) (the "ordinary meaning of these words is a broad one – to stand in some relation; to have a bearing or concern; to pertain; refer; to bring into association with or connection with." ); Coregis Ins. Co. v. American Health Foundation, Inc., 241 F.3d 123, 128 (2d Cir. 2001) (J. Sotomayor) ("Here, the ordinary meaning of the term "related to" . . . is broader than the term "arising out of," and . . . is typically defined more broadly and is not necessarily tied to the concept of a causal connection."); Abbot Laboratories v. Takeda Pharmaceutical Co. Ltd., 476 F.3d 421, 424 (7th Cir. 2007) (noting that the clause "arising from, concerning or in any way related to" is "about as broadly worded as could be imagined"); Huffington v. T.C. Group, LLC, 637 F.3d 18, 22 (1st Cir. 2011) (holding "relating to . . . to be broader than the concept of a causal connection" and means only "connected by reason of an established or discoverable relation.").

4

On September 17, 2024, contrary to the clear language of the DRPG, Mr. Goodell issued an arbitral decision on the issues raised in the motion practice. Specifically, Mr. Goodell agreed that the NFL would retain jurisdiction over the disputes. See Ex. K.[10] In Mr. Goodell's order, he further extended his unilateral power and designated Peter C. Harvey (a partner at Patterson Belknap Webb & Tyler LLP ("Patterson Belknap")) to serve as the arbitrator, to be assisted by Bill Polian (a former senior executive for several NFL teams over a period of 25 years) as an a consulting. Id. at p. 7. However, Mr. Goodell reserved all his rights to "serve in that role." Id.[11]

On September 24, 2024, the NFL submitted a letter to the Second Circuit to "bring to the Court's attention" that Mr. Goodell had appointed Mr. Harvey as the arbitrator in those matters. Ex. L. This letter was completely gratuitous given that it pertained only to matters not within the Second Circuit's jurisdiction and made no representations as to whether Mr. Goodell would handle the matters on appeal in a similar manner. Mr. Flores responded by pointing out that the NFL's submission was attempting to create a false appearance of impartiality in pending arbitrations, despite the fact that Mr. Goodell had already issued a bogus arbitral decision. See Ex. M. Mr. Flores also pointed out that the supposed "impartial" arbitrator assigned had not made any standard arbitral disclosures about his relationship or conflicts with the parties, and that even absent such typical disclosures,

> [P]ublic information reflects that Mr. Harvey has an ongoing
> professional relationship with the NFL, including being a member
> of the Diversity Advisory Committee created in response to the
> filing of the Flores lawsuit in a purported effort to address the
> racial inequities set forth in this action. Mr. Polian is a lifelong
> NFL executive, having worked in management for at least four
> different teams over more than 40 years. Together, Mr. Harvey and

---

[10]    Despite the parties' submissions making detailed legal argument citing case law and legal authority, in his order finding that the dispute was "football-oriented," Mr. Goodell did not cite a single legal authority supporting his decision. Id. This is contrary to the DRPG which requires Mr. Goodell to "apply the substantive law . . . that would be applied by a court with jurisdiction over the subject matter of the arbitration . . ." Ex. F at §4.2.

[11]    Nothing in the DRPG would prevent Mr. Goodell from revoking any delegated authority. See Ex. F.

>Mr. Polian's relationships and connections to the NFL and its member teams, and its lawyers, is sure to be extensive. Given that Mr. Harvey and Mr. Polian have failed to provide the typical and necessary disclosures *sua sponte*, we have requested that information from them directly using nearly identical disclosure questions to those used by AAA and JAMS.

Id. On the same date, Mr. Flores, Mr. Wilks and Mr. Horton requested standard arbitral disclosures—required by law—from Mr. Goodell, Mr. Harvey and Mr. Polian. See Ex. N. No response to that request was ever communicated. See Gottlieb Decl. at ¶ 19.

