**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>                    Defendants. | Civil Action No.: 22-cv-00871 (VEC) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 1, 2023 ORDER ON <u>DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT .................................................................................................................................... 3

    I.    THE COURT LACKS JURISDICTION PENDING RESOLUTION OF THE APPEAL ................................................................................................................ 3

    II.    THE COURT SHOULD DECLINE TO RECONSIDER THE STAY AT THIS TIME ..................................................................................................................... 4

    III.    THE MOTION FOR RECONSIDERATION LACKS MERIT ............................ 6

        A.    Plaintiffs Forfeited Any Argument That The Arbitration Provisions in Their Employment Agreements Do Not Provide For "Arbitration" ................................................................................................ 6

        B.    There Has Been No Change in Controlling Law ....................................... 7

CONCLUSION ............................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cavounis* v. *United States*,
  2016 WL 715768 (S.D.N.Y. Feb. 19, 2016) ............................................................................. 7

*Ching* v. *United States*,
  298 F.3d 174 (2d Cir. 2002) .................................................................................................... 4

*Coinbase, Inc.* v. *Bielski*,
  599 U.S. 736 (2023) ............................................................................................................ 4, 5

*Commerzbank AG* v. *U.S. Bank, N.A.*,
  100 F.4th 362 (2d Cir. 2024) ................................................................................................... 6

*Consumer Fin. Prot. Bureau* v. *MoneyGram Int'l, Inc.*,
  2022 WL 17547438 (S.D.N.Y. Dec. 9, 2022) ................................................................. 4, 5, 6

*Davis* v. *Blige*,
  2008 WL 2477461 (S.D.N.Y. June 16, 2008) ...................................................................... 5, 6

*Griggs* v. *Provident Consumer Discount Co.*,
  459 U.S. 56 (1982) .................................................................................................................. 4

*Henry Schein, Inc.* v. *Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) .................................................................................................................. 9

*Hill* v. *Tisch*,
  2025 WL 1871142 (E.D.N.Y. July 7, 2025) ............................................................................ 8

*Hoover* v. *HSBC Mortg. Corp. (USA)*,
  2014 WL 12781322 (N.D.N.Y. July 9, 2014) .................................................................. 4, 5, 6

*Howsam* v. *Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .................................................................................................................. 9

*In re CRM Holdings, Ltd. Sec. Litig.*,
  2013 WL 787970 (S.D.N.Y. Mar. 4, 2013) ............................................................................. 8

*James* v. *Niagara-Wheatfield Cent. Sch. Dist.*,
  2025 WL 821884 (W.D.N.Y. Mar. 14, 2025) ...................................................................... 4, 5

*Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*,
  729 F.3d 99 (2d Cir. 2013) ...................................................................................................... 8

*Marano* v. *Metro. Museum of Art*,
    2020 WL 4735117 (S.D.N.Y. Aug. 14, 2020) ........................................................................ 8

*Merryman* v. *J.P. Morgan Chase Bank, N.A.*,
    2017 WL 456470 (S.D.N.Y. Feb. 2, 2017) ............................................................................ 7

*Palin* v. *New York Times Co.*,
    482 F. Supp. 3d 208 (S.D.N.Y.), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y.
    2020) ...................................................................................................................................... 6

*Nat'l Football League Players Ass'n ex rel. Peterson* v. *Nat'l Football League*,
    831 F.3d 985 (8th Cir. 2016) .............................................................................................. 10

*Utica Mutual Insurance Co.* v. *Clearwater Insurance Co.*,
    2015 WL 4496374 (N.D.N.Y. July 23, 2015) ...................................................................... 6

**OTHER AUTHORITIES**

Judge Caproni's Individual Practices in Civil Cases § 4.B.1 ............................................................ 1

Local Civil Rule 6.3 ..................................................................................................................... 1, 6

Tisha Thompson, *NFL selects Jeffrey Mishkin for Cardinals Arbitration*, ESPN
    (Apr. 25, 2023), https://tinyurl.com/arbitrator-cardinals ..................................................... 10

iii

## PRELIMINARY STATEMENT

Plaintiffs' second motion for reconsideration of this Court's correct order compelling arbitration of their claims should be denied because it is not only premature but also fatally flawed.

