# Exhibit A

FILED 7/21/25
SHunt

Kelly A. Goldstein, Bar No. 025578
Staff Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Telephone: (602) 340-7329
Email: LRO@staff.azbar.org

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| **IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA,** | **PDJ 2025-** 9045 |
| **MICHAEL W. CASPINO,** **Bar No. 020791,** | **COMPLAINT** |
| Respondent. | [State Bar No. 25-0485] |

Complaint is made against Respondent as follows:

## GENERAL ALLEGATIONS

1.     Respondent was admitted to practice law in Arizona on August 23, 2001.

2.     Respondent was administratively suspended from the practice of law in Arizona in June of 2019 for nonpayment of dues.

3.      Respondent remained administratively suspended from the practice of law in Arizona until April 29, 2025.

1

## COUNT ONE (File No. 25-0485/Arizona)

4.      On or about April 3, 2023, Respondent called the State Bar of Arizona ("State Bar") regarding his suspension and inquired about reinstatement.

5.      In response to Respondent's call to the State Bar, on April 3, 2023, the State Bar emailed Respondent stating: "In order to become active in Arizona again, you would need to apply for reinstatement since the administrative suspension has been more than two years."

6.      In the April 3, 2023 email to Respondent, the State Bar provided a link to information about applying for reinstatement and stated: "If you have been active in another jurisdiction during the entirety of the suspension, you may qualify to apply via Rule 64(f)(1)(B). Please review the rule options and let us know if you have any additional questions."

7.      Respondent did not apply for reinstatement or ask any further questions of the State Bar at any point in 2023.

8.      On April 3, 2023, Respondent filed a Demand for Arbitration with the National Football League ("NFL") on behalf of Terrence McDonough, naming Michael J. Bidwill and the Arizona Cardinals Football Club, LLC as respondents.

The Demand for Arbitration raised several claims arising under Arizona law and sought attorneys' fees, including pursuant to A.R.S. § 12-341.01.

9.    A Final Award was entered on the arbitration on March 29, 2024.

10.    On April 3, 2024, Respondent and attorney John Myers, who is licensed in Arizona, filed a complaint in Maricopa County Superior Court (Case No. CV2024-007392) on behalf of McDonough, his wife, and his daughter, naming Bidwell, the Arizona Cardinals, and others as defendants (the "McDonough Action").

11.    In the complaint in the McDonough Action, Respondent listed himself in the caption, writing below his name, "*Pro Hac Vice Application Pending.*"

12.    Respondent has never filed an application for pro hac vice with the State Bar or the Maricopa County Superior Court in connection with the McDonough Action.

13.    On April 4, 2024, the McDonough Action was removed to the Arizona District Court.

14.    When the McDonough Action was removed to the Arizona District Court, Respondent was suspended from practice in that court.

15.    In May of 2024, the plaintiffs' filings in the McDonough Action continued to identify Respondent as counsel of record and continued to state that Respondent had a pending application for pro hac vice.

16.    Arizona District Court LRCiv 83.1(e) states: "An attorney who, before admission or permission to practice pro hac vice has been granted, unless specially authorized by one of the judges, or during disbarment or suspension exercises any of the privileges of a member of this bar, or who pretends to be entitled to do so, is subject to appropriate sanctions after notice and opportunity to be heard."

17.    On June 6, 2024, Respondent's assistant emailed the Attorney Admissions Clerk for the Arizona District Court, stating: "I'm looking to register Mr. Michael Caspino for an ECF account in AZ. Attached is his Application and Certificate of Good Standing from California."

18.    The Arizona District Court's Application for Admission Pro Hac Vice states that the application is pursuant to Arizona District Court LRCiv 83.1(b)(2), requires the applicant to identify every court before which the applicant is admitted, and to certify, under penalty of perjury, that the applicant is "not currently suspended … in any court."

4

19.    On June 6, 2024, the Attorney Admissions Clerk responded to Respondent's assistant, "[t]his pro hac vice application is unable to be accepted" because it "[did] not list any federal court admissions" and did not include "a certificate of good standing from another federal court." The clerk further asked that the application be "amend[ed] to reflect admissions to both federal and state courts."

20.    Later the same day (June 6, 2024), Respondent's assistant emailed the Arizona District Court Attorney Admissions Clerk: "I have made the corrections... Please see attached."

