UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
BRIAN FLORES, STEVE WILKS, and RAY :
HORTON, as Class Representatives, on behalf of :
themselves and all others similarly situated, :
  :
　　　　　　　　　　　　　　　　　Plaintiffs, :
　　　　　　　-against- :
  :
THE NATIONAL FOOTBALL LEAGUE; NEW :
YORK FOOTBALL GIANTS, INC. d/b/a NEW :
YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a :
MIAMI DOLPHINS; DENVER BRONCOS :
FOOTBALL CLUB d/b/a DENVER BRONCOS; :
HOUSTON NFL HOLDINGS, L.P. d/b/a :
HOUSTON TEXANS; ARIZONA CARDINALS :
FOOTBALL CLUB LLC d/b/a ARIZONA :
CARDINALS; TENNESSEE TITANS :
ENTERTAINMENT, INC. d/b/a TENNESSEE, :
TITANS and JOHN DOE TEAMS 1 through 26, :
  :
　　　　　　　　　　　　　　　　　Defendants. :
-------------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/13/2026
```

22-CV-871 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

　　This is an aging employment discrimination case that has been idling at the starting block for four years while the parties argue over the forum in which the case will be litigated: federal court or arbitration. Plaintiffs, current and former NFL coaches, sued the NFL and various member teams for racial discrimination and retaliation in violation of 42 U.S.C. § 1981 and several New Jersey, New York, and Florida state laws. *See* Am. Compl., Dkt. 22.

　　Following a trip to the Second Circuit on an appeal by Defendants of the Court's March 1, 2023, Order at Dkt. 76 ("March 1 Order"), which resulted in an appellate decision favorable to Plaintiffs, Plaintiffs filed a motion asking the Court to reconsider aspects of the Court's March 1 Order that were adverse to Plaintiffs (and thus were not appealed by Defendants). Dkt. 153. Plaintiffs' Motion is GRANTED. Defendants' Motion to Compel Arbitration at Dkt. 47 is now

1

DENIED in full. All of the claims of Plaintiffs Brian Flores, Steve Wilks, and Ray Horton against the NFL and various member teams may now proceed in this Court.

**FACTUAL BACKGROUND**[1]

Plaintiffs Flores, Wilks, and Horton all had employment contracts with various NFL teams at which they coached. While the exact text of those contracts varies, in relevant part each agreement provides that the NFL Commissioner will oversee an alternative dispute resolution process for all disputes arising between the parties. *See, e.g.*, Exhibit C, Flores-Dolphins Agreement, Dkt. 155-3 at § 12.2; Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at § 10(a); Exhibit E, Horton-Titans Agreement, Dkt. 155-5 at § 6(a). Wilks's contract with the Arizona Cardinals also included a clause delegating any disputes regarding whether the contracts were "void or voidable" to the arbitrator. *See* Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at § 10(e).

The Flores-Dolphins and Wilks-Cardinals Agreements incorporate the NFL Dispute Resolution Procedural Guidelines ("DRPG"). *See* Exhibit C, Flores-Dolphins Agreement, Dkt. 155-3 at 12–16; Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at 8–12. The Horton-Titans Agreement does not.[2] *See* Exhibit E, Horton-Titans Agreement, Dkt. 155-5. The DRPG is approximately four pages long and outlines, as the name suggests, "procedural guidelines"

---

[1] The Court assumes familiarity with the underlying facts, which are set forth in detail in the Court's multiple opinions in this case, but briefly recounts certain facts relevant to this Opinion.

[2] Based on Exhibit D as it was filed by Plaintiffs, the Court agrees with the Defendants that the DRPG was incorporated into the Wilks-Cardinals Agreement. *See* Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at 8–12. The Court, however, agrees with Plaintiffs that the DRPG does not apply to the Horton-Titans Agreement, despite Defendants' argument. *See* Defs.' Mem. of Law in Opp'n re: Mot. for Recons., Dkt. 159 ("Defs.' Opp'n") at 9 n.4.

governing disputes before the NFL Commissioner.[3]  *See* NFL DRPG, Exhibit F, Dkt. 155-6 ("DRPG").

