UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>          Defendants. | Civil Action No.: 22-cv-00871 (VEC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TENNESSEE FOOTBALL, LLC d/b/a TENNESSEE TITANS' MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    I.    Motion for Reconsideration Standard.................................................................. 3

    II.   The Second Circuit Ruling Does Not Command Denial of the Titans Contractual Right to Arbitration. ............................................................................................................ 4

    III.  Alternatively, the Court Should Appoint a Different Arbitrator for the Horton/Titans Dispute. .............................................................................................................. 10

CONCLUSION................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bob Pearsall Motors Inc. v. Regal Chrysler-Plymouth, Inc.*,
  521 S.W.2d 578 (Tenn. 1975) ..................................................................................................7

*Glassman, Edwards, Wyatt, Tuttle & Cox P.C. v. Wade*,
  404 S.W.3d 464 (Tenn. 2013) ..................................................................................................9

*NFL Mgmt. Council v. NFL Players Ass'n*,
  820 F.3d 527 (2d Cir. 2016) .....................................................................................................9

*Pruett Enters. v. Hartford Steam Boiler Inspection & Ins. Co.*,
  No. 03A01-9609-CH-00309, 1997 WL 170302 (Tenn. Ct. App. Apr. 11,
  1997) .........................................................................................................................................7

*Sikora v. Vanderploeg*,
  212 S.W.3d 277 (Tenn. Ct. App. 2006) ..................................................................................10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ...................................................................................................4

*Ward v. Ernst & Young U.S. LLP*,
  468 F. Supp. 3d 596 (S.D.N.Y. 2020) ....................................................................................11

*Watson v. United States*,
  No. 04 Civ. 2222, 2005 WL 2560375 (S.D.N.Y. Oct. 12, 2005) .............................................3

*Wilson v. New York & Presbyterian Hosp.*,
  No. 17-CV-5012 (RRM) 2021 WL 2987134 (E.D.N.Y. July 15, 2021) ...................................3

**Statutes**

9 U.S.C. § 5 ...................................................................................................................................10

9 U.S.C. § 10(a)(2) ..........................................................................................................................4

**Other Authorities**

FRCP 54(b) ......................................................................................................................................3

FRCP 59(e) ......................................................................................................................................3

Local Civil Rule 6.3 .........................................................................................................................3

ii

Defendant Tennessee Football, LLC d/b/a the Tennessee Titans ("Titans") respectfully moves pursuant to Local Civil Rule 6.3, Federal Rule of Civil Procedure 59(e), or, alternatively Federal Rule of Civil Procedure 54(b), to reconsider one aspect of its February 13, 2026 Opinion and Order ("Order").[1]  *See* Dkt. 182.  The Court should revise its Order and hold that the claims of Plaintiff Ray Horton ("Horton") against the Titans must be arbitrated, which aligns with the Court's previous conclusion, reached twice, that Horton's claims required arbitration.  While the Titans understood and support Defendants' prior arguments for arbitration, and what each may have for reconsideration of the Order, the Titans only seek relief in this Motion on its own behalf.

## PRELIMINARY STATEMENT

On March 1, 2023, this Court, following a Motion to Compel Arbitration that the Titans filed (as did the co-defendants) immediately upon the lawsuit's institution, concluded that Plaintiff Horton's claims against the Titans must be arbitrated.  *See* Dkt. 76, March 1, 2023, Opinion and Order.  That "must" was not equivocal.  The Titans did not seek reconsideration and sought no relief on appeal.  *See* Dkt. 81, Motion for Reconsideration (filed on behalf of the National Football League ("NFL"), Denver Broncos Football Club ("Broncos"), Houston NFL Holdings, L.P. ("Texans"), and New York Football Giants, Inc. ("Giants")); Dkt. 170, Second Circuit Opinion (reflecting appeal by NFL, Broncos, Texans, and Giants).

