UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS, and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,<br><br>              *Plaintiffs*,<br><br>     v.<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>              *Defendants*. | Case No. 22-CV-871 (VEC) |

**DEFENDANT MIAMI DOLPHINS, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION AND MOTION FOR STAY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ......................................................................................................................2

    A.    The Employment Agreement ................................................................................2

    B.    Initial Proceedings Before This Court .................................................................3

    C.    Second Circuit Proceedings .................................................................................4

    D.    Further Proceedings Before This Court................................................................4

LEGAL STANDARD ................................................................................................................5

ARGUMENT ..........................................................................................................................6

I.     THE COURT SHOULD SEVER THE UNENFORCEABLE PROVISIONS OF
THE AGREEMENT AND COMPEL ARBITRATION ..........................................................6

    A.    Applicable Law Requires Severance Of Unenforceable Arbitration
Provisions Rather Than Total Invalidation Of Arbitration Agreements .................6

    B.    The Provisions Held Unenforceable By This Court Can Be Severed And
The Remainder Of The Arbitration Agreement Should Be Enforced .....................7

II.    THE COURT SHOULD STAY PROCEEDINGS PENDING RESOLUTION OF
THIS MOTION ...........................................................................................................11

CONCLUSION......................................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Addit, LLC v. Hengesbach*,
    341 So. 3d 362 (Fla. Dist. Ct. App. 2022) ...........................................................................6, 8, 9

*Am. Fam. Life Assurance Co. (AFLAC) v. Baker*,
    848 F. App'x 11 (2d Cir. 2021) ...........................................................................................7, 8, 10

*Bean v. ES Partners, Inc.*,
    533 F. Supp. 3d 1226 (S.D. Fla. 2021) ......................................................................................7

*Blackwell v. Nocerini*,
    123 F.4th 479 (6th Cir. 2024) .....................................................................................................5

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023) ..................................................................................................................11

*Flores v. N.Y. Football Giants, Inc.*,
    150 F.4th 172 (2d Cir. 2025) ..................................................................................... 4, 7, 8, 9, 10

*Lamps Plus, Inc. v. Varela*,
    587 U.S. 176 (2019) ....................................................................................................................6

*Malek v. Feigenbaum*,
    116 F.4th 118 (2d Cir. 2024) ......................................................................................................5

*McSweeney v. Cohen*,
    2025 WL 1898351 (S.D.N.Y. July 9, 2025) ..............................................................................11

*Obolensky v. Chatsworth at Wellington Green, LLC*,
    240 So. 3d 6 (Fla. Dist. Ct. App. 2018) ..................................................................................6, 9

*Osprey Health Care Ctr., LLC v. Pascazi*,
    329 So. 3d 177 (Fla. Dist. Ct. App. 2021) ..............................................................................6, 9

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) .......................................................................................2, 6, 7, 8, 10

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ..................................................................................................................7, 9

*Reyes v. Gracefully, Inc.*,
    2018 WL 2209486 (S.D.N.Y. May 11, 2018) .............................................................................7

*Torres v. Mount Sinai Hosp.*,
　　2025 WL 3688015 (S.D.N.Y. Dec. 19, 2025) ................................................................5

*Ward v. Ernst & Young U.S. LLP*,
　　468 F. Supp. 3d 596 (S.D.N.Y. 2020) .........................................................................7

*Wilks v. N.Y. Football Giants, Inc.*,
　　2024 WL 4110915 (2d Cir. Apr. 11, 2024) ................................................................4

**Statutes**

9 U.S.C. § 2 ..........................................................................................................................9

9 U.S.C. § 5 ...................................................................................................................10, 11

9 U.S.C. § 16(a) ...................................................................................................................5

**Rules**

Fed. R. App. P. 4(a)(4)(A)(iv) .............................................................................................5

Fed. R. App. P. 4(a)(4)(B)(i) ...............................................................................................5

Fed. R. Civ. P. 54(a) ............................................................................................................5

Fed. R. Civ. P. 54(b) ............................................................................................................5

Fed. R. Civ. P. 59(e) ............................................................................................................5

S.D.N.Y. L. Civ. R. 6.3 ........................................................................................................5

The Miami Dolphins respectfully move the Court to reconsider its February 13, 2026 Order, Dkt. 182 ("February 13 Order"), to the extent that Order voids in full the arbitration agreement between Brian Flores and the Dolphins.  The Court should instead sever the offending provisions and—in keeping with core contract-interpretation principles and the parties' express intent—enforce the remainder of the arbitration agreement.

