UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
BRIAN FLORES, STEVE WILKS and RAY HORTON, as :
Class Representatives, on behalf of themselves and all :
others similarly situated, :
                                                                                                                      : Civil Action No.: 22-cv-00871
: (VEC)
                                      Plaintiffs, :
:
                v. :
:
THE NATIONAL FOOTBALL LEAGUE; NEW YORK :
FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; :
MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; :
DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER :
BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a :
HOUSTON TEXANS; ARIZONA CARDINALS :
FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; :
TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a :
TENNESSEE TITANS and JOHN DOE TEAMS 1 through :
26, :
:
                                      Defendants. :
------------------------------------------------------------------------ X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DOLPHINS, CARDINALS AND TITANS' MOTIONS FOR RECONSIDERATION**

| WIGDOR LLP | ELEFTERAKIS, ELEFTERAKIS & PANEK |
|---|---|
| Douglas H. Wigdor | John Elefterakis |
| David E. Gottlieb | Nicholas Elefterakis |
| Michael J. Willemin | Raymond Panek |
| | Johnson Atkinson |
| | |
| 85 Fifth Avenue | 80 Pine Street, 38th Floor |
| New York, NY 10003 | New York, NY 10005 |
| Telephone: (212) 257-6800 | Telephone: (212) 532-1116 |
| Facsimile: (212) 257-6845 | Facsimile: (212) 532-1176 |
| dwigdor@wigdorlaw.com | *Counsel for Plaintiffs* |
| dgottlieb@wigdorlaw.com | |
| mwillemin@wigdorlaw.com | |
| *Counsel for Plaintiffs* | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................1

I.      Legal Standard ...........................................................................................................1

II.     The Dolphins and Cardinals' Severance Arguments are Improper and Incorrect ...............2

        A.     The Newly Raised Severance Arguments are Improper ..........................................2

        B.     The Dolphins and Cardinals' Severance Arguments are Incorrect on the Law .......3

III.    The New Argument for a Court-Appointed Arbitrator is Improper and Incorrect ..............7

IV.    The Cardinals and Titans Cannot Relitigate Whether *Flores* is Controlling Law ...............9

V.     The Dolphins and Cardinals are Not Entitled to a Stay .......................................................11

CONCLUSION ......................................................................................................................12

# TABLE OF AUTHORITIES

Cases                                                                                                                      Page(s)

Am. Fam. Life Assurance Co. of New York v. Baker,
　848 F. App'x 11 (2d Cir. 2021) ............................................................................................... 4, 5

Brown v. Peregrine Ent.,
　No. 22 Civ. 2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) .................................................... 9

City of Austin Police Ret. Sys. v. Kinross Gold Corp.,
　957 F. Supp. 2d 277 (S.D.N.Y. 2013) ......................................................................................... 2

Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.,
　233 F.R.D. 355 (S.D.N.Y. 2005) ........................................................................................... 2, 10

Flores v. N.Y. Football Giants, Inc.,
　150 F. 4th 172 (2d Cir. 2025) .............................................................................................. 1, 3, 4

Flores v. National Football League,
　No. 22 Civ. 0871 (VEC), 2023 WL 4744191 (S.D.N.Y July 25, 2023) ...................................... 4

Flores v. Nat'l Football League,
　658 F. Supp. 3d 198 (S.D.N.Y. 2023) ..................................................................................... 5, 6

Gingras v. Think Fin., Inc.,
　922 F. 3d 112 (2d Cir. 2019) ....................................................................................................... 4

Griffin Indus., Inc. v. Petrojam, Ltd.,
　72 F. Supp. 2d 365 (S.D.N.Y. 1999) ........................................................................................... 2

In re Salomon Inc. Shareholders' Derivative Litig.,
　68 F.3d 554 (2d Cir. 1995) ...................................................................................................... 8, 9

Moss v. First Premier Bank,
　835 F. 3d 260 (2d Cir. 2016) ....................................................................................................... 9

Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Pro. Football Ltd. P'ship,
　409 F. App'x. 401 (2d Cir. 2010) .............................................................................................. 10

