**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS, and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,<br><br>  *Plaintiffs*,<br><br>v.<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>  *Defendants*. | Case No. 22-CV871 (VEC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT DENVER BRONCOS' MOTION TO DISMISS</u>**

**ORAL ARGUMENT REQUESTED**

4900-2876-3802.7

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

ARGUMENT .............................................................................................................................. 3

    I.     THIS COURT LACKS PERSONAL JURISDICTION OVER THE
           BRONCOS ........................................................................................................ 3

           A.    Legal Standard ..................................................................................... 4

           B.    There Are No Grounds for General Jurisdiction Over the Broncos .......... 4

           C.    There Are No Grounds for Specific Jurisdiction Over the Broncos .......... 6

    II.    ALL OF MR. FLORES' CLAIMS AGAINST THE BRONCOS ARE
           UNTIMELY AND SHOULD BE DISMISSED WITH PREJUDICE ................. 7

           A.    Legal Standard ..................................................................................... 7

           B.    Mr. Flores' Section 1981 Claim Is Time-Barred ....................................... 8

           C.    Mr. Flores' NYSHRL and NYCHRL Claims Are Time-barred ................ 9

    III.   MR. FLORES' SECTION 1981 CLAIM AGAINST THE BRONCOS
           SHOULD BE DISMISSED FOR FAILURE TO ALLEGE
           DISCRIMINATORY INTENT OR BUT-FOR CAUSATION ........................... 9

           A.    The Legal Standard for Section 1981 Claims ......................................... 10

           B.    Mr. Flores Fails To Allege Any Facts Supporting an Inference of
                Discrimination ..................................................................................... 11

           C.    The Allegation of a "Sham" Interview Is Insufficient To Support
                an Inference of Discrimination ............................................................ 12

    IV.   THE NEW YORK STATE AND CITY CLAIMS ASSERTED AGAINST
           THE BRONCOS SHOULD BE DISMISSED ................................................... 13

           A.    Mr. Flores' NYSHRL and NYCHRL Claims Fail Because He Has
                Not Alleged the Requisite Impact in New York ..................................... 13

           B.    Mr. Flores' Disparate Treatment Claims Against the Broncos Fail
                Because He Has Not Plausibly Alleged Circumstances Giving Rise
                To an Inference That the Broncos Discriminated Against Him
                Because of His Race ............................................................................. 14

           C.    A Claim for Disparate Impact Has Not Been Sufficiently Pled
                Against the Broncos ............................................................................. 16

    V.    THE BRONCOS CANNOT BE HELD LIABLE BASED ON
           COLLECTIVE ALLEGATIONS DIRECTED AT THE OTHER
           DEFENDANTS .............................................................................................. 18

           A.    The SAC Impermissibly Lumps All Defendants Together ....................... 18

           B.    Allegations About the Other Defendants Cannot Be Imputed to the
                Broncos ............................................................................................... 20

CONCLUSION ........................................................................................................................... 22

4900-2876-3802.7

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
677 F.3d 60 (2d Cir. 2012)...................................................................................................9

*Akinsanya v. New York City Health and Hospitals Corp.,*
2017 WL 4049246, (S.D.N.Y. July 28, 2017) (Mag. J. Fox), *adopted by* 2017
WL 4023138 (S.D.N.Y. Sept. 2017) (J. Caproni)............................................................. 14-15

*Anderson v. AMC Cancer Research Ctr.,*
No. 06-CV-1999, 2009 WL 2219263 (D. Colo. July 24, 2009) .............................................9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................... 9, 15-16, 18, 22

*Atuahene v. City of Hartford,*
10 F. App'x 33 (2d Cir. 2001) ....................................................................... 18-19

*Avent v. Progressive Cas. Ins. Co.,*
No. 19-CV-10907, 2021 WL 168500 (S.D.N.Y. Jan. 19, 2021) ...........................................12

*Barrett v. Forest Labs., Inc.,*
39 F. Supp. 3d 407 (S.D.N.Y. 2014)...................................................................................16

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 554 (2007)...................................................................................................9, 15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................................13, 16

*Brown v. Coach Stores, Inc.,*
163 F.3d 706 (2d 1998)...............................................................................................16

*Brown v. Lockheed Martin Corp.,*
814 F.3d 619 (2d Cir. 2016)....................................................................................... 4-5

*Brown v. Montefiore Medical Center,*
2021 WL 1163797 (S.D.N.Y. Mar. 25, 2021) ...................................................................10

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)......................................................................................................6

*Burgis v. N.Y.C. Dep't of Sanitation,*
798 F.3d 63 (2d Cir. 2015)...........................................................................................11

*Butts v. City of New York Dep't of Housing,*
990 F.2d 1397 (2d Cir. 1993)........................................................................................8

*Byrnie v. Town of Cromwell Bd. of Educ.,*
243 F.3d 93 (2d Cir. 2001)...........................................................................................16

*Cardwell v. Davis Polk & Wardwell LLP,*
No. 1:19-CV-10256, 2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020)................................ 21-22

*Charles Schwab Corp. v. Bank of Am. Corp.,*
883 F.3d 68 (2d Cir. 2018)...........................................................................................6

*Chin v. Port. Auth. Of N.Y. & N.J.,*
685 F.3d 135 (2d 2012)...............................................................................................16

*Chloe v. Queen Bee of Beverly Hills, LLC,*
616 F.3d 158 (2d Cir. 2010)........................................................................................4

iii

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
364 F. Supp. 3d 253 (S.D.N.Y. 2019)..................................................................................7

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020).......................................................................................... 10-11

*Conopco, Inc. v. Roll Int'l*,
231 F.3d 82 (2d Cir. 2000)..............................................................................................8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................................... 4-5

*Davis v. Billick*,
No. CIV.A301-CV-1964D, 2002 WL 1398560 (N.D. Tex. June 26, 2002)......................... 5-6

*Donahue v. Clair Car Connection, Inc.*,
736 F. Supp. 2d 294 (D. Me. 2010) ...............................................................................21

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d. Cir. 2013)............................................................................................4

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007)............................................................................................19

*Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) ..........................................................................................3

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004).........................................................................................22

*Felder v. United States Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022) ..........................................................................................21

*Ferro v. Ry. Express Agency, Inc.*,
296 F.2d 847 (2d Cir. 1961)................................................................................... 18-19

*Gaffney v. Dep't of Info. Tech. & Telecomms.*,
536 F. Supp. 2d 445 (S.D.N.Y. 2008).............................................................................12

*George v. Professional Disposables International, Inc.*,
221 F. Supp. 3d 428 (S.D.N.Y. 2016)..............................................................................19

*Gerber v. Riordan*,
649 F.3d 514 (6th Cir.2011) ............................................................................................3

*Ghartey v. St. John's Queens Hosp.*,
869 F.2d 160 (2d Cir. 1989)............................................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)........................................................................................................4

