UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated<br><br>          Plaintiffs,<br><br>          -v.-<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>          Defendants. | Case No. 1:22-cv-00871-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS'
MOTION TO DISMISS CLAIMS IN THE SECOND AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

REYNOLDS FRIZZELL LLP
1100 Louisiana, Suite 3500
Houston, Texas 77002
(713) 485-7200

*Attorneys for Defendant Houston NFL
Holdings, L.P. d/b/a Houston Texans*

Dated: April 17, 2026

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT................................................................................................. 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

    I.    Mr. Flores Cannot Establish Personal Jurisdiction Over the Houston Texans.................... 5

        A. Mr. Flores cannot establish general personal jurisdiction over the Houston Texans. ....... 7

        B. Mr. Flores cannot establish specific personal jurisdiction over the Houston Texans...... 10

    II.    Venue is Improper as to the Houston Texans. .................................................................. 13

    III.    The Complaint Does Not State a Claim Against the Houston Texans Under Title VII or
        Section 1981.................................................................................................................. 16

        A. The Complaint does not plead that retaliation was a "but for" cause of the Houston
           Texans' decision not to hire Mr. Flores for purposes of the federal retaliation claims. .. 16

        B. The Complaint does not attempt to allege any intentional discrimination by the Houston
           Texans for purposes of the federal disparate treatment claims....................................... 19

        C. The Complaint does not attempt to identify a Houston Texans policy creating a racial
           disparity for purposes of the federal disparate impact claims. ....................................... 22

    IV.    The Complaint Does Not State a Claim Against the Houston Texans Under the NYSHRL
        or NYCHRL................................................................................................................... 23

CONCLUSION................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. U.S. Bank, NA*,
No. 12-CV-4640 (KAM) (LB), 2013 WL 5437060 (E.D.N.Y. Sept. 27, 2013)......................15

*Al-Ahmed v. Twitter, Inc.*,
553 F. Supp. 3d 118 (S.D.N.Y. 2021)...........................................................................8, 10, 12

*Am. Guarantee & Liab. Ins. Co. v. Arch Ins. Co.*,
No. CV 17-582, 2017 WL 4842413 (W.D. Pa. Oct. 26, 2017) ..................................................8

*Arthur v. Orchestrate Bus. LLC*,
No. 24-CV-02985 (MMG), 2025 WL 2201067 (S.D.N.Y. Aug. 1, 2025) ...........................8, 9

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)...............................................................................................................16

*Bamba v. United States Dep't of Homeland Sec.*,
No. 22-CV-7407 (LJL), 2024 WL 3924810 (S.D.N.Y. Aug. 23, 2024)..................................18

*Bank of Am., N.A. v. Hensley Properties, LP*,
495 F. Supp. 2d 435 (S.D.N.Y. 2007)........................................................................................9

*Barrett v. Forest Laboratories, Inc.*,
39 F. Supp. 3d 407 (S.D.N.Y. 2014)........................................................................................21

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)...............................................................................................................16

*Bell v. Classic Auto Grp., Inc.*,
No. 04-cv-0693 (PKC), 2005 WL 659196 (S.D.N.Y. Mar. 21, 2005) .............................14, 15

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021)..................................................................5, 10, 11, 12

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)..................................................................................5, 6, 10, 11

*Brown v. Lockhead Martin Corp.*,
814 F.3d 619 (2d Cir. 2016).........................................................................................6, 8

*Burgis v. N.Y.C. Dep't of Sanitation*,
798 F.3d 63 (2d Cir. 2015).........................................................................................19, 20

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)..................................................................................................18

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    589 U.S. 327 (2020)..................................................................................................19

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................................7, 8

*Davis v. Billick*,
    No. CIV. A.301-CV-1964D, 2002 WL 1398560 (N.D. Tex. June 26, 2002)............9

*Detroit Coffee Co., LLC v. Soup for You, LLC*,
    No. 16-CV-9875 (JPO), 2018 WL 941747 (S.D.N.Y. Feb. 16, 2018) ...................13

*Diaz v. Poly Prep Day Sch.*,
    No. 21-CV-06611 (BMC), 2022 WL 2803259 (E.D.N.Y. July 18, 2022) ..............19

*Doheny v. Int'l Business Machines, Corp.*,
    714 F. Supp. 3d 342 (S.D.N.Y. 2024)................................................................22, 23

*Dudley v. N. Cent. Regional Office*,
    No. 09-2027-JWL, 2009 WL 2914104 (D. Kan. Sept. 8, 2009)................................6

*Farmer v. Shake Shack Enterprises, LLC*,
    473 F. Supp. 3d 309 (S.D.N.Y. 2020)....................................................................21

*Fitchett v. City of New York*,
    18-CV-8144 (PAE), 2021 WL 964972 (S.D.N.Y. Mar. 15, 2021).........................24

*Francis v. Kings Park Manor, Inc.*,
    992 F.3d 67 (2d Cir. 2021)......................................................................................19

*Frazier v. Stanley*,
    No. 16 Civ. 804 (RJS), 2018 WL 11585450 (S.D.N.Y. Nov. 29, 2018) ...............22

*G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc.*,
    No. 97-CV-0730 (LAP), 1998 WL 78292 (S.D.N.Y. 1998) ..................................13

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962)................................................................................................15

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................................7

*Griffin v. Doyle*,
    No. 12-CV-4359 (JS) (GRB), 2014 WL 2945676 (E.D.N.Y. June 30, 2014)........15

*Grootonk v. Labrie Envtl. Group, LLC*,
  No. 8:22-CV-01868-FWS-ADS, 2023 WL 5420299 (C.D. Cal. July 20, 2023).......................8

*Hoffman v. Parade Publications*,
  15 N.Y.3d 285 (2010) ...................................................................................................23

*Ikedilo v. Statter*,
  No. 19-CV-9967 (RA), 2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020) ...........................20, 21

*Jones v. Ponant USA LLC*,
  No. 19 CIV. 3041 (NRB), 2020 WL 3172778 (S.D.N.Y. June 15, 2020)................................3

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
  77 N.Y.2d 28 (1990) .......................................................................................................7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)...............................................................................................6

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015).................................................................................16, 19, 20

*Lively v. WAFRA Inv. Advisory Group, Inc.*,
  6 F.4th 293 (2d Cir. 2021) ...............................................................................................16

*Maldonado v. Ivanovich*,
  No. 97-cv-6360 (BSJ), 1998 WL 323483 (S.D.N.Y. June 17, 1998)....................................14

*Mandala v. NTT Data, Inc.*,
  975 F.3d 202 (2d Cir. 2020)............................................................................................22

*Mattera v. JPMorgan Chase Corp.*,
  740 F. Supp. 2d 561 (S.D.N.Y. 2010)................................................................................19

*McGowan v. Smith*,
  52 N.Y.2d 268 (1981) ....................................................................................................11

