**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

               Plaintiffs,

- against -

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,

               Defendants.

---

Case No. 22-cv-00871 (VEC)

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**NEW YORK FOOTBALL GIANTS, INC., N/K/A**
**NEW YORK FOOTBALL GIANTS LLC'S MOTION TO DISMISS**

---

**McCARTER & ENGLISH, LLP**
250 W. 55th Street, 13th Floor
New York, New York  10019
(212) 609-6800

*Counsel for Defendant*
*New York Football Giants, Inc.,*
*n/k/a New York Football Giants LLC*

Dated:  April 17, 2026

ME1\60713537.v1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 3

LEGAL STANDARD................................................................................................................. 8

ARGUMENT .............................................................................................................................. 9

      I.     Even if Mr. Flores' Allegations of a "Sham" Interview Were True, the Complaint Does Not State a Disparate Treatment Claim under Any Legal Framework ......... 9

      II.    Mr. Flores Similarly Fails to State a Disparate Impact Claim Under Any Legal Framework ................................................................................................... 14

      III.   Mr. Flores Likewise Has No Claim Against the Giants under New York State or City Anti-Discrimination Law ............................................................................... 19

CONCLUSION......................................................................................................................... 20

ME1\60713537.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Needle, Inc. v. National Football League*,
     560 U.S. 183 (2010)...............................................................................................3, 4, 18

*Baylor v. Powell*,
     459 F. Supp. 3d 47 (D.D.C. 2020) ...................................................................................12

*Bell Atl. Corp.* v. *Twombly*,
     550 U.S. 544 (2007).................................................................................................8, 13

*Burgis v. N.Y.C. Dep't of Sanitation*,
     798 F.3d 63 (2d Cir. 2015).............................................................................................10

*Burlington N. & S.F.R. Co. v. White*,
     548 U.S. 53 (2006).........................................................................................................9

*Byrnie* v. *Town of Cromwell, Bd. of Educ.*,
     243 F.3d 93 (2d Cir. 2001)..............................................................................................15

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
     589 U.S. 327 (2020)........................................................................................................10

*Crane v. Holder*,
     66 F. Supp. 3d 1391 (N.D. Ala. 2014)..............................................................................17

*Davis v. Cintas Corp.*,
     717 F.3d 476 (6th Cir. 2013) ..........................................................................................16

*During v. City Univ. of N.Y.*,
     2005 WL 2276875 (S.D.N.Y. Sept. 19, 2005)......................................................................12

*Francis v. Kings Park Manor, Inc.*,
     992 F.3d 67 (2d Cir. 2021)...........................................................................................8, 11

*Gaffney v. Dep't of Info. Tech. & Telecommunications*,
     536 F. Supp. 2d 445 (S.D.N.Y. 2008)..................................................................................16

*Graffam v. Scott Paper Co.*,
     870 F. Supp. 389 (D. Me. 1994) .......................................................................................16

*Henry v. NYC Health & Hosp. Corp.*,
     18 F. Supp. 3d 396 (S.D.N.Y. 2014)...................................................................................10

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Hill v. Major League Soccer LLC*,
   2024 WL 3361216 (S.D.N.Y. July 10, 2024) ...........................................................................17

*Hines v. Hillside Children's Ctr.*,
   73 F. Supp. 2d 308 (W.D.N.Y. 1999) .......................................................................................13

*John v. Dep't of Information Technology & Telecommunications*,
   2008 WL 4694596 (S.D.N.Y. Oct. 23, 2008) .....................................................................10, 13

*Jones v. Officer William Thomas*,
   2023 WL 5953196 (D. Del. Sept. 13, 2023) ...............................................................................3

*Lee v. Riverbay Corp.*,
   751 F. Supp. 3d 259 (S.D.N.Y. 2024)........................................................................................19

*Local 2507, Uniformed EMTs v. City of New York*,
   2024 WL 916520 (S.D.N.Y. Mar. 4, 2024) ..............................................................................17

*Mandala v. NTT Data, Inc.*,
   975 F.3d 202 (2d Cir. 2020).........................................................................................14, 15, 18

*Matthews v. Nat'l Football Council*,
   688 F.3d 1107 (9th Cir. 2012) ....................................................................................................3

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)......................................................................................................................9

*Mihalik v. Credit Agricole Cheuvruex N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)........................................................................................................19

*Mullinix v. Mount Sinai Sch. of Med.*,
   2014 WL 3687217 (S.D.N.Y. July 24, 2014) ............................................................................11

*Naumovski v. Norris*,
   934 F.3d 200 (2d Cir. 2019)........................................................................................................10

*Parker v. Chilton Cnty. Bd. of Educ.*,
   2014 WL 116341 (M.D. Ala. Jan. 13, 2014) ...............................................................................3

*Patterson v. Cnty. of Oneida, N.Y.*,
   375 F.3d 206 (2d Cir. 2004)........................................................................................................10

ME1\60713537.v1

**TABLE OF AUTHORITIES**
(*Continued*)

**Page(s)**

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) .................................................................................................9

*Rodriguez* v. *Beechmont Bus Serv., Inc.*,
    173 F. Supp. 2d 139 (S.D.N.Y. 2001) ...................................................................16

*Ross v. O'Neal*,
    2011 WL 5041967 (C.D. Cal. Oct. 17, 2011) .........................................................3

*Shomo v. City of New York*,
    579 F.3d 176 (2d Cir. 2009) ....................................................................................8

*Smith v. City of Jackson, Miss.*,
    544 U.S. 228 (2005) ...............................................................................................15

*Staff v. Pall Corp.*,
    233 F. Supp. 2d 516 (S.D.N.Y. 2002) ...................................................................10

