**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

                                Plaintiffs,

                            - v. -

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,

                                Defendants.

Docket No. 22-cv-00871 (VEC)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**THE NATIONAL FOOTBALL LEAGUE'S MOTION TO DISMISS**
**<u>CERTAIN CLAIMS IN THE THIRD AMENDED COMPLAINT</u>**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000

*Attorneys for Defendant the National Football League*

Dated: June 5, 2026

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .............................................................................................................. 4

I.    The Parties ............................................................................................................ 4

II.   The Complaint ...................................................................................................... 5

  A. Plaintiffs' Employment Discrimination Claims ......................................... 5

  B. Plaintiffs' Arbitration Retaliation Claim .................................................... 8

ARGUMENT .................................................................................................................... 9

I.    Mr. Flores Does Not Adequately Allege Employment Discrimination Claims ................ 9

  A. Mr. Flores Does Not Allege that the NFL is His Employer, or a Single or Joint Employer with the Clubs ................................................................... 9

    1. The NFL Did Not Employ Mr. Flores ........................................ 10

    2. The NFL and the Clubs Are Not a "Single Employer" ............................. 11

    3. The NFL and the Clubs Are Not "Joint Employers" ................................ 14

  B. Even if the NFL Were an "Employer," the Complaint Does Not State a Discrimination Claim Against the NFL Under Title VII or Section 1981 ........... 17

    1. The Complaint Does Not State a Disparate Treatment Claim Against the NFL ..................................................................... 17

    2. Mr. Flores Does Not State a Disparate Impact Claim Against the NFL ... 22

    3. Mr. Flores Does Not State a Retaliation Claim Against the NFL Based Upon the Texans' Decision Not to Hire Him ................................. 25

  C. The Complaint Does Not State a Discrimination Claim Against the NFL Under the NYSHRL or NYCHRL ........................................................... 25

    1. The Complaint Fails to Plead the Alleged Discrimination Had Any Impact in New York State or New York City ........................................ 26

    2. The Complaint Does Not Allege Disparate Treatment or Disparate Impact Discrimination Under the NYSHRL or NYCHRL ....................... 27

  D. Mr. Flores's Claims Related to His Interview with the Broncos Are Time-Barred ..................................................................................... 28

II.   Plaintiffs' Arbitration-Related Allegations Fail to State a Claim for Retaliation ............. 28

CONCLUSION ............................................................................................................... 31

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Alameda* v. *Ass'n of Social Work Bds.*,
2024 WL 4302389 (S.D.N.Y. Sept. 25, 2024)..........................................................................22

*Am. Needle, Inc.* v. *Nat'l Football League*,
560 U.S. 183 (2010)..................................................................................................................4, 12

*Arculeo* v. *On-Site Sales & Mktg., LLC*,
425 F.3d 193 (2d Cir. 2005)......................................................................................................10, 11

*Aubrey* v. *New School*,
642 F. Supp. 3d 403 (S.D.N.Y. 2022).....................................................................................4

*Austern* v. *Chicago Bd. Options Exch., Inc.*,
898 F.2d 882 (2d Cir. 1990)....................................................................................................29

*Aviall, Inc.* v. *Ryder Sys., Inc.*,
110 F.3d 892 (2d Cir. 1997).....................................................................................................31

*Bautista* v. *PR Gramercy Square Condo.*,
642 F. Supp. 3d 411 (S.D.N.Y. 2022).....................................................................................15

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)..................................................................................................................9

*Benedict* v. *Manfred*,
2026 WL 836679 (S.D.N.Y. Mar. 26, 2026) ..........................................................................16

*Bledsoe* v. *Delta Air Lines, Inc.*,
2024 WL 1142321 (E.D.N.Y. Mar. 15, 2024)..........................................................................31

*Brathwaite* v. *Sec. Indus. Automation Corp.*,
2006 WL 8439237 (E.D.N.Y. Dec. 1, 2006) ..........................................................................10

*Britton* v. *Bronx Parent Hous. Network, Inc.*,
2022 WL 4332735 (S.D.N.Y. Sept. 19, 2022)..........................................................................12

*Brown* v. *City of Syracuse*,
2008 WL 5451020 (N.D.N.Y. Dec. 31, 2008)..........................................................................30

*Brown* v. *Coach Stores, Inc.*,
163 F.3d 706 (2d Cir. 1998)......................................................................................................24

*Brown* v. *Daikin Am. Inc.*,
   756 F.3d 219 (2d Cir. 2014).........................................................................................12

*Burgis* v. *N.Y.C. Dep't of Sanitation*,
   798 F.3d 63 (2d Cir. 2015).....................................................................................18, 22

*Burlington N. & Santa Fe Ry. Co.* v. *White*,
   548 U.S. 53 (2006).......................................................................................................29

*Byrnie* v. *Town of Cromwell, Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001)...........................................................................................24

*Cadet* v. *All. Nursing Staffing of New York, Inc.*,
   632 F. Supp. 3d 202 (S.D.N.Y. 2022)..........................................................................29

*Cardwell* v. *Davis Polk & Wardwell LLP*,
   2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020)...............................................................20

*Carpenter* v. *Rapid City Red Dogs, LLC*,
   751 N.W.2d 292 (S.D. 2008) .......................................................................................16

*Cassard* v. *Omnicom Media Grp. Holdings, Inc.*,
   2025 WL 3227617 (S.D.N.Y. Nov. 19, 2025)..........................................................12, 13

*Chavannes* v. *Bronx Parent Hous. Network, Inc.*,
   2022 WL 4124762 (S.D.N.Y. Sept. 9, 2022)............................................................10, 11

*United States* v. *City of New York*,
   717 F.3d 72 (2d Cir. 2013)........................................................................................20, 21

*Collette* v. *St. Luke's Roosevelt Hosp.*,
   132 F. Supp. 2d 256 (S.D.N.Y. 2001)...........................................................................23

*Comcast Corp.* v. *Nat'l Ass'n of Afr. Am.-Owned Media*,
   589 U.S. 327 (2020).....................................................................................................18

*Craig* v. *Yale Univ. Sch. of Med.*,
   2013 WL 789718 (D. Conn. Mar. 4, 2013) ...................................................................20

*Crane* v. *Holder*,
   66 F. Supp. 3d 1391 (N.D. Ala. 2014)...........................................................................24

*Dent* v. *Nat'l Football League*,
   902 F.3d 1109 (9th Cir. 2018) ......................................................................................11

*Doheny* v. *Int'l Bus. Machines, Corp.*,
   714 F. Supp. 3d 342 (S.D.N.Y. 2024)...........................................................................23

iv

*Farmer* v. *Shake Shack Enterprises, LLC*,
   473 F. Supp. 3d 309 (S.D.N.Y. 2020)..................................................................................19

*Felder* v. *U.S. Tennis Ass'n*,
   27 F.4th 834 (2d Cir. 2022) ...................................................................................10, 15, 16

*Fenner* v. *News Corp.*,
   2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ........................................................................10

*Fitchett* v. *City of New York*,
   2021 WL 964972 (S.D.N.Y. 2021)........................................................................................28

*Francis* v. *City of New York*,
   235 F.3d 763 (2d Cir. 2000)..................................................................................................31

*Francis* v. *Kings Park Manor, Inc.*,
   992 F.3d 67 (2d Cir. 2021)....................................................................................................18

*Frazier* v. *Morgan Stanley*,
   2018 WL 11585450 (S.D.N.Y. Nov. 29, 2018)....................................................................20

*Gaines* v. *New York City Transit Auth.*,
   528 F. Supp. 2d 135 (E.D.N.Y. 2007), *aff'd*, 353 F. App'x 509 (2d Cir. 2009).....................30

*Hardwick* v. *Auriemma*,
   116 A.D.3d 465 (2014) .........................................................................................................31

*Henry* v. *NYC Health & Hosp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014).....................................................................................26

*Hill* v. *Major League Soccer LLC*,
   2024 WL 3361216 (S.D.N.Y. July 10, 2024) ...........................................................13, 14, 25

*Hillware* v. *New Orleans Saints*,
   2015 WL 2250178 (E.D. La. May 13, 2015)........................................................................11

*Hoffman* v. *Parade Publications*,
   15 N.Y.3d 285 (2010) ......................................................................................................26, 27

*Idrees* v. *City of New York Dep't of Parks & Recreation*,
   2005 WL 1026027 ................................................................................................................20

*Ikedilo* v. *Statter*,
   2020 WL 5849049 (S.D.N.Y. Sept. 30, 2020).....................................................................18

*Jackson* v. *Nat'l Football League*,
   1994 WL 282105 (S.D.N.Y. June 21, 1994) ........................................................................17

*Juhua Han* v. *Kuni's Corp.*,
  2020 WL 2614726 (S.D.N.Y. May 22, 2020) ........................................................................14

*Knight* v. *MTA*,
  2026 WL 875339 (E.D.N.Y. Mar. 31, 2026) ..........................................................................30

*LaFontant* v. *Citigroup Glob. Markets Inc.*,
  2005 WL 2978944 (S.D.N.Y. Nov. 4, 2005) ..........................................................................30

