UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/15/2026

BRIAN FLORES, STEVE WILKS, and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE, TITANS and JOHN DOE TEAMS 1 through 26,

Defendants.

22-CV-871 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

This case continues to linger at the starting block. Or, to use a more fitting metaphor, this case continues to linger as the teams mill about in the players' tunnels. Months ago, the Court granted Plaintiffs' Motion for Reconsideration, Dkt. 153 ("Motion"); that Order moved this entire case out of arbitration and into district court litigation, Dkt. 182 ("February 2026 Order"). The Tennessee Titans, Arizona Cardinals, and Miami Dolphins, the teams affected by the February 2026 Order, moved for reconsideration. Dkts. 187, 194, and 196. For the following reasons, Defendants' Motions for Reconsideration are DENIED. All of the claims against the Titans, Cardinals, and Dolphins — and related claims against the NFL — must now proceed in court.

## FACTUAL BACKGROUND[1]

Plaintiffs Flores, Wilks, and Horton had employment contracts with various NFL teams at which they coached. While the exact terms of those contracts vary, in relevant part each contract incorporates the NFL Constitution and provides that the NFL Commissioner will oversee an alternative dispute resolution process for all disputes arising between the parties. *See, e.g.*, Exhibit C, Flores-Dolphins Agreement, Dkt. 155-3 at §§ 7, 12.2; Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at §§ 9, 10(a); Exhibit E, Horton-Titans Agreement, Dkt. 155-5 at § 6(a).

The Flores-Dolphins and Wilks-Cardinals Agreements incorporate the NFL Dispute Resolution Procedural Guidelines ("DRPG"). *See* Exhibit C, Flores-Dolphins Agreement, Dkt. 155-3 at 12–16; Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at 8–12. The Horton-Titans Agreement does not. *See* Exhibit E, Horton-Titans Agreement, Dkt. 155-5. Different versions of the DRPG exist, but, broadly, the DRPG outlines the procedural guidelines governing disputes before the NFL Commissioner. *See* NFL DRPG, Exhibit F, Dkt. 155-6 ("DRPG").

The NFL Constitution, DRPG, and the Horton-Titans Agreement do not contain severance provisions. *See* Constitution and Bylaws of the NFL, Dkt. 72-1; DRPG; Exhibit E, Horton-Titans Agreement, Dkt. 155-5. The Flores-Dolphins and Wilks-Cardinals Agreements contain severance provisions. *See* Exhibit C, Flores-Dolphins Agreement, Dkt. 155-3 at § 12.4; Exhibit D, Wilks-Cardinals Agreement, Dkt. 155-4 at § 10(f).

## PROCEDURAL HISTORY

Shortly after this lawsuit was filed in February 2022, Defendants moved to compel arbitration of Plaintiffs' claims. Mot. to Compel, Dkt. 47. On March 1, 2023, the Court

---

[1] The Court assumes familiarity with the underlying facts, which are set forth in detail in the Court's multiple opinions in this case, but briefly recounts certain facts relevant to this Opinion.

compelled arbitration of the claims brought by Flores against the Dolphins, by Wilks against the Cardinals, and by Horton against the Titans, as well as all related claims against the NFL; the Court declined to compel arbitration of Flores's claims against the Giants, Broncos, and Texans, as well as all related claims against the NFL.[2] March 1, 2023, Order, Dkt. 76 ("March 2023 Order"). Plaintiffs and some Defendants — the Giants, Broncos, Texans, and the NFL — moved for partial reconsideration of the March 2023 Order, and the Court denied both motions. Pls.' Mot. for Recons., Dkt. 79; Defs.' Mot. for Recons., Dkt. 81; July 25, 2023, Order, Dkt. 102 ("July 2023 Order").

Plaintiffs and the Defendants as to whom the Motion to Compel Arbitration had been denied appealed. Notice of Interlocutory Appeal, Dkt. 113; Notice of Cross Appeal, Dkt. 122. The Second Circuit held that it lacked jurisdiction over Plaintiffs' cross-appeal of the Court's decision to compel arbitration as to certain of the claims. May 2, 2024, Mandate of USCA, Dkt. 132. The Second Circuit, however, had jurisdiction and decided the merits of Defendants' appeal. October 17, 2025, Mandate of USCA, Dkt. 170.

