WIGDOR.

**Russell L. Kornblith**
rkornblith@wigdorlaw.com

August 11, 2026

**VIA ECF**

The Honorable Sarah L. Cave
Southern District of New York
500 Pearl Street, Room 1670
New York, NY 10007-1312

Re: *Flores, et al. v. The National Football League, et al.*; No. 22-00871 (VEC)(SLC)

Dear Judge Cave,

"[M]ore 'liberal civil discovery rules'" apply in employment-discrimination cases, and courts give "broad access to employers' records," because such cases are "particularly hard to prove in the absence of a proverbial smoking gun." Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 557, 562 (S.D.N.Y. 2013). This liberal standard governs here. Discovery should match the scope of claims set out in the operative Complaint, not some narrower scope Defendants desire; Judge Caproni has repeatedly rejected Defendants' many attempts to stay discovery. Dkts. 182, 227, 246.

## I. Race Discrimination Complaints Within the NFL

Complaints of race discrimination are relevant to both the individual and class claims. It is "well-established within this Circuit that 'discovery relating to class issues may overlap substantially with merits discovery.'" See Flores v. Stanford, 2021 WL 4441614, at *5 (S.D.N.Y. Sept. 28, 2021) (citing cases). An individual may use "prior [discriminatory] acts as background evidence to support a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002); see also Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379, 381, 388 (2008) (finding evidence of discrimination by other supervisors against other employees "neither per se admissible nor per se inadmissible"). And in class cases "a common mode of exercising discretion" coupled with "specific accounts of racial discrimination from particular individuals" supports certification. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 356, 358 (2011). Accordingly, "Broader discovery is warranted when a plaintiff's claims are premised on a pattern or practice of discrimination at the organization-wide level, as opposed to specific allegations of discrimination made against an individual supervisor." Chen-Oster, 293 F.R.D. at 562.

In individual cases, "[e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's

offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." Hollander v. Am. Cyanamid Co., 895 F.2d 80, 84 (2d Cir. 1990). And in class cases, "disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence…." Id. at 85. Accordingly, the Second Circuit has approved broad discovery of discriminatory patterns in both class and individual cases. See, e.g., Moll v. Telesector Resources Grp, Inc., 760 F.3d 198, 204 (2d Cir. 2014); Chin v. Port Authority of N.Y. & N.J., 685 F.3d 135, 149 (2d Cir. 2012); Quartino v. Tiffany & Co., 71 F. 3d 58, 61, 65 (2d Cir. 1995) (finding discrimination towards other employees relevant to plaintiff's discrimination claim); Lieberman v. Gant, 630 F. 2d 60, 68 (2d Cir. 1980) ("Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case.").

In Chen-Oster, the court compelled discovery of complaints by other women, including complaints outside the proposed class. 293 F.R.D. at 568. And in Barrett v. Forest Laboratories, Inc., 39 F. Supp. 3d 407, 460 (S.D.N.Y. 2014), the court held that evidence defendant repeatedly ignored discrimination complaints supported an inference of intentional discrimination. See also Sasikumar v. Brooklyn Hosp. Ctr., 2011 WL 1642585, at *3 (E.D.N.Y. May 2, 2011) (quoting Lieberman, 630 F.2d at 68); Peterson v. City Coll. of City Univ., 160 F.R.D. 22, 24 (S.D.N.Y. 1994) (compelling discovery of internal complaints without limitation).

Plaintiff seeks such evidence: Other complaints of race discrimination that will satisfy Wal-Mart's specific-accounts requirement, show discriminatory intent, evidence Defendants' common mode of exercising discretion, and prove deliberate failure to remediate complaints.

## II. Race Discrimination Complaints by Non-Coach Employees on Teams

The same principles support discovery of race discrimination complaints by non-coach employees on teams. Plaintiff may discover "all internal complaints that are 'conceivably related' to [race] discrimination made by [Black] employees…regardless of whether the complainant is a member of the putative class," because they are probative of discriminatory intent and practices. See Chen-Oster, 293 F.R.D. at 568. Moreover, Head-Coach hiring draws candidates from other coaching positions (primarily Offensive and Defensive Coordinators and Quarterback Coaches) subject to the same discriminatory process. Dkt. 274, Third Amended Complaint ("TAC") ¶¶122-23, 145-53, 382. Complaints by such people go to both discriminatory intent and disparate-impact claims. Dkt. 307, Mot. Dismiss Opp. ("Opp."), 19-48.

Second, the NFL's role in complaints by putative club employees bears on the joint-employer and single-integrated-enterprise inquiries. Id. at 6-19. Both inquiries center on control. Brown v. Daikin Am. Inc., 756 F.3d 219, 227 (2d Cir. 2014); Felder v. United States Tennis Ass'n, 27 F.4th 834, 838 (2d Cir. 2022). "Centralized control over labor relations…can include such factors as whether the companies have separate human resources departments and whether the entity…makes its own decisions as to…hiring, discipline, and termination …." Laurin v. Pokoik, 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004). Control of records bears on this

inquiry. See Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 144 (2d Cir. 2008). Thus, whether the NFL has records of complaints is itself probative, as is its role in handling them. [1]

Ultimately, courts favor determinations on a complete record. See Opp. 7-11. Defendants "cannot maintain that they are not a joint-employer while simultaneously refusing to produce discovery that permits the allegation to be proven or disproven." Huggins v. Chestnut Holdings Inc., 2019 WL 2616252, at *3 (S.D.N.Y. June 25, 2019).

