**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS, and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>*Defendants*. | Case No. 22-CV871 (VEC) |

**<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF</u>**
**<u>DEFENDANT DENVER BRONCOS' RENEWED</u>**
**<u>MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. THIS COURT LACKS PERSONAL JURISDICTION OVER THE BRONCOS ........ 1

II. THE NYSHRL AND NYCHRL CLAIMS AGAINST THE BRONCOS ARE TIME-BARRED AND OTHERWISE UNOPPOSED BY PLAINTIFF ........ 4

III. PLAINTIFF'S SECTION 1981 CLAIM IS ALSO TIME-BARRED ........ 4

IV. EVEN IF IT HAD BEEN TIMELY, THE TAC DOES NOT PLEAD A VIABLE DISPARATE TREATMENT CLAIM UNDER SECTION 1981 ........ 7

V. THE BRONCOS CANNOT BE HELD LIABLE BASED ON COLLECTIVE ALLEGATIONS DIRECTED AT OTHER DEFENDANTS ........ 10

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allen v. New York City Dept. of Environmental Protection*,
51 F. Supp. 3d 504 (S.D.N.Y. 2014)....9

*Anderson v. Amazon.com, Inc.*,
2024 WL 2801986 (S.D.N.Y. May 31, 2024)....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....10

*Burgis v. NYC Dep't. of Sanitation*,
798 F.3d 63 (2d Cir. 2015)....7, 10

*Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*,
990 F.2d 1397 (2d Cir. 1993)....5, 6

*Cardwell v. Davis Polk & Wardwell LLP*,
2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020)....10

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020)....7, 10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....1, 2

*Donahue v. Clair Car Connection, Inc.*,
736 F. Supp. 2d 294 (D. Me. 2010)....11

*Dong Chul Kim v. Harte Hanks, Inc.*,
425 F. Supp. 3d 246 (S.D.N.Y. 2019)....3

*Felder v. U.S. Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022)....11

*Frazier v. Stanley*,
2018 WL 11585450 (S.D.N.Y. Nov. 29, 2018)....9

*Griffin v. Sirvan Inc.*,
835 F.3d 283 (2d Cir. 2016)....10

*Hardy v. Fischer*,
701 F. Supp.2d 604 (S.D.N.Y.)....8

*Henao v. Parts Auth., LLC*,
557 F. Supp. 3d 490 (S.D.N.Y. 2021)....2, 3

*Henley v. Turner Broadcasting Sys.*,
267 F. Supp. 3d 1341 (N.D. Ga. 2017)....8

*Hoffman v. Parade Publications*,
15 N.Y.3d 285, 290-91 (2010)....4



4899-9862-7264.4

*Int'l Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977)....................9

*Jackson v. Fed. Express*,
766 F.3d 189 (2d Cir. 2014)....................4

*Jacobs v. Felix Bloch Erben Verlag*,
160 F. Supp. 2d 722 (S.D.N.Y. 2001)....................2

*Jazini v. Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998)....................1

*Jessamy v. City of New Rochelle*,
292 F. Supp. 2d 498 (S.D.N.Y. 2003)....................4

*Jones v. R.R. Donnelley & Sons Co.*,
541 U.S. 369 (2004)....................4

*In re Levant Line, S.A.*,
166 B.R. 221 (Bankr. S.D.N.Y. 1994)....................1

*Lipton v. County of Orange, New York*,
315 F. Supp. 2d 434 (S.D.N.Y. 2004)....................11

*Mandala v. NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020)....................8

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)....................10

*Nweke v. Prudential Ins. Co. of America*,
25 F. Supp. 2d 203 (S.D.N.Y. 1998)....................8

*Patterson v. McLean Credit Union*,
491 U.S. 164 (1989)....................5

*Reynolds v. Barrett*,
685 F.3d 193 (2d Cir. 2012)....................8

*Ross v. Silver Oak Servs. Partners, LLC*,
2026 WL 1520743 (E.D.N.Y. June 1, 2026)....................2

