**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

Plaintiffs,

- v. -

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,

Defendants.

Docket No. 22-cv-00871 (VEC)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT THE NATIONAL FOOTBALL LEAGUE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS CERTAIN CLAIMS IN THE THIRD AMENDED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000

*Attorneys for Defendant the National Football League*

Dated: August 19, 2026

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. Flores Fails to Allege the NFL Was His Employer ........ 2

  A. Flores Does Not Allege a Single-Employer Relationship ........ 2

  B. Flores Does Not Allege a Joint-Employer Relationship ........ 5

II. Flores Fails to Plead Discrimination Against the NFL Under Any Theory ........ 7

  A. Flores Does Not Allege Disparate Treatment ........ 7

  B. Flores Does Not Allege Disparate Impact ........ 8

  C. Flores Does Not Allege Retaliation ........ 9

  D. Flores Does Not Allege Impact in New York ........ 10

III. Plaintiffs Do Not Allege Retaliation Based on the Arbitration ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrade* v. *Cultural Care, Inc.*,
706 F. Supp. 3d 348 (E.D.N.Y. 2023) ....................6

*Barfield* v. *NYC Health & Hosps. Corp.*,
537 F.3d 132 (2d Cir. 2008)....................6

*Benedict* v. *Manfred*,
2026 WL 836679 (S.D.N.Y. 2026)....................5, 6

*Brown* v. *Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014)....................2

*Byrnie* v. *Town of Cromwell, Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001)....................9

*Cassard* v. *Omnicom Media Grp. Holdings, Inc.*,
2025 WL 3227617 (S.D.N.Y. 2025)....................3

*United States* v. *City of New York*,
717 F.3d 72 (2d Cir. 2013)....................7

*Craig* v. *Yale Univ. Sch. of Med.*,
2013 WL 789718 (D. Conn. 2013) ....................8

*Doheny* v. *Int'l Bus. Machines Corp.*,
714 F. Supp. 3d 342 (S.D.N.Y. 2024)....................2, 4

*Donahue* v. *Asia TV USA Ltd.*,
208 F. Supp. 3d 505 (S.D.N.Y. 2016)....................3

*Farber* v. *Walt Disney Co.*,
2024 WL 3874131 (S.D.N.Y. 2024)....................3

*Felder* v. *U.S. Tennis Ass'n*,
27 F.4th 834 (2d Cir. 2022) ....................2, 5, 6

*Fincher* v. *Depository Tr. & Clearing Corp.*,
604 F.3d 712 (2d Cir. 2010)....................9

*Flores* v. *New York Football Giants, Inc.*,
150 F.4th 172 (2d Cir. 2025) ....................11

*Frazier* v. *Morgan Stanley*,
2018 WL 11585450 (S.D.N.Y. 2018)....................7

*Gulino* v. *N.Y. State Educ. Dep't*,
460 F.3d 361 (2d Cir. 2006)....................2

*Hill* v. *Major League Soccer*,
2024 WL 3361216 (S.D.N.Y. 2024).................... *passim*

*Irizarry* v. *Catsimatidis*,
722 F.3d 99 (2d Cir. 2013)....................6

*Mandala* v. *NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020)....................8, 9

*Mangahas* v. *Eight Oranges Inc.*,
754 F. Supp. 3d 468 (S.D.N.Y. 2024)....................3

*Musiello* v. *CBS Corp.*,
518 F. Supp. 3d 782 (S.D.N.Y. 2021)....................2

*N. Am. Soccer League* v. *NLRB*,
613 F.2d 1379 (5th Cir. 1980) ....................7

*Nat'l Football League*,
309 N.L.R.B. 78 (1992) ....................7

*Olvera* v. *Bareburger Grp. LLC*,
73 F. Supp. 3d 201 (S.D.N.Y. 2014)....................6

*Ortiz* v. *Consol. Edison Co.*,
801 F. Supp. 3d 260 (S.D.N.Y. 2025)....................6

*Senne* v. *Kansas City Royals Baseball Corp.*,
591 F. Supp. 3d 453 (N.D. Cal. 2022) ....................6

*St. Jean* v. *Orient-Express Hotels Inc.*,
963 F. Supp. 2d 301 (S.D.N.Y. 2013)....................3

*Steinberg* v. *Cushman & Wakefield, Inc.*,
2025 WL 1084646 (S.D.N.Y. 2025)....................6

*Syeed* v. *Bloomberg L.P.*,
41 N.Y.3d 446 (2024) ....................10

*Toledo* v. *Unibud Restoration Corp.*,
2022 WL 171198 (S.D.N.Y. 2022)....................2

*Trotter* v. *Nat'l Football League*,
737 F. Supp. 3d 172 (S.D.N.Y. 2024)....................10

*Whethers* v. *Nassau Health Care Corp.*,
956 F. Supp. 2d 364 (E.D.N.Y. 2013) ....................8

## PRELIMINARY STATEMENT

Flores's Opposition confirms that his Claims against the NFL should be dismissed because the NFL is not alleged to be his employer and his Claims are inadequately pled.

