UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated

Plaintiffs,

-v.-

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,

Defendants.

Case No. 1:22-cv-00871-VEC

**REPLY IN SUPPORT OF DEFENDANT HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS' RENEWED MOTION TO DISMISS CLAIMS IN THE THIRD AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

REYNOLDS FRIZZELL LLP
1100 Louisiana, Suite 3500
Houston, Texas 77002
(713) 485-7200

*Attorneys for Defendant Houston NFL Holdings, L.P. d/b/a Houston Texans*

Dated: August 19, 2026

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 1

I. Flores cannot establish personal jurisdiction or venue over the Texans. ........ 1

II. The Complaint does not attempt to plead disparate treatment by the Texans, and the Response concedes as much as to intentional discrimination. ........ 6

III. The Response does not identify a Texans policy creating a racial disparity for purposes of the disparate impact claims. ........ 7

IV. The Response does not establish that temporal proximity alone adequately pleads "but for" causation for retaliation here. ........ 8

V. The Response does not identify an impact in New York under the NYSHRL or NYCHRL. ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bilek v. Fed. Ins. Co.*,
8 F.4th 581 (7th Cir. 2021) ....................................................................................5

*Burgis v. N.Y.C. Dep't of Sanitation*,
798 F.3d 63 (2d Cir. 2015)........................................................................................7

*In re China Constr. Bank Corp.*,
803 F. Supp. 3d 260 (S.D.N.Y. 2025)........................................................................5

*Eades v. Kennedy, PC L. Off.*,
799 F.3d 161 (2d Cir. 2015)......................................................................................5

*Elsevier, Inc. v. Grossman*,
77 F.Supp.3d 331 (S.D.N.Y. 2015)............................................................................5

*Frazier v. Stanley*,
2018 WL 11585450 (S.D.N.Y. Nov. 29, 2018)...........................................................6

*Henao v. Parts Auth., LLC*,
557 F. Supp. 3d 490 (S.D.N.Y. 2021)........................................................................3

*Hoffman v. Parade Publ'ns*,
15 N.Y.3d 285 (2010) .........................................................................................10, 11

*In re Levant Line, S.A.*,
166 B.R. 221 (Bankr. S.D.N.Y. 1994) .......................................................................2

*Mendez v. Pure Foods Mgmt. Grp., Inc.*,
2016 WL 183473 (D. Conn. Jan. 14, 2016)................................................................3

*Mercer Health & Benefits LLC v. DiGregorio*,
307 F.Supp.3d 326 (S.D.N.Y. 2018)..........................................................................2

*Palmieri v. Estefan*,
793 F.Supp. 1182 (S.D.N.Y. 1992)............................................................................1

*Pennoyer v. Neff*,
95 U.S. 714 (1877).....................................................................................................3

*Reers v. Deutsche Bahn AG*,
320 F.Supp.2d 140 (S.D.N.Y. 2004)........................................................................2, 3

*Riddle v. Citigroup*,
2014 WL 2767180 (S.D.N.Y. May 29, 2014), *aff'd*, 640 Fed. Appx. 77 (2d Cir. 2016) ....................9

*Riddle v. Citigroup*,
640 Fed. Appx. 77 (2d Cir. 2016) (Summary Order) ....................9

*Sosa v. Medstaff, Inc.*,
2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) ....................4

*SPV OSUS Ltd. v. AIA LLC*,
2016 WL 3039192 (S.D.N.Y. May 26, 2016) ....................2

*Syed v. Bloomberg L.P.*,
41 N.Y.3d 446 (2024) ....................10

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................4

*Wang v. Palmisano*,
157 F. Supp. 3d 306 (S.D.N.Y. 2016) ....................8

*Weiss v. La Suisse*,
69 F.Supp.2d 449 (S.D.N.Y. 1999) ....................3

*Xiaoyan Liu v. Canteen 82 Inc.*,
2018 WL 6067228 (S.D.N.Y. Nov. 20, 2018) ....................4

*Yousef v. Al Jazeera Media Network*,
2018 WL 1665239 (S.D.N.Y. Mar. 22, 2018) ....................3

## PRELIMINARY STATEMENT

The Response reveals the remarkable nature of Flores's case against the Texans, in which the only adverse employment action pleaded as to the Texans is that Flores was not hired for a coaching job in Texas in favor of a qualified Black candidate, Lovie Smith. The Response concedes that Flores is not relying on the actual conduct of the Texans in New York for purposes of personal jurisdiction or venue. Likewise, it confirms that Flores has not tried to plead intentional discrimination against the Texans or to identify a Texans pattern-or-practice of discrimination or policy with disparate impact, despite asserting such claims.

