UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE NATIONAL FOOTBALL LEAGUE, et al.,

Defendants.

CIVIL ACTION NO.: 22 Civ. 871 (VEC) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court are several discovery disputes discussed during prior discovery conferences and in a series of letters from the parties. (Dkt. Nos. 336; 344; 347–51; see Dkt. Nos. 330; 342). Following another conference with the parties on August 21, 2026 (the "Aug. 21 Conference") (Dkt. No. 330), the Court explains below its rulings on the parties' disputes.

## II. BACKGROUND

We presume familiarity with the factual and procedural background of this action. See Flores v. N.Y. Football Giants, Inc., 150 F.4th 172 (2d Cir. 2025) ("Flores III"), affirming, 658 F. Supp. 3d 198 (S.D.N.Y. 2023) ("Flores I") and 2023 WL 4744191 (S.D.N.Y. July 25, 2023) ("Flores II"); see also Flores v. Nat'l Football League, No. 22 Civ. 871 (VEC), 2026 WL 2044126 (S.D.N.Y. July 15, 2026) ("Flores V"); Flores v. Nat'l Football League, No. 22 Civ. 871 (VEC), 2026 WL 407884 (S.D.N.Y. Feb. 13, 2026) ("Flores IV"). We set forth only the background necessary to analyze the parties' discovery disputes.

Following remand after Flores III, Plaintiffs asked the Honorable Valerie E. Caproni to reconsider aspects of Flores I that were adverse to them (and not before the Second Circuit in

Flores III). (Dkt. No. 153). On February 13, 2026, Judge Caproni granted Plaintiffs' motion, denied Defendants' motion to compel arbitration (Dkt. No. 47), and required all of Plaintiffs' claims to proceed before her. See Flores IV, 2026 WL 407884, at *1.

On March 30, 2026, Plaintiffs filed a Second Amended Complaint (Dkt. No. 236 (the "SAC")), which Defendants then moved to dismiss. (Dkt. Nos. 256–65 (the "SAC MTDs")). While the SAC MTDs were pending, Judge Caproni adopted the parties' agreed deadline of September 15, 2026 for substantial completion of document production. (Dkt. No. 267).

Pursuant to an agreed schedule that Judge Caproni adopted (Dkt. No. 273), on May 20, 2026, Plaintiffs filed a Third Amended Complaint seeking both monetary damages and injunctive relief. (Dkt. No. 274 (the "TAC")).[1] In the TAC, Plaintiffs for the first time asserted the Arbitration Retaliation Claim, alleging that the NFL retaliated against them by denying them a fair process and delaying an arbitration proceeding that the Dolphins had filed asserting claims for the return of hundreds of thousands of dollars of compensation Mr. Flores earned while serving as the Dolphins' head coach. (See Dkt. No. 274 ¶¶ 236, 299, 301–09, 454, 476, 481). Plaintiffs also seek

[1] The TAC asserts the following claims as to all Defendants: (1) disparate treatment discrimination under 42 U.S.C. § 1981 ("Section 1981") (Dkt. No. 274 ¶¶ 421–25), New York State Human Rights Law, N.Y. Exec. L. §§ 290 et seq. ("NYSHRL") (id. ¶¶ 426–30), the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL") (id. ¶¶ 435–39), the New Jersey Law Against Discrimination ("NJLAD") (id. ¶¶ 444–47) (together, the "Disparate Treatment Claims"); (2) disparate impact discrimination under the NYSHRL (id. ¶¶ 431–34), the NYCHRL (id. ¶¶ 440–43), the NJLAD (id. ¶¶ 448–51) (together, the "Disparate Impact Claims"). Mr. Flores asserts the following individual claims: (1) against the Texans and the Dolphins, retaliation under Section 1981 (id. ¶¶ 452–56); (2) against the Dolphins, retaliation under the Florida Private Whistleblower Statute (id. ¶¶ 457–60); and against the Dolphins, breach of contract (id. ¶¶ 461–64) (together, "Mr. Flores' Individual Claims"). Mr. Flores and the Proposed Class assert the following additional claims against the NFL, Giants, Texans, and Dolphins: (1) disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (id. ¶¶ 465–70); (2) disparate impact discrimination under Title VII (id. ¶¶ 471–74); and (3) retaliation under Title VII (id. ¶¶ 475–79) (together, the "Title VII Claims"). Finally, against the NFL only, Plaintiffs assert a claim of post-filing retaliation under Title VII, Section 1981, the NYSHRL, and NYCHRL (id. ¶¶ 480–83) (the "Arbitration Retaliation Claim").

certification of the following proposed class: "[a]ll Black Head Coach, Offensive and Defensive Coordinators and Quarterbacks Coaches, as well as General Managers, and Black candidates for those positions during the applicable statute of limitations period[.]" (Dkt. No. 274 ¶ 388 (the "Proposed Class")).

On June 5, 2026, Defendants moved to dismiss the TAC. (Dkt. Nos. 281–90 (the "TAC MTDs")). A month later, the parties filed letters raising numerous discovery disputes as to which they sought court intervention. (Dkt. Nos. 294–95; 298). Judge Caproni ordered the parties to participate in two at least four-hour, in-person meet-and-confer sessions, and, if any disputes remained, to file a joint letter describing the remaining open discovery issues. (Dkt. No. 299).

Separately, the Tennessee Titans, Arizona Cardinals, and Miami Dolphins asked Judge Caproni to reconsider her decision in Flores IV (Dkt. Nos. 187; 194; 196), and on July 15, 2026, Judge Caproni issued the decision in Flores V, which denied those motions and ordered that all claims against those three teams "and related claims against the NFL – must now proceed in court." Flores V, 2026 WL 2044126, at *1. In Flores V, Judge Caproni noted that Mr. Flores' claims against the Giants, Broncos, and Texans, and his related claims against the NFL, were in discovery and the subject of the TAC MTDs, and indicated her objective "for the remaining claims to proceed quickly to discovery (and to briefing a motion to dismiss if appropriate) so that the entire case can operate on a single consolidated schedule." Id. at *3 n.5. The Cardinals, Dolphins, and Titans appealed Judge Caproni's decisions in Flores IV and Flores V, and Judge Caproni continued the stay of proceedings as to them and Plaintiffs' related claims against the NFL pending appeal. (Dkt. Nos. 311; 322; 325–26). See Flores V, 2026 WL 2044126, at *3.

The same day Judge Caproni issued Flores V, the parties filed a thirteen-page joint status letter reporting the results of their meet-and-confer sessions and listing their unresolved discovery disputes. (Dkt. No. 303 (the "July 15 Letter")). Judge Caproni then referred the action to the undersigned for general pretrial supervision, including the disputes in the July 15 Letter. (Dkt. No. 304).

On August 4, 2026, the Court held an in-person discovery conference, which involved an extensive discussion of the disputes Plaintiffs raised in the July 15 Letter concerning their requests to Defendants. (Dkt. Nos. 306; 337; minute entry dated Aug. 4, 2026 (the "Aug. 4 Conference")). Following the Aug. 4 Conference, the Court set a schedule for the parties to file letters concerning certain aspects of Plaintiffs' requests to Defendants and scheduled two further conferences. (Dkt. No. 330 (the "Aug. 4 Order"), as amended Dkt. No. 332). On August 11, 2026, Plaintiffs filed a letter elaborating on the bases for certain of their requests to Defendants (Dkt. No. 336), and on August 18, 2026, Defendants each filed letters in response. (Dkt. Nos. 347–50).

