WIGDOR.

**David E. Gottlieb**
dgottlieb@wigdorlaw.com

September 1, 2026

**VIA ECF**

The Honorable Valerie E. Caproni
The Honorable Sarah L. Cave
United States District Court
Southern District of New York

Re: *Flores, et al. v. The National Football League, et al.*; No. 22-00871 (VEC) (SLC)

Dear Judges Caproni and Cave,[1]

Korn Ferry's application to seal Exhibit A (Dkt. Nos. 340-41) should be denied. In Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006), the Second Circuit held that a First Amendment and common law presumption of public access applies to all "judicial documents." A "judicial document" is one that is "relevant to the performance of the judicial function and useful in the judicial process." Id. at 115. In determining whether a document qualifies, courts evaluate the "'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the [document] would materially assist the public in understanding the issues before the [] court, and in evaluating the fairness and integrity of the court's proceedings.'" Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139 (2d Cir. 2016) (citations omitted). A "judicial document" may only be sealed where "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120.

There is no question that a complaint constitutes a "judicial document." Bernstein, 814 F.3d at 142 ("Of all the records that may come before a judge, a complaint is among the most likely to affect judicial proceedings. It is the complaint that invokes the powers of the court, states the causes of action, and prays for relief."); Haider v. Geller & Co. LLC, 457 F. Supp. 3d 424, 427 (S.D.N.Y. 2020) ("it is plain that a complaint is a judicial document to which the presumption of access attaches"). Here, the Supplemental Complaint is derived from a document produced by Korn Ferry prepared in connection with a Head Coach search for the Las Vegas Raiders in 2025 which quotes an executive from a former employer—almost certainly the Dolphins—saying "He may have changed since, but he was the worst hiring decision we've ever made." See Ex. A.

[1] The sealing of the Supplemental Complaint appears to be before Judge Cave and the sealing of exhibits to the motion to dismiss appears to be before Judge Caproni. See Dkt. Nos. 313, 346.

Korn Ferry does not dispute that the Supplemental Complaint is a "judicial document" but argues that the information should remain under seal because it "references a confidential candidate search and was prepared . . . in connection with a confidential search engagement with its client, the Las Vegas Raiders . . . [and] disclosure of this information would undermine and impact Korn Ferry's ability to conduct these confidential searches and gather confidential information for its clients . . . ." Dkt. Nos. 340-41. Notably, Korn Ferry does not cite any authority supporting the proposition that this rationale suffices to carry its burden. Nor could it.

First, case law is clear that while certain proprietary information might militate in favor of sealing, that parties agreed to a confidential business arrangement does not constitute a "higher value" under Lugosch. See, e.g., Wells Fargo Bank, N.A. v. Wales LLC, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) ("That it contains a confidentiality clause is not binding here, given the public's right of access to 'judicial documents.'").[2] Typically, the necessary business interest is only shown where it involves trade secrets or bona fide competitive information. Even then, "the party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009). The Second Circuit cautioned: "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994).

Korn Ferry has not made any such demonstration. See, e.g., Olson v. Major League Baseball, 466 F. Supp. 3d 450, 456 (S.D.N.Y. 2020) (rejecting sufficiency of harm articulated by Major League Baseball that disclosure "will undermine its ability to conduct internal investigations in the future by undermining teams' faith in their confidentiality"); Next Caller Inc. v. Martire, 368 F. Supp. 3d 663, 667 (S.D.N.Y. 2019) (denying sealing based on "vague and unspecified business concerns, [] that the case concerns 'confidential and related business interactions' that 'could be used by corporate competitors in a detrimental manner.'"); TileBar v. Glazzio Tiles, 723 F. Supp. 3d 164, 209 (E.D.N.Y. 2024) (denying sealing of competitive pricing lists because plaintiff did not "make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection.").

Second, it is clear from the face of the document that there is nothing proprietary about Korn Ferry's methodology or business processes revealed by Exhibit A. It appears from the document that in connection with compiling information for the Raiders, Korn Ferry contacted candidates' former employers for reference information and engaged in other background research. Korn Ferry then documented the information generated in this "Strengths and Weaknesses" document. Exhibit A only reveals the information obtained from Korn Ferry's work, not anything sensitive or confidential about Korn Ferry's business processes.

---

[2] The engagement between Korn Ferry and the Raiders was referred to as "confidential" but did not have any specific confidentiality terms.

Third, what Korn Ferry's sealing request would protect from public disclosure is not a business process, but discriminatory and retaliatory considerations directly relevant to Plaintiff's claims. The document contains not only the retaliatory comment referenced above but also racist and stereotypical remarks: "Polished and a good presenter despite growing up in Brownsville, Brooklyn (same as Mike Tyson). He was able to build a strong friendship with a billionaire's son which gave him opportunities to socialize and learn how to build relationships with white-collar and upper-class individuals." It also unlawfully suggests that his involvement in this litigation should be considered a "weakness" against his candidacy. To the extent Korn Ferry or its clients are concerned that disclosure may be embarrassing or reputationally harmful—that does not satisfy the Lugosch burden. See Under Seal v. Under Seal, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017) (rejecting argument that "professional repercussions and personal humiliation" to a public figure was sufficient); General Media, Inc. v. Shooker, 1998 WL 401530, at *12 (S.D.N.Y. July 16, 1998) ("The public interest in access to the courts . . . far outweigh [defendant's] generalized concern of negative reaction on his business dealings from the instant lawsuit. If such a rationale were sufficient to block access to court files, the vast majority of lawsuits before this Court would be closed to public view.").

Finally, courts strongly favor the presumption of public access where a case involves matters of public interest. This lawsuit has been highly reported and involves a matter of longstanding public concern.[3] The sealing of substantive judicial documents would not be an abstract infringement on the public's right of access; rather, the media has even reported on sealing of this specific document.[4] See, e.g., Freeman v. Deebs-Elkenaney, No. 22 Civ. 02435 (SN), Dkt. 362 at 27 (media's interest in proceedings favored the public's right of access); In re Grand Jury Subpoenas to the Office of the N.Y. State Attorney General, 25-mc-00019 (LGS), Dkt. 44 at n.7 ("two press inquiries directed at the District Court to unseal this case . . . and recent articles discussing the sealed matter before this Court provide additional indicia demonstrating the public interests at stake"). Indeed, because Exhibit A supplies the factual basis for Plaintiff's Supplemental Complaint, sealing would prevent the public from understanding the allegations the Court has permitted Plaintiff to pursue and the evidentiary basis for those allegations.

Respectfully submitted,

David E. Gottlieb
Enc.

---

[3] See, e.g., Dave Sheinin, "How the NFL Blocks Black Coaches," Washington Post (Sept. 22, 2022); Mike Jones, "Roger Goodell says NFL's Rooney Rule isn't going anywhere, addresses referee negotiations," The New York Times (Mar. 31, 2026); "Black NFL players offer their survey responses and broader thoughts on a lack of Black head coaches," The Associated Press (Feb. 5, 2025); Martenzie Johnson, "Rooney Rule at 20: A look back at the policy that changed the NFL's hiring of Black coaches," Andscape.com (Aug. 24, 2022).

[4] See, e.g., Mike Florio, "Smoking-gun document produced by Korn Ferry could shake up Brian Flores case," NBCsports.com (Aug. 17, 2026); Jerry Markarian, "Report: Potential Brian Flores Bombshell Could Rock the NFL," Yahoo! Sports (Aug. 18, 2026).