**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,

Defendants.

---------------------------------------------------------------------- X

Civil Action No.: 22-cv-00871 (VEC)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RULE 72(A) OBJECTIONS TO ORDER AT ECF 365**

**WIGDOR LLP**

Douglas H. Wigdor
David E. Gottlieb
Michael J. Willemin
Russell L. Kornblith
Daniel Altaras
Noah Jacobs

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

John Elefterakis
Nicholas Elefterakis
Raymond Panek
Johnson Atkinson

80 Pine Street, 38th Floor
New York, NY 10005
Telephone: (212) 532-1116
Facsimile: (212) 532-1176

TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

I. Legal Standard ..... 1

II. Plaintiff Seeks Complaints of Race Discrimination by Other NFL Employees and by NFL-Team Employees ..... 1

A. Other Complaints Are Relevant to Class Discovery ..... 2

B. Other Complaints Are Relevant to Flores's Individual Claims ..... 4

C. Other Complaints Are Relevant to the Joint-Employer and Integrated-Enterprise Inquiries ..... 5

D. Proportionality Is Not Grounds to Deny this Discovery ..... 6

III. Plaintiff Seeks Discovery from the Teams and Goodell for the Entire Class Period ..... 7

IV. Plaintiff Seeks Discovery of the NFL's Treatment of Colin Kaepernick and Jon Gruden ..... 10

V. Plaintiff Seeks Discovery Regarding Jeff Pash's Communications about this Lawsuit and the Sham Arbitration ..... 10

Conclusion ..... 12

# TABLE OF AUTHORITIES

Cases Page(s)


Barfield v. N.Y.C. Health & Hosps. Corp.,
537 F.3d 132 (2d Cir. 2008) .......... 6

Barrett v. Forest Labs., Inc.,
39 F. Supp. 3d 407 (S.D.N.Y. 2014) .......... 3

Brown v. Daikin Am. Inc.,
756 F.3d 219 (2d Cir. 2014) .......... 5

Catskill Dev., L.L.C. v. Park Place Ent. Corp.,
206 F.R.D. 78 (S.D.N.Y. 2002) .......... 1

Chen-Oster v. Goldman, Sachs & Co.,
293 F.R.D. 557 (S.D.N.Y. 2013) .......... 3, 8

Chin v. Port Authority of N.Y. & N.J.,
685 F.3d 135 (2d Cir. 2012) .......... 5

Complex Sys., Inc. v. ABN AMRO Bank N.V.,
279 F.R.D. 140 (S.D.N.Y. 2011) .......... 12

Felder v. U.S. Tennis Ass'n,
27 F.4th 834 (2d Cir. 2022) .......... 5, 6

Flores v. N.Y. Football Giants, Inc.,
150 F.4th 172 (2d Cir. 2025) .......... 11

Heerwagen v. Clear Channel Commc'ns,
435 F.3d 219 (2d Cir. 2006) .......... 2

Hollander v. Am. Cyanamid Co.,
895 F.2d 80 (2d Cir. 1990) .......... 4

Huggins v. Chestnut Holdings Inc.,
2019 WL 2616252 (S.D.N.Y. June 25, 2019) .......... 6

In re Cnty. of Erie,
473 F.3d 413 (2d Cir. 2007) .......... 11

Island Def Jam Music Grp.,
214 F.R.D. 143 (S.D.N.Y. 2003) .......... 11

Johnson v. United States,
832 F. Supp. 3d 290 (S.D.N.Y. 2026) .......... 7

Koumoulis v. Indep. Fin. Mktg. Grp., Inc.,
29 F. Supp. 3d 142 (E.D.N.Y. 2014) .......... 12

Laurin v. Pokoik,
2004 WL 513999 (S.D.N.Y. Mar. 15, 2004) .......... 6

Lieberman v. Gant,
630 F.2d 60 (2d Cir. 1980) .......... 5

Moll v. Telesector Resources Group, Inc.,
760 F.3d 198 (2d Cir. 2014) .......... 4, 5

Nat'l R.R. Passenger Corp. v. Morgan,
536 U.S. 101 (2002) .......... 4

Nicosia v. Amazon.com, Inc.,
834 F.3d 220 (2d Cir. 2016) .......... 8

Parker v. Time Warner Ent. Co., L.P.,
331 F.3d 13 (2d Cir. 2003) .......... 8

Quartino v. Tiffany & Co.,
71 F.3d 58 (2d Cir. 1995) .......... 5

Radwan v. Manuel,
55 F.4th 101 (2d Cir. 2022) .......... 9

Robinson v. Metro-N. Commuter R.R. Co.,
267 F.3d 147 (2d Cir. 2001) .......... 7, 10

Smith v. Xerox Corp.,
196 F.3d 358 (2d Cir. 1999) .......... 9

Sprint/United Management Co. v. Mendelsohn,
552 U.S. 379 (2008) .......... 4

Teamsters v. United States,
431 U.S. 324 (1977) .......... 2, 7, 9, 10

Turley v. ISG Lackawanna, Inc.,
774 F.3d 140 (2d Cir. 2014) .......... 6

Vaigasi v. Solow Mgmt. Corp.,
2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) .......... 6

Wal-Mart Stores, Inc. v. Dukes,
564 U.S. 338 (2011) .......... 2, 7, 8

Rules

Fed. R. Civ. P. 26(b)(1) .......... 6, 7

Federal Rule of Civil Procedure 72(a) .......... 1

Other Authorities

Handbk. Fed. Civ. Disc. & Disclosure § 1:32 (4th ed.) .......... 11

Plaintiff appeals Magistrate Judge Cave's August 28, 2026 Order (Dkt. 365) ("Order") under Federal Rule of Civil Procedure 72(a). First, the Order improperly denies Plaintiff's discovery of relevant discrimination complaints. Second, the Order unduly limits discovery directed at the teams and Commissioner Goodell to less than the class period. Third, the Order erroneously denies discovery of relevant evidence of discrimination and retaliation relating to the NFL's treatment of Colin Kaepernick and Jon Gruden. Finally, the Order unjustifiably curtails discovery of Ex-NFL General Counsel Jeff Pash's communications. These limitations are contrary to law.

## I. Legal Standard

Under Rule 72(a), the Court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." "An order may be deemed contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" Catskill Dev., L.L.C. v. Park Place Ent. Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

## II. Plaintiff Seeks Complaints of Race Discrimination by Other NFL Employees and by NFL-Team Employees

Plaintiff sought discovery of (i) complaints against Goodell and his direct reports; (ii) complaints of systemic race discrimination; and (iii) complaints by NFL-team employees, including to the extent that the NFL is involved in the receipt, investigation and/or decisions related to the complaints (*i.e.*, to the extent that the NFL and team(s) are acting as a single enterprise and/or joint employer). Binding precedents find such evidence relevant to class certification, individual discrimination claims, and the integrated-enterprise-and/or-joint-employer inquiries. The Order, however, limits discovery of complaints to "complaints by any head coach or head coach candidate alleging race discrimination." (13.) This narrowing was error.

A. Other Complaints Are Relevant to Class Discovery

"Discovery on the prerequisites of Rule 23 is plainly appropriate …." Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 233 (2d Cir. 2006). Under Wal-Mart Stores, Inc. v. Dukes, "[a] party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." 564 U.S. 338, 350 (2011). "[P]roof of commonality necessarily overlaps with [the] merits contention that [Defendants] engages in a *pattern or practice* of discrimination." Id. at 352. "In a pattern-or-practice case, the plaintiff tries to 'establish by a preponderance of the evidence that...discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice.'" Id. at 352 n.7 (quoting Teamsters v. United States, 431 U.S. 324, 336 (1977)).

Wal-Mart set out several pathways to so establishing, including (i) "discriminatory bias on the part of the same supervisor" *or* (ii) "giving discretion to lower-level supervisors" coupled with "a common mode of exercising discretion that pervades the entire company." 564 U.S. at 350, 355-56.

Plaintiff here seeks discovery aimed at these two pathways. First, Plaintiff seeks other complaints alleging discrimination by Goodell or his direct reports. These complaints go to the common-decision-maker pathway. Second, Plaintiff seeks complaints of systemic discrimination and complaints from NFL-team employees, such as players, coaches, and candidates. These complaints go to Wal-Mart's second pathway: delegated discretion to team-level supervisors and a common, discriminatory mode of exercising discretion.[1] In each context, complainants from

[1] The Order appears to interpret Wal-Mart's use of "mode" to mean "decision-making process." (13.) Wal-Mart's context suggests that mode here means "manner." But even if taken to mean process, Plaintiff has alleged common processes and policies extending beyond head-coach hiring. (Dkt. 307, Opp., 9-10, 14-15; Dkt. 308-2, Ex. B.)

non-class members bear on the discriminatory ways in which decisionmakers exercised discretion.

The Order, however, would cut off this inquiry based on a faulty premise. The Order says, "Plaintiffs do not dispute[] that NFL head office employees and non-coach Team employees are not subject to the same hiring decision-making process as head coaches." (13.) Not so. Plaintiff has already shown that policies here at issue, including the NFL Constitution, the Anti-Tampering Policy, and the Rooney Rule, govern team employment beyond head-coach hiring. (Dkt. 307, Opp. Mot. Dismiss, 9-10, 14-15; Dkt. 308-2, Ex. B.) Discovery regarding other positions is therefore relevant to the delegated-discretion analysis and the disparate-impact analysis. Moreover, the Order's formulation conflates Wal-Mart's pathways. Complaints by NFL-head-office employees may suggest discriminatory animus by Goodell and his lieutenants—Wal-Mart's same-supervisor pathway. Complaints by non-coach team employees may suggest delegated discretion and a common, discriminatory manner of exercising it.

Nor is the Order consistent with Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 557, 568 (S.D.N.Y. 2013). In Chen-Oster, a gender-discrimination class action, the court ordered broad discovery of complaints by women in revenue-generating divisions, including women who were not class members. The court reasoned that "[c]omplaints made by analysts or administrative assistants, for example, are more clearly and directly related to the plaintiffs' case because these individuals have worked closely with putative class members. They may be able to provide anecdotes and information regarding their interactions with common managers, experiences utilizing the same internal complaint process, or the general culture of these divisions." 293 F.R.D. at 568. Cf. Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 438 n.13 (S.D.N.Y. 2014) (evidence defendant ignored discrimination complaints indicative of

discriminatory intent). This is precisely the scope of discovery Plaintiff seeks: complaints against the same managers at the NFL and teams from individuals outside the proposed class.

At the very least, should this discovery be denied, Defendants should be estopped from later arguing that the discovery produced is insufficient to show that Goodell is biased, that teams do not exercise discretion in a common and discriminatory manner, or that Plaintiff has not identified sufficient instances of discrimination. Defendants should not be permitted to resist producing relevant evidence, only to point to its absence in opposing class certification.

B. Other Complaints Are Relevant to Flores's Individual Claims

The Supreme Court has also held that evidence of discrimination by other supervisors against other employees is "neither per se admissible nor per se inadmissible" *in individual cases*. Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379, 381, 388 (2008). An individual may use such "prior [discriminatory] acts as background evidence to support a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002). Courts find this evidence relevant, because "[e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." Hollander v. Am. Cyanamid Co., 895 F.2d 80, 84 (2d Cir. 1990).

Accordingly, the Second Circuit has approved broad discovery of discriminatory patterns in both class and individual cases. In Moll v. Telesector Resources Group, Inc., an individual discrimination-and-retaliation case, the plaintiff sought all documents regarding any position eliminated as part of a reduction in force at several offices, along with personnel files of all persons in the plaintiff's position. 760 F.3d 198, 202-03 (2d Cir. 2014). The Second Circuit held that "[t]he district court erred by refusing to compel Verizon to provide the records [plaintiff]

requested," because "refusal to compel Verizon to produce the requested documents deprived [plaintiff] of the opportunity to find evidence that might support her argument that Verizon's reasons for firing her were pretextual, that she was discriminated based on her sex, or that she was paid unequally." Id. at 204. See also Chin v. Port Authority of N.Y. & N.J., 685 F.3d 135, 149 (2d Cir. 2012) ("[P]roof that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case."); Quartino v. Tiffany & Co., 71 F.3d 58, 61, 65 (2d Cir. 1995) (finding discrimination towards other employees relevant to plaintiff's discrimination claim); Lieberman v. Gant, 630 F.2d 60, 68 (2d Cir. 1980) ("Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case."). Discovery is antecedent to admissibility, and denying Plaintiff this evidence is therefore contrary to law.

The Order failed to grapple with this reasoning other than to later cite Rule 26's proportionality requirement. But reliance on proportionality without understanding the volume of complaints effectively prejudges that there must be many—*which would prove that discrimination is a standard operating procedure.*

C. Other Complaints Are Relevant to the Joint-Employer and Integrated-Enterprise Inquiries.

The NFL's role in handling complaints by NFL-team employees is also relevant to the joint-employer and single-integrated-enterprise inquiries. Both center on control of labor relations. (See Dkt. 307, Opp., 6-18 (discussing single-integrated-enterprise and joint-employer standards and citing, inter alia, Brown v. Daikin Am. Inc., 756 F.3d 219, 227 (2d Cir. 2014) and Felder v. U.S. Tennis Ass'n, 27 F.4th 834, 838 (2d Cir. 2022)).[2] "Centralized control over labor

---

[2] Felder was decided on a motion to dismiss and held the pleadings insufficient to meet the joint-employer standard. 27 F.4th 846-47. But Felder identifies relevant factors evidence may inform, including control over hiring,

relations…can include such factors as whether the companies have separate human resources departments and whether the entity…makes its own decisions as to…hiring, discipline, and termination ….” Laurin v. Pokoik, 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004). “The plaintiff must show only that the corporate parent’s involvement ‘is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions.’” Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 156–57 (2d Cir. 2014). Control of records bears on this inquiry. See Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 144 (2d Cir. 2008).

Judged against this standard, the NFL’s involvement in team complaints is plainly relevant: It will show the extent of the NFL’s control over the receipt, investigation, and/or decisions related to the complaints, as it relates to both the discrimination at issue in this case, and the rules and policies common to the teams. Defendants “cannot maintain that they are not a joint-employer while simultaneously refusing to produce discovery that permits the allegation to be proven or disproven.” Huggins v. Chestnut Holdings Inc., 2019 WL 2616252, at *3 (S.D.N.Y. June 25, 2019).

D. Proportionality Is Not Grounds to Deny this Discovery

Courts widely recognize that “[t]he 2015 amendments…did not establish a new limit on discovery; rather they merely relocated the limitation from Rule 26(b)(2)(C)(iii) to Rule 26(b)(1).” Vaigasi v. Solow Mgmt. Corp., 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016). In other words, “[t]he 2015 Amendments constitute a reemphasis on the importance of proportionality in discovery but not a substantive change in the law.” Id. And, “According to the Advisory Committee, restoring the proportionality calculation to Fed. R. Civ. P. 26(b)(1) does

---

firing, training, promotion, discipline, supervision, and employment records, suggesting that discovery in these areas is appropriate. Id. at 838-39.

not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations." Handbk. Fed. Civ. Disc. & Disclosure § 1:32 (4th ed.). The Order's invocation of Rule 26(b)(1)'s proportionality as grounds to resist binding authorities predating the 2015 Amendments (13-14) was thus contrary to law.

Moreover, Defendants have made no showing as to the burden of producing this information. "Thus, while [Defendants'] arguments as to the low marginal value of the…information are relevant to the balancing inquiry in which the Court must ultimately engage…they do not refute Plaintiffs' showing on the threshold question of relevance for purposes of discoverability." Johnson v. United States, 832 F. Supp. 3d 290, 298 (S.D.N.Y. 2026).

**III. Plaintiff Seeks Discovery from the Teams and Goodell for the Entire Class Period**

Plaintiff will establish that discrimination is the NFL and teams' "standard operating procedure[,] the regular rather than the unusual practice," and that injunctive relief is merited. See Wal-Mart, 564 U.S. at 352 n.7 (quoting Teamsters, 431 U.S. at 336). Likewise, Plaintiff will show that NFL-implemented "employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on the protected group," warranting "prospective class-wide injunctive relief." See Robinson v. Metro-N. Commuter R.R. Co., 267 F.3d 147, 160-61 (2d Cir. 2001). To obtain this relief, Plaintiff must show the NFL and teams' usual practices and that these practices are ongoing.

The Order, however, does not require the Broncos, Texans, and Giants or Goodell (as custodian) to produce discovery regarding their ongoing practices, limiting discovery to cycles in which Flores was a candidate and some adjacent cycles. (19-20, 24, 27, 30.) Denial of this

discovery contravenes two lines of cases. First, as set forth in Part II.A, under Wal-Mart, Plaintiff must show that the discriminatory practices about which Flores and the Class complain are the NFL and teams' "usual practices." Anecdotal evidence is important to this inquiry. See Wal-Mart, 564 U.S. at 358 (citing "40 specific accounts of racial discrimination from particular individuals…spread through the company"). And discovery of the teams' and Goodell's practices will assist in meeting this standard. Defendants already argue that "there are 'too few employment decisions' to 'justify the inference' of a regular practice" (Dkt. 352, Broncos Reply, 9); that such instances are "individualized hiring decisions across the clubs"; (Dkt. 353, NFL Reply, 8); and that "two alleged events…fall far below" the level of a standard operating procedure (Dkt. 287, Texans Br., 22). The Order would deny discovery necessary to undermine these assertions. This is error, because the Second Circuit rejects such reliance "on assumptions of fact rather than on findings of fact" at class certification. Parker v. Time Warner Ent. Co., L.P., 331 F.3d 13, 21 (2d Cir. 2003).

Second, discovery of the teams' and Goodell's ongoing practices is central to Plaintiff's claim for injunctive relief. Plaintiff must "establish a likelihood of future or continuing harm" to obtain injunctive relief. See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016). To do so, he needs evidence that practices today match those to which he was subject.

The Order's instruction that the teams must ascertain whether they have the same policies and procedures in place in other cycles (24, 27, 30) does not allay this concern: First, the Texans represented at the September 9, 2026, conference that they have been unable to so ascertain. And Plaintiff should not be required to accept an assertion that the practices differed—based on lack of evidence or ipse dixit—on a central issue in this case. Cf. Chen-Oster, 293 F.R.D. at 562-63 (rejecting defendant's proposal that it produce only complaints it deems "gender related"). At

the very least, should this discovery be denied, Defendants should be estopped from arguing that their processes now differ from those to which Flores was subject. Conversely, if the teams and Goodell acknowledge that their processes were the same across cycles, then evidence of discrimination in other cycles is plainly relevant to their "usual practice" under Wal-Mart and Teamsters, warranting discovery.

The teams' representations that their decisionmakers have changed since the cycle in which Flores was a candidate do not undermine the need for this discovery. First, as set out in Part II, evidence of discrimination by different team-based decisionmakers is relevant to (a) Wal-Mart's path to certification through a common *process* of delegated discretion exercised in a common manner, (b) Flores's individual claims, and (c) the joint-employer/single-integrated-enterprise inquiries. Second, even for purposes of an individual case, the Second Circuit is clear that for comparators, a "'same decisionmaker' requirement has never existed in this Circuit. To the contrary, under Title VII, we have emphasized that any contention 'that another employee cannot be similarly situated to a plaintiff unless the other employee *had the same supervisor*, worked under the same standards, and engaged in the same conduct' is a 'misreading' of our precedent." Radwan v. Manuel, 55 F.4th 101, 136 (2d Cir. 2022). And Smith v. Xerox Corp., cited by the Broncos, expressly acknowledged that statistical analyses including populations subject to different decision-makers may be probative in disparate impact cases. 196 F.3d 358, 370 (2d Cir. 1999).

As to the Texans' argument that their hiring of Black coaches constitutes grounds to deny discovery into those cycles, Teamsters is on point. In Teamsters, the Court observed that "[o]f the 1,828 line drivers…there were only 8 (0.4%) Negroes…and all of the Negroes had been hired after the litigation had commenced." 431 U.S. at 337. This evidence, coupled with

"individuals who testified about their personal experiences," supported certification. Id. at 339. Teamsters thus provides two principles relevant to this dispute: First, Plaintiff need not prove that *every* minority applicant failed to advance to certify a class, just a disparity. Cf. Robinson, 267 F.3d at 158 (noting that "a gross disparity" alone supports a prima facie class case). Second, *post-filing* minority hiring is not dispositive. Whether the Texans' actions in fact defeat class certification or the merits of the case is a determination that should be made on a full record—as it was in Teamsters—not on a defendant's self-serving representations.

## IV. Plaintiff Seeks Discovery of the NFL's Treatment of Colin Kaepernick and Jon Gruden

Plaintiffs seek discovery regarding the treatment of Colin Kaepernick and Jon Gruden, because these situations speak to discrimination and retaliation by Goodell and team owners. Kaepernick was blackballed by team owners after raising concerns of racial inequality; meanwhile, Gruden made grotesquely racist comments and was ousted only when they became public. (Dkt. 274, TAC, ¶¶ 65, 73-74, 77-79, 90-91.) These situations are relevant for the same reasons discussed in Part II. First, they speak to discriminatory animus by decisionmakers: whether Goodell harbors racial or retaliatory animus and whether team owners have deployed their discretion in a common way on other occasions, for example, to lock out Kaepernick or look the other way for Gruden. (See II.A.) Second, as explained in Part II.B, these situations are prior discriminatory and retaliatory acts and thus relevant to individual discrimination claims. Third, these situations speak to the interrelation of the NFL and the teams as relevant to the joint-employer/single-integrated-enterprise inquiry. (See II.C.)

## V. Plaintiff Seeks Discovery Regarding Jeff Pash's Communications about this Lawsuit and the Sham Arbitration

Former NFL General Counsel Pash helped administer the retaliatory "arbitration" and was likely involved in drafting the retaliatory football-oriented arbitration decision (Dkt. 155-

11)[3] and appointing "arbitrator" Peter Harvey and assistant Bill Polian. (See Dkt. 274, TAC ¶¶ 299-302.) He also communicated about the case with the Texans and perhaps others. (Dkt. 336-1, Wilkerson Email.)

The Order's approval of discovery of Pash's communications with the Texans is appropriate, but the denial of discovery of his communications about the case with other third parties and his arbitration-related communications is not. None of these communications likely constitutes "legal advice," because (i) teams and third parties are not Pash's clients and (ii) communications with Goodell related to his role as purported "arbitrator" would have been about business and operations functions of the NFL, not legal advice.

The Second Circuit was clear that "Flores's agreement under the NFL Constitution to submit his statutory claims against the Broncos and the NFL to the unilateral substantive and procedural discretion of the NFL Commissioner—the principal executive of one of Flores's adverse parties—provides for arbitration in name only and accordingly lacks the protection of the FAA." Flores v. N.Y. Football Giants, Inc., 150 F.4th 172, 182 (2d Cir. 2025). Accordingly, arbitral immunity does not shield Pash's actions or communications from discovery. (Dkt. 307, Opp., 54.)

Nor do privilege concerns justify a full-scale denial of discovery. "A party invoking the attorney-client privilege must show…a communication between client and counsel…made for the purpose of obtaining or providing legal advice." See In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "The Second Circuit has made clear that only those communications related to 'legal, as contrasted with business, advice' are protected." TVT Recs. v. Island Def Jam Music

---

[3] Goodell is not an attorney, and it is highly unlikely he reviewed counsel's submissions citing case law and making legal arguments and then himself drafted the football-oriented decision.

Grp., 214 F.R.D. 143, 144 (S.D.N.Y. 2003) (citation omitted).[4] And "[l]egal advice given for the purpose of *preventing* litigation," such as HR dispute resolution, is not protected work product; only "advice given in an *anticipation* of litigation" is. Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 29 F. Supp. 3d 142, 150 (E.D.N.Y. 2014) (cleaned up). Pash's communications at least warrant review to determine whether they constitute legal advice.

**Conclusion**

The Order is contrary to law and should be overruled. Plaintiff should receive the discovery necessary to prove his claims.

Dated: September 11, 2026
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: ______________________________
Douglas H. Wigdor
Michael J. Willemin
David E. Gottlieb
Russell L. Kornblith
Daniel J. Altaras
Noah Jacobs

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
dgottlieb@wigdorlaw.com
rkornblith@wigdorlaw.com
daltaras@wigdorlaw.com
njacobs@wigdorlaw.com

[4] Courts recognize that "[a]pplication of the attorney-client privilege to the corporate context poses 'special problems…because in-house counsel often serve dual roles as legal advisors and business consultants." Complex Sys., Inc. v. ABN AMRO Bank N.V., 279 F.R.D. 140, 150 (S.D.N.Y. 2011).

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*

- and -

**ELEFTERAKIS, ELEFTERAKIS & PANEK**

By: __________/s/______________
John Elefterakis
Nicholas Elefterakis
Raymond Panek
Johnson Atkinson

80 Pine Street, 38th Floor
New York, New York 10005
Telephone: 212-532-1116
Facsimile: 212 532-1176

*Counsel for Plaintiffs*
*Proposed Counsel for the Proposed Class*

**Certificate of Compliance**

The undersigned counsel hereby certifies, pursuant to Local Civil Rule 7.1(c), that the foregoing Memorandum of Law complies with the Local Rule's word-count limitations. This memorandum contains 3462 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

Dated: September 11, 2026.

**WIGDOR LLP**

_______________________________
Russell L. Kornblith