UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE NATIONAL FOOTBALL LEAGUE, et al.,

Defendants.

CIVIL ACTION NO.: 22 Civ. 871 (VEC) (SLC)

**OPINION & ORDER**[1]

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is non-party Korn Ferry's request that the Court maintain under seal a document that Plaintiff Brian Flores ("Mr. Flores") attached as Exhibit A ("Exhibit A") to his opposition to Defendants'[2] motions to dismiss[3] and to his Supplemental Complaint. (Dkt. Nos. 340–41[4] (the "Sealing Request"); see Dkt. Nos. 310-2; 358-1). Mr. Flores opposes the

[1] This Opinion and Order is temporarily being docketed under seal given the confidentiality designations in the parties' filings (see Dkt. Nos. 310–310-3; 358–358-1; 368–368-1), and shall remain under seal until October 7, 2026, the 14-day deadline for filing any objection to this Opinion and Order. See Fed. R. Civ. P. 72(a). If no objection is filed or sealing is not otherwise extended by Court order, this Opinion and Order and Docket Nos. 310, 310-1, 310-2, 310-3, 358, 358-1, 368, and 368-1 will be unsealed. (See § IV, infra).

[2] Defendants refers to Defendants The National Football League (the "NFL"), New York Football Giants, Inc. d/b/a New York Giants (the "Giants"), Denver Broncos Football Club d/b/a Denver Broncos (the "Broncos"), and Houston NFL Holdings, L.P., d/b/a Houston Texans (the "Texans"). Mr. Flores' claims against Defendants Miami Dolphins, Ltd. d/b/a Miami Dolphins, Arizona Cardinals Football Club LLC d/b/a Arizona Cardinals, and Tennessee Titans Entertainment, Inc., d/b/a Tennessee Titans (the "Titans") are currently stayed. (Dkt. No. 311).

[3] Plaintiff Brian Flores' Omnibus Memorandum of Law in Opposition to Defendants NFL, Giants, Texans, and Broncos' Motions to Dismiss the Third Amended Complaint. (Dkt. No. 310-1 (the "Opposition")).

[4] Dkt. No. 340 requests sealing of Exhibit A to the Supplemental Complaint, and Dkt. No. 341 requests sealing of Exhibit A to Mr. Flores' Opposition. (Dkt. Nos. 340–41). Because Korn Ferry advances the same arguments in both letters, we consider them as a single request directed to Exhibit A, regardless of the underlying document to which Mr. Flores attached it. (Dkt. Nos. 340–41).

Sealing Request and the NFL takes no position. (Dkt. Nos. 309; 341 at 2; 368). For the reasons set forth below, the Sealing Request is DENIED.

## II. BACKGROUND

We presume familiarity with the factual and procedural background of this action. See Flores v. N.Y. Football Giants, Inc., 150 F.4th 172 (2d Cir. 2025) ("Flores III"), affirming, 658 F. Supp. 3d 198 (S.D.N.Y. 2023) ("Flores I") and 2023 WL 4744191 (S.D.N.Y. July 25, 2023) ("Flores II"); see also Flores v. Nat'l Football League, No. 22 Civ. 871 (VEC) (SLC), 2026 WL 2547074 (S.D.N.Y. Aug. 28, 2026) ("Flores VI"); Flores v. Nat'l Football League, No. 22 Civ. 871 (VEC), 2026 WL 2044126 (S.D.N.Y. July 15, 2026) ("Flores V"); Flores v. Nat'l Football League, No. 22 Civ. 871 (VEC), 2026 WL 407884 (S.D.N.Y. Feb. 13, 2026) ("Flores IV"). We set forth only the background necessary to analyze the parties' discovery disputes.

Korn Ferry is a "global organizational consulting firm" that, among other things, advises organizations in the executive search process.[5] Korn Ferry has "aided some [NFL] teams in Head Coach candidate searches[,]" including the Las Vegas Raiders (the "Raiders") in 2025. (Dkt. Nos. 310-1 at 18; 368 at 1).

On June 15, 2026, Mr. Flores issued a non-party subpoena to Korn Ferry, which, in turn, produced documents, including Exhibit A. (Dkt. Nos. 340 at 1; 368 at 1). Korn Ferry marked Exhibit A as "Confidential – Subject to a Protective Order" pursuant to the operative protective order. (Dkt. No. 315 at 1; see Dkt. No. 271 (the "Protective Order")). Exhibit A is a slide from a 2024 presentation by Korn Ferry to the Raiders in connection with their Head Coach search. (Dkt. Nos. 310-2 at 2; 340 at 1; 341 at 1; 358-1 at 2; 368 at 1). Exhibit A contains a quote from an

[5] See https://www.kornferry.com/about-us/our-story (last visited Sept. 23, 2026).

executive with a team that formerly employed Mr. Flores in which the executive states that Mr. Flores "may have changed since, but he was the worst hiring decision we've ever made." (Dkt. Nos. 310-2 at 2; 358-1 at 2). In Exhibit A, Korn Ferry also notes that the president of another team "refused to talk about [Mr. Flores]." (Dkt. Nos. 310-2 at 2; 358-1 at 2).

To support his arguments in the Opposition, Mr. Flores attached (under seal) Exhibit A, which he described as containing "extremely troubling . . . racist and retaliatory statements[.]" (Dkt. No. 310-1 at 18). In addition, on July 31, 2026, Mr. Flores informed the Court of his intent to file against the Dolphins the Supplemental Complaint, which he requested to file under provisional seal because he intended to reference Exhibit A. (Dkt. No. 315 at 1). While Mr. Flores did not agree that the Supplemental Complaint should be sealed, he requested that it be sealed pending a showing by Korn Ferry or Defendants that it should remain under seal. (Dkt. No. 315 at 1). On July 31, 2026, the Honorable Valerie E. Caproni permitted Mr. Flores to file the Supplemental Complaint under provisional seal and set a briefing schedule as to any sealing request. (Dkt. No. 319 at 2).

On August 12, 2026, Korn Ferry filed the Sealing Request. (Dkt. Nos. 340–41; see Dkt. No. 313). On September 1, 2026, Mr. Flores filed a letter in opposition. (Dkt. No. 368). On September 17, 2026, Korn Ferry filed a letter in reply. (Dkt. No. 374).

## III. DISCUSSION

### A. Legal Standard

Judicial documents are "presumptively public so that the federal courts have a measure of accountability and so that the public may have confidence in the administration of justice." Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139 (2d Cir. 2016).

Accordingly, the Court is required to "make specific, rigorous findings before sealing the document or otherwise denying public access." Id. at 141. The party seeking to seal judicial documents, therefore, must explain why the information is of such a confidential nature "to overcome the strong presumption of public access." Spectrum Dynamics Med. Ltd. v. GE Healthcare Techs., Inc., No. 18 Civ. 11386 (VSB) (KHP), 2026 WL 931622, at *2 (S.D.N.Y. Apr. 6, 2026) (sealing information "pertain[ing] to price points, internal corporate deliberations, and numerical figures acquired through internal corporate analysis" because that "information is sensitive[,] confidential[,] and proprietary business information[.]"). "[D]ocuments containing proprietary information and sensitive business information are routinely sealed in this [D]istrict." Id. (collecting cases).

In addressing a sealing request, the Court must first consider whether the document is a "judicial document" subject to a presumption of access. Bernstein, 814 F.3d at 139. A "judicial document" or judicial record is one that is "relevant to the performance of the judicial function and useful in the judicial process." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). To determine whether a document is a judicial record, the Court evaluates the "relevance of the document's specific contents to the nature of the proceeding" and the degree to which "access to the [document] would materially assist the public in understanding the issues before the . . . [C]ourt, and in evaluating the fairness and integrity of the [C]ourt's proceedings." Newsday LLC v. Cnty. of Nassau, 730 F.3d 156, 166–67 (2d Cir. 2013).

Second, a finding that the document is a "judicial document" triggers the presumption of public access, and the Court must then "determine the weight of that presumption." Lugosch, 435 F.3d at 119. "The weight of the presumption is a function of (1) 'the role of the material at

issue in the exercise of Article III judicial power'" and (2) 'the resultant value of such information to those monitoring the federal courts,' balanced against 'competing considerations' such as 'the privacy interests of those resisting disclosure.'" Bernstein, 814 F.3d at 142 (quoting Lugosch, 435 F.3d at 119–20). In doing so the Court must "make specific, rigorous findings before sealing the document or otherwise denying public access." Newsday, 730 F.3d at 167 n.15. "The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." In re Parmalat Secs. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009).

**B. Application**

**1. The Parties' Arguments**

Korn Ferry does not dispute that Exhibit A is a judicial document to which the presumption of public access applies. (Dkt. Nos. 340 at 1; 341 at 1). Accordingly, we focus our analysis on the weight to be afforded that presumption. See Lugosch, 435 F.3d at 119.

Korn Ferry argues that it created Exhibit A "in connection with a confidential search engagement with its client, the . . . Raiders[,]" so Exhibit A "is confidential work product that was prepared to facilitate a confidential client relationship and engagement agreement." (Dkt. Nos. 340 at 2; 341 at 2). Korn Ferry also claims that Exhibit A "contains confidential candidate information obtained through confidential references" such that public disclosure "would undermine and impact Korn Ferry's ability to conduct these confidential searches and gather confidential information for its clients as part of these search engagements."

(Dkt. Nos. 340 at 2; 341 at 2). Korn Ferry does not cite any authority for this rationale for sealing Exhibit A.

Mr. Flores responds first that Korn Ferry's "confidential business arrangement" with the Raiders "does not constitute a 'higher value[,]'" and, in any event, Korn Ferry has not made a sufficient showing that Exhibit A contains "trade secrets or bona fide competitive information." (Dkt. No. 368 at 2). Second, Mr. Flores disputes that Exhibit A contains any sensitive or proprietary information about Korn Ferry's search methodology or business processes. (Id.) Third, Mr. Flores argues that any sealing of Exhibit A would insulate from public disclosure "discriminatory and retaliatory considerations directly relevant to [his] claims." (Id. at 3). Fourth, Mr. Flores contends that this case "involves matters of public interest" such that the presumption of public access is strong (id.), citing press reports concerning this action and Exhibit A specifically. (Id. at 3 nn. 3–4)

In reply, Korn Ferry invokes cases recognizing non-parties' privacy interests (Dkt. No. 374 at 1–2), and reiterates that Exhibit A "contains sensitive business information compiled from confidential sources for the purpose of executing a confidential search engagement." (Id. at 1). Korn Ferry argues that confidential searches are "fundamental to [its] business" such that its "privacy interests in protecting its work . . . should outweigh any presumption of public access." (Id. at 2). Finally, Korn Ferry attempts to distinguish the authorities Mr. Flores has cited. (Id. at 2–3).

#### 2. Korn Ferry's Interests Do Not Outweigh The Presumption of Access

As noted above, Korn Ferry bears the burden to demonstrate that Exhibit A should remain sealed. (See § III.A, supra). We find that Korn Ferry has not carried this burden for four reasons.

First, a party opposing disclosure of documents must typically "submit testimony from their employees asserting that the information in their documents was developed at substantial cost, was never disclosed to third parties except pursuant to an agreement to keep the information confidential, and would cause significant economic harm to [them] if the documents were disclosed to competitors." Parmalat, 258 F.R.D. at 248. Korn Ferry has offered no such testimony or other evidence here to support the Sealing Request. (See generally Dkt. Nos. 340–41; 374). Rather, Korn Ferry repeats the conclusory assertion that, essentially, Exhibit A is confidential because it was part of a confidential search during which Korn Ferry spoke to confidential sources. (Dkt. Nos. 340 at 2; 341 at 2; 374 at 1–2). Korn Ferry's "boilerplate statements" provide "almost no factual basis" on which to make a finding that sealing is appropriate. Wells Fargo Bank, N.A. v. Wales LLC, 993 F. Supp. 2d 409, 413–14 (S.D.N.Y. 2014). Nor has Korn Ferry offered "any factual evidence to support either the secrecy or the value of" the information in Exhibit A. Parmalat, 258 F.R.D. at 250. Korn Ferry's failure to make a sufficient evidentiary showing in support of the Sealing Request alone is grounds for denial.

Second, while we recognize the cases Korn Ferry cites in which other courts have granted requests to seal "'sensitive business information from nonparties, obtained often via subpoena,'" Jackpocket, Inc. v. Lottomatrix NY LLC, No. 22 Civ. 5772 (LJL), 2022 WL 17738779, at *2 (S.D.N.Y. Dec. 15, 2022) (quoting Royal Park Inv. SA/NV v. Wells Fargo Bank, N.A., No. 14 Civ. 9764 (KPF) (SN), 2018 WL 739580, at *18 (S.D.N.Y. Jan. 10, 2018)), Korn Ferry has not demonstrated that the candidate search information in Exhibit A is the same type of "business and financial information" that those courts deemed sufficiently sensitive to justify sealing. Jackpocket, Inc., 2022 WL 17738779, at *2. (See Dkt. No. 374 at 1–2). In fact, Exhibit A reveals more about Mr. Flores, who

supports its unsealing, than it does about Korn Ferry's search methodology, which, not surprisingly, involves conversations with people with whom Mr. Flores formerly worked. (Dkt. Nos. 310-2 at 2; 358-1 at 2; see Dkt. Nos. 315; 368). Korn Ferry has not demonstrated how revealing that it conducted those conversations "might harm [its] competitive standing" sufficient to maintain Exhibit A under seal. Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc., No. 07 Civ. 2014 (SWK), 2008 WL 199537, at *8 (S.D.N.Y. Jan. 22, 2008). In addition, Exhibit A reveals no information about the Raiders aside from the unremarkable fact that they engaged an executive search firm for one head coach hiring cycle. (Dkt. Nos. 310-2 at 2; 358-1 at 2). See Bernstein, 814 F.3d at 145 (affirming unsealing of complaint that did "not contain 'confidential' client information"). Accordingly, Korn Ferry has not shown that the presence of any non-party information in Exhibit A outweighs the public's right of access.

Third, while we find it unnecessary at this juncture to adopt Mr. Flores' characterization of the statements within Exhibit A as "discriminatory or retaliatory," we agree that the matters of public concern involved in this action, as evidenced by the frequent media attention, weigh in favor of the public's right of access to Exhibit A. (Dkt. No. 368 at 3 & nn.3–4). See In re Grand Jury Subpoenas to the Off. of the N.Y.S. Att'y Gen'l, No. 25 Misc. 19 (LGS), Dkt. No. 44 at 12 n.7 (S.D.N.Y. Oct. 31, 2025) (finding that press inquiries and articles regarding sealing request "provide[d] additional indicia demonstrating the public interests at stake"); Freeman v. Deebs-Elkenaney, No. 22 Civ. 2435 (LLS) (SN), Dkt. No. 362 at 27 (S.D.N.Y. Aug. 1, 2024) (finding that public attention "only strengthens the need for public access"). The public attention on Mr. Flores' allegations against Defendants thus stands in stark contrast to the video deposition of a student alleging sexual abuse, which was "conduct that [was] not of national or statewide

importance" and therefore appropriately remained under seal in Mirlis v. Greer, 952 F.3d 51, 63 (2d Cir. 2020), on which Korn Ferry also relies. (Dkt. No. 374 at 1).

Finally, to the extent that Korn Ferry is concerned about reputational harm if Exhibit A becomes public, that private interest does not outweigh the right of public access. See Under Seal v. Under Seal, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017) (rejecting argument that revealing ghost-writer's role in writing defendant's book "would severely undermine her credibility" and cause "professional repercussions and personal humiliation"); Parmalat, 258 F.R.D. at 244 (noting that "the fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant" sealing); Gen'l Media, Inc. v. Shooker, No. 97 Civ. 510 (DAB), 1998 WL 401530, at *12 (S.D.N.Y. July 16, 1998) (finding that "the prospect of publicity surrounding th[e] litigation" did "not provide an adequate basis" for sealing). As indicated by the media attention on the fact that Exhibit A is currently under seal, by making the Sealing Request, Korn Ferry may have inadvertently cast Exhibit A as a more exciting document than it will turn out to be. (See Dkt. No. 368 at 3 n.4).

Accordingly, Korn Ferry has not carried its burden to show "countervailing interests sufficient to justify sealing" Exhibit A. Wells Fargo, 993 F. Supp. 2d at 414.

## IV. CONCLUSION

For the reasons set forth above, Korn Ferry's Sealing Request is DENIED. This Opinion and Order and Docket Nos. 310, 310-1, 310-2, 310-3, 358, 358-1, 368, and 368-1 shall remain under seal until October 7, 2026, the 14-day deadline for filing any objection to this Opinion and Order. See Fed. R. Civ. P. 72(a). If no objection is filed or sealing is not otherwise extended by Court

order, this Opinion and Order and Docket Nos. 310, 310-1, 310-2, 310-3, 358, 358-1, 368, and 368-1 will be unsealed.

The Clerk of the Court is respectfully directed to file this Order UNDER SEAL and close Dkt. Nos. 340 and 341.

Dated: New York, New York
September 23, 2026

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**