These requests were hardly controversial. Arbitral conflict disclosures are required by Supreme Court precedent, operative state statutes and every major arbitration provider. See, e.g., Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 148-149 (1968) ("We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias."); Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 137 (2d Cir. 2007) ("An arbitrator who knows of a material relationship with a party and fails to disclose it meets [the] 'evident partiality' standard: A reasonable person would have to conclude that an arbitrator who failed to disclose under such circumstances was partial to one side."); Fla. Stat. Ann. § 682.041 ("Before accepting appointment, an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, shall disclose to all parties to the agreement to arbitrate and arbitration proceeding and to any other arbitrators any known facts that a reasonable person would consider likely to affect the person's impartiality as an arbitrator in the arbitration proceeding, including . . . [a]n existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representative, a witness, or another arbitrator"); Tenn. Code Ann. § 29-5-313 (same); Ariz. Rev. Stat. Ann. § 12-3012 (same); JAMS Employment Arbitration Rules

6

& Procedures § 15(h), et seq. (requiring arbitrator disclosures that could impact impartiality);[12] AAA Employment Arbitration Rules § 15 (same).[13] [14]

On November 4, 2024, an initial case management conference was held before Mr. Harvey.  During that conference, Mr. Flores, Mr. Wilks and Mr. Horton's counsel again raised the issue of arbitral conflict disclosures being a necessary first step in proceedings and Mr. Harvey approved a briefing schedule to address the issue.  On November 20, 2024, Mr. Flores, Mr. Wilks and Mr. Horton submitted a legal brief requesting arbitral disclosures required by law.  See Ex. O.  On December 16, 2024, the NFL opposed the disclosure request.  See Ex. P.  On December 30, 2025, Mr. Flores, Mr. Wilks and Mr. Horton submitted reply papers.  See Ex. Q.  Incredibly, as of the filing of this motion before the Court, Mr. Harvey has not issued any decision on the motion for arbitral disclosures, nor communicated with the parties in any manner whatsoever regarding the proceedings.  As such, the entire arbitration has been in a complete standstill and effective stay.

Though it would be complete speculation, since we have not heard anything at all from Mr. Harvey, we anticipate that Mr. Harvey might claim he was waiting for the Second Circuit's decision to rule on the disclosure motion.  If that were the case, one would expect that to have been communicated, not only as a matter of professional courtesy, but also so the parties could have at least briefed whether an effective many-month-long stay was appropriate.  However, even since the Second Circuit's decision, which was more than a month ago, the parties still have not heard anything from Mr. Harvey.  See Gottlieb Decl. at ¶ 20.  Given Mr. Harvey's inaction

---

[12]    Available at: https://www.jamsadr.com/rules-employment-arbitration/english?_gl=1*v9w4t6*_up*MQ..&gclid=Cj0KCQjwo8S3BhDeARIsAFRmkOOZ6ua4n-eq3y6te8qCfiZL0pVIsuJW2NBBIZpn3LCOoT54l5-Sxc0aAqcJEALw_wcB#Rule-15.

[13]    Available at:  https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf.

[14]    To the extent the Court desires further information regarding disclosure obligations, the complete brief submitted to Mr. Harvey is attached as Ex. O.

and lack of communication, the litigations before him have not even moved to the very initial discovery stage.  Respectfully, this is no manner for an arbitration to proceed as Mr. Flores, Mr. Wilks and Mr. Horton are stuck in limbo until Mr. Harvey decides to make these matters a priority.  This only further demonstrates the illegitimacy of those proceedings.

On August 14, 2025, the Second Circuit affirmed this Court's Order on alternative grounds, finding that the arbitration provision in the NFL Constitution was unenforceable because it failed to provide a neutral forum that could even be called an "arbitration" and that Mr. Flores could not effectively vindicate his statutory rights in the NFL's dictated forum.[15]  The Second Circuit's order necessarily impacts the Court's prior Order compelling arbitration of the Flores/Dolphins, Wilks/Cardinals and Horton/Titan claims, which are currently stayed.

## **ARGUMENT**

### I.  **Applicable Standard**

District courts have the inherent power to revisit earlier decisions where justice requires. See, e.g., Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir. 1996) ". . . a district court is vested with the power to revisit its decisions before the entry of final judgment . . ."); Kairam v. W. Side GI, LLC, No. 18 Civ. 1005 (AT), 2024 WL 2853598, at *1 (S.D.N.Y. June 5, 2024) ("the Court retains inherent authority to revisit its decisions before the entry of final judgment.").  Fed. R. Civ. P. 54(b) is the primary procedural rule used to effectuate such review of a prior.[16]  Under Fed. R. Civ. P. 54(b), "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and

---

[15]      Just days before, an *en banc* panel of the Nevada Supreme Court also invalidated an arbitration agreement that designated Mr. Goodell to be arbitrator on the basis of unconscionability.  See Nat'l Football League v. Gruden, No. 85527, 2025 WL 2317407 (Nev. Aug. 11, 2025).

[16]      Reconsideration of prior orders is also permitted under Fed. R. Civ. P. 60(b), but that only pertains to final orders.  See e.g. In re OpenAI, Inc., Copyright Infringement Litig., No. 24 Civ. 01514 (SHS), 2025 WL 1707564, at *2 (S.D.N.Y. June 18, 2025).

liabilities."  Taken together, courts consider matters "that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Courts will often grant motions for reconsideration where there has been an intervening change in the law or where there is a need to correct a clear error or prevent manifest injustice. See, e.g., Peconic Baykeeper, Inc. v. Harvey, No. 13 Civ. 6261 (JMA) (SIL), 2021 WL 4755623, at *5 (E.D.N.Y. May 21, 2021), report and recommendation adopted in part, 2021 WL 4472645 (E.D.N.Y. Sept. 30, 2021) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)); Olivieri v. Stifel, Nicolaus & Co., Inc., No. 21 Civ. 0046 (JMA) (ARL), 2023 WL 2740846, at *7 (E.D.N.Y. Mar. 31, 2023), aff'd, 112 F.4th 74 (2d Cir. 2024) (granting motion for reconsideration based on a change in controlling law).

II.    **The Court's Order Requires Reconsideration Following the Second Circuit's Decision in _Flores v. National Football League No. 23-1185 (2d Cir. Aug. 14, 2025)_**

A.    **The Second Circuit's Order**

The Second Circuit affirmed this Court's Order on alternative grounds, refusing to enforce the arbitration agreements and holding (1) that an agreement to submit statutory claims to the unilateral substantive and procedural discretion of a party's principal executive officer provides for arbitration in name only and lacks the protection of the FAA, and (2) that an agreement to submit statutory claims to the discretion of the NFL Commissioner fails to provide a forum in which a plaintiff can effectively "vindicate [his] statutory cause of action in [an] arbitral forum."  Flores, 2025 WL 2349199, at *10.  In so holding, the Second Circuit explained that such an arbitration agreement, "[a]t a structural level, [] lacks the requisite independence between parties and arbitrator that is fundamental to the FAA's conception of arbitration."  Id. at *7. Contrary to Defendants' argument that the issue of bias and partiality should exclusively be addressed post-arbitration, the Second Circuit held that to be misguided: "The FAA authorizes

federal court to *vacate* arbitration awards 'where there was evident partiality . . . in the

arbitrators.' It would make little sense if the same statute nonetheless required the courts to

compel parties to arbitrate their claims in a forum that is indisputably partial." Id.

The Second Circuit also addressed the NFL's letter submission with respect to Mr.

Goodell's appointment of Mr. Harvey in the pending arbitrations. The Court held:

> Late efforts by the NFL Commissioner to exercise his unilateral
> discretion to boot-strap a more plausible arbitration process do not
> alter our analysis. After the submission of briefs on appeal,
> Defendants-Appellants alerted the Court that the NFL
> Commissioner had "exercised his discretion" to appoint Peter C.
> Harvey to arbitrate Flores's claims. Harvey has a professional
> relationship with Defendants-Appellants on issues at the heart of
> Flores's claims: he is a member of the NFL's "Diversity Advisory
> Committee" and has been hired as a diversity consultant by the
> league. This relationship is perfectly appropriate, it appears, but
> **the late unilateral designation of an adviser to the NFL as**
> **arbitrator neither provides for an even facially independent**
> **arbitral forum, nor remedies the Commissioner's unilateral**
> **contractual authority over both the substance of Flores's**
> **statutory claims and the procedures governing their alleged**
> **"arbitration." In fact, the Commissioner's unilateral**
> **designation of an adviser to the NFL represents a further**
> **extension of his unilateral power rather than its remedy.**

Id. at *8 (emphasis added). The Court also found that Mr. Goodell's initial order that the NFL

would retain jurisdiction and appoint Mr. Harvey was facially inconsistent with the DRPG:

> Notably, Defendants-Appellants did not claim in their letter to the
> Court that Harvey was selected in accordance with the NFL's
> Dispute Resolution Procedural Guidelines. Indeed, **the unilateral**
> **designation of Harvey to arbitrate federal statutory claims**
> **appears to be facially inconsistent with these**
> **procedures**. *See* National Football League Dispute Resolution
> Procedural Guidelines, §§ 1.5, 1.7., J.A. 501 (setting forth that
> when the dispute is "not football-oriented," such as when it
> "relat[es] to or aris[es] out of discrimination," the Commissioner
> may either direct the dispute to "the alternative dispute resolution
> provider *agreed to by the parties*" or to "JAMS, Inc." (emphasis
> added)).

10

Id. (emphasis added.). Furthermore, the Second Circuit explained that Mr. Goodell's ability to unilaterally designate an arbitrator of his choosing raised the same concerns that led to the Fourth and Sixth Circuits invalidating arbitration agreements on grounds of unconscionability. See id. at n. 62 ("Accordingly, we additionally find persuasive some of the reasoning of the Fourth and Sixth Circuits, respectively, which refused to enforce arbitration provisions because of the unilateral selection of arbitrators) (citing Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 939 (4th Cir. 1999); McMullen v. Meijer, Inc., 355 F.3d 485, 493-94 (6th Cir. 2004)).

**B.    The Court's Order Compelling Arbitration of the Flores/Dolphins Claims Should be Reconsidered**

The Court compelled arbitration of Mr. Flores' claims against the Dolphins on the basis of the arbitration agreement contained within the Flores-Dolphins contract. As the Court previously found, Section 12 of the Flores-Dolphins contract titled "COMMISSIONER'S AUTHORITY TO ARBITRATE DISPUTES," required that "all matters in dispute between the Employee and the Club . . . shall be referred to the Commissioner of the NFL for binding arbitration" in accordance with the DRPG. See Flores, 658 F. Supp. 3d at 209; see also Ex. C. The Court previously compelled Mr. Flores' claims against the Dolphins to arbitration, reasoning that Mr. Flores could "ask for no more impartiality than inheres in the method they have chosen." Id. at 215 (citing Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 548 (2d Cir. 2016)). Respectfully, under the Second Circuit's Order, that rationale can no longer hold. Accordingly, the Court's previous order compelling Mr. Flores' claims against the Dolphins to arbitration should be reconsidered.

The NFL may argue that because Mr. Goodell has delegated his arbitral authority to Mr. Harvey, the Second Circuit's order does not require reconsideration of this Court's Order pertaining to Mr. Flores' claims against the Dolphins. But any such argument would run

11

expressly counter to the Second Circuit's Order.  As set forth above, the Second Circuit expressly rejected the proposition that Mr. Goodell could somehow "cure" an arbitration agreement that bestows unilateral discretion over statutory claims on the NFL's Commissioner through delegation.  Rather, the Court found that such exercise of power by Mr. Goodell only represents an "extension" of his power, not a "remedy."  <u>Flores</u>, 2025 WL 2349199, at *7.

Moreover, the arbitration process offered by the NFL to date has already proven to be the complete sham that was expected.  As set forth above, Mr. Goodell exercised his initial arbitral authority in a facially biased manner when he issued a decision that the disputes at issue were "football-oriented," even though the DRPG expressly provides that disputes "related to or arising out of discrimination" are not "football-oriented" and should be referred to JAMS.  <u>See</u> Exs. F-K.  Mr. Goodell's decision to retain the disputes within the NFL's own internal control even drew the ire of the Second Circuit, which held that "the unilateral designation of Harvey to arbitrate federal statutory claims appears to be facially inconsistent with these procedures."  <u>Flores</u>, 2025 WL 2349199, at *8.

Mr. Goodell's designation of arbitral authority to Mr. Harvey demonstrates even further partiality.  The DRPG does not provide Mr. Goodell with any authority to delegate his arbitral authority to anyone other than "persons from his staff."  Ex. F at § 3.2.  Mr. Harvey is not a member of Mr. Goodell's staff—he is a partner of an outside law firm, Patterson Belknap.[17] Based only on public information, Mr. Goodell has retained Mr. Harvey and his firm for a variety of work and projects which has likely resulted in substantial compensation, including appointing Mr. Harvey to a Diversity Advisory Committee created in the aftermath of this litigation "to

---

[17]    Mr. Harvey's Patterson Belknap bio is available at https://www.pbwt.com/peter-c-harvey.

review league and club policies in light of ongoing concerns over a lack of diversity in hiring."[18]
Mr. Harvey and his firm market their affiliation with the NFL in this and other matters to drive
business.[19]  However, the extent and scope of Mr. Harvey's relationship and compensation with
the NFL and its teams is unknown because he has not made any disclosures despite repeated
requests and a formal motion.  In addition, no disclosures have been made as to Mr. Goodell
(who clearly has relationships and interests with the parties, but the full extent of which beyond
being the NFL Commissioner was never disclosed) or Mr. Polian (while we know he was a long-
time NFL team executive, we have been provided no disclosures) both of whom have arbitral
authority and/or roles with respect to the proceedings.[20]

Finally, Mr. Harvey has completely abdicated and disregarded his responsibilities and the
NFL's supposed internal arbitration system has proven to be a failure.  Mr. Harvey has failed to
provide any conflict disclosures required by law, and he has let the entire arbitration before him
languish without any communication.  Mr. Goodell is tasked with overseeing these matters
ensuring that this arbitration system is operative and provides a mechanism to have claims
heard—and he has already proven himself to be unable and unwilling to handle that role.  While
the Court need not even reach the issues of Mr. Goodell and Mr. Harvey's inadequacies in the
arbitration proceedings to date to reconsider the Order based on the Second Circuit's decision,
these details provide further information supporting the motion at bar.

---

[18]    See, e.g., Around the NFL Staff, *NFL forms new committee to review policies regarding diversity hiring; teams mandated to hire minority coach as offensive assistant*, NFL.com (Mar. 28, 2022) available at: https://www.nfl.com/news/nfl-forming-new-committee-to-review-league-and-team-policies-regarding-diversity#:~:text=%22The%20six%2Dmember%20committee%20will,level%20coach%20and%20front%20office.

[19]    See, e.g., https://www.pbwt.com/news/peter-harvey-to-serve-on-the-national-football-leagues-diversity-advisory-committee; https://www.pbwt.com/news/partner-peter-c-harvey-appointed-by-nfl-commissioner-to-hear-suspension-appeal.

[20]    We also sought a "more fulsome disclosure about the nature of Mr. Polian's role and the extent of his involvement in the arbitral decision-making process."  See Ex. O at p. 12.  There has been no responsive or communication on this or any other items in the arbitration.

Accordingly, based on the Second Circuit's order, this Court's prior Order should be reconsidered and the motion to compel arbitration of Mr. Flores' claims against the Dolphins should be denied.

**C.      The Court's Order Compelling Arbitration of the Horton/Titans Claims Should be Reconsidered**

As the Court previously held, Mr. Horton's supposed arbitration agreement with the Titans was limited to a single sentence.  Section 6(a) of the Horton-Titans Agreement states only: "You and Titans agree that all matters in dispute between You and the Titans shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive binding and unappealable by You and the Titans."  See Flores, 658 F. Supp. 3d at 212.  Contrary to the Flores-Dolphins Agreement, the Horton-Titans Agreement does not refer to or incorporate any additional arbitration terms, such the DRPG.[21]  The Second Circuit's Order unequivocally holds that such an arbitration agreement is unenforceable both because it is not a bona fide arbitration agreement and would not permit Mr. Horton to effectively vindicate his rights.

**D.      The Court's Order Compelling the Issue of Arbitrability of the Wilks/Cardinals Claims to Arbitration Should be Reconsidered**

The Court compelled Mr. Wilks' claims to arbitration on the basis of a delegation clause that required an arbitrator to determine, in the first instance, the gateway issue of the enforceability of the arbitration agreement.  Flores, 658 F. Supp. 3d at 211-212.  Specifically, the Wilks-Cardinals Agreement required that all disputes "shall be referred to the Commissioner for binding arbitration" including "any claim that all or any part of this Agreement is void or voidable."  See Ex. D at § 10(a), (e).  There is no provision in the Wilks-Cardinals Agreement

---

[21]      As such, Mr. Goodell's appointment of Mr. Harvey to serve as arbitrator over Mr. Horton's claims constituted an "extension of his unilateral power" under the arbitration agreement.  Flores, 2025 WL 2349199 at *8.

that permits Mr. Goodell to delegate his authority to decide this gateway issue of enforceability.[22]

Pursuant to the Second Circuit's Order, Mr. Wilks cannot be compelled to arbitrate any

substantive or procedural issues before Mr. Goodell.

## III.    The Matters at Bar Remain Within the Court's Jurisdiction

Prior to the filing of the instant motion, Plaintiffs' counsel asked for the NFL's consent

that the matters pending in arbitration return to litigation in this Court.  The NFL did not consent

and took the position that this Court lacks jurisdiction over the Flores/Dolphins, Wilks/Cardinals

and Horton/Titans disputes until the Second Circuit issues a mandate conferring jurisdiction back

to the District Court as to the matters on appeal in Flores/Giants, Flores/Texans and

Flores/Broncos.  That position is wrong on the law.

When a party appeals an aspect of a district court proceeding, the district court is divested

of jurisdiction over only those aspects of the case on appeal.  See Griggs v. Provident Consumer

Disc. Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional

significance—it confers jurisdiction on the court of appeals and divests the district court of its

control over those aspects of the case involved in the appeal").  The district court retains

jurisdiction over those aspects of the case not subject to the appeal.  See New York State Nat.

Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989) (district court retains jurisdiction

"when the judgment appealed from does not determine the entire action, in which case the

district court may proceed with those matters not involved in the appeal").

---

[22]    The DRPG was referenced in the Wilks-Cardinals Agreement, but it was not attached as it was in the Flores-Dolphins Agreement.  In connection with all the previous motion practice over arbitrability, neither the NFL nor the Cardinals has ever presented evidence that any version of the DRPG was ever provided to Mr. Wilks or made available to him, or even presented to the Court evidence of the version of the DRPG that was in existence at the time of the Wilks-Cardinals Agreement.  For reasons explained above, based on the terms of the DRPG attached to the Flores-Dolphins Agreement, it appears highly unlikely that any DRPG would have permitted Mr. Goodell to delegate his authority to Mr. Harvey.

The notice of appeal was filed only by the NFL, Giants, Texans and Dolphins and only appealed the aspects of the Court's order that denied their motion to compel arbitration. The NFL, Dolphins, Cardinals and Titans did not file any notice of appeal as to any aspect of Flores/Dolphins, Wilks/Cardinals or Horton/Titans. See Dkt. No. 113. Moreover, the Second Circuit expressly held that "this appeal concerns only Flores's claims against the Broncos, Giants, and Texans, and related claims against the NFL." Flores, 2025 WL 2349199, at *3. Accordingly, there cannot be any legitimate doubt that the Court retains jurisdiction over the matters at bar.

The NFL may even concede this point and pivot to argue that the Court should nevertheless exercise its discretion to stay any determination on this motion pending the outcome of the petition for a rehearing en banc scheduled to be filed on September 18, 2025. See Flores, No. 23-1185 at Dkt. No. 193. This argument, respectfully, should be rejected. A petition for rehearing en banc could take months to resolve. Meanwhile, this action was filed more than three years ago—and the NFL has been able to avoid any litigation or discovery on the merits of any claims.[23] Even for the claims compelled into arbitration, as set forth above, the NFL's arbitration system has utterly failed to do anything other than secure further delay and prevent the NFL and its teams from having to answer for the alleged conduct.[24] Regardless of the forum in which these matters are litigated, the parties will be obligated to engage in discovery. The NFL cannot claim any legitimate prejudice by these claims proceeding with discovery.

---

[23]    The issue presented by this motion could have already been resolved by the Second Circuit. After the NFL, Giants, Texans and Broncos filed a notice of appeal from the aspects of the Order that denied their motion to compel arbitration, Plaintiffs filed a cross-appeal as to the aspects of the Order that compelled arbitration, and seeking the invocation of pendent appellate jurisdiction. See No. 23-1185 at Dkt. No. 32. Defendants did not consent and moved to dismiss that appeal. Id. at Dkt. Nos. 90, 104, 109, 120.

[24]    The NFL sought to stay proceedings in arbitration pending the outcome of the Second Circuit appeal, but Plaintiffs' counsel did not consent. See Gottlieb Decl. at ¶ 21. Mr. Harvey effectively gave the NFL its desired stay through his inexplicable inaction.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court reconsider the previous Order and deny Defendants NFL, Dolphins, Cardinals and Titan's motion to compel arbitration.

Dated: September 16, 2025
New York, New York                    Respectfully submitted,

                                       **WIGDOR LLP**

                                       By: _____
                                            Douglas H. Wigdor
                                            David E. Gottlieb
                                            Michael J. Willemin

                                       85 Fifth Avenue
                                       New York, NY 10003
                                       Telephone: (212) 257-6800
                                       Facsimile: (212) 257-6845
                                       dwigdor@wigdorlaw.com
                                       dgottlieb@wigdorlaw.com
                                       mwillemin@wigdorlaw.com
                                       *Counsel for Plaintiffs*

                                            - and -

                                       **ELEFTERAKIS, ELEFTERAKIS & PANEK**

                                       By: _____/s/_____
                                            John Elefterakis
                                            Nicholas Elefterakis
                                            Raymond Panek
                                            Johnson Atkinson

                                       80 Pine Street, 38th Floor
                                       New York, New York 10005
                                       Telephone: 212-532-1116
                                       Facsimile: 212 532-1176
                                       *Counsel for Plaintiffs*

17

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, David E. Gottlieb, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 5,668 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.

Executed on this 16th day of September, 2025 in New York, New York.

_____
David E. Gottlieb