As a threshold matter, the Court lacks jurisdiction over this case while the petition for rehearing en banc in *Flores* v. *N.Y. Football Giants*, No. 23-1185, remains pending before the Second Circuit and no mandate has yet issued. Plaintiffs' motion relies on the precise issue addressed in that rehearing petition: the Second Circuit's recent decision in *Flores* that the arbitration provision in the NFL Constitution does not provide for "arbitration" under the Federal Arbitration Act and otherwise violates the federal effective-vindication doctrine because it designates the NFL Commissioner as the default arbitrator and fails to specify particular arbitral procedures. And even if the Court had jurisdiction, it would make no legal or practical sense for this Court to reconsider those issues when the panel decision on which Plaintiffs rely may be reversed or vacated after further appellate proceedings.

On the merits, Plaintiffs have not met their heavy burden of showing that they are entitled to reconsideration. To begin with, Plaintiffs did not previously argue that the *express arbitration provisions in their employment agreements* fail to provide for "arbitration" under the Arbitration Act, and they may not do so for the first time now. In any event, in reaching its conclusion, the Second Circuit considered solely the NFL Constitution's arbitration provision and did *not* address the distinct employment agreement arbitration provisions at issue here, and thus, even if appellate proceedings were concluded, the Second Circuit's decision does not qualify as a change in controlling law under the stringent standard for reconsideration.

For those reasons, Plaintiffs' motion for reconsideration should be denied.[1]

---

[1] Plaintiffs' motion also significantly exceeds the 3,500-word limit set forth in Local Civil Rule 6.3 (eff. Jan. 2, 2025). *See also* Judge Caproni's Individual Practices in Civil Cases § 4.B.1 (setting

## BACKGROUND

Plaintiffs filed their operative complaint in April 2022. Dkt. 22. Defendants moved to compel arbitration of all claims, and the Court granted in part and denied in part the motion in March 2023. Dkt. 76. Specifically, the Court held that Flores's claims against the Miami Dolphins, Wilks's claims against the Arizona Cardinals, and Horton's claims against the Tennessee Titans (and their related claims against the NFL) must be arbitrated pursuant to the express arbitration provisions in their respective employment agreements with those clubs. *Id.* at 11-13, 15-29. The Court denied the motion as to Flores's claims against the New York Giants, the Denver Broncos, and the Houston Texans (and his related claims against the NFL) based on the arbitration provision in the NFL Constitution. *Id.* at 9-11, 13-14. The Court later denied Plaintiffs' motion for reconsideration of the portion of the order granting the motion to compel arbitration. *See* Dkt. 102, at 13-16. The Court initially stayed the case as to the claims that it had held must be arbitrated, Dkt. 76, at 29, and later stayed the remaining claims after Defendants filed a notice of appeal, Dkt. 115.

On August 14, 2025, the Second Circuit affirmed the Court's order denying the motion to compel arbitration with respect to Flores's claims against the Giants, Broncos, and Texans (and his related claims against the NFL). C.A. Op. at 1-29. Affirming on a ground not presented to either this Court or the Second Circuit, the Second Circuit held that the arbitration provision in the NFL Constitution does not provide for "arbitration" protected by the Federal Arbitration Act and violates the federal effective-vindication doctrine because it designates the NFL Commissioner as the default arbitrator and does not specify particular arbitral procedures. *Id*. at 20-22, 25-26. On

---

forth a higher word limit "unless otherwise provided by statute or rule"); Mot. 18 (noting that the motion is "5,668 words").

September 18, 2025, Defendants filed a timely petition for rehearing en banc, which remains pending before the Second Circuit. *See* C.A. Dkt. 196.

During the pendency of the appeal, the NFL Commissioner separately determined pursuant to the NFL's Dispute Resolution Procedural Guidelines that Flores's claims against the Dolphins, Wilks's claims against the Cardinals, and Horton's claims against the Titans (and their related claims against the NFL) were all sufficiently "football-oriented" to warrant arbitration under the NFL's arbitration system. Ex. K at 3-7.[2] The Commissioner further appointed the Honorable Peter C. Harvey, the former Attorney General of New Jersey, to serve as the arbitrator of the dispute. *Id*. at 8. Mr. Harvey recently asked to schedule a status conference for the week of October 6, 2025. Dkt. 158-2, at 3.

## ARGUMENT

Plaintiffs' motion should be denied for multiple, independent reasons. As an initial matter, the Court lacks jurisdiction over the motion while appellate proceedings remain pending because the arguments raised in the motion are the same issues involved in the appeal. Even if jurisdiction were present, the Court should decline to reconsider the current stay until the end of the appellate proceedings in the interests of judicial efficiency and to avoid significant prejudice to Defendants. Finally, Plaintiffs have not shown that they are entitled to reconsideration on the merits because their motion improperly raises new arguments and because the Second Circuit's decision is not controlling authority as to the employment-agreement arbitration provisions at issue here.

**I.    THE COURT LACKS JURISDICTION PENDING RESOLUTION OF THE APPEAL**

It is well settled that an appeal "divests the district court of its control over those aspects

---

[2] The cited exhibits refer to those attached to Plaintiffs' motion for reconsideration.

of the case involved in the appeal." *Griggs* v. *Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). While the appeal remains pending, the district court may not "rule on any motion affecting an aspect of the case" on appeal. *Ching* v. *United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002). Here, Plaintiffs' sole basis for their belated motion for reconsideration is that the Second Circuit's recent decision means they cannot be required to arbitrate their claims. *See* Mot. 9-15. But that argument raises the precise issues that remain pending before the Second Circuit. *See* C.A. Dkt. 196 (en banc petition). Because Plaintiffs' motion for reconsideration relies on the same issues "involved in the appeal," this Court lacks jurisdiction over the motion.

Plaintiffs argue that the Court has jurisdiction because only Flores's claims against the Giants, Texans, and Broncos (and related claims against the NFL) were formally before the Second Circuit. *See* Mot. 15-16. But "it makes no sense for" this Court to reconsider its decision to send the remaining claims to arbitration based on the Second Circuit's decision "while the court of appeals cogitates on" the validity of that very decision. *Coinbase, Inc.* v. *Bielski*, 599 U.S. 736, 741 (2023) (internal quotation marks and citation omitted). In sum, until the appellate proceedings are resolved and the case remanded, the Court lacks jurisdiction over Plaintiffs' motion.

**II.     THE COURT SHOULD DECLINE TO RECONSIDER THE STAY AT THIS TIME**

Even if the Court were to conclude that it has jurisdiction over the motion, it should nevertheless decline to lift the current stay of proceedings to consider the motion. Courts in this Circuit "common[ly]" exercise their discretion to grant stays pending the resolution of appellate proceedings in the same or related cases, including through Supreme Court review. *See, e.g.*, *James* v. *Niagara-Wheatfield Cent. Sch. Dist.*, 2025 WL 821884, at *2 (W.D.N.Y. Mar. 14, 2025); *Consumer Fin. Prot. Bureau* v. *MoneyGram Int'l, Inc.*, 2022 WL 17547438, at *2 (S.D.N.Y. Dec. 9, 2022); *Hoover* v. *HSBC Mortg. Corp. (USA)*, 2014 WL 12781322, at *2 (N.D.N.Y. July 9, 2014). Thus, even if the stay did not automatically continue, this Court should maintain the current

4

stay of trial-court proceedings until the appellate proceedings in Flores's appeal have been resolved.

The stay factors plainly warrant a continued stay in this case. Specifically, courts consider: (1) "the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed"; (2) "the private interests of and burden on the defendants"; (3) "the interests of the courts"; (4) "the interests of persons not parties to the civil litigation"; and (5) "the public interest." *MoneyGram*, 2022 WL 17547438, at *1 (citation omitted).

The second through fifth factors each tilt heavily in favor of continuing the stay. Defendants have a strong interest in not expending resources on litigating these claims in federal court or engaging in unnecessary discovery—efforts that will have been wasted if the Second Circuit's decision is overturned. *See, e.g.*, *James*, 2025 WL 821884, at *2; *Hoover*, 2014 WL 12781322, at *2; *Davis* v. *Blige*, 2008 WL 2477461, at *2 (S.D.N.Y. June 16, 2008). As the Supreme Court has explained, those concerns are particularly weighty in the arbitration context because "many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost" absent a stay, "even if [an appellate court] later concluded that the case actually had belonged in arbitration all along." *Coinbase*, 599 U.S. at 743; *contra* Mot. 16. For similar reasons, "the third, fourth, and fifth factors [also] weigh in favor" of a stay because the stay will also "best serve the interests of the courts, non-parties, and the public by promoting judicial efficiency." *Hoover*, 2014 WL 12781322, at *2; *see, e.g.*, *MoneyGram*, 2022 WL 17547438, at *2-3.

By contrast, only the first factor—Plaintiffs' interests—arguably weighs against a stay. At most, Plaintiffs claim (Mot. 16) that a stay might further delay proceedings for some period. But

courts often find that the mere fact of delay does not counsel against a stay, particularly where (as here) the party does not identify any specific prejudice. *See MoneyGram*, 2022 WL 17547438, at *3; *Hoover*, 2014 WL 12781322, at *2; *Davis*, 2008 WL 2477461, at *2. The Court should thus decline to exercise its discretion to reconsider the stay.

## III. THE MOTION FOR RECONSIDERATION LACKS MERIT

Even if the Court were to reach the merits, Plaintiffs' motion should be denied because it improperly raises new arguments that could have been raised before and because the Second Circuit's decision does not apply to—let alone control—the distinct arbitration provisions at issue here.[3]

### A. Plaintiffs Forfeited Any Argument That The Arbitration Provisions in Their Employment Agreements Do Not Provide For "Arbitration"

As explained below, the Second Circuit decision on which Plaintiffs rely is not a change in "controlling law." *See* pp. 7-9. But as an initial matter, Plaintiffs may not even argue that the arbitration provisions in their agreements do not provide for "arbitration" under the Arbitration Act because a "party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed." *Merryman* v.

---

[3] If the Court concludes that it has jurisdiction, Plaintiffs' motion should also be denied as untimely because it was filed after the 14-day deadline for motions for reconsideration set by Local Civil Rule 6.3. Plaintiffs did not file the motion until September 16, 2025—33 days after the Second Circuit's decision and thus 19 days late even under the most generous interpretation of Rule 6.3. *See Commerzbank AG* v. *U.S. Bank, N.A.*, 100 F.4th 362, 377-378 (2d Cir. 2024); *Palin* v. *New York Times Co.*, 482 F. Supp. 3d 208, 224 n.15 (S.D.N.Y.) (denying motion for reconsideration where plaintiff sought leave to file 16 days after alleged change in the law), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020); *Utica Mutual Insurance Co.* v. *Clearwater Insurance Co.*, 2015 WL 4496374, at *2 (N.D.N.Y. July 23, 2015) (similar for motion filed four months after alleged change in the law). Nor have Plaintiffs provided any explanation for their failure to comply with this Court's deadlines or to seek an extension. That is especially so given that they are "represented by sophisticated counsel who are more than capable of reading and appreciating this District's rules" and who participated in the underlying appeal, and thus Plaintiffs "undoubtedly knew about the decision" within 14 days of its publication. *Utica Mutual Insurance*, 2015 WL 4496374, at *2.

6

*J.P. Morgan Chase Bank, N.A.*, 2017 WL 456470, at *4 (S.D.N.Y. Feb. 2, 2017) (internal quotation marks and citation omitted).  As Plaintiffs acknowledge (Mot. 2), they previously opposed the motion to compel arbitration on the grounds that the Commissioner's designation as the default arbitrator and the purported absence of arbitral procedures rendered the arbitration provisions unconscionable under state law and violated the effective-vindication doctrine.  *See* Dkt. 62, at 10-22; Dkt. 80, at 7-19.  But Plaintiffs did *not* argue that those features meant that their agreements did not provide for "arbitration" protected by the Arbitration Act.  To the contrary, Plaintiffs repeatedly referred to the agreements as "Arbitration Agreements" and argued simply that they were not entitled to "[s]pecial" treatment under the Arbitration Act.  Dkt. 62, at 10.

Nor have Plaintiffs offered any reason for not raising that argument before.  The Second Circuit's decision relied almost exclusively on decisions that were issued before Plaintiffs filed their opposition to the motion to compel arbitration, so they "could readily have raised" the issue there.  *Merryman*, 2017 WL 456470, at *4 (citation omitted); *see* C.A. Op. at 19-28.  And although the Second Circuit chose to *affirm* this Court on alternative grounds, *see* C.A. Op. at 13-14, 19, there is no basis for this Court to *reverse* itself based on an argument that Plaintiffs have forfeited.  Accordingly, Plaintiffs' motion is "procedurally barred" to the extent that "it impermissibly advances new arguments not previously presented to the Court." *Cavounis* v. *United States*, 2016 WL 715768, at *2 (S.D.N.Y. Feb. 19, 2016) (internal quotation marks, citation, and alteration omitted).

### B. There Has Been No Change in Controlling Law

Plaintiffs have also failed to satisfy the strict standard for reconsideration because there has been no change in "controlling law" that should lead this Court to reconsider its entirely correct decision compelling arbitration of Plaintiffs' claims pursuant to the express arbitration provisions in their employment agreements.  *See, e.g.*, *Marano* v. *Metro. Museum of Art*, 2020 WL 4735117,

7

at *1 (S.D.N.Y. Aug. 14, 2020). Reconsideration is appropriate only where the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc*. v. *YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (citation omitted). Plaintiffs' sole argument is that the Second Circuit's recent decision in Flores's appeal is a change in "controlling law." Mot. 1, 9-15. But courts routinely hold that "distinguishable" cases do not qualify as a change in controlling law that warrants reconsideration. *See, e.g.*, *Hill* v. *Tisch*, 2025 WL 1871142, at *7-*8 (E.D.N.Y. July 7, 2025); *In re CRM Holdings, Ltd. Sec. Litig.*, 2013 WL 787970, at *8 (S.D.N.Y. Mar. 4, 2013).

The Second Circuit held that Flores's "agreement *under the NFL Constitution*" to arbitrate his claims against the Giants, Broncos, and Texans (and related claims against the NFL) was unenforceable under federal law. C.A. Op. at 5, 19 (emphasis added); *see id*. at 24, 27-28. The Court repeatedly noted that it was addressing only the "NFL Constitution's arbitration provision," *id*. at 19-20, and that "the club-specific arbitration agreements" were "not at issue in [the] appeal," *id*. at 22; *see id*. at 9. Although the Second Circuit's decision is incorrect for the reasons explained in the pending rehearing petition, the decision did not address the employment-agreement arbitration provisions at issue here. And there is certainly no reason to *extend* that decision to the distinct context in which a sophisticated party agrees in an arms-length negotiation to the use of an arbitration structure on the face of a robust arbitration provision in his employment agreement, as this Court correctly concluding in compelling the instant claims to arbitration.

The Second Circuit's decision also turned on its view that the NFL Constitution's arbitration provision allegedly failed to provide for any arbitral procedures. *See* C.A. Op. at 22. The Second Circuit emphasized that it was "[i]mportant[]" that "the arbitration provision of the

8

NFL Constitution does not reference or incorporate the NFL's Dispute Resolution Procedural Guidelines." *Id.* Those Guidelines provide additional structural safeguards and detailed procedures. *See generally* Ex. F. "[B]y contrast," the Court continued, those procedures "were incorporated into Flores's club-specific arbitration agreement[]" with the Dolphins (C.A. Op. at 22)—as Plaintiffs concede in their current motion, *see* Mot. 3 n.6, 15 n.22; Ex. C at 3, 8-12. And although Plaintiffs repeatedly assert that Wilks's club-specific arbitration agreement with the Cardinals did not attach the guidelines (Mot. 3 n.6, 15 n.22), that assertion is plainly contradicted by the very exhibit they provide, *see* Ex. D at 3, 8-12. There is no reason to think that the Second Circuit would have reached the same conclusion had it considered arbitration provisions that incorporated those procedural rules.[4]

Plaintiffs further challenge various aspects of the underlying arbitral proceedings. *See* Mot. 10-14. But this Court previously held—and Plaintiffs do not dispute in their motion—that the club-specific arbitration provisions in their employment agreements cover those disputes. *See* Dkt. 76, at 11-13, 15-18. Accordingly, this Court should leave any procedural objections for the arbitrator, because the "agreement is to submit all [disputes] to arbitration, not merely those which the court will deem meritorious." *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U.S. 63, 68-69 (2019) (internal quotation marks and citation omitted); *see also Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (explaining that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide" (internal quotation marks and citation omitted)).

---

[4] Although Horton's club-specific arbitration agreement with the Titans did not physically attach the Guidelines, the Commissioner has already determined that Horton's claims will be "addressed through binding arbitration under the NFL Constitution and Bylaws and the League's Dispute Resolution Guidelines," Ex. K at 2, so the Guidelines likewise apply to his arbitration proceedings.

In any event, Plaintiffs' objections to the arbitration proceedings are baseless. For example, Plaintiffs challenge the Commissioner's determination that the disputes are sufficiently "football-oriented," and they cite a footnote in the Second Circuit's decision that suggested in dictum that the Commissioner improperly determined as much. *See* Mot. 10, 12; C.A. Op. at 23 n.61. Plaintiffs contend that, under the NFL's Dispute Resolution Procedural Guidelines, any "dispute relating to or arising out of discrimination" may not be arbitrated under the NFL's arbitration system because it is not "football-oriented." Mot. 3-4, 12. But the Commissioner explained in a thorough decision why Plaintiffs' disputes—which include allegations of tampering with NFL games and players, asserted violations of NFL internal rules and hiring policies, and disputes about NFL player selection—are "football-oriented." Ex. K at 3-7. And the Guidelines governing the proceedings unambiguously provide that, if "the Commissioner, in his sole discretion, determines that the dispute raises issues that are both football-oriented and not football-oriented," he has "sole discretion" to determine whether the dispute should be resolved under the NFL's arbitration system or in whole or part by an alternative arbitration provider. Ex. F at 2-3.[5] Regardless, as already explained, Plaintiffs agreed to have these issues resolved by the arbitrator,

---

[5] Plaintiffs are also incorrect in asserting (Mot. 12) that the Commissioner lacked the authority to appoint Mr. Harvey under the Dispute Resolution Procedural Guidelines. Although the Guidelines authorize the Commissioner to be "assisted by persons from his staff," they do not limit him to relying on only his staff or define who qualifies as part of his staff, and he has relied on outside individuals in the past. *See* Ex. F at 3; *see also, e.g.*, *Nat'l Football League Players Ass'n ex rel. Peterson* v. *Nat'l Football League*, 831 F.3d 985, 990 (8th Cir. 2016) (noting that the Commissioner designated the President of the Player Care Foundation to serve as arbitrator); Tisha Thompson, *NFL selects Jeffrey Mishkin for Cardinals Arbitration*, ESPN (Apr. 25, 2023), https://tinyurl.com/arbitrator-cardinals (noting that the Commissioner selected a former lawyer for the NBA as the arbitrator). For similar reasons, Plaintiffs' contention (Mot. 7-8, 13, 16) that Mr. Harvey has improperly delayed the arbitration proceedings is misplaced. Plaintiffs do not identify any law or rule that Mr. Harvey has violated, and by all appearances, he has acted entirely properly in waiting to see whether additional claims would be added to the arbitral proceedings after the Second Circuit panel's decision before proceeding with the arbitration. Indeed, Plaintiffs themselves never reached out to Mr. Harvey to ask about the delay prior to filing this motion.

not a court, so they may not raise them in these proceedings.

## CONCLUSION

For the above reasons, Plaintiffs' motion for reconsideration should be denied.

Dated: New York, New York  
September 30, 2025

**PAUL, WEISS, RIFKIND,**  
**WHARTON & GARRISON LLP**

By: */s/ Loretta E. Lynch*  
Loretta E. Lynch  
Brad S. Karp  
Lynn B. Bayard  
Brette Tannenbaum  
1285 Avenue of the Americas  
New York, New York 10019-6064  
Telephone: (212) 373-3000  
Fax: (212) 757-3900  
lelynch@paulweiss.com  
bkarp@paulweiss.com  
lbayard@paulweiss.com  
btannenbaum@paulweiss.com

Kannon K. Shanmugam (*pro hac vice forthcoming*)  
2001 K Street, N.W.  
Washington, DC 20006  
Telephone: (202) 223-7300  
Fax: (202) 223-7420  
kshanmugam@paulweiss.com

*Attorneys for the National Football League, New York Giants, Miami Dolphins, Denver Broncos, Houston Texans, Arizona Cardinals, and Tennessee Titans*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Lorreta E. Lynch, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rules 6.3 and 7.1(c) that the foregoing Opposition to Plaintiffs' Motion for Reconsideration of the Court's March 1, 2023 Order on Defendants' Motion To Compel Arbitration was prepared using Microsoft Word and the document contains 2,900 words as calculated by the application's word-counting function, excluding the parts of the Opposition exempted by Local Civil Rule 7.1(c).

*/s/ Loretta E. Lynch*
Loretta E. Lynch