21.    Despite multiple written requests from the State Bar, Respondent has refused to provide a copy of the applications Respondent's assistant emailed to the Arizona District Court on June 6, 2024.[1]

22.    The Attorney Admissions Clerk asked Respondent's assistant for an explanation as to why the application identified state courts in which Respondent was not in good standing, and Respondent's assistant copied and pasted from an explanation in the application: "For Nevada, Colorado and Arizona I allowed my

---

[1] The State Bar was able to obtain copies of the June 6, 2024 emails from the Attorney Admissions Clerk, but the Clerk did not retain copies of the applications.

admission to lapse as membership was no longer needed."

23.    The Attorney Admissions Clerk informed Respondent's assistant on the afternoon of June 6, 2024: "I have [Respondent] in my database as being admitted as an Arizona bar member. Unfortunately that status at this time is suspended due to his bar due[s] suspension.  I cannot accept a pro hac vice with him already in the database with a suspended status in our records."

24.    On June 7, 2024, a legal assistant from Respondent's office emailed the State Bar stating: "I work with Mike Caspino and he is unable to pro hac vice into an Arizona District matter due to his license being suspended in AZ for fee issues. Mr. Caspino let his membership lapse since it was no longer needed. Is there a way to change his status from suspended to inactive?"

25.    The State Bar responded to Respondent's assistant on June 7 and 10, 2024.

26.    In the State Bar's June 10, 2024 email to Respondent's assistant, the State Bar stated: "If Mr. Caspino has been licensed in another jurisdiction and in good standing during the entirety of the AZ suspension, he may qualify for reinstatement under Rule 64(f)(1)(B). This option requires payment of back dues and fees. Our membership team, copied, can assist with a payment estimate if

6

needed." The State Bar also provided in the email a link to a page on its website providing additional information about applying for reinstatement from an administrative suspension of more than five years.

27.    Information available on the State Bar's website and through the link the State Bar provided to Respondent's assistant identifies the materials that must be submitted to seek reinstatement under Ariz. R. Sup. Ct. 64(f)(1)(B), including a Rule 64(f)(1)(B) affidavit and, from another jurisdiction: (a) a certificate of good standing; (b) a complete disciplinary history; and (c) MCLE documentation.

28.    On July 1, 2024, Respondent's assistant emailed the State Bar requesting "an estimate of [Respondent's] payback fees."

29.    On July 9, 2024, the State Bar emailed Respondent's assistant with the amount of back membership fees Respondent would need to pay for reinstatement, stating, "Please be aware that even before we can take payment for reinstatement, [Respondent] will need clearance from LRO & will need to be up to date with his MCLE."

30.    On July 10, 2024, the State Bar's MCLE Administrator emailed Respondent's assistant, adding that Respondent would "also be required to pay $1,000 in Late Filing Fees for MCLE."

31.    Neither Respondent nor his staff communicated further with the State Bar regarding Respondent's reinstatement at any time in 2024.

32.    On July 11, 2024, Respondent and his colleague filed an Amended Complaint in the McDonough Action.

33.    Respondent is the only attorney who signed the Amended Complaint in the McDonough Action.

34.    In both the caption and the signature line of the Amended Complaint, Respondent wrote that his status was: "Pro Hac Vice Pending."

35.    When Respondent signed the Amended Complaint, Respondent knew that he did not have an application for pro hac vice pending, and that he was not eligible to apply for pro hac vice admission "until such time as [he] was reinstated by the Arizona State Bar or was permitted to resign from the State Bar."

36.    On August 5, 2024, the plaintiffs in the McDonough Action filed responses in opposition to defendants' motions to dismiss and to compel arbitration. On both filings, Respondent was identified as counsel for the McDonoughs and "Pro Hac Vice pending" appeared immediately beneath his name.

37.    Respondent was the only attorney to sign the opposition to the motion to dismiss filed on August 5, 2024 in the McDonough Action. Respondent's signature line in the opposition to the motion to dismiss listed his name and "Attorneys for Plaintiffs," without any reference to Respondent's licensing or pro hac vice status.

38.    On February 6, 2025, Respondent and Myers filed a second action in Maricopa County Superior Court (Case No. CV2025-004952), this time on behalf of plaintiff Brittany Neuheisel, naming Bidwill and the Arizona Cardinals as defendants (the "Neuheisel Action").

39.    Respondent signed the complaint in the Neuheisel Action, referring to his status as "Pro Hac Vice Pending" in both the caption and the signature line.

40.    Respondent has never submitted an application for pro hac vice in connection with the Neuheisel Action.

41.    Ariz. R. Sup. Ct. 39(a) governs pro hac vice admission in Arizona courts. Under Rule 39(a)(1), eligibility for pro hac vice admission is limited to "[a]n attorney who is not a member of the State Bar of Arizona…."

42.    A suspended member of the State Bar is a "member" of the State Bar. *See* Ariz. R. Sup. Ct. 32(b)(5), (c)(1).

9

43.    On February 10, 2025, the Arizona District Court entered the following order in the McDonough Action:

> Michael W. Caspino has appeared as one of Plaintiffs' attorneys in this action and has signed or jointly signed several of Plaintiffs' filings. (Docs. 26, 33, 65.) Mr. Caspino is also identified as counsel of record in the caption and/or signature block of several other of Plaintiffs' filings. (Docs. 51, 54, 64.)
>
> It has now come to the Court's attention that although Mr. Caspino was once admitted to practice in the United States District Court for the District of Arizona, he was suspended from practicing in this District some time ago. Under LRCiv 83.1(b), and with limited exceptions that are inapplicable here, "only members of the bar of this Court may practice in this District." Under LRCiv 83.1(e), "[a]n attorney who . . . during disbarment or suspension exercises any of the privileges of a member of this bar, or who pretends to be entitled to do so, is subject to appropriate sanctions after notice and opportunity to be heard."
>
> This upcoming Thursday, February 13, 2025, at 9:30 am, the Court is scheduled to hear oral argument on Defendants' motions to compel arbitration and to dismiss. It should go without saying that Mr. Caspino will not be allowed to present oral argument on Plaintiffs' behalf during that hearing due to his suspended status. Nevertheless, if Mr. Caspino wishes to be heard regarding the LRCiv 83.1 issues addressed above, the Court will provide him with an opportunity to speak at the beginning of the hearing regarding those issues.

44.    On February 11, 2025, Respondent's law clerk (Jack Hayden) contacted the State Bar about Respondent's reinstatement. The State Bar responded via email the same day, providing a link to information about reinstatement.

45.     The link the State Bar provided in its email to Hayden was to the State Bar's webpage on reinstating to practice, which provided information the State Bar had provided to Respondent's assistant in June of 2024.

46.     On February 12, 2025, the Arizona District Court vacated the February 13, 2025 oral argument, pursuant to a stipulation of the parties, and authorized Respondent to address the issues in the court's February 10, 2025 Order, in writing, on or before February 19, 2025.

47.     Respondent neither submitted a writing to the Arizona District Court addressing the issues in the February 10, 2025 Order, nor requested additional time to do so.

48.     The State Bar sent its initial screening letter to Respondent on February 20, 2025.

49.     In its initial screening letter to Respondent, the State Bar explained Respondent's duty to cooperate with the investigation, citing ER 8.1(b) and Ariz. R. Sup. Ct. 54(d).

50.     In its initial screening letter to Respondent, the State Bar asked Respondent to:

   a.  address ER 3.4(c), ER 5.5, and ER 8.4(d),

11

b. "provide copies of any applications for pro hac vice admission submitted by [Respondent] or on [his] behalf relating to either [the McDonough Action or the Neuheisel Action]"; and

c. if Respondent had not submitted any applications for pro hac vice admission, to address in his response ER 3.3(a) and ER 8.4(c).

51.    Under ER 5.5, a lawyer who is suspended from practice in any jurisdiction may not "provide legal services on a temporary basis in Arizona that involve Arizona law."

52.    On March 10, 2025, Hayden submitted to the State Bar, on Respondent's behalf, a certificate of good standing, an application for MCLE reinstatement, and proof of completion of California's MCLE requirements through January 31, *2022*.

53.    Hayden's March 10, 2025 submission to the State Bar did not include a Rule 64(f)(1)(B) affidavit or a complete disciplinary history.

54.    The same day (March 10, 2025), the State Bar emailed Hayden stating, in part, that Respondent was suspended in 2019, and that "Members suspended for a period of 5 years or more must apply for reinstatement through [the] Lawyer Regulation department (see attached)."

12

55.    The attachment to the State Bar's March 10, 2025 email to Hayden provided the same information the State Bar had previously provided to Hayden and Respondent's assistant regarding applying for reinstatement from an administrative suspension of more than five years.

56.    On March 26, 2025, the district court set a hearing for April 28, 2025, for Respondent to appear and show cause "why sanctions should not be assessed against [Respondent] for practicing law in th[e] District while suspended from doing so and for misrepresenting his status to the Court."

57.    The Arizona District Court's March 26, 2025 Order noted that Respondent's website listed him as an attorney licensed to practice law in Arizona.

58.    In a letter to the State Bar dated April 4, 2025, Respondent wrote: "We have submitted all necessary paperwork for the suspension to be lifted, however, apparently this is a process that will take several months. I refer you to Danita Chandler of the State Bar at this point."

59.    As of April 4, 2025, Respondent had not submitted to the State Bar all necessary paperwork for the suspension to be lifted.

60.    On April 9, 2025, the State Bar emailed Respondent referencing his April 4, 2025 letter, and stating, in part: "The limited materials your office

13

provided our Membership Department are not considered a complete reinstatement application…. If you would like to start the reinstatement application process, please let me know and provide a complete reinstatement application."

61.    On or about April 15, 2025, Hayden submitted to the State Bar a complete reinstatement application for Respondent.

62.    On April 28, 2025, the State Bar informed Respondent that his application for reinstatement was approved, and identified the amount of fees Respondent needed to pay to be reinstated.

63.    Respondent appeared for the April 28, 2025 order-to-show-cause hearing in the Arizona District Court.

64.    On April 28, 2025, Respondent's website continued to list Respondent as licensed to practice in Arizona.

65.    During the April 28, 2025 hearing, the Arizona District Court asked Respondent why his website continued to list him as licensed in Arizona despite that the court had raised that issue in its March 26, 2025 Order, and Respondent replied, in part: "I did ask our office manager to take care of that.  I didn't follow up to see if it was."

14

66.    During the April 28, 2025 hearing in the Arizona District Court, Respondent stated: "[T]he first indication that I was suspended [in Arizona] was when I filed the pro hac vice in this case. I was never given notice of suspension by the Bar that I recall seven or eight years ago."

67.    The foregoing statement is false and Respondent knew it was false because:

a.  As noted above, Respondent contacted the State Bar in April of 2023—the same day he submitted the Demand for Arbitration on McDonough's behalf—to inquire about reinstatement;

b.  When Respondent submitted his amended application for pro hac vice to the Arizona District Court on June 6, 2024, Respondent stated that he had allowed his Arizona membership to "lapse";

c.  The Arizona District Court Attorney Admissions Clerk mentioned Respondent's suspension from practice *after* Respondent's statement that he had allowed his membership to "lapse"; and

d.  Respondent identified his license status as "Pro Hac Vice Admission Pending" on the complaint in the McDonough Action, which

15

would not have been necessary had Respondent's Arizona license been active.

68.    During the April 28, 2025 hearing in the Arizona District Court, Respondent stated: "It is a very difficult process to get reinstated…. In order to be reinstated, you have to make up all of the CLE from the past seven or eight years because some doesn't translate over."

69.    The foregoing statement is false and Respondent knew it was false when he made it because:

a.    The State Bar's April 9, 2025 email to Respondent stated that he could demonstrate MCLE compliance by providing "MCLE documentation demonstrating MCLE compliance in California during the entirety of the Arizona suspension (June 2019 – Present)";

b.    When Respondent submitted his reinstatement affidavit and materials to the State Bar on April 15, 2025, the only evidence Respondent provided regarding MCLE compliance was evidence of compliance with the California requirements;

c.    the State Bar informed Respondent the morning of the April 28, 2025 hearing that his application was accepted; and

16

d.    Respondent received and reviewed the State Bar's email before the April 28, 2025 hearing, because Respondent mentioned the email during the hearing.

70.    During the April 28, 2025 hearing in the Arizona District Court, Respondent stated: "[S]ince the Court brought this to my attention …, I have completely pulled off the case immediately. No filings, no even work on the case whatsoever."

71.    The foregoing statement is false and Respondent knew it was false when he made it.  As noted above, the Attorney Admissions Clerk for the Arizona District Court informed Respondent, through his staff, in June of 2024 that Respondent was not eligible to apply for pro hac vice admission, yet Respondent continued to sign pleadings.

72.    As noted above, Respondent signed the McDonoughs' response to the motion to dismiss, which was filed in August of 2024. During the April 28, 2025 hearing, Respondent informed the court that he read the response "several times" before he signed it.

73.    Respondent also continued to work on the Neuheisel Action, including after the Arizona District Court's February 10, 2025 and March 26, 2025 Orders.

74.    During the April 28, 2025 hearing, defense counsel informed the Arizona District Court that Respondent had sent a demand and a draft amended pleading to defense counsel in the Neuheisel Action on April 18, 2025.

75.    The State Bar emailed Respondent on April 28, 2025, requesting a copy of the demand Respondent sent for the Neuheisel Action on April 18, 2025. Respondent refused the State Bar's request, asserting that the documents "are privileged."

76.    Respondent had no good faith basis for asserting that a communication made to opposing counsel is "privileged," and thus had no good faith basis to refuse the State Bar's request for that information.

77.    During the April 28, 2025 hearing in the Arizona District Court, when asked by the court why Respondent believed that his application for pro hac vice admission was "imminent" after he had been informed that he could not apply for pro hac vice admission while suspended, Respondent stated:

[D]uring that period, for quite some time, we were waiting for an answer from the Bar as to whether or not I could immediately go ahead and resign. And that took a long time for them to get back to me to say no. They said they've never had that request before. So it took a long time and a lot of back and forth with the Bar.

78.    The foregoing statement is false and Respondent knew it was false because neither Respondent nor his staff ever asked the State Bar whether Respondent could resign in lieu of reinstatement.

79.    The State Bar did not tell Respondent or his staff that "they've never had [a] request before" about whether a person could resign in lieu of reinstatement, nor would the State Bar have made such a statement because Ariz. R. Sup. Ct. 64(f)(2) expressly provides for resignation in lieu of reinstatement.

80.    The links the State Bar provided to Respondent and his staff, as referenced above, and the information on the State Bar's website specifically address resignation in lieu of reinstatement. *See, e.g.,* https://www.azbar.org/media /f11p1sub/administrative-apply-from-more-than-5-years-2025.pdf.

81.    During the April 28, 2025 hearing in the Arizona District Court, Respondent stated: "I waited probably 60 days to hear back from the Bar to say yes or no, can you go ahead and just immediately resign, right. And then I was told we

19

couldn't. And then I had to make up all of the CLE on everything… These things just took time, Your Honor."

82.    The foregoing statement was false and Respondent knew it was false when he made it for the reasons set forth in paragraphs 67 and 76-78 above.

83.    Following the April 28, 2025 hearing, the State Bar emailed Respondent and asked him to "provide copies of all questions and/or applications submitted to the State Bar on [Respondent's] behalf between July 9, 2024 and January 31, 2025."

84.    Respondent responded to the State Bar's April 28, 2025 email without providing any provide copies questions and/or applications submitted to the State Bar on Respondent's behalf between July 9, 2024 and January 31, 2025.

85.    During the April 28, 2025 hearing in the Arizona District Court, Respondent failed to inform the court that he had not submitted a complete application for reinstatement to the State Bar until April 15, 2025.

86.    Respondent's failure to disclose the timeframe in which he had submitted a complete application for reinstatement to the State Bar was a material omission, and was misleading.

87.    Respondent paid the necessary fees and was reinstated to State Bar on April 29, 2025.

88.    As of May 16, 2025, Respondent's website continued to list him as licensed to practice law in Colorado and Nevada despite the fact that Respondent remained suspended from practice in both Colorado and Nevada at that time.

89.    On April 2, 2025, in the Pennsylvania Court of Common Pleas, Respondent signed a verified statement in support of a motion for his admission pro hac vice, attesting that he had not been suspended from the practice of law in any jurisdiction.

90.    The motion for pro hac vice admission in the Pennsylvania Court of Common Pleas states that Respondent is familiar with Pennsylvania Bar Admission Rule 301, and that the motion is pursuant to a code provision and Pennsylvania Rule of Civil Procedure 1012.1.

91.    Pennsylvania Bar Admission Rule 301 requires an applicant for pro hac vice admission to file a motion in accordance with Pennsylvania Rule of Civil Procedure 1012.1.

92.     Pennsylvania Rule of Civil Procedure 1012.1 requires the candidate for pro hac vice admission to "submit a verified statement" that includes, among other things:

> a.      "the jurisdictions in which he or she is ***or has been licensed*** and the corresponding bar license numbers" (emphasis added); and

> b.      For "each jurisdiction identified, the candidate shall state whether he or she … is subject to any disciplinary proceedings. The candidate shall provide a description of the circumstances under which the disciplinary action has been brought."

93.     In connection with the motion for pro hac vice admission in the Pennsylvania Court of Common Pleas, Respondent's verified statement, dated April 2, 2025, states, in part: "I am currently licensed to practice law in the State of California (No. 171906)."

94.     Respondent's April 2, 2025 verified statement makes no reference to his admissions to practice in Arizona, Colorado, or Nevada.

95.     Respondent's April 2, 2025 verified statement makes no reference to the fact that his licenses in Arizona, Colorado, and Nevada were suspended at the time of his statement, or that the State Bar had a pending screening investigation,

or that the Arizona District Court had issued an order-to-show-cause for Respondent to address why he should not be sanctioned.

96.    Based on the foregoing, Respondent violated ER 1.3, ER 3.3(a), ER 3.4(c), ER 5.5, ER 7.1, ER 8.1(b), ER 8.4(c), and ER 8.4(d).

**DATED** this 21st day of July, 2025.

STATE BAR OF ARIZONA

*/s/Kelly A. Goldstein*
Kelly A. Goldstein
Staff Bar Counsel

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 21st day of July, 2025.

By: */s/Riley McLaughlin*
    KAG/rm

FILED
07/21/2025
/s/HMcCullough

## BEFORE THE ATTORNEY DISCIPLINE
## PROBABLE CAUSE COMMITTEE
## OF THE SUPREME COURT OF ARIZONA

| | |
|---|---|
| **IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA,** | **No. 25-0485** |
| | |
| **MICHAEL W. CASPINO,** <br> **Bar No. 020791,** | **PROBABLE CAUSE ORDER** |
| | |
| Respondent. | |

The Attorney Discipline Probable Cause Committee of the Supreme Court of Arizona ("Committee") reviewed this matter on July 11, 2025, pursuant to Rules 50 and 55, Ariz. R. Sup. Ct., for consideration of the State Bar's Report of Investigation and Recommendation.

By a vote of 6-0-2[1], the Committee finds probable cause exists to file a complaint against Respondent in File No. 25-0485.

**IT IS THEREFORE ORDERED** pursuant to Rule 55(c) and 58(a), Ariz. R. Sup. Ct., authorizing the State Bar counsel to prepare and file a complaint with the Disciplinary Clerk.

Parties may not file motions for reconsideration of this Order.

**DATED** this 21st day of July, 2025.

*Cindy Bailey*

_____
Judge Cynthia Bailey,
Chair, Attorney Discipline Probable Cause Committee of the Supreme Court

---

[1] Committee members JoJene Mills and Kileen Lindgren did not participate in this matter. The position of Vice Chair is presently unoccupied and remains subject to appointment.

1

Original filed this 21st day
of July, 2025, with:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

Copy emailed this 21st day
of July, 2025, to:

Michael W. Caspino
Price Caspino
30442 Esperanza
Rancho Santa Margarita, CA 92688
Email: mcaspino@pricecaspino.com
Respondent

Attorney Discipline Probable Cause Committee
Of the Supreme Court of Arizona
1501 West Washington Street, Suite 104
Phoenix, Arizona 85007
Email: ProbableCauseComm@courts.az.gov

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266
Email: LRO@staff.azbar.org

By: */s/Riley McLaughlin*
        KAG/rm

Kelly A. Goldstein, Bar No. 025578
Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Telephone: (602) 340-7247
Email: LRO@staff.azbar.org

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| **IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA,** | **PDJ 2025-9045** |
| **MICHAEL W. CASPINO,** <br> **Bar No. 020791,** | **NOTICE OF SERVICE OF COMPLAINT** |
| Respondent. | [State Bar No. 25-0485] |

**PLEASE TAKE NOTICE** that, pursuant to Rules 47(c), Ariz. R. Sup. Ct., the State Bar's Complaint was served on Respondent by emailing the Complaint to Respondent, and by mailing the Complaint by certified, delivery restricted and regular first-class mail to Respondent to the address of record as provided by Respondent to the Membership Records Department of the State Bar of Arizona.

**RESPECTFULLY SUBMITTED** this 22nd day of July, 2025.

**STATE BAR OF ARIZONA**

*/s/Kelly A. Goldstein*
Kelly A. Goldstein
Staff Bar Counsel

1

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 22nd day of July, 2025.

Copy of the foregoing emailed
this 22nd day of July, 2025, to:

The Honorable Lisa A. VandenBerg
Presiding Disciplinary Judge
Supreme Court of Arizona
1501 West Washington Street, Suite 102
Phoenix, Arizona 85007
E-mail: officepdj@courts.az.gov

Copy of the foregoing mailed and emailed
Certified mail number: 7021 0950 0001 6904 5896
this 22nd day of July, 2025, to:

Michael W. Caspino
30442 Esperanza
Rancho Santa Margarita, CA  92688-2144
Email: mcaspino@pricecaspino.com
Respondent

Copy of the foregoing emailed
this 22nd day of July, 2025, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266
Email: LRO@staff.azbar.org

by:*/s/Riley McLaughlin*
    KAG/rm