## PROCEDURAL HISTORY

Shortly after this lawsuit was filed, Defendants moved to compel arbitration of Plaintiffs' claims.  Mot. to Compel, Dkt. 47.  On March 1, 2023, the Court compelled arbitration of the claims brought by Flores against the Miami Dolphins, by Wilks against the Arizona Cardinals, and by Horton against the Tennessee Titans, as well as all related claims against the NFL; the Court declined to compel arbitration of Flores's claims against the New York Giants, Denver Broncos, and Houston Texans, as well as all related claims against the NFL.[4]  March 1 Order.  Plaintiffs and Defendants cross-moved for partial reconsideration of that decision, and the Court denied both motions.  Pls.' Mot. for Recons., Dkt. 79; Defs.' Mot. for Recons., Dkt. 81; Op. & Order, Dkt. 102.

Both Plaintiffs and Defendants appealed the Court's decisions on Defendants' Motion to Compel and both parties' Motions for Reconsideration.  Notice of Interlocutory Appeal, Dkt. 113; Notice of Cross Appeal, Dkt. 122.  The case was stayed while the appeal was pending.  Order, Dkt. 115.  The Second Circuit held that it lacked jurisdiction over Plaintiffs' appeal of the Court's decision to compel arbitration of the Flores/Dolphins, Wilks/Cardinals, and Horton/Titans claims (and the Court's denial of the related Motion for Reconsideration).[5]  Mandate of USCA, Dkt. 132.  The Second Circuit, however, had jurisdiction and decided the

---

[3]  Different versions of the DRPG exist.  For example, the version attached to the Wilks-Cardinals Agreement does not contain the "football-oriented" v. "not football-oriented" dispute distinction that is present in the Flores-Dolphins Agreement and that the parties debated.  *Contrast* Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at 8–12 *and* Exhibit C, Flores-Dolphins Agreement, Dkt. 155-3 at 12–13; *see, e.g.*, Pls.' Mem. of Law in Supp. re: Mot. for Recons., Dkt. 154 ("Pls.' Mem.") at 4 (concerning the "football-oriented" v. "not football-oriented" distinction).

[4]  The Court uses the parties' colloquial names for ease.  Full names are available in the case caption.

[5]  For ease, the disputes will be referred to using the format: "[Plaintiff's name]/[team name]."

merits of Defendants' appeal of the Court's March 1 Order declining to compel arbitration of the Flores/Giants, Flores/Broncos, and Flores/Texans claims (and the Court's denial of the related Motion for Reconsideration). Mandate of USCA, Dkt. 170.

The Second Circuit affirmed this Court's Order on alternative grounds, finding that the Court had not erred in denying Defendants' Motion to Compel Arbitration because the arbitration provision in the NFL Constitution is unenforceable.[6] *Id.* Specifically, the Second Circuit held that the NFL failed to provide a neutral forum that could even be called an "arbitration" and that Flores could not effectively vindicate his statutory rights in the forum that the NFL provided, given the designation of the NFL Commissioner as the default arbitrator and the lack of express arbitral procedures. *Id.* Defendants' petition for rehearing *en banc* was denied and — in the time since the parties briefed this Motion — the mandate has issued. Second Circuit Order, Dkt. 165-1; Mandate of USCA, Dkt. 170.

After the Second Circuit decided Defendants' appeal, Plaintiffs filed a Motion for Reconsideration of the portion of the March 1 Order that ordered arbitration of certain of Plaintiffs' claims. Dkt. 153. Plaintiffs argued that the Second Circuit's decision necessarily affects the correctness of the portion of the March 1 Order that compelled arbitration of the Flores/Dolphins, Wilks/Cardinals, and Horton/Titan claims. *See* March 1 Order. The Court agrees. For the following reasons, the stay is LIFTED; Plaintiffs' Motion for Reconsideration is GRANTED; Defendants' Motion to Compel Arbitration is DENIED in full; and the Flores/Dolphins, Wilks/Cardinals, and Horton/Titan claims (and all related claims against the

---

[6] In relevant part, the NFL Constitution grants the NFL Commissioner "full, complete, and final jurisdiction and authority to arbitrate" several types of disputes, including "[a]ny dispute between any . . . coach . . . and any member club or clubs." Constitution and Bylaws of the NFL, Dkt. 72-1 ("NFL Constitution") at 30, Art. VIII § 8.3.

4

NFL) are to proceed in this Court alongside the Flores/Giants, Flores/Broncos, and Flores/Texans claims.

## DISCUSSION

Defendants argue that Plaintiffs' Motion is "premature" and "fatally flawed." Defs.' Opp'n at 1. Plaintiffs disagree and assert that they are asking for "nothing more" than the application of controlling Second Circuit precedent. Pls.' Reply Mem. of Law in Supp. re: Mot. for Recons., Dkt. 166 ("Pls.' Reply") at 1.

### I.     Threshold Questions

The Court will first address the threshold questions of jurisdiction, the current stay, and the legal provision under which Plaintiffs bring this Motion.

#### A.     Jurisdiction

After the conclusion of the parties' briefing of this Motion, the Second Circuit issued its mandate.[7] *See* Pls.' Reply (conclusion of briefing); Mandate of USCA, Dkt. 170. Because the Second Circuit has ruled and the mandate has issued, jurisdiction over the case now rests in this Court. *See also* Mandate of USCA, Dkt. 132.

#### B.     Stay

Defendants argue that the Court should maintain a stay of the proceedings given the interests of the Defendants, the courts, third parties, and the public in judicial economy and efficiency. Defs.' Opp'n at 5 (citing *Consumer Fin. Prot. Bureau v. MoneyGram Int'l, Inc.*, 2022 WL 17547438, at *1 (S.D.N.Y. Dec. 9, 2022)). Defendants hang their hats on their hope that the Supreme Court will grant their current Petition for Certiorari and then decide the appeal favorably to them. *See* Notice of Writ of Cert. Filing, Dkt. 205, *Flores v. Nat'l Football League*,

---

[7] Although Defendants had the opportunity in the Second Circuit to seek a stay of the issuance of the mandate under Fed. R. App. P. 41(d) while they sought Supreme Court review, they did not do so.

No. 23-1185 (2d Cir. 2025), *pet. for cert. filed* (U.S. Jan. 2, 2026) (No. 25-790). Until and unless the Supreme Court weighs in, however, this Court must act in accordance with the controlling law of the Second Circuit.

The Court is sensitive to the interest of judicial efficiency and Defendants' argument that, were the Second Circuit's decision to be overturned, efforts may have been expended engaging in federal court discovery rather than in whatever discovery may be permitted by the arbitrator. The Court, however, is not persuaded that discovery efforts are "unnecessary," as Defendants argue. Defs.' Opp'n at 5. Beginning discovery between the parties on the merits of Plaintiffs' disputes certainly has benefits. This case has lingered at the starting block for four years, as the forum has been hotly contested. Now that the Second Circuit has ruled, this Court will modify its prior decision to conform to controlling law, and the case will begin in earnest. For these reasons, the stay is lifted.

### C. Governing Rule

Defendants, via footnotes in their Opposition, argue that Plaintiffs' Motion is untimely and their memorandum in support exceeds the word limit established by the local rules. *See* Defs.' Opp'n at 1–2 n.1, 6 n.3. This question turns on whether Plaintiffs' Motion is governed by Fed. R. Civ. P. 54(b) ("Rule 54(b)") or the Southern District of New York's L. Civ. R. 6.3 ("Rule 6.3"). Defendants assert that Rule 6.3 imposes a 14-day deadline on motions for reconsideration and limits memoranda in support of such motions to 3,500 words.[8] *Id.* Plaintiffs abided by the word limit in the Undersigned's Individual Practices in Civil Cases, which allowed them 8,750 words, and assert that Rule 54(b) carries no time limit. Pls.' Reply at 4–5; *see Cohen*

---

[8] While the Undersigned's Individual Practices in Civil Cases set forth a word limit "unless otherwise provided by statute or rule," Rule 6.3 also only provides a word limit "[u]nless otherwise provided by the court." *Compare* Judge Caproni's Individual Practices in Civil Cases Rule 4(B)(i) *with* S.D.N.Y. L. Civ. R. 6.3.

*v. UBS Fin. Servs., Inc.*, No. 12-CV-2147 (LGS), 2014 WL 240324, at *3 (S.D.N.Y. Jan. 22, 2014), *aff'd*, 799 F.3d 174 (2d Cir. 2015) (addressing arguments for revision on the merits months later given the language of Rule 54(b)).

Rule 6.3 governs motions for reconsideration based on issues already presented to and "overlooked" by the Court. *See Wilson v. New York & Presbyterian Hosp.*, 17-CV-5012 (RRM), 2021 WL 2987134 (S.D.N.Y. July 15, 2021). Rule 54(b), on the other hand, governs motions seeking revision of a prior decision. The rule makes "interlocutory orders 'subject to revision,'" which gives district courts the "power to correct [themselves]." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 349 (S.D.N.Y. 2004).

The Court accepts this as a motion for revision under Rule 54(b) and not as a motion for reconsideration under Rule 6.3 (or Fed. R. Civ. P. 59(e) or 60(b)). Plaintiffs ask the Court to revise the March 1 Order in light of the Second Circuit's decision to prevent the injustice of inconsistent rulings across the claims in the case. While the previous dueling motions for reconsideration were made without an intervening appeal and pursuant to Rule 6.3, this Motion is not. *See* Pls.' Mem. of Law in Supp. re: Mot. for Recons., Dkt. 80 at 1–2; Defs.' Mem. of Law in Supp. re: Mot. for Recons., Dkt. 82 at 1. Instead, this Motion explicitly cites Rule 54(b). *See* Pls.' Mem. at 8–9. While, as Plaintiffs recognize, their Motion could have been more clearly titled, *see* Pls.' Reply at 4 n.6, it is not untimely and the memorandum in support did not exceed the Court's word limit.

This also answers the question of whether Plaintiffs are barred from making the argument that they now advance. Defendants claim that Plaintiffs forfeited their argument that the arbitration provisions in their agreements do not provide for arbitration under the Federal Arbitration Act ("FAA") because they could have — but did not — raise that argument when the

7

underlying issue was being briefed. Defs.' Opp'n at 6–7 (citing *Merryman v. J. P. Morgan Chase Bank, N.A.*, 2017 WL 456470, at *4 (S.D.N.Y. Feb. 2, 2017); *Cavounis v. United States*, 2016 WL 715768, at *2 (S.D.N.Y. Feb. 19, 2016)). Plaintiffs recognize that a party may not raise new arguments on a typical motion for reconsideration under Rule 6.3, but there is no such limit for a motion under Rule 54(b). This is logical because motions to revise under Rule 54(b) may be based on a change in controlling law. Put differently, there may be arguments properly brought to the Court's attention only after the change in controlling law (i.e., after the initial motion). The Court also takes Plaintiffs' point that although they may not have raised this argument in so many words in their prior briefing, they certainly raised it in spirit. *See* Pls.' Reply at 6 (citing Plaintiffs' earlier arguments). Here, given the grounds on which the Second Circuit affirmed this Court's March 1 Order, Plaintiffs' lines of argument in prior briefing, and the characterization of the current Motion, the Court will consider Plaintiffs' argument.

## II. Legal Standards

### A. Arbitration

Pursuant to Section 2 of the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). Merely calling something "arbitration" or an "arbitration agreement," however, cannot bestow the blessing of the FAA. The FAA presumes "the norm of bilateral arbitration" and that an arbitration agreement "does not alter or abridge substantive rights." Second Cir. Op., Dkt. 170 at 16 (citing *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022)). Thus, "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Id.* (citing *Viking River Cruises, Inc.*, 596 U.S. at 653). This concept goes hand-in-hand with "[t]he

Supreme Court's long-standing 'effective vindication' doctrine." *Id.* at 17 (citing *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013)).  This doctrine deems unenforceable arbitration agreements that are, in effect, "a prospective waiver of a party's right to pursue statutory remedies." *Id.* (citing *Italian Colors Rest.*, 570 U.S. at 235) (emphasis removed).

### B. Revision of Prior Court Orders

Rule 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See also Church of Scientology Int'l v. Time Warner, Inc.*, No. 92-CV-3024 (PKL), 1997 WL 538912, at *4 (S.D.N.Y. Aug. 27, 1997), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001) ("The Court has the authority under Rule 54(b), as well as under its inherent powers, to reconsider or modify a prior decision at any time before the entry of final judgment.").

This is a limited remedy.  *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'").  Courts should adhere to their prior decisions absent "cogent and compelling reasons." *Dill v. J.P. Morgan Chase Bank, N.A.*, No. 19-CV-10947 (KPF), 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)).

Courts can, however, revise decisions "where to do so would not be inconsistent with the objectives of efficiency and finality." *Falls v. Pitt*, No. 16-CV-8863 (AEK), 2026 WL 77919, at *1 (S.D.N.Y. Jan. 8, 2026) (quoting *Dill*, 2021 WL 3406192, at *11). Accordingly, a motion for revision should be granted in cases of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. at 350 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL1570GBDSN, 2023 WL 2971480, at *3 (S.D.N.Y. Apr. 17, 2023).[9]

### III. Application

As Defendants point out, if the claims at issue now are distinguishable from those that were before the Second Circuit, then the Second Circuit's Opinion does not necessarily constitute a change in controlling law. Whether the claims are distinguishable turns on whether the provisions in these three particular employment agreements avoided the fatal flaws identified by the Second Circuit in the NFL Constitution. The Court finds that they do not.

The Second Circuit concluded that Flores' agreement to submit his claims to the discretion of the designated arbitrator, NFL Commissioner Roger Goodell, provides for arbitration in name only and, accordingly, lacks the protection of the FAA. Second Cir. Op. The agreement is, therefore, unenforceable because it fails to guarantee that Flores can "vindicate [his] statutory cause of action in [an] arbitral forum." *Id.* at 19. The Second Circuit's Opinion, however, explicitly did not consider the team-specific arbitration agreements. *Id.* at 22.

As a result, Defendants insist that the outcome here must be different because the Second Circuit's decision rested in part on the lack of procedural safeguards in the dispute resolution

---

[9]   Rule 54(b) is a somewhat odd fit for this Motion, as the purported change in controlling law is in *this* case. Nonetheless, this provides a permissible ground for revision.

10

process under the NFL Constitution.  They assert that the same concern is not present for these claims because of the protections available in the DRPG.

The DRPG's role here is muddled at best.  Various versions of the DRPG are attached to some team-specific agreements and not to others.  *See supra* n.2 at 2.  The Court does not, however, find it necessary to wade further into the weeds of the applicability of the DRPG.

Defendants argue that "[t]here is no reason to think that the Second Circuit would have reached the same conclusion had it considered arbitration provisions that incorporated those procedural rules."  Defs.' Opp'n at 9.  The Court disagrees.[10]  The Second Circuit noted that the NFL Constitution provides for "no independent arbitral forum, no bilateral dispute resolution, and no procedure."  Second Cir. Op. at 19–20.  Adding some procedure via the DRPG does not fix the forum's lack of independence nor make the process bilateral.

There are few requirements actually imposed on the NFL Commissioner by the DRPG.  The Commissioner is required to determine whether the dispute is "football-oriented" and where and how the arbitration will proceed.  *See* DRPG at §§ 1.5–1.8.  The Commissioner is required to apply (1) the substantive law of a court with jurisdiction over the subject matter and (2) the attorney-client privilege and work-product doctrine.  *Id.* at § 4.2, § 6.1, § 9.2.  The Commissioner is required to issue a written decision within 90 days of the conclusion of the arbitration, although "failure . . . to meet this or any other deadline" does not affect the validity of the decision.  *Id.* at § 13.3.  Otherwise, the DRPG requires the arbitration to be confidential and requires "[t]he Commissioner [to] conduct the arbitration in a manner designed to reach a fair

---

[10]   The Second Circuit noted that the effective vindication doctrine and the conclusion that the FAA does not protect the NFL Constitution's arbitration agreement are "independent reason[s]" to affirm this Court's Order denying the Motion to Compel Arbitration of the claims that were at issue on appeal.  Second Cir. Op. at 24–25 n.65.  Both conclusions, however, relied "largely on the fact that the arbitral forum guaranteed by the NFL Constitution is inherently biased."  *Id.*  The procedures contained in the DRPG simply do not cure the inherent bias of the NFL's dictated forum.

and prompt outcome." *Id.* at § 9.5, § 3.1. The DRPG says nothing of amendment, emergency or expedited relief options, arbitrator neutrality or conflicts, or an appeal process. *Contrast* DRPG *with* JAMS Arbitrators & Arbitration Services, Comprehensive Arbitration Rules & Procedures (June 1, 2021), www.jamsadr.com/rules-comprehensive-arbitration.[11] Moreover, it is clear that the DRPG can change, *see supra* n.3 at 3, presumably at the unilateral discretion of the NFL, but it is unclear if and how any new procedures would apply.

Although the DRPG provides some procedures, the NFL Constitution still provides the Commissioner with the authority unilaterally to dictate arbitral procedure. NFL Constitution at 31, Art. VIII § 8.5 (granting the Commissioner the authority to "from time to time establish policy and procedure in respect to the provisions of the Constitution and Bylaws").[12] The DRPG is "just an outgrowth" of the NFL Constitution, and it appears to be only as binding as is beneficial to the NFL. Pls.' Reply at 8.

This case, even as it has progressed very little, illustrates the failures of the NFL to provide a process that constitutes "arbitration" as that term is used by the FAA. Defendants insist that the DRPG applies to all the claims in question and still appointed Peter Harvey, a friend but not an employee or staff member of the NFL, to arbitrate. As observed by the Second Circuit, appointing Mr. Harvey as the arbitrator was "facially inconsistent" with the DRPG. Second Cir. Op. at 23–24 n.61 (citing DRPG at § 1.7 (directing arbitration of claims of discrimination to "the alternative dispute resolution provider agreed to by the parties, or in the

---

[11] The Court offers the JAMS procedures as a point of comparison, as the NFL offers JAMS as a forum for disputes that are "not football-oriented." *See* DRPG at §§ 1.5, 1.7. Query, however, whether "not football-oriented" disputes is a null set: this case, which falls within an example provided in the DRPG as a "not football-oriented" dispute (i.e., discrimination) was deemed by the Commissioner to be "football-oriented." *Id.* at § 1.5; *see also* September 17, 2024, Goodell Order, Exhibit K, Dkt. 155-11.

[12] The Second Circuit also views this provision as distinct from, i.e., not incorporating, the DRPG. Second Cir. Op. at 22–23 n.58.

absence of such agreement, [to] JAMS, Inc.")).  As the Second Circuit held, this further demonstrates the NFL's unilateral power and emphasizes the unenforceability of the arbitration clause.  Especially pressing here, what good are procedures if they are, seemingly, entirely optional (at least for one side)?  The addition of the DRPG means that these agreements bear more resemblance to the arbitration agreements envisioned and protected by the FAA, but, as constructed by the NFL, the similarity to "real" arbitration agreements is an illusion.  These are arbitral procedures in name only.

The Second Circuit provided an example of an alternative dispute resolution method: a coin flip.  This Court would add the always-exciting dispute resolution method known on playgrounds all over as "rock-paper-scissors."  Both have procedures, but neither is arbitration.[13] Nor is the process here, even with the addition of the DRPG.

The NFL's unilateral control over the dispute resolution process is the fatal flaw.  That problem is not cured by the DRPG.  *See also* Second Cir. Op. at 24 n.62 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 493–94 (6th Cir. 2004) (refusing to enforce arbitration provisions where arbitrators were unilaterally selected)).  These agreements still function as "a prospective waiver of a party's right to pursue statutory remedies."  *Italian Colors Rest.*, 570 U.S. at 235 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1965)) (emphasis removed).  The DRPG, where it applies, does not provide a forum in which Plaintiffs can effectively vindicate their rights.  DRPG aside, this question is the same one that the Second Circuit decided.  As a result, this case is not distinguishable, and the Second Circuit's decision is controlling law.

---

[13]    Paraphrasing Abraham Lincoln: even if you call a tail a leg, a dog has only four legs because calling a tail a leg does not make it a leg.

Reconsideration is, therefore, appropriate and dictates that arbitration of these claims should not be compelled.

## CONCLUSION

For the foregoing reasons, the stay is LIFTED and Plaintiffs' Motion for Reconsideration is GRANTED. The Motion to Compel Arbitration at Dkt. 47 is now DENIED in full. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 153.

The parties must appear for a pretrial conference on **Friday, April 3, 2026, at 10:00 A.M.** in Courtroom 20C of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007. By **Thursday, March 26, 2026**, the parties must submit a joint letter, the contents of which are described on pages 29 and 30 of the March 1 Order (except for item d), and a proposed case management plan, the template for which is available at www.nysd.uscourts.gov/hon-valerie-e-caproni.

**SO ORDERED.**

Date: February 13. 2026
New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**