The Titans contested Plaintiff Horton's Motion to Reconsider, which the Court denied.  It defended Plaintiff Horton's appeal of the arbitration Order.  The Second Circuit rejected Horton's

---

[1] When this lawsuit was filed, the Titans formal name was Tennessee Titans Entertainment, LLC d/b/a Tennessee Titans.  That formal name changed; the legal successor is Tennessee Football, LLC d/b/a Tennessee Titans. This motion is filed on behalf of that entity.

appeal. *See* Dkts. 89, 102 128.  In sum, the Titans prevailed, multiple times, first three years ago and have been prepared to arbitrate the claims of Plaintiff Horton ever since.[2]

Despite having prevailed previously, the Order was clearly a change for the Titans.  The catalyst was the Second Circuit opinion involving *Plaintiff Flores's* claims against the NFL and other teams not the Titans.  These claims are distinct from, and respectfully should have no direct control over, Plaintiff Horton's claim against the Titans.  The Second Circuit explicitly stated that the claims of Plaintiff Horton against the Titans were not before it.  Dkt. 170 at 10, 14 ("[t]he claims of . . . Horton are thus no longer before this Court." and "[t]his appeal concerns only [Plaintiff] Flores's claims against the Broncos, Giants, and Texans, and related claims against the NFL.").  This Court's decision to put the Titans into a mix, and outcome, respectfully not applicable to it, prompts its decision to ask this Court to take another look.

Despite this Court's previous rulings and Horton's claims not being before the Second Circuit, the Order concludes that Plaintiff Horton's claim can no longer be ordered to arbitration because the Second Circuit's decision "necessarily affects the correctness of the portion of the March 1 Order that compelled arbitration of the . . . Horton/Titan claims."  Dkt. 182 at 4.  This Court concluded that, notwithstanding the fact that the Horton/Titans claims were not before the Second Circuit, and no one argued the Horton/Titans claims before that Court, the perceived substance of the Second Circuit ruling nevertheless controls. This should be reconsidered.

In applying the Second Circuit ruling, the Order omits observable consideration of crucial distinctions between the claims asserted by the various plaintiffs against the several parties.  When

---

[2] The Titans also responded, along with its co-Defendants, to Plaintiffs' September 16, 2025 Motion to Reconsider, which was filed after the Second Circuit opinion related to the claims of Plaintiff Flores was issued.  *See* Dkt. 159.

those distinctions are fully considered, basis for the Court to deviate from its two previous findings regarding the Horton/Titans claims is not found.

## ARGUMENT

To be clear, the Titans maintain that all of Plaintiffs' claims in this matter are subject to arbitration, based on arguments all Defendants have made in this case. These are rooted in the Federal Arbitration Act ("FAA"), the relevant laws of the states that govern the various relevant – and different – contractual agreements, the separate contracts Plaintiffs executed with the respective clubs, various critical NFL documents and materials, and the absence of any actual evidence that the Commissioner of the NFL (or his designee) could not serve as a fair arbitrator of the various disputes that have been cobbled together by Plaintiffs under the umbrella of this lawsuit. It also respects what the Court stated to the contrary, but it believes with that same respect the Court was just wrong. That said, even taking the Second Circuit opinion at face value, it does not "necessarily affect" the correctness of this Court's previous rulings regarding the arbitrability of the Horton/Titans claims, and the Court's previous rulings from 2023 in regard to those claims, and their arbitrability, should stand.

### I.      Motion for Reconsideration Standard

Local Civil Rule 6.3 provides for the filing of a Motion for Reconsideration where the movant maintains that the trial court has "overlooked" certain potentially dispositive factual or legal matters in rendering a ruling that the movant seeks to be reconsidered. *See* L.R. 6.3; *see also Wilson v. New York & Presbyterian Hosp.*, No. 17-CV-5012 (RRM), 2021 WL 2987134, at *3 (E.D.N.Y. July 15, 2021). Courts have concluded this is the same standard as applied for a motion under FRCP 59(e). *Watson v. United States*, No. 04 Civ. 2222, 2005 WL 2560375, at *2 (S.D.N.Y. Oct. 12, 2005). Alternatively, relief for the Titans is appropriate under FRCP 54(b), which permits the Court to revise any non-final order prior to final judgment, with often cited grounds for doing

3

so being clear error or to prevent manifest injustice. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

Here, even setting aside Defendants' disagreements with the conclusions of the Second Circuit, this Court, in considering whether the Second Circuit decision "necessarily affects" its previous conclusions regarding the arbitrability of the Horton/Titans claims, overlooked key distinctions between the claims before the Second Circuit and those at issue in the Horton/Titans claims. Had those distinctions been considered, the result of Plaintiffs' Motion to Reconsider should have been different, and the Court should revise the Order accordingly and in the interests of justice.

**II.    The Second Circuit Ruling Does Not Command Denial of the Titans Contractual Right to Arbitration.**

The Second Circuit held Plaintiff Flores cannot be compelled to arbitrate his claims before the NFL Commissioner (or his designee) because the Commissioner is "the principal executive of one of Flores's adverse parties," that is, the NFL. Dkt. 170 at 4. This would provide for "arbitration in name only," lacking the procedural and substantive safeguards the FAA provides. *Id.* Again, the Titans disagree with this conclusion. The FAA provides a remedy in the event it is determined, following the proceeding, that the arbitration was unduly infected with bias. *See* 9 U.S.C. § 10(a)(2) (permitting the vacating of any arbitration award by the federal court in the event of "evident partiality" on the part of the arbitrator). Speculation of bias is not the standard, and even if it is tempting to see how it could apply to the NFL, the temptation does not jump to the Horton/Titans' dispute.

All that said, it is true that Plaintiff Flores asserts a multi-dimensional case against the NFL and several different NFL clubs, such that concern about the appearance of bias could be arguably

4

felt were the Commissioner responsible for deciding that dispute.[3]  The considerable, substantive balance of Plaintiffs' 100-page, 400+ paragraph First Amended Complaint is concerned with Plaintiff Flores, who alleges that he has been a central target of discrimination and retaliation by the NFL and several of its clubs in hiring and other matters over a several year period beginning in 2019 and continuing forward.  Dkt. 22, First Amended Complaint, ¶¶ 156-226.  Flores makes allegations of misconduct by the Commissioner.  He includes salacious allegations of misconduct by team owners and coaches related to tampering.  He generally attempts to paint a picture of a multi-year coordinated campaign within the NFL and certain clubs (not including the Titans) to bar him from the highest coaching positions within the NFL. *See e.g., id.*

While the Titans disagree with the conclusion, it is possible to conclude that the scope and breadth of Plaintiff Flores's claims influenced the Second Circuit in determining that an arbitration of these claims by the Commissioner or his designee would have been arbitration "in name only." The Second Circuit focused on the concept of "independence," concluding that because the Commissioner leads the league subject to a considerable aspect of Flores's claim, Flores would not receive the "independent" tribunal he was entitled to under the FAA.  *See e.g.*, Dkt. 170 at 22 (the relevant arbitration agreement "lacks the requisite independence between the parties and arbitrator" required under the FAA).  The Titans remind with respect that it was not a part of that rationale.

---

[3] The Titans note that, when this matter was in arbitration while the matter was pending before the Second Circuit, the Commissioner delegated his decision-making authority. *See* Dkt. 159 at 7, Defendants' Response to Plaintiffs' Motion to Reconsider (discussing the Commissioner's appointment of the Honorable Peter C. Harvey to adjudicate the dispute).

There is a reason why it was not a part.  The Horton/Titans claims are completely different.  The Horton/Titans claims appear "tacked on" to the broader allegations made, almost added as a forgettable afterthought, lumped in with the rest of the claims and allegations in this case.[4]

In the Amended Complaint, while he provides some background on his coaching career and failed efforts to obtain a head coaching job with other football clubs, Horton's claims against the Titans are predicated on a single discrete event, one job interview, that happened in 2016 – three years before the course of events that set the Flores claims in motion.  *See generally* Dkt. 22, Amended Complaint, at ¶¶ 264-284.

At the time of his claims against it, Horton was an employee of the Titans.  He was its defensive coordinator.  *Id.* at 266.  As he recognizes, Horton had an employment agreement with the Titans ("Horton Employment Agreement").  It simply, directly, and indisputably places all of his or its disputes between him and it to binding arbitration before the Commissioner.  *See id.*; Dkt. 155, Ex. 5 at 6 ("You and Titans agree that all matters in dispute between You and Titans shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding, and unappealable by You and Titans.").  That commitment could not be more mutual.

Tennessee law governs the Horton Employment Agreement.  Dkt. 64, note 2.  There is no allegation that the Horton Employment Agreement is unenforceable based on any traditional barrier to enforcement.  There is no allegation of duress, undue influence, mutual mistake, or any

---

[4] Consistent with the Titans ancillary role in this case, the Court repeatedly references the "Defendants" efforts to seek reconsideration and the "Defendants" appeal of unfavorable aspects of the March 1, 2023 ruling.  Dkt. 182 at 1, 3, 4 ("Both Plaintiffs and Defendants appealed the Court's decisions on Defendants' Motion to Compel and both parties' Motions for Reconsideration . . . After the Second Circuit decided the appeal of the parties that did so, Plaintiffs filed a Motion for Reconsideration of the portion of the March 1 Order that ordered arbitration of certain of Plaintiffs' claims.").  Those "Defendants" are not the Titans, which never previously sought reconsideration and did not appeal any aspect of the March 1, 2023 Order.

similar ground typically employed to justify the departure from the well settled doctrine in Tennessee that contractual agreements are enforced according to their plain language. *See Pruett Enters. v. Hartford Steam Boiler Inspection & Ins. Co.*, No. 03A01-9609-CH-00309, 1997 WL 170302, at *4 (Tenn. Ct. App. Apr. 11, 1997) ("contracts will be enforced as written, absent fraud or mistake, even though they contain arguably harsh or unjust terms") (citing *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706 (Tenn. App. 1992)); *see also Bob Pearsall Motors Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) (holding it is the obligation of the courts "to enforce contracts according to their plain terms."). There is no allegation that each party did not have a full understanding, at the time Horton was hired, that all disputes between them would be resolved in arbitration before the Commissioner. There is no allegation that the Commissioner, or his or her designee, prefer the Titans – or its position – more than Mr. Horton and his.

The dispute resolution process under the Horton Employment Agreement is simple, and so is the factual underpinning of his claim. Horton claims that, over the course of one weekend in January 2016, Titans employees cajoled him to fly across the country for a sham head coach interview with senior Titans leadership. Dkt. 22, at ¶¶ 271-278. That is, he would urge, the Titans leadership had already decided to hire someone else for the job but conducted a sham interview with him to comply, at least facially, with the NFL's Rooney Rule. *Id.* Horton claims the gentleman hired for the job, Mr. Mularkey, ultimately disclosed this ruse on a podcast several years later and that Horton was injured by the Titans' alleged deception. *Id.* at ¶¶ 279-84.

The Titans, of course, in the appropriate forum and at the appropriate time, will set the record straight about what happened up to, during, and after Plaintiff Horton's interview process. But, before doing so, the Titans are entitled to its contractually negotiated forum. The Titans and

Horton contracted that any disputes would be resolved by the Commissioner in an out of court process, and Horton has identified no good legitimate bases to deviate from the very agreement he accepted when it was to his advantage.

While Plaintiffs have peppered their record with allusions to bias and rank speculation about the Commissioner (or his designee), no actual evidence or logical argument has been advanced to show why the Commissioner would not be a permissible arbitrator of this dispute between a former defensive coordinator and his employer regarding a job interview from more than a decade ago. Again, "independence" is a key watchword from the Second Circuit. There is nothing about how the Horton dispute is explained in Plaintiff's pleading to suggest that the Commissioner is not independent. Tennessee law requires it be "unconscionable" for the Commissioner to preside over the Horton/Titans dispute, for him to be removed from that role. *See* Dkt. 64 at 6, Defendants Reply in Support of Motion to Compel (citing *Trigg v. Little Six Corp.*, 457 S.W.3d 906, 912 (Tenn. Ct. App. 2014)).

Rather than being unconscionable for the Commissioner to resolve this dispute, the record reflects this is the type of dispute that the Commissioner has resolved repeatedly. Dkt. 64 at 8 (collecting cases where the Commissioner has resolved issues related to player suspension, owner suspension, and sanctioning of teams).[5] Moreover, and the Titans assert crucially, this narrow dispute between Horton and the Titans contains no allegation that the Commissioner participated in, or had any knowledge of, the events as they were occurring. The Commissioner is independent of this dispute.

---

[5] This reflection falls squarely within the standard for a Motion to Reconsider set out on pp. 3-4, *infra*.

The Court's Order lacks explanation as to why the Commissioner should be pre-judged as biased in the specific Horton/Titans dispute, understates that he was selected by those two Parties to resolve an intra-league dispute, and fails to sufficiently recognize the law of the state governing the relevant contract. *See Glassman, Edwards, Wyatt, Tuttle & Cox P.C. v. Wade*, 404 S.W.3d 464, 466 (Tenn. 2013) ("arbitration agreements are favored in Tennessee by both statute and case law . . . agreements to arbitrate are 'valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract' . . . the legislature has adopted a policy favoring the enforcement of arbitration agreements.") (quoting T.C.A. 29-5-302(a)).

While the Second Circuit apparently had concerns about the Commissioner or his designee sitting in judgment of a multi-faceted dispute containing allegations of discrimination and retaliation involving Plaintiff Flores, several teams and the NFL, none of those concerns arise from the Commissioner resolving an isolated dispute between a former employee and his club related to a job interview. Nothing suggests the Commissioner would prejudge the Horton/Titans dispute, any more than might anyone else. And, again, the Parties explicitly and unquestionably agreed to the Commissioner. They knew that if they had a dispute it would be resolved by the head of the NFL; neither side should now be heard to claim that such a role would be an unfair result. "The parties to an arbitration can ask for no more impartiality than inheres in the method they have chosen." *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 548 (2d Cir. 2016). If the Commissioner has prejudged this dispute, or does, the FAA provides the post-hearing remedy.

While Plaintiffs have filed a lengthy pleading, with allegations of racial animus and misconduct extending over decades, and would make this lawsuit a referendum on race relations in the NFL, a considered review of the claims Horton brought reveals one simple, narrow dispute that should be subject to arbitration under the law of their contract. Considering the factual

distinctions between the claims, the Court's application of the Second Circuit's "Flores finding" to the Horton matter should, respectfully, be corrected. Indeed, whatever logic there is in the conclusion that the Commissioner should be pre-judged as a biased and partial arbitrator of the Flores claims, that conclusion has nothing to do with whether the Commissioner could fairly resolve the Horton/Titans claims. These are different claims, from a different time, involving different parties, and are focused on a completely different series of events. The Commissioner should resolve them, just as the parties agreed.

### III. Alternatively, the Court Should Appoint a Different Arbitrator for the Horton/Titans Dispute.

Even if the Court re-affirms that the Commissioner cannot resolve the Horton/Titans dispute, the Horton Employment Agreement nonetheless reflects an unmistakable intention to resolve disputes arising from Horton's employment through an out of court process – certainly not through protracted litigation that includes class claims that have nothing to do with the Titans. Given that intent, the Court, employing the broad powers provided by the FAA, should still order Horton and the Titans to arbitration and appoint a substitute arbitrator. *See* 9 U.S.C. § 5 (stating that the court shall, upon application, "designate and appoint an arbitrator . . . as the case may require" where "for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy"). Such implicit modification of the Horton Employment Agreement would be consistent with governing Tennessee law, which allows for reformation in equity "to make the contract 'conform to the real intention of the parties.'" *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) (quoting *Lebo v. Green*, 426 S.W.2d 489, 494 (Tenn. 1968)).

In short, if the Court still sees the Commissioner resolving the Horton/Titans dispute as problematic, that problem can be remedied by appointing a new arbitrator. The FAA and

10

supporting case law favors arbitration and discourages the approach, respectfully, that the Court adopted in the Order, which was, proverbially, to throw the baby out with the bathwater. *See e.g. Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 606 (S.D.N.Y. 2020) (noting the FAA's preference to "encourage[e] arbitration" even to the extent of excising improper provisions in an arbitration agreement, rather than voiding the entire concept).

The Court should order the Horton/Titans arbitration to proceed before the Commissioner, but, failing that, the Court should honor the Parties' agreement for alternative dispute resolution and appoint a substitute arbitrator, as provided by the FAA.

## CONCLUSION

In the Order, the Court overlooked the Titans' discrete circumstances, improperly applied the Second Circuit's conclusion in the Flores matter to the Horton claim, and failed to follow Tennessee law which these two parties adopted. The Court should reconsider and affirm, for the third time, that Plaintiff Horton's claims against the Titans must be arbitrated, not abandon that judiciously established conclusion.

Dated: New York, New York
      February 27, 2026

                                **HOLLAND & KNIGHT LLP**

By:    */s/ Duvol M. Thompson*
       Duvol M. Thompson
       Noah W.S. Parson
       Bob Boston (*pro hac vice* forthcoming)
       Drew Warth (*pro hac vice* forthcoming)
       787 Seventh Avenue, 31st Floor
       New York, New York 10019
       Telephone: (212) 513-3200
       Facsimile: (212) 385-9010
       duvol.thompson@hklaw.com
       noah.parson@hklaw.com
       bob.boston@hklaw.com

11

drew.warth@hklaw.com

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

Loretta E. Lynch
Brad S. Karp
Lynn B. Bayard
Brette Tannenbaum
Kannon K. Shanmugam
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3900
lelynch@paulweiss.com
bkarp@paulweiss.com
lbayard@paulweiss.com
btannenbaum@paulweiss.com
kshanmugam@paulweiss.com

*Attorneys for Defendant Tennessee Football,
LLC d/b/a Tennessee Titans*

12

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Duvol M. Thompson, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rules 6.3 and 7.1(c), and the Court's Individual Practices in Civil Cases, that the foregoing Motion for Reconsideration was prepared using Microsoft Word and the document contains 3,404 words as calculated by the application's word-counting function, excluding the parts of the Motion exempted by Local Civil Rule 7.1(c).

/s/ Duvol M. Thompson
Duvol M. Thompson

13