## PRELIMINARY STATEMENT

Flores and the Dolphins agreed on what should happen if a court found any part of the arbitration provision in their employment agreement unenforceable: "the remainder of the provision, ***including the agreement to submit to binding arbitration***, will remain valid and in effect." Ex. 1 ¶ 12.4 (emphasis added) ("Agreement" or "Flores-Dolphins Agreement").[1]  That direction follows from the express "purpose" of the arbitration provision: "to ensure that any and all disputes that may arise between" Flores and the Dolphins "will be resolved through binding, conclusive arbitration as opposed to court or administrative litigation."  *Id.*  Accordingly, as the Dolphins previously argued, any unenforceable provisions of their arbitration agreement with Flores should be severed and the remainder of that agreement enforced.  Dkt. 64 at 6–7.

In its February 13 Order, this Court held that the NFL Commissioner's unilateral control over the arbitral process is "the fatal flaw" preventing enforcement of the arbitration agreement as drafted.  Dkt. 182 at 13.  The Dolphins reserve the right to challenge that ruling on appeal.  But, for purposes of this motion, the Dolphins do not seek to revisit the Court's holding.  Instead, the Dolphins ask the Court to apply the severability principles that they previously asserted but this Court did not address in its most recent Order.  Under those principles, the NFL-control provisions

---

[1]  The Agreement attached as Exhibit 1 appears elsewhere on the docket, *see, e.g.*, Dkt. 49-2, but the attached version removes redactions on several relevant provisions.

that this Court concluded were unenforceable should be severed from the arbitration agreement, and the remaining provisions stipulating to arbitration of this dispute should be enforced by compelling arbitration before JAMS. *See* Agreement Ex. A ¶ 1.7. That targeted remedy eliminates the flaws identified by this Court while giving force to the parties' agreement to arbitrate this dispute—an approach supported by both state contract law and the Federal Arbitration Act ("FAA"). *See, e.g., Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124–25 (2d Cir. 2010).

The Dolphins appear now through separate counsel because their interest is distinct from the NFL's. The NFL has petitioned the Supreme Court for certiorari on whether the Commissioner's substantive and procedural role in arbitration under the NFL Constitution is enforceable. The Dolphins' position is different: whatever the Supreme Court decides on that question, the Dolphins are entitled to enforce the bilateral arbitration agreement that they and Flores negotiated and signed—and that provides for arbitration in an undisputedly neutral forum. The Court should therefore compel arbitration before JAMS in accordance with the express provisions of the Flores-Dolphins Agreement, which do not implicate the concerns raised by this Court or the Second Circuit in prior decisions.

## BACKGROUND

### A.    The Employment Agreement

The employment agreement between Flores and the Dolphins provides that "any and all disputes that may arise between the Club and [Flores] will be resolved through binding, conclusive arbitration ***as opposed to court or administrative litigation***." Agreement ¶ 12.4 (emphasis added). Specifically, "any dispute arising from" Flores's "employment with the" Dolphins "shall be referred to the Commissioner of the NFL for binding arbitration in accordance with the NFL's Dispute Resolution Procedural Guidelines [(DRPG)]." *Id*. ¶ 12.2.

The DRPG divide disputes submitted for arbitration into two categories: "football-oriented" and "not football-oriented." *Id.* Ex. A ¶ 1.5. A dispute "relating to or arising out of," *inter alia*, employment "discrimination" is "not football-oriented." *Id.* "If the Commissioner, in his sole discretion, determines that the dispute is not football-oriented, the Commissioner may direct that the dispute be referred for final, binding, and conclusive arbitration administered by the alternative dispute resolution provider agreed to by the parties, or in the absence of such agreement, by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures." *Id.* Ex. A ¶ 1.7.

The Agreement provides that "[i]f any portion or aspect of th[e]" arbitration provision "is found to be unenforceable for any reason, in whole, or in part, the parties agree that the unenforceable portion or aspect … will be severed and the remainder of the provision, including the agreement to submit to binding arbitration, will remain valid and in effect." *Id.* ¶ 12.4. The Agreement also states more generally that "[i]f any provision of this Agreement is held invalid or illegal, such provision shall be null and void, and the remainder of this Agreement shall not be affected by such invalidity or illegality." *Id.* ¶ 20.

### B.    Initial Proceedings Before This Court

Flores sued the Dolphins for discrimination and retaliation under federal, state, and local law. Dkt. 22 ¶¶ 391–413, 424–34. The Dolphins moved to compel arbitration of Flores's claims under both the Agreement and the NFL Constitution, which is incorporated into the Agreement. Dkt. 48 at 15–18; *see* Agreement ¶ 7.1.

Flores contended that the arbitration provisions of both the Agreement and the NFL Constitution were unenforceable on multiple grounds. Dkt. 62 at 5–17. The Dolphins disagreed but contended in the alternative that, if any of the arbitration provisions were unenforceable in any respect, "the appropriate remedy … is to sever the improper provision of the arbitration agreement, rather than void the entire agreement." Dkt. 64 at 6 (citation omitted).

3

This Court granted the Dolphins' motion to compel, rejecting Flores's contentions that the arbitration provisions were unenforceable.  Dkt. 76 at 11–13, 22–27, 29.  The Court accordingly had no occasion to address the Dolphins' alternative argument that any unenforceable aspects of the arbitration provisions should be severed.  Dkt. 64 at 6–7.

### C.    Second Circuit Proceedings

Flores appealed this Court's grant of the Dolphins' motion to compel arbitration, but a panel of the Second Circuit dismissed his appeal for lack of jurisdiction.  *Wilks v. N.Y. Football Giants, Inc.*, 2024 WL 4110915 (2d Cir. Apr. 11, 2024).

In a separate appeal, a different Second Circuit panel affirmed this Court's decision denying a motion to compel arbitration under the NFL Constitution of other claims brought by Flores against the NFL and three other teams.  *Flores v. N.Y. Football Giants, Inc.*, 150 F.4th 172, 176 (2d Cir. 2025).  The Second Circuit held that the arbitration provision in the NFL Constitution was unenforceable under federal law because it required the submission of claims to "the unilateral substantive and procedural discretion of the" NFL Commissioner, which the court concluded deprived the arbitration provision of protection under the FAA and did not permit Flores to effectively vindicate his statutory claims.  *Id.* at 183; *see id.* at 185–87.

The Second Circuit emphasized that its decision addressed only "the arbitration provision of the NFL Constitution," not "Flores's club-specific arbitration agreements"—which were "not at issue in th[at] appeal."  *Id.* at 184.  The Second Circuit also stated that the arbitration provision in the NFL Constitution "cannot be readily severed to avoid the effective-vindication doctrine" and was therefore "invalid in its entirety."  *Id.* at 186 n.70.

### D.    Further Proceedings Before This Court

Flores sought reconsideration of this Court's order compelling arbitration of his claims against the Dolphins.  Dkt. 153, 154.  This Court recognized that the Second Circuit had not

addressed any "team-specific arbitration agreements" and that those agreements' incorporation of the DRPG give them greater "resemblance to the arbitration agreements envisioned and protected by the FAA." Dkt. 182 at 10, 13. The Court nevertheless concluded that the DRPG's procedures "do not cure the inherent bias of the NFL's dictated forum" and that "[t]he NFL's unilateral control over the dispute resolution process is the fatal flaw." *Id.* at 11 n.10, 13. The Court accordingly ordered that Flores's claim against the Dolphins can proceed in federal court. *Id.* at 2, 14. The Court did not consider the Dolphins' previously briefed argument that any unenforceable provisions of the arbitration agreement should be severed. *See* Dkt. 64 at 6.

## LEGAL STANDARD

Local Civil Rule 6.3 provides that a party may move for reconsideration where it believes "the court has overlooked" particular "matters or controlling decisions" that could change the result reached by the Court in a challenged order. S.D.N.Y. L. Civ. R. 6.3. Federal Rule of Civil Procedure 59(e) similarly provides that a party may move "to alter or amend a judgment," which is defined to include "any order from which an appeal lies." Fed. R. Civ. P. 54(a), 59(e); *see* 9 U.S.C. § 16(a) (allowing appeal of an order denying a motion to compel arbitration); *see also* Fed. R. Civ. P. 54(b) (providing that a non-final order "may be revised at any time before the entry of a judgment").[2]

---

[2] The time to file a notice of appeal seeking review of the February 13 Order does not begin to run until the Court resolves this motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv); *Malek v. Feigenbaum*, 116 F.4th 118, 127, 128 n.9 (2d Cir. 2024); *Blackwell v. Nocerini*, 123 F.4th 479, 484–85 (6th Cir. 2024). This Court would retain jurisdiction if a protective notice of appeal were filed. *Torres v. Mount Sinai Hosp.*, 2025 WL 3688015, at *2 (S.D.N.Y. Dec. 19, 2025); Fed. R. App. P. 4(a)(4)(B)(i).

# ARGUMENT

Reconsideration is warranted because this Court's February 13 Order overlooked the Dolphins' prior argument and controlling law on the proper remedy when a portion of an arbitration agreement is deemed unenforceable. As the Dolphins previously contended but this Court has not yet addressed, the aspects of the arbitration agreement that this Court held unenforceable should be severed and the rest of the agreement be enforced according to its terms. Specifically, the Court should sever the provisions providing the NFL with "unilateral control over the dispute resolution process," Dkt. 182 at 13, and compel arbitration before JAMS as the parties expressly contemplated, Agreement Ex. A ¶ 1.7.

## I. THE COURT SHOULD SEVER THE UNENFORCEABLE PROVISIONS OF THE AGREEMENT AND COMPEL ARBITRATION

### A. Applicable Law Requires Severance Of Unenforceable Arbitration Provisions Rather Than Total Invalidation Of Arbitration Agreements

The Agreement is governed by Florida contract law, except to the extent it is preempted by the FAA. *See* Agreement ¶ 19; *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019); *Ragone*, 595 F.3d at 125. Under Florida contract law, "contractual provisions are severable … where the illegal portion of the contract does not go to its essence, and, with the illegal portion eliminated, there remain valid legal obligations." *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 370–71 (Fla. Dist. Ct. App. 2022) (citation omitted). Thus, when a court determines that part of an agreement is unlawful but enforceable aspects remain, the "court should sever the offending provisions" and enforce the remainder of the agreement "so long as such severance does not undermine the parties' intent." *Id.* (citation omitted); *see, e.g.*, *Osprey Health Care Ctr., LLC v. Pascazi*, 329 So. 3d 177, 187–88 (Fla. Dist. Ct. App. 2021); *Obolensky v. Chatsworth at Wellington Green, LLC*, 240 So. 3d 6, 8–12 (Fla. Dist. Ct. App. 2018).

The FAA's "liberal federal policy favoring arbitration" reinforces the need for severability when one portion of an otherwise-enforceable arbitration agreement is held invalid. *Flores*, 150 F.4th at 180 (citation omitted); *see Ragone*, 595 F.3d at 121, 124–25. Indeed, the Supreme Court has explained that, "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (citation omitted). That principle applies even when the unlawful "remainder of the contract" includes other aspects of the arbitration provision itself. *Id.* at 71–72.

Thus, courts routinely hold that, "in accordance with the FAA's preference for encouraging arbitration, 'the appropriate remedy when a court is faced with [an unenforceable] provision of an arbitration agreement … is to sever the improper provision … rather than void the entire agreement.'" *Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 606 (S.D.N.Y. 2020) (quoting *Ragone*, 595 F.3d at 124–25); *see, e.g.*, *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1236 (S.D. Fla. 2021) (applying Florida law). Specifically, when part of an arbitration agreement "prevent[s] the effective vindication of [a plaintiff's] rights to pursue statutory remedies," that part should be "severed" and the rest of that agreement enforced. *Reyes v. Gracefully, Inc.*, 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018) (Caproni, J.) (citation omitted); *see Am. Fam. Life Assurance Co. (AFLAC) v. Baker*, 848 F. App'x 11, 13 (2d Cir. 2021).

## B.    The Provisions Held Unenforceable By This Court Can Be Severed And The Remainder Of The Arbitration Agreement Should Be Enforced

The Court should provide the same remedy here. Flores and the Dolphins agreed that employment-related claims like this one "will be resolved through binding, conclusive arbitration as opposed to court or administrative litigation." Agreement ¶ 12.4. Even accepting this Court's holding that the NFL's "unilateral control over the dispute resolution process" renders the arbitration provisions of the Agreement unenforceable as drafted, Dkt. 182 at 13, the parties'

agreement to arbitrate can still be enforced with the "offending" aspects severed. *Addit*, 341 So. 3d at 370–71; *see Ragone*, 595 F.3d at 124–25; *AFLAC*, 848 F. App'x at 13.

Specifically, pursuant to the Agreement, Flores's discrimination claim "shall be referred to the Commissioner … for binding arbitration in accordance with the" DRPG. Agreement ¶ 12.2. Under the express terms of the DRPG, Flores's "discrimination" claim is "not football-oriented" because the DRPG classify disputes "relating to or arising out of … discrimination" as such. *Id.* Ex. A ¶ 1.5; *see* Dkt. 182 at 12 n.11 (noting that "this case … falls within an example provided in the DRPG as a 'not football-oriented' dispute") (citation omitted). That the Commissioner previously classified these claims as "football-oriented," Dkt. 155-11 at 3–7, underscores rather than undermines this point. That classification was itself an exercise of the "unilateral control" this Court identified as the "fatal flaw" in the arbitration provisions. Dkt. 182 at 13. After severance, the remainder of the DRPG's text governs, and the dispute must "be referred for final, binding, and conclusive arbitration administered … by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures." Agreement Ex. A ¶ 1.7.

That approach would excise the defects identified by this Court while preserving the parties' core agreement to arbitrate. Because the dispute would proceed before JAMS, subject to JAMS procedures, the NFL would no longer have "unilateral control over the dispute resolution process"—the "fatal flaw" that this Court perceived in the arbitration provisions as drafted. Dkt. 182 at 13. In fact, the NFL would have *no* control over the arbitration, which removes any concern about "lack of independence" or "inherent bias." *Id.* at 11 & n.10. Proceeding before JAMS would ensure that Flores has a well-established neutral arbitration forum in which to effectively vindicate his claims. *See Flores*, 150 F.4th at 182–87. Compelling arbitration before JAMS also follows directly from the severability clause in the Agreement's arbitration provision, which states that

"[i]f any portion or aspect of th[e]" arbitration provision "is found to be unenforceable for any reason, in whole, or in part, … the unenforceable portion or aspect … will be severed and the remainder of the provision, including the agreement to submit to binding arbitration, will remain valid and in effect."  Agreement ¶ 12.4; *see also id.* ¶ 20.

Both Florida and federal law require severance under these circumstances.  The NFL-control provisions that this Court found invalid do not "go to [the] essence[]" of the parties' agreement to arbitrate, *Addit*, 341 So. 3d at 371 (citation omitted), as the severability provisions make clear.  Indeed, the Agreement's arbitration provision expressly states that its "purpose" is to "ensure that any and all disputes" between the Dolphins and Flores "will be resolved through binding, conclusive arbitration as opposed to court or administrative litigation." Agreement ¶ 12.4. Severance directly vindicates that purpose.  And with the unenforceable provisions severed, there remain "valid legal obligations" binding the parties to arbitrate a non-football-oriented dispute like this one before JAMS.  *Addit*, 341 So. 3d at 371 (citation omitted); *see also* Agreement Ex. A ¶¶ 1.5, 1.7.  Courts applying Florida law have regularly severed unenforceable aspects of arbitration provisions under analogous circumstances.  *See, e.g.*, *Osprey*, 329 So. 3d at 187–88; *Obolensky*, 240 So. 3d at 10–11.  If there were any doubt, federal law would require the same result because the parties' agreement to arbitrate claims like this one before JAMS can be enforced despite the provisions in "the remainder of the contract" that this Court found unenforceable.  *Rent-A-Center*, 561 U.S. at 70–71; *see* Agreement Ex. A ¶¶ 1.5, 1.7; *see also* 9 U.S.C. § 2.

Severance also is consistent with the Second Circuit's decision in the prior appeal.  In holding the NFL Constitution's arbitration provision unenforceable, the Second Circuit noted that "[a]n agreement to an alternative dispute resolution scheme like the one here ***that cannot be readily severed to avoid the effective-vindication doctrine*** is invalid in its entirety."  *Flores*, 150 F.4th at

187 n.70 (emphasis added). The import of that observation is that an unenforceable provision that *can* be severed from the rest of the arbitration agreement does not render the arbitration agreement "invalid in its entirety." *Id.*; *see Ragone*, 595 F.3d at 124–25; *AFLAC*, 848 F. App'x at 13. Whatever the proper result in the prior appeal, severance is proper here. In sharp contrast to the NFL Constitution, the Flores-Dolphins Agreement expressly provides a mechanism for submitting claims to traditional third-party arbitration as an alternative to arbitration before the Commissioner and expressly provides for severance of unenforceable arbitration provisions. *See* Dkt. 49-1 (NFL Constitution, containing no severance or alternative arbitration provisions).[3]

Flores previously argued that JAMS is unavailable as an alternative forum here because the DRPG refer to JAMS's Comprehensive Arbitration Rules, which require both parties to pay *pro rata* fees, while JAMS's Policy on Employment Arbitration Minimum Standards of Procedural Standards ("Minimum Standards") purportedly precludes arbitration of employment disputes where an employee is required to pay fees. Dkt. 62 at 17–19. This Court did not endorse that argument, however, and JAMS's Minimum Standards for employment arbitration do not apply where the arbitration agreement was individually negotiated *or* the employee was represented by counsel. Dkt. 64 at 2 (citing Dkt. 62, Ex. M at 3). Plaintiff, a head coach represented by counsel in negotiating a multi-million-dollar employment contract, falls squarely within both exceptions. *See id.*

In any event, even if a JAMS arbitrator were not available, the appropriate remedy would be for this Court to appoint an arbitrator under 9 U.S.C. § 5. That provision allows a court to

---

[3]    This Court previously declined to sever the portions of the NFL Constitution that it found unenforceable, but that was because the Court concluded that no agreement to arbitrate was ever formed. Dkt. 102 at 11–12. That rationale is inapplicable here. No party disputes that the Flores-Dolphins Agreement was formed and is binding. Dkt. 76 at 12.

appoint an arbitrator to "act under the … agreement with the same force and effect as if he or they had been specifically named therein" where the arbitrator contemplated by the agreement cannot fulfill the role for any of multiple reasons.  *Id.*  Appointing a neutral arbitrator under that provision would vindicate the parties' clearly expressed intent that their dispute "be resolved through binding, conclusive arbitration as opposed to court or administrative litigation."  Agreement ¶ 12.4.

## II.   THE COURT SHOULD STAY PROCEEDINGS PENDING RESOLUTION OF THIS MOTION

Although the Court lifted the prior stay in its February 13 Order, *see* Dkt. 182 at 6, the Court should reimpose a stay for the limited period needed to resolve this reconsideration motion. If the Court grants this motion, the case will proceed in arbitration rather than before the Court.  If the Court denies this motion, the Dolphins can appeal and obtain an automatic stay pending appeal. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023).  Either way, there would be no meaningful benefit to the Court or the parties in having discovery proceed during the limited period before the Court rules on this motion.  *See McSweeney v. Cohen*, 2025 WL 1898351, at *1 (S.D.N.Y. July 9, 2025) (applying *Coinbase*'s reasoning to stay discovery pending the court's resolution of motion to compel arbitration prior to defendant's interlocutory appeal because "[t]here is likely little discovery that the parties would be able to accomplish before the Court's decision").  The Court should accordingly enter a limited-term stay until it resolves this motion.

## CONCLUSION

The Court should reconsider its February 13, 2026 Order, sever the NFL-control provisions from the arbitration agreement between Flores and the Dolphins, and submit Flores's claims against the Dolphins to arbitration before JAMS or an arbitrator appointed under 9 U.S.C. § 5.

Dated: February 27, 2026
New York, New York

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

By:   */s/ William Burck*
_____

William A. Burck
JP Kernisan
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
williamburck@quinnemanuel.com
jpkernisan@quinnemanuel.com

Christopher G. Michel
   (*pro hac vice* application pending)
555 13th Street NW, Suite 600
Washington, DC 20004
Telephone:  (202) 538-8308
christophermichel@quinnemanuel.com

*Attorneys for Defendant Miami Dolphins, Ltd.*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, William A. Burck, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 4(B)(i) of Judge Valerie Caproni Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,500 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 4(B)(i) of Judge Caproni's Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed on this 27th day of February, 2026 in New York, NY.

/s/ *William Burck*
William A. Burck