Navigators Ins. Co. v. Goyard, Inc.,
　623 F. Supp. 3d 220 (S.D.N.Y. 2022) ......................................................................................... 2

Polsby v. St. Martin's Press, Inc.,
　No. 97 Civ. 690 (MBM), 2000 WL 98057 (S.D.N.Y. Jan. 18, 2000) ......................................... 1

Relevent Sports, LLC v. U. S. Soccer Fed'n, Inc.,
　No. 19 Civ. 8359 (VEC), 2020 WL 4194962 (S.D.N.Y. July 20, 2020) .................................... 9

Rock v. Enfants Riches Deprimes, LLC,
  No. 17 Civ. 2618 (ALC), 2020 WL 2793026 (S.D.N.Y. May 29, 2020) ................................... 1

RST (2005) Inc. v. Rsch. in Motion Ltd.,
  597 F. Supp. 2d 362 (S.D.N.Y. 2009) ...................................................................................... 3

Sequa Corp. v. GBJ Corp.,
  156 F.3d 136 (2d Cir.1998) ................................................................................................... 10

Shrader v. CSX Transp., Inc.,
  70 F.3d 255 (2d Cir. 1995) ...................................................................................................... 1

U. S. v. Gaines,
  295 F.3d 293 (2d Cir. 2002) .................................................................................................... 9

Vill. of Freeport v. Barrella,
  814 F.3d 594 (2d Cir. 2016) .................................................................................................... 9

Other Authorities

9 U.S.C. §5 ............................................................................................................................ 1, 7, 8, 9

**PRELIMINARY STATEMENT**

The Dolphins, Cardinals and Titans ("Moving Defendants") do not identify any authority or factual matter that was presented to the Court but overlooked in its February 13, 2026 Order. Instead, the motions are a transparent attempt to relitigate whether the Second Circuit's decision in Flores v. N.Y. Football Giants, Inc., et al., 150 F. 4th 172 (2d Cir. 2025) constitutes controlling law. In addition, the Moving Defendants advance entirely new arguments that the Court should sever some unexplained words from multiple provisions of the arbitration agreements or appoint a substitute arbitrator under Section 5 of the Federal Arbitration Act, 9 U.S.C. §5 ("FAA §5")—neither of which would be permissible under the law. A motion for reconsideration is not a vehicle for relitigating issues or advancing arguments that could have been raised earlier, and the Moving Defendants should not be permitted to take a "second bite at the apple" simply because new counsel has filed an appearance.

**ARGUMENT**

**I.      Legal Standard**

The standard on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "It is well established that a motion for reconsideration is not an opportunity to relitigate issues or advance new arguments." Rock v. Enfants Riches Deprimes, LLC, No. 17 Civ. 2618 (ALC), 2020 WL 2793026, at *2 (S.D.N.Y. May 29, 2020); see also Polsby v. St. Martin's Press, Inc., No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (parties may not "use such a motion to advance new theories or adduce new evidence in response to the court's rulings"). These "criteria are strictly construed against the moving party so as to avoid repetitive arguments

1

on issues that have been considered fully by the court." Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (citation omitted).

## II.     The Dolphins and Cardinals' Severance Arguments are Improper and Incorrect

### A.     The Newly Raised Severance Arguments are Improper

The Dolphins and Cardinals argue for the first time that the Court should "sever" provisions in the arbitration agreements. Both the Dolphins and Cardinals opposed Plaintiffs' Rule 54(b) motion and did not raise the issue of severance. See Dkt. No. 159 (the word "sever" or "severance" does not even appear). See, e.g., City of Austin Police Ret. Sys. v. Kinross Gold Corp., 957 F. Supp. 2d 277, 315 (S.D.N.Y. 2013) (a party is "barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.").[1]

The Dolphins and Cardinals cannot legitimately claim the Court "overlooked" the severance issue when those arguments were not raised. See, e.g., Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc., 233 F.R.D. 355, 360 (S.D.N.Y. 2005) ("The controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the court in the underlying motion."); Navigators Ins. Co. v. Goyard, Inc., 623 F. Supp. 3d 220, 223 (S.D.N.Y. 2022) ("[i]n deciding a motion for reconsideration, a court need not consider previously uncited cases, which necessarily do not involve an intervening change of law"). None of the case law or statutory law presented in support of the severance argument was advanced in the underlying motion practice.

---

[1]     Several new appearances were entered prior to the filing of these motions for reconsideration. To be clear, these lawyers and firms are not "new to the case" and have been actively involved in communications and the arbitration—only had not filed a notice of appearance in this Court.

2

To the extent the Dolphins and Cardinals argue that the severance was raised in prior motion practice in 2023, that is not operative to the February 13 Order.  See, e.g., RST (2005) Inc. v. Rsch. in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) ("a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters *put before the court in its decision on the underlying matter* that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court") (emphasis added).  Here, the underlying motion practice that led to the February 13 Order was not the motion briefing from several years ago.  Even still, while Defendants raised the issue of severance in the 2023 motion practice in a general manner, see Dkt. No. 64 at p. 6-7, it was not argued with any specificity, and it was certainly not argued that severance could remedy the concerns raised by the Second Circuit (as the Flores decision did not yet exist).  To that end, the current severance arguments cite many authorities absent from that earlier briefing.  Compare Dkt. No. 197 at pp. 6-11 and Dkt. No. 195 at pp. 7-9 with Dkt. No. 64.

        B.        The Dolphins and Cardinals' Severance Arguments are Incorrect on the Law

The Dolphins and Cardinals' severance arguments also fail on the merits.  They effectively ask the Court to rewrite and engage in line-item redlining to save the respective arbitration agreement—and do so in a way that would fundamentally alter the terms of the agreement that mandates a Commissioner-based arbitral process from the start.[2]  The law does not permit that form of judicial contractual intervention.

---

[2] In the arbitration, the Commissioner engaged in gateway determinations beyond whether the dispute at issue was "football oriented"; he also decided issues related to case consolidation and appointment of consultants. See Dkt. No. 155 at Ex. K.

3

First, the Flores-Dolphins contract provides that "if any portion or aspect of this provision of *this Agreement* is found to be unenforceable for any reason, in whole, or in part, the parties agree that the unenforceable portion or aspect of *this Agreement* will be severed and the remainder of the provision, including the agreement to submit to binding arbitration, will remain valid and in effect." See Dkt. No. 155, Ex. C at §12.4 (emphasis added).  However, the "Agreement" is defined to be the employment contract—and the Dispute Resolution Procedural Guidelines ("DRPG") constitutes a separate attached NFL-promulgated policy document.[3] And nothing in the DRPG permits severance of any portion thereof.  Id. at p. 12.

Second, while severance in accordance with the parties' intent is permitted, courts will not disturb core and fundamental aspects of an arbitration agreement.  See, e.g., Gingras v. Think Fin., Inc., 922 F. 3d 112, 128 (2d Cir. 2019) (refusing to sever provisions in arbitration agreement "given the pervasive, unconscionable effects of the arbitration agreement interwoven within it, nothing meaningful would be left to enforce"); Flores v. National Football League, No. 22 Civ. 0871 (VEC), 2023 WL 4744191, at *n. 12 (S.D.N.Y July 25, 2023); cf. Am. Fam. Life Assurance Co. of New York v. Baker, 848 F. App'x 11, 13 (2d Cir. 2021) (summary order) (permitting severance only because offending provision was a "single, isolated provision" and not a term that

---

[3]  Defendants represented to the Second Circuit that the DRPG was created by the Commissioner pursuant to his inherent powers under the NFL Constitution and applies to all arbitrations.  See Flores v. National Football League et al., No. 23-1185, at Dkt. No. 154 ("The NFL's Dispute Resolution Procedural Guidelines set forth detailed rules for arbitrations. Those guidelines reflect the League's policy, as established by the Commissioner through his authority under the NFL Constitution, and apply to this arbitration.") (internal citations omitted).

"go[es] to the core of the arbitration agreement."). It cannot be legitimately disputed that an inseparable part of the NFL's entire arbitral scheme—as set forth in every single document including the Dolphins-Flores contract (see Dkt. No. 155, Ex. C at §12), the DRPG (Id. at p. 12), and the NFL Constitution (see Dkt. No. 49 at §8.3)—is the Commissioner's unilateral discretion and control, including over gateway forum determinations.[4]

Third, even if the Court were inclined to engage in this proposed exercise, the Dolphins and Cardinals do not even clearly identify the specific edits which could purportedly be made to save the arbitration agreement.[5] Plaintiffs should not be required to speculate as to the specific revisions they believe the Court should impose. At best we can surmise, it appears they suggest severance of certain words or phrases from several DRPG provisions (or in the case of the Cardinals, certain contract provisions) that together require the Commissioner at the initial stage to determine whether to keep the dispute under his purview or refer the arbitration to JAMS. See Dkt. No. 197 at p. 8; Dkt. No. 195 pp. 8-9. Both teams argue (though Dolphins do so far more directly) that appropriate severance would result in the dispute being arbitrated before JAMS. But even that is wrong.

---

[4] The Court has recognized that "[w]hile the exact text of [each of the Plaintiffs'] contracts varies, in relevant part each agreement provides that the NFL Commissioner will oversee an alternative dispute resolution process for all disputes arising between the parties." See Flores v. Nat'l Football League, 658 F. Supp. 3d 198, 205 (S.D.N.Y. 2023).

[5] To the extent Dolphins or Cardinals for the first time provide specific redline proposals in reply papers, that should not be considered, and Plaintiffs reserve all right to seek leave to file a sur-reply.

5

The first step in the NFL's arbitration process requires the Commissioner, in his "sole discretion," to decide whether a dispute is "football oriented" or "not football oriented." Dkt. No. 155, Ex. C at p. 12 §§1.5-1.8.[6] If the Commissioner decides the dispute is "football oriented," the dispute will be retained by the Commissioner. Id. at §1.6. If he decides the dispute is "not football oriented," the Commissioner "*may*" refer the dispute to JAMS. Id. (emphasis added). Thus, even if the Court were to rewrite portions of §§1.5-1.8 to remove the Commissioner's discretion to designate the dispute as "football oriented," the Commissioner would still have "sole discretion" whether or not to refer to the matter to JAMS. And if that provision were to be severed as well, the entire arbitration agreement would be inoperable.

The Dolphins surely recognized this unavoidable problem and misrepresented that the DRPG says the Commissioner "must" refer non-football oriented disputes to JAMS. See Dkt. No. 197 at p. 8 (quoting the provision as "must" rather than "may"). This intentional misquote materially alters the meaning of the DRPG provision and contradicts both the text and the Court's prior recognition of the Commissioner's discretionary authority with respect to any potential JAMS referral. Flores v. Nat'l Football League, 658 F. Supp. 3d 198, 214 (S.D.N.Y. 2023) (noting that "delegation to JAMS appears to be discretionary . . .").

---

[6] The same terms described herein hold true under the DRPG or the provisions in the Wilks-Cardinals contract. Dkt. No. 155 at Ex. D §10.

Finally, the Dolphins entire argument for severance is predicated on the proposition that it is *fait accompli* that "[u]nder the express terms of the DRPG, Flores's 'discrimination' claim is 'not football-oriented.'"  See Dkt. No. 197 at p. 8.  It is respectfully perplexing how the Dolphins even espouse this argument given that the Dolphins (and Cardinals) previously argued to the Commissioner at the time that this dispute was "football-oriented."  See Dkt. No. 155 at Exs. G, I.  And of course, demonstrating the Commissioner's own bias, the Commissioner agreed with the Dolphins (and Cardinals)—contrary to the obvious—that the dispute was "football oriented" and should be retained within the NFL's jurisdiction and not referred to JAMS.  Id. at Ex. K; see also Dkt. No. 182 at n. 11.

**III.    The New Argument for a Court-Appointed Arbitrator is Improper and Incorrect**

The Moving Defendants argue, for the first time, that the Court should use FAA §5 to appoint a different arbitrator to cure the unenforceability of the arbitration agreements.  See Dkt. No. 159 (no argument or request with respect to Court-appointed arbitrator).  They cannot claim the Court "overlooked" FAA §5 when it was never been raised.

The Moving Defendants are also incorrect on the law—which is why their collective descriptions of FAA §5 are limited and not a single decision has been cited which supports this requested relief.  Under FAA §5, there are certain defined situations in which a court may appoint an arbitrator: (i) "if no method [is] provided therein [for arbitrator selection]," (ii)  "if a method be provided and any party thereto shall fail to avail himself of such method," or (iii) "if for any other reason there shall be a lapse in the naming of an arbitrator . . ."  None of those situations are present in the matter at bar.

7

Here, the arbitration agreement in the Horton-Titans contract designates a specific and exclusive arbitrator: the NFL Commissioner. See Dkt. No. 155, Ex. E at p. 6 ("You and Titans agree that all matters in dispute between You and Titans shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding and unappealable by You and Titans."). Titans have not argued that there is "no method" for arbitrator selection provided or that a party "failed to avail" itself of such method. Rather, the Titans appear to rely on the proposition that this situation somehow constitutes a "lapse in the naming of an arbitrator." Dkt. No. 188 at p. 10.

Similarly, the Flores-Dolphins and Wilks-Cardinals contracts designate strictly the Commissioner to have unilateral control and discretion (including the sole discretion whether to refer the matter to JAMS, as discussed). Neither the Dolphins nor Cardinals specify which FAA §5 provision they believe to be applicable to the circumstances at bar.

The Second Circuit has addressed the argument advanced by the Moving Defendants several times and rejected it each time over a period of more than 30 years. In In re Salomon Inc. Shareholders' Derivative Litig., 68 F.3d 554 (2d Cir. 1995), the parties agreed to arbitrate disputes before a specific forum and that forum became unavailable; accordingly, the defendants asked the court to appoint an arbitrator under the "lapse in the naming of an arbitrator" provision of §5. The Court declined to do so, holding that the lapse provision only applies upon a "lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." The Court held that the inability of the designated forum to arbitrate the dispute did not constitute such a "lapse . . . or breakdown." Id. at 560 (citations omitted). Accordingly, the Second Circuit declined to appoint an arbitrator under FAA §5 and held that the arbitration agreement was unenforceable.

8

Since In re Salomon, the Second Circuit has on multiple occasions reaffirmed this holding.  See Moss v. First Premier Bank, 835 F. 3d 260, 264-65 (2d Cir. 2016) (citing In re Salomon, affirming district court's denial of request to appoint arbitrator where National Arbitration Forum was the exclusive designated forum and the forum was unable to administer the arbitration); Brown v. Peregrine Ent., No. 22 Civ. 2959, 2023 WL 8800728, at *3-4 (2d Cir. Dec. 20, 2023) (summary order) (citing In re Salomon, affirming district court's refusal to appoint a new arbitrator after the designated forum of American Arbitration Association failed because, "[u]nder the law of this Circuit [], district courts may not use section 5 to circumvent the parties' designation of an exclusive arbitral forum."); see also Relevent Sports, LLC v. U. S. Soccer Fed'n, Inc., No. 19 Civ. 8359 (VEC), 2020 WL 4194962, at *4 (S.D.N.Y. July 20, 2020) (denying motion to compel where the Fédération Internationale de Football Association ("FIFA") was the designated forum and that forum was unable to arbitrate the dispute).

The Moving Defendants have not addressed this prominent body of case law let alone attempted to distinguish it, for reasons only they can explain.  See, e.g., Vill. of Freeport v. Barrella, 814 F.3d 594, 609 n. 60 (2d Cir. 2016) (describing ethical obligation to "disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel. N.Y. Rules of Prof'l Conduct 3.3(a)(2)"); U. S. v. Gaines, 295 F.3d 293, 302 (2d Cir. 2002) (observing that "failure to cite controlling authority is at best inexcusably poor lawyering and at worst suggests counsel's ignorance or violation of" the rules of professional conduct (internal quotation marks omitted)).

### IV.     The Cardinals and Titans Cannot Relitigate Whether *Flores* is Controlling Law

The Cardinals and Titans attempt to reargue the same issue already litigated in the original round of motion practice—whether the Second Circuit's decision in Flores is controlling

9

law.  See Dkt. No. 195 at pp. 4-7 (Cardinals); Dkt. No. 188 at pp. 4-10 (Titans).  All Defendants, including the Cardinals and Titans, already had an opportunity to advance this argument and availed themselves of that opportunity.  See Dkt. No. 159 at pp. 7-11 (arguing there is no "change in controlling law").

The crux of both motions is that the Second Circuit's Flores decision is not controlling because it involved the NFL Constitution and not team-specific contracts or the DRPG.  See Dkt. No. 195 at pp. 4-7; Dkt. No. 188 at pp. 4-10.  Yet, in advancing these arguments for a second time, the Cardinals and Titans identify no arguments or evidence that were presented to the Court but overlooked.  In fact, the Court directly addressed this argument in the February 13, 2026 Order.  Rather, the argument appears to be simply that the Court "erred."  See, e.g., Dkt. No. 195 at p. 4.  That is not the standard on a motion for reconsideration.

For that reason alone, the Cardinals and Titans' motion for reconsideration should be denied.  See Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc., 233 F.R.D. 355, 360 (S.D.N.Y. 2005) ("Clearly, a motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue."); Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir.1998) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'—and we in no way depart from that basic principle.").

The Cardinals and Titans also assert several new arguments for why Flores is not controlling, which are waived and inappropriately raised at this stage in addition to being incorrect.  See, e.g., Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Pro. Football Ltd. P'ship, 409 F. App'x. 401, 403 (2d Cir. 2010) (summary order) (affirming district court's finding that an argument was not properly raised for the first time on a motion for reconsideration and

10

that the argument had been waived). They argue the Court should not follow the Second Circuit's ruling because it incorrectly applied the law and conflicts with Supreme Court precedent; and the Cardinals argue that the Court should follow Arizona district court decisions instead. See Dkt. No. 195 at pp. 6-7.[7] The teams' disagreement with the Second Circuit's decision does not render it non-controlling and does not constitute a basis for reconsideration.

## V.     The Dolphins and Cardinals are Not Entitled to a Stay

The Dolphins and Cardinals seek yet another stay of this litigation. None of the other Defendants—the NFL, Giants, Broncos, or Titans—have requested a stay. While there may be circumstances where courts discretionarily stay discovery pending the outcome of a motion to compel arbitration, the matter at bar is far from routine. This litigation has been pending for more than four years, and due to an array of discretionary and automatic stays, the "case [] has been idling at the starting block." Dkt. No. 182 at p. 1. The Court already held that while it was "sensitive to the interest of judicial efficiency," it was ultimately "not persuaded" that a stay would be appropriate at this stage. Id. at p. 6. The Dolphins and Cardinals have not presented any information that the Court overlooked in reaching that conclusion.

---

[7] The Cardinals argue in a footnote that the Wilks-Cardinals contract requires delegation of arbitrability disputes to an arbitrator. However, that argument presupposes a valid forum for such disputes to be decided and an enforceable arbitration agreement to which the delegation clause would attach. That does not exist here.

11

## CONCLUSION

Plaintiffs respectfully request that the Court deny the Moving Defendants' motion for reconsideration and order any other such relief deemed just and proper.

Dated: March 13, 2026
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Douglas H. Wigdor
    Michael J. Willemin
    David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*

- and -

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

By: _____/s/_____
    John Elefterakis
    Nicholas Elefterakis
    Raymond Panek
    Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212 532-1176

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*