*Griffin v. Sirva Inc.*,
835 F.3d 283 (2d Cir. 2016)..........................................................................................22

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp.3d 453 (S.D.N.Y. 2020)............................................................................2, 7

*Hill v. Major League Soccer LLC*,
2024 WL 3361216 (S.D.N.Y. July 10, 2024) .................................................................18

*Ikedilo v. Statter*,
No. 19-CV-9967, 2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020)........................................12

*John v. Dep't of Info. Tech. & Telecomms.*,
No. 06CIV13119, 2008 WL 4694596 (S.D.N.Y. Oct. 23, 2008) .......................................12

*Jonas v. Estate of Leven*,
116 F. Supp. 3d 314 (S.D.N.Y. 2015)...............................................................................4

4900-2876-3802.7

*Jones v. R.R. Donnelley & Sons Co.*,
  541 U.S. 369 (2004)............................................................................................................8
*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007)..............................................................................................9
*Levy v. NYC Health*
  *+ Hospitals*, 660 F. Supp. 3d 220 228 (S.D.N.Y. March 10, 2023) ......................................13
*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)........................................................................................ 15-16
*Lopez v. Advantage Plumbing & Mechanical Corp.*,
  2016 WL 3950087, (S.D.N.Y. 2016)...................................................................................15
*Lue v. JPMorgan Chase & Co.*,
  No. 16-CV-3207, 2018 WL 1583295 (S.D.N.Y. Mar. 27, 2018), *aff'd*, 768 F.
  App'x 7 (2d Cir. 2019)......................................................................................................21
*Lugo v. City of N.Y.*,
  518 F. App'x 28 (2d Cir. 2013) ............................................................................................9
*Mandala v. NTT Data, Inc.*,
  975 F.3d 202 (2d Cir. 2020)........................................................................................ 16-17
*Mandell v. Cnty. Of Suffolk*,
  316 F.3d 368 (2d Cir. 2003)...............................................................................................16
*Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  7 F.3d 1085 (2d Cir. 1993) (per curiam)............................................................................10
*Mullinix v. Mount Sinai Sch. of Med.*,
  No. 12-CV-8659, 2014 WL 3687217 (S.D.N.Y. July 24, 2014) ............................................12
*Ndremizara v. Swiss Re Am. Holding Corp.*,
  93 F. Supp. 3d 301 (S.D.N.Y. 2015)...................................................................................11
*Parish v. Dupont Specialty Prods. USA, LLC*,
  2025 WL 3647994, (W.D.N.Y. Sept. 30, 2025) (Mag. J. Roemer), *adopted by*
  2025 WL 3643873 (W.D.N.Y. Dec. 5, 2025)........................................................................17
*Patterson v. Cnty. of Oneida*,
  375 F.3d 206 (2d Cir. 2004)...............................................................................................11
*Patterson v. McLean Credit Union*,
  491 U.S. 164 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L.
  No. 102–166, § 101, 105 Stat. 1071–72) ............................................................................8
*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010)...................................................................................................4
*Ramasamy v. Essar Glob. Ltd.*,
  825 F. Supp. 2d 466 (S.D.N.Y. 2011)..................................................................................3
*Reynolds v. Barrett*,
  685 F.3d 193 (2d Cir. 2012)...............................................................................................16
*Reynolds v. School Dist.*
  *No.* 1, 69 F.3d 1523 (10th Cir. 1995).................................................................................9
*Rodriguez v. Beechmont Bus Serv., Inc.*,
  173 F. Supp. 2d 139 (S.D.N.Y. 2001)................................................................................17
*S.G. v. Bank of China Ltd.*,
  No. 23-CV-2866, 2024 WL 1861158 (S.D.N.Y. Apr. 29, 2024) ...........................................19

v

*Sauveur v. Fed'n of Org.*,
    2019 WL 2994449 (E.D.N.Y. July 9, 2019) ............................................................. 11

*Schimkewitsch v. New York Institute of Technology*,
    2020 WL 3000483 (E.D.N.Y. June 4, 2020) ............................................................ 17

*Seals v. Marianetti-DesRosiers*,
    No. 521-CV-988, 2022 WL 3153942 (N.D.N.Y. Aug. 8, 2022) ............................. 10

*Senne v. Kansas City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ................................................................... 5-6

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008).................................................................................. 7-8

*Sullivan v. Tagliabue*,
    785 F. Supp. 1076 (D.R.I. 1992) ............................................................................. 5

*Syeed v. Bloomberg L.P.*,
    568 F. Supp. 3d 314 (S.D.N.Y. 2021), *vacated on other grounds*, 2024 WL
    2813563 (2d Cir. 2024)......................................................................................... 16

*Taylor v. N.Y.C. Fresh Mkt.*,
    No. 19-CV-4797, 2020 WL 10356230 (E.D.N.Y. Dec. 23, 2020) ......................... 10

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d. Cir. 2013)................................................................................... 4

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006)................................................................................... 4

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)................................................................................... 6

*United States v. N.Y.C. Dep't of Educ.*,
    407 F. Supp. 3d 365 (S.D.N.Y. 2018)................................................................... 21

*Vangas v. Montefiore Med. Ctr.*,
    823 F.3d 174 (2d Cir. 2016)............................................................................. 13-14

*Vivenzio v. City of Syracuse*,
    611 F.3d 98 (2d Cir. 2010)................................................................................... 15

*Waisome v. Port Auth. of New York & New Jersey*,
    948 F.2d 1370 (2d Cir. 1991)............................................................................... 16

*Walsh v. United Cable Tech. Servs. Corp.*,
    201 F.3d 434 (2d Cir. 1999) (unpublished table decision) ...................................... 13

*Wright v. City of Ithaca*,
    633 F. App'x 63 (2d Cir. 2016) .......................................................................... 8-9

*In re Zinc Antitrust Litig.*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016).................................................................. 19

## STATE CASES

*Hoffman v. Parade Publ'ns*,
    15 N.Y.3d 285 (2010) ...................................................................................... 13-14

*Williams v. N.Y.C. Hous. Auth.*,
    872 N.Y.S.2d 27 (App. Div. 2009)....................................................................... 15

4900-2876-3802.7

## FEDERAL STATUTES

42 U.S.C. § 1981 .......................................................................................... 1, 8-11, 15, 21

## FEDERAL RULES

Fed. R. Civ. P. 8(a)(2) ...................................................................................................9
Fed. R. Civ. P. 12(b)(2) .................................................................................................4
Fed. R. Civ. P. 12(b)(6) ...............................................................................................19

## STATE RULES

N.Y. C.P.L.R. § 214(2) (West 2026) ............................................................................9

## OTHER AUTHORITIES

Jeff Legwold, ABC News, *Denver Broncos' John Elway Responds to Lawsuit, Calls Brian Flores' Allegations 'False and Defamatory*,*' ABC News (Feb. 3, 2022, 11:29 AM), https://abcnews.com/Sports/denver-broncos-john-elway-responds-lawsuit-calls-brian/story?id=82652770 ........................................................2
Jon Heath, *Vance Joseph is the First African-American Head Coach in Broncos History*, USA Today Sports (Jan. 11, 2017, 7:14 PM), https://broncoswire.usatoday.com/story/sports/nfl/broncos/2017/01/11/vance-joseph-first-denver-broncos-african-american-head-coach/79753467007/ ..............................2
NFL.com, *Broncos Exec John Elway Statement: I Interviewed Brian Flores in Good Faith,* (Feb. 3, 2022, 1:16 PM), https://www.nfl.com/news/broncos-exec-john-elway-statement-i-interviewed-brian-flores-in-good-faith ......................................2

4900-2876-3802.7

## PRELIMINARY STATEMENT

Defendant Denver Broncos (the "Broncos") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss, which seeks dismissal of all claims asserted against it in Plaintiff Brian Flores' Second Amended Complaint ("SAC"). (SAC, ECF No. 50). As set forth below, Mr. Flores' claims against the Broncos fail as a matter of law. The Court should dismiss all claims against the Broncos with prejudice.

Mr. Flores' allegations against the Broncos are noticeably sparse. The SAC's only Broncos-specific allegations concern a single interview for the Broncos head coaching position, after which someone other than Mr. Flores was hired. Mr. Flores does not allege that any Broncos representative made any racially discriminatory statements, referred to his race, or indicated in any way that the hiring decision was motivated by race. Instead, he relies only on his own speculative conclusions and generalized allegations.

The Broncos' Motion should be granted for multiple independent reasons. First, this Court lacks personal jurisdiction over the Broncos, a Delaware limited liability company headquartered in Colorado. The SAC fails to allege any contacts between the Broncos and New York sufficient to support either general or specific jurisdiction.

Second, even if the Court had jurisdiction over the Broncos, all of Mr. Flores' claims are time-barred, as the alleged "sham interview" occurred on January 5, 2019. This action was filed in February 2022, outside the applicable limitations period, which, at most, extends only three years.

Third, even if the claims against the Broncos had been timely filed (which they were not), they are subject to dismissal because Mr. Flores has failed to state a claim under 42 U.S.C. § 1981 ("Section 1981") or the New York State and City Human Rights Laws. His conclusory and

1

speculative allegations do not support a plausible inference of discriminatory intent or establish

that race was the but-for cause of the hiring decision relevant to the Broncos-specific allegations.

Finally, the SAC's collective allegations against the "Defendants" cannot save the claims

against the Broncos. There are no factual assertions to sufficiently support a single enterprise

theory or an allegation that the Broncos acted as a joint employer over the job candidates or

personnel of other football clubs.  Nor are there factual allegations demonstrating a basis to extend

liability against the Broncos for the other Defendants' alleged conduct or inaction.

## FACTUAL BACKGROUND[1]

The SAC is a sprawling complaint asserting claims against multiple defendants on behalf

of putative class members. Relevant to the Broncos' Motion to Dismiss ("Motion"), Mr. Flores

asserts claims against the Broncos arising from an interview for the Broncos' head coaching

position that occurred in January 2019. (SAC ¶ 201).

Specifically, "in 2019 Mr. Flores was scheduled to interview with the Denver Broncos" for

the head coach position. (SAC ¶ 201). The interview took place with "the Broncos' then-General

Manager, John Elway, President and Chief Executive Officer, Mr. Ellis, and others." (SAC ¶ 202).

Mr. Flores alleges that the interviewers "showed up an hour late to the interview," "looked

---

[1] The Factual Background is based on the allegations contained in the SAC, which are assumed to be true solely for purposes of this Motion, and, where applicable, publicly available records and documents integral to Mr. Flores' claims. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp.3d 453, 463 (S.D.N.Y. 2020). Although the allegations are assumed true only for purposes of the Broncos' Motion, the Broncos vigorously dispute them. The Broncos have repeatedly described Mr. Flores' allegations concerning the January 5, 2019 interview as "false and defamatory," stating that the interviewers were "prepared, ready and fully engaged," and denying any bad-faith or sham-interview characterization. *See, e.g.*, NFL.com, *Broncos Exec John Elway Statement: I Interviewed Brian Flores in Good Faith,* (Feb. 3, 2022, 1:16 PM), https://www.nfl.com/news/broncos-exec-john-elway-statement-i-interviewed-brian-flores-in-good-faith; Jeff Legwold, ABC News, *Denver Broncos' John Elway Responds to Lawsuit, Calls Brian Flores' Allegations 'False and Defamatory,'* ABC News (Feb. 3, 2022, 11:29 AM), https://abcnews.com/Sports/denver-broncos-john-elway-responds-lawsuit-calls-brian/story?id=82652770. The Broncos further deny that Mr. Flores was discriminated against on the basis of race; in fact, the vacancy at issue was to fill the Broncos' head coach position, which previously had been held by Vance Joseph.  *See* Jon Heath, *Vance Joseph is the First African-American Head Coach in Broncos History*, USA Today Sports (Jan. 11, 2017, 7:14 PM), https://broncoswire.usatoday.com/story/sports/nfl/broncos/2017/01/11/vance-joseph-first-denver-broncos-african-american-head-coach/79753467007/

4900-2876-3802.7

completely disheveled," and "it was obvious that they had been drinking heavily the night before." (SAC ¶¶ 202–03). Shortly after the interview, "Vic Fangio, a white man, was hired to be the Head Coach of the Broncos." (SAC ¶ 205). Based on "the substance of the interview," Mr. Flores speculatively concluded that he "was interviewed only because of the Rooney Rule"[2] and that "the Bronco's [sic] never had any intention to consider him as a legitimate candidate for the job." (SAC ¶ 204). Notably, Mr. Flores does not allege that any Broncos representative made any racially discriminatory statements to him, referred to his race in any manner, or indicated in any way that the Broncos' decision was motivated by his race.

Mr. Flores alleges that he "is a Black man and a resident of the State of Minnesota." (SAC ¶ 33). As acknowledged in the SAC, the Broncos "are headquartered at 13655 Broncos Parkway, Englewood, Colorado 80112." (SAC ¶ 39).

ARGUMENT

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER THE BRONCOS

This Court lacks personal jurisdiction over the Broncos because Mr. Flores has failed to allege facts sufficient to establish either general or specific jurisdiction.[3]

---

[2] The "Rooney Rule" is named after former Pittsburgh Steelers President Dan Rooney, who headed the NFL's Committee on Workplace Diversity. See SAC ¶ 118. According to the SAC, based on that Committee's recommendations, a commitment was made in December 2022 to "interview minority candidates for every Head Coach job opening (with limited exceptions)." SAC ¶ 118. The Rooney Rule, however, relates to interview practices; it does not mandate any particular hiring outcome. Since its passage, the Rooney Rule has been amended several times. See SAC ¶ 119. It now applies to General Manager and other front office positions, as well as Assistant Head Coach and Coordinator positions, and teams are required to "interview two minority Head Coach candidates, and at least one in-person." SAC ¶ 119.

[3] Courts have held that "[a] motion to dismiss or stay in favor of arbitration is not a Rule 12 motion or a responsive pleading that shows the defendant has 'acceded to the district court's jurisdiction' and thus does not waive the right to later move to dismiss for lack of personal jurisdiction." *Ramasamy v. Essar Glob. Ltd.*, 825 F. Supp. 2d 466, 467 n.1 (S.D.N.Y. 2011) (citing *Gerber v. Riordan,* 649 F.3d 514, 519 (6th Cir.2011)). *See also Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 529 n.2 (5th Cir. 2019); *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011). The Broncos expressly reserved the right to assert an objection as to personal jurisdiction (ECF No. 47), which properly preserved the issue.

3

## A. Legal Standard

When responding to a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has jurisdiction over the defendant. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). When the motion to dismiss is decided on the basis of the pleadings, the plaintiff must "make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). That showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). In evaluating that showing, the Court "may consider materials outside the pleadings, including affidavits and other written materials." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015). The Court construes the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013). The Court does not, however, "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d. Cir. 2013) (internal quotation marks and citation omitted).

## B. There Are No Grounds for General Jurisdiction Over the Broncos

General jurisdiction can be exercised over a corporate defendant only where it is "fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoted case omitted).

4

Mr. Flores does not allege that the Broncos are incorporated or have their principal place of business in New York. In fact, Mr. Flores acknowledges in his complaint that the Broncos are headquartered in Colorado. (SAC ¶ 39 ("The Denver Broncos are headquartered at 13655 Broncos Parkway, Englewood, Colorado 80112.")). The Broncos also are  not incorporated in New York, as the team is organized as a Delaware limited liability company.[4]

This is not the "exceptional case" where general jurisdiction can be exercised elsewhere. "[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'" *Brown*, 814 F.3d at 629 (quoting *Daimler*, 571 U.S. at 138).

Courts routinely decline to exercise general personal jurisdiction over out-of-state sports teams, notwithstanding allegations that they travel to, earn revenues in, or otherwise do business in the forum state. *See, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1020 (N.D. Cal. 2015) (finding no general personal jurisdiction over out-of-state major league baseball clubs, including the New York Yankees, Chicago White Sox, and others, even though the clubs regularly traveled to California for games, derived revenue there, and conducted extensive scouting and recruiting activities in the state); *Davis v. Billick*, No. CIV.A301-CV-1964D, 2002 WL 1398560, at *5–6 (N.D. Tex. June 26, 2002) (finding no general personal jurisdiction over Baltimore Ravens, even though the Ravens traveled to, earned revenues in, and scouted in Texas); *Sullivan v. Tagliabue*, 785 F. Supp. 1076, 1079–81 (D.R.I. 1992) (holding that occasional travel to Rhode Island, television broadcasts into the state, and receipt of ticket sale revenues were insufficient to establish general personal jurisdiction over the NFL and its member clubs). The fact

---

[4] Declaration of Patrick Smyth in Support of Defendant Denver Broncos' Motion to Dismiss ("Smyth Declaration"), ¶ 2.

that the Broncos are members of an association (i.e., the NFL) that has headquarters in New York is likewise insufficient. *See Senne*, 105 F. Supp. 3d at 1020.

### C. There Are No Grounds for Specific Jurisdiction Over the Broncos

Specific jurisdiction requires satisfaction of three conditions: "First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (quoted case omitted). Mr. Flores' complaint fails to meet these conditions.

First, Mr. Flores fails to plead the "minimum contacts" required for specific jurisdiction. Indeed, far from pleading "minimum contacts," Mr. Flores has pled no contacts at all between New York and the Broncos. As such, he has not alleged that the Broncos purposefully availed themselves of the privilege of doing business in New York, such that they "could foresee being haled into court there," *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) (quoted case omitted), nor that they "purposefully directed their conduct at residents of the forum." *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Just like general jurisdiction, courts have held that sports teams that travel to, earn revenues in, or scout in the forum state do not thereby have sufficient contacts to establish specific personal jurisdiction. *See Davis*, 2002 WL 1398560, at *4–6 (concluding that the court lacked both general and specific jurisdiction over the Baltimore Ravens despite the team's travel to Texas for NFL meetings, use of a Texas-based scout, and receipt of merchandise revenues).

Second, Mr. Flores' claims, as pled, do not arise out of or relate to the Broncos' conduct within New York. The SAC alleges that the interview was conducted by Broncos representatives—John Elway, Joe Ellis, and others—but does not allege where the interview took place. (SAC

6

¶ 202). Importantly, the interview took place in Rhode Island, not New York.[5] Even if Mr. Flores could plead sufficient contacts between the Broncos and New York (which he has not), the decision he challenges (i.e., the decision not to hire him) does not arise out of or relate to any contacts with New York.

Because the Broncos' headquarters is located in Colorado (SAC ¶ 39), Mr. Flores interviewed in Rhode Island, and there are no allegations in the SAC demonstrating that the Broncos' decision not to hire Mr. Flores arose from or was sufficiently connected to any conduct in New York, the exercise of specific jurisdiction over the Broncos in New York would be inappropriate.

## II.   ALL OF MR. FLORES' CLAIMS AGAINST THE BRONCOS ARE UNTIMELY AND SHOULD BE DISMISSED WITH PREJUDICE

Even if this Court had personal jurisdiction over the Broncos (which, as explained above, it does not), all claims asserted against the Broncos are time-barred and must be dismissed.

### A.   Legal Standard

A defendant may raise an affirmative defense on a Rule 12(b)(6) motion if the defense appears on the face of the complaint. *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008); *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989). In addition, the Court may take judicial notice of matters outside the complaint where appropriate. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 263 (S.D.N.Y. 2019). Accordingly, ""[d]ismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . [a statutory bar] as an affirmative defense and it is clear from the face of the complaint, and matters of which

---

[5] Smyth Declaration ¶ 4.

4900-2876-3802.7

the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Staehr*, 547 F.3d at 425 (2d Cir. 2008) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

Here, the face of the SAC and undisputed facts the Court can judicially recognize demonstrate that all claims against the Broncos are untimely. Mr. Flores' claims are based on an alleged failure to hire related to a hiring decision that took place on January 5, 2019.[6]  Although the SAC alleges only that the interview took place "in 2019" (SAC ¶ 201), the Court may take judicial notice of undisputed facts like the date the interview occurred and when the decision to hire someone other than Mr. Flores was announced as disclosed in published news reports, the Broncos' official website, and in other media reports.  The original Complaint was not filed until February 1, 2022. (SAC ¶ 1; Compl., ECF No. 1). As explained below, this was beyond the applicable statutes of limitation.

### B.    Mr. Flores' Section 1981 Claim Is Time-Barred

Mr. Flores's Section 1981 claim against the Broncos is governed by the applicable state statute of limitations, not the four-year federal "catchall" limitations period. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) ("leav[ing] in place the 'borrowed' limitations periods for pre-existing causes of action[.]"); *Wright v. City of Ithaca*, 633 F. App'x 63 (2d Cir. 2016) (explaining failure to hire claims pre-existing claims prior to the 1991 Civil Rights Act) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102–166, § 101, 105 Stat. 1071–72)); *Butts v. City of New York Dep't of Housing*, 990 F.2d 1397, 1411 (2d Cir. 1993).  Accordingly, the state statute of limitations applies to Mr. Flores' Section 1981 failure-to-hire claim.

---

[6] Smyth Declaration ¶¶ 3 & 4.

8

In New York, which is the current forum state for this matter, the applicable limitations period for pre-1991 Section 1981 claims is three years. *See Wright*, 633 F. App'x at 64. In Colorado, which is the situs of the hiring decision, the applicable limitations period is only two years. *See Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995); *Anderson v. AMC Cancer Research Ctr.*, No. 06-CV-1999, 2009 WL 2219263, at *5 n.2 (D. Colo. July 24, 2009). Under either state's limitations period, Mr. Flores' claim is untimely. Accordingly, the Section 1981 claim is time-barred and should be dismissed with prejudice.

### C.    *Mr. Flores' NYSHRL and NYCHRL Claims Are Time-barred*

Mr. Flores' NYSHRL and NYCHRL claims are subject to a three-year limitations period. See N.Y. C.P.L.R. § 214(2) (West 2026); *see also Lugo v. City of N.Y.*, 518 F. App'x 28, 29 (2d Cir. 2013); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). These claims are therefore also time-barred and should be dismissed with prejudice.

### III.    MR. FLORES' SECTION 1981 CLAIM AGAINST THE BRONCOS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE DISCRIMINATORY INTENT OR BUT-FOR CAUSATION[7]

Even if personal jurisdiction over the Broncos existed, and even if Mr. Flores had met the applicable statute of limitations, the Court should dismiss Mr. Flores' claim under 42 U.S.C. § 1981 because he failed to plead facts sufficient to establish that the Broncos acted with an intent

---

[7] To comply with the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If that "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court need not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The Court's task is to assess whether the complaint contains "allegations plausibly suggesting (not merely consistent with)" liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

to discriminate against him on the basis of his race or that race was the but-for cause of the Broncos' decision not to hire him.

### A.    The Legal Standard for Section 1981 Claims

To adequately plead a claim under Section 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).

The Supreme Court has made clear that to adequately plead intentional discrimination under Section 1981, a plaintiff must plausibly allege that race was the but-for cause of the alleged deprivations. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). Accordingly, courts routinely dismiss Section 1981 claims at the pleading stage where plaintiffs fail to allege facts supporting an inference of discriminatory intent or that race was a but-for cause of the alleged adverse action. *See Brown v. Montefiore Medical Center*, 2021 WL 1163797, at *7) (S.D.N.Y. Mar. 25, 2021) (dismissing plaintiff's Section 1981 claim where plaintiff failed to allege facts showing defendants acted with discriminatory intent); *Seals v. Marianetti-DesRosiers*, No. 521-CV-988, 2022 WL 3153942, at 7 (N.D.N.Y. Aug. 8, 2022) (granting motion to dismiss where plaintiff failed to allege "facts from which the court could infer that [she] was in fact subject to racial discrimination, that any of the Defendants. . . . had the *intent* to discriminate against her based on race, or that race was a but-for cause of any adverse action."); *Taylor v. N.Y.C. Fresh Mkt.*, No. 19-CV-4797, 2020 WL 10356230 (E.D.N.Y. Dec. 23, 2020) (acknowledging that following *Comcast*, "plaintiff[s] now

10

bear[] the burden of plausibly alleging that race was a but-for cause of [their] injury even at the pleading stage.") (citing *Comcast*, 589 U.S. at 331); *accord, Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).

### B. Mr. Flores Fails To Allege Any Facts Supporting an Inference of Discrimination

Mr. Flores does not allege with any specificity that the Broncos failed to hire him because of his race or that they would have hired him but for his race. Mr. Flores' only allegation connecting the Broncos' hiring decision to race is that "Vic Fangio, a white man, was hired to be the Head Coach of the Broncos." (SAC ¶ 205). This allegation is insufficient to support an inference that the failure to hire Mr. Flores was because of his race. *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (dismissing Section 1981 claim where complaint alleged "generally" that plaintiffs were "passed over" in favor of less qualified White individuals, but "fail[ed] to provide meaningful specifics" suggesting "discriminatory intent"). *See also Sauveur v. Fed'n of Org.*, 2019 WL 2994449, at *4-6 (E.D.N.Y. July 9, 2019) (dismissing Title VII claim where plaintiff alleged that defendant hired five white coworkers but did not allege their qualifications or facts showing they were less qualified than plaintiff); *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015) (The plaintiff's assertion that "candidates selected or hired by [defendant] were younger or less qualified than [him] without including details about "their experience, age, or qualifications" was "entire conclusory," "naked," and "devoid of further factual enhancement," and therefore could not survive a motion to dismiss.).

Notably absent from the SAC is any allegation that a Broncos representative made racially discriminatory statements to Mr. Flores or referred to his race in any manner, nor does the SAC contain facts demonstrating Mr. Flores was more qualified for the position than Mr. Fangio, the candidate selected. Courts in this Circuit routinely dismiss Section 1981 claims where plaintiffs

fail to allege factually specific racially discriminatory statements or conduct. *See, e.g.*, *Avent v. Progressive Cas. Ins. Co.*, No. 19-CV-10907, 2021 WL 168500, at *4 (S.D.N.Y. Jan. 19, 2021) (dismissing Section 1981 claim where plaintiff's allegation that defendants made "disparaging remarks of his race" lacked "any detail about the contents of the alleged remarks" sufficient to permit an inference of discriminatory motive); *Ikedilo v. Statter*, No. 19-CV-9967, 2020 WL 5849049, at *8-9 (S.D.N.Y. Sept. 30, 2020) (dismissing Section 1981 discrimination claims where plaintiff "ha[d] not alleged that Defendants made a single disparaging or derogatory comment with respect to her race" and failed to allege facts beyond conclusory assertions of discriminatory intent).

## C.    The Allegation of a "Sham" Interview Is Insufficient To Support an Inference of Discrimination

Mr. Flores' allegation that the Broncos subjected him to a "sham" interview is likewise insufficient to support an inference of discriminatory intent. While Mr. Flores alleges he was interviewed "due to his race" to allegedly "check off" the requirements under the Rooney Rule, this allegation does not establish that he was denied the position because of his race, much less that he would have been hired but for his race.

Courts have consistently held that preselection of another candidate prior to a plaintiff's interview, standing alone, does not give rise to an inference of discrimination. *See John v. Dep't of Info. Tech. & Telecomms.*, No. 06CIV13119, 2008 WL 4694596, at *5 (S.D.N.Y. Oct. 23, 2008) (dismissing plaintiff's Title VII discrimination claim where "pre-selection alone [was] not enough to raise an inference of discrimination."); *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 465 (S.D.N.Y. 2008) (finding that plaintiff failed to "establish[] a connection between defendants' alleged preselection and their alleged unlawful discrimination."). *See also Mullinix v. Mount Sinai Sch. of Med.*, No. 12-CV-8659, 2014 WL 3687217, at *15 (S.D.N.Y.

12

July 24, 2014) (claim of pretextual interview alone not enough to create inference of discrimination). In addition, allegations of claimed unprofessionalism are insufficient to support an inference of unlawful discrimination. *See Walsh v. United Cable Tech. Servs. Corp.*, 201 F.3d 434 (2d Cir. 1999) (unpublished table decision) (interview that "lacked substance and professionalism" does not on its own demonstrate discrimination).

In sum, without specific allegations of discriminatory intent, there is not enough to "nudge[]" Mr. Flores' claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Levy v. NYC Health + Hospitals*, 660 F. Supp. 3d 220 228 (S.D.N.Y. March 10, 2023) (granting motion to dismiss where complaint lacked factual allegations to link the alleged actions to discriminatory intent based on race) (J. Caproni).

## IV.    THE NEW YORK STATE AND CITY CLAIMS ASSERTED AGAINST THE BRONCOS SHOULD BE DISMISSED

Mr. Flores asserts disparate treatment and disparate impact claims against the Broncos under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (SAC ¶¶ 396–400, 401-404, 405–09, 410–13).  Even if they were not time-barred as outlined above, these claims would have to be dismissed because Mr. Flores failed to allege the requisite impact in New York and failed to plead facts sufficient to state either a disparate treatment or disparate impact claim under either law.

### A.    Mr. Flores' NYSHRL and NYCHRL Claims Fail Because He Has Not Alleged the Requisite Impact in New York

A nonresident bringing a claim under the NYSHRL "must plead and prove that the alleged discriminatory conduct had an impact in New York." *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291 (2010). Similarly, a nonresident bringing a claim under the NYCHRL must show that "the impact of the employment action [was] felt by the plaintiff in [New York City]." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016). This is because "[t]he NYCHRL is

13

intended to cover people 'who work in the city.'" *Id.* at 182 (quoting *Hoffman*, 15 N.Y.3d at 291).

As such, when a plaintiff is "neither a resident of, nor employed in, the City or State of New York"

and the employment action at issue had only "a tangential connection to the city and state[,]"

dismissal of claims asserted under the NYCHRL and NYSHRL is appropriate. *See Hoffman*, 15

N.Y.3d at 292 (affirming dismissal for lacking impact in the City or State of New York even

though the nonresident plaintiff attended quarterly meetings in NYC, was managed from NYC, all

corporate contracts were negotiated through the NYC office and the decision to terminate plaintiff

was made and executed in NYC).

Mr. Flores does not allege that he is a resident of New York City or any city in New York;

rather, he alleges that he "is a Black man and a resident of the State of Minnesota." (SAC ¶ 33).

Mr. Flores fails to plead how any of the allegedly discriminatory conduct he attributes to the

Broncos had an impact on New York. The Broncos are headquartered in Colorado—not New York

or New York City. (SAC ¶ 39). Mr. Flores does not allege that the Broncos conducted business in

New York or New York City, much less engaged in the challenged action in New York or

New York City. *See, e.g.*, *Vangas*, 823 F.3d at 183 (finding the NYCHRL did not apply where

plaintiff "worked in Yonkers, was supervised in Yonkers, and was terminated in Yonkers").

Mr. Flores' NYSHRL and NYCHRL claims against the Broncos should therefore be dismissed for

failure to allege the requisite impact in the State or City of New York.

### B.    *Mr. Flores' Disparate Treatment Claims Against the Broncos Fail Because He Has Not Plausibly Alleged Circumstances Giving Rise To an Inference That the Broncos Discriminated Against Him Because of His Race*

To survive a motion to dismiss a race discrimination claim under the NYSHRL,[8] the

plaintiff must plead facts in the complaint that "'give plausible support to a minimal inference of

---

[8] Claims for disparate treatment arising before October 2019 under the NYSHRL are analyzed under the same standards as Title VII. *Akinsanya v. N.Y.C. Health and Hosps. Corp.*, No. 16-CV-3332, 2017 WL 4049246, at *6

discriminatory motivation.'" *Akinsanya v. N.Y.C. Health & Hosps. Corp.*, No. 16-CV-3332, 2017 WL 4049246, *6 (S.D.N.Y. July 28, 2017) (Mag. J. Fox), *adopted by, Akinsanya v. N.Y.C. Health & Hosps., Corp.*, No. 16-CV-3332, 2017 WL 4023138 (S.D.N.Y. Sept. 12, 2017) (J. Caproni) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" are not enough. *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In evaluating an NYCHRL claim, the court must still "focus on whether a plaintiff has been subjected to 'unequal treatment,' based on the plaintiff's lawfully protected characteristic(s)." *Akinsanya,* 2017 WL 4049246, at *8 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (App. Div. 2009)). A prima facie failure-to-hire claim requires, among other elements, that the denial occurred under "circumstances that give rise to an inference of invidious discrimination." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). Accordingly, similar to federal and state discrimination claims, where a complaint "fail[s] to make factual allegations tending to suggest, plausibly, that a reasonable inference could be drawn that" the defendant "violat[ed the] NYCHRL's proscription against . . . race" discrimination, the complaint may be dismissed for failing to state a claim under the NYCHRL. *Akinsanya*, 2017 WL 4049246, at 8. *See also Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15-CV-4507, 2016 WL 3950087, at *2 (S.D.N.Y. July 19, 2016) (granting motion to dismiss, finding "complaint fail[ed] to state a claim for racial discrimination under 42 U.S.C. § 1981, NYSHRL, and NYCHRL" because the plaintiffs "provided nothing more than "'a legal conclusion couched as a factual allegation'" and thus "failed to plausibly allege" the required "minimal support for an inference of discrimination[.]") (quoting *Twombley*, 550 U.S. at 555).

---

(S.D.N.Y. July 28, 2017) (Mag. J. Fox), *adopted by, Akinsanya v. N.Y.C. Health and Hosps. Corp.*, No. 16-CV-33322017 WL 4023138 (S.D.N.Y. Sept. 2017) (J. Caproni).

15

Mr. Flores' allegations—that the interviewers "showed up an hour late to the interview," "looked completely disheveled," and appeared to have "been drinking heavily the night before" (SAC ¶¶ 202–03); his conclusory assertion that the Broncos conducted the interview "only because of the Rooney Rule" (SAC ¶ 204); and the fact that "Vic Fangio, a white man, was hired" (SAC ¶ 205)—are insufficient to raise an inference of discrimination sufficient to defeat the Broncos' Motion to Dismiss. Specifically, Mr. Flores does not factually, or even generally, allege that Vic Fangio was "similarly situated in all material respects" to him. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Mandell v. Cnty. Of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003)). Nor does he allege any racially discriminatory statements by any Broncos representatives. Mr. Flores' NYSHRL and NYCHRL claims therefore fail under *Iqbal* and *Twombly*.

### C.    A Claim for Disparate Impact Has Not Been Sufficiently Pled Against the Broncos

To state a prima facie case of disparate impact discrimination, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."[9] *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 428 (S.D.N.Y. 2014) (quoting *Chin v. Port. Auth. Of N.Y. & N.J.*, 685 F.3d 135, 151 (2d 2012)) (accord *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020)). More specifically, plaintiffs must show "that a facially neutral employment policy or practice has a significant disparate impact" on the protected class. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d 1998)). S*ee, e.g.*, *Reynolds v. Barrett*,

---

[9] For disparate impact claims under the NYSHRL that accrued before October 11, 2019, the same pleading standards for Title VII disparate impact claims apply. *See Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314 (S.D.N.Y. 2021), *vacated on other grounds*, 2024 WL 2813563 (2d Cir. 2024) (quoting *Waisome v. Port Auth. of New York & New Jersey*, 948 F.2d 1370, 1374 (2d Cir. 1991)). Although disparate impact claims under the NYCHRL are to be construed more liberally than Title VII, like Title VII, a plaintiff alleging disparate treatment under the NYCHRL and the amended NYSHRL still "must establish 'that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of [the NYCHRL]'" or amended NYSHRL. *Id.* (internal quotation marks and citation omitted).

16

685 F.3d 193, 201 (2d Cir. 2012) ("Disparate impact claims are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group.") (internal citations and quotations omitted).

To survive a motion to dismiss, a plaintiff must identify a specific, "facially neutral policy" that causes a disparate impact on a protected group. *Mandala*, 975 F.3d at 217. *See also Parish v. Dupont Specialty Prods. USA, LLC*, 2025 WL 3647994, at *7 (W.D.N.Y. Sept. 30, 2025) (Mag. J. Roemer), *adopted by,* No. 24-CV-1040, *2*025 WL 3643873 (W.D.N.Y. Dec. 5, 2025) (finding complaint's "alleged policy or practice of soliciting, encouraging, and assisting only white employees to apply for managerial positions, which plaintiffs refer to as 'white recruitment[,]'" was not a "neutral policy" sufficient to support a disparate impact claim under the NYSHRL making dismissal of the complaint for failing to state a claim appropriate); *Schimkewitsch v. New York Institute of Technology*, 2020 WL 3000483, at *4 (E.D.N.Y. June 4, 2020) ("Plaintiff has entirely failed to identify a significant disparate impact of a facially neutral policy[;] [t]hus, the gender discrimination claims" alleging a disparate impact under the NYSHRL "must be dismissed.").

Here, Mr. Flores' disparate impact claims against the Broncos under the NYSHRL and NYCHRL fail because he does not challenge "a particular employment practice" maintained by the Broncos as required to properly state a claim under either law. Specifically, as to the Broncos, Mr. Flores does not identify any particular employment practice that caused a disparate impact. The SAC alleges only generically that Defendants "have engaged in hiring and retention policies, practices and/or processes which have had a discriminatory impact" on the basis of race. (SAC ¶ 411). This generic allegation is insufficient. *See Rodriguez v. Beechmont Bus Serv., Inc.*, 173

17

F. Supp. 2d 139, 148 (S.D.N.Y. 2001) (dismissing disparate impact claim where "Plaintiff failed to adequately identify a neutral policy that is alleged to have a disproportionate impact").

Moreover, the only "policy" identified in the SAC is the NFL's Rooney Rule. This policy is intended to provide for inclusion, not exclusion, thereby preventing it from being a policy that could support a disparate impact claim. *See Hill v. Major League Soccer LLC*, 2024 WL 3361216, at *6 (S.D.N.Y. July 10, 2024). But, in any event, the Rooney Rule is not a Broncos policy, as readily admitted throughout the SAC. Because the SAC identifies no Broncos policy in support of Mr. Flores' disparate impact claim, the Court should dismiss that claim against the Broncos.

## V.    THE BRONCOS CANNOT BE HELD LIABLE BASED ON COLLECTIVE ALLEGATIONS DIRECTED AT THE OTHER DEFENDANTS

For the reasons set forth above, all claims specifically directed at the Broncos must be dismissed. The SAC's remaining allegations directed at the "NFL" or "Defendants" collectively do not provide any independent basis for keeping the Broncos in this case. Accordingly, even if claims against the other Defendants were to survive, the claims against the Broncos must still be dismissed because there are no facts supporting any theory that would allow liability to be imposed on the Broncos based on the alleged action or inaction of the other Defendants.

### A.    *The SAC Impermissibly Lumps All Defendants Together*

When more than one defendant is named in a lawsuit, the complaint must "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). *See also Iqbal*, 556 U.S. at 676 (making clear that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). This standard cannot be satisfied "[b]y lumping all the defendants together" when asserting claims against multiple defendants. *See Atuahene*, 10

18

F. App'x at 34. Instead, a complaint should provide "specification of any particular activities by any particular defendant." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Even where "separate legal entities may have a corporate affiliation" that fact "does not alter this pleading requirement." *See S.G. v. Bank of China Ltd.*, No. 23-CV-2866, 2024 WL 1861158, at *2 (S.D.N.Y. Apr. 29, 2024) (quoting *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016)).

Consistent with this standard, it is appropriate to reject a complaint as failing to state a claim when it combines "all the defendants together" and "provid[es] no factual basis to distinguish their conduct." *Atuahene*, 10 F. App'x at 34 (affirming dismissal under Rule 12(b)(6)); *see also Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961) (claims alleging discrimination by union and employer were properly dismissed against the employer even though they were sufficiently asserted against the union because, unlike the claims against the union, "[t]he complaint d[id] not allege that [the employer] acted from a motive to discriminate or with knowledge that the Brotherhood was discriminating."); *George v. Prof. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 453 (S.D.N.Y. 2016) (dismissing NYHRL discrimination claim against individual defendants where complaint alleged only that collectively the defendants "were all part of [a] 'plot' to remove [the] plaintiff from his position" as "the Amended Complaint contain[ed] no allegations that would tie [the individual defendants] in any way to any discrimination" or awareness of any such conduct on the part of any other defendant, and thus the Amended Complaint did not allege that the individual defendants "actually participated" in any conduct giving rise to the claims asserted); *S.G. v. Bank of China Ltd.*, No. 23-CV-2866, 2024 WL 1861158, at *2 (S.D.N.Y. Apr. 29, 2024) (same).

19

4900-2876-3802.7

Here, the SAC repeatedly attempts to impermissibly lump all Defendants together and to hold them all accountable for the others' alleged actions or inactions. The SAC repeatedly attributes alleged misconduct to "Defendants" collectively, alleging solely, in conclusory fashion, that "[e]ach Defendant has actually participated in and aided and abetted the discriminatory conduct of the other Defendants." (SAC ¶¶ 393, 398, 407). Similarly, the SAC alleges in conclusory and collective fashion that "Defendants have engaged in hiring and retention policies, practices and/or processes which have had a discriminatory impact." (SAC ¶ 411). Yet the Broncos are mentioned only in connection with a single hiring decision. (SAC ¶¶ 200–05). The purported claims against the Broncos related to this one hiring event fail for the reasons set forth above. The SAC does not allege any facts to plausibly support an inference that the Broncos knew about or participated in any other alleged hiring practices, compensation structures, or termination decisions challenged elsewhere in the SAC and relating to any other Defendants. Rather, the SAC concedes that each club uses their own "subjective" hiring practice. (SAC ¶ 120).

**B.     *Allegations About the Other Defendants Cannot Be Imputed to the Broncos***

The SAC's reliance on allegations concerning the NFL, including references to the Rooney Rule and assertions that the league failed to impose uniform hiring standards or oversight, does not salvage the claims against the Broncos. Those allegations, if anything, confirm the absence of centralized control, as the SAC's own allegations acknowledge that the NFL lacked control over individual teams' hiring decisions.

Indeed, throughout the SAC, Flores alleges that each of the "NFL teams use[s] a discretionary, subjective hiring practice when selecting Head Coaches," "the overall process is by its very nature subjective and discretionary[,]" and that the individual teams interview, hire, and pay coaches, not the NFL. (SAC ¶ 120; *see also* ¶¶ 126, 142, 155). These allegations necessarily concede that centralized control over hiring does not exist.

20

4900-2876-3802.7

The absence of league-wide mandates cannot be transformed into a basis for imposing liability on an individual team that is not alleged to have engaged in any unlawful conduct itself. Similarly, because the SAC does not assert that the Broncos exerted significant control over the other teams' employment decisions, or that it played any role in those decisions, neither the SAC's allegations concerning the single enterprise and joint employer doctrines state a claim for relief against the Broncos. *See Felder v. United States Tennis Ass'n*, 27 F.4th 834, 845 (2d Cir. 2022) (dismissing claim that defendant was liable as a joint employer because the complaint did not plausibly allege the defendant "exerted significant control over the terms and conditions" of the plaintiff's employment or that it had "any control over [the plaintiff's] hiring or firing"); *Donahue v. Clair Car Connection, Inc.*, 736 F. Supp. 2d 294, 314 (D. Me. 2010) (finding that "despite the plaintiff's evidence of centralized management and control of the three" defendants, all of which were separate legal entities, and other evidence to support the existence of a single employer under an integrated enterprise theory, two of the three defendants (which were sister companies) had no active participation in the employment decision relevant to the plaintiff's termination; as a result, those two defendants could not be held liable for the alleged discrimination as a matter of law and were therefore dismissed).

Nor can the Broncos be held liable for "aiding and abetting" other defendants' alleged discrimination. Section 1981 does not recognize aiding and abetting liability. *See Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256, 2020 WL 6274826, at *41 (S.D.N.Y. Oct. 24, 2020); *Lue v. JPMorgan Chase & Co.*, No. 16-CV-3207, 2018 WL 1583295, at *10 (S.D.N.Y. Mar. 27, 2018), *aff'd*, 768 F. App'x 7 (2d Cir. 2019). And while aiding and abetting claims can be asserted under the NYSHRL and NYCHRL,[10] liability arises only where the claimed aider and

---

[10]"The same standards of analysis used to evaluate aiding and abetting claims applies to claims brought under both the NYCHRL and the NYSHRL because the language of the two laws is 'virtually identical.'" *United States v. N.Y.C.*

abettor "'actually participate[] in the conduct giving rise to [the] discrimination claim[.]'" *Cardwell*, 2020 WL 6274826 at \*41 (dismissing claims against defendants alleged to have aided and abetted the plaintiff's employer in discriminating against him because the complaint did "not plausibly allege that the Additional Defendants 'actually participated in the conduct giving rise to the claim of discrimination.'") (quoting *Griffin v. Sirva Inc.*, 835 F.3d 283, 293 (2d Cir. 2016)).

In the instant action, the contentions specific to the Broncos, which pertain to an alleged failure to hire Flores for one head coaching position, fail for the reasons set forth in detail above. The remaining allegations consist of nothing more than conclusory assertions and generalized allegations about "Defendants" collectively, without implicating the Broncos in such alleged actions or failures to act. As the Supreme Court has made clear, where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is required. *Iqbal*, 556 U.S. at 679. That standard applies to each defendant individually. Because insufficient allegations exist in the SAC to state a claim against the Broncos, the Broncos must be dismissed.

### CONCLUSION

For the foregoing reasons, Defendant Denver Broncos respectfully requests that the Court grant its Motion and dismiss all claims asserted against it in the SAC with prejudice.

Dated:  April 17, 2026

---

*Dep't of Educ.*, 407 F. Supp. 3d 365, 401 (S.D.N.Y. 2018) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)).

4900-2876-3802.7

**KUTAK ROCK LLP**

By: */s/ Reid A. Page*
Reid A. Page (admitted *pro hac vice*)
Marcia A. Washkuhn (admitted *pro hac vice*)
Tara A. Leesar (admitted *pro hac vice*)
2001 16th Street, Suite 1800
Denver, Colorado 80202
Telephone: (303) 297-2400
reid.page@kutakrock.com
 marcia.washkuhn@kutakrock.com
 tara.leesar@kutakrock.com

*Attorneys for Defendant Denver Broncos
Football Club, d/b/a Denver Broncos*

23

4900-2876-3802.7

24

**<u>Certificate of Compliance with Word Count</u>**

The undersigned counsel hereby certifies, pursuant to Section 4.B.i of Judge Caproni's Individual Practice Standards in Civil Cases, that the foregoing Memorandum of Law in Support of Defendant Denver Broncos' Motion to Dismiss complies with the Court's word-count limitations. This memorandum contains **7,593** words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate.

Dated: April 17, 2026

        **KUTAK ROCK LLP**

        */s/ Reid A. Page*
        Reid A. Page (admitted *pro hac vice*)

4900-2876-3802.7