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)........................................................................................12, 13

*NuMSP, LLC v. St. Etienne*,
  462 F. Supp. 3d 330 (S.D.N.Y. 2020).................................................................................6

*Paige v. Digital Bus. Networks All., Inc.*,
  No. 24-CV-3169 (KMK), 2025 WL 753952 (S.D.N.Y. Mar. 10, 2025)..............................6, 7

*Panagiotopoulos v. Galati*,
  No. 25-CV-6947 (LTS), 2025 WL 3077790 (S.D.N.Y. Nov. 3, 2025)..................................15

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994)......................................................................................6, 12

*Rubert* v. *King*,
    No. 19-CV-2781 (KMK), 2020 WL 5751513 (S.D.N.Y. Sep. 25, 2020)................................21

*Salemi v. Boccador, Inc.*,
    No. 02 CIV. 06648(GEL), 2004 WL 943869 (S.D.N.Y. Apr. 29, 2004) .................................6

*Senne v. Kansas City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ......................................................................9

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001), *as amended* (June 6, 2001)...........................................18

*Soloviev v. Goldstein*,
    104 F. Supp. 3d 232 (E.D.N.Y. May 13, 2015) ...............................................................24

*Springer v. City of New York*,
    No. CIV.A.CV-014392(DGT), 2006 WL 526028 (E.D.N.Y. Mar. 3, 2006) .........................20

*SPV OSUS Ltd. v. UBS AG*,
    114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018)..........................3, 6

*Stadnick* v. *Vivint Solar, Inc.*,
    861 F.3d 31 (2d Cir. 2017)....................................................................................16

*Stone #1 v. Annucci*,
    No. 20-CV-1326 (RA), 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021) .................................13

*Sullivan v. Tagliabue*,
    785 F. Supp. 1076 (D.R.I. 1992)..............................................................................9

*Syeed v. Bloomberg L.P.*,
    41 N.Y.3d 446 (2024) ..........................................................................................23

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03 MDL 1570, 2012 WL 94585 (S.D.N.Y. Jan. 11, 2012)...........................................10

*United States v. City of New York*,
    717 F.3d 72 (2d Cir. 2013)....................................................................................21

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015)...............................................................................16, 19

*Vice v. National Collegiate Student Loan Trust*
    *2004-1*, No. 23-CV-6287 (PGG) (BCM), 2025 WL 4671151 (S.D.N.Y. Aug.
    29, 2025) ..........................................................................................................15

*Walden v. Fiore,*
   571 U.S. 277 (2014)..................................................................................................10, 12

*Waldman v. Palestine Liberation Org.,*
   835 F.3d 317 (2d Cir. 2016)...................................................................................................8

*Wellner v. Montefiore Med. Ctr.,*
   17-CV-3479 (KPF), 2019 WL 4081898 (S.D.N.Y. Aug. 29, 2019)......................................24

**Statutes**

28 U.S.C. § 1391.........................................................................................................1, 3, 5, 14

28 U.S.C. § 1406.......................................................................................................1, 3, 13, 15

42 U.S.C. § 1981.............................................................................................................. *passim*

Civil Practice Law and Rules § 301...............................................................................................7

Civil Practice Law and Rules § 302......................................................................................10, 11

Civil Rights Act of 1964 Title VII.............................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(2)..............................................................................................1, 3, 5, 8

Fed. R. Civ. P. 12(b)(3)..........................................................................................1, 3, 5, 8, 13

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 3, 5, 15

Fed. R. Civ. P. 21........................................................................................................................15

Defendant Houston NFL Holdings, L.P. d/b/a Houston Texans, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6) and 28 U.S.C. §§ 1391(b) and 1406(a) respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Claims in the Second Amended Complaint ("Complaint").

<strong><u>PRELIMINARY STATEMENT</u></strong>

The vast majority of the hundred-page Complaint outlines Plaintiffs' view of the historical context of this case and asserts allegations either against a collective of Defendants in nonspecific fashion or against other Defendants and teams entirely. Buried within it are roughly two pages asserting a narrow set of facts by one Plaintiff, Mr. Flores, against the Houston Texans, a member club of the National Football League ("NFL") located in the city of Houston.

In those two pages, the Complaint asserts that, in 2022, when searching for a replacement for prior head coach David Culley, the Texans interviewed but did not offer employment to Mr. Flores. Instead, after interviewing several candidates (of which Mr. Flores was one), the Texans decided to promote Lovie Smith from his position on the Texans coaching staff of defensive coordinator to head coach. Mr. Smith was a highly experienced and well-respected coach with over 40 years of coaching experience at the time, including 16 seasons as a head coach consisting of head coaching stints at the Chicago Bears, Tampa Bay Buccaneers and the University of Illinois, and who—in Mr. Flores's opinion—was a laudable hire who was "more than qualified" for the role.  As relevant context for Mr. Flores's allegations against the Texans in this Complaint, Messrs. Culley and Smith are both Black males.  (Notably, the last four head coaches of the Texans, interim or permanent—current head coach DeMeco Ryans; Lovie Smith before him; David Culley before him; and Romeo Crennel before him—are Black males.)

Nevertheless, despite Mr. Flores's own laudatory remarks about Mr. Smith and the fact that, at the time, the Texans were not even named as a defendant in this lawsuit, the Complaint

1

alleges that the decision by the Texans to promote Mr. Smith to the head coach position was made in retaliation for Mr. Flores's filing of this lawsuit in February 2022 against the Denver Broncos, the Miami Dolphins, the New York Giants, and the National Football League. Mr. Flores's retaliation claim is based solely on the fact that Mr. Flores filed his lawsuit within the short succession of days between when he interviewed with the Texans and the Texans made various decisions in their hiring process, including to promote Mr. Smith to the head coach position. The Houston Texans strongly deny that Mr. Flores's lawsuit had anything to do with the decision not to offer employment to Mr. Flores:  the Texans wanted to hire the candidate who in their judgment was best equipped to secure wins on the field.

The claims against the Texans should be dismissed both because Mr. Flores cannot establish personal jurisdiction or venue over the Texans and because he has not stated any claim against the Texans.  As to the former, claims against the Texans purportedly based on the decision to hire Mr. Smith (which occurred in Houston) do not belong in a New York court. The Complaint does not and cannot plead personal jurisdiction as to the Texans. The Texans are not domiciled in New York for purposes of general personal jurisdiction, and Mr. Flores's claims do not relate to or arise out of any activities of the Texans purposefully directed at this forum for purposes of specific personal jurisdiction. In fact, very little connection to New York is pleaded in the Complaint at all. Likewise, venue is not proper in this District because (1) the Texans do not reside in New York; (2) no substantial portion of the events allegedly giving rise to Mr. Flores's claim against the Texans occurred in New York, (3) there is another (more appropriate) district in which the claims could have been brought.

Regardless, none of the claims against the Texans are adequately pleaded. The retaliation claims do not support a plausible inference that retaliatory intent caused the Texans' decision to

hire Mr. Smith over Mr. Flores. The remaining claims against the Texans for disparate treatment and disparate impact appear to be an afterthought, in that they name the Texans among other Defendants, but the Complaint advances no factual allegations supporting them as to the Texans specifically. The disparate treatment claims fail because Mr. Flores does not and cannot plead facts supporting an inference that the Texans' decision not to hire him was caused by intentional discrimination, either because the Texans made racially charged remarks (they did not) or because he was passed over in favor of someone outside his protected class (he was not). The disparate impact claims fail because they require identification of a specific policy having disparate impact on a protected class, and the Complaint does not attempt to identify one. The claims under New York city and state law likewise fail to allege impact within New York City or State, respectively, and must be dismissed for that reason as well.

For these reasons, the claims against the Houston Texans should be dismissed pursuant to Rule 12(b)(2), Rule 12(b)(3), 28 U.S.C. §§ 1391(b) and 1406(a), and Rule 12(b)(6). In the alternative, the claims against the Texans should be severed and transferred to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a).

## **BACKGROUND**

Defendant Houston NFL Holdings, L.P. is a Delaware limited partnership doing business as the Houston Texans, the professional football team for the city of Houston, Texas. Unsurprisingly, the Houston Texans' principal place of business is Houston. Dec. of Marilan Logan in Support of Defendant Houston NFL Holdings, L.P. d/b/a Houston Texans' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) ("Logan Dec.") ¶ 4.[1] As detailed herein, and

---

[1] In ruling on motions to dismiss under Rules 12(b)(2) and 12(b)(3), courts may consider evidence outside the pleadings. *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) (Rule 12(b)(2)); *Jones v. Ponant USA LLC*, No. 19 CIV. 3041 (NRB), 2020 WL 3172778, at *2 (S.D.N.Y. June 15, 2020) (Rule 12(b)(3)).

as is clear from the Complaint, the Houston Texans have no significant and relevant connection to New York.

In early 2022, Mr. Flores interviewed for the head coaching position with the Houston Texans. ¶ 207.[2] That position was previously filled by a Black coach, David Culley. ¶ 214. After interviewing and eliminating several candidates, including Mr. Flores and multiple white candidates, the Texans hired Lovie Smith, a Black man who was at that time the Texans' defensive coordinator and a "two-time previous Head Coach with a career winning record, multiple trips to the playoffs and a Super Bowl appearance with the Bears in 2006." *See* ¶¶ 207-16.

Of the three named Plaintiffs asserting claims in this case, only Mr. Flores (a resident of Minnesota, ¶ 33) alleges any purported employment action against him by the Houston Texans: that the Texans hired Mr. Smith instead of him in response to his filing this action. ¶¶ 207-18. The remaining claims in this case concern allegations by Mr. Flores and other Plaintiffs against other teams and the NFL.

Alleging no acts by the Texans against Mr. Flores beyond those relating to the hiring of Mr. Smith, the Complaint asserts the following claims against the Texans: (i) disparate treatment discrimination pursuant to 42 U.S.C. § 1981 ("Section 1981") (Count 1), Title VII of the Civil Rights Act of 1964 ("Title VII") (Count 11), the New York State Human Rights Law ("NYSHRL") (Count 2), and the New York City Human Rights Law ("NYCHRL") (Count 4); (ii) disparate impact discrimination pursuant to Title VII (Count 12), the NYSHRL (Count 3), and the NYCHRL (Count 5); and (iii) retaliation under Section 1981 (Count 8) and Title VII (Count 13).

The Complaint concedes the Texans are based in Houston and does not allege that the Texans have any presence in New York. The only allegation concerning any geographic facts about

---

[2] Citations to "¶ #" are to the numbered paragraphs in the Second Amended Complaint, ECF No. 236.

4

the Texans is that the club is "headquartered" in Houston (¶ 40), and Mr. Flores asserts that he interviewed for the Texans coaching job "in-person." ¶ 207. The Complaint asserts in broad and conclusory form that venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because (allegedly) "a substantial part of the events or omissions giving rise to this action, including certain of the unlawful employment practices alleged herein, occurred in this district." ¶ 32. However, with respect to the claims against the Texans, the Complaint does not allege that the Texans committed any act in connection with the relevant hiring decision in New York.

## ARGUMENT

The Complaint does not attempt to—and cannot—plead any facts alleging that the Houston Texans have an adequate connection to New York for purposes of personal jurisdiction, requiring dismissal under Rule 12(b)(2). Likewise, venue is wholly improper as to the Texans for similar reasons under Rule 12(b)(3). Lastly, Rule 12(b)(6) requires dismissal of all claims against the Houston Texans because the Complaint fails to raise a plausible inference of retaliatory or discriminatory intent by the Texans for purposes of the retaliation and disparate treatment claims; identifies no specific Texans' policy with a disparate impact as required for the disparate impact claims; and does not plead the Texans took any action that had an impact on Mr. Flores in New York City or New York State as required for the claims under the NYCHRL and NYSHRL.

I.    **Mr. Flores Cannot Establish Personal Jurisdiction Over the Houston Texans.**

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant" and must do so "with respect to each defendant individually." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395-96 (S.D.N.Y. 2021) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)) (other citations omitted). To meet his burden at this stage, "a

5

plaintiff must make a prima facie showing that jurisdiction exists." *Best Van Lines*, 490 F.3d at 242 (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation and quotations omitted).

While a court must resolve doubts in the plaintiff's favor and accept his allegations as true, it must accept those allegations only "to the extent they are uncontroverted" by a defendant's affidavit. *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (citation omitted). "[C]onclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction." *SPV OSUS*, 114 F. Supp. 3d at 167 (citation omitted); *see also Paige v. Digital Bus. Networks All., Inc.*, No. 24-CV-3169 (KMK), 2025 WL 753952, at *4 (S.D.N.Y. Mar. 10, 2025) (citations omitted). Likewise, courts assessing whether a plaintiff has met this burden do "not draw argumentative inferences in the plaintiff's favor." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (citation and quotations omitted).

Unless a federal statute directs otherwise,[3] to determine whether personal jurisdiction exists, a court must look first to the long-arm statute of the forum state. *Brown v. Lockhead Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). If the exercise of jurisdiction is appropriate under that state statute, a court then must decide whether such exercise comports with due process. *See Brown*, 814 F.3d at 625.[4] A court's exercise of personal jurisdiction over an out-of-state defendant

---

[3] Section 1981 and Title VII do not confer nationwide service of process. *See, e.g.*, *Dudley v. N. Cent. Regional Office*, No. 09-2027-JWL, 2009 WL 2914104, at *2 (D. Kan. Sept. 8, 2009) (Section 1981); *Salemi v. Boccador, Inc.*, No. 02 CIV. 06648(GEL), 2004 WL 943869, at *3 (S.D.N.Y. Apr. 29, 2004) (Title VII).

[4] New York's long-arm statute does not coincide in every respect with the limits of due process, and courts may not need to reach the constitutional question if jurisdiction is not permitted under the statute. *See Best Van Lines*, 490 F.3d at 244. However, New York courts have drawn in significant ways from U.S. Supreme Court due process jurisprudence

comports with due process only "if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citations and quotations omitted). The "minimum contacts" analysis requires the Court to distinguish between the two forms of jurisdiction, general and specific. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011).

The Complaint—which asserts claims against Defendants from seven different states—makes no specific assertions regarding personal jurisdiction and alleges not a single act by the Houston Texans in New York. That is unsurprising, as the Texans are based in Houston, Texas, and the events allegedly giving rise to the claims against the Texans occurred in Houston. Indeed, the only facts alleged about New York at all are that (a) the NFL is headquartered there (¶¶ 36, 351), (b) Plaintiffs "regularly worked" there (*id.*); and (c) Mr. Flores grew up there (¶ 156). Of course, none of those establishes personal jurisdiction in New York *over the Texans*, nor can such jurisdiction be established.

### A. Mr. Flores cannot establish general personal jurisdiction over the Houston Texans.

New York's statute conferring general personal jurisdiction, Section 301 of the Civil Practice Law and Rules ("CPLR"), "allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] ... do[] business in [New York]." *Paige*, 2025 WL 753952, at *5 (quoting *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 508 (S.D.N.Y. 2023)). Under Section 301, general personal jurisdiction exists over a defendant that has "engaged

---

in interpreting the New York statutes (*see generally id.* at 244-245), such that in some cases (as here) the statutory and constitutional analyses are quite similar.

in such a continuous and systematic course of doing business [in New York] that a finding of its presence in [New York] is warranted" because the defendant "is present in [New York] not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33-34 (1990) (citations and quotations omitted).

Similarly, due process principles require that general personal jurisdiction be exercised over a defendant only where it is "fairly regarded as at home." *Daimler*, 571 U.S. at 137 (quoting *Goodyear*, 564 U.S. at 924). The "paradigm bases" of general jurisdiction for an entity are its domiciles, *i.e.*, its place of organization and principal place of business. *See Arthur v. Orchestrate Bus. LLC*, No. 24-CV-02985 (MMG), 2025 WL 2201067, at *4 (S.D.N.Y. Aug. 1, 2025).[5] A non-resident entity "can only become subject to the personal jurisdiction of an additional forum"— outside its domiciles—"if the entity's contacts with the forum state are 'so continuous and systematic as to render [it] essentially at home.'" *Id.* (quoting *Daimler*, 571 U.S. at 138-39 & n.19). Outside of the "paradigm" bases, "mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case'" conferring jurisdiction. *Brown*, 814 F.3d at 629 (quoting *Daimler*, 571 U.S. at 138-39 & n.19); *see also Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 125 (S.D.N.Y. 2021) (same).

The Complaint concedes the Houston Texans are headquartered in Houston (¶ 40), which is accurate and consistent with facts established in a declaration submitted with this Motion in

---

[5] *See also Grootonk v. Labrie Envtl. Group, LLC*, No. 8:22-CV-01868-FWS-ADS, 2023 WL 5420299, at *3-4 (C.D. Cal. July 20, 2023) (explaining that "[c]ourts generally apply this same approach to non-corporate business entities" and assessing the place of organization and principal place of business of a limited partnership for purposes of general jurisdiction) (collecting cases including *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and, there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity"), *mandate recalled on other grounds*, 2026 WL 860256 (Mar. 30, 2026); *Am. Guarantee & Liab. Ins. Co. v. Arch Ins. Co.*, No. CV 17-582, 2017 WL 4842413, at *6 (W.D. Pa. Oct. 26, 2017) (collecting cases).

support of the Rule 12(b)(2) and 12(b)(3) arguments. As set forth therein, the Texans' principal place of business is Houston, Texas. Logan Dec. ¶ 4. The entity through which the Houston Texans do business—Houston NFL Holdings, L.P.—is organized under the laws of Delaware. Logan Dec. ¶ 11. Thus, the Houston Texans are not domiciled in New York. Moreover, in the last ten years, the Texans have played *one* football game at the home stadium of the Buffalo Bills, the only NFL team whose stadium is located in New York.[6,7] The Texans do not own any property in New York or operate any facilities in New York. Logan Dec. ¶¶ 6-7.  None of the Texans' employees are based in New York. *See* Logan Dec. ¶ 8.  The Texans are not registered to do business in New York. Logan Dec. ¶ 9.   The Texans' domestic marketing efforts, to the degree they are geographically targeted, target certain regions of Texas. Logan Dec. ¶ 10.

Indeed, the Complaint does not contain a single allegation about (a) any business done in New York by the Texans or (b) any other presence in New York by the Texans. On these pleadings and facts, New York courts cannot exercise general personal jurisdiction over the Houston Texans. *See Bank of Am., N.A. v. Hensley Properties, LP*, 495 F. Supp. 2d 435, 439 (S.D.N.Y. 2007) (holding that there was no basis to exercise personal jurisdiction in New York over a "limited partnership, organized under the laws of Delaware and doing business in California"); *Arthur*, 2025 WL 2201067, at *4 (plaintiff did not establish general jurisdiction in New York where he "affirmatively allege[d] that both Defendants [were] citizens of Missouri").

---

[6]   *See* Buffalo Bills vs. Houston Texans Results, THE FOOTBALL DATABASE, https://www.footballdb.com/teams/nfl/buffalo-bills/teamvsteam?opp=13 (last visited April 17, 2026).

[7] In any event, courts routinely decline to exercise general personal jurisdiction over out-of-state sports teams, despite allegations (which are absent here) that they travel to or earn revenues in the forum state. *See, e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1020 (N.D. Cal. 2015); *Davis v. Billick*, No. CIV. A.301-CV-1964D, 2002 WL 1398560, at *5–6 (N.D. Tex. June 26, 2002); *Sullivan v. Tagliabue*, 785 F. Supp. 1076, 1081 (D.R.I. 1992).

**B.** **Mr. Flores cannot establish specific personal jurisdiction over the Houston Texans.**

Turning to specific personal jurisdiction, New York's long-arm statute provides as relevant here that, "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:" (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) "commits a tortious act within the state"; (3) "commits a tortious act without the state causing injury to person or property within the state" and satisfies one of two additional requirements looking for (in short) regular business, persistent conduct, or substantial revenue derived from within the state, or the expectation of consequences in the state; or (4) "owns, uses or possesses any real property situated within the state." C.P.L.R. 302(a). Thus, to determine whether specific personal jurisdiction exists under New York's long-arm statute, courts must determine (1) whether the defendant committed one of the statute's enumerated acts in New York and, if so, (2) whether the cause of action asserted arose from that act. *See Best Van Lines*, 490 F.3d at 246.

Similarly, under the due process analysis, a plaintiff must show that the defendant has "purposefully directed [its] activities at residents of the forum, and the litigation result[s] from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2012 WL 94585, at *2 (S.D.N.Y. Jan. 11, 2012) (citation and quotations omitted). For the exercise of specific personal jurisdiction to comport with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Al -Ahmed*, 553 F. Supp. 3d at 130.[8] That

---

[8] The Complaint does not allege that the Texans interacted with any unnamed purported class members in New York but, in any event, such individuals are irrelevant to the inquiry at this stage. *"*In an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named

standard requires both that the defendant *itself* created the forum contacts giving rise to this connection—*i.e.*, the activity of other parties in the forum state is not relevant—and that those contacts are *with the forum state*, not just "persons who reside there."  *See Walden*, 571 U.S. at 284-85 (citations omitted).

Applying these principles, Mr. Flores cannot satisfy either the long-arm statute or due process inquiry for purposes of specific personal jurisdiction. "With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 246 (citation and quotations omitted) (explaining that this standard was drawn from U.S. Supreme Court jurisprudence concerning minimum contacts); *see also McGowan v. Smith*, 52 N.Y.2d 268, 271-72 (1981).  Again, Mr. Flores does not and cannot allege that the Texans "transact business" in New York within the meaning of the statute or that the Texans have created a "substantial connection" with New York for due process purposes.  *See supra* at 8-9; *see also Berdeaux*, 561 F. Supp. 3d at 400. Nor has Mr. Flores pleaded any facts supporting a conclusion that the Texans committed a tort "within the state" of New York (CPLR 302(a)(2)), that the Texans committed a tort "causing injury to person or property within the state" of New York and satisfied the additional requirements of that prong (CPLR 302(a)(3)), or that the Texans own, use, or possess real property "situated within the state" of New York (CPLR 302(a)(4)), much less that they committed any of those acts in a manner that constituted purposeful availment for due process purposes.

---

plaintiffs' causes of action[, and c]ontacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Berdeaux*, 561 F. Supp. 3d at 398 (citing *Beach v. Citigroup Alt. Invs. LLC*, No. 12-CV-7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014).

11

Even if Mr. Flores could plead sufficient contacts between the Texans and New York (which he has not), the conduct he challenges (*i.e.*, that the Texans chose not to hire Mr. Flores for their head coaching position in Houston, Texas) does not arise out of or relate to any conceivable contacts with New York for purposes of the long-arm statute or due process. The Houston Texans' coaches work in Houston, such that the position for which Mr. Flores interviewed was based there. *See* Logan Dec. ¶ 8. Likewise, the rest of the Houston Texans' officers or employees are either based in Texas or, in some limited exceptions not relevant to the facts at issue (*e.g.*, scouts), other states that are not New York. *See id.* Mr. Flores does not and cannot allege that the Texans made the decision to hire Mr. Smith in New York, and he pleads that he interviewed "in person" for the head coach position. ¶ 207.

It appears the Complaint intends that the NFL's New York headquarters will somehow confer New York jurisdiction over the Texans. But any attempt to establish specific personal jurisdiction through "speculative and conclusory" group pleading that conflates multiple defendants "is plainly impermissible to satisfy [a plaintiff's] burden to establish a prima facie case of personal jurisdiction against *each* Defendant as to *each* claim asserted." *See Berdeaux*, 561 F. Supp. 3d at 397 (citing *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-967, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021)).

For example, the entirely speculative allegation that the NFL may have "pressured the Texans not to hire Mr. Flores" certainly does not establish specific personal jurisdiction over the Texans even if it were true (it is not). *See* ¶ 218. This allegation, which is unsupported by any specifically pleaded facts, is precisely the sort of "argumentative inference" that courts may not draw in favor a plaintiff when assessing jurisdiction. *See Robinson*, 21 F.3d at 507; *Al-Ahmed*, 553 F. Supp. 3d at 124. Moreover, Mr. Flores is required to establish personal jurisdiction as to the

12

Texans specifically, based on the Texans' contacts with New York. *Supra* at 10. Alleging in conclusory fashion that a New York-headquartered entity *might* have participated in the event at issue does not create a prima facie case that a different, Houston-based entity somehow has established sufficient contacts with the forum. *See Walden*, 571 U.S. at 284.[9]

Accordingly, the Houston Texans request that the Court dismiss all claims against them for lack of personal jurisdiction.

## II.    <u>Venue is Improper as to the Houston Texans.</u>

A defendant may move for dismissal based on improper venue under Federal Rule of Civil Procedure 12(b)(3). Where venue is improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "When the claims involve multiple different parties, . . . 'venue must be proper . . . as to each party,' and '[t]he fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else.'" *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *13 (S.D.N.Y. Sept. 28, 2021) (quoting Wright & Miller, 14D Fed. Prac. &

---

[9] Because minimum contacts do not exist, "the inquiry ends," and the Court need not progress to the portion of the constitutional analysis asking whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citation omitted). However, even if Mr. Flores was somehow able to establish sufficient minimum contacts, the exercise of jurisdiction (either general or specific) would fail that to meet that standard, which is assessed through a five-factor reasonableness test. *See id.* at 573 (quoting *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987). Those five factors are: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life*, 84 F.3d at 568 (citing *Asahi*, 480 U.S. at 113-14). It is abundantly clear that factor one weighs heavily against the exercise of jurisdiction given that the Texans are based in Texas. Likewise as to factor two, it is difficult to discern the interest of New York in adjudicating the actions of a Texas team in declining to hire an individual who is not a resident of New York. *See generally Metro. Life*, 84 F.3d at 574. As to factors 3 and 4, given that the Texans are the only team against which the Complaint alleges retaliation in declining to hire, it is not apparent that forcing the Texans to litigate these claims far from their domicile would create any sort of convenience or efficiencies. Lastly, under factor 5, the Complaint identifies no reasons that substantive policies would be advanced better by adjudicating the case against the Texans in New York rather than where the events in question occurred.

Proc. Juris. § 3807 (4th ed.)). A plaintiff has the burden to plead venue, and when challenged, to demonstrate that venue is proper. *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875 (JPO), 2018 WL 941747, at *1 (S.D.N.Y. Feb. 16, 2018). As with any other pleading matter, courts require more than conclusory allegations. *See G.F.C. Fashions, Ltd. v. Goody's Family Clothing, Inc.*, No. 97-CV-0730 (LAP), 1998 WL 78292, *3 n.4 (S.D.N.Y. 1998).

Under 28 U.S.C. § 1391(b), venue is proper in three scenarios, and none of them exists or is pleaded here. Section 1391(b)(1) allows a plaintiff to file an action in any district where a defendant resides, *as long as all defendants reside in the same state*. The only Defendant alleged to reside in New York is the NFL; the rest, including the Texans, reside in other states. *See* ¶¶ 36-42.  Venue thus cannot be established under Section 1391(b)(1). *See Bell v. Classic Auto Grp., Inc.*, No. 04-cv-0693 (PKC), 2005 WL 659196, at *4 (S.D.N.Y. Mar. 21, 2005).

Section 1391(b)(2) allows a plaintiff to file an action in a district "in which a substantial part of the events or omissions giving rise to the claim occurred."  Mr. Flores cannot show that a "substantial" portion of the events allegedly giving rise to his claims against the Texans occurred in New York, where those claims are based on the decision of a team based in Texas to hire someone else for their head coach position in Texas after conducting an interview of Mr. Flores in Texas. *See supra* at 11-12; *see, e.g., Bell*, 2005 WL 659196 at *5; *Maldonado v. Ivanovich*, No. 97-cv-6360 (BSJ), 1998 WL 323483, at *1 (S.D.N.Y. June 17, 1998). Mr. Flores's allegations that he grew up, works, and interacts with the NFL in New York do not alter this analysis because it is the location of the alleged acts giving rise to the claim—and not a plaintiff's ties to the forum—that determine proper venue. *See Holloway v. Holy See*, 537 F. Supp. 3d 502, 506 (S.D.N.Y. 2021) (plaintiff's residence was irrelevant because "venue rules are intended to protect the defendant

14

against the risk that a plaintiff will select an unfair or inconvenient place of trial") (citation and quotations omitted).

Lastly, Section 1391(b)(3) provides that venue may be found in any judicial district in which any defendant is subject to personal jurisdiction, *if there is no district in which the action may otherwise be brought*. 28 U.S.C. § 1391(b)(3).  This section is a "fallback provision, available when—and only when" the action could not have been brought under the first two subsections discussed above. *Vice v. National Collegiate Student Loan Trust 2004-1*, No. 23-CV-6287 (PGG) (BCM), 2025 WL 4671151, at *23 (S.D.N.Y. Aug. 29, 2025), *report and recommendation adopted*, 2026 WL 867096 (S.D.N.Y. Mar. 30, 2026). Because there is another district in which the action may otherwise be brought—the Southern District of Texas—venue in this district is improper and the claims should be dismissed.  *See Bell*, 2005 WL 659196 at *6.

In the alternative and even if venue is proper, the Houston Texans respectfully request that the Court sever and transfer the claims under Fed. R. Civ. P. 21 and Section 1406(a). *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962); *Panagiotopoulos v. Galati*, No. 25-CV-6947 (LTS), 2025 WL 3077790, at *3 (S.D.N.Y. Nov. 3, 2025) (severed claims could be transferred for the convenience of the parties and in the interest of justice even if the original district would be a proper venue and outlining relevant factors); *Adams v. U.S. Bank, NA*, No. 12-CV-4640 (KAM) (LB), 2013 WL 5437060, at *4 (E.D.N.Y. Sept. 27, 2013); *Griffin v. Doyle*, No. 12-CV-4359 (JS) (GRB), 2014 WL 2945676, at *9 (E.D.N.Y. June 30, 2014) (the Court has discretion in determining whether to dismiss or sever and transfer a claim brought in the wrong forum). Should the Court be inclined to transfer the claims against the Texans, the interests of justice favor the Southern District of Texas. The Texans have their principal place of business in Houston, the Texans' witnesses are

15

located in Houston, and the relevant facts occurred in Houston. Likewise, Mr. Flores is not a resident of New York and can just as easily travel to Houston as New York.

### III. The Complaint Does Not State a Claim Against the Houston Texans Under Title VII or Section 1981.

The Complaint also fails to adequately plead the claims asserted against the Texans for retaliation under Title VII and Section 1981, disparate treatment under Title VII and Section 1981, and disparate impact under Title VII. To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth adequate factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). While the Court must "accept[] all factual allegations as true" it need not credit "legal conclusions couched as factual allegations." *Stadnick* v. *Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citations and quotations omitted). The claims against the Texans under Title VII and Section 1981 fall short of that standard.

### A. The Complaint does not plead that retaliation was a "but for" cause of the Houston Texans' decision not to hire Mr. Flores for purposes of the federal retaliation claims.

To state a claim for retaliation under Title VII or Section 1981, a plaintiff must allege that the defendant took an adverse employment action against him "*because* he has opposed an[] unlawful employment practice." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citation and quotations omitted) (emphasis added); *see also Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) ("Retaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles"). The causation standard for a retaliation claim requires Mr. Flores to "plausibly allege that the retaliation was a 'but-for' cause of the employer's

16

adverse action." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).  "But for" causation exists where "the adverse action would not have occurred in the absence of the retaliatory motive." *Lively v. WAFRA Inv. Advisory Group, Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (citations omitted).

The retaliation claims against the Texans are based entirely on the fact that Mr. Flores was not hired for the Texans' head coach position, which he claims was in retaliation for his filing of this lawsuit against other Defendants. The standard thus requires Mr. Flores to plausibly allege that he would have been hired as the Texans' head coach *but for* the alleged retaliation for filing this lawsuit. He does not do so. Instead, Mr. Flores's allegation that he was eliminated from consideration because he filed this lawsuit is conclusory, speculative, and precluded by other, more obvious explanations that can be drawn from the face of the Complaint.

The sum total of Mr. Flores's allegations against the Texans are that (a) on January 31, 2022, he was interviewed in-person for the Texans' head coach position, (b) at that time, the Texans had interviewed four other candidates, none of whom had head coaching experience, (c) on February 1, 2022, he filed this lawsuit after providing the Texans "advance notice" of its filing, (d) between February 4 and 6, 2022, it was announced that the candidate field had been narrowed first to Mr. Flores, Jonathan Gannon, and Josh McCown and then further to Mr. Flores and Mr. McCown, and that the Texans had decided to extend an interview to Texans defensive coordinator Lovie Smith (who, like Mr. Flores, is a Black man); and (e) on February 8, 2022, the Texans hired Mr. Smith. ¶¶ 207-216. The Complaint describes Mr. Smith as follows:

> "Mr. Smith is a two-time previous Head Coach with a career winning record, multiple trips to the playoffs and a Super Bowl appearance with the Bears in 2006. Mr. Flores applauded the Texans for hiring a Black Head Coach when the announcement was made. To be clear, Mr. Smith is more than qualified for the role, and it is a

positive thing that another Black Head Coach has been hired by an NFL football team."

¶ 216. From the above factual allegations alone, the Complaint draws the following conclusions:

- "It is clear that the Texans did not want to hire Mr. Flores to be the team's Head Coach because he had opposed discriminatory conduct within the NFL by the filing of this lawsuit and speaking publicly about the systemic racism in the NFL." ¶ 213.

- "Upon information and belief, either the Texans made this retaliatory decision on its own or the NFL—through the Commissioner's office and/or other member teams and/or surrogates from the NFL or its member teams—pressured the Texans not to hire Mr. Flores to be its Head Coach after he filed this lawsuit, or some combination thereof." ¶ 218.

These allegations contain no facts supporting an inference that Mr. Flores would have been hired over the "more than qualified" Mr. Smith if not for the filing of this lawsuit.[10] The claim thus seems to rely solely on the proximity in time between the filing of this lawsuit and Mr. Smith's hiring. However, Mr. Flores cannot rely solely on temporal proximity here, when he filed a lawsuit in the middle of a highly selective and fast-moving hiring process and was ultimately eliminated in favor of an admittedly well-qualified candidate in Mr. Smith.

While close temporal proximity *can* establish retaliatory motive at the pleadings stage, if the adverse action (here, losing out on a competitive job to a deserving candidate) is the natural progression of a process in motion before the protected activity occurred, temporal proximity alone cannot give rise to an inference of retaliation. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in

---

[10] There is likewise nothing alleged to support the speculation that the Texans declined to hire Mr. McCown because they were concerned "it would bolster Mr. Flores' allegations of systemic discrimination against Black candidates, particularly given that the team had just fired Black Head Coach David Culley after only one season." ¶ 214. The Complaint itself acknowledges that (unlike the Texans' ultimate choice for head coach Lovie Smith) Mr. McCown lacked head coaching experience. ¶ 208.

any protected activity, an inference of retaliation does not arise."); *Bamba v. United States Dep't of Homeland Sec.*, No. 22-CV-7407 (LJL), 2024 WL 3924810, at *19 (S.D.N.Y. Aug. 23, 2024) ("Even a short gap between protected activity and adverse [action] may not support an inference of causation if another event presents a more obvious cause. When a process of discipline or adverse action begins before the protected activity and only ends after the protected activity, an inference that the protected activity caused the adverse action generally cannot be supported.") (collecting cases); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("[Employers'] proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 581-82 (S.D.N.Y. 2010) (collecting cases); *see also Diaz v. Poly Prep Day Sch.*, No. 21-CV-06611 (BMC), 2022 WL 2803259, at *10 (E.D.N.Y. July 18, 2022).

Mr. Flores filed this lawsuit after he had conducted an in-person interview with the Texans and after several other candidates had interviewed as well (¶¶ 207-209)—*i.e.*, at a time when a decision by the Texans about his candidacy and others' was necessarily forthcoming. He was then eliminated in favor of Mr. Smith roughly nine days after he interviewed and two to four days after the media reported the elimination of multiple other candidates. ¶¶ 211-12, 215-16. By Mr. Flores's own account, Mr. Smith was "more than qualified." Mr. Flores's allegations concerning the interview process thus indicate that the timing of his elimination from consideration resulted from the independent progression of that process—not retaliation.

### B. The Complaint does not attempt to allege any intentional discrimination by the Houston Texans for purposes of the federal disparate treatment claims.

While the Complaint purports to assert disparate treatment claims against the Texans, it hardly gestures at pleading these claims against the Texans specifically. To state these claims under Title VII and Section 1981, a plaintiff must allege facts plausibly supporting that the employer was

19

motivated by an intent to discriminate. *See Littlejohn*, 795 F.3d at 311 (Title VII); *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (Section 1981). Under Title VII, a plaintiff must allege that "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 85; *see also id.* at 87 (Title VII requires a plaintiff to "plausibly allege that . . . his race, color, religion, sex, or national origin was a motivating factor"). Section 1981 requires that a plaintiff plausibly allege that race was the but-for cause of the alleged adverse action. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).  The allegations must exceed mere "speculation."  *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 74 (2d Cir. 2021); *see also Ikedilo v. Statter*, No. 19-CV-9967 (RA), 2020 WL 5849049, at *8 (S.D.N.Y. Sept. 30, 2020) ("Nevertheless, 'a discrimination complaint ... must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'")(quoting *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015)).

A plaintiff can adequately plead intentional discrimination by, for example, pleading that he was replaced with "an individual outside the employee's protected class" (*Littlejohn*, 795 F.3d at 312-13) and including "meaningful specifics" indicating that the replacement candidate was less qualified. *See Burgis*, 798 F.3d at 68–69 (dismissing Section 1981 claim where complaint alleged "generally" that plaintiffs were "passed over" in favor of less qualified white individuals but "fail[ed] to provide meaningful specifics of the alleged difference in qualifications, let alone discriminatory intent"). Other facts that may plausibly support an inference of discriminatory intent include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group[.]" *Littlejohn*, 795 F.3d at 312-13.

20

The Complaint pleads nothing of the sort as to the Texans. The only adverse employment action alleged against the Texans by a named Plaintiff is the decision to hire Mr. Smith—a well qualified candidate from the same protected class—rather than Mr. Flores. Thus, Mr. Flores does not and cannot plead that the Texans ultimately hired a less qualified *white* coach for that role, precluding an inference of discriminatory intent in the decision not to hire Mr. Flores. *See Springer v. City of New York*, No. CIV.A.CV-014392(DGT), 2006 WL 526028, at *7 (E.D.N.Y. Mar. 3, 2006) (granting motion for summary judgment on Title VII claim reasoning that where an employer hires individual from the same protected class "inferring a preference for a person outside the protected class is not possible"). In fact, the Complaint acknowledges that several white candidates were eliminated from consideration in favor of Mr. Smith. ¶¶ 211-212, 216. Nor does Mr. Flores allege that anyone at the Texans ever commented on his race during the interview process or otherwise. *See Ikedilo*, 2020 WL 5849049, at *8-9; *see also Rubert* v. *King*, No. 19-CV-2781 (KMK), 2020 WL 5751513, at *7 (S.D.N.Y. Sep. 25, 2020). In short, the Complaint utterly fails to plead any facts plausibly supporting an inference that the Texans failed to hire Mr. Flores because of his race.

Nor does conjecture about former Texans head coach David Culley provide plausible support for an inference of discriminatory motive by the Texans against Mr. Flores or otherwise. The Complaint alleges merely that Mr. Culley was fired—without explanation beyond "philosophical differences"—after a particularly difficult season in which the Texans went 4-12. ¶¶ 302-306. Mr. Flores cannot rely on speculative allegations of discrimination against other individuals to create an inference of discrimination against himself. *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 328–29 (S.D.N.Y. 2020).

21

The Complaint briefly asserts that certain Defendants including the Texans have engaged in a "pattern and/or practice of discrimination." ¶ 437. As opposed to a claim for individual discrimination, a "pattern or practice" claim of discrimination requires a plaintiff to "plead facts supporting an inference that discrimination was the Company's standard operating procedure." *Barrett v. Forest Laboratories, Inc.*, 39 F. Supp. 3d 407, 430 (S.D.N.Y. 2014) (quotations omitted); *see United States v. City of New York*, 717 F.3d 72, 84 (2d Cir. 2013) (plaintiffs in pattern-or-practice claim must make "a showing of a pervasive policy of intentional discrimination," rather than demonstrating "a single instance of discriminatory treatment."). The Complaint's allegation of two events concerning the Texans—(a) declining to hire Mr. Flores in favor of Mr. Smith, and (b) firing David Culley after a losing season—fall far below that standard. *See Frazier v. Stanley*, No. 16 Civ. 804 (RJS), 2018 WL 11585450, at *11 (S.D.N.Y. Nov. 29, 2018) (noting that "several isolated incidents, without more, are insufficient to allege a pattern or practice" and collecting cases, including cases in which three and seven instances were insufficient).

### C. The Complaint does not attempt to identify a Houston Texans policy creating a racial disparity for purposes of the federal disparate impact claims.

The Complaint purports to assert a disparate impact claim against the Texans under Title VII but does not try to actually plead one. Disparate treatment claims are aimed at employment policies that, while facially neutral, have a disproportionate impact on members of a protected class. Pleading such a claim requires alleging facts plausibly supporting (1) the existence of a "specific employment practice or policy;" (2) "a disparity;" and (3) "a causal relationship between the two." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012)). The first prong requires a plaintiff to "identify the criteria, specific test, requirement, or practice within [the policy] that has an adverse impact."

22

*Doheny v. Int'l Business Machines, Corp.*, 714 F. Supp. 3d 342, 364 (S.D.N.Y. 2024) (citations and quotations omitted).

The Complaint has made zero attempt to plead any sort of specific "practice" or "policy" by the Houston Texans, much less one that creates a "disparity." The two employment-related events identified in relation to the Texans (declining to hire Mr. Flores in favor of Mr. Smith and terminating Mr. Culley after a losing season) are so different that they could not possibly reflect adherence to any one "policy." Nor could an employment event in which one member of a protected class was hired over another member of the same class (such as with the hiring of Mr. Smith over Mr. Flores) cause a "disparity" as required. The Complaint's wholly conclusory allegation that certain Defendants, including the Texans, "have engaged in selection and retention policies, practices and/or processes which have had a discriminatory impact" (¶ 442) does not come close to the pleading threshold for this claim. *See Doheny*, 714 F. Supp. 3d at 364.

## IV.     The Complaint Does Not State a Claim Against the Houston Texans Under the NYSHRL or NYCHRL.

The claims against the Texans under the NYSHRL and NYCHRL fare no better. These claims should be dismissed because they (a) fail to plead the requisite impact in New York State or New York City and (b) fail to plead disparate treatment or disparate impact under the statutes.

For a non-resident of New York like Mr. Flores to bring a claim under either the NYSHRL or NYCHRL, he must plead that the alleged discrimination had an impact in New York State for NYSHRL and New York City for the NYCHRL. *Hoffman v. Parade Publications*, 15 N.Y.3d 285, 290-91 (2010) (holding that a plaintiff alleging discriminatory treatment or termination must have experienced the impact of discrimination while "work[ing] in" New York State or City and dismissing claim despite that the defendant was headquartered in New York, the decision to terminate plaintiff and all other management decisions were made there, and the plaintiff attended

23

quarterly meetings there). In a case alleging discriminatory failure to hire, a non-resident plaintiff can plead "impact" in New York by alleging that the defendant denied the plaintiff a job based in New York State or City. *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 454 (2024).

The Complaint has not attempted to plead facts plausibly supporting an inference that the impact of any alleged action by the Houston Texans was experienced in New York. The Complaint does not plead that the position with the Texans Mr. Flores did not secure was in New York. *See Syeed*, 41 N.Y.3d at 454.

In any event, the Complaint fails to adequately state disparate treatment or disparate impact claims under the NYSHRL and NYCHRL for essentially the same reasons that the federal claims premised on those theories fail, even though a more lenient pleading standard applies to the state and city claims.[11]  To state a claim for disparate treatment, both statutes require a plaintiff to plead that "differential treatment" was "caused by a discriminatory motive." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. May 13, 2015).  Here, Mr. Flores cannot adequately plead that he was treated worse than others during the Texans' hiring process because of his race, when multiple white candidates were eliminated prior to Mr. Flores, and a Black candidate (Mr. Smith) was ultimately hired. *See supra* at 17.

The disparate impact claim under the NYSHRL and NYCHRL requires pleading "that a policy or practice" resulted in disparate detrimental impact to a protected group.  *See Fitchett v. City of New York*, 18-CV-8144 (PAE), 2021 WL 964972, at *24 (S.D.N.Y. Mar. 15, 2021) (quoting N.Y.C. Admin. Code, § 8-107(17)).  Although this standard is "construed more liberally" than the Title VII counterpart, it still requires identification of a "facially neutral policy that, with the data

---

[11] Due to an amendment to the NYSHRL, NYSHRL claims that accrue on or after October 11, 2019 are assessed under the NYCHRL standard.  *See Wellner v. Montefiore Med. Ctr.*, 17-CV-3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).

24

subjected even to minimal rigor, has yielded racially disparate" outcomes. *Id.* (citations omitted).

The Complaint does not attempt to plead any such facts as to the Texans for reasons stated above.

*See supra* at 22.  Thus, the NYSHRL and NYCHRL claims against the Texans should likewise be

dismissed.

## CONCLUSION

The Houston Texans respectfully request that the claims against the Texans be dismissed

with prejudice or, in the alternative, severed and transferred to the Southern District of Texas.


Dated: April 17, 2026                               Respectfully submitted,


                                                    **REYNOLDS FRIZZELL LLP**

                                                    */s/ Jean C. Frizzell*
                                                    Jean C. Frizzell (admitted *pro hac vice*)
                                                    Elizabeth J. Wilkerson
                                                    1100 Louisiana, Suite 3500
                                                    Houston, Texas 77002
                                                    Telephone:  (713) 485-7200
                                                    Facsimile:   (713) 485-7250
                                                    jfrizzell@reynoldsfrizzell.com
                                                    ewilkerson@reynoldsfrizzell.com

                                                    *Attorneys for Defendant Houston NFL*
                                                    *Holdings, L.P. d/b/a Houston Texans*


## CERTIFICATE OF COMPLIANCE

As required by Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York, I certify that this document contains 8,712 words, excluding the parts of the document that are exempted by Rule 7.1(c).


                                                    */s/ Elizabeth J. Wilkerson*
                                                    Elizabeth J. Wilkerson