*Staves v. Prince George's County Bd. Of Educ.*,
    2023 WL 2648794 (D. Md. Mar. 27, 2023) ...........................................................12

*Toussaint* v. *City of New York*,
    2020 WL 3975472 (S.D.N.Y. July 14, 2020) ........................................................17

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) ......................................................................................9

*Vidal v. Galaxy 2439 Enters., LLC*,
    2023 WL 8455255 (D.N.J. Dec. 6, 2023) ..............................................................11

*Vivenzio v. City of Syracuse*,
    611 F.3d 98 (2d Cir. 2010) ....................................................................................10

**State Cases**

*Benham v. eCommission Solutions, LLC*,
    118 A.D.3d 605 (1st Dep't 2014) ..........................................................................20

*Carr v. New Jersey*,
    534 F. App'x 149 (3d Cir. 2013) ...........................................................................12

ME1\60713537.v1

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Hoffman v. Parade Publications*,
  15 N.Y.3d 285 (2010) ...................................................................................................19

*Mandel v. UBS/PaineWebber, Inc.*,
  373 N.J. Super. 55 (App. Div. 2004) ................................................................10, 11

*Peper v. Princeton Univ. Bd. of Trs.*,
  77 N.J. 55 (1978) .............................................................................................10, 11

*Schiavo v. Marina Dist. Dev. Co., LLC*,
  442 N.J. Super. 346 (App. Div. 2015) .................................................................15

*Wolf v. Imus*,
  170 A.D.3d 563 (1st Dep't 2019) .........................................................................20

**Statutes**

29 U.S.C. § 2000e-2(m) ......................................................................................................10

42 U.S.C. § 1981 ..............................................................................................................6, 14

42 U.S.C. § 2000e-2(k)(1)(A)(i) ........................................................................................14

42 U.S.C. § 2000e-2(a)(1) .............................................................................................13, 14

N.J.S.A. § 10:5-12(a) ..........................................................................................................13

**Rules**

Fed. R. Evid. 201(b)(2) .........................................................................................................3

Fed. R. Civ. P. 8 ...................................................................................................................15

Fed. R. Civ. P. 12(b)(6) .........................................................................................................3

ME1\60713537.v1

**PRELIMINARY STATEMENT**

Despite the Second Amended Class Action Complaint's (ECF No. 236, the "Complaint") broad and ambitious scope, the only claims asserted against Defendant New York Football Giants, Inc., now known as New York Football Giants LLC (the "Giants"),[1] arise from a single hiring decision made over an eighteen-day period in January 2022. During that period, the Giants considered Plaintiff Brian Flores, along with several other candidates, including two other minority candidates, for its vacant head coach position. Ultimately, the Giants hired someone other than Mr. Flores for non-discriminatory reasons tied to the organization's priorities at the time. Mr. Flores speculates that the Giants made this hiring decision before interviewing him and alleges that the Giants subjected him to a so-called "sham" interview to comply with the "Rooney Rule"— a rule adopted by the National Football League (the "NFL") which requires NFL teams to interview candidates who are people of color or women for certain coaching and front-office positions. Although the Complaint offers no factual basis for why the Giants hired someone other than Mr. Flores, Mr. Flores makes sweeping allegations against the Giants and seeks to hold them liable under local, state, and federal employment laws, based on theories of disparate treatment and disparate impact. Mr. Flores fails to plausibly plead a claim for relief against the Giants under either theory.

Mr. Flores' disparate treatment claim fails because the Complaint does not plead facts even suggesting that the Giants' decision not to hire him was motivated by Mr. Flores' race. Mr. Flores relies only on a mistaken interpretation of a text message he received from the coach of another NFL team, who had no role or authority in the Giants' hiring process, to speculate that he was

---

[1]     Following a reorganization in October 2025, New York Football Giants, Inc. is now New York Football Giants LLC.

subjected to a "sham" interview after the Giants had already settled on another candidate. But even accepting those allegations as true, a sham or pretextual interview, without more, is not enough to plead discrimination. The Complaint does not allege that anyone in the Giants' hiring process even considered Mr. Flores' race in deciding not to hire him as head coach. Accordingly, the disparate treatment claims against the Giants (Counts I, II, IV, VI, and XI) should be dismissed with prejudice.

Mr. Flores' disparate impact claim likewise fails to satisfy basic pleading requirements. First, Mr. Flores has not identified a specific policy or practice of the Giants that caused any racial disparity. Instead, he impermissibly relies on conclusory assertions about the employment policies and practices of the Giants and, more broadly, other NFL clubs. Second, Mr. Flores has not plausibly alleged a disparity in the Giants' hiring of head coaches. The statistics he cites are insufficient as a matter of law, most notably because Mr. Flores aggregates the Giants' hiring decisions with those of the 31 other NFL clubs, despite the fact that each club makes its own hiring decisions. Mr. Flores' blunderbuss pleading of claims against several differently-situated defendants is a fatal deficiency that runs throughout the Complaint. For these reasons, the disparate impact claims against the Giants (Counts III, V, VII and XII) should be dismissed with prejudice.

Moreover, Mr. Flores also has no viable claim against the Giants under New York State and New York City employment discrimination laws (Counts II, III, IV, and V), because he is not a New York resident and did not suffer the impact of the Giants' decision not to hire him in New York State or New York City.

For these reasons, Mr. Flores' claims against the Giants should be dismissed in their entirety, with prejudice.

-2-

ME1\60713537.v1

## FACTUAL BACKGROUND[2]

Plaintiffs' Complaint contains 449 numbered paragraphs spread across 100 pages, but the allegations relating to Mr. Flores' claims against the Giants are straightforward.

The NFL is an unincorporated membership association consisting of 32 member clubs, including the Giants. Compl. ¶ 36. The Giants, despite their name, are "headquartered" in New Jersey, not New York. *Id.* ¶ 37. The Giants' home stadium and practice facilities are also located in New Jersey.[3]

Each of the NFL's 32 teams "is a substantial, independently owned, and independently managed business." *Am. Needle, Inc. v. National Football League*, 560 U.S. 183, 196 (2010). The

---

[2]    While recognizing that the facts alleged by Plaintiffs are to be accepted as true for purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Giants do not concede, and in fact vehemently dispute, nearly all of the allegations set forth in Plaintiffs' initial and amended Complaints. Nothing in this memorandum shall be construed as an admission by the Giants as to any of those allegations, and the Giants expressly reserve all of its rights, claims and defenses with respect thereto, none of which are waived.

[3]    *Quest Diagnostics Training Center*, Ewing Cole, https://www.ewingcole.com/project/ny-giants-training-center/ (last visited Apr. 17, 2026). At certain points in this memorandum, the Giants cite sources extrinsic to the Complaint to identify basic facts relating to the history of the league and its teams, as well as playing, coaching, and front-office management histories of certain individuals, and request that the Court take judicial notice of such uncontroversial facts. Courts have recognized the appropriateness of taking judicial notice of sports scores, statistics, and playing and coaching histories, as such information can be "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see, e.g.*, *Matthews v. Nat'l Football Council*, 688 F.3d 1107, 1113 & n.5 (9th Cir. 2012) (taking judicial notice of statistics on NFL's website showing that plaintiff played 13 games in California during 19-year career); *Jones v. Officer William Thomas*, 2023 WL 5953196, at *3 n.5 (D. Del. Sept. 13, 2023), *aff'd sub nom. Jones v. Thomas*, 2024 WL 1281129 (3d Cir. Mar. 26, 2024) (taking "judicial notice from publicly available sources that the November 9, 2017 Thursday Night Football game between the Seattle Seahawks and Arizona Cardinals began at 8:25 p.m., and that no player named Fitzgerald scored a touchdown, although Larry Fitzgerald of the Cardinals led the game in receptions and receiving yards"); *Parker v. Chilton Cnty. Bd. of Educ.*, 2014 WL 116341, at *3 n.3 (M.D. Ala. Jan. 13, 2014) (taking judicial notice of high school football scores); *Ross v. O'Neal*, 2011 WL 5041967, at *1 (C.D. Cal. Oct. 17, 2011) (taking judicial notice of Shaquille O'Neal's professional basketball playing statistics).

-3-

teams' actions "are guided or determined by separate corporate consciousnesses and their objectives are not common." *Id.* at 196 (quotation omitted). NFL "teams compete with one another, not only on the playing field, but to attract fans, for gate receipts, and for contracts with managerial and playing personnel." *Id.* at 196–97 (citations omitted); *see also* Compl. ¶¶ 120, 142 (alleging that NFL clubs' hiring decisions for coaching and front office positions are "discretionary" and "subjective").

Of the three Plaintiffs in this action, only one—Brian Flores—alleges that he sought employment with the Giants. Mr. Flores worked for the New England Patriots in various coaching roles from 2008 until 2019, when the Miami Dolphins hired him as their head coach. Compl. ¶¶ 157–58. Mr. Flores served as the Dolphins' head coach for three seasons. *Id.* ¶ 159. After the 2021 NFL regular season ended, the Dolphins terminated Mr. Flores' employment on January 10, 2022. *Id.* ¶¶ 159, 177.

The Dolphins were not the only team in need of a new head coach that offseason. On January 11, 2022, the Giants terminated their head coach of two years, Joe Judge. Compl. ¶¶ 179, 198. The Giants were also searching for a new general manager, as their prior general manager, Dave Gettleman, retired the day before, on January 10, 2022.[4]

The Giants were interested in Mr. Flores as a candidate for the head coach position and began pursuing him immediately after he was terminated by the Dolphins and the Giants' head coach position became vacant. According to the Complaint, Tim McDonnell, the Giants' Co-Director of Player Personnel, reached out to Mr. Flores on January 11, 2022, the same day the

---

[4] Jordan Raanan, *Dave Gettleman retires after four seasons as New York Giants' general manager*, ESPN (Jan. 10, 2022, 12:45 PM), https://www.espn.com/nfl/story/_/id/33035445/dave-gettleman-retires-four-seasons-new-york-giants-general-manager; *see also* Compl. ¶ 182.

ME1\60713537.v1

Giants terminated Mr. Judge and the day after Mr. Flores was terminated by the Dolphins, and "according to Mr. McDonnell, the Giants and its owner John Mara, were extremely interested in hiring him for the team's vacant Head Coach position." Compl. ¶ 179. Later that day, Mr. McDonnell texted Mr. Flores to let him "know that Mr. Mara would be reaching out directly to him to express his interest." Compl. ¶ 180. The next day, Mr. Flores "had a positive conversation" with Giants co-owner Mr. Mara during which Mr. Mara said the Giants would first hire a general manager before continuing their search for a head coach. *See id.* ¶ 181. On January 18, 2022, Mr. Mara had a follow-up one-on-one Zoom meeting with Mr. Flores. *Id.*

On January 23, 2022, the Giants hired Joe Schoen, formerly Assistant General Manager for the Buffalo Bills,[5] as General Manager. Compl. ¶ 182. According to Mr. Flores, and based solely on speculative text messages he purportedly received from an individual outside of the Giants' organization, former New England Patriots' head coach, Bill Belichick, the Giants then settled on another head coach, Brian Daboll, on January 24, 2022. *See* Compl. ¶ 187–88 ("***Sounds like*** you have landed – congrats!!"; "***I think*** they are naming Daboll." (emphasis added)). Mr. Flores alleges that the Giants nevertheless scheduled and conducted an interview with him on January 27, 2022. Compl. ¶¶ 184, 191. Mr. Flores characterizes that interview as a "sham," and a "discriminatory façade designed to show false compliance with the Rooney Rule." *Id.* ¶¶ 6, 119, 186, 189. On January 29, 2022, the Giants announced that they hired Mr. Daboll as their next head coach.[6]

---

[5]     *Giants hire Joe Schoen as general manager*, Giants (Jan. 22, 2022, 1:00 PM), https://www.giants.com/news/giants-hire-joe-schoen-as-general-manager.

[6]     *Giants hire Brian Daboll as head coach*, Giants (Jan. 29, 2022, 12:28 PM), https://giants.com/news/giants-hire-brian-daboll-as-head-coach.

ME1\60713537.v1

The Complaint asserts that the Giants have never hired a Black head coach.  Compl. ¶ 193.  It also alleges that, the last four times prior to 2022 that the Giants had a head coaching vacancy, they interviewed Black candidates but ultimately hired a white head coach.  *Id.* ¶¶ 195–98.  Based on those allegations, and nothing else, Mr. Flores makes the conclusory leap that "the Giants interview Black candidates because of the NFL's mandate and for no other reason."  *Id.* ¶ 199.  Mr. Flores relies on that conjecture to assert broad and legally deficient claims against the Giants for disparate treatment liability under 42 U.S.C. § 1981 ("Section 1981") (Count I), *id.* ¶¶ 391–95, the New York State Human Rights Law ("NYSHRL") (Count II), *id.* ¶¶ 396–400, the New York City Human Rights Law ("NYCHRL") (Count IV), *id.* ¶¶ 405–09, the New Jersey Law Against Discrimination ("NJLAD") (Count VI), *id.* ¶¶ 414–17, and Title VII of the Civil Rights Act of 1964 (Count XI), *id.* ¶¶ 435–40.  Mr. Flores also asserts disparate impact claims under NYSHRL (Count III), *id.* ¶¶ 401–04, NYCHRL (Count V), *id.* ¶¶ 410–13, NJLAD (Count VII), *id.* ¶¶ 418–21, and Title VII (Count XII), *id.* ¶¶ 441–44.

The remainder of the Complaint offers few specific allegations concerning the Giants.  Several sections allege employment discrimination or retaliation against Plaintiffs by other NFL clubs also named as defendants in this action for interactions dating back to 2016, *see* Compl. ¶¶ 158–177, 200–284, but do not allege that the Giants were involved in any of those decisions.  Plaintiffs also allege that various NFL clubs discriminated against other Black coaches and front-office personnel in interactions dating back to 2003, but none of those allegations mention the Giants.  *See id.* ¶¶ 285–336.

The Complaint also devotes multiple sections to race relations and race-related controversies in the NFL over the league's 100-year-plus history, *id.* ¶¶ 44–112, but, again, the Giants barely feature in this discussion—appearing in only three paragraphs.  One of those

paragraphs falsely identifies former Giants' owner Tim Mara, who passed away more than 50 years ago (before Mr. Flores was born), as an NFL "founding owner[]," and asserts that he cooperated with a so-called "gentleman's agreement" not to hire Black players.[7]  *Id.* ¶ 50.  The Complaint omits, however, that, *inter alia*: (1) the Giants were among the first NFL clubs to integrate when they signed Hall of Fame defensive back Emlen Tunnell in 1948;[8] (2) Jerry Reese spent 23 years with the Giants and, after repeated promotions, became the third Black general manager in NFL history and the first to win a Super Bowl;[9] and (3) John Mara is a member of the NFL's Workplace Diversity Committee, and has been since 2007.[10]

The other two paragraphs concern Colin Kaepernick, a former NFL quarterback who knelt during the national anthem during the 2016 NFL season, to protest racial inequality and police brutality in the United States, and was not rostered the following season.  One paragraph suggests that "[t]he Giants gave Mr. Kaepernick no consideration . . . because the team feared backlash from the fans if it signed Mr. Kaepernick" due to his political speech—not due to Mr. Kaepernick's

---

[7]    The NFL was founded in 1920; the Giants joined the NFL in 1925.  *It Started With 14 Teams in the Roaring 20s*, NFL, https://www.nfl.com/100/original-towns/ (last visited Apr. 17, 2026); *New York Giants*, NFL, https://operations.nfl.com/learn-the-game/nfl-basics/team-histories/national-football-conference/east/new-york-giants/ (last visited Apr. 17, 2026).

[8]    *Emlen Tunnell*, Pro Football Reference, https://www.pro-football-reference.com/players/T/TunnEm00.htm (last visited Apr. 17, 2026).

[9]    John Branch, *Reese Recalls Lessons From Home as First N.F.L. Draft Approaches*, N.Y. Times, https://www.nytimes.com/2007/04/28/sports/football/28giants.html (last visited Apr. 17, 2026); *Firsts by Black Players, Coaches & Officials in the NFL*, NFL, https://www.nfl.com/photos/firsts-by-african-americans-in-the-nfl-09000d5d826ca97b (last visited Apr. 17, 2026).

[10]    *John Mara Named Chairman of NFL's Management Council Executive Committee,* Giants (Oct. 20, 2011, 10:47 AM), https://www.giants.com/news/john-mara-named-chairman-of-nfl-s-management-council-executive-committee-6117599.

-7-

race.  Compl. ¶ 68.  The other baldly alleges that Mr. Kaepernick would have been a "clear roster upgrade" for the Giants.  *Id.* ¶ 73.[11]

Finally, an entire section of the Complaint, entitled "Disparate and Adverse Impact of NFL's Practices," relies on photo arrays and statistics aggregated from across the 32 NFL member clubs in an effort to establish discrimination in hiring across the NFL generally for coaching and front office positions.  Compl. ¶¶ 113–55.  None of those allegations are specific to the Giants or legally sufficient to support the alleged claims against the Giants.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 547 (2007).  In applying that standard, a court accepts "all actual allegations in the complaint as true," and draws "all reasonable inferences in the plaintiff's favor."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted).  However, "conclusory allegations are not entitled to an assumption of truth."  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).  In a discrimination case, the complaint must set forth "well-pleaded factual allegations plausibly giving rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to

---

[11]    The Giants' starting quarterback in the 2016 NFL season (and every season between 2005 and 2018) was two-time Super Bowl MVP and Pro Football Hall of Fame finalist Eli Manning. *Eli Manning*, Pro Football Reference, https://www.pro-football-reference.com/players/M/MannE l00.htm (last visited Apr. 17, 2026); Dan Salomone, *Eli Manning among 15 finalists for Pro Football Hall of Fame Class of 2026*, Giants (Jan. 4, 2026, 12:50 PM), https://www.giants.com/news/eli-manning-among-15-finalists-for-pro-football-hall-of-fame-class-of-2026-list.

plausible.'"  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570) (alteration in original).

## ARGUMENT

**I.     Even if Mr. Flores' Allegations of a "Sham" Interview Were True, the Complaint Does Not State a Disparate Treatment Claim under Any Legal Framework**

Mr. Flores' disparate treatment claims against the Giants fail under Title VII, Section 1981 and NJLAD alike because he has not plausibly alleged that the Giants' decision not to hire him was motivated by race.  At most, the Complaint alleges that the Giants interviewed Mr. Flores despite having chosen another candidate, Mr. Daboll, for their head coaching position, supposedly to feign compliance with the Rooney Rule.  But neither the alleged preselection of Mr. Daboll nor the so-called "sham interview" supports a plausible inference that the Giants chose Mr. Daboll over Mr. Flores because of race.

Title VII prohibits discrimination based on "race, color, religion, sex, or national origin" "with respect to . . . compensation, terms, conditions, or privileges of employment."  *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 73–74 (2006) (quoting 42 U.S.C. § 2000e–2(a)(1)).  Under Title VII, employers are not required to hire minority workers, but they are prohibited from acting on "discriminatory preference[s] for any group."  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–01 (1973) (seeking to achieve "trustworthy workmanship assured through fair and neutral employment and personnel decisions").  Disparate-treatment liability under Title VII requires a showing that "(1) the employer discriminated against [plaintiff] (2) ***because of*** his race, color, religion, sex, or national origin."  *Vega*, 801 F.3d at 85 (emphasis added).  Title VII's causation requirement demands, at a minimum, that a plaintiff "show[] that [a protected characteristic] played a motivating part in an employment decision."  *Price Waterhouse v.*

*Hopkins*, 490 U.S. 228, 244 (1989); *see also* 29 U.S.C. § 2000e-2(m) (codifying the motivating factor standard).  Thus, to state a Title VII disparate treatment claim, a plaintiff must plead facts supporting a reasonable inference of ***discriminatory motive***, not merely facts showing that the process was unfair, irregular, or even predetermined.  *See John v. Dep't of Information Technology & Telecommunications*, 2008 WL 4694596, at *5 (S.D.N.Y. Oct. 23, 2008).

Similarly, in analyzing disparate treatment claims under Section 1981—which "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment," *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 224 (2d Cir. 2004)—courts apply nearly the same standards used to evaluate a Title VII discrimination claim.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) (noting that under Section 1981, "plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right");[12] *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002) (observing that "both the Supreme Court and Second Circuit have treated the substantive issues arising under Title VII and § 1981 identically"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) (same).  Thus, Section 1981 "plaintiffs must [also] sufficiently allege that defendants acted with discriminatory intent."  *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (dismissing Section 1981 claim where complaint "fail[ed] to provide meaningful specifics" suggesting "discriminatory intent").

The standards under NJLAD likewise generally track those of Title VII and Section 1981.  *See, e.g.*, *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 74 (App. Div. 2004); *Peper v.*

---

[12]     *See also Naumovski v. Norris*, 934 F.3d 200, 213 (2d Cir. 2019) (noting a higher causation standard under Section 1981 than the disparate treatment provision of Title VII).

*Princeton Univ. Bd. of Trs.*, 77 N.J. 55, 82–83 (1978).  Of particular importance here, an NJLAD "plaintiff must 'demonstrate that the employer was motivated by discriminatory intent.'" *Mandel*, 373 N.J. Super. at 76 (citing *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 14 (2002)); *see also Peper*, 77 N.J. at 82 ("Proof of discriminatory motive is critical."); *Vidal v. Galaxy 2439 Enters., LLC*, 2023 WL 8455255, at *9 (D.N.J. Dec. 6, 2023) ("With [p]laintiff's allegations accepted as true, this [c]ourt finds that [p]laintiff has not pled sufficient facts to survive the motion to dismiss" because "[p]laintiff fails to provide any facts . . . that suggest intentional or purposeful discrimination.").

Here, Mr. Flores has not pleaded acts legally sufficient to support a plausible inference that the Giants' decision not to hire him as head coach was motivated by race.  The only paragraphs addressing the Giants' motivation are conclusory statements in the individual counts of the Complaint alleging that "the Giants have discriminated against Mr. Flores by failing to hire him because of his race . . . ."  (Compl. ¶ 415; *see also id.* ¶ 392, 397, 406, 436, 437).  Such statements are not entitled to an assumption of truth and cannot support disparate-treatment liability under Title VII or any of the anti-discrimination statutes as a matter of law.  *See Francis*, 992 F.3d at 72 (noting "conclusory allegations are not entitled to an assumption of truth").

The factual allegations of the Complaint instead focus on the Giants' supposed "sham" interview of Mr. Flores after the team had allegedly already decided to hire Mr. Daboll as head coach.  *See id.* ¶¶ 186–88.  But a sham or pretextual interview, without more, is not enough to plead discrimination.   Courts have repeatedly held that procedural irregularities, bad-faith interviews, or even preselection of another candidate do not themselves establish that a protected trait caused the adverse decision.  *See Mullinix v. Mount Sinai Sch. of Med.*, 2014 WL 3687217, at *15 (S.D.N.Y. July 24, 2014) (granting defendant's summary judgment motion in part and

-11-

noting that plaintiff's "conten[tions] that her candidacy for the VP, OTBD position was a sham, because she was not listed on [the] candidate list, her references were not checked, her initial interview . . . was perfunctory, and [defendant's dean] stated that [defendant's] faculty 'will interview [plaintiff] but she will not get the job' do not, alone, evince a discriminatory intent"); *During v. City Univ. of N.Y.*, 2005 WL 2276875, at *7 (S.D.N.Y. Sept. 19, 2005) (granting defendant's summary judgment motion and noting "even if the Court were to credit [p]laintiff's allegation that [another candidate] was pre-selected, that fact does not give rise to an inference of discrimination without some evidence that that pre-selection was somehow discriminatory"); *Carr v. New Jersey*, 534 F. App'x 149, 152 (3d Cir. 2013) (granting defendant's summary judgment motion and finding plaintiff did not demonstrate indicia of racial discrimination under NJLAD or Title VII where "1) the notes of the interview panelists . . . did not consider [plaintiff]'s credentials or experience when making second-round interview determinations; 2) the [d]efendants[] fail[ed] to follow their 'best practices' by not having a minority on the interview panel; and 3) the [d]efendants[] fail[ed] … [to] adequately maintain[] administrative records fully documenting the hiring processes for the positions to which he applied").[13]

The Complaint's threadbare allegations that the Giants preselected Mr. Daboll before interviewing Mr. Flores shed no light on *why* Mr. Daboll was preselected. Mr. Flores does not allege that Mr. Mara, Mr. Schoen, or Mr. McDonnell even considered his race at any point. Nor does Mr. Flores allege that Mr. Daboll was not qualified for the Giants' head coaching position.

---

[13]    *See also Staves v. Prince George's County Bd. Of Educ.*, 2023 WL 2648794, at *7 (D. Md. Mar. 27, 2023) (allegations of sham interview for head coach did not establish prima facie case of discrimination); *Baylor v. Powell*, 459 F. Supp. 3d 47, 59 (D.D.C. 2020), *aff'd*, 847 F. App'x 7 (D.C. Cir. 2021) (noting "even if there had been favoritism in [the] selection process, courts have held that [p]reselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII." (quotations omitted)).

-12-

In short, Mr. Flores does not allege any facts supporting "a plausible suggestion of" discriminatory motive in the Giants' hiring decision, or that race played any role in the decision to hire Mr. Daboll rather than Mr. Flores. *Twombly*, 550 U.S. at 566.

Mr. Flores' conclusory allegation that he would not have been subjected to a "sham" interview if he were white also does not support a disparate treatment claim, because "sham" interviews are not actionable adverse employment actions under federal or state anti-discrimination laws. *See, e.g.*, *John*, 2008 WL 4694596, at *5 (granting defendants' summary judgment motion and noting "[e]ven if the Court were to take [plaintiff]'s allegations as fact" that "her interview for the Community Associate position was illusory," "[p]laintiff still must show how this interview process gives rise to an inference of discrimination"); *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 325 (W.D.N.Y. 1999) (granting defendant's summary judgment motion and dismissing Section 1981 and Title VII claims brought by plaintiffs who alleged that an employer's interview process "was nothing but a sham and that [the decision-maker] had already made up his mind to hire [the white candidate]"). Title VII's disparate treatment provision makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Similarly, under NJLAD, it is unlawful for an employer "to refuse to hire or employ or to bar or to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . ." N.J.S.A. § 10:5-12(a). Conducting a "sham interview" to purportedly comply with the Rooney Rule does not amount to "refus[ing] to hire" that individual because of their race. Nor does it amount to discrimination in "compensation, terms conditions, or privileges of

-13-

employment." 42 U.S.C. § 2000e-2(a)(1).[14]

At bottom, Mr. Flores has failed to allege facts even suggesting that the Giants harbored a discriminatory motive in hiring Mr. Daboll instead of him.  That failure is fatal to his disparate treatment claims.

## II.     Mr. Flores Similarly Fails to State a Disparate Impact Claim Under Any Legal Framework

Mr. Flores' disparate impact claim against the Giants fares no better.  Critically, the Complaint fails to identify the specific policy or practice that purportedly caused racial disparities in the Giants' hiring, and instead improperly relies on purported statistics aggregated from across the 32 NFL member clubs to establish a disparity in the first place.

Under Title VII,

> [a]n  unlawful employment practice based on disparate impact is established under this subchapter only if [ ] a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity . . . .

42 U.S.C. § 2000e–2(k)(1)(A)(i).

Thus, to prevail on a disparate impact claim under Title VII, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012)) (internal quotation marks omitted).  At the pleading stage, a plaintiff must "set forth enough factual

---

[14]     The Complaint's conclusory allegations that Mr. Flores would not have been subjected to a "sham" interview but for his race also do not fit into the statutory framework of Section 1981, which guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.

ME1\60713537.v1

allegations to plausibly support each of" these three basic elements. *Mandala*, 975 F.3d at 209. The standards for a disparate impact claim under NJLAD track those applicable under Title VII. *Schiavo v. Marina Dist. Dev. Co., LLC*, 442 N.J. Super. 346, 369 (App. Div. 2015) ("Our Court has stated the proofs required for a disparate impact claim are based upon those required under federal law." (citing *Gerety v. Atl. City Hilton Casino Resort*, 184 N.J. 391, 400 (2005))).

### A.    The Complaint's Vague References to "Policies, Practices and/or Processes" Are Insufficient

Mr. Flores' disparate impact claim should be dismissed because he identifies no specific employment practice or policy upon which it is based. Instead, the Complaint refers in wholly conclusory fashion to unspecified employment "policies, practices and/or processes which have had a discriminatory impact against" Mr. Flores. Compl. ¶¶ 419, 442. Mr. Flores does not allege that the Giants adopted any particular scoring rubric, screening criterion, minimum qualification, interview protocol, ranking system, or similar practice. Instead, the Complaint refers only to "the Giants' organizational hiring practices in general." *Id.* ¶ 189.

Federal Rule of Civil Procedure 8 requires more than vague references to "hiring practices in general" to plausibly allege a disparate impact claim. As the Supreme Court has explained, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)) (internal quotation marks omitted); *see also Byrnie* v. *Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001) ("Simply gesturing towards the hiring process as a whole will not satisfy the requirement that the plaintiff identify a

'specific employment practice' that is the cause of the statistical disparities") (quoting *Wards Cove*, 490 U.S. at 656)); *Rodriguez* v. *Beechmont Bus Serv., Inc.,* 173 F. Supp. 2d 139, 148 (S.D.N.Y. 2001) (finding allegation that employer had failed to hire more than just four Hispanic employees did not sufficiently identify a specific employment practice for Title VII disparate impact claim).

Plaintiffs' broad description of the Giants' hiring process as "discretionary" and "subjective" does not identify a specific policy or practice capable of supporting a disparate impact claim. *See, e.g.*, *Davis v. Cintas Corp.*, 717 F.3d 476, 497 (6th Cir. 2013) (holding that plaintiff's failure to identify "a particular employment practice" by merely "point[ing] to all of the subjective elements" in defendant's hiring system was fatal to plaintiff's Title VII disparate impact claim). "Ordinarily . . . a plaintiff must point to a specific practice that is a component of the employer's decisional process, such as a test or an experience requirement, rather than to the decisional process as a whole." 2 Larson on Employment Discrimination § 21.02 (2021); *see also Graffam v. Scott Paper Co.*, 870 F. Supp. 389, 395 (D. Me. 1994), *aff'd*, 60 F.3d 809 (1st Cir. 1995). Moreover, hiring decisions for NFL head coaching positions necessarily require subjective assessments of, among other intangible criteria, leadership, vision, media handling, fit with existing players and staff, and alignment with organizational goals and values. The law does not require employers to abandon those assessments. *See Gaffney v. Dep't of Info. Tech. & Telecommunications*, 536 F. Supp. 2d 445, 465 (S.D.N.Y. 2008) (noting that "[it] is not the place of courts to substitute their judgment for that of employers, and the courts 'must respect [employers'] unfettered discretion to choose among qualified candidates,'" and acknowledging that "[d]efendants were faced with a choice between two qualified candidates, and they chose Vigilante because, based on their knowledge and experience with both candidates, Vigilante was the most qualified").

-16-

**B.      The Rooney Rule Does Not Supply a Basis for a Disparate Impact Claim**

The Complaint's reliance on the Rooney Rule also does not support a disparate impact claim against the Giants (or any other defendant) for two reasons.  First, a disparate impact claim must be based on a "facially neutral employment policy," *Toussaint* v. *City of New York*, 2020 WL 3975472, at *2 (S.D.N.Y. July 14, 2020), and the Rooney Rule is not alleged to be facially neutral. Instead, the Complaint describes the Rooney Rule as a "well-intentioned" initiative to promote diversity in head coach and other club leadership positions.  Compl. ¶¶ 126–27; *see also Local 2507, Uniformed EMTs v. City of New York*, 2024 WL 916520, at *8–9 (S.D.N.Y. Mar. 4, 2024) (rejecting plaintiff's disparate impact claim where city's "policy to steer women and non-white applicants to EMS positions" was "not a facially neutral practice"); *Crane v. Holder*, 66 F. Supp. 3d 1391, 1406 n.14 (N.D. Ala. 2014) (explaining that the FBI's diversity program was not "a facial neutral policy" for purposes of a disparate impact claim).

Second, Mr. Flores does not allege any causal relationship between the Rooney Rule and any racial disparity in head coach hiring—either by the Giants or by NFL clubs more generally. Mr. Flores only alleges that "the Rooney Rule has failed to yield any meaningful change" in head coach hiring and suggests that, despite being "well intentioned," it has been ineffective.  Compl. ¶ 119; *see also id.* ¶ 126 (asserting that the Rooney Rule's "effectiveness requires NFL teams to take it seriously").  But suggestions of flaws in implementation and enforcement of a "well intentioned" program like the Rooney Rule cannot support a disparate impact claim.  *See Hill v. Major League Soccer LLC*, 2024 WL 3361216 at *6 (S.D.N.Y. July 10, 2024) (rejecting a disparate-impact challenge to another sports league's policy requiring clubs to interview minority candidates for coaching positions, where the plaintiff alleged that the league delegated compliance entirely to the clubs).

-17-

**C.    The Statistics Cited in the Complaint Do Not Plausibly Show a Racial Disparity in the Giants' Hiring Practices**

Mr. Flores' disparate impact claim also fails because he does not plead facts suggesting a racial disparity in the Giants' hiring decisions.    Mr. Flores relies on purported "statistical evidence"—aggregated from across the 32 NFL member clubs (not Giants-specific)—"to show a disparity in outcomes between groups" in order to plead a disparate impact claim.  *Mandala*, 975 F.3d at 209.  And while a plaintiff need not "prove in detail the methodological soundness of h[is] statistical assessment" or "supplement" that analysis "with corroborating evidence" to survive a motion to dismiss, "the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact."  *Id.* at 209–10 (emphasis in original).  Here, Mr. Flores' statistical allegations (*see* Compl. ¶¶ 121–50)—which, again, amount to an aggregation of data points from across the 32 NFL member clubs rather than a rigorous analysis of the Giants—are so flawed that they do not plausibly suggest anything, much less a plausible inference of a racial disparity in the *Giants'* coach-hiring decisions.    Indeed, the Complaint concedes that NFL teams make coach hiring decisions independently.    Compl. ¶¶ 120, 142 (alleging that NFL clubs' hiring decisions for coaching and front office positions are "discretionary" and "subjective"); *see also Am. Needle*, 560 U.S. at 196–97.    Thus, Mr. Flores' reliance on aggregated purported statistics to establish disparities at individual clubs says nothing about the Giants' hiring practices and such statistics are insufficient as a matter for law to support any of his claims.

**III.    Mr. Flores Likewise Has No Claim Against the Giants under New York State or City Anti-Discrimination Law**

In addition to being flawed for the same reasons as his federal law claims,[15] Mr. Flores'

---

[15]    *Mihalik v. Credit Agricole Cheuvruex N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (noting that plaintiff "bears the burden [under NYCHRL] of showing that the conduct is caused by a discriminatory motive"); *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 274–75 (S.D.N.Y.

ME1\60713537.v1

claims under the New York State Human Rights Law (NYSHRL) and New York City Human Rights Law (NYCHRL) should also be dismissed because those laws do not afford a claim to a non-New York resident who complains of a discriminatory decision by an employer outside New York not to hire him for a position outside New York.

To survive a motion to dismiss, Mr. Flores must plead and prove under the NYHRL and NYCHRL that "the allegedly discriminatory conduct had an 'impact' within" the state or city, respectively. *Hoffman v. Parade Publications*, 15 N.Y.3d 285, 290 (2010) (extending the protection of the NYCHRL to "nonresidents who work in the city, while concomitantly narrowing the class of nonresident plaintiffs who may invoke its protection.").[16]   In other words, Plaintiff must allege that he experienced the impact of the alleged discriminatory conduct in the State of New York. *Hoffman*, 15 N.Y.3d at 291–92.   Here, the Complaint does not allege such impact.

Mr. Flores does not allege that he is a resident of New York City or the State of New York. (*See* Compl. 33 (alleging that Mr. Flores is "a resident of the State of Minnesota").   The Complaint also does not allege that Mr. Flores was interviewed by the Giants in New York (because he was not).   Nor does it suggest that the Giants' decision to hire Mr. Daboll over Mr. Flores was made in New York.   And, importantly, the Complaint also does not allege that Mr. Flores suffered the "impact" of the Giants' decision not to hire him in New York.   Instead, the Complaint points only to the State of New Jersey.   Indeed, it concedes that the Giants play, practice, and are

---

2024) (noting that following an amendment to the NYSHRL in 2019, "the standard for claims under the NYSHRL [is] closer to that of the NYCHRL . . . .").

[16]    In adopting the impact test, the court rejected a different standard that would have applied the NYCHRL whenever the decision at issue was made in New York, as this broader rule would be "impractical, would lead to inconsistent and arbitrary results, and expands NYCHRL protections to nonresidents who have, at most, tangential contacts with the city." *Hoffman*, 15 N.Y.3d at 291.

-19-

ME1\60713537.v1

"headquartered [in] East Rutherford, NJ." Compl. ¶ 37. The Giants' home stadium is also located in New Jersey. Accordingly, Mr. Flores' NYSHRL and NYCHRL claims should be dismissed with prejudice for these reasons. *See Benham v. eCommission Solutions, LLC*, 118 A.D.3d 605, 606 (1st Dep't 2014) (affirming dismissal where the plaintiff's alleged harassment and discriminatory conduct occurred while plaintiff was physically situated outside of New York); *Wolf v. Imus*, 170 A.D.3d 563, 564 (1st Dep't 2019) (affirming dismissal of "plaintiff's age discrimination claims brought under the City and State Human Rights Laws, because the impact . . . occurred in Florida, where he lived and worked").

## CONCLUSION

For the foregoing reasons, the Court should respectfully grant the Giants' Motion and dismiss Plaintiffs' Second Amended Complaint against the Giants, with prejudice.

Dated: April 17, 2026                    Respectfully submitted,

By: */s/ Brian W. Carroll*
    Brian W. Carroll
    Hugh F. Murray, III (*pro hac vice* forthcoming)
    Mark A. Makar
    Scott Weingart (*pro hac vice* forthcoming)
    **McCARTER & ENGLISH, LLP**
    250 W 55th Street, 13th Floor
    New York, New York  10019
    (212) 609-6800
    bcarroll@mccarter.com
    hmurray@mccarter.com
    mmakar@mccarter.com
    sweingart@mccarter.com

    *Counsel for Defendant*
    *New York Football Giants, Inc.,*
    *n/k/a New York Football Giants LLC*

ME1\60713537.v1

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Rule 7.1(c) of the Local Civil Rules of the United States District Court for the Southern District of New York, I hereby certify that this document contains 6,465 words, excluding the parts of the document that are exempted by Rule 7.1(c).

*/s/ Brian W. Carroll*
Brian W. Carroll

ME1\60713537.v1