*Lee* v. *Riverbay Corp.*,
  751 F. Supp. 3d 259 (S.D.N.Y. 2024) ...................................................................................27

*Local 2507, Uniformed EMTs* v. *City of New York*,
  2024 WL 916520 (S.D.N.Y. Mar. 4, 2024) ...........................................................................24

*Mandala* v. *NTT Data, Inc.*,
  975 F.3d 202 (2d Cir. 2020) ..................................................................................................23

*McHenry* v. *Fox News Network, LLC*,
  510 F. Supp. 3d 51 (S.D.N.Y. 2020) ...............................................................................10, 20

*Mihalik* v. *Credit Agricole Cheuvruex N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ..................................................................................................27

*Moody* v. *Empire Hotel Development, Inc.*,
  2023 WL 5480729 (S.D.N.Y. Aug. 24, 2023) .......................................................................16

*Mumin* v. *City of New York*,
  760 F. Supp. 3d 28 (S.D.N.Y. 2024) .....................................................................................16

*Musiello* v. *CBS Corp.*,
  518 F. Supp. 3d 782 (S.D.N.Y. 2021) ...................................................................................14

*Patterson* v. *Cnty. of Oneida, N.Y.*,
  375 F.3d 206 (2d Cir. 2004) ..................................................................................................10

*Porras* v. *IBX Construction*,
  2024 WL 3835165 (E.D.N.Y. Aug. 15, 2024) .......................................................................17

*Raymond* v. *City of New York*,
  317 F. Supp. 3d 746 (S.D.N.Y. 2018) ..............................................................................21, 22

*Reynolds* v. *Barrett*,
  685 F.3d 193 (2d Cir. 2012) ..............................................................................................18, 21

*Rodriguez* v. *Beechmont Bus Service, Inc.*,
  173 F. Supp. 2d 139 (S.D.N.Y. 2001) ...................................................................................23

*Rosario* v. *Town of Mount Kisco*,
   2020 WL 764280 (S.D.N.Y. Feb. 14, 2020) ................................................................22

*Rubert* v. *King*,
   2020 WL 5751513 (S.D.N.Y. Sept. 25, 2020) ............................................................19

*Shiflett* v. *Scores Holding Co.*,
   601 F. App'x 28 (2d Cir. 2015) ................................................................................10

*Soloviev* v. *Goldstein*,
   104 F. Supp. 3d 232 (E.D.N.Y. 2015) ......................................................................27

*Sosa* v. *Medstaff, Inc.*,
   2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) ...........................................................17

*Stadnick* v. *Vivint Solar, Inc.*,
   861 F.3d 31 (2d Cir. 2017)........................................................................................9

*Stefanoni* v. *Darien Little League, Inc.*,
   101 F. Supp. 3d 160 (D. Conn. 2015).........................................................18, 19, 26

*Stinson* v. *City Univ. of New York*,
   2018 WL 2727886 (S.D.N.Y. June 6, 2018) ............................................................29

*Taylor* v. *Bronx Parent Hous. Network*,
   2023 WL 3996620 (S.D.N.Y. June 14, 2023) ..........................................................11

*Toussaint* v. *City of New York*,
   2020 WL 3975472 (S.D.N.Y. July 14, 2020) ...........................................................24

*Trotter* v. *National Football League*,
   737 F. Supp. 3d 172 (S.D.N.Y. 2024)................................................................26, 27

*U.S. Football League Player's Ass'n* v. *U.S. Football League*,
   650 F. Supp. 12 (D. Or. 1986) .................................................................................15

*Vega* v. *Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)...........................................................................9, 18, 25

*Woodell* v. *United Way of Dutchess Cnty.*,
   357 F. Supp. 2d 761 (S.D.N.Y. 2005).......................................................................13

**Statutes**

9 U.S.C. § 10................................................................................................................31

42 U.S.C. § 1981 .................................................................................... *passim*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*................................ *passim*

New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq*......................... *passim*

New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ................................. *passim*

**PRELIMINARY STATEMENT**

Mr. Flores's Claims[1]—premised on individual employment grievances against certain NFL member clubs—fail to state a claim against the NFL. The Complaint concedes that the NFL has never employed Mr. Flores and does not otherwise allege the essential elements of his Claims. The Complaint's latest conclusory amendments do not, and cannot, cure these deficiencies. And the Complaint's new "retaliation" claim—premised on the Court-ordered arbitration—suffers from the same fatal flaws.

The NFL is a membership association consisting of 32 clubs. Each club is separately owned and independently managed, and each hires and employs its own coaches. Although the NFL does not control or participate in the clubs' hiring and employment of coaches, it maintains a deep commitment to having clubs consider the broadest possible pool of talent. Consistent with that commitment, the NFL has promulgated policies to increase diversity among the candidates that clubs consider for leadership positions, including the "Rooney Rule," which requires clubs to interview candidates who are people of color or women for head coach and other senior club positions.

Plaintiffs Brian Flores, Steve Wilks, and Ray Horton are three Black current or former NFL coaches who have had long coaching careers. They filed this action against the NFL and six clubs, purporting to allege that Defendants discriminated against them on the basis of their race when the clubs failed to hire them and/or terminated them. Relevant here, Mr. Flores alleges that the Denver

---

[1]    This Motion addresses the claims asserted by Mr. Flores against the NFL as they relate to the alleged conduct by the Denver Broncos, New York Giants, and Houston Texans, and the newly-added retaliation claim asserted by Plaintiffs (collectively, the "Claims"). Because the proper forum, arbitration or federal court, continues to be litigated as to the remaining claims asserted against the NFL—claims based upon alleged conduct by the Miami Dolphins as to Mr. Flores, the Arizona Cardinals as to Mr. Wilks, and the Tennessee Titans as to Mr. Horton— this Motion does not address those claims, other than for background purposes and without waiver of the NFL's right to arbitrate those claims. The NFL reserves the right to move to dismiss those claims if necessary. The NFL also expressly reserves its rights with respect to the arbitrability of Plaintiffs' arbitration-related retaliation Claim, which is derivative of the claims currently subject to the pending motions for reconsideration.

Broncos and the New York Giants interviewed him for their head coach positions as supposed "shams" to comply with the Rooney Rule. Mr. Flores also alleges that the Houston Texans hired a different Black head coach and did not hire Mr. Flores in retaliation for filing this lawsuit. Mr. Flores attempts to cast those alleged employment actions as part of a League-wide, racially discriminatory practice that resulted in the disparate treatment of, and a disparate impact on, Mr. Flores and other Black applicants for head coach positions. Mr. Flores nowhere identifies what particular, neutral League practice that is, and instead relies on historical rhetoric, scattershot statistics, and conclusory allegations to assert a kitchen-sink of federal and state employment discrimination Claims against the NFL. Mr. Flores's Claims against the NFL should be dismissed for numerous reasons.

First, Mr. Flores's allegations make clear that the NFL was not his employer and cannot be deemed his employer, which is fatal to all of his Claims as a matter of law. Mr. Flores's mere recital of the elements of the "single employer doctrine," unsupported by factual allegations of centralized control over club labor relations, forecloses treatment of the NFL and the clubs as a single employer. The Second Circuit confines this doctrine to instances where plaintiff is employed by a wholly-owned corporate subsidiary or is subcontracted by one employer to another, neither of which applies here. Nor does the Complaint, even as amended, allege any facts to support a plausible inference that the NFL exercised "significant control over the terms and conditions of" Mr. Flores's employment, as required to deem the NFL a "joint employer."

Second, even if the NFL could be deemed Mr. Flores's employer, he still cannot adequately plead Claims against the NFL for disparate treatment, disparate impact, or retaliation under Title VII and Section 1981. Mr. Flores's disparate treatment Claims fail because he does not, and cannot, allege that the NFL took any employment action against him, let alone that it did so with

an intent to discriminate on the basis of his race. Mr. Flores's theory appears to be that, because the NFL and its clubs purportedly have a "history of race discrimination," the Court should infer that the NFL is intentionally discriminating against him. That is neither logical nor legally sufficient, and Mr. Flores's allegations that the NFL's policies were "well-intentioned" and aimed at *expanding* the representation of Black coaches and general managers conclusively negate any such inference. Mr. Flores's disparate impact Claims fail because he does not allege that the NFL promulgated a specific, facially neutral employment practice that resulted in the purported disparate impact he alleges. Instead, he relies on the Rooney Rule—a policy that Mr. Flores alleges is non-neutral—and generalized statements that the alleged discrimination is a "manifestation" of unspecified policies, neither of which is actionable. Finally, Mr. Flores's retaliation Claim against the NFL based on the Texans' decision to hire a different Black head coach fails because he does not, and cannot, allege that the NFL had any involvement, let alone decision-making authority, in the purported retaliatory action.

Third, Mr. Flores's state and city law Claims must be dismissed because he fails to allege that the purported discrimination had an impact on him in New York. Mr. Flores concedes that he has never been employed in New York, and his conclusory allegations that he "regularly worked" there, including by attending football games in Buffalo, are insufficient to infer that the alleged discrimination occurred or otherwise impacted him in New York, as is required. These Claims also fail for the same reasons as Mr. Flores's federal Claims do.

Finally, Mr. Flores, Mr. Wilks, and Mr. Horton have asserted a new Claim alleging that while enforcing its arbitration rights and administering the Court-ordered arbitration, the NFL retaliated against Plaintiffs for filing this lawsuit by supposedly denying them a "fair process" and delaying the arbitral proceedings. Like the other Claims, this one fails as a threshold legal matter

3

because the NFL does not employ Plaintiffs.  Even if it did, the retaliation Claim still would fail because the alleged delay of the proceedings does not constitute an adverse employment action as a matter of law, and the Complaint does not adequately allege that any of the purported actions were motivated by retaliatory intent.

For these reasons and those set forth below, the Claims should be dismissed with prejudice.

## BACKGROUND

### I.    The Parties

*The NFL and the Clubs*.  The NFL is the world's premier professional football league.  It is an unincorporated membership association consisting of 32 member clubs.  ¶ 37.[2]  Each club is "a substantial, independently owned, and independently managed business" that is legally and operationally separate from the NFL.  *Am. Needle, Inc.* v. *Nat'l Football League*, 560 U.S. 183, 196–97 (2010).  Each club employs its own coaches and front office personnel.  ¶¶ 38–44, 121, 145.

Diversity and inclusion are core NFL values.  The NFL has implemented numerous programs to promote diversity in leadership positions across the League and the clubs, including with respect to club hiring for head coach positions.  *E.g.*, ¶ 114 n.25.  Among others, nearly two decades ago, the NFL implemented the Rooney Rule, "requir[ing] NFL teams to interview minority candidates" for any head coach position, a policy the NFL has continually "strengthen[ed]" over time.  ¶¶ 6, 120.  The Rooney Rule "now applies to General Manager and other front office positions, as well as Assistant Head Coach and Coordinator Positions." *Id.*  There is no limit to the number of candidates a club may choose to interview, but the Rooney Rule

---

[2]    This summary is based on the Complaint's allegations—which the NFL assumes to be true for purposes of this motion only—and, where applicable, public records and documents integral to Plaintiffs' Claims.  *Aubrey* v. *New School*, 642 F. Supp. 3d 403, 407, 413 (S.D.N.Y. 2022).

requires clubs to, at a minimum, "interview two minority Head Coach candidates." *Id.* The Complaint also cites documents describing other NFL initiatives to promote employment and advancement opportunities for diverse candidates at the clubs. *See, e.g.*, ¶ 7 n.3.

***Plaintiffs***. Mr. Flores is the defensive coordinator of the Minnesota Vikings. He was employed as head coach of the Miami Dolphins for the 2019 through 2021 seasons and was terminated by the Dolphins in January 2022. ¶¶ 160, 179. In 2019, while defensive coordinator for the New England Patriots, Mr. Flores interviewed for the Broncos' head coach position, and in 2022, Mr. Flores interviewed for the Giants' and Texans' head coach positions, but he was not hired for these roles. ¶¶ 181–228.

Although this Motion addresses only Mr. Flores's Claims against the League related to alleged conduct by the Broncos, Giants, and Texans, and Plaintiffs' newly-asserted arbitration-related retaliation Claim, we include for background information regarding Mr. Wilks and Mr. Horton's discrimination claims against the League. Relevant to their claims, Mr. Wilks was employed as the Arizona Cardinals' head coach during the 2018 season, and Mr. Horton served as the Tennessee Titans' defensive coordinator during the 2014 and 2015 seasons. ¶¶ 241–68; 274–94.

For every position that Mr. Flores, Mr. Wilks, and Mr. Horton have held, they have signed an employment agreement with their respective employer clubs. *E.g.*, ¶ 374; ECF Nos. 50-2–50-7. While the NFL Commissioner is alleged to be required to approve these agreements, ¶ 372, "the NFL was not a party to" any of them. ECF No. 76 at 5.

## II.    The Complaint

### A.    Plaintiffs' Employment Discrimination Claims

Plaintiffs' employment discrimination claims are premised on a series of alleged employment actions taken by six of the League's clubs.

*Mr. Flores*.  Mr. Flores alleges that the Dolphins discriminated against him when the club terminated him following the 2021 season.  ¶ 177.  Mr. Flores acknowledges that he was considered difficult to work with while employed at the Dolphins.  ¶ 175.  Mr. Flores alleges that he participated in two interviews for head coach positions—with the Broncos in January 2019 and the Giants in January 2022—that were purported "sham interview[s]" to "show false compliance with the Rooney Rule."  ¶¶ 181–94, 206–15.  Mr. Flores also alleges that, after he filed this lawsuit, the Texans retaliated against him by hiring Lovie Smith—another Black candidate who Mr. Flores admits was "more than qualified" to be head coach—instead of him.  ¶¶ 216–28.

*Mr. Wilks*.  Mr. Wilks alleges that the Cardinals terminated him after his first season as head coach in 2018.  ¶ 262.  Despite admitting that his 3-13 record was the League's worst, he nevertheless contends that he was not given a "meaningful opportunity to succeed." ¶¶ 243, 262–64.

*Mr. Horton*.  Mr. Horton alleges that his January 16, 2016 interview for the Titans head coach position was a "sham" to demonstrate compliance with the Rooney Rule.  ¶¶ 278–97.

The Complaint does not allege that the NFL participated in these alleged adverse employment actions.  *See* ¶¶ 158–297.  Relevant to this Motion, Mr. Flores pleads no facts suggesting that the NFL was involved in the Broncos', Giants', or Texans' decisions to interview or not hire Mr. Flores.  ¶¶ 181–228, 278–97.  In fact, the Complaint fails to plead any facts suggesting that the NFL was involved in the interview, hiring, or other decision-making processes for *any* of the coaching positions for which Mr. Flores or any other Plaintiff was considered during the relevant period, let alone that the NFL made any such decision on the basis of race.  The Complaint admits, as it must, that each club uses its own "unfettered," "discretionary, subjective hiring practice" when hiring coaches.  ¶¶ 121, 145.  Nor does the Complaint allege that the NFL

employed or controlled the employment of Mr. Flores or any other Plaintiff. To the contrary, it alleges that Plaintiffs' employment agreements were with their respective employer clubs. ¶¶ 374–77.

Mr. Flores amended the Complaint following the NFL's initial motion to dismiss and now alleges (in the same conclusory fashion) that the "Head Coach hiring process operates within a closed and highly interconnected ecosystem" and is governed by "uniform league rules and reporting requirements" that are purportedly "monitored by the NFL league office." *E.g.*, ¶¶ 122–23, 203, 213, 228. But Mr. Flores does not plead any facts describing how the NFL controls the clubs' individual hiring processes. He does not, for example, specify or define the supposed NFL rules and requirements that govern those processes, or how that "ecosystem" is monitored by the "NFL league office." Rather, the Complaint's newly-added allegations confirm that the clubs, not the League, control the processes by which they interview and hire coaching candidates. *E.g.* ¶ 123 ("Candidates routinely participate in multiple interviews *across clubs* during the same hiring cycle"); ¶ 312 (conceding that, since this lawsuit, "[t]he *NFL teams*[]" have not hired Mr. Flores as head coach).

Despite failing to allege that the NFL hires or employs coaches or other club employees, Mr. Flores alleges that the NFL and the clubs have engaged in hiring practices that have had a discriminatory impact on him and the proposed class. ¶¶ 114–30. The Complaint does not support that allegation with any facts. Instead, it devotes dozens of paragraphs to a conclusory recounting of the NFL's supposed "tortured and unacceptable history with race relations" ¶¶ 45–113, without tying that "history" to the alleged employment actions underlying the Claims. Elsewhere, the Complaint alleges that the NFL has undertaken "well-intentioned" initiatives, like the Rooney Rule, to promote diversity in head coach and other club leadership positions, ¶¶ 129–30.

The Complaint also includes statistics from sources like *The Miami Herald* purporting to support an allegation of disparate hiring and retention rates between Black and non-Black candidates for club coaching positions. ¶¶ 134–52. The Complaint does not contain any allegations about the relevant applicant pool for these positions that would permit a probative comparison of relative success rates for Black and non-Black applicants. *See id.* The Complaint also fails to allege that the outcomes purportedly reflected by these statistics were the result of any facially-neutral NFL employment policy or practice. *Id.* The only identified NFL policy or practice alleged to be the basis for these supposed disparities is the Rooney Rule, which is not alleged to be facially neutral.

### B.    Plaintiffs' Arbitration Retaliation Claim

The Complaint also now includes a second retaliation claim against the NFL. ¶¶ 298–312. The Complaint alleges that the NFL, while proceeding pursuant to mandatory arbitration provisions in Plaintiffs' employment agreements under which this Court ordered the parties to arbitrate, retaliated against Plaintiffs because Commissioner Goodell delegated his arbitral authority to Peter Harvey, an arbitrator that Plaintiffs contend without factual support was "biased and beholden to the NFL" and engaged in supposed "dilatory" tactics to delay the arbitration. ¶¶ 298–312. Plaintiffs do not allege that they suffered any purported adverse employment action from this alleged conduct—the only supposed harm the Complaint articulates is a so-called delay in proceedings. Plaintiffs also allege no facts to support the notion that any NFL action taken in connection with the arbitration was motivated by an intent to retaliate against Plaintiffs for filing this lawsuit.

*    *    *

Based on these allegations, Mr. Flores asserts Claims for: (i) disparate treatment discrimination pursuant to 42 U.S.C. § 1981 (Count 1), Title VII of the Civil Rights Act of 1964

8

("Title VII") (Count 11), the New York State Human Rights Law ("NYSHRL") (Count 2), and the New York City Human Rights Law ("NYCHRL") (Count 4); (ii) disparate impact discrimination pursuant to Title VII (Count 12), NYSHRL (Count 3), and NYCHRL (Count 5); and (iii) retaliation under Title VII (Count 13). Mr. Flores purports to assert disparate impact and disparate treatment Claims on behalf of a putative class of all Black Head Coaches, Offensive and Defensive Coordinators, Quarterbacks Coaches and General Managers, and Black candidates for those positions during the limitations period. ¶ 388. Plaintiffs separately assert a Claim for retaliation based upon the conduct in the arbitration under Title VII, Section 1981, the NYSHRL, and NYCHRL (Count 14).

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick* v. *Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). In a discrimination case, the complaint must set forth "well-pleaded factual allegations *plausibly* giv[ing] rise to an inference of unlawful discrimination." *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

For the reasons set forth below, the Complaint fails to state viable Claims.

## I.    Mr. Flores Does Not Adequately Allege Employment Discrimination Claims

### A.    Mr. Flores Does Not Allege that the NFL is His Employer, or a Single or Joint Employer with the Clubs

A threshold reason for dismissal of all of Mr. Flores's Claims is that Mr. Flores does not, and cannot, allege that the NFL has ever been his employer or prospective employer.

9

To state a claim for employment discrimination under Title VII, Section 1981, the NYSHRL, and NYCHRL, plaintiff must allege that defendant was his "employer." *Felder* v. *U.S. Tennis Ass'n,* 27 F.4th 834, 838 (2d Cir. 2022) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims."); *McHenry* v. *Fox News Network, LLC*, 510 F. Supp. 3d 51, 80 (S.D.N.Y. 2020) (same for NYSHRL and NYCHRL); *Fenner* v. *News Corp.*, 2013 WL 6244156, at *8 (S.D.N.Y. Dec. 2, 2013) (same for Section 1981).[3]

To survive a motion to dismiss those claims, a complaint must do more than use the word "employer"; it must allege facts that demonstrate a "formal employment relationship" between plaintiff and defendant. *Chavannes* v. *Bronx Parent Hous. Network, Inc.*, 2022 WL 4124762, at *4 (S.D.N.Y. Sept. 9, 2022). In the absence of such allegations, the only way to assert employer liability against a non-employer is to plead facts sufficient to support one of two "extraordinary" exceptions to the general rule that a corporate entity is not liable for the acts of a separate, related entity: single or joint employer liability. *Id.*; *Arculeo* v. *On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197–98 (2d Cir. 2005); *see also Shiflett* v. *Scores Holding Co.*, 601 F. App'x 28, 29 (2d Cir. 2015) (describing these exceptions as applying in "extraordinary circumstances"). Mr. Flores does not plead any facts that would satisfy these standards.

### 1.     The NFL Did Not Employ Mr. Flores

Mr. Flores cannot allege that the NFL was his formal employer or prospective employer. He does not allege that he interviewed with, was hired by, signed an employment contract with, or

---

[3]     Although the NYSHRL and NYCHRL also apply to interns, freelancers and independent contractors, no such relationships are alleged here. NYC Administrative Code 8-107; NY CLS Exec § 296-c. Similarly, although Section 1981 claims can "under certain circumstances" be brought against "persons other than [plaintiff's] employers," none of those circumstances exist here. *Felder*, 27 F.4th at 848 (staffing agency) (citing *Turley* v. *ISG Lackawanna, Inc.*, 774 F.3d 140, 151 n.6 (2d Cir. 2014)); *Patterson* v. *Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (municipal and individual liability); *see also Brathwaite* v. *Sec. Indus. Automation Corp.*, 2006 WL 8439237, at *5 (E.D.N.Y. Dec. 1, 2006) (assuming without deciding that non-employer could be liable under Section 1981 and dismissing claims where plaintiff alleged defendant had control over employer, but did not allege affirmative participation in alleged discrimination).

10

was paid by the NFL.  *Chavannes*, 2022 WL 4124762, at *4; *Taylor* v. *Bronx Parent Hous. Network*, 2023 WL 3996620, at *3 (S.D.N.Y. June 14, 2023) (plaintiff failed to plead remuneration necessary for employment relationship).  He concedes that he was employed by the Patriots and Dolphins and interviewed for positions with the Broncos, Giants, and Texans, ¶¶ 159–60, 185, 207, 216, and pleads no facts connecting the NFL to any employment action by any of those clubs. ¶¶ 181–228, 278–97.

Nor could he.  Numerous courts have recognized that the NFL is not the employer of club employees.  *See Hillware* v. *New Orleans Saints*, 2015 WL 2250178, at *3 (E.D. La. May 13, 2015) (dismissing Title VII claim by ticket-office supervisor against the NFL because the New Orleans Saints, a "separate entit[y]," employed plaintiff); *Dent* v. *Nat'l Football League*, 902 F.3d 1109, 1114 (9th Cir. 2018) ("The NFL promotes, organizes, and regulates professional football in the United States, but it does not employ individual football players; they are employees of the teams for whom they play.").

2.     The NFL and the Clubs Are Not a "Single Employer"

Two entities typically cannot be considered a "single employer" unless they are a "parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management."  *Arculeo*, 425 F.3d at 198.  That is not the relationship alleged between the NFL and the clubs.  ¶ 37 (NFL is a trade association made up of 32 teams); ECF No. 236 ¶ 154 (showing pictures of 32 separate club owners); *see also Am. Needle*, 560 U.S. at 196–97 ("each of the [NFL] teams is a substantial, independently owned, and independently managed business").

Even if single-employer liability could apply to an unincorporated association, the Complaint would need to "adequately allege that the [NFL and the clubs] constituted a single integrated enterprise" to hold the NFL liable for club employment action.  *Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014).  Courts consider the following factors:  "(1) interrelation

11

of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* at 226. "Although no one factor controls the analysis, the second, 'centralized control of labor relations,' is the most significant." *Id.* at 227; *Cassard* v. *Omnicom Media Grp. Holdings, Inc.*, 2025 WL 3227617, at *7 (S.D.N.Y. Nov. 19, 2025) (failure to plead this factor "creates an almost insurmountable barrier" to pleading single-employer liability).

Mr. Flores fails to adequately allege that the NFL is part of a single, integrated enterprise with centralized control of club labor relations. The Complaint's bare recitation of the legal factors are plainly insufficient to adequately plead single-employer liability. ¶¶ 366, 369; *Britton* v. *Bronx Parent Hous. Network, Inc.*, 2022 WL 4332735, at *2 (S.D.N.Y. Sept. 19, 2022) ("[P]laintiff must do more than simply state legal conclusions and recite the elements of the 'single employer' standard to survive."). The Complaint's other allegations do not support, and in fact foreclose, a finding that Mr. Flores adequately alleges a single-employer relationship. ¶¶ 365–87.

First, the Complaint alleges that the NFL Constitution and Bylaws "dictate[] numerous aspects" of Mr. Flores's employment because they include a section of "prohibited conduct" for those affiliated with the League. ¶¶ 366, 372–73. But, as the Complaint alleges, the requirement that Mr. Flores comply with "NFL 'policies, rules and procedures'" is a term of his employment agreements with the clubs—not the NFL. *See* ¶¶ 375–77. In any event, the "Prohibited Conduct" section of the NFL Constitution merely prohibits anticompetitive behavior related to the integrity of the on-field game, and does not amount to employment control over club coaches and personnel. *See* ECF No. 50-1 at Article IX. Moreover, this section of the Constitution and the other unspecified policies the Complaint references would at most be "[s]hared HR policies and an organization-wide code of conduct," which are insufficient to support a plausible allegation of

12

centralized labor relations. *Cassard*, 2025 WL 3227617, at *5, 7 (collecting cases); *Hill* v. *Major League Soccer LLC*, 2024 WL 3361216, at *5 (S.D.N.Y. July 10, 2024) (personnel provisions in MLS constitution did not "provide a sufficient factual basis to support plaintiff's allegation that [the league] was involved in the decision not to hire him"). The Complaint's new allegations of a "closed ecosystem" for head coach hiring governed by supposed "uniform league rules and reporting requirements," ¶¶ 123, 203, likewise fail to plead anything more than shared policies and purportedly "coordinated HR functions" that are insufficient to allege control, and, like the Complaint's other allegations, "lack sufficient factual detail" to support a claim. *Cassard*, 2025 WL 3227617, at *5–7; *see also Woodell* v. *United Way of Dutchess Cnty.*, 357 F. Supp. 2d 761, 769 (S.D.N.Y. 2005) (granting summary judgment, reasoning that "maintain[ing] a job posting database," "collect[ing] information regarding member organizations' personnel profiles," and "offer[ing] general policy statements or guidelines on employment matters" is insufficient).

Second, the Complaint alleges that the NFL should be considered Mr. Flores's employer because the Commissioner needs to "approve" club employment contracts. ¶¶ 371–78. That allegation does not establish the common management or labor relations control necessary to adequately allege a single-employer relationship between the NFL and the clubs. Comparable allegations regarding a similar employment contract structure were found insufficient in *Hill* v. *Major League Soccer LLC*. There, as here, Major League Soccer ("MLS") allegedly had "the power to review every employment contract created by the clubs," which required plaintiffs to "comply with all League rules." 2024 WL 3361216, at *2, 4. The court held that such allegations were "insufficient to establish a single-employer relationship" because plaintiff "provided no facts to support [his] allegations that MLS controlled the clubs' hiring and firing practices." *Id.* Nothing in the Complaint compels a different result here.

13

Third, the Complaint alleges that the NFL and the clubs are a single employer because the NFL "exists at the behest of and is completely controlled by the NFL teams," its Executive Committee is made up of club representatives, and its Commissioner "serves at the behest and direction of the NFL's member teams."  ¶¶ 369–71.  Those allegations do not render the NFL liable as a single employer because they situate control with the *clubs*, not the League.  *Musiello* v. *CBS Corp.*, 518 F. Supp. 3d 782, 791 (S.D.N.Y. 2021) (finding no single-employer relationship where complaint demonstrated plaintiff's formal employer had control and "[did] not situate such control or decision-making with [defendant]").  In any event, it is well established that executives holding "dual role[s]" at two entities, such as representatives of the clubs holding positions on the Executive Committee, is insufficient to demonstrate control over plaintiff's employment.  *Juhua Han* v. *Kuni's Corp.*, 2020 WL 2614726, at *10–11 (S.D.N.Y. May 22, 2020) (collecting cases).

Even if the above allegations were sufficient, the Complaint still would fail to raise a plausible inference that the NFL and the clubs are a single employer because it alleges other facts that preclude such a finding.  The Complaint alleges that the clubs operate separately from the League and have 32 distinct owners who are "ultimately responsible for leading the entire organization" of their respective clubs and who make "unfettered" employment decisions on coaches and club personnel independently from the NFL.  ¶¶ 121, 145, 157.  Those alleged facts not only contradict the conclusory allegations regarding the NFL's control, but they foreclose a finding of single-employer liability.  *U.S. Football League Player's Ass'n* v. *U.S. Football League*, 650 F. Supp. 12, 15 (D. Or. 1986) (rejecting argument that football league and its member team were a "single employer").

### 3.    The NFL and the Clubs Are Not "Joint Employers"

Although the Complaint pleads in conclusory fashion that the NFL is a "joint employer" of Mr. Flores and the putative class, ¶ 365, it alleges no facts to support such a finding.

14

Separate entities may be found to be a "joint employer" where "there is sufficient evidence that the [non-employing entity] had immediate control over the company's employees." *Bautista* v. *PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022); *see also Felder*, 27 F.4th at 838 (joint employer relationship exists if non-employer "shares in controlling the terms and conditions of a plaintiff's employment"). The joint employer inquiry turns on "the element of control," and specifically, whether "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities." *Felder*, 27 F.4th at 843–44.

Mr. Flores comes nowhere close to alleging that the NFL exercises such control. The Complaint concedes that the NFL has *no* involvement in the hiring, firing, payment, or day-to-day employment of coaches and other club personnel. *Supra* at 7–8. Instead, the Complaint alleges that the clubs engaged in the relevant employment actions: the Patriots "hired" Mr. Flores in 2008; the Dolphins "terminated" him in 2022 and "fail[ed] to pay" him severance; and the Giants, Broncos, and Texans "interviewed" him. ¶¶ 159, 179–81, 207–08, 216, 230, 235. While the Complaint as amended alleges in conclusory fashion that clubs must comply with "[L]eague rules and reporting requirements, including the Rooney Rule and related interview and documentation obligations," ¶ 123, it continues to concede that these obligations do not constrain the clubs' "unfettered, unchecked, and discretionary" hiring decisions. ¶¶ 6, 120–24.

Collectively, these allegations are fatal to a joint employer claim against the NFL. *Felder*, 27 F.4th at 845–46 (USTA not joint employer when it was not alleged to have "any control over [plaintiff's] hiring or firing" or to "have been involved in training him, supervising him, issuing his paychecks, covering his insurance or other benefits, or controlling other means of his employment"); *Mumin* v. *City of New York*, 760 F. Supp. 3d 28, 64–65 (S.D.N.Y. 2024) (similar);

15

*Carpenter* v. *Rapid City Red Dogs, LLC*, 751 N.W.2d 292, 296 (S.D. 2008) (National Indoor Football League not joint employer with club as the league "had no obligation to pay for or to provide other valuable consideration for [players'] services in regular season games").

The allegation that Mr. Flores is required to comply with NFL "policies, rules and procedures" and "employment practices," ¶ 375, does not compel a different result. Such requirements do not equate to NFL oversight of "daily employment activities." *Felder*, 27 F.4th at 843; *Benedict* v. *Manfred*, 2026 WL 836679, at *5 (S.D.N.Y. Mar. 26, 2026) (Major League Baseball not prospective joint employer of scouts seeking employment from MLB clubs despite league-mandated "use of standardized universal employment contracts"); *Moody* v. *Empire Hotel Development, Inc.*, 2023 WL 5480729, at *5 (S.D.N.Y. Aug. 24, 2023) (joint employer liability "requires a plaintiff demonstrate the purported joint employer exercised significant control over the plaintiff's employment, not just operational control or supervision over the plaintiff's formal employer"). While the Complaint alleges that the NFL can fine or discipline club employees for violations of the integrity provisions in the NFL Constitution, it does not allege—nor could it— that the NFL has general authority to discipline, terminate, or otherwise participate in employment decisions regarding club employees. *See* ¶¶ 370–72.

Finally, even if the Complaint could satisfy the joint employer standards, the NFL still could not be liable for the Claims because none of the purported adverse employment actions is attributed directly to the NFL. *Supra* at 6–7. Even in joint employer situations, "the conduct of one employer cannot necessarily be imputed to the other," and "the appropriate focus is on the actual decisionmaker" of the alleged adverse employment action. *Sosa* v. *Medstaff, Inc.*, 2013 WL 6569913, at *3 (S.D.N.Y. Dec. 13, 2013); *see also Porras* v. *IBX Construction*, 2024 WL 3835165, at *7 (E.D.N.Y. Aug. 15, 2024) (joint employer defendant not liable when it did not have

16

"meaningful contact" with plaintiff and did not directly undertake any discriminatory conduct). Mr. Flores pleads no NFL involvement in any of the alleged adverse employment actions taken against him—or that the NFL controlled the club decision-makers. *Cf. Jackson* v. *Nat'l Football League*, 1994 WL 282105, at *5 (S.D.N.Y. June 21, 1994) (granting summary judgment for NFL on Title VII claim that asserted it was liable for acts of the clubs, because NFL did not authorize the alleged discriminatory conduct).

*     *     *

At bottom, each of the statutes under which Mr. Flores asserts Claims requires an employer/employee relationship in order to state an employment discrimination claim. The Complaint does not allege that the NFL is Mr. Flores's formal employer or a single or joint employer with the clubs for purposes of the challenged employment decisions. Therefore, all of Mr. Flores's Claims should be dismissed.

**B.     Even if the NFL Were an "Employer," the Complaint Does Not State a Discrimination Claim Against the NFL Under Title VII or Section 1981**

The Complaint also fails to adequately allege essential elements of Mr. Flores's purported disparate treatment, disparate impact, and retaliation Claims under Title VII and Section 1981.

1.     <u>The Complaint Does Not State a Disparate Treatment Claim Against the NFL</u>

To state a disparate treatment claim under both Title VII and Section 1981, plaintiff must allege facts supporting a plausible inference of intentional discrimination. Under Title VII, plaintiff must allege that "(1) the employer discriminated against him (2) ***because of*** his race." *Vega*, 801 F.3d at 85. Under Section 1981, "plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp.* v. *Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see also Burgis* v. *N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) ("[Section 1981] plaintiffs must sufficiently allege that defendants

17

acted with discriminatory intent."). Disparate treatment can be alleged either as "individual" or "pattern-or-practice" claims of intentional discrimination. *Reynolds* v. *Barrett*, 685 F.3d 193, 202 (2d Cir. 2012). Mr. Flores does not adequately allege either.

>                                   a. *Mr. Flores Does Not Allege Individual Intentional Discrimination by the NFL*

Mr. Flores's individual disparate treatment claim fails because he does not allege that the NFL acted with discriminatory intent in connection with any adverse employment action.

Although the Complaint purports to allege that Mr. Flores was subject to various adverse employment actions, it nowhere alleges that the NFL participated in those actions, let alone did so under circumstances that support an "intent to discriminate against [Mr. Flores] on the basis of his race." *Francis* v. *Kings Park Manor, Inc.*, 992 F.3d 67, 80 (2d Cir. 2021); *see also Stefanoni* v. *Darien Little League, Inc.*, 101 F. Supp. 3d 160, 182–83 (D. Conn. 2015) ("There is not a single factual allegation to support the notion that the Darien Little League, as an organization, . . . exhibited racial bias in the hiring of its coaching staff."). The Complaint does not allege, for example, that any NFL employee "ever commented on" Mr. Flores's race, *Ikedilo* v. *Statter*, 2020 WL 5849049, at *9 (S.D.N.Y. Sept. 30, 2020), or engaged in "racially discriminatory statements or conduct" towards him. *Rubert* v. *King*, 2020 WL 5751513, at *7 (S.D.N.Y. Sept. 25, 2020).

Instead, the Complaint recites an alleged "history of race discrimination in the NFL" in an unavailing attempt to raise an inference of discriminatory intent by the NFL. *See* ¶¶ 45–63, 313–64. But plaintiff cannot allege discriminatory intent by merely "anchor[ing] h[is] claim to the allegedly racist treatment of others in [the] workplace." *Farmer* v. *Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 328–29 (S.D.N.Y. 2020); *see also Rubert*, 2020 WL 5751513, at *7 (denying discrimination claim when plaintiff "point[s] to no racially discriminatory statements or conduct by his Walmart supervisors, or anyone conceivably involved in the decision to fire him," despite

18

a purported "history of discrimination and illegal conduct" at Walmart); *Stefanoni*, 101 F. Supp. at 183 (allegations surrounding local little league's "history of turning a blind eye to racist comments" and "racist and bigoted" statements by league board members did not raise "plausible inference of racially discriminatory intent, much less an inference that such intent impacted [d]efendants' actions against" plaintiff). Merely asserting, as Mr. Flores does, that discriminatory intent should be inferred from a purported "history of discrimination" is insufficient to adequately plead a disparate treatment claim. *See Rubert*, 2020 WL 5751513, at *7.

If anything, the Complaint's allegations *undermine* an inference of intentional discrimination by the NFL. The Complaint describes the Rooney Rule—which Mr. Flores admits applies to him—as "well-intentioned" and alleges that since its inception, the NFL has taken action to "amend" it "several times in an effort to strengthen its impact on diversity and inclusion." ¶¶ 120, 130. The Complaint further cites sources that state that "[t]here is no question that league and team executives (including many team owners) are committed to creating a more diverse and inclusive front office." ¶ 129 n.27. These allegations directly refute any inference of discriminatory intent by the NFL.[4]

> b. *Mr. Flores Does Not Allege That Intentional Discrimination Is the NFL's Pattern or Practice*

Mr. Flores likewise does not allege a viable pattern-or-practice theory of disparate treatment against the NFL. To do so, the Complaint must allege that the NFL engaged in "a pervasive policy of intentional discrimination." *United States* v. *City of New York*, 717 F.3d 72, 84 (2d Cir. 2013). Specifically, it must plead facts supporting a plausible inference that intentional

---

[4]   Although he does not bring them as separate claims, Mr. Flores purports to assert aiding and abetting liability as to the NFL for his disparate treatment claims under Section 1981, the NYSHRL, and NYCHRL. ¶¶ 423, 428, 437. No such claim exists under Section 1981. *Cardwell* v. *Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *41 (S.D.N.Y. Oct. 24, 2020). And as discussed, Mr. Flores has not adequately pleaded that the NFL "actually participated" in the alleged discrimination, as required for an aiding and abetting claim. *McHenry*, 510 F. Supp. 3d at 86.

19

discrimination "was the [League's] standard operating procedure—the regular rather than unusual practice." *Frazier* v. *Morgan Stanley*, 2018 WL 11585450, at *9 (S.D.N.Y. Nov. 29, 2018).

The Complaint fails to meet that standard. There are no factual allegations to support the inference that the NFL engages in intentional discrimination at all, let alone as its regular practice. Any specific instances of race discrimination alleged in the Complaint, *see* ¶¶ 313–64, "stem from the decisions and actions of individual" (and multiple different) clubs, and not from any identified "intentionally discriminatory policy or practice" by the League more broadly. *Frazier*, 2018 WL 11585450, at *11; *Idrees* v. *City of New York Dep't of Parks & Recreation*, 2005 WL 1026027, at *6 ("[G]eneralized allegations that discrete discriminatory acts constitute a pattern or practice of unlawful discrimination are insufficient."); *Craig* v. *Yale Univ. Sch. of Med.*, 2013 WL 789718, at *10 (D. Conn. Mar. 4, 2013) (granting summary judgment, reasoning that when "the probative evidence of discrimination is confined . . . [to] individual incidents, subjective decision making methods are not sufficient to establish a pattern or practice of discrimination"). Here too, the generic allegations of a "history of race discrimination at the NFL" are insufficient to adequately allege a regular practice of intentional employment discrimination. The Complaint contains no allegations as to when, how, or how often the NFL allegedly discriminated in connection with any sort of employment practice on the basis of race. *See* ¶¶ 1–5, 45–63. References to a lack of diversity within the League and the clubs are insufficient without factual allegations that the lack of diversity is attributable to a specific practice of intentional race discrimination. *Barrett*, 39 F. Supp. at 430; *City of New York*, 717 F.3d at 83.

In fact, the Complaint alleges that the NFL has implemented numerous programs to promote diversity, including the "well-intentioned" Rooney Rule that has been "strengthen[ed]" in recent years. ¶¶ 120, 130; *cf. City of New York*, 717 F.3d at 86 (program designed to promote

20

diversity was "probative of the absence of an employer's intent to discriminate"). The Complaint even acknowledges that during the NFL's supposed "history" of discrimination, numerous Black coaches were and continue to be hired into coaching and front office positions. ¶¶ 125, 132, 147, 151. These allegations undermine any inference that intentional discrimination is the NFL's "standard operating procedure." *Barrett*, 39 F. Supp. at 430.

### c. The Complaint's Statistical Allegations Are Flawed and Do Not Save Mr. Flores's Disparate Treatment Claims

To the extent that the Complaint alleges that the number of Black coaches and general managers hired or retained by the clubs reflects intentional discrimination by the NFL (as an individual or pattern or practice claim), those allegations, too, are insufficient to state a disparate treatment claim. *See* ¶¶ 125–57. "To show discriminatory intent . . . based on statistics alone, the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible nondiscriminatory explanations very unlikely." *Raymond* v. *City of New York*, 317 F. Supp. 3d 746, 761 (S.D.N.Y. 2018). Statistics that rely on "raw percentages" of white and non-white individuals selected for employment, "without providing any detail" as to the "qualifications of individuals in the applicant pool and of those hired for each position" do not suffice. *Burgis*, 798 F.3d at 70.

Statistical allegations regarding the comparative number of Black and non-Black head coaches hired or retained by clubs do not, and cannot, support an inference of intentional discrimination by the NFL. As the Complaint elsewhere alleges, the NFL does not participate in clubs' "discretionary" decisions to hire or retain head coaches, and alleged statistical discrepancies across different clubs with concededly different hiring processes cannot raise a plausible inference of a discriminatory practice by a single employer, let alone an intentionally discriminatory one. *E.g.*, ¶¶ 121, 145. In any event, the Complaint's reliance on "raw percentages" of Black candidates

21

hired into club positions is the sort of bare statistical allegation that courts in the Second Circuit reject. *Burgis*, 798 F.3d at 70; *see also Raymond*, 317 F. Supp. 3d at 761–62 (statistics reflecting percentages of minority and white individuals in police officer performance monitoring program were insufficient to show discriminatory intent); *Alameda* v. *Ass'n of Social Work Bds.*, 2024 WL 4302389, at *1, 5 (S.D.N.Y. Sept. 25, 2024) (alleged disparities in "historical exam pass rate data" for white and non-white applications insufficient to raise inference of discriminatory intent). The Complaint is devoid of allegations regarding the size, demographic composition, or qualifications of the relevant candidate pools, and therefore no plausible inference of discriminatory intent can be drawn from the comparatively lower number of Black candidates hired into head coach positions. *E.g.*, *Rosario* v. *Town of Mount Kisco*, 2020 WL 764280, at *8 (S.D.N.Y. Feb. 14, 2020) (no inference of discrimination raised by statistics on disparate enforcement of housing code violations where complaint "shed[] no light on the general makeup of inhabitants"). The Complaint simply does not permit the Court to "rule out other plausible non-discriminatory explanations" for any alleged statistical discrepancies, *id.*, particularly in light of its allegation that clubs employ numerous other, non-race based "objective metrics" when making hiring decisions, ¶ 121.

### 2. Mr. Flores Does Not State a Disparate Impact Claim Against the NFL

Mr. Flores fails to state viable Claims for disparate impact discrimination under Title VII. ¶¶ 471–74. Unlike disparate treatment claims, disparate impact claims do not require proof of discriminatory intent. Instead, they focus on employment practices that are facially neutral but disproportionately affect members of a protected class. Still, to adequately state a disparate impact claim, plaintiff must "set forth enough factual allegations to plausibly support each of the three basic elements:" (1) "a specific employment practice or policy;" (2) "a disparity;" and (3) "a

22

causal relationship between the two." *Mandala* v. *NTT Data, Inc.*, 975 F.3d 202, 207–09 (2d Cir. 2020).

Mr. Flores's purported disparate impact Claims fail because Mr. Flores does not allege any facially neutral "specific employment practice" of the League that purportedly had a disproportionate impact on Black coaches. *Collette* v. *St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 276–77 (S.D.N.Y. 2001); *see also Rodriguez* v. *Beechmont Bus Service, Inc.*, 173 F. Supp. 2d 139, 148 (S.D.N.Y. 2001) (dismissing claim for failing to "adequately identify a neutral policy that is alleged to have a disproportionate impact on Hispanic employees"). Mr. Flores alleges in conclusory fashion that the NFL and the clubs "have engaged in hiring and retention policies, practices and/or processes which have had a discriminatory impact," ¶¶ 432, 441, 472, and that the alleged discrimination is "consistent with and a manifestation of the policies and practices within the NFL," ¶¶ 205, 214, 228, without ever identifying any specific employment policy or practice. That is inadequate to survive a motion to dismiss. *Doheny* v. *Int'l Bus. Machines, Corp.*, 714 F. Supp. 3d 342, 364 (S.D.N.Y. 2024) ("[m]erely identifying a generalized policy or an imbalance in the work force does not suffice" to state a disparate impact claim); *Byrnie* v. *Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001) ("Simply gesturing towards the hiring [or retention] process as a whole will not satisfy the requirement that the plaintiff identify a specific employment practice that is the cause of the statistical disparities."). Moreover, the allegation that each club employs its own "discretionary, subjective hiring practice when selecting Head Coaches" undermines any conclusory claim that an NFL-wide hiring policy has had a disparate impact on Black candidates. ¶ 121; *see also* ¶ 145 (describing "unfettered, unchecked and discretionary processes [] used to hire Coordinators, Quarterback Coaches, and General Managers"). Nor can the Complaint's statistical allegations substitute for the required

23

identification of a facially neutral policy that results in the alleged disparate impact. *See Brown* v. *Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (general statistics unconnected to any policy are insufficient to state disparate impact claim).

Mr. Flores's reliance on the Rooney Rule is unavailing for two reasons. First, the specific practice at issue in a Title VII disparate impact claim must be a "facially neutral employment policy." *Toussaint* v. *City of New York*, 2020 WL 3975472, at *2 (S.D.N.Y. July 14, 2020). The Rooney Rule is not alleged to be facially neutral. ¶¶ 120, 130; *see Local 2507, Uniformed EMTs* v. *City of New York*, 2024 WL 916520, at *8–9 (S.D.N.Y. Mar. 4, 2024) (rejecting disparate impact claim based upon allegation "that the City maintains a policy to steer women and non-white applicants to EMS positions," as it was "not a facially neutral practice"); *Crane* v. *Holder*, 66 F. Supp. 3d 1391, 1405 n.14 (N.D. Ala. 2014) (FBI's diversity program was not "a facially neutral policy").

Second, the conclusory allegation that the Rooney Rule has "failed to yield any meaningful change," ¶ 120, does not allege the requisite disproportionate impact on Black coaches. Another court in this District recently rejected a similar theory with respect to a similar diversity practice employed by MLS. *Major League Soccer*, 2024 WL 3361216, at *6. In that case, MLS was alleged to have had a "Diversity Initiative . . . aimed at facilitating the process of consideration of minorities for coaching staff positions" by requiring each team to interview at least one minority candidate for each position. *Id.* at *2. The plaintiff alleged that, due to a failure by MLS to adequately supervise compliance with the policy, including by "delegation of anti-discrimination compliance to managers at the Club level," the policy failed, and he suffered discrimination that gave rise to a disparate impact claim. *Id.* at *6. The Court rejected that theory as to MLS, noting the complaint "failed to identify any specific policy or practice by MLS that impacted any decision

24

not to hire him," and that plaintiff could not rely on the league's "diversity initiatives" as well as "allegations . . . that there is a bottom line racial imbalance in the work force" to state a disparate impact claim. *Id.* Mr. Flores attempts to do the same here.

### 3. Mr. Flores Does Not State a Retaliation Claim Against the NFL Based Upon the Texans' Decision Not to Hire Him

Mr. Flores also purports to assert a Title VII Claim for retaliation against the NFL related to the Texans' decision to hire Lovie Smith—a Black man who was "more than qualified" to be head coach—instead of Mr. Flores. ¶¶ 225–28, 475–79. To state that Claim, the Complaint must allege that the League "discriminated—or took an adverse employment action—against him . . . because he has opposed an[] unlawful employment practice." *Vega*, 801 F.3d at 90. The Complaint contains no factual allegations supporting the notion that the NFL participated in the Texans' decision to hire Mr. Smith. *See id.* While Mr. Flores speculates, without alleged factual support, that the NFL may have been involved in the Texans' decision to hire Mr. Smith instead of him, ¶ 227, that assertion is too conclusory to support his Claim and cannot be credited in light of other allegations that the clubs alone make hiring decisions for their employees. ¶¶ 120–21; *Henry* v. *NYC Health & Hosp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014); *Stefanoni*, 101 F. Supp. 3d at 182 (dismissing discrimination claim against Little League Baseball, Inc. when it was not alleged that it "had any ability to control or impact the hiring of coaches").

### C. The Complaint Does Not State a Discrimination Claim Against the NFL Under the NYSHRL or NYCHRL

Mr. Flores asserts disparate impact and disparate treatment discrimination Claims against the NFL under the NYSHRL and NYCHRL. These Claims fail because (i) the Complaint does not plead that the alleged discrimination had an impact in New York State or New York City; and (ii) as with the federal law Claims, the Complaint does not adequately plead the required elements of either theory.

25

1.  The Complaint Fails to Plead the Alleged Discrimination Had Any Impact in New York State or New York City

To state a claim under the NYSHRL or NYCHRL, non-residents of New York "must plead and prove that the alleged discriminatory conduct had an impact in New York State (as to the NYSHRL) or New York City (as to the NYCHRL)." *Trotter* v. *National Football League*, 737 F. Supp. 3d 172, 192 (S.D.N.Y. 2024).

To do so, the Complaint must allege that Mr. Flores experienced the impact of the alleged discriminatory conduct in New York. *Hoffman* v. *Parade Publications*, 15 N.Y.3d 285, 291–92 (2010). It does not. The Complaint alleges: (i) that New York City serves as the NFL's "central hub" where it "regularly transacts," and states in entirely conclusory fashion that the League "exerts control" "over the hiring, retention and termination, as well as the ongoing terms and conditions of employment" of Mr. Flores, and purportedly provided "approval and oversight" as to the alleged discrimination from New York City; and (ii) that Mr. Flores "regularly worked" in New York "in connection with interactions with the NFL, as well as football games played in Buffalo." *E.g.*, ¶¶ 180, 366–67, 381. Even if the Complaint included factual allegations in support of these assertions—it does not—they would not satisfy the impact test. Nearly identical allegations were rejected in *Trotter*, where plaintiff *was* an employee of the NFL, and allegations that the "NFL league office is located in New York City," that "decisions related to [Plaintiff's] employment and termination were made in New York City," and that "[Plaintiff] worked in New York City . . . during his employment for the NFL" were not sufficient to demonstrate the requisite impact. *Trotter*, 737 F. Supp. 3d at 192–93; *see also Hoffman*, 15 N.Y.3d at 288–91 (plaintiff failed to plead impact even though defendant was headquartered in New York City, plaintiff attended quarterly meetings there, and defendant managed plaintiff from and made and executed the decision to terminate plaintiff in New York City).

26

2.    The Complaint Does Not Allege Disparate Treatment or Disparate Impact Discrimination Under the NYSHRL or NYCHRL

Even if the impact test could be satisfied (it cannot), the Complaint fails to adequately plead NYSHRL or NYCHRL discrimination Claims under either a disparate treatment or disparate impact theory, for substantially the same reasons identified above.

Following the NYSHRL's amendment in 2019, the standard for claims under the NYSHRL is "closer" to the standard applied to NYCHRL claims.[5] *Lee* v. *Riverbay Corp.*, 751 F. Supp. 3d 259, 274–75 (S.D.N.Y. 2024).    Regarding disparate treatment, the statutes require that the Complaint "allege facts on the basis of which a court can find differential treatment . . . because of a discriminatory intent." *Soloviev* v. *Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015); *see also Mihalik* v. *Credit Agricole Cheuvruex N. Am.*, *Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (under NYCHRL, "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive").    As discussed, the Complaint makes no allegation that the NFL was involved in any of the alleged adverse employment actions or that they were taken with any discriminatory intent by the NFL.    *Supra* at 18–20.

Regarding disparate impact, the NYSHRL and NYCHRL require that "a policy or practice of a covered entity . . .  results in a disparate impact to the detriment" of a protected group.    *Fitchett* v. *City of New York*, 2021 WL 964972, at *22, 24 (S.D.N.Y. 2021).    The identified policy must be "facially neutral." *Id.*    As described above, the only League-wide policy the Complaint describes is the Rooney Rule, which is alleged to be a diversity initiative that is not facially neutral.    *Supra* at 24–25.    Therefore, even under the "more permissive" standard, because Mr. Flores has "not

---

5    While the Complaint does not adequately allege race discrimination under the more lenient standard under the amended NYSHRL, to the extent the Court disagrees, claims based on conduct before the NYSHRL's October 2019 amendment are evaluated under the Title VII and Section 1981 standard. *Lee*, 751 F. Supp. 3d at 274 & n.2. Mr. Flores's Claims based on his January 2019 Broncos interview occurred prior to the amendment and therefore those portions of his NYSHRL Claims fail for the reasons stated above.

identified a facially neutral policy that . . . has yielded racially disparate" results, he has not stated

a disparate impact claim. *Fitchett*, 2021 WL 964972, at *24.

### D. Mr. Flores's Claims Related to His Interview with the Broncos Are Time-Barred

The Broncos' Motion to Dismiss argues that Mr. Flores's claims against the Broncos based

on his January 2019 interview should be dismissed as time-barred. *See* ECF No. 282 at 8–11. The

NFL joins that argument and incorporates it by reference, as it warrants dismissal of Mr. Flores's

Claims against the NFL to the extent they are derivative of the time-barred claims against the

Broncos.

## II. Plaintiffs' Arbitration-Related Allegations Fail to State a Claim for Retaliation

Plaintiffs assert a retaliation Claim under Title VII, Section 1981, the NYSHRL, and

NYCHRL based upon the arbitration proceedings ordered by the Court. ¶¶ 480–83. This Claim

fails for numerous reasons.[6]

First, an employment-related retaliation claim under any of the at-issue statutes requires an

employment relationship between plaintiff and defendant. *Supra* at 10; *see also Stinson* v. *City

Univ. of New York*, 2018 WL 2727886, at *9 (S.D.N.Y. June 6, 2018). The NFL was not Plaintiffs'

employer. *Supra* at 10–17; *see also* ¶¶ 241–68 (Mr. Wilks was employed by the Cardinals);

¶¶ 274–94 (Mr. Horton was employed by the Titans).

Second, Title VII and Section 1981 require plaintiff to plead that defendant took a

"materially adverse employment action" against plaintiff in response to plaintiff engaging in a

protected activity. *Cadet* v. *All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 222, 224

---

[6]    To the extent this Claim is attempting to assert liability against the NFL based on the actions taken by the arbitrators (Mr. Goodell and Mr. Harvey), those actions are subject to arbitral immunity and cannot form the basis of a claim. *Austern* v. *Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) (holding that "all functions that are integrally related to the arbitral process" are subject to arbitral immunity).

(S.D.N.Y. 2022); *see also Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 68 (2006) (Title VII protects "from retaliation that produces an injury or harm."). Plaintiffs' complaint is that the arbitrators conducting the Court-ordered arbitration allegedly took or failed to take certain actions—including that Mr. Goodell determined that this dispute was "football oriented" (a determination that the Court held could be properly decided by Mr. Goodell as the arbitrator, despite Plaintiffs' allegations of bias, ECF No. 76 at 17 n.14), and that Mr. Harvey purportedly failed to make arbitral disclosures or properly "advance the arbitration proceedings." ¶¶ 298–312. These allegations do not establish any harm cognizable as an adverse employment action.[7] *See Cadet*, 632 F. Supp. 3d at 224–25 (dismissing retaliation claim where plaintiff failed to explain how failure to provide legally required notice caused plaintiff harm). At most, they allege the arbitration proceedings were delayed. But from the outset of this litigation, Plaintiffs opposed any of their claims proceeding in arbitration, and the claims are now back before this Court (although that issue remains pending on motions for reconsideration). That in the intervening period the arbitration proceeded before Mr. Goodell and Mr. Harvey and purportedly did not proceed in a timely manner are not harms sufficient to allege retaliation as a matter of law. *See LaFontant* v. *Citigroup Glob. Markets Inc.*, 2005 WL 2978944, at *7 (S.D.N.Y. Nov. 4, 2005) ("[H]aving one arbitral forum resolve [a claimant's] dispute rather than another is not cognizable as an adverse employment action"); *Gaines* v. *New York City Transit Auth.*, 528 F. Supp. 2d 135, 149–50 (E.D.N.Y. 2007), *aff'd*, 353 F. App'x 509 (2d Cir. 2009) (delay in arbitral proceedings by union "may have caused [ ] inconvenience," but "any assertion that [it] had a negative impact on plaintiff's employment would be pure speculation since his grievance was never finally

---

[7]    Mr. Flores's allegation that he "has not been offered a Head Coach job since starting this lawsuit," ¶ 311, is not a harm alleged to be caused by the purported actions of the arbitrators that form the basis of his Claim and cannot constitute the requisite adverse employment action. *See* ¶¶ 298–312.

arbitrated"); *Brown* v. *City of Syracuse*, 2008 WL 5451020, at *4 (N.D.N.Y. Dec. 31, 2008) (defendant's withdrawal of arbitration settlement offers "cannot be an adverse employment decision").

Third, the Complaint does not, as it must, allege retaliatory intent. Under Title VII and Section 1981, plaintiff must plead that retaliatory intent was the "but-for cause" of the adverse action. *Lee*, 751 F. Supp. 3d at 280. Under the NYSHRL and NYCHRL, plaintiff must plead that the purported action "was caused at least in part by discriminatory or retaliatory motives." *Knight* v. *MTA*, 2026 WL 875339, at *3 (E.D.N.Y. Mar. 31, 2026). Plaintiffs' retaliation Claim fails under either standard, because the Complaint is wholly devoid of facts that allege that the purported actions by the NFL while pursuing compelled arbitration, or by Mr. Goodell or Mr. Harvey, were motivated even in part to retaliate against Plaintiffs for filing this lawsuit. The *only* allegation with respect to motive is entirely conclusory: that "following the commencement of this litigation, the NFL and Mr. Goodell have been determined to ensure that Plaintiffs do not receive a fair process for adjudication of their claims." ¶ 298. Because this allegation contains no factual allegations in support, it is insufficient to establish the causation necessary to survive a motion to dismiss. *Bledsoe* v. *Delta Air Lines, Inc.*, 2024 WL 1142321, at *7 (E.D.N.Y. Mar. 15, 2024).

To the extent that Plaintiffs' retaliation Claim is a challenge to the impartiality of the arbitrators, the applicable remedy for such a claim is provided by Section 10 of the Federal Arbitration Act—not federal employment law. *See Aviall, Inc.* v. *Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) ("attack[s] upon the qualifications or partiality of arbitrators" can only be entertained in connection with a motion to vacate or affirm a final award); *see also* ECF No. 76 at 23 (Plaintiffs' "recourse" for alleged arbitrator bias is review pursuant to Section 10(a)(2)).

30

Fourth, as for the NYSHRL and NYCHRL Claims, Plaintiffs have not alleged the necessary impact in New York State or New York City. *Hardwick* v. *Auriemma*, 116 A.D.3d 465, 467–68 (2014) (affirming dismissal of retaliation claim where plaintiff made "no claim that the alleged retaliatory acts . . . had any impact on the terms, conditions or extent of her employment with the NBA within the boundaries of New York"); *supra* at 26–27.  The Complaint contains no allegations that any Plaintiffs felt the impact of the alleged retaliation—to the extent that there was any harm whatsoever—in New York.  ¶¶ 298–312.

Finally, Plaintiffs cannot bring a Title VII retaliation Claim because they did not exhaust their administrative remedies by filing a charge with the EEOC regarding these allegations. *Francis* v. *City of New York*, 235 F.3d 763, 768 (2d Cir. 2000).

## <u>CONCLUSION</u>

The NFL respectfully submits that the Claims should be dismissed with prejudice.

Dated: New York, New York
      June 5, 2026

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**

By:  */s/ Loretta E. Lynch*
Loretta E. Lynch
Brad S. Karp
Lynn B. Bayard
Brette Tannenbaum
B. Aubrey Smith
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3900
lelynch@paulweiss.com
bkarp@paulweiss.com
lbayard@paulweiss.com
btannenbaum@paulweiss.com
asmith@paulweiss.com

*Attorneys for Defendant the National Football League*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law in Support of Defendant the National Football League's Motion to Dismiss complies with the requirements of Local Civil Rule 7.1(c) for the United States District Courts for the Eastern and Southern Districts of New York. According to the word processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Civil Rule 7.1(c), is 10,226 words.

*/s/ Loretta E. Lynch*
Loretta E. Lynch

33