The Second Circuit affirmed this Court on alternative grounds, finding that this Court had not erred in denying Defendants' Motion to Compel Arbitration because the arbitration provision in the NFL Constitution is unenforceable. *Flores v. New York Football Giants, Inc.*, 150 F.4th 172 (2d Cir. 2025), *cert. denied*, No. 25-790, 2026 WL 1463191 (U.S. May 26, 2026). Specifically, the Second Circuit held that the NFL failed to provide a neutral forum that could even be called an "arbitration" and that Flores could not effectively vindicate his statutory rights in the forum that the NFL provided, given the designation of the NFL Commissioner as the

[2] The Court uses the parties' colloquial names for ease. Full names are available in the case caption. The Titans have alerted the Court to a change in the entity's formal name, *see* Titans' Mem. of Law in Supp. of Mot. for Recons., Dkt. 188 ("Titans' Mot.") at 1 n.1, but the team has not updated the docket to reflect this change, so the caption reflects its former name.

default arbitrator and the lack of express arbitral procedures. *Id.* Petitions for rehearing *en banc* and *certiorari* were both denied. Second Circuit Order, Dkt. 165-1; *Flores v. New York Football Giants, Inc.*, No. 25-790, 2026 WL 1463191 (U.S. May 26, 2026).

After the Second Circuit decided Defendants' appeal, Plaintiffs filed a Motion for Reconsideration of the portion of the March 2023 Order that had compelled arbitration of Plaintiffs' claims against the Titans, Cardinals, and Dolphins.[3] Pls.' Mot. for Recons., Dkt. 153. Plaintiffs argued that the Second Circuit's decision necessarily affected the correctness of the portion of the March 2023 Order that compelled arbitration of the Flores/Dolphins, Wilks/Cardinals, and Horton/Titan claims.[4] Pls.' Mem. of Law in Supp. of Mot. for Recons., Dkt. 154. The Court agreed and granted Plaintiffs' Motion; the net effect of the February 2026 Order is that Defendants' Motion to Compel Arbitration has now been denied in full. February 13, 2026, Order, Dkt. 182.

On February 27, 2026, the Titans, Cardinals, and Dolphins filed Motions for Reconsideration of the February 2026 Order. Dkts. 187, 194, and 196. The teams, which are now represented by separate counsel, *see, e.g.*, Notices of Appearance, Dkts. 183, 185, 191, move for reconsideration (or revision) pursuant to some combination of Local Civil Rule 6.3 ("Rule 6.3"), Fed. R. Civ. P. 59(e) ("Rule 59(e)"), and Fed. R. Civ. P. 54(b) ("Rule 54(b)"). Notices of Mots. for Recons., Dkts. 187, 194, and 196. Plaintiffs oppose those Motions. Pls.' Mem. of Law in Opp'n to Mot. for Recons., Dkt. 215.

The three teams moving for reconsideration have some distinct arguments, but they advance many of the same themes. The Titans argue that the Horton/Titans claim is "completely

---

[3] The exact procedural basis for Plaintiffs' Motion was litigated. The Court ultimately viewed the Motion as a motion for revision pursuant to Fed. R. Civ. P. 54(b). February 2026 Order at 7–8.

[4] For ease, the disputes will be referred to using the format: "[Plaintiff's name]/[team name]."

different" from the other Plaintiffs' claims and is genuinely independent of the NFL Commissioner; thus, they argue, this Court erred in denying their motion to compel arbitration of that claim. Titans' Mot. at 6–10. Alternatively, the Titans ask the Court to honor the parties' intent in contracting and appoint an alternate arbitrator rather than requiring the case to proceed in court. *Id.* at 10–11. The Cardinals argue that the February 2026 Order is clearly erroneous. Cardinals' Mem. of Law in Supp. of Mot. for Recons., Dkt. 195 ("Cardinals' Mot.") at 4–9. The Cardinals also ask the Court to sever the part of the Wilks/Cardinals contract that calls for the Commissioner to oversee arbitration and to name a substitute arbitrator. *Id.* at 7–9. The Dolphins ask the Court to sever the Flores/Dolphins contract and to send this matter to JAMS or some other court-appointed arbitrator. Dolphins' Mem. of Law in Supp. of Mot. for Recons., Dkt. 197 ("Dolphins' Mot.") at 6–11.

Discovery and motion practice regarding the claims against these three teams — and related claims against the NFL — have been stayed pending this decision.[5] *See* March 20, 2026, Order, Dkt. 232. These three teams also filed Notices of Appeal from the February 2026 Order. Notices of Interlocutory Appeals, Dkts. 216–218. Those appeals have been inoperative but will become operative with the disposition of these Motions. *See* March 16, 2026, Letter, Dkt. 219 at 1–2; Dolphins' Mot. at 5 n.2.

[5] The case as a whole is now proceeding along two tracks. The Flores/Giants, Flores/Broncos, and Flores/Texans claims — and related claims against the NFL — are currently in discovery and are subject to a motion to dismiss. *See* April 3, 2026, Order, Dkt. 246. To state the obvious, the Court would like for the remaining claims also to proceed quickly to discovery (and to briefing a motion to dismiss, if appropriate) so that the entire case can operate on a single consolidated schedule.

## DISCUSSION

### I. Jurisdiction

As a threshold matter, the parties do not dispute that this Court has jurisdiction to decide these Motions now. Even though the teams have filed Notices of Appeal, Dkts. 216–218, their time to file an appeal does not begin to run until the Court resolves these Motions. *See* Fed. R. App. P. 4(a)(4)(A)(iv); *Malek v. Feigenbaum*, 116 F.4th 118, 127, 128 n.9 (2d Cir. 2024); *see also Blackwell v. Nocerini*, 123 F.4th 479, 484–85 (6th Cir. 2024). This Court retains jurisdiction over these Motions in the meantime. *See* Fed. R. App. P. 4(a)(4)(B)(i); *Torres v. Mount Sinai Hosp.*, 2025 WL 3688015, at *2 (S.D.N.Y. Dec. 19, 2025) (citing *Green v. Show*, No. 22-CV-237 (LTS), 2022 WL 1086614, at *2 (S.D.N.Y. Apr. 11, 2022)).

### II. Legal Standards

#### *A. Arbitration*

Pursuant to Section 2 of the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). Merely calling something an "arbitration agreement" does not, however, put it within the scope of the FAA. The FAA presumes "the norm of bilateral arbitration" and that an arbitration agreement "does not alter or abridge substantive rights." *Flores*, 150 F.4th at 181 (quoting *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022)). Thus, "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Id.* (quoting *Viking River Cruises, Inc.*, 596 U.S. at 653). This concept goes hand-in-hand with "[t]he Supreme Court's long-standing 'effective vindication' doctrine." *Id.* (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013)). This doctrine deems unenforceable

arbitration agreements that are, in effect, "a prospective waiver of a party's right to pursue statutory remedies." *Id.* (quoting *Italian Colors Rest.*, 570 U.S. at 235) (emphasis removed).

*B. Reconsideration/Revision of Prior Court Orders*

Local Civil Rule 6.3 governs motions for reconsideration based on issues already presented to and "overlooked" by the Court. *See Wilson v. New York & Presbyterian Hosp.*, No. 17-CV-5012 (RRM), 2021 WL 2987134 (S.D.N.Y. July 15, 2021). Rule 6.3 requires that a memorandum in support of a motion for reconsideration "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked."

Rule 59(e), Fed. R. Civ. P., permits the Court to "alter or amend a judgment," and it is understood to be subject to the same standard as Rule 6.3. *Gerding v. Am. Kennel Club*, No. 21-CV-7958 (ALC), 2025 WL 1212091, at *1 (S.D.N.Y. Apr. 24, 2025), *aff'd sub nom. Gerding v. Ljungren*, No. 23-1119, 2025 WL 3751728 (2d Cir. Dec. 29, 2025). This standard is "strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration under Rule 59(e) is appropriate only in limited circumstances. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (noting Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment"); *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"); *see also Stephens v. Jerejian*, 655 F. App'x 64, 65 (3d Cir. 2016) ("Rule 59(e) motions are appropriate only to rectify plain errors of law or to offer newly discovered evidence, and they may not be used to relitigate old matters or to present evidence or arguments that could have been offered earlier.").

Rule 54(b), Fed. R. Civ. P., governs motions seeking revision of a prior decision. The rule makes "interlocutory orders 'subject to revision,'" which gives district courts the "power to correct [themselves]." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 349 (S.D.N.Y. 2004). This is a limited remedy: courts should adhere to their prior decisions "unless 'cogent and compelling reasons militate otherwise.'" *Dill v. J.P. Morgan Chase Bank, N.A.*, No. 19-CV-10947 (KPF), 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). Courts can, however, revise decisions "where to do so would not be inconsistent with the objectives of efficiency and finality." *Falls v. Pitt*, No. 16-CV-8863 (AEK), 2026 WL 77919, at *1 (S.D.N.Y. Jan. 8, 2026) (quoting *Dill*, 2021 WL 3406192, at *11).

Resolution of a motion for reconsideration or revision is committed to the "sound discretion" of the Court. *Aczel v. Labonia*, 584 F.3d. 52, 61 (2d Cir. 2009) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir. 1986)). Despite the fact that this is the *fourth* set of motions for reconsideration in this case, reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Kotze v. NBCUniversal Media, LLC.*, No. 25-CV-4703 (JAV), 2025 WL 2806755, at *2 (S.D.N.Y. Oct. 1, 2025) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Motions for reconsideration or revision should only be granted in cases of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Aleksanian v. Uber Techs. Inc.*, No. 19-CV-10308 (ALC), 2021 WL 6137095, at *1 (S.D.N.Y. Dec. 29, 2021) (reconsideration); *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. at 350 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)) (revision).

## III. Application

Plaintiffs made the Motion that generated the February 2026 Order that Defendants are asking the Court to reconsider. Defendants' response to that Motion did not mention, even in passing, the concept of severance, which animates much of the current motion practice.[6] Defendants appear to believe that, for unknown reasons, they are entitled to a do-over of that briefing. Defendants can articulate no reason why these arguments were not raised in their response to Plaintiffs' Motion for Reconsideration. *See* April 3, 2026, Conf. Tr., Dkt. 247 at 5–7. With sophisticated law firms, it is hard to fathom a plausible explanation. Defendants had 600 words remaining in their Opposition, so it is not as though they were out of space or another argument would have needed to be jettisoned to make room for a severance pitch. *See* Defs.' Mem. of Law in Opp'n to Mot. for Recons., Dkt. 159 at 12 (citing that the document contains 2,900 words). Conceivably there was a dispute between counsel regarding the merits of the severance arguments with the detractors prevailing in that dispute. Or, perhaps strategically, Defendants opted for an iterative stream of arguments to buy themselves a few more months hanging out in the players' tunnels to delay joining issue on Plaintiffs' claims. Defendants assert that they are not engaging in gamesmanship, April 3, 2026, Conf. Tr., Dkt. 247 at 5, but the Court is skeptical.

This is not technically a successive filing. Regardless, rewarding this sort of iterative argumentation would set a dangerous precedent. *See generally Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."); *see also United States v. Alexander*,

---

[6] Where the Court references "Defendants" throughout the remainder of this Opinion, the Court references only the moving Defendants, *i.e.*, the Titans, Cardinals, and Dolphins.

505 F. App'x 601, 602 (7th Cir. 2013) ("Successive motions cannot be used to obtain a chance to make a different or better argument."); *Jing v. Ashcroft*, 105 F. App'x 437, 440–41 (3d Cir. 2004) ("[T]he [petitioners'] arguments in their second motion to reopen . . . could have been raised in their first motion to reopen. The BIA was well within its discretion in denying the petitioners' second motion to reopen based on a failure to exercise due diligence."); *Khalil v. Trump*, 793 F. Supp. 3d 630, 639 (D.N.J. 2025) ("[A] party may not generally bring a successive motion based on grounds that could have been, but were not, raised before."). There can be no dispute that Defendants' severance argument should have been advanced in Defendants' Opposition to the Motion. There is no reason to provide Defendants with a mulligan.

Defendants first raised an argument for severance in fall of 2022, nearly four years ago, in two paragraphs of a Reply Memorandum of Law. March 20, 2026, Letter, Dkt. 228 (citing Defs.' Reply Mem. of Law in Supp. of Mot. to Compel., Dkt. 64 at 6–7). It is, however, not the case that the Court has not ruled on severance before, *contra* Dolphins' Mot. at 6. The Court ruled on severance in 2023.[7] *See* July 2023 Order at 11–12. Defendants' arguments for severance are far more extensive now than they were then, and, even if the concept of severance was argued briefly before, the bulk of the authority cited now was not put before the Court in 2022 (let alone in 2025), so it need not be considered at this juncture. *See Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 360 (S.D.N.Y. 2005) ("The

---

[7] In 2023, the Court declined to sever the unilateral modification provision in the Flores-Patriots Agreement. July 2023 Order at 11–12. Because the NFL retained the right to unilaterally modify the NFL Constitution, the contract itself was illusory and thus invalid. *Id.* Defendants argued that the unilateral modification provision should be severed, but, because an illusory contract is no contract at all, severance was not possible. *Id.* In a footnote, however, the Court clarified that "[e]ven if . . . there was a valid agreement from which it could sever the unilateral modification provision in order to create a valid arbitration agreement, severance would still be inappropriate" given how central to the agreement the unenforceable aspect was. *Id.* at 12–13 n.12. The Court does not turn to the substance of the severance argument in this Opinion, but it is conceivable, if not likely, that the current argument for severance would fall prey to the same fatal flaw if it had been advanced in opposition to the Motion.

controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the court in the underlying motion."); *Navigators Ins. Co. v. Goyard, Inc.*, 623 F. Supp. 3d 220, 223 (S.D.N.Y. 2022) ("In deciding a motion for reconsideration, a court need not consider previously uncited cases, which necessarily do not involve an intervening change of law.").

It was not the Court's job to reraise this argument in response to the Motion and envision it in the then-current posture of this case (which had shifted since 2022). It is the job of the advocates to marshal the facts and law and to make the arguments they believe are best for them and are legally and factually supported. Here, Defendants' counsel did so but chose not to marshal the law and facts to support an argument based on severance. Having not been raised, this is not something that the Court "overlooked." *See, e.g.*, *RST (2005) Inc. v. Rsch. in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) ("[A] request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters *put before the court in its decision on the underlying matter* that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court.") (emphasis added).

In the Second Circuit's *Flores* opinion, the Court noted in a footnote that "[a]n agreement to an alternative dispute resolution scheme like the one here *that cannot be readily severed to avoid the effective-vindication doctrine* is invalid in its entirety." *Flores*, 150 F.4th at 186 n.70 (emphasis added). The Dolphins argue that the import of that footnote is that had the arbitration provision in the NFL Constitution been severable, the outcome would have been different. Dolphins' Mot. at 9–10. They argue that, because the provisions in some of the team-specific contracts are indeed severable, the outcome here should be different. *Id.* at 10.

That argument might have had legs if it had been advanced by the Cardinals and Dolphins in their response to the Motion.[8] Given, however, that this argument was not made, the Court need not turn to the various subsidiary arguments it spawns including: whether the Flores-Dolphins and Wilks-Cardinals Agreements allow for severance of only the team-specific employment contract or also the separately incorporated NFL Constitution and DRPG; whether the unconscionable terms are too central to the arbitral scheme to sever; and under what circumstances arbitration might be appropriate moving forward (*i.e.*, before JAMS, an alternative arbitrator under the FAA § 5, etc.).

Severance aside, there is no other reason to reconsider the previous decision. The parties do not argue that there has been an intervening change in controlling law or assert the availability of new evidence. They focus on the need to correct a clear error or prevent manifest injustice. There is, however, no clear error here. The Court will not rehash its prior holding as to the application of the Second Circuit's Opinion to these three employment agreements. The provisions in these three particular employment agreements do not avoid the fatal flaws identified by the Second Circuit in the NFL Constitution. Arbitration overseen by the Commissioner is arbitration in name only and, accordingly, lacks the protection of the FAA. Further, adding some procedure via the DRPG does not fix the forum's lack of independence nor make the process bilateral (nor is that flaw helped by the fact that the source of procedure, the DRPG, can be changed in the unilateral discretion of the NFL). The DRPG does not create a forum in which Plaintiffs can effectively vindicate their rights. And DRPG aside, this question is no different than the one the Second Circuit decided; as a result, this case is not distinguishable. The Second Circuit's decision is controlling law, and this Court stands by its application.

---

[8] The Horton-Titans Agreement lacks a provision regarding severance, so the Titans' argument regarding the parties' intent is weaker.

The Titans advance an old argument in new clothes, asserting that Horton's claims against them are predicated on a "single discrete event": a job interview.[9] Titans' Mot. at 6. The Titans assert that "[t]here is no allegation that the Commissioner, or his or her designee, prefer the Titans — or its position — more than Mr. Horton and his." Titans' Mot. at 7. It seems obvious to the Court that the NFL Commissioner has a vested interest in teams complying with NFL policies, so he would not be an independent party. More importantly, this is not a question of the Commissioner having "pre-judged" a particular dispute, *see id.* at 9–10; rather, it is a question of whether Horton can effectively vindicate his rights in a forum where the NFL Commissioner (or his delegate) is, idiomatically, judge, jury, and executioner. The Second Circuit's opinion did not step through the Flores/Giants, Flores/Broncos, and Flores/Texans claims and decide that the Commissioner was not independent as to each. Rather, the Second Circuit decided that adjudication of NFL disputes in a forum overseen by the NFL Commissioner — even where the parties had explicitly contracted to such an arrangement — could not provide effective vindication of the Plaintiffs' rights. The Titans, thus, are simply attempting to relitigate the Second Circuit's decision (which the Supreme Court has declined to review). As the Titans well know, this Court cannot overrule the Second Circuit.

Nor is there a risk of manifest injustice if this Court does not reconsider the Order. The Cardinals assert that the Court's ruling creates "inconsistent outcomes" given precedents compelling arbitration under "substantially the same" arbitration agreements. *See* Cardinals' Mot. at 6 (citing Arizona district court cases). The single case that the Cardinals cite in support of this legal argument is inapposite: it involves a conflict between a court's factual finding (plaintiff's disability status) and an Administrative Law Judge's *opposite* decision *one day later*

---

[9] Horton alleges that the "interview" was a sham designed to comply facially with the NFL's so-called Rooney Rule. *See* Titans' Mot. at 6 (citing First Am. Compl., Dkt. 22 at ¶¶ 271–278).

regarding *the exact same fact*. *See id.* (citing *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 503 (S.D.N.Y. 2008)). Manifest injustice requires that an error be "direct, obvious, and observable." *Idowu v. Middleton*, No. 12-CV-1238 (BSJ) (KNF), 2013 WL 371657, at *1 n.1 (S.D.N.Y. Jan. 31, 2013) (quoting *In re Oak Park Calabasas Condo. Ass'n,* 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003)). No error here is direct, obvious, or observable, and the Court struggles to grasp any injustice that Defendants will suffer from this Court following binding precedent that requires these disputes be settled in a court of law rather than an arbitral forum.

Defendants' seemingly-never-ending list of arguments why they should not have to litigate this case has run its course. Stepping back, while Defendants are free to spend endless attorneys' fees to pursue the forum they think will be most advantageous to them, arguments about the superior efficiencies of arbitration ring hollow when this entire round of briefing and the delay it has caused could have been avoided had Defendants' brief in response to the Motion been comprehensive. *See, e.g.*, Dolphins' Reply Mem. of Law in Supp. of Mot. for Recons., Dkt. 231 at 4 (citing *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 368, 371 (Fla. Dist. Ct. App. 2022)). Instead of proceeding, discovery and motion practice for these three teams have been further delayed so this Court can deal with these teams' attempt to take yet another run at how to avoid district court litigation and will, presumably, be delayed further while they pursue yet another appeal.

**CONCLUSION**

For the reasons discussed above, the Tennessee Titans', Arizona Cardinals', and Miami Dolphins' Motions for Reconsideration are DENIED. The Motion to Compel Arbitration at

Dkt. 47 remains denied in full. The Clerk of Court is respectfully directed to terminate the open Motions at Dkts. 187, 194, and 196.

**SO ORDERED.**

**Date: July 15, 2026**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**