## III. Arbitration-Related Retaliation

Plaintiff is entitled to discovery concerning the NFL's retaliatory "arbitration" conduct because it is a live, pleaded claim, and Judge Caproni has not stayed anything pending the motions to dismiss. Judge Caproni has instead repeatedly urged that discovery advance forthwith. Dkts. 182, 227, 246, 299, 311. The arbitration-related retaliation claims are obviously plausible, as Plaintiff's briefing articulated: The NFL punished Plaintiff for filing suit by using a bogus dispute resolution process (as the Second Circuit found) to engage in fraudulent conduct designed to strip Plaintiff of his rights and deter him from pursuing claims. TAC ¶¶298-309; Opp. 51-56. The Second Circuit held that the NFL's conduct was "arbitration in name only" that "fails to bear even a passing resemblance to 'traditional arbitral practice,'" and that Goodell's gateway conduct was "facially inconsistent" with the arbitration policy. Flores v. N.Y. Football Giants, Inc., 150 F.4th 172, 175, 183, n.61 (2d Cir. 2025).

## IV. Disputed Custodians and Search Terms

### A. Disputed NFL Custodians

#### Roger Goodell

NFL Commissioner Goodell controls the policies at issue, repeatedly personally commented on the case, continues to comment on race discrimination issues at issue in this litigation, and personally contacted Flores and the Texans in the days after its filing, when the Texans retaliated against Flores. Ex. 1 at 1. The Court has held that his involvement in coaching contracts—each of which he must personally approve—is essential. TAC ¶372; Dkt. 48 at 13. And he is also central to Plaintiff's arbitration retaliation claim: He personally decided the claims are "football related" and appointed "arbitrator" Peter Harvey. Id. ¶¶299-302; Dkt. 155-11.

Where a person "played a significant role" in the events at issue, courts order his ESI searched. See, e.g., Zhao v. Deutsche Bank AG, 2014 WL 12526256, at *3 (S.D.N.Y. June 24,

[1] That investigation of complaints is alone insufficient to find a joint-employer or single-integrated-enterprise relationship does not forestall this discovery. Cf. McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020).

2014). Courts do not "rely on a witness's recollection" that other custodians have all documents, as the NFL here proposes to do. Thomas v. City of New York, 336 F.R.D. 1, 4 (E.D.N.Y. 2020). The NFL does not appear to deny that Goodell was involved in relevant communications; it just speculates that other custodians were too. Aug. 4, 2026 Tr. 61:20-22. But courts hold such reliance "problematic to accept, without verifying." See Thomas, 336 F.R.D. at 4.

**Jeff Pash**

Former NFL General Counsel Pash helped administer the retaliatory "arbitration" and was likely involved in drafting the retaliatory football-oriented arbitration decision (Dkt. 155-11)[2] and appointing "arbitrator" Harvey and assistant Bill Polian. See TAC ¶¶299-302. The Texans also recently disclosed that Pash communicated with them regarding this lawsuit in the days after its filing, when the Texans decided not to hire Flores. Ex. 1 at 1. We expect discovery to yield important emails uniquely between Pash and Goodell, the discoverability of which warrants scrutiny.

None of these communications likely constitutes "legal advice," because (i) teams are not Pash's clients and (ii) communications with Goodell related his role as purported "arbitrator" would have been about business and operations functions of the NFL, not legal advice.

"A party invoking the attorney-client privilege must show…a communication between client and counsel…made for the purpose of obtaining or providing legal advice." See In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "The Second Circuit has made clear that only those communications related to 'legal, as contrasted with business, advice' are protected." TVT Recs. v. Island Def Jam Music Grp., 214 F.R.D. 143, 144 (S.D.N.Y. 2003) (citation omitted).

Courts recognize that "[a]pplication of the attorney-client privilege to the corporate context poses 'special problems…because in-house counsel often serve dual roles as legal advisors and business consultants." Complex Sys., Inc. v. ABN AMRO Bank N.V., 279 F.R.D. 140, 150 (S.D.N.Y. 2011). And "[l]egal advice given for the purpose of preventing litigation," such as HR dispute resolution, is not protected work product; only "advice given in an anticipation of litigation" is. Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 29 F. Supp. 3d 142, 150 (E.D.N.Y. 2014) (cleaned up). Pash's communications at least warrant review.

**Brian McCarthy and Katie Hill**

McCarthy and Hill are public relations executives likely involved in the League's statement that Flores's case is "without merit" and other public comments Goodell has made about the case and related issues. TAC ¶3.

[2] Goodell is not an attorney, and it is highly unlikely he reviewed counsel's submissions citing case law and making legal arguments and then himself drafted the football-oriented decision.

WIGDOR.



**B. Disputed Texans Custodians**

The sole disputed custodian for purposes of corporate-custodian ESI is Janice McNair, who was the Texans' owner and chairperson during the 2022 hiring cycle, when the Texans retaliated against Flores for filing this lawsuit by declining to hire him. Ms. McNair recently passed. Owners play significant roles in head-coach hiring, and McNair doubtless communicated regarding this decision. The Texans offer no explanation why they cannot search McNair's corporate ESI.

**C. Search Terms**

Exhibit 2 contains Plaintiff's revised search terms and custodians. Plaintiff is prepared to confer further, but no Defendant has produced a complete hit report. Yet it is Defendants' burden to show how the sought discovery, including each term, "is overly broad, burdensome or oppressive, [by] submitting affidavits or offering evidence revealing the nature of the burden." Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 102 (S.D.N.Y. 2013); Montesa v. Schwartz, 2015 WL 13173164, at *2 (S.D.N.Y. Feb. 20, 2015). Defendants should not be permitted to sidestep this established burden, which is virtually always resolved by analyzing detailed hit reports that are easily generated and can assist in narrowing terms with large yields and/or false positives.

**D. Text Messages**

Plaintiff seeks text messages on personal devices and other personally maintained documents. We appreciate that the Court will later address that issue. Defendants, however, have acknowledged that some custodians used personal phones to conduct official business, and third-party discovery confirms that significant business takes place over text. E.g., TAC ¶190; Ex. 3 MCCARTNEY_0000003-7. Moreover, the Broncos acknowledge that Vice President of Security Keith Bishop possesses relevant texts but refuses to turn over his phone. And the Broncos and Texans have advised Plaintiff of missing texts, further signaling the existence (and spoliation) of relevant evidence therein. Courts regularly compel production of such evidence. E.g., Smith v. Pergola 36 LLC, 2022 WL 17832506 (S.D.N.Y. Dec. 21, 2022) (compelling text-message searches).

WIGDOR.



## V. Discovery Regarding Class-Wide Allegations Against Teams

"It is well established that plaintiffs may be entitled to [class] discovery even though a class has not yet been certified." Marin v. Apple-Metro, Inc., 2023 WL 2060133, at *3 (E.D.N.Y. Feb. 8, 2023) (collecting cases). Plaintiffs plead a pattern and practice of not hiring Black coaches, subjecting Black candidates to sham interviews, and discrimination in terms and conditions of employment. TAC ¶389. Plaintiffs allege this practice is common to all teams and results from league-wide policies and practices—not, or not just, individual decisionmakers. Opp. 19-48. Discovery must allow assessment of whether there are practices common to all teams and whether "a common mode of exercising discretion" exists. Wal-Mart, 564 U.S. at 356. This inquiry necessarily involves an examination of the teams' practices outside the cycles involving Flores. See Supra §§I-II. And "courts are reluctant to bifurcate class-related discovery from discovery on the merits." Chen-Oster, 285 F.R.D. at 299.

### A. Texans

That the Texans have hired Black Head Coaches does not forestall discovery into hiring cycles beyond 2022. Plaintiffs plead that Black coaches are subject to heightened scrutiny, leading to shorter tenures, which poison candidates in the market and damage perceptions of Black coaches leaguewide. TAC ¶¶125-27. Statistical evidence will support this claim, but so will anecdotal evidence. See Wal-Mart, 564 U.S. at 358. (citing "about 40 specific accounts of racial discrimination").

The Texans are implicated in this practice. The Texans fired David Culley and Lovie Smith after one season. TAC ¶¶223-4. Likewise, the Texans' head-coach decision-making is relevant to Plaintiffs' claim that teams exercise a common mode of discretion. Wal-Mart, 564 U.S. at 356. That the Texans' selection process resulted in hiring Black coaches does not defeat that their process may be common to other teams (supporting class certification) nor that it may ultimately yield a depressed number of Black coaches (supporting class liability).

### B. Broncos

Plaintiffs seek discovery on the Broncos for the entire class period for similar reasons. Plaintiffs' class claims cover 2019-present and seek injunctive relief. The Broncos' practices since subjecting Flores to a sham interview in 2019 are relevant to that claim.

Plaintiffs also seek John Elway's calendar for the entire 2018-2019 hiring process, which will show that Elway subjected Flores to an off-site sham interview, whether Vic Fangio advanced before Flores's interview, whether Flores's interview was merely to satisfy the Rooney Rule, and whether other candidates received favorable interview treatment. Cf. Ex. 4.

WIGDOR.



**C. Giants**

The Giants' 2026 hiring cycle is discoverable for the same reasons: whether practices tracked earlier cycles and those of other teams, and whether the Giants meaningfully considered Black candidates is relevant to the class claims.

Respectfully submitted,

Russell L. Kornblith

cc: All Counsel of Record *via* ECF