*Saraceno v. SC Johnson and Son, Inc.*,
83 F.R.D. 65 (S.D.N.Y. 1979)....................2

*Sinclair v. Goord*,
2009 WL 9056089 (N.D.N.Y. March 10, 2009)....................9

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014)....................2

*Stelly v. Dep't of Public Safety and Corrections*,
149 F.4th 516 (5th Cir. 2025)....................5

*Syeed v. Bloomberg L.P.*,
41 N.Y.3d 446 (2024)....................4

*Turbon Int'l, Inc. v. Hewlett-Packard Co.*,
769 F. Supp. 2d 259 (S.D.N.Y. 2011)....................3

*United States v. City of N.Y.*,
717 F.3d 72 (2d Cir. 2013)....................9

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
751 F.2d 117 (2d Cir. 1984)....................1

*Walden v. Fiore*,
571 U.S. 277 (2014)....................3

*Watson v. Fort Worth Bank & Trust*,
487 U.S. 977 (1988)....................8

*Williams v. PMA Cos.*,
419 F. Supp. 3d 471 (N.D.N.Y. 2019)....................3

*Wright v. City of Ithaca*,
633 F. App'x 63 (2d Cir. 2016)....................5

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....................6

*Xiaoyan Liu v. Canteen 82, Inc.*,
2018 WL 6067228 (S.D.N.Y. Nov. 20, 2018)....................3

*Zurich Am. Life Ins. Co. v. Nagel*,
571 F. Supp. 3d 168 (S.D.N.Y. 2021)....................2

**STATUTES**

42 U.S.C. § 1981(b)....................4

42 U.S.C. § 2000e-2(k)(1)(A)(i)....................8

**RULES**

N.Y. C.P.L.R. § 214(2)....................4

## ARGUMENT

Plaintiff's Opposition focuses heavily on Title VII pattern-or-practice, disparate impact, and retaliation claims, but none of those claims are pled against the Broncos. Against the Broncos, the TAC asserts only a disparate treatment claim under Section 1981 and claims under the NYSHRL and NYCHRL. Importantly, Plaintiff's Opposition concedes through silence that the NYSHRL and NYCHRL claims are untimely due to an expired three-year limitations period, leaving only the Section 1981 claim to review on the Broncos' Motion to Dismiss ("Motion"). Plaintiff's attempt to save his Section 1981 claim through a newly invented "existing relationship" theory appears nowhere in the TAC and, even if it did, would fail under the facts asserted. The Broncos' Motion should be granted with prejudice.

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER THE BRONCOS

Before reaching the merits, the Court must decide whether it may exercise jurisdiction over the Broncos. Plaintiff does not contend that the Broncos are independently at home in New York. Instead, his new theory rests on imputing the NFL's New York contacts to the Broncos. This attempt fails.

First, general jurisdiction under a "mere department" theory requires common ownership. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984) ("nearly identical ownership interests must exist"); *In re Levant Line, S.A.*, 166 B.R. 221, 232 (Bankr. S.D.N.Y. 1994) (indirect 52% ownership insufficient). "If common ownership is not established, the inquiry ends." *In re Levant Line, S.A.*, 166 B.R. at 232 (cited cases omitted).

The NFL is an unincorporated trade association with no equity interest in the Broncos. *Daimler AG v. Bauman* forecloses treating mere trade association membership as supporting

general jurisdiction. *See* 571 U.S. 117, 137 (2014) (concluding that "there would still be no basis to subject [the foreign corporate parent] to general jurisdiction" in the forum state even assuming that the subsidiary was at home in the forum state and that the subsidiary's contacts could be imputed to the foreign parent). *See also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225-26 (2d Cir. 2014) ("Even assuming . . . New York [affiliates'] contacts should be imputed to [out-of-state defendant], they do not shift the company's primary place of business (or place of incorporation) away from Turkey.").

But even if common ownership existed, the other factors do not. Mere department status also requires proof that day-to-day operations are controlled by the other entity. *Saraceno v. SC Johnson and Son, Inc.*, 83 F.R.D. 65 (S.D.N.Y. 1979). The plaintiff must plausibly allege control so pervasive that corporate separation is more formal than real. *Ross v. Silver Oak Servs. Partners, LLC*, No. 24-CV-07823, 2026 WL 1520743 (E.D.N.Y. June 1, 2026); *Jacobs v. Felix Bloch Erben Verlag*, 160 F. Supp. 2d 722, 735 (S.D.N.Y. 2001). The TAC does not allege the Broncos' corporate formality has been disregarded.

Finally, mere department status requires financial *dependence*. Plaintiff argues only that there is "significant financial *connection*." (Plaintiff's Opposition, p. 58). Two separate corporate entities working together in some manner do not establish the necessary financial dependence. *See Jacobs*, 160 F. Supp. 2d at 735.

Plaintiff's specific jurisdiction argument fares no better. Joint employer and integrated enterprise theories address substantive liability, not jurisdiction. *Henao v. Parts Auth., LLC*, 557 F. Supp. 3d 490, 496-97 (S.D.N.Y. 2021) (collecting cases and holding that "the looser, single integrated enterprise theory" is insufficient for establishing jurisdiction); *Zurich Am. Life Ins. Co.*

*v. Nagel*, 571 F. Supp. 3d 168, 177 (S.D.N.Y. 2021). The proper analysis is whether the corporate veil should be pierced, which is a much higher bar. *Henao*, 557 F. Supp. 3d at 496.

The cases Plaintiff cites are distinguishable. In *Xiaoyan Liu v. Canteen 82, Inc.*, No. 17 CIV. 7862, 2018 WL 6067228 (S.D.N.Y. Nov. 20, 2018), non-domiciliary defendants interacted with New York-based plaintiffs and participated in transferring employees and materials in and out of New York. This conduct provided an independent basis for specific jurisdiction. *See Dong Chul Kim v. Harte Hanks, Inc.*, 425 F. Supp. 3d 246, 258 (S.D.N.Y. 2019) (explaining how *Liu* is distinguishable). In *Williams v. PMA Cos.*, 419 F. Supp. 3d 471, 484-85 (N.D.N.Y. 2019), the court made clear that even where a plaintiff pleads a single integrated enterprise, he must still show the subsidiary is an agent or mere department of the parent for personal jurisdiction to exist. *See Henao*, 557 F. Supp. 3d at 496-97 (explaining how *Williams* is distinguishable).

Here, the TAC admits that team hiring is discretionary and unfettered (TAC ¶ 121) and that none of the conduct relevant to Plaintiff's claims against the Broncos (i.e., the interview and hiring decision) occurred in New York. Moreover, Plaintiff's agency theory runs the wrong direction. Agency-based jurisdiction requires the in-forum entity to act as the out-of-state defendant's agent, conducting the defendant's business in the forum. *See Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 259, 261 (S.D.N.Y. 2011). Plaintiff alleges that the NFL administers rules from New York to the Broncos in Colorado, placing purposeful conduct in the forum on the NFL's side, not the Broncos. That is precisely what *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) forbids.

Finally, the absence of any ownership relationship between the NFL and the Broncos is undisputed, and the Smyth Declaration stands unrebutted. Jurisdictional discovery is unnecessary.

## II. THE NYSHRL AND NYCHRL CLAIMS AGAINST THE BRONCOS ARE TIME-BARRED AND OTHERWISE UNOPPOSED BY PLAINTIFF

The Broncos' Opening Brief established that all NYSHRL and NYCHRL claims against the Broncos, both disparate treatment (Second and Fourth Causes of Action) and disparate impact (Third and Fifth), are governed by the three-year limitations period of N.Y. C.P.L.R. § 214(2), which expired before this action was filed. Plaintiff's Opposition never disputes this. Because Plaintiff has effectively conceded these claims as being untimely and otherwise abandoned them, they should be dismissed.[1] *See Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 515 n.21 (S.D.N.Y. 2003); *cf. Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).

## III. PLAINTIFF'S SECTION 1981 CLAIM IS ALSO TIME-BARRED

Before 1991, Section 1981 protected only the right to *make* contracts; the 1991 Act expanded coverage to include post-contract conduct. 42 U.S.C. § 1981(b). *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004) (emphasis added). Claims within that expansion are governed by the four-year federal catch-all limitations period; however, claims already actionable before 1991, such as refusal to hire, remain governed by the shorter state-law period. *Id*. Plaintiff does not dispute this framework; his argument is that his claim 7concerns a failure to promote in an existing employment relationship and is thus a post-contract formation claim. That argument fails.

[1] Plaintiff's silence does not stop at timeliness. The Broncos' Opening Brief also demonstrated, independently, that Plaintiff failed to plausibly allege facts supporting an inference of discrimination sufficient to state disparate treatment claims under the NYSHRL and NYCHRL, and failed to identify any Broncos-specific practice sufficient to state disparate impact claims under those statutes. Plaintiff's Opposition does not meaningfully engage those merits arguments either, addressing them, if at all, only through the same generalized arguments directed at the Section 1981 claim discussed below, arguments that fail for the same reasons there. That showing, thus, also stands unrebutted. Additionally, as the Broncos' Opening Brief established, a nonresident plaintiff must plead and prove that the alleged discriminatory conduct had an impact in New York. *Hoffman v. Parade Publications*, 15 N.Y.3d 285, 290-91 (2010). *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024), extended this test only to nonresidents denied a New York City- or State-based job opportunity. Plaintiff resides in Minnesota, the Broncos are headquartered in Colorado, the interview occurred in Rhode Island (Smyth Decl. ¶ 8), and the position at issue was a Colorado-based Head Coach opening, not a New York-based opportunity. The conclusory addition of an NFL address to the Broncos' party description does not satisfy this standard.

*Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989), established that a failure-to-promote claim is cognizable as a contract formation claim under Section 1981 where the promotion creates a new and distinct relation. The question is whether the promotion creates a new contract or fulfills an implicit expectation or promise for promotion in the original contract. *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1412 (2d Cir. 1993); *Wright v. City of Ithaca*, 633 F. App'x 63, 64 (2d Cir. 2016) (police officer sought promotion from sergeant to lieutenant within his current employer and made a new contract under undisputed facts, requiring the shorter period to be applied as a matter of law). Routine promotions awarded for satisfactory job performance do not qualify as a new contract under Section 1981, but promotions creating a qualitatively different relationship, even within the same employer, such as "a move from factory worker to foreman, foreman to foreman supervisor, or manager to officer," do. *Id*. This inquiry can be resolved on a motion to dismiss where the complaint's allegations establish a substantial change in position to create a new contractual relationship. *See Stelly v. Dep't of Public Safety and Corrections*, 149 F.4th 516, 527 (5th Cir. 2025).

The TAC's Broncos-specific allegations describe exactly this kind of pre-1991 contract formation claim. Plaintiff interviewed for a job he did not hold and was not selected, and someone else was hired. (TAC ¶¶ 207-214). That is contract formation, not modification of an existing contract. The TAC itself confirms this by alleging that "NFL teams use a discretionary, subjective hiring practice when selecting Head Coaches" (TAC ¶ 121), that "NFL clubs compete over a substantially overlapping pool of candidates" drawn from other organizations (TAC ¶ 122), and that candidates "routinely participate in multiple interviews across clubs during the same hiring cycle" (TAC ¶ 123). These allegations describe an external, competitive, multi-club hiring

process—not a promotion "given routinely upon satisfactory job performance." *See Butts*, 990 F.2d at 1412.

Plaintiff argues in his Opposition that he held an existing contractual relationship with the NFL and its Clubs through his Patriots contract and that the Broncos interview was advancement within that relationship. But this theory appears nowhere in the TAC. To the contrary, the TAC characterizes Plaintiff's own prior move from Patriots assistant to Dolphins Head Coach as a new "offer" from a different organization, not advancement within an existing relationship. (TAC ¶ 160). A plaintiff may not rewrite his complaint through argument in an opposition brief. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

Even if this theory had been pleaded, it would fail. *Patterson's* test turns on whether the position sought requires formation of a new contract. *Id.* at 176. The TAC admits that becoming Head Coach would have required Plaintiff to sign an entirely new employment agreement with a different corporate entity, covering new compensation, a new term, and new duties. (TAC ¶¶ 374-378). The TAC acknowledges that Head Coach and Coordinator contracts are categorically different documents. (TAC ¶ 12). And the TAC alleges that Plaintiff's Head Coach contract with the Dolphins entitled him to "an eight-figure sum" upon termination (TAC ¶ 229) and describes the Head Coach position as the "most important" coaching role, with other positions being "less important" by comparison (TAC ¶ 150). These are the TAC's own allegations. They establish that Plaintiff sought the formation of an entirely new contractual relationship, not a routine promotion awarded for satisfactory job performance.

Plaintiff's single-employer and joint-employer allegations do not change this analysis. Those doctrines determine who may be held liable for an employment decision, not whether the position sought creates a new and distinct contractual relationship. And the TAC undercuts any

single-employer theory by repeatedly alleging that each team exercises its own discretionary, subjective, and unfettered hiring authority. (TAC ¶¶ 121, 124, 144). Even crediting Plaintiff's allegation that the Commissioner approves coaching contracts after the team's decision (TAC ¶¶ 365-380), each team's agreement remains separately negotiated. Plaintiff's claim accrued when the Broncos declined to hire him in January 2019. Under the three-year limitations period applicable to pre-1991 contract-formation claims, it is untimely.

## IV. EVEN IF IT HAD BEEN TIMELY, THE TAC DOES NOT PLEAD A VIABLE DISPARATE TREATMENT CLAIM UNDER SECTION 1981

Even if timely filed, the Section 1981 claim would still fail as being insufficiently pled. The TAC's only Section 1981 claim, asserted in the First Cause of Action as "Disparate Treatment Discrimination under Section 1981," requires Plaintiff to plead and prove that race was the but-for cause of his injury. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.Owned Media*, 589 U.S. 327, 341 (2020). The TAC fails to plead sufficient facts to support this requirement.

The TAC never describes how the Broncos chose between Plaintiff and Vic Fangio. There is no allegation of the criteria applied, no allegation of Fangio's qualifications, and no allegation that Plaintiff was more qualified. The TAC alleges only that Fangio, a white man, was hired, and, in conclusory fashion, asserts, without the required supporting factual detail, that the decision was motivated by race. (TAC ¶¶ 211, 212). Nor does the "sham interview" theory provide a basis to defeat dismissal. The TAC identifies no statement or circumstance connecting the interviewers' alleged tardiness to race. Such bare allegations fail to plead the required discriminatory intent. *See Burgis v. NYC Dep't. of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) ("Without any specificity as to the qualifications considered for each position [to which plaintiffs seek promotion] and without any reference to specific statements or individual circumstances that suggest discriminatory

treatment, plaintiffs" allegations do not support a finding [at the pleading stage] that defendants acted with a discriminatory purpose.").

In his Opposition, Plaintiff does not dispute these deficiencies. Instead, he attempts to get around them by pointing to general statistics and historical information about the NFL in the TAC's background section. This does not save his claim.

Section 1981 contains no analog to Title VII's disparate impact provision,[2] which is the sole basis for Plaintiff's asserted class claims under *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020); *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012). *See also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988). Incorporating the TAC's factual background and general statistics by reference cannot convert an intentional discrimination claim under Section 1981 into a disparate impact claim. *See Reynolds v. Barrett*, 685 F.3d 193, 201-02 (2d Cir. 2012); *Nweke v. Prudential Ins. Co. of America*, 25 F. Supp. 2d 203, 225 (S.D.N.Y. 1998).

Nor can the TAC be read to include a pattern-or-practice theory against the Broncos. First, the TAC's Section 1981 disparate treatment claim in the First Cause of Action does not include reference to any "pattern or practice" or "standard operating procedure" by any Defendant, let alone the Broncos. (TAC ¶¶ 421-425). That language appears only in the TAC's Title VII claim (TAC ¶ 467), which is not asserted against the Broncos. (TAC ¶¶ 465-470).

Second, even if the Section 1981 disparate treatment claim had referenced a "pattern or practice," such a claim would not be sufficiently asserted. Because Plaintiff has failed to state a claim under section 1981 against the Broncos for the reason noted above, he is "thus precluded from asserting section 1981 claims on behalf of the putative [c]lass" against the Broncos. *See Henley v. Turner Broadcasting Sys.*, 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (citing *Hardy v.*

[2] 42 U.S.C. § 2000e-2(k)(1)(A)(i).

*Fischer*, 701 F. Supp.2d 604, 611, n.5 (S.D.N.Y.)). *See also Sinclair v. Goord*, No. 9:07-CV-137, 2009 WL 9056089, *8 (N.D.N.Y. March 10, 2009).

Third, Pattern-or-practice "is not a separate and free-standing cause of action" but only "another method by which disparate treatment can be shown." *United States v. City of N.Y.*, 717 F.3d 72, 83 (2d Cir. 2013). To properly allege such a theory, a plaintiff must plead that discrimination was the particular defendant's "standard operating procedure," not "the mere occurrence of isolated or accidental or sporadic discriminatory acts." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977). A pattern does not exist when there are "too few employment decisions" to "justify the inference" of a regular practice. *Id.* at 360 n.46. *See also Frazier v. Stanley*, No. 16 Civ. 804 (RJS), 2018 WL 11585450, at *11 (S.D.N.Y. Nov. 29, 2018) ("several isolated incidents, without more, are insufficient to allege a pattern or practice"); *cf. Allen v. NYC Dept. of Environ. Prot.,* 51 F. Supp. 3d 504, 517-20 (S.D.N.Y. 2014).

The TAC's allegations do not meet this standard. The TAC alleges only a single Broncos hiring decision (TAC ¶¶ 207-214), and that allegation does not assert any fact from which discrimination based on race can be inferred, let alone establish a regular practice or pattern of discrimination by the Broncos. Every reference to "pattern or practice" in the TAC, and every conclusory allegation concerning a "standard operating procedure," relates to the NFL, not the Broncos. (TAC ¶ 467; Plaintiff's Opposition, pp. 39-40). Plaintiff cannot proceed against the Broncos on a pattern-or-practice theory premised on another entity's alleged standard operating procedure, nor can he manufacture a Broncos-specific pattern or practice from a single hiring decision unaccompanied by any other factual allegation concerning the Broncos.

Plaintiff's reliance on league-wide statistics and Rooney Rule history fails for the same reason. Those allegations describe the NFL's history and policies, not any fact particular to the

Broncos or the January 2019 decision. A plaintiff pleading statistical disparities fails where those statistics are not tied to meaningful specifics about the challenged decision. *Burgis v. NYC Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015). Plaintiff pleads no Broncos-specific data whatsoever, much less such statistics "of a level that makes other plausible non-discriminatory explanations very unlikely." *See Burgis*, 798 F.3d at 68. He cannot use the NFL's or the other Clubs' alleged conduct to establish the but-for racial motivation that Section 1981 requires him to prove against the Broncos.

Finally, *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024), does not change this result. *Muldrow* addressed only the degree of harm required to establish an adverse action under Title VII, holding a plaintiff need show only some harm, not significant harm, to a term or condition of employment. It did not change Section 1981's but-for causation requirement. *Comcast*, 589 U.S. at 341. Even where courts have extended *Muldrow*'s harm standard to Section 1981, the causation requirement remains intact. *See Anderson v. Amazon.com, Inc.*, No. 23-CV-8347, 2024 WL 2801986 (S.D.N.Y. May 31, 2024) (plaintiff who survived dismissal on harm question later lost at summary judgment on causation).

## V. THE BRONCOS CANNOT BE HELD LIABLE BASED ON COLLECTIVE ALLEGATIONS DIRECTED AT OTHER DEFENDANTS

Plaintiff's Opposition never responds to this argument. He does not address or attempt to distinguish *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256, 2020 WL 6274826, at *41 (S.D.N.Y. Oct. 24, 2020), or *Griffin v. Sirvan Inc.*, 835 F.3d 283, 293 (2d Cir. 2016), cases cited in the Broncos' Opening Brief, and does not defend the TAC's conclusory allegation that "each Defendant actually participated in and aided and abetted the discriminatory conduct of the other Defendants" against the individual pleading requirement *Iqbal* imposes. *Ashcroft v. Iqbal*,

556 U.S. 662, 663 (2009). This argument is therefore conceded. *See Lipton v. County of Orange, New York*, 315 F. Supp. 2d 434 (S.D.N.Y. 2004).

Plaintiff's broader joint employer and integrated enterprise theories do not cure this defect. Those doctrines address whether an entity may be held liable for a specific employment decision it participated in or controlled, not whether unrelated conduct by other defendants may be attributed to the Broncos. *See Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 845 (2d Cir. 2022) (dismissing joint employer claim where the complaint did not plausibly allege the defendant exerted significant control over the terms and conditions of the plaintiff's employment); *Donahue v. Clair Car Connection, Inc.*, 736 F. Supp. 2d 294, 314 (D. Me. 2010) (dismissing sister company defendants under an integrated enterprise theory where they had no active participation in the employment decision relevant to the plaintiff's termination).

Plaintiff's Opposition never cites or attempts to distinguish the arguments made or cases cited by the Broncos on this point. Instead, Plaintiff's Opposition acknowledges the limitations of his joint employment and single enterprise theories in footnote 8, which admits that "in joint-employer relationships, conduct of one employer cannot necessarily be imputed to the other." (Plaintiff's Opposition, p. 17, n.8). The TAC does not allege that the Broncos participated in, controlled, or knew about any other teams' decisions, and the TAC's own admission that each team exercises independent, subjective hiring authority prevents any such inference. (TAC ¶ 121).

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the Broncos' Opening Brief, the Court should grant the Broncos' Motion and dismiss all claims against the Broncos in the Third Amended Complaint with prejudice.

Dated: August 19, 2026

KUTAK ROCK LLP

By: /s/ Reid A. Page

Reid A. Page (admitted *pro hac vice*)
Marcia A. Washkuhn (admitted *pro hac vice*)
Anna M. Berman (admitted *pro hac vice*)
Tara A. Leesar (admitted *pro hac vice*)
2001 16th Street, Suite 1800
Denver, Colorado 80202
Telephone: (303) 297-2400
reid.page@kutakrock.com
marcia.washkuhn@kutakrock.com
anna.berman@kutakrock.com
tara.leesar@kutakrock.com

*Attorneys for Defendant Denver Broncos Football Club, d/b/a Denver Broncos*

**Certificate of Compliance with Word Count**

The undersigned counsel hereby certifies, pursuant to Section 4.B.i of Judge Caproni's Individual Practice Standards in Civil Cases, that the foregoing Reply Memorandum of Law in Support of Defendant Denver Broncos' Motion to Dismiss complies with the Court's word-count limitations. This memorandum contains 3,494 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate.

Dated: August 19, 2026

**KUTAK ROCK LLP**

/s/ Reid A. Page
Reid A. Page (admitted *pro hac vice*)