Flores concedes the NFL was neither his actual nor prospective employer. As a result, to assert his club-specific employment grievances against the NFL, he must qualify for "extraordinary" exceptions to the rule that one entity is not liable for another's employment actions; he must plead the NFL and the clubs are either a single or joint employer. The Opposition confirms he cannot. The Complaint does not allege that the NFL, by governing professional football, controlled club decisions to hire or fire coaches or coaches' day-to-day employment activities. It concedes the opposite: the clubs alone control hiring decisions. Although Flores points to the NFL Constitution and other governance policies applicable to the clubs, none suggests NFL control of club-employment decisions, and all are beside the point under settled caselaw. Indeed, materially similar attempts to plead that other sports leagues were single or joint employers with their clubs have been rejected by courts in this district.

Flores's efforts to remedy his other fatal pleading deficiencies are unavailing. Regarding his disparate treatment Claims, he cites no allegations supporting an inference of intentional discrimination by the NFL. The Opposition contradicts any such intent by emphasizing the NFL's "well-intentioned" efforts to increase diversity by strengthening the Rooney Rule. Nor does Flores identify any facially-neutral "specific employment practice" that could support his disparate impact Claims. The assorted League-wide governance policies on which he relies cannot be collapsed with the clubs' "discretionary" and independent hiring processes into a specific employment practice. Even if they could, Flores does not allege how any of these policies caused any racial disparities. Flores also fails to defend his retaliation Claims against the NFL. He pleads

no facts suggesting the NFL participated in the Texans' decision not to hire Flores, or took any adverse employment action against him during the court-ordered arbitration proceedings.

Lacking allegations to state any claim, Flores resorts to attaching cherry-picked documents from the early stages of discovery. Even if these documents were properly before the Court—they are not—they only confirm the NFL does not have the employer-relationship necessary for Flores's Claims to survive. They are simply examples of League-wide governance policies that confirm the NFL does not control club-employment decisions.

## ARGUMENT

### I. Flores Fails to Allege the NFL Was His Employer

Contrary to Flores's assertion, the standards for single and joint employer liability are not "low bars," Opp. 8, but instead require "extraordinary circumstances" to impute liability to the NFL. Those circumstances are absent here. Mot. 10.[1]

#### A. Flores Does Not Allege a Single-Employer Relationship[2]

Centralized control of labor relations is the most significant factor in the single employer analysis. *Hill* v. *Major League Soccer ("MLS")*, 2024 WL 3361216, at *4 (S.D.N.Y. 2024). To that end, the "critical question to be answered" is: "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* An entity that does not make "final employment decisions" lacks sufficient control. *Id.*

---

1 Flores suggests the single-employer inquiry typically cannot be resolved on a motion to dismiss following *Brown* v. *Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014). Not so. Courts in this Circuit frequently grant motions to dismiss on this issue. *E.g.*, *Doheny* v. *IBM*, 714 F. Supp. 3d 342 (S.D.N.Y. 2024); *Musiello* v. *CBS Corp.*, 518 F. Supp. 3d 782, 790–93 (S.D.N.Y. 2021). Similarly, courts commonly grant motions to dismiss for failure to plead a joint-employer relationship. *E.g.*, *Felder* v. *U.S. Tennis Ass'n*, 27 F.4th 834, 838–39 (2d Cir. 2022); *Toledo* v. *Unibud Restoration Corp.*, 2022 WL 171198, at *2 (S.D.N.Y. 2022).

2 Contrary to Flores's suggestion otherwise, Opp. 13 n.4, single-employer liability "has been confined" to specific corporate contexts not present here. *Gulino* v. *N.Y. State Educ. Dep't*, 460 F.3d 361, 378 (2d Cir. 2006).

Flores attempts to meet this factor by relying on provisions of the NFL Constitution and other League governance policies. Opp. 7–11. He cites the League's authority to approve club-employment contracts and to impose certain disciplinary measures, and references documents not discussed in the Complaint, such as the League's anti-tampering policy and a 2023-24 memo discussing the timing and reporting of interviews for that hiring cycle.[3] *See id.* None shows the NFL controlled "final decisions regarding employment matters" related to Flores, or that the League had any involvement in any club employment decision challenged in the Complaint. *MLS*, 2024 WL 3361216, at *5 (allegations of "binding hiring policies" insufficient because they were not "facts showing that MLS was actually involved in the decision of the three Clubs not to hire the plaintiff"); *see also Cassard* v. *Omnicom Media Grp. Holdings, Inc.*, 2025 WL 3227617, at *5 (S.D.N.Y. 2025) ("shared HR policies" and "organization-wide code of conduct" insufficient). In fact, the Complaint alleges the challenged decisions resulted from the "discretionary, subjective hiring practices" of each club. ¶ 121. That is dispositive of the centralized control factor and creates an "almost insurmountable" barrier to single employer liability. *Cassard*, 2025 WL 3227617, at *7. Flores's cited cases only reinforce the point—in each, defendants exercised control over the challenged employment actions.[4]

Flores's efforts to plead the remaining single-employer factors fail. To show interrelation of operations, he must allege the "entities share[] employees, services, records, and equipment" or

---

[3] As Flores is well aware, the Court cannot consider these documents on a motion to dismiss. Even if it could, the anti-tampering policy (Ex. B), hiring memo (Ex. C), and dispute resolution guidelines (Ex. E) demonstrate nothing more than what the Complaint already alleges: the NFL does not control the challenged employment decisions. And the non-party slide evaluating Mr. Flores's fitness to serve as head coach (Ex. A) has no bearing on any issue currently before the Court related to the NFL.

[4] *St. Jean* v. *Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 310 (S.D.N.Y. 2013) (defendant fired plaintiff); *Donahue* v. *Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 518 (S.D.N.Y. 2016) (defendant instructed plaintiff to retire and recommended replacement); *Farber* v. *Walt Disney Co.*, 2024 WL 3874131, at *3 (S.D.N.Y. 2024) (defendant reduced plaintiff's salary and "took over" complaint resolution process); *Mangahas* v. *Eight Oranges Inc.*, 754 F. Supp. 3d 468, 488 (S.D.N.Y. 2024) (defendants handled all "major employment decisions, and personnel and pay policies").

are otherwise intertwined, such as by maintaining "commingled bank accounts." *Doheny*, 714 F. Supp. at 375–76. The Complaint does not do so. Nor would the Opposition's unpled assertions that the NFL conducts activities like scheduling games and administering the draft suffice.

As for common management, Flores effectively concedes he cannot meet it because he properly distinguishes League executives from club owners and management. *E.g.*, ¶¶ 7, 9, 160–228.

The Complaint also fails to allege common ownership or financial control. Flores alleges the clubs operate separately from the League and have distinct owners who are "ultimately responsible for leading" their organizations. ¶¶ 156–57. While the Opposition points to shared revenue between the League and clubs, including via certain media contracts, that is not financial control. *MLS*, 2024 WL 3361216, at *5 (rejecting allegations of "TV deals" and "jersey sponsorships").

Although Flores claims that *MLS* "shed[s] little light" on the single-employer inquiry, Opp. 18, it is materially indistinguishable. There, a coach attempted to attach single-employer liability to MLS for allegedly discriminatory hiring decisions by certain clubs. As does Flores, the *MLS* complaint alleged that through its constitution and other policies, MLS:

(i) required club employees to "comply with all League Rules," including "tampering policies";

(ii) required clubs to submit "each employment contract . . . for MLS's review and approval";

(iii) mandated club-employment contracts contain language requiring that employees "be subject to the Commissioner's jurisdiction";

(iv) permitted MLS to "suspend, fine and reinstate head coaches"; and

(v) forced clubs to comply with a policy requiring them to interview at least one minority candidate before hiring a head coach.

*MLS*, ECF No. 116 ¶¶ 31–34, 45; *see* Compl. ¶¶ 119, 170, 372–377, 379. On the element of control, the *MLS* complaint pleaded more than Flores can here because MLS clubs are "***owned by the league*** and individually operated by the league's investors." 2024 WL 3361216, at *5 (emphasis added). These allegations notwithstanding, Judge Koeltl held MLS was not a single employer with the clubs because "plaintiff [did] not allege plausibly any facts supporting the notion that MLS participated in the Clubs' individualized decisions not to hire him." *Id.* at *4. So, too, here.

### B. Flores Does Not Allege a Joint-Employer Relationship

Flores's attempt to impute liability to the NFL under the joint-employer doctrine also fails. The joint-employer inquiry hinges on whether two entities "share significant control of the same employee." *Felder*, 27 F.4th at 843. "This means that an entity other than the employee's actual employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, such that we may properly conclude that a constructive employer-employee relationship exists." *Id.* at 844; *Benedict* v. *Manfred*, 2026 WL 836679, at *5 (S.D.N.Y. 2026) (dismissing claim against MLB for failure to allege "immediate control" over team employee).

The Complaint nowhere alleges the NFL has "immediate" or "significant" control over the "daily employment activities" of coaches. Mot. 14–16. Flores improperly attempts to cure this deficiency by citing League-wide governance requirements, including that clubs have "interview and documentation" obligations, coaches must "compl[y] with NFL rules," and the Commissioner has the power to approve club employment contracts. Opp. 14–16. These arguments fail. As explained in the context of Major League Baseball—another case rejecting the contention that a sports league is a joint employer with its clubs—allegations that the "[League] and the Commissioner exercise control, league-wide" over club employees, including by "mandating the

use of standardized universal employment contracts" and "requiring mandatory arbitration," are inadequate. *Manfred*, 2026 WL 836679, at *5. Flores attempts to distinguish *Manfred* by stating that "MLB did not exercise any level of control over the clubs' actual hiring decisions," Opp. 18, but the same is true here. There must be allegations that the NFL's "control extends to employer decisions concerning" Flores, such as that the League "paid [his] salary or controlled [his] daily tasks." *Manfred*, 2026 WL 836679, at *5; *see also Felder*, 27 F.4th 834 (rejecting joint-employer claim where USTA was not alleged to be involved in training, supervision, compensation, benefits, or controlling other means of security guard's employment). The Complaint is devoid of such allegations. Mot. 14–16.

Flores's cases again prove the point. He cites only two employment-discrimination cases: *Steinberg* v. *Cushman & Wakefield, Inc.*, where, unlike here, plaintiff alleged that defendant was "assigned" "[a]ll duties of hiring, firing, discipline, pay, and health insurance," 2025 WL 1084646, at *2 (S.D.N.Y. 2025), and *Andrade* v. *Cultural Care, Inc.*, where, unlike here, defendant placement agency had "the power to hire and terminate" plaintiff au pair and "transfer [her] between host families." 706 F. Supp. 3d 348, 362 (E.D.N.Y. 2023). Flores also cites a number of FLSA cases—where a broader "economic reality" test applies—that are likewise off-point as they allege the putative employer had significant control over plaintiff's employment and compensation.[5] For instance, in *Senne* v. *Kansas City Royals Baseball Corp.*, an FLSA collective action, the court determined that MLB and its clubs were joint employers of minor league baseball players including because there were league-mandated minimum salaries and other compensation

[5] *Barfield* v. *NYC Health & Hosps. Corp.*, 537 F.3d 132, 144 (2d Cir. 2008) (defendant had "undisputed power to hire and fire at will"); *Ortiz* v. *Consol. Edison Co.*, 801 F. Supp. 3d 260, 302–04 (S.D.N.Y. 2025) (defendant "threatened to, or did, discipline, suspend, or terminate" employees, controlled schedules, and supervised subcontracting sites); *Olvera* v. *Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014) (defendant monitored employee performance and controlled compensation); *Irizarry* v. *Catsimatidis*, 722 F.3d 99, 114 (2d Cir. 2013) (defendant had "authority to hire and fire").

requirements for these players. 591 F. Supp. 3d 453, 470, 521–25 (N.D. Cal. 2022). Flores also highlights two out-of-circuit cases related to collective bargaining issues that have no bearing on the joint-employer inquiry in a discrimination case. *N. Am. Soccer League* v. *NLRB*, 613 F.2d 1379 (5th Cir. 1980); *Nat'l Football League*, 309 N.L.R.B. 78 (1992).

## II. Flores Fails to Plead Discrimination Against the NFL Under Any Theory

### A. Flores Does Not Allege Disparate Treatment

The Complaint does not allege the NFL participated in any club decision concerning Flores, much less that it did so with the requisite discriminatory intent. Mot. 17–19. The Opposition instead undermines any inference of intentional discrimination by admitting that the NFL has "repeatedly attempted to strengthen the Rooney Rule and adopted additional related measures," reflecting "the NFL's recognition that promoting racial diversity of team employees is a League-wide obligation." Opp. 3. And while the Opposition references an NFL executive's statement about a supposed "double standard" for Black coaches, *id.* at 22, it omits that statement's context, which acknowledges a "need to fix" the disparity, which Commissioner Goodell called "unacceptable." ¶¶ 114, 116. These "well-intentioned" efforts, ¶ 130, are "probative of the ***absence*** of . . . intent to discriminate." *U.S.* v. *City of N.Y.*, 717 F.3d 72, 86 (2d Cir. 2013).

Recognizing as much, Flores rehashes his argument that the NFL is a single or joint employer with its clubs. Opp. 36. For the reasons above, that argument fails. *Supra* at 2–7. But even if a joint-employer relationship existed, Flores cannot impute any alleged intentional discrimination by the clubs to the NFL; the Complaint must allege that the NFL independently engaged in intentional discrimination. Mot. 16–18; Opp. 17 n.8. It does not.

As for his pattern-or-practice theory, Flores must plead that intentional discrimination is the NFL's "standard operating procedure"—the "regular rather than unusual practice." *Frazier* v. *Morgan Stanley*, 2018 WL 11585450, at *9 (S.D.N.Y. 2018). Here, too, allegations of the NFL's

"well-intentioned" efforts foreclose any inference of such a practice. Opp. 3, 42; ¶ 130. Flores relies on an "array of allegations" to try to demonstrate a pattern-or-practice, but those amount to nothing more than individualized instances of supposed discrimination or Rooney Rule non-compliance by particular clubs, vague rhetoric about a "League-wide hiring ecosystem," and so-called "statistical disparities" from individualized hiring decisions across the clubs. Opp. 39. None of this alleges a "pervasive policy" of intentional discrimination *by the League*. Mot. 19; *Craig* v. *Yale Univ. Sch. of Med.*, 2013 WL 789718, at *10 (D. Conn. 2013) (when "the probative evidence of discrimination is confined . . . [to] individual incidents, subjective decision making methods are not sufficient to establish a pattern or practice of discrimination"). Flores's conclusory assertion that there has been a repeated "failure" by the NFL to "investigate or remedy known discriminatory practices," Opp. 39, is unsupported by any factual allegations, and in any event, allegations of "ignor[ing] discrimination complaints" are not enough to state a disparate treatment claim. *Whethers* v. *Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 378 (E.D.N.Y. 2013).

**B. Flores Does Not Allege Disparate Impact**

Flores fails to plead a disparate impact claim because he does not identify a facially neutral "specific employment practice" that disproportionately affects members of a protected class. *Mandala* v. *NTT Data, Inc.*, 975 F.3d 202, 207–08 (2d Cir. 2020); Mot. 22–25. The Opposition disclaims reliance on the Rooney Rule, as it must, because it is not facially neutral. Opp. 44; Mot. 22–23. Flores instead claims there is a supposed "standardized Head Coach hiring process" across the clubs, relying on a number of League hiring policies purportedly operating "in conjunction" with "discretionary" club-hiring decisions. Opp. 41–42. That is insufficient: "[s]imply gesturing towards the hiring [or retention] process as a whole will not satisfy the requirement that the plaintiff

identify a specific employment practice that is the cause of the statistical disparities." *Byrnie* v. *Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001).

Even for the specific policies Flores identifies as part of this supposed "standardized" process—the Rooney Rule (which Flores includes even though he disclaimed it as the "predicate for" his claim), the unpled anti-tampering policy and 2023–24 hiring memo, Opp. 41–42—he nowhere explains, and the Complaint nowhere alleges, how these policies impacted club hiring decisions or caused an alleged disparate impact. *Mandala*, 975 F.3d at 207 (requiring a "causal relationship" between the policy and disparity). While these policies may expand the number of candidates *interviewed* and regulate when *interviews* may occur, the Complaint concedes that decisions about who to *hire* are solely made by clubs and are "unfettered," "discretionary" and "unchecked." ¶ 145; *see MLS*, 2024 WL 3361216, at *6.

Flores's contention that an "unchecked, subjective decision-making process" can be actionable as a specific employment practice is unavailing. Opp. 42. As a preliminary matter, the Complaint nowhere alleges that *club* discretion is an *NFL* employment practice. Flores's cited cases stand for the unremarkable proposition that an unchecked hiring process administered by the same decisionmakers within the same hiring organization may suffice. *Id.* 42–43. But here there are 32 distinct club-hiring processes, each with its own decisionmakers.

### C. Flores Does Not Allege Retaliation

Flores's retaliation claim based on the Texans' decision to hire a different, "more than qualified" Black man as head coach fails because it does not allege the NFL participated in the Texans' decision. Mot. 25. Flores nevertheless argues the NFL was on "direct notice" of this lawsuit and "failed to take [] corrective measures within its control" to stop the supposed retaliation. Opp. 50–51. But the Complaint alleges no facts to support that assertion, and even if it did, it would not be enough to state a retaliation claim. *Fincher* v. *Depository Tr. & Clearing*

*Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) ("Affirmative efforts to punish a complaining employee are at the heart of any retaliation claim."). Nor does the Complaint allege the NFL had knowledge of the Texans' decision before it was made, or what supposed "corrective measures" were within the League's power to stop the Texans from hiring the head coach of its choosing. ¶¶ 216–28.

### D. Flores Does Not Allege Impact in New York

In response to the NFL's showing that Flores's NYSHRL and NYCHRL Claims do not plead the requisite impact in New York State or New York City, the Opposition concocts a litany of pled and unpled New York-based contacts, Opp. 32–35, including that the lawsuit was filed in New York, but none support the required inference that Flores experienced any alleged discriminatory conduct in New York. Mot. 26. Flores argues that the California-based plaintiff in *Trotter* v. *National Football League*, 737 F. Supp. 3d 172, 192 (S.D.N.Y. 2024), worked for "the NFL's media arm and not an NFL team," Opp. 35 n.20, but the impact in *Trotter* was insufficient even though the NFL is based in New York, so *a fortiori* Flores's employment or prospective employment with clubs outside New York does not meet the threshold. Similarly, Flores points to *Syeed* v. *Bloomberg L.P.*, but the subject position there was in New York. 41 N.Y.3d 446 (2024).

## III. Plaintiffs Do Not Allege Retaliation Based on the Arbitration

None of Flores's arguments salvages Plaintiffs' arbitration-related retaliation claim.

First, Plaintiffs do not adequately allege employer liability against the NFL, so this claim fails. Mot. 28.

Second, Plaintiffs do not allege any adverse employment action. Mot. 28–29. Plaintiffs admit that "being forced into one arbitral forum as opposed to another or that the proceedings were delayed" is not actionable. Opp. 53. Plaintiffs instead argue the retaliation here was that the arbitration was a "sham." *Id.* 51–52. But that is based on their allegations that the proceedings

were not "transferred into a legitimate arbitration forum (JAMS)" and were ground "to a halt" by the arbitrator, which Plaintiffs admit are not cognizable harms. *Id.*[6] Plaintiffs' reliance on the Second Circuit's decision about whether Flores could be *compelled* to arbitrate is misplaced, as it did not address whether he suffered an adverse employment action. *Flores* v. *New York Football Giants, Inc.*, 150 F.4th 172, 181–85 (2d Cir. 2025).

Third, there are no well-pled allegations of retaliatory intent. Mot. 30. The Opposition responds only by quoting two paragraphs of the Complaint (¶¶ 298, 309), neither of which alleges facts sufficient to support any inference of retaliatory intent. Opp. 55.

Fourth, for the reasons above, Plaintiffs' arbitration-related NYSHRL and NYCHRL Claims fail to plead the requisite impact in New York. *Supra* at 10.

Finally, Wilks and Horton have not exhausted their administrative remedies. Mot. 31.

**CONCLUSION**

Plaintiffs' Claims against the NFL should be dismissed with prejudice.

[6] Plaintiffs do not rebut the NFL's arbitral-immunity argument. They fail to explain how at the time of their alleged conduct, Commissioner Goodell and Harvey were not acting as arbitrators.

Dated: New York, New York
August 19, 2026

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Loretta E. Lynch*

Loretta E. Lynch
Brad S. Karp
Lynn B. Bayard
Daniel J. Toal
Brette Tannenbaum
B. Aubrey Smith
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3900
lelynch@paulweiss.com
bkarp@paulweiss.com
lbayard@paulweiss.com
dtoal@paulweiss.com
btannenbaum@paulweiss.com
asmith@paulweiss.com

*Attorneys for Defendant the National Football League*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Reply Memorandum of Law in Further Support of Defendant the National Football League's Motion to Dismiss complies with the requirements of Local Civil Rule 7.1(c) for the United States District Courts for the Eastern and Southern Districts of New York. According to the word processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Civil Rule 7.1(c), is 3,496 words.

*/s/ Loretta E. Lynch*
Loretta E. Lynch