Instead, the Response largely invokes Flores's sweeping, often contradictory theories about the relationship between the NFL and its thirty-two member clubs as an attempted cure-all for these pleading deficiencies. Those theories do not save Flores's claims against the Texans. The Response fails to meaningfully engage with (a) the Texans' arguments that Flores cannot plead claims against Defendants collectively, (b) the real requirements of his cited theories (multiple of which typically apply in the context of corporate subsidiaries or affiliates—a far cry from an unincorporated trade association like the NFL), or (c) the concerning constitutional and practical implications of applying these theories here. The claims against the Texans should be dismissed in their entirety, with prejudice, or at a minimum transferred for lack of jurisdiction and venue.

## ARGUMENT

### I. Flores cannot establish personal jurisdiction or venue over the Texans.

To avoid that the Texans are only "at home" for general jurisdiction in Texas, the Response attempts to invoke the "mere department" doctrine to argue that the NFL's New York home can be imputed to the Texans. The "mere department" doctrine provides a "narrowly applied" exception for corporate affiliates so closely intertwined that they can fairly be treated as sharing a home for general jurisdiction. *See Palmieri v. Estefan*, 793 F.Supp. 1182, 1187 (S.D.N.Y. 1992). Flores's

effort to expand it to the more attenuated context of an unincorporated trade association (unsupported by a single case doing so) would erode the constitutional limits of general jurisdiction.[1] Indeed, the consequence of accepting this theory would be that every member club nationwide is subject to general jurisdiction in New York—a novel jurisdictional expansion.

"[T]he indispensable prerequisite" of this doctrine is common ownership. *Mercer Health & Benefits LLC v. DiGregorio*, 307 F.Supp.3d 326, 345 (S.D.N.Y. 2018). "Although there is not a *per se* rule barring suits against a foreign entity which is not a wholly owned subsidiary, nearly identical ownership interests must be found." *In re Levant Line, S.A.*, 166 B.R. 221, 232 (Bankr. S.D.N.Y. 1994) (citation omitted). The Response glosses over this dispositive factor with the conclusory statement that "[t]he teams own the entirety of the NFL" (Resp. 58), which of course does not articulate corporate ownership as contemplated and—even if it did—would mean that each team owns only 1/32 of the NFL, far below the requisite threshold. *See, e.g.*, *Levant*, 166 B.R. at 232 (pleading 52% ownership interest insufficient); *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *5 (S.D.N.Y. May 26, 2016) (pleading 80% ownership interest only narrowly sufficient at motion to dismiss stage). Allegations about how the NFL organizes itself (concerning the Commissioner and Executive Committee) have nothing to do with ownership. Resp. 58.

Flores attempts to satisfy the financial dependence factor by pointing to the "significant financial connection" between the teams and NFL, asserting that the NFL negotiates "highly lucrative television contracts." Resp. 58. This factor has nothing to do with financial "connection": it "requires . . . that [a] subsidiary [] not be able to function without the financial support of the parent." *Reers v. Deutsche Bahn AG*, 320 F.Supp.2d 140, 157 (S.D.N.Y. 2004). Allegations

[1] Federal courts have rejected the theory that membership in an unincorporated trade association subjects an out-of-state member to general jurisdiction based upon the association's jurisdictional contacts. Mot. 9–10. The Response's attempt to distinguish additional cases in which a federal court declined to exercise general jurisdiction over a sports team fails by addressing these cases only in the specific jurisdiction context. Resp. 61.

concerning personnel and operational issues (Resp. 59) do not establish the pervasive control necessary to disregard the Texans' separate corporate existence. *See Yousef v. Al Jazeera Media Network*, 2018 WL 1665239, at *8 (S.D.N.Y. Mar. 22, 2018) (citation omitted) (control over major decisions not enough); *Weiss v. La Suisse*, 69 F.Supp.2d 449, 458 (S.D.N.Y. 1999) (plaintiff must demonstrate "a total disregard for the separate corporate existence of the subsidiary") (quotation omitted).

Flores's specific jurisdiction theories based on purported joint employer and agency relationships are, likewise, impermissible efforts to manufacture jurisdiction over the Texans (whose alleged conduct occurred in Texas) by imputing alleged contacts of the NFL that are, often, wholly unrelated to the claims against the Texans.

Even to the extent a joint (or single) employer relationship is pleaded (which it is not[2]), it is a theory of liability, not jurisdiction. Mot. 13. As one court declining to extend personal jurisdiction based on those theories—cited as persuasive in *Henao v. Parts Auth., LLC*, 557 F. Supp. 3d 490 (S.D.N.Y. 2021)—explained:

> Personal jurisdiction is a threshold question . . . that since the 19th century has had a constitutional dimension. *See, e.g.*, *Pennoyer v. Neff*, 95 U.S. 714 (1877) (applying a Due Process analysis to personal jurisdiction). In one statutory scheme or another, Congress or a state legislature might make the policy choice to allow a stricter or a more relaxed standard for what constitutes an "employer" for purposes of liability, and we might thereby end up with various tests (as we have) for determining an employer relationship under different statutes. But legislators do not have that same flexibility to fashion a more relaxed standard of personal jurisdiction.

*Mendez v. Pure Foods Mgmt. Grp., Inc.*, 2016 WL 183473, at *5 (D. Conn. Jan. 14, 2016).

Even if adequately pled, applying the joint employer theory to confer jurisdiction on the Texans would be inconsistent with the constitutional principle that jurisdiction "must arise out of

---

[2] The Texans incorporate the NFL's arguments on Flores's single and joint employer theories and Flores's impermissible attempt to rely on evidence attached to the Response.

the contacts that the defendant *himself* creates with the forum[.]" *Walden v. Fiore*, 571 U.S. 277, 284, 286 (2014) (internal quotations omitted). Flores attempts to use the joint employer theory to establish that the NFL should be treated as his employer because of the *NFL's purported control* over employment. The Response acknowledges that this doctrine does not automatically impute one entity's conduct to another (Resp. 17 n.8) (citing *Sosa v. Medstaff, Inc.*, 2013 WL 6569913, at *3 (S.D.N.Y. Dec. 13, 2013)), and its conclusory application of this doctrine to personal jurisdiction articulates no case for why, under *Walden*, it permits broadly imputing the contacts of the NFL to the Texans.

Instead of engaging with this constitutional issue, the Response cites inapposite authority predating the Texans' authorities: *Xiaoyan Liu v. Canteen 82 Inc.*, 2018 WL 6067228, at *2–3, 5 (S.D.N.Y. Nov. 20, 2018) (out-of-state and in-state defendants owned by the same individual employed plaintiffs in three New York and Connecticut restaurants, which regularly exchanged personnel and food products, establishing a substantial nexus between defendants' New York contacts and employment claims). Conversely, the Texans operate over 1,600 miles away from the NFL's New York headquarters as one of 32 teams without common ownership. The Complaint's only effort to connect the NFL's headquarters to the Texans' sole hiring decision at issue—by suggesting the NFL may have directed it—is speculative (citing no supporting facts and simultaneously musing that the Texans may have made the decision unilaterally), contradicted by other allegations that hiring is left to club discretion, and (if anything) attempts to articulate action by the NFL *(not the Texans)* in New York. *See* Compl. ¶ 227.[3]

[3] For these reasons, the Response's attempts to distinguish the Texans' cited cases by asserting that they were dismissed because "plaintiffs failed to tie the New York contacts to the out-of-state defendants"—are not persuasive. Resp. 61. Flores likewise fails to do so.

Flores's agency theory fails for similar reasons. Under the provision of the long-arm statute the Response cites (C.P.L.R. § 302(a)(1)), New York permits specific jurisdiction over a defendant who, in person or through an agent, "transacts any business within the state," but (as the Response omits) the claim also "must arise from that business activity." *Eades v. Kennedy, PC L. Off.*, 799 F.3d 161, 168 (2d Cir. 2015); *see also See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 591 (7th Cir. 2021) (agent's actions must be "intertwined with the very controversy at issue"). To establish agency under § 302, Flores must show that the NFL was engaged in "purposeful activities" in New York with the Texans' "consent and knowledge;" that the Texans "benefitted from those activities;" and that the Texans "exercised extensive control over" the NFL. *Elsevier, Inc. v. Grossman*, 77 F.Supp.3d 331, 345 (S.D.N.Y. 2015) (quotation omitted).

In support of his theory, the Response alleges NFL practices of (1) setting and administering "employment practices," (2) negotiating television contracts, and (3) scheduling games in Buffalo. Resp. 62. It fails to identify facts establishing requisite involvement or control by the Texans in any of those alleged activities. *See In re China Constr. Bank Corp.*, 803 F. Supp. 3d 260, 286 (S.D.N.Y. 2025). The Complaint attempts to allege that the NFL controls the clubs—not the other way around. Conclusory remarks that the NFL acts or exists "at the behest of the teams" (devoid of facts about how the Texans are involved) do not suffice. *See* Resp. 62.[4]

The only alleged NFL conduct in the Complaint that could have anything to do with Flores's allegations against the Texans (that the NFL *may have* directed the Texans in their hiring choice) exemplifies this issue. *See* Compl. ¶ 227. Although wholly speculative, conclusory, and contradicted elsewhere in the Complaint,[5] this allegation at most could speak only to an

---

[4] Moreover, the cases cited by Flores involve a parent-subsidiary relationship. Resp. 61-62.

[5] For similar reasons, the Response's argument that venue is appropriate based broadly on NFL policies allegedly set from New York and related records is unavailing. Moreover, while the Response asserts that the original filing of this lawsuit (*i.e.*, the alleged protected activity for the retaliation claim) serves as an adequate connection, the Response

(implausible) inference that the *NFL controls the Texans*, not the other way around. Plaintiff's latter two examples—negotiation of TV contracts and scheduling of Bills games—also have no discernible relationship to Flores's claims.

## II. The Complaint does not attempt to plead disparate treatment by the Texans, and the Response concedes as much as to intentional discrimination.

The Motion asserts that the Complaint does not plead facts alleging, as to the Texans, intentional discrimination against Flores or pattern-or-practice discrimination. Mot. 19-22. Nor can it, as the only alleged adverse employment action against Flores by the Texans is that he was not hired in favor of another Black coach, the last four of eight Texans head coaches have been Black, and the only additional Texans-related allegation concerns the termination of David Culley. *See Frazier v. Stanley*, 2018 WL 11585450, at *11 (S.D.N.Y. Nov. 29, 2018) ("[S]everal isolated incidents, without more, are insufficient to allege a pattern or practice.") (quotation omitted).

The Response appears to concede that intentional discrimination is not pleaded. It addresses other Defendants' arguments that Flores has not pleaded intentional discrimination against them (Resp. 20, 28) but does not address the Texans' at all. Likewise, it broadly argues that Flores had pleaded pattern-or-practice discrimination based on alleged NFL procedures and NFL-wide instances of alleged discrimination, addressing NFL arguments to the contrary. Resp. 39–41. It avoids the Texans' arguments that the Complaint does not plead a *Texans* pattern-or-practice. While the Response argues that statistical allegations suffice for the pattern-or-practice claims, the Complaint identifies no Texans-specific statistics, much less such statistics "of a level that makes other plausible non-discriminatory explanations very unlikely." *See generally Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015).

---

points to no case determining venue on that basis. Lastly, the Response does not address the Motion's argument that, even if venue is proper, the Court should exercise its discretion and transfer the claims against the Texans given their nonexistent connection to this forum. Resp. 63-66.

To the extent Flores argues that his single and joint employer theories mean he need not assert discriminatory action against him by the Texans and that allegations about other Defendants plead disparate treatment against the Texans, that outcome would radically expand either doctrine (assuming either was adequately pled, which they were not). The single employer theory typically applies in the context of corporate affiliates, where its factors (such as common ownership or financial control) can naturally be assessed. NFL Mot. 11. The Response also concedes that the joint employer theory does not impute conduct between entities and advocates only that, based on allegations of supposed NFL control, the conduct of the clubs be imputed to the NFL—not that the conduct of the clubs be imputed to each other, or that the conduct of the NFL be imputed to the clubs. *See* Resp. 17 n. 8. Nor are there allegations that would support any such imputation. *Supra* at 5. Indeed, permitting the disparate treatment claims to proceed on these theories would mean that *every* team in the NFL can be sued for discrimination based on allegations of hiring decisions made by other clubs.[6]

## III. <u>The Response does not identify a Texans policy creating a racial disparity for purposes of the disparate impact claims.</u>

Again, the Response does not address the arguments in the Motion that (a) the Complaint does not identify—*as to the Texans*—a "specific employment practice or policy" as required for the disparate impact claim and (b) the Texans' hiring of another Black candidate (Mr. Smith) over Flores (the only adverse employment action pleaded against the Texans by a named Plaintiff) could not create a disparity impacting a protected class. Mot. 22–23.

The Response asserts that the "policy" pleaded for purpose of the disparate impact claims is a constellation of various purported NFL hiring and employment policies with differing

[6] The Response does not address the Motion's argument that the Complaint does not adequately plead aiding and abetting liability and thus concedes that point.

purposes. Resp. 41, 45. The Response does not explain how this satisfies the specificity required under Title VII (Mot. 22-23) or how such policies created a disparate impact in club hiring—either League-wide or at the Texans—particularly where the Complaint alleges that club hiring is discretionary. Moreover, Flores's theory that he can hold individual clubs liable for alleged League-wide policies and statistics (without pleading such policies or statistics as to the clubs) would be an incorrect and remarkable application of the single and joint employer theories. *Supra* at 7.

**IV. <u>The Response does not establish that temporal proximity alone adequately pleads "but for" causation for retaliation here.</u>**

The retaliation claim against the Texans alleges that, about a week after Flores filed this lawsuit against other Defendants in the middle of a head coach interview process with the Texans, the Texans hired Lovie Smith instead. The Response fails to engage with the ways these facts preclude a plausible inference of "but for" causation—*i.e.*, that Flores would have been hired if not for retaliation—from temporal proximity alone.

As explained in the Motion, temporal proximity alone is insufficient to support an inference of but-for causation at the pleadings stage if there is "a more obvious cause," such as a hiring process already in progress. Mot. 18–19. While the Response asserts that, at the pleading stage, temporal proximity is always enough (Resp. 49–50), courts are not required to ignore relevant context. *See Wang v. Palmisano*, 157 F. Supp. 3d 306, 330 n.17 (S.D.N.Y. 2016) (observing in FLSA case, "in the context of a failure-to-hire case, . . . courts have noted [that] the timing of when the defendant undertakes the relevant adverse action is very often a function of the plaintiff's choice of when to apply . . . Although not currently the law of the Second Circuit and not necessary to resolve the instant Motion, there is much to recommend a rule of law providing that causation inferred from temporal proximity alone is insufficient to render a claim of retaliatory failure-to-

hire plausible at the motion-to-dismiss stage"); *Riddle v. Citigroup*, 2014 WL 2767180, at *4 (S.D.N.Y. May 29, 2014), *aff'd*, 640 Fed. Appx. 77 (2d Cir. 2016) (summary order) ("[C]ourts are skeptical about the notion that temporal proximity alone will raise an inference of retaliation in failure to hire cases, since it would be easy to manufacture discrimination lawsuits by applying to an employer whom the job applicant sued"); *see generally Riddle v. Citigroup*, 640 Fed. Appx. 77, 79 (2d Cir. 2016) (summary order) ("[W]e exercise [our] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.") (citation omitted).

The plain effect of Flores's argument is that the only way the Texans could have avoided being added to this lawsuit was to hire him, regardless of whether he was the right person for the job. The Response tries to avoid this issue by asserting that Flores's elimination was not the natural result of the hiring cycle because, "prior to filing this lawsuit [Flores] was a finalist," and "removing Flores from consideration and adding Smith to consideration" was an "abrupt change . . . due to Flores filing this lawsuit." Resp. 48–49. That argument is speculative and unsupported by the Complaint.

The Complaint pleads no facts supporting an inference that Flores was ever the top pick. Moreover, in the context of this hiring cycle, his elimination was not abrupt. The Complaint alleges that, in 2022, Flores interviewed January 31; this lawsuit was filed February 1; Flores remained a finalist as of February 6, when Mr. Smith's interview was publicly reported; and Mr. Smith's hiring was announced February 8. Compl. ¶¶ 218–21, 224–25. The Complaint thus asserts that the lawsuit's filing occurred relatively early and Flores's elimination fell relatively late in the brief hiring timeline, negating the argument that Flores's elimination occurred "abruptly" in response to the lawsuit. Nor does the Complaint plausibly plead that the decision to consider Mr. Smith was

"abrupt." The Complaint focuses on the date it was first publicly announced Mr. Smith would be interviewed. Compl. ¶ 224. Given that Mr. Smith was already employed by the Texans, that allegation does not give rise to a plausible inference that this was the first time he was considered.

While the Response argues that retaliatory intent can be inferred because the Texans were subject to "scrutiny" for terminating Mr. Culley (Resp. 49), that allegation, if anything, suggests the Texans would be particularly *unlikely* to act on retaliatory motive due to alleged scrutiny. The Response's argument that alleged instances of retaliation League-wide raise an inference of retaliation by the Texans is nothing more than impermissible group pleading.

## V. **The Response does not identify an impact in New York under the NYSHRL or NYCHRL.**

New York impact is not pleaded for the city and state claims under the simple rules courts have articulated for nonresidents, focusing on the location of the employment at issue. *See Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 290–91 (2010) (the impact requirement protects nonresidents who "work in" New York City or State, a straightforward requirement that is "relatively simple for courts to apply and litigants to follow [and] leads to predictable results"); *Syed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452–53 (2024) (in failure-to-hire cases, nonresidents denied a New York based job can satisfy the impact requirement). Flores cannot escape the dispositive fact that he did not seek a New York-based position with the Texans.

While the Response points to allegations adding up to the conclusion that the NFL is based in New York (Resp. 32–33), they are irrelevant under *Hoffman* and *Syed* where Flores is not alleged to have felt any impact of alleged retaliation in New York. Likewise, arguments that clubs play games in New York—which the Texans have done once in ten years (Mot. 8)—and that Flores sued in New York ignore that the rule aims to avoid "inconsistent and arbitrary results" from

expanding protections to "nonresidents who have, at most, tangential contacts" with New York. *Hoffman*, 15 N.Y.3d at 291.[7]

## CONCLUSION

The Houston Texans respectfully request that the claims against the Texans be dismissed with prejudice or, in the alternative, severed and transferred to the Southern District of Texas.

Dated: August 19, 2026

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

*/s/ Jean C. Frizzell*
Jean C. Frizzell (admitted *pro hac vice*)
Elizabeth J. Wilkerson
Laura C. Murray (admitted *pro hac vice*)
1100 Louisiana, Suite 3500
Houston, Texas 77002
Telephone: (713) 485-7200
Facsimile: (713) 485-7250
jfrizzell@reynoldsfrizzell.com
ewilkerson@reynoldsfrizzell.com
lmurray@reynoldsfrizzell.com

*Attorneys for Defendant Houston NFL Holdings, L.P. d/b/a Houston Texans*

## CERTIFICATE OF COMPLIANCE

As required by Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York, I certify that this document contains 3493 words, excluding the parts of the document that are exempted by Rule 7.1(c).

*/s/ Elizabeth J. Wilkerson*
Elizabeth J. Wilkerson

[7] Even to the extent that Flores has pleaded adequate New York impact, he has not pleaded disparate treatment or disparate impact under the City and State laws for the reasons stated in Sections II and III.