On August 14, 2026, the Court held a telephonic discovery conference, this time focused largely on Defendants' requests to Plaintiffs, disputes as to many of which the Court made rulings. (Dkt. Nos. 330 at 3; 337 at 92, 95–96; 356 at 4–47 (the "Aug. 14 Conference")). Following the Aug. 14 Conference, the Court set a schedule for the parties to file letters concerning the remaining open issues with respect to Defendants' requests to Mr. Flores, to be discussed at the next conference. (Dkt. No. 342 (the "Aug. 14 Order")). On August 17, 2026, Defendants filed a joint letter elaborating on the bases of certain of their requests to Mr. Flores (Dkt. No. 344), and on August 19, 2026, Plaintiffs filed their letter in response. (Dkt. No. 351).

On August 21, 2026, the Court held another telephonic discovery conference with the parties to discuss the issues raised in the parties' letters, which we describe in more detail below. (Dkt. Nos. 330; 362).

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." Doe v. Sarah Lawrence Coll., No. 19 Civ. 10028 (PMH) (JCM), 2021 WL 197132, at *3 (S.D.N.Y. Jan. 20, 2021).[2]

In deciding whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Doe, 2021 WL 197132, at *2. "[T]he court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . .; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

Of course, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "A district court has broad discretion to determine the scope of discovery." Roman Cath. Diocese of Rockville Ctr., N. Y. v. Arrowood Indem. Co., No. 20 Civ. 11011 (JLR), 2022 WL 17593312, at *4 (S.D.N.Y. Dec. 13, 2022) (citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

In a putative class action, "to obtain pre-certification discovery concerning class issues, the plaintiff must show that such discovery would be relevant to [his] future motion for class certification." Dupres v. Houslanger & Associates, PLLC, No. 19 Civ. 6691 (RPK) (SJB), 2021 WL 2373737, at *2 (E.D.N.Y. Jun. 9, 2021). "Any class discovery must also be proportional to the need of the case and bear some relationship to the claims of the named Plaintiff[s]." Dupres, 2021 WL 2373737, at *2. Class discovery may overlap with merits discovery because "[a] key question in class certification may be the similarity or dissimilarity between the claims of the representative parties and those of the class members — an inquiry that may require discovery on the merits and development of basic issues." Bodner v. Paribas, 202 F.R.D. 370, 373 (E.D.N.Y Dec. 21, 2000). Information that "bears directly on Defendants' conduct across the proposed class, and thus, the presence of common issues of fact, whether the named Plaintiffs' claims are typical of the class, and whether they can adequately represent the class's interests" is discoverable. Flores v. Stanford, No. 18 Civ. 2468 (VB) (JCM), 2021 WL 4441614, at *7 (S.D.N.Y. Sept. 28, 2021).

In the context of a putative class action involving employment discrimination claims, "courts typically apply more 'liberal discovery rules'" and provide plaintiffs "'broad access to employers' records in an effort to document their claims.'" Chen-Oster v. Goldman, Sachs & Co.,

293 F.R.D. 557, 562 (S.D.N.Y. 2013) (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989)). "'As Title VII cases are particularly hard to prove in the absence of a proverbial smoking gun, such as a discriminatory comment made by a hiring official, discovery in these cases is necessarily broad.'" Chen-Oster, 293 F.R.D. at 562 (quoting Mitchell v. Nat'l R.R. Pass. Corp., 208 F.R.D. 455, 459 (D.D.C. 2002)). "Broader discovery is warranted when a plaintiff's claims are premised on a pattern or practice of discrimination at the organization-wide level, as opposed to specific allegations of discrimination made against an individual supervisor." Id. And in a pattern-and-practice discrimination case, such as this one (see, e.g., Dkt. No. 274 ¶¶ 143, 180, 273, 391–92, 400, 402, 409, 412–13, 419, 467), "[p]laintiffs are generally permitted to discover and introduce anecdotal evidence in order to supplement statistical evidence[.]" Chen-Oster, 293 F.R.D. at 565. That "anecdotal evidence is relevant at both the class certification and merits stages." Id.; see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 358 (2011) (differentiating what is and is not sufficient anecdotal evidence to support an "inference that all the individual, discretionary personnel decisions are discriminatory"); see also Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388 (2008) (holding that "whether evidence of discrimination by other supervisors is relevant in an individual [discrimination] case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case"); Nat'l R.R. Pass. Corp. v. Morgan, 536 U.S. 101, 113 (2002) (explaining that Title VII does not "bar an employee from using the prior [discriminatory] acts as background evidence in support of a timely claim").

**B. Application**

**1. Plaintiffs' Requests to the NFL**

**a. Plaintiffs' requests**

Plaintiffs seek documents and information from the NFL concerning the following: (i) complaints of race discrimination by employees other than coaches on NFL club teams (Requests for Production ("RFP") 27, 47, 62, 164–67, 169 (the "Non-Coach Discrimination Complaints")); (ii) complaints of race discrimination within the NFL generally, and including specifically, events involving Colin Kaepernick and Jon Gruden (RFPs 28–29, 34–48, 173 (the "NFL-Wide Discrimination Complaints")); and (iii) the Arbitration Retaliation Claim (RFPs 38–43 (the "Arbitration Discovery"). (See Dkt. Nos. 303 at 1–3; 330 ¶ 2; 336 at 1–3; 348 at 1–2).

As to categories (i) and (ii), Plaintiffs seek evidence of complaints about systemic racism within the NFL's offices, within the Teams, and among non-head coach NFL employees on the Teams. (Dkt. No. 336 at 1–2). Specifically, Plaintiffs seek discovery from the NFL about employees' complaints about institutional or structural racism anywhere in the NFL, complaints that Commissioner Roger Goodell ("Mr. Goodell") or his direct reports engaged in race discrimination, complaints from any employees of the Teams about race discrimination, and retaliation or collusion by Mr. Goodell or someone acting at his direction in response to any race discrimination complaints lodged by any Team employee. (Dkt. Nos. 303 at 1–2 (RFPs 27, 164-67); 362 at 6-12). Plaintiffs contend that they require discovery concerning the Non-Coach Discrimination Complaints to satisfy their burden at the class certification stage to show a combination of "'a common mode of exercising discretion'" and "'specific accounts of racial discrimination from particular individuals'" under Wal-Mart, 564 U.S. at 356, 358. (Dkt. No. 336

at 1). Plaintiffs also contend that the Non-Coach Discrimination Complaints and the NFL-Wide Discrimination Complaints will provide them with evidence of Defendants' discriminatory intent, patterns of discrimination, and deliberate failure to remediate race discrimination complaints. (Dkt. No. 336 at 1–2; see Dkt. No. 303 at 1–2). Finally, Plaintiffs contend that information about League-Wide Discrimination Complaints, including the Kaepernick and Gruden incidents (see Dkt. No. 274 ¶¶ 65–93), will show Defendants' common mode of exercising their discretion under Wal-Mart, pattern of retaliation against people who complained about race discrimination, and how the Teams' owners handled complaints about race discrimination. (Dkt. No. 362 at 20-21, 24; see Dkt. No. 303 at 2–3).

As to category (iii), the Arbitration Discovery, Plaintiffs seek documents and information to support the Arbitration Retaliation Claims. (See Dkt. No. 274 ¶¶ 236, 299, 301–09, 454, 476, 481). Plaintiffs oppose the NFL's request to stay this discovery, pointing to Judge Caproni's instruction in Flores V that "the entire case [] operate on a single consolidated schedule." 2026 WL 2044126, at *3 n.5. Plaintiffs invoke the Second Circuit's statement in Flores III that arbitration under the NFL Constitution "is unworthy even of the name of arbitration and thus falls outside of the FAA's [Federal Arbitration Act] protection" to support their view that the NFL's arguments in support of dismissal of the Arbitration Retaliation Claims will fail. 150 F.4th at 183. (Dkt. No. 336 at 3).

**b. NFL's responses**

The NFL has agreed to produce documents "related to allegations of race discrimination by any head coach or head coach candidate[,]" but is unwilling to produce documents related to allegations of race discrimination either within the NFL head office or concerning any Team

employee, including any documents related to the Kaepernick and Gruden incidents. (Dkt. No. 348 at 1). The NFL argues that discovery into other claims of discrimination should be "'limited to [Plaintiffs'] employment department or unit[,]'" (id. (quoting Chen-Oster, 293 F.R.D. at 567), because "'[e]vidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that plaintiffs had suffered discrimination.'" (Id. (quoting Cronas v. Willis Grp. Holdings Ltd., No 06 Civ. 15295 (GEL), 2008 WL 4548861, at *2 (S.D.N.Y. Oct. 8, 2008)). The NFL argues that "there is no allegation that any [NFL] employee supervised any head coach or otherwise was a decisionmaker in any challenged employment decision," so "alleged discrimination within the [NFL head office] would not be probative of any supposed discrimination by [Team] owners and executives in the hiring of head coaches." (Id.)

As to the Teams' non-head coach employees, the NFL argues that they are not "similarly situated" to head coaches and "are not proper subjects of discovery." (Id. at 2). In addition, head coaches hire assistant coaches, who were therefore "subject to 'significantly different' management and supervision than head coaches." Id. (quoting Chen-Oster, 293 F.R.D. at 567–68; see Dkt. No. 362 at 14). The NFL also disputes that the Non-Coach Discrimination Complaints and the NFL-Wide Discrimination Complaints have any relevance to Plaintiffs' single/joint employer theories, which turn on whether the NFL has "control over 'employment matters related to the person claiming discrimination.'" (Id. (quoting Hill v. Major League Soccer, No. 23 Civ. 2911 (JGK), 2024 WL 3361216, at *4 (S.D.N.Y. July 10, 2024)). In short, the NFL contends that "[d]iscovery into positions other than head coach therefore has no relevance." (Id.)

As to the Arbitration Discovery, the NFL contends that Plaintiffs improperly added the Arbitration Retaliation Claim in the TAC, and that the NFL has made "a strong motion to dismiss" that warrants a stay. (Dkt. No. 348 at 2 (citing Cota v. Art Brand Studios LLC, No. 21 Civ. 1519 (LJL), 2022 WL 767110, at *1 (S.D.N.Y. Mar. 14, 2022) (granting stay of discovery pending motion to dismiss)).

c. **Rulings**

i. **Non-Coach Discrimination Complaints and NFL-Wide Discrimination Complaints**

Both Plaintiffs and the NFL rely on Chen-Oster to support their respective positions as to the scope of discovery (Dkt. Nos. 336 at 1–2; 348 at 1–2), so it is worth discussing what discovery Judge Francis did and did not allow in that decision.

In Chen-Oster, the plaintiffs alleged on behalf of a putative class of "female financial-services employees who are at the Associate, Vice President, and Managing Director corporate level" in four revenue-generating divisions that Goldman Sachs "engaged in a pattern of gender discrimination[.]" 293 F.R.D. at 560. The plaintiffs sought to compel Goldman Sachs to produce, as is relevant here, (i) all complaints by putative class members during the discovery period relating to compensation, promotion, or performance evaluations as well as (ii) "internal complaints made by female employes who are not in the putative class." Id. at 560–61. As to category (i), Judge Francis found the plaintiffs' request overly broad and unduly burdensome but did require Goldman Sachs to produce "any internal complaints regarding compensation, promotion, or performance review where a female employee who is a member of the putative

class drew a comparison between herself or another putative class member and one or more of her male colleagues." Id. at 564.

As to category (ii), Judge Francis recognized the cases limiting discovery of other complaints to those in the plaintiff's employment department or unit where the plaintiff did "not allege a company-wide pattern or practice of discrimination, or where the allegations focus on a particular employment action in which decision-making was limited to that plaintiff's employment unit." Id. at 567 (collecting cases). In contrast, Judge Francis recognized the decisions allowing broader discovery of other complaints where there was "evidence that there were hiring or firing practices and procedures applicable to all employing units" or if "the requested information is particularly cogent to the matter or if the plaintiff can show a more particularized need for, and the likely relevance of, broader information." Id. Ultimately, Judge Francis found that "the likelihood that discovery of complaints by employees in the non-revenue divisions will be overly burdensome outweighs the scant possibility of uncovering admissible evidence[]" and limited discovery to complaints in the four revenue-generating divisions because the plaintiffs did not demonstrate "that [complaints in the non-revenue divisions were] relevant to their allegations of a pattern or practice of discrimination allegedly impacting women in the revenue-generating divisions." Id. In particular, Judge Francis noted, "the compensation and evaluation models in the other divisions [were] significantly different from those in the revenue-generating divisions in which the plaintiffs worked." Id. at 567–68. Pursuant to the same rationale, Judge Francis required Goldman Sachs to disclose "complaints made by women within these [revenue-generating] divisions who were not members of the putative class" but who "worked closely with putative class members" and "may be able to provide anecdotes and

information regarding their interactions with common managers, experiences utilizing the same internal complaint process, or the general culture of these divisions." Id. at 568. In sum, Judge Francis confined discovery about other gender discrimination complaints to the four revenue-generating divisions that employed the plaintiffs. Id. at 567–68.

As the discussion of Judge Francis' ruling shows, Chen-Oster supports neither the breadth of Plaintiffs' requests nor the narrow scope of what the NFL suggests. (See Dkt. Nos. 336 at 1–2; 348 at 1–2). Requiring the NFL to disclose — which it has agreed to do (Dkt. No. 348 at 1) — complaints by any head coach or head coach candidate alleging race discrimination is on par with the first category of complaints Judge Francis required Goldman Sachs to disclose in Chen-Oster — gender discrimination complaints by members of the putative class in the four revenue-generating divisions. 293 F.R.D. at 564.

Contrary to Plaintiffs' assertion (Dkt. No. 336 at 2), however, Judge Francis' requirement that Goldman Sachs produce gender discrimination complaints from non-putative class members who also worked in the revenue generating divisions does not require the NFL to produce either the Non-Coach Discrimination Complaints or the NFL-Wide Discrimination Complaints. See Chen-Oster, 293 F.R.D. at 567–68. First, the NFL contends, and Plaintiffs do not dispute, that NFL head office employees and non-coach Team employees are not subject to the same hiring decision-making process as head coaches (Dkt. Nos. 348 at 2; 362 at 14), i.e., they are not subject to the "common mode of exercising discretion" that Plaintiffs are seeking under Wal-Mart, 564 U.S. at 356. Second, the cases on which Plaintiffs rely to support their request for Non-Coach Discrimination Complaints largely pre-date the current version of Rule 26(b)(2), which requires

the Court to consider the proportionality of their requests to the NFL.[3] (See Dkt. No. 336 at 2–3 (citing Brown v. Daikin Am. Inc., 756 F.3d 219, 227 (2d Cir. 2014), Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 144 (2d Cir. 2008), and Laurin v. Pokoik, No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004)). Plaintiffs do cite Felder v. U.S. Tennis Ass'n, 27 F.4th 834 (2d Cir. 2022), which is post-Rule 26(b)(2), but Plaintiffs cite only the Second Circuit's general statement about when the joint employer doctrine applies under Title VII (Dkt. No. 336 at 2), and in any event, the court ultimately concluded that the plaintiff failed to demonstrate that the defendant was his constructive employer under that doctrine, so Felder also does not support Plaintiffs' proposed scope of discovery. See 27 F.4th at 838–39.

Third, to address Plaintiffs' demands for discovery regarding their contention that the NFL and the Teams are a single or joint employer (see Dkt. No. 337 at 13–17), we find that the NFL's policies and procedures regarding how it receives, records, organizes, maintains, or investigates complaints of race discrimination (the "Race Discrimination Complaint Procedures") are relevant and proportional to the claims and defenses in this action. See Bosse v. Dep't of Econ. & Cmty. Dev., No. 20 Civ. 760 (JCH), 2021 WL 6337745, at *4 (D. Conn. May 12, 2021) (permitting discovery into defendant's policies and practices regarding investigation of discrimination complaints like plaintiff's); Osucha v. Alden St. Bank, No. 17 Civ. 1026 (LJV), 2020 WL 3055790, at *4 (W.D.N.Y. June 9, 2020) (requiring defendant to produce policies and procedures regarding receipt of discrimination complaints in effect during period of plaintiff's employment); Rahman

[3] "On December 1, 2015. . . Rule 26(b) was amended to, inter alia, incorporate the proportionality factors which previously appeared in [Federal Rule of Civil Procedure] 26(b)(2)(C)(iii) into the Rule 26(b)(1) definition of the scope of discovery." Johnson v. Riverhead Cent. Sch. Dist., No. 14 Civ. 7130 (DRH) (AKT), 2016 WL 4507002, at *11 n.6 (E.D.N.Y. Aug. 26, 2016).

v. Smith & Wollensky Rest. Grp., Inc., No. 06 Civ. 6198 (LAK) (JCF), 2008 WL 3823958, at *2, *4 (S.D.N.Y. Aug. 14, 2008) (in putative employment discrimination class action, discussing defendant's production of policies and procedures for handling discrimination complaints); cf. Bellinger v. Astrue, No. 06 Civ. 321 (CBA), 2011 WL 4529602, at *3 (E.D.N.Y. Sept. 28, 2011) (denying discovery into defendant's "standard procedures for filing, investigating and resolving discrimination complaints" in non-class action where plaintiff "has not asserted any claims directed to defendant's general practices"). These Race Discrimination Complaint Procedures are relevant to Plaintiffs burden, in establishing their Disparate Impact Claims (see n.1, supra), to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 151 (2d Cir. 2012). Requiring the NFL to produce the Race Discrimination Complaint Procedures — a search to which the NFL did not object during the Aug. 21 Hearing (Dkt. No. 362 at 19) — we conclude is a reasonable compromise that will accommodate Plaintiffs' professed need for evidence of NFL-wide "patterns of discrimination" (Dkt. No. 336 at 1 (quoting Hollander v. Am. Cyanamid Co., 895 F.2d 80, 84 (2d Cir. 1990)), while mitigating the NFL's concerns about scope and burden. (See Dkt. No. 348 at 1–2).

Fourth and finally, the NFL is not required to perform searches specific to the Colin Kaepernick and Jon Gruden incidents (see Dkt. No. 336-2 at 4). We conclude that these incidents, although Plaintiffs describe them in the TAC (see Dkt. No. 274 ¶¶ 65–93), are more akin to the discrimination complaints in the non-revenue generating divisions that Judge Francis held were not relevant in Chen-Oster, and therefore, similarly, are not sufficiently related to alleged racial discrimination in the head coach hiring process to require targeted discovery from the NFL. See

Chen-Oster, 293 F.R.D. at 567. As Plaintiffs recognize, Colin Kaepernick was a player during the 2016–2017 season, not a head coach or head coach candidate, and the hiring cycles relevant to Plaintiffs' claims were in 2019 and after. (Id. ¶¶ 66, 160–91, 206–15). In addition, Jon Gruden's offensive statements occurred when he was not an NFL coach, and while they apparently came to light when he was a head coach of the Raiders in 2021, he resigned and there are no allegations that the Raiders' head-coach hiring process involved racial discrimination. (Dkt. No. 274 ¶¶ 77–92). Furthermore, the media attention on both incidents indicates that there is likely to be a potentially large volume of hits from the ESI search terms specific to Mr. Kaepernick and Mr. Gruden, so the burden on the NFL of reviewing search results and producing ESI relating to these search terms outweighs any potential minimal relevance Plaintiffs' claims. See Hink v. Duffy, No. 24 Civ. 279 (BKS) (PJE), 2026 WL 2110784, at *4 (N.D.N.Y. July 22, 2026) (denying plaintiff's requested discovery from defendant, where, despite "some minimal relevance," search would have imposed burden on defendant that was "not proportional to the needs of the case"); Edmar Fin'l Co., LLC v. Currenex, Inc., 347 F.R.D. 641, 650 (S.D.N.Y. 2024) (finding that defendant's request for discovery from plaintiff, even if relevant, was "not proportional to the needs of the case"). As the NFL agreed during the Aug. 21 Conference, however, in the course of reviewing the results of the NFL ESI search terms, the NFL shall not exclude from production any otherwise responsive documents that happen to mention either incident. (Dkt. No. 362 at 30).

Accordingly, the NFL is not required to (i) produce the Non-Coach Discrimination Complaints or the NFL-Wide Discrimination Complaints, or (ii) run Plaintiffs' ESI search terms

specific to the Kaepernick and Gruden incidents, but the NFL shall conduct a reasonable search for and produce the Race Discrimination Complaint Procedures.

**ii. Arbitration Discovery**

To grant the NFL's request to stay the Arbitration Discovery, the Court must find that there is "good cause" under Federal Rule of Civil Procedure 16(b)(4), considering "(1) the breadth of discovery sought, (2) and prejudice that would result, and (3) the strength of the motion." Cota, 2022 WL 767110, at *1. The parties focus their arguments on the third factor. (Dkt. Nos. 336 at 3; 348 at 2).

Taking the three factors in order, first, the Arbitration Discovery that Plaintiffs seek is quite broad — encompassing "NFL documents and communications relating to [Mr. Flores'] claim that the NFL retaliated against him through fraudulent and retaliatory actions in a sham arbitration" — and potentially implicates documents that will require a privilege review. (Dkt. No. 303 at 2). As to the second factor, although Plaintiffs do not detail a specific prejudice, they correctly point out that Judge Caproni has made it abundantly clear that all discovery regarding the claims against the Broncos, Texans, and Giants (and related claims against the NFL) "are to proceed quickly to discovery[,]" so staying any discovery would contravene that directive. Flores V, 2026 WL 2044126, at *3 n.5. As to the third factor, having reviewed the NFL's TAC MTD (Dkt. Nos. 284–85; 353), we are "unable to conclude that the [NFL] has made a strong showing, at this time, that the [Arbitration Retaliation Claim] is not meritorious." Mirra v. Jordan, No. 15 Civ. 4100 (AT) (KNF), 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016) (declining to stay discovery); Brooks v. Macy's, Inc., No. 10 Civ. 5304 (BSJ) (HBP), 2010 WL 5297756, at *2

(S.D.N.Y. Dec. 21, 2010) (declining to stay discovery where "defendant's motion for remand and dismissal seem[ed] convincing, [but] plaintiff's arguments in opposition also seem substantial").

In short, we conclude that the NFL has not met its burden of showing good cause to stay the Arbitration Discovery altogether pending the TAC MTDs. (Dkt. No. 348; see Dkt. Nos. 284 285; 353). Given that the Arbitration Discovery will implicate potential privilege issues, which will require the NFL to conduct a privilege review and prepare a privilege log, the Court will, however, impose two requirements to limit the burden on the NFL while their TAC MTD is pending. (See Dkt. Nos. 284–85; 353). First, Plaintiffs and the NFL shall meet and confer to narrow Plaintiffs' search terms as to the Arbitration Discovery to minimize the number of potentially privileged documents the NFL will have to review. Second, the Court will hold in abeyance pending the resolution of the NFL's TAC MTD (id.), the NFL's obligation to conduct a privilege review and provide Plaintiffs with a privilege log as to the Arbitration Discovery. Cf. In re Platinum & Palladium Comm. Litig., No. 10 Civ. 3617 (WHP), 2010 WL 11578945, at *1 (S.D.N.Y. Nov. 30, 2010) (granting only partial stay of some discovery pending motion to dismiss and requiring production of documents that would impose minimal burden).

**iii. Custodians**

The NFL has agreed to search the ESI of four custodians: (i) Dasha Smith, EVP and Chief Administrative Officer who is responsible for the NFL's "inclusion function;" (ii) Troy Vincent, EVP of Football Operations who is responsible for the NFL's "inclusion initiatives relat[ing] to the head coach candidate pool;" (iii) Jonathan Beane, SVP for the NFL's Leadership and Inclusion who is "responsible for inclusion policies applicable to head coach hiring;" and (iv) Ken Fiore, VP for Player Personnel who oversees the Teams' "reporting of interview and hiring information"

(together, the "Agreed NFL Custodians"). (Dkt. No. 348 at 2–3). Plaintiffs seek three additional NFL ESI custodians, each of whom we analyze below. (Dkt. No. 336 at 3–4).

**a) Roger Goodell**

Plaintiffs seek to include Commissioner Roger Goodell on the ground that he "controls the policies at issue, repeatedly personally commented on the case, continues to comment on race discrimination issues at issue in this case, and personally contacted [Mr.] Flores and the Texans in the days after its [sic] filing[.]" (Dkt. No. 336 at 3). The NFL responds that "simply being the chief executive with ultimate responsibility is insufficient to render" Mr. Goodell a custodian, and, in any event, argues that Plaintiffs have not shown that he possesses any unique ESI and that the Court should stay the Arbitration Discovery. (Dkt. No. 348 at 3).

Here, Plaintiffs seek to include Mr. Goodell not based on his status as the NFL's Commissioner but rather based, at least in part, on his communications about this action and with Mr. Flores and the Texans. (Dkt. No. 336 at 3). Accordingly, this is not a situation where Plaintiffs are seeking a custodian "based on seniority alone," but instead are seeking to include him because he was directly involved in communications with parties in this action and about this action. Sanders v. SUNY Downstate Med. Ctr., No. 22 Civ. 4139 (KAM) (CP), 2024 WL 4198355, at *4 (E.D.N.Y. Sept. 16, 2024) (requiring CEO's inclusion as custodian where he corresponded and met with plaintiff about her discrimination complaints). Accordingly, Mr. Goodell shall be included as a custodian.

The scope of search terms as to Mr. Goodell, however, will be narrower than what Plaintiffs appear to otherwise seek. (Dkt. No. 336-2). The NFL's search of Mr. Goodell's ESI shall be limited to communications: (i) with Mr. Flores, the Texans, or about this action; (ii) about the

head coach hiring cycles in which Mr. Flores was a candidate; and (iii) the Dolphins' Arbitration, subject to the limitations and timing of the privilege review set forth in § III.B.1.c.ii, supra.

**b) Jeff Pash**

Plaintiffs seek to include as an NFL custodian Jeff Pash, former General Counsel of the NFL. (Dkt. No. 336 at 4). Although in their pre-Aug. 21 Conference letter Plaintiffs appeared to be seeking Mr. Pash's ESI as part of the Arbitration Discovery, during the Conference, Plaintiffs focused their request on Mr. Pash's ESI relating to his communications with the Texans after Mr. Flores filed this action in 2022. (Compare Dkt. No. 336 at 4 with Dkt. No. 362 at 39–41). The NFL responds that Mr. Pash's communication with the Texans was only oral and therefore Plaintiffs have not shown that he is likely to have any non-privileged responsive ESI. (Dkt. Nos. 348 at 3; 362 at 47).

As discussed during the Aug. 21 Conference, the NFL shall include Mr. Pash as a custodian, but the search of his ESI shall be limited to non-privileged communications with the Texans concerning this action after Mr. Flores filed it in 2022 or concerning the 2022 head coach hiring process. (Dkt. No. 362 at 49–50).

**c) Katie Hill & Brian McCarthy**

Third, Plaintiffs seek to include as NFL custodians Katie Hill and Brian McCarthy, public relations executives whom Plaintiffs believe were "likely involved in" the NFL's statements about this action. (Dkt. No. 336 at 4). The NFL responds that Plaintiffs offer only speculation about the involvement of Ms. Hill and Mr. McCarthy and have not shown that they are likely to have any unique ESI not captured by the other custodians. (Dkt. No. 348 at 3).

As discussed during the Aug. 21 Conference, the NFL shall apply the agreed search terms to the ESI of Ms. Hill and Mr. McCarthy and provide Plaintiffs with a hit report reflecting the number of potentially responsive documents unique to each of them, i.e., hits not captured in the ESI of the Agreed NFL Custodians. (Dkt. No. 362 at 50). The parties shall meet and confer to try to reach agreement as to any review and production of ESI from Ms. Hill or Mr. McCarthy.

**iv. Personal Devices**

Plaintiffs continue to seek text messages from the NFL Agreed Custodians' personal devices. (Dkt. No. 336 at 5). The NFL confirmed, based on its counsel's custodian interviews, that their custodians "each have work-issued devices and have confirmed that they do not use personal devices for substantive work purposes." (Dkt. No. 348 at 3; see 362 at 55).

As the Court explained during the Aug. 4 Conference, the "default rule" for personal devices would be that the parties would need to show "some evidence that the person used their personal phone for communications related to this case or related to their job[,]" and would take up any disputes on a case-by-case basis if the parties were unable to resolve them. (Dkt. No. 337 at 69). See Muslims on Long Is., Inc. v. Town of Oyster Bay, No. 25 Civ. 428 (SJB) (JMW), 2025 WL 1582250, at *4 (E.D.N.Y. June 4, 2025) (explaining that "where courts have directed the production of ESI from personal devices, the parties in those cases have set forth specific, prior incidents or examples where the employee's personal accounts or mobile devices were used for work purposes, thus revealing a valid justification for their suspicion" and denying request for search of personal devices where "[n]o such circumstances have been proffered"); LaBelle v. Barclays Capital, Inc., 340 F.R.D. 74, 84 (S.D.N.Y. Jan. 13, 2022) (explaining that party's duty to search its custodians' personal devices "did not arise until there was some indication that

evidence relevant to [the action] was contained on the personal devices"). The Court reiterated this approach during the Aug. 21 Conference. (Dkt. No. 362 at 56–57).

At this time, Plaintiffs have not shown specific instances or examples where any NFL custodian — whether an Agreed NFL Custodian or one discussed in this Opinion and Order — used a personal device for work purposes or to communicate about this case. Accordingly, the NFL is not required to search any of its custodians' personal devices at present.

As the Court also explained during the Aug. 21 Conference, however, the NFL is on notice, as of August 21, 2026, to inform all of its custodians — including Agreed NFL Custodians as well as Mr. Goodell, Mr. Pash, Ms. Hill, and Mr. McCarthy — that they have a continuing obligation to preserve all potentially responsive ESI on their personal devices. (Dkt. No. 362 at 58). See In re OpenAI, Inc. Copyright Infring. Litig., No. 25 MD 3143 (SHS) (OTW), 2025 WL 3471561, at *4 (S.D.N.Y. Dec. 3, 2025) (noting that Federal Rule of Civil Procedure 26 "imposes a duty on counsel of record to monitor compliance so that all sources of discoverable information are identified and searched").

**2. Plaintiffs' Requests to the Texans**

**a. Plaintiffs' requests**

Plaintiffs seek from the Texans documents concerning the head coach hiring process and decisions, consideration and application of the Rooney Rule, and racial discrimination complaints, for the period from 2018 to the present. (Dkt. Nos. 303 at 6–8; 336 at 6; 337 at 66). Plaintiffs contend that the alleged "pattern and practice of not hiring Black coaches, subjecting Black candidates to sham interviews, and discrimination in terms and conditions of employment" is common to all the Teams, including the Texans and seek discovery from the Texans to show that

"a common mode of exercising discretion" exists. (Dkt. No. 336 at 6 (quoting Wal-Mart, 564 U.S. at 356). Therefore, Plaintiffs seek from the Texans documents and information, including both statistical and anecdotal evidence, from hiring cycles outside of the 2022 cycle in which Mr. Flores was a candidate. (Dkt. Nos. 336 at 6; 337 at 66–67).

**b. Texans' responses**

The Texans argue that the scope of discovery should be limited to the 2022 hiring cycle, during which Mr. Flores was a head coach candidate and out of which his retaliation claim arises. (Dkt. No. 350 at 1; see Dkt. No. 274 ¶¶ 452–56). The Texans suggest that Mr. Flores "appears to have abandoned[,]" his Disparate Impact and Disparate Treatment Claims against them (see n.1, supra) by failing to respond to the Texans' arguments in the TAC MTDs, and, in any event, discovery beyond the 2022 hiring cycle is "an impermissible fishing expedition." (Dkt. No. 350 at 1). The Texans add that their "last four head coaches, including all hired during the time period [Mr. Flores] seeks for discovery and the coach hired instead of [him] in 2022," were Black, i.e., "members of the same protected class[.]" (Dkt. No. 350 at 1; see Dkt. Nos. 356 at 76–77; 362 at 64-65). Nevertheless, the Texans have agreed to search for and produce "nonprivileged complaints of racial discrimination against [their] 2022 decision-makers going back to 2018." (Dkt. No. 356 at 81; see Dkt. No. 362 at 65). Finally, the Texans agreed to the Court's request to ascertain whether there is a discrete set of documents or summary memorandum for the hiring cycles other than 2022 summarizing the list of candidates, timeline, and decision-making process. (Dkt. Nos. 337 at 75–78; 356 at 81).

**c. Rulings**

**i. Hiring Cycles**

Consistent with our analysis of the scope of discovery as to the NFL (see § III.B.1.c, supra), we decline to require the Texans to produce the broad discovery that Plaintiffs request as to hiring cycles other than the 2022 cycle. (See Dkt. No. 303 at 6–8). The discovery that the Texans have agreed to produce—concerning the 2022 hiring cycle in which Mr. Flores was a candidate and race discrimination complaints against the 2022 decision-makers going back to 2018—is "proportional to the needs of the case and bear[s] some relationship to" Mr. Flores' claims against the Texans. Flores v. Stanford, 2021 WL 4441614, at *5. Mr. Flores' professed need for broad discovery from the Texans concerning other hiring cycles to support his theory that there are hiring practices "common to all teams" (Dkt. No. 336 at 6), falls short given that the Texans hired three other Black coaches, including for the 2022 cycle, and that Plaintiff does not, and cannot, base his retaliation claims against the Texans on termination or the terms and conditions of employment as a head coach. See Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 492 (S.D.N.Y. 2016) (denying plaintiff's request for discovery that she had not shown was "necessary to support her assertions under Rule 23"). In addition, as discussed during the Aug. 21 Conference, the Texans shall ascertain whether they have policies and procedures that applied to the 2014, 2020, 2021, and 2023 hiring cycles and be prepared to discuss the results of that search at the next conference. (Dkt. No. 362 at 65)

**ii. ESI Custodians**

The sole ESI custodian in dispute as to the Texans is Janice McNair, their owner and chairperson during the 2022 hiring cycle. (Dkt. Nos. 336 at 5; 350 at 2–3). Although Plaintiffs

acknowledge that Mrs. McNair has passed away, they posit that she played a "significant role[] in head-coach hiring, and doubtless communicated" about the decision not to hire Mr. Flores. (Dkt. No. 336 at 5). The Texans respond that Mrs. McNair suffered a significant health event in January 2022, and the Texans' interview of Mr. Flores occurred on January 14, 2022, so she is not likely to have any unique documents. (Dkt. Nos. 350 at 3; 362 at 68).

While we acknowledge that Mrs. McNair's health issues may have limited her involvement in the 2022 hiring cycle, as discussed during the Aug. 21 Conference, the Texans shall run the agreed ESI search terms against Mrs. McNair's corporate ESI for the period from December 1, 2022 through January 14, 2022, and provide Plaintiffs' counsel with a hit report, about which the parties shall meet and confer to determine whether further review and production is necessary. (Dkt. No. 362 at 68–69).

**iii. Personal Devices**

Plaintiffs ask the Court to compel the Texans to produce text messages on personal devices. (Dkt. No. 336 at 5). The Texans have agreed, however, "to produce responsive messages from phones used for work and to spot check personal phones." (Dkt. No. 350 at 3). The Texans have disclosed to Plaintiffs' counsel that they have engaged a forensic vendor to examine the personal devices of Mr. Caserio and Mr. Smith to ascertain whether either of them had "missing texts." (Dkt. No. 336 at 5; see Dkt. No. 362 at 69–71).

We are satisfied with the Texans' proposal to (i) search for and produce responsive text messages from the phones its custodians used for work; (ii) spot check personal phones; and (iii) allow its forensic vendor to complete its investigation of the devices of Mr. Caserio and Mr. Smith.

As with the NFL, the Texans' custodians are on notice of their continuing obligation to preserve all potentially responsive ESI on their personal devices. (See § III.B.1.c.iv, supra).

### 3. Plaintiffs' Requests to the Broncos

#### a. Plaintiffs' requests

Plaintiffs' requests to the Broncos are like the Texans' in that Plaintiffs seek broad discovery from head coach hiring cycles other than the 2019 cycle during which Mr. Flores was a candidate. (Dkt. Nos. 303 at 8–10; 336 at 6; 362 at 73–74). Plaintiffs argue that they need discovery from other cycles involving other decision-makers "within the same organizations" to show, under Wal-Mart, "a common practice across teams, and across cycles, and a common mode of exercising discretion." (Dkt. No. 362 at 79). Thus, Plaintiffs seek discovery from the Broncos "to determine if the post 2019 cycle[s] followed the other cycles." (Id.)

#### b. The Broncos' responses

The Broncos respond that Plaintiffs do not appear to assert a pattern-and-practice race discrimination claim or a retaliation claim against them and that the only timely claim is the Disparate Treatment Claim under Section 1981. (Dkt. Nos. 347 at 1–2; 362 at 75–76). The Broncos note that for that claim, "'only a comparison between persons evaluated by the same decision-maker is probative of discrimination,'" (Dkt. No. 347 at 1 (quoting Smith v. Xerox Corp., 196 F.3d 358, 370 (2d Cir. 1999)), but during the previous hiring cycle, the Broncos, with John Elway as the same decision-maker as during the 2019 cycle, hired a Black head coach. (Dkt. No. 362 at 76). The Broncos also point out that Plaintiffs allege in the TAC that the Broncos made the 2019 hiring decision based on its "'unfettered'" "'subjective'" "discretion[,]" not on an NFL-wide policy. (Dkt. No. 347 at 2 (quoting Dkt. No. 274 ¶¶ 121, 124)).

In any event, the Broncos have agreed to produce discovery for both the 2016–2017 and the 2018–2019 head coach hiring cycles, for both of which Mr. Elway was the decision-maker, as well as personnel files for Vic Fangio and Vince Joseph and race discrimination complaints against Mr. Elway and other Broncos custodians who were involved in those hiring cycles. (Dkt. No. 347 at 3).

**c. Rulings**

**i. Hiring Cycles**

As with the Texans, we find that the Broncos' proposed search for and production of documents from the 2016–2017 and 2018–2019 head coach hiring cycles, personnel files for Vic Fangio and Vince Joseph, and race discrimination complaints against Mr. Elway and other Broncos custodians who were involved in those hiring cycles is also proportional and sufficiently related to Mr. Flores' claims against the Broncos. (See § III.B.2.c.i, supra). In addition, as discussed at the Aug. 21 Conference, the Broncos shall ascertain whether they have policies and procedures that applied to head coach hiring cycles other than 2016–2017 and 2018–2019 and be prepared to discuss the results of that search at the next conference. (Dkt. No. 362 at 80).

**ii. Custodians**

Plaintiffs requested Mr. Elway's calendar for the 2018–2019 hiring process. (Dkt. No. 336 at 6). The Broncos agreed to produce Mr. Elway's calendar for that period but sought leave to redact entries unrelated to the 2018–2019 hiring process. (Dkt. No. 347 at 3 & n.3; see Dkt. No. 362 at 81–82). Consistent with the Court's ruling at the Aug. 21 Conference, the Broncos shall only "produce the entries on [Mr. Elway's] calendar that are relevant to the hiring process[,]" and may redact personal or social entries. (Dkt. No. 362 at 81).

**iii. Personal Devices**

The Broncos have been forthcoming that Keith Bishop, their Vice President of Security during the 2018–2019 hiring cycle, has responsive text messages on his personal device, but he has refused to permit the Broncos' counsel to conduct a search, and so they have requested that the Court order Mr. Bishop to cooperate with the search. (Dkt. Nos. 347 at 4; 362 at 83). Accordingly, the Court orders Mr. Bishop to make his personal phone available to the Broncos' counsel for a search of his ESI for the period from December 1, 2018 through January 31, 2019. See Plata Capital Ltd. v. Fin'l Tech. Ptrs. L.P., No. 25 Civ. 2549 (PAE), 2026 WL 523818, at *2 (S.D.N.Y. Feb. 25, 2026) (ordering tailored search of employees' devices). Mr. Bishop is warned that his failure to comply with this order may result in sanctions. See Fed. R. Civ. P. 37(b)(2)(A) (permitting sanctions for failure to comply with discovery orders).

At the Aug. 21 Conference, Plaintiffs raised a concern that Broncos custodian Matt Russell had deleted responsive text messages from his device. (Dkt. No. 362 at 84). The Broncos explained that Mr. Russell's practice was to delete text messages automatically after 30 days. (Id. at 85; see Dkt. No. 347 at 4). The Court directed the Broncos to speak with Mr. Russell to reconfirm that, in fact, he no longer has any responsive text messages for the period from December 1, 2018 through January 31, 2019 on his device. (Dkt. No. 362 at 87; see id. at 84).

Finally, the Broncos' custodians are on notice of their continuing obligation to preserve all potentially responsive ESI on their personal devices. (See § III.B.1.c.iv, supra).

#### 4. <u>Plaintiffs' Requests to the Giants</u>

##### a. <u>Plaintiffs' requests</u>

Plaintiffs seek discovery from the Giants concerning the 2026 head coach hiring cycle for reasons similar to those Plaintiffs advance as to the other Teams: to discover "whether practices tracked earlier cycles and those of other [T]eams, and whether the Giants meaningfully considered Black candidates is relevant to the class claims." (Dkt. No. 336 at 7). Plaintiffs add that their request for discovery about the Giants' 2026 hiring cycle also pertains to their request for injunctive relief. (Dkt. No. 362 at 88; <u>see</u> Dkt. No. 274 ¶¶ 412–16).

##### b. <u>Giants' responses</u>

The Giants counter that Plaintiffs' claims against the Giants "arise from an 18-day period in January 2022 when the Giants considered and interviewed [Mr.] Flores for their Head Coach position" and do not mention the Giants' 2026 hiring cycle, "much less connect that search to [Mr.] Flores' interview four years earlier." (Dkt. No. 349 at 1). Nevertheless, the Giants have agreed to produce the following discovery outside the January 2022 hiring cycle: (i) documents concerning the two preceding hiring cycles dating to January 2018, including candidate research and interviews, meeting notes and logs, and internal deliberations; (ii) communications referencing race, ethnicity, color, race discrimination, and the representation of Black individuals in connection with the head coach hiring process; (iii) formal complaints or reports alleging race discrimination relating to head coach hiring; and (iv) Rooney Rule materials from 2018. (Dkt. No. 349 at 1–2). The Giants have agreed to search corporate emails, text messages on corporate devices, hard and shared drives, and corporate hard-copy documents. (<u>Id.</u> at 2). Thus, the Giants argue that discovery into the 2026 hiring cycle, four years after the one in which Mr.

Flores was a candidate, is not "proportionate given the substantial discovery Plaintiffs will already receive." (Id. at 1).

c. **Rulings**

i. **Hiring Cycles**

As with the Texans and the Broncos, we find that the Giants' proposed search for the hiring cycles dating back to 2018 as well as the other categories of documents listed above is proportional and sufficiently related to Mr. Flores' claims against the Giants. In addition, as discussed at the Aug. 21 Conference, the Giants shall ascertain whether they have policies and procedures that applied to head coach hiring cycles other than the 2022 cycle, i.e., including the 2026 cycle, and be prepared to discuss the results of that search at the next conference. (Dkt. No. 362 at 89–91).

ii. **Personal devices**[4]

The Giants' custodial interviews revealed that only one of their custodians, Steve Tisch, used a personal device to communicate about Giants' matters, so the Giants have agreed to search his personal device for responsive communications. (Id. at 92). Plaintiffs raised concerns that Giants' former head coach, Brian Daboll, appears to have had, but not used, a corporate device, from which Plaintiffs draw the inference that his personal device may contain responsive text messages. (Id. at 89). Plaintiffs contend that Mr. Daboll was the Giants' head coach when Plaintiffs filed this action, so the Giants had an obligation to preserve his responsive text messages. (Id. at 89, 93, 95). The Giants noted that Plaintiffs have sent a subpoena to Mr. Daboll

[4] There were no disputes as to the Giants' ESI custodians. (See Dkt. Nos. 336; 349).

and noted that their search of other Giants custodians' devices will encompass any text messages with Mr. Daboll. (Id. at 94).

As discussed during the Aug. 21 Conference, the Giants' ESI searches of its custodians' devices shall include text messages with Mr. Daboll. (Id.). In addition, as with the other Teams, the Giants' custodians are on notice of their continuing obligation to preserve all potentially responsive ESI on their personal devices.

**5. Defendants' Requests to Mr. Flores**

**a. Defendants' requests**

Defendants seek discovery from Mr. Flores concerning his claim for damages for loss of opportunity and loss of reputation he alleges he sustained as a "direct and proximate result" of their discriminatory conduct. (Dkt. No. 344 at 1 (citing Dkt. No. 274 ¶¶ 424, 429, 433, 438, 442)). Defendants object to Mr. Flores' refusal to produce records of disciplinary actions or complaints concerning his conduct toward employees of any NFL Team, and his position that he will produce only "documents that he intends to use in support of his damages claim." (Dkt. No. 303 at 12). As an example, Defendants cite public reports of Mr. Flores' "performance issues during his tenure [at] the Dolphins." (Dkt. No. 362 at 97).

Defendants argue that, by claiming that Defendants' conduct continues to harm his professional reputation and employment prospects, Mr. Flores "has placed the existence, extent, and cause of those alleged injuries squarely at issue." (Dkt. No. 344 at 1). Defendants contend that Mr. Flores cannot limit discovery to only the reputational documents favorable to him, but must include documents "that contradict[], diminish[], mitigate[], or otherwise explain the claimed injuries[,]" including documents that explain "whether other circumstances have

affected [his] reputation and employment prospects before and after the events alleged in the TAC—such as performance evaluations, disciplinary records, complaints concerning [his] conduct or management style, and communications concerning his professional reputation or candidacy." (Id. at 1–2).

In support, Defendants rely on Federal Rule of Civil Procedure 26(b)(1) (Dkt. No. 344 at 1), which permits discovery into "any non-privileged matter that is relevant to any party's claim or defense[,]" Fed. R. Civ. P. 26(b)(1), as well as Federal Rule of Evidence 405(b), which permits evidence of "specific instances of [a] person's conduct" where his "character or traits of character . . . is an essential element of a . . . defense." Fed. R. Evid. 405(b). Defendants also cite several cases in which courts analyzing damage to reputation or future employment prospects allowed discovery of or admitted evidence of other potential causes of a plaintiff's damaged reputation. (Dkt. No. 344 at 2). Finally, Defendants assert that Mr. Flores' reputational information is relevant to his request to serve as a representative of the Proposed Class. (Dkt. No. 362 at 99–100).

**b. Mr. Flores' responses**

Mr. Flores responds that Defendants' request for discovery into his personnel files is "a fishing expedition for after-acquired evidence[]" to support the Teams' decisions not to hire him as a head coach. (Dkt. No. 351 at 1). Mr. Flores asserts that Defendants have not demonstrated the relevance of his personnel files, that the best evidence of his reputation should come from "asking others in the industry what they understand [his] reputation to be and why[,]" and that seeking this discovery would damage him because "Teams will be reluctant to hire [him] if they know that interactions with him will be subject to scrutiny." (Id. at 2). Finally, Mr. Flores cites

cases in which courts have rejected "'wholesale disclosure of a plaintiff's employment history [a]s not proportional to the needs of the case absent some additional showing of relevance.'" (Id. at 2 (quoting Graham v. Del.-Chenango-Madison-Otsego Bd. of Coop. Educ. Serv., No. 24 Civ. 495 (ECC) (ML), 2025 WL 1168243, at *3 (N.D.N.Y. Apr. 22, 2025)). In any event, Mr. Flores concedes that Defendants have come forward with some evidence that there were complaints about his performance as the head coach of the Dolphins and has therefore offered to search for documents concerning his reputation or performance with the Dolphins only. (Dkt. No. 362 at 105).

**c. Ruling**

As discussed during the Aug. 21 Conference, the Court will require Mr. Flores to conduct a targeted search for documents and information concerning his personnel file or performance while he was head coach of the Dolphins only, without prejudice to Defendants' ability, on a showing that Mr. Flores had performance or conduct issues while he worked for another Team, to renew their request for discovery as to that Team. (Dkt. No. 362 at 107)

We reach this decision to narrow the scope of Mr. Flores' obligation to search for personnel, performance, or reputational documents for three reasons. First, focusing on the cases on which Defendants rely from within the Second Circuit (Dkt. No. 344 at 2), two are less persuasive because they involved common law defamation, not discrimination, claims—Weber v. Multimedia Ent., Inc., No. 97 Civ. 682 (PKL) (THK), 1997 WL 729039, at *1–2 (S.D.N.Y. Nov. 24, 1997) (permitting discovery into alternative causes for plaintiff's reputational harm because "[d]amage to reputation is the essence of libel"), and Condit v. Dunne, No. 02 Civ. 9910 (PKL), 225 F.R.D. 100, 110–11 (S.D.N.Y. 2004) (finding discovery into plaintiff's other sexual relationships

was relevant to defendant's "state of mind regarding a determination of actual malice or reckless disregard for the truth"). Defendants also misplace their reliance on Munafo v. Metropolitan Transportation Authority, Nos. 98 Civ. 4572 & 00 Civ. 134 (ERK), 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003), where the court limited the admission of evidence "that the plaintiff's reputation has already been compromised" to the damages phase of the trial given the potential for "substantial" prejudicial impact on the plaintiff's case during the liability phase of the upcoming trial. 2003 WL 21799913, at *24–25. Finally, in Ghonda v. Time Warner Cable, Inc., No. 16 Civ. 2610 (PKC), 2017 WL 395111 (S.D.N.Y. Jan. 27, 2017), the court permitted discovery into harassment complaints the plaintiff made about her prior employer—not complaints about the plaintiff's performance at her prior employer. 2017 WL 395111, at *4.

Many of the cases Mr. Flores cites are similarly off base. (Dkt. No. 351 at 1–2). For example, in Gambale v. Deutsche Bank AG, No. 02 Civ. 4791 (HB) (DFE), 2003 WL 115221 (S.D.N.Y. Jan. 10, 2003), the court quashed subpoenas to employment search firms seeking information about how the plaintiff described "her skill set and qualifications" in the absence of actual evidence that the plaintiff misstated or misrepresented herself. 2003 WL 115221, at *1–2. In Rodriguez v. NNR Glob. Logistics USA Inc., No. 14 Civ. 1766 (JFB) (AKT), 2016 WL 11673310 (E.D.N.Y. Mar. 31, 2016), although the court excluded from disclosure plaintiff's prior employment records, it did so not because they were irrelevant reputational harm but rather because the defendants sought the information to show that the plaintiff was dishonest and not credible, and there was no evidence that the defendants "decision to terminate [her] was influenced by her prior employment." 2016 WL 11673310, at *5.

We do, however, find helpful guidance in the decisions in Alexander v. New York City Department of Education, 339 F.R.D. 372 (S.D.N.Y. 2021) ("Alexander I"), on reconsideration, No. 19 Civ. 7023 (JMF) (SDA), 2022 WL 1125582 (S.D.N.Y. Apr. 15, 2022) ("Alexander II"). In Alexander I, an age discrimination action, the court granted the plaintiff's motion to quash a subpoena the defendants served on her former employer because the defendants failed to meet their burden to show that the plaintiff's personnel file was "relevant and proportional to the needs of the case." Alexander I, 339 F.R.D. at 374. After the plaintiff testified at her deposition about her reason for resigning from the former employer, however, the court granted reconsideration, finding that the plaintiff's testimony was grounds to find relevant her "performance evaluations, disciplinary records, any complaints of discrimination by or against [her], the reason for her separation, and any separation agreements[.]" Alexander II, 2022 WL 1125582, at *3. Thus, Alexander II supports requiring Mr. Flores to produce discovery concerning his personnel file or performance evaluation for those Teams as to which there is some evidence of performance issues, i.e., as of now, only the Dolphins. And, to the extent that Defendants, through ongoing discovery or from other publicly available information, can show that Mr. Flores had performance or conduct issues with other Teams, they may renew their broader request.

Accordingly, Mr. Flores shall search for and produce documents concerning his personnel file or performance while he was head coach of the Dolphins, without prejudice to Defendants' ability to renew their request as to other teams on the showing set forth above.

## IV. CONCLUSION

Based on the Court's rulings above, Plaintiffs shall incorporate the Court's guidance as to the scope of discovery to revise their proposed search terms to Defendants (Dkt. No. 336-2), and by **September 4, 2026**, Plaintiffs shall provide to Defendants a revised set of proposed search terms. Similarly, Defendants shall incorporate the Court's guidance as to the scope of discovery from Mr. Flores and by **September 4, 2026**, provide Plaintiffs' counsel with a set of proposed search terms for the search of Mr. Flores' documents and ESI. The parties shall be prepared to discuss any remaining document discovery disputes at the next conference on **September 9, 2026**. (Dkt. No. 364).

Dated: New York, New York
August 28, 2026

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**