**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN FLORES, STEVE WILKS, and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,<br><br>*Defendants*. | Case No. 22-CV871 (VEC) |

**<u>RESPONSE TO PLAINTIFF'S OBJECTION TO MAGISTRATE CAVE'S AUGUST 28, 2026 OPINION & ORDER</u>**

Defendant Denver Broncos Football Club ("the Broncos") submit this Response to Plaintiff's Objections to Magistrate Judge Cave's August 28, 2026 Opinion & Order (Dkt. 365) (the "Order").

**PRELIMINARY STATEMENT**

Plaintiff's Rule 72(a) Objections to the Order overwhelmingly address discovery disputes between Plaintiff and the National Football League ("NFL") – not the Broncos. The Broncos are differently situated from the NFL and the other team defendants, and the Order appropriately reflects that distinction.

The *only* open claim against the Broncos is a single Section 1981 disparate treatment claim (the First Cause of Action) arising from one hiring decision made by then-General Manager John Elway in January 2019. (TAC ¶¶ 207-213, 421-425.) Plaintiff conceded that his NYSHRL and NYCHRL claims, including those alleging disparate impact, are untimely, having raised no objection in his opposition to the Broncos' motion to dismiss (Dkt. 310.10.) or at the August 4, 2026 conference. (Aug. 4, 2026 Tr. 80:22–81:6.) As such only the Section 1981 claim remains subject to the Broncos' pending motion to dismiss. (Dkt. 281, 282.) No Title VII pattern-or-practice claims were pled against the Broncos. No retaliation claims were pled against the Broncos.

Prior to entering the Order, Magistrate Judge Cave carefully considered the parties' positions over the course of three conferences and extensive letter briefing. The Order strikes an appropriate balance between Plaintiff's desire for sweeping discovery and the narrow claims actually at issue against the Broncos. Critically, the Broncos have *voluntarily agreed* to produce more discovery than the Order requires, including: (1) full discovery for both the 2016-2017 (Vance Joseph) and 2018-2019 (Vic Fangio) head coach hiring cycles – both cycles in which John Elway was the decision-maker; (2) personnel files for Vic Fangio and Vance Joseph; (3) formal and informal race discrimination complaints for 2018 to the present against John Elway and the Broncos' custodians who participated in the relevant hiring processes; (4) John Elway's calendar for December 2018 and January 2019; etc. (Dkt. 347 at 3.) Plaintiff ignores this and does not explain why he needs more than what the Broncos already have agreed to provide.

Plaintiff's attempt to impose broad discovery obligations on the Broncos should be rejected. The Order is neither clearly erroneous nor contrary to law, and Plaintiff's Objections should be overruled as to the Broncos in their entirety.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a district court reviewing a magistrate judge's order on a nondispositive matter "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "[T]he Supreme Court has held that a finding is 'clearly erroneous' if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Lyondell-Citgo Refining, LP. v. Petroleos De Venezuela, S.A.*, 2005 WL 356808, at *2 (S.D.N.Y. Feb. 15, 2005) (citations omitted). "[A] decision is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ross v. Finzer*, 2026 WL 2020962, at *1 (S.D.N.Y. July 13, 2026) (quoting *Siani v. Nassau Cmty. Coll.*, 2024 WL 4449404, at *2 (E.D.N.Y. Oct. 1, 2024)). This is a "highly deferential standard of review" that affords the magistrate judge "broad discretion in resolving discovery disputes." *Lyondell-Citgo Refining,* 2005 WL 356808, at *2 (quoting *Derthick v. Bassett-Walker Inc.,* 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992)). "Thus, a party seeking to overturn or modify a discovery order bears a heavy burden." *Id.*

Plaintiff barely acknowledges this deferential standard. His Objections fail to demonstrate that the Magistrate Judge's careful, well-reasoned rulings – developed over the course of three conferences and extensive briefing – were clearly erroneous or contrary to law. As set forth below, Plaintiff cannot carry his "heavy burden" of overturning the Order. *Id.*

## ARGUMENT

### I. THE BRONCOS ARE DIFFERENTLY SITUATED AND THE ORDER PROPERLY REFLECTS THAT.

The scope of discovery must be assessed against the claims actually asserted against the Broncos, which are extraordinarily narrow. The lone claim against the Broncos is a Section 1981 disparate treatment claim based on one hiring decision made by one decision-maker (John Elway)

in January 2019. (TAC ¶¶ 207–213, 421–425.) Section 1981 disparate treatment is an intentional discrimination claim, and "[b]ecause 'intent is the critical issue,' . . . 'only a comparison between persons evaluated by the same decision-maker is probative of discrimination.'" *Smith v. Xerox Corp.*, 196 F.3d 358, 370-71 (2d Cir. 1999); *see also Sundaram v. Brookhaven Nat'l Lab.*, 1996 WL 563829, at *2 (E.D.N.Y. 1996) ("a statistical examination of decision-making by others not involved in the challenged decision . . . would usually not be probative" even in a pattern-or-practice case).

Discovery relevant to an alleged systemic case against the NFL, based on the inaccurate assumption that it somehow controls the head coach hiring decisions of member teams, is neither relevant nor proportional to a disparate treatment claim against the Broncos. The TAC identifies no Broncos-specific "standard operating procedure," no Broncos-specific policy, and no Broncos-related statistics supporting systemic claims. (*See* TAC ¶¶ 121, 124 (acknowledging that each team's hiring decisions are made in its "unfettered" "subjective" "discretion").) Plaintiff also has no Title VII pattern-or-practice claim, no retaliation claim, and no NYSHRL or NYCHRL claim against the Broncos.

Even in a putative class action, discovery "must be conducted with an eye to relevance and proportionality and bear some relationship to the claims of the named Plaintiff." *Chow v. SentosaCare*, LLC, 2020 WL 13076004, at *1 (E.D.N.Y. June 3, 2020) (quoting *Chow v. SentosaCare, LLC*, 2020 WL 559704, at *3 (E.D.N.Y. Jan. 23, 2020)); *See also General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982). Discovery also should be confined to the type of employment action alleged; here that is failure to hire, not performance or termination. *Vuona v. Merrill Lynch & Co.*, 2011 WL 5553709, at *3 (S.D.N.Y. Nov. 15, 2011) (citing cases). This is the lens by which the Court must review Magistrate Cave's Order – a lens repeatedly ignored by Plaintiff.

Moreover, the post-Elway hiring cycles involved completely different ownership and decision-makers. The Broncos' ownership changed hands, and different individuals made the hiring decisions for those later cycles.[1] Discovery from post-Elway cycles would shed no light on John Elway's intent in January 2019 and would impose substantial, unjustified burdens on the Broncos. *See Cronas v. Willis Grp. Holdings Ltd.*, 2008 WL 4548861, at *2 (S.D.N.Y. Oct. 8, 2008) (denying discovery beyond the relevant decision-makers where "evidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that plaintiffs had suffered discrimination"); *Tse v. UBS Fin. Servs., Inc.*, 2005 WL 1949961, at *1-2 (S.D.N.Y. Aug. 15, 2005) (limiting discovery to decision-makers). The Order properly accounts for the narrow claims against the Broncos, and Plaintiff offers no legitimate reason to depart from that measured approach.

## II. PLAINTIFF'S SPECIFIC OBJECTIONS FAIL TO DEMONSTRATE CLEAR ERROR AS TO THE BRONCOS

### *A. The Order Properly Limited Complaint Discovery (Plaintiff's § II)*

Plaintiff contends that the Order limited discovery of other discrimination complaints to "complaints by any head coach or head coach candidate alleging race discrimination." (Dkt. 373 at 1). However, Plaintiff fails to advise the Court that the Broncos agreed to produce formal or informal complaints of race discrimination from 2018 to the present made against those involved in the interview cycle at issue, including John Elway. This gives Plaintiff "the common-decision-maker pathway" evidence contemplated by *Wal-Mart.* (Dkt. 373 at 2.) Plaintiff does not address this agreement nor explain why it is insufficient for his lone claim against the Broncos.

There is no legal basis for Plaintiff to demand all complaints of discrimination made by any Broncos employee, regardless of the alleged perpetrator. (Dkt. 373 at 1.) Complaints against

---

[1] These facts are widely reported matters of public record for which no discovery is needed.

persons not involved in the hiring cycle at issue have no bearing on John Elway's manner of exercising his discretion. Similarly, such complaints cannot "suggest delegated discretion and a common, discriminatory manner of exercising it" (*Id.*, p. 3.) because there is no alleged commonality amongst the discretion being delegated, the manner of exercising it, nor even the employment action at issue. Plaintiff affirmatively dismisses such commonality – he does not allege that the Broncos have a company-wide discriminatory policy, instead alleging that the hiring decision at issue was the result of "unfettered" "subjective" "discretion." (TAC ¶¶ 121, 124.)[2] Simply put, this discovery is untethered to Plaintiff's allegations against the Broncos and, therefore, outside the scope of discovery.

The Order's limitation on complaint discovery is consistent with the approach taken in *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557 (S.D.N.Y. 2013). As the Order notes, Judge Francis rejected the request for discovery beyond the plaintiff's employment unit. (Dkt. 365 at 11-13.) Judge Francis found that "the likelihood that discovery of complaints by employees in the non-revenue divisions will be overly burdensome outweighs the scant possibility of uncovering admissible evidence" and limited discovery because "the compensation and evaluation models in the other divisions [were] significantly different from those in the revenue-generating divisions in which the plaintiffs worked." (*Id.* at 12.) The Magistrate Judge applied the same principle here. Just as the non-revenue divisions in *Chen-Oster* were governed by different compensation models, so too are non-head-coach employees subject to fundamentally different hiring processes than head coaches. As the Order observed, "NFL head office employees and non-coach Team employees are

[2] The fact that the NFL has policies that impact the process by which head coaching candidates are identified or interviewed – *e.g.*, dictating the timing of interviews or requiring the interviewing of a certain number of diverse candidates – is irrelevant because Plaintiff admits that none of those policies impact the discretion employed by each team in deciding which head coach to hire. Elway's unfettered, subjective discretion in deciding which head coach to hire in January 2019 is what is at issue in this litigation and that, therefore, sets the scope of discovery.

not subject to the same hiring decision-making process as head coaches." (*Id.* at 13.) Plaintiff does not dispute this fact.

Plaintiff next cites to a string of cases contending that complaints relating to other supervisors and other employees are relevant to Plaintiff's individual claims. (Dkt. 373 at 4.) These citations are either misleading or off point. For example, Plaintiff cites to *Nat'l R. R. Passenger Corp.*, for the use of past acts as "background evidence." However, the Second Circuit confirmed that "relevant background evidence" must relate to the plaintiff and the manager at issue, such as "statements by a decisionmaker or earlier decisions typifying the retaliation involved." *Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 176–77 (2d Cir. 2005); *see also Kocar v. Port Authority of New York and New Jersey*, 2022 WL 624070, at *9 (S.D.N.Y. March 2, 2022) (Excluding background evidence involving different managers as those past acts "shed no light on [the managers'] intent, and do not further illustrate the general climate at Port Newark."); *Bernstein v. New York City Department of Education*, 2020 WL 6564809, at *4 (S.D.N.Y. Nov. 9, 2020) (characterizing the plaintiff's grievances as "background evidence").

*Moll* is similarly off point. The discovery at issue related to the alleged basis for the plaintiff's termination – a purported reduction in force. Records related to others impacted by the same reduction in force as the plaintiff were relevant and thus discoverable, but information and documents related to other reductions in force from prior or subsequent years were not. *Moll v. Telesector Resources Group, Inc*., 760 F.3d 198, 204 (2d Cir. 2014). Inquiry into post-Elway hiring cycles is similar to the unrelated reductions in force rejected in *Moll*. *See Chow*, 2020 WL 13076004, at *1 (discovery "must be conducted with an eye to relevance and proportionality and bear some relationship to the claims of the named Plaintiff."). *Cf Frazier v. Morgan Stanley & Co*., 2021 WL 2709250 (S.D.N.Y. 2021) (limiting discovery to "the branches and offices" where

plaintiffs worked because broader discovery would be "disproportionate to Plaintiffs' remaining individual disparate treatment claims");

*Chin* also does not support broader discovery. In *Chin*, while the court acknowledged that pattern evidence may be helpful as background in an individual disparate treatment case, the court was addressing the relevance of statistical evidence and testimony about the defendant's practices. The case did not involve the proper scope of discovery or proportionality, and thus, *Chin* does not stand for the proposition that a plaintiff is entitled to open-ended discovery relating to individuals not involved in the challenged employment decision. *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 149 (2d Cir. 2012). Finally, in *Lieberman*, the "general patterns of discrimination" referenced were statistics and charts showing the "employment history of persons hired." *Lieberman v. Gant*, 630 F.2d 60, 68 (2d Cir. 1980). The NFL has already agreed to provide such information. (Aug. 4, 2026 Tr. 27:1–7.)

### ***B. The Order Properly Limited Discovery to the John Elway Hiring Cycles (Plaintiff's § III)***

Plaintiff seeks discovery from "the entire class period;" however, the Broncos are not subject to Plaintiff's Title VII pattern or practice claims. Even so, the Order already provides sufficient class-related discovery tethered to the allegations in the TAC. The Order properly limited the Broncos' discovery to the 2016-2017 and 2018-2019 hiring cycles, both of which involved John Elway as the decision-maker. This covers the 2018-2019 cycle in which Plaintiff was a candidate, and the immediately preceding 2016-2017 cycle. These cycles provide direct context for evaluating Elway's intent. (Dkt. 347 at 3.)

Indeed, courts routinely limit discovery to the relevant decision-makers, even in class action cases and cases alleging systemic discrimination. *See Chen-Oster*, 293 F.R.D. at 567-68 (putative class alleging organization-wide gender discrimination where complaint discovery was

limited by the court to the same revenue-generating divisions as the putative class, excluding divisions using "significantly different" compensation models); *Cronas v. Willis Grp. Holdings Ltd.*, 2008 WL 4548861, *2 (S.D.N.Y. 2008) (putative class where court denied nationwide discovery because decisions were made locally, holding that "evidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that plaintiffs had suffered discrimination"); *Vuona v. Merrill Lynch & Co.*, 2011 WL 5553709, at *3 (S.D.N.Y. 2011) (multi-plaintiff practice case where discovery about complaints was limited to managers with "supervisory or evaluative authority" over plaintiffs); *Barella v. Village of Freeport*, 296 F.R.D. 102 (E.D.N.Y. 2013) (court allowed broader discovery in case alleging systemic discrimination only because a single identified decision-maker personally controlled all hiring decisions throughout his tenure, thereby using the same-decision-maker principle in expanding discovery to those impacted by that same decision-maker).

Here, the Broncos will be producing two full hiring cycles decided by the same decision-maker (Elway), as well as formal and informal race discrimination complaints against that decision-maker and other custodians involved in the relevant decision. Such complaints will be produced from 2018 to the present. And, through the NFL's league-wide production, cross-team demographic data for all 32 teams that Plaintiff claims is needed for the *Dukes* "common mode" inquiry, will be supplied. (Aug. 4, 2026 Tr. 27:1–7). This is proportional class discovery. Discovery into post-Elway cycles would not advance this inquiry. The Order also directed the Broncos to ascertain whether they have policies and procedures that applied to other cycles (Order at 24, 27, 30). While Plaintiff objects to this portion of the Order, he offers no alternative proposal and refused to make such an offer during the September 9 hearing. (Sept. 9, 2026 Tr. 89:21-25, 91:6-24).

Plaintiff's reliance on *Wal-Mart*, *Teamsters*, and *Robinson* does not compel a different result. The allegations in the TAC do not call for an intra-team inquiry requiring expansion into other hiring cycles within the Broncos. Each defendant team is producing its own hiring-cycle data, and the NFL is producing league-wide demographics for all 32 teams. Expanding Broncos-specific discovery into other cycles does not advance the cross-team analysis Plaintiff claims is needed to assess whether the teams exercise a common mode of decision-making among them– it merely adds intra-team data untethered to the claims against the Broncos. As the Magistrate Judge recognized, the discovery the Broncos have agreed to produce is proportional to the needs of the case and bears some relationship to Mr. Flores' claims against the Broncos. (Dkt. 365 at 27.)

## III. THE MAGISTRATE JUDGE PROPERLY EXERCISED HER DISCRETION UNDER RULE 26(b)(1)

The Objection pays proverbial "lip service" to proportionality, incorrectly suggesting that proportionality cannot limit the scope of discovery, and arguing that the Magistrate Judge's "reliance on proportionality without understanding the volume of complaints effectively prejudges that there must be many" which proves discrimination is "a standard operating procedure." (Dkt. 373 at 5; *see also id.* at 6-7.) These arguments misstate the law and are off point.

Rule 26(b)(1) expressly requires courts to consider whether discovery is "proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This addition to Rule 26 was intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality *before* ordering production

of relevant information." *Walker v. H & M Henner & Mauritz, L.P.*, 2016 WL 4742334, at *2 (S.D.N.Y. Sept. 12, 2016) (cleaned up) (emphasis added).

This is not simply a question of volume. Proportionality is applied to limit even small productions – such as a "limited scope of documents" regarding an employee's prior employment and educational history – when the proponent of the discovery cannot establish that the discovery is proportional to the needs of the case. *Id.* at *1. Thus, the question is not what the volume of an eventual production might look like – the question is whether, all things considered, the eventual production is worth the time and effort needed to produce it. Contrary to the Objection, it is Plaintiff's burden to initially address proportionality. *Johnson v. United States*, 832 F.Supp.3d 290, 296 (S.D.N.Y. 2026). He makes no effort to do so, likely because it is a losing argument.

Plaintiff has demanded every formal or informal discrimination complaint lodged by any Broncos employee from 2018-present and documents regarding every hiring decision made by the Broncos from 2018-present. The only way to locate responsive materials, especially informal complaints, is to collect ESI from every single Broncos' employee from 2018-present and run search terms through those materials. (*See* Sept. 9, 2026 Tr. 45:24-46:13.) Based on the volumes currently collected, the Broncos estimate this collection would involve more than 100 TB of data and the review of more than 1,000,000 documents.[3] Plaintiff demands this extensive undertaking despite the plethora of case law militating against the discovery sought, and despite the fact that

[3] The Broncos have collected almost 2 TB of data from the six (6) agreed upon custodians thus far. It has provided two (2) rounds of hit reports to Plaintiff showing that based on the limited custodians, date ranges, and search terms currently proposed, the Broncos will review nearly 100,000 documents. (*See* Dkt. 347-2.) This is a significant volume of documents given that this case relates to one claim, involving one hiring decision in January 2019. It is no great leap to extrapolate that collection and review will hit 100+ TB and more than 1,000,000 documents if the Broncos are required to collect ESI from 300+ employees. Given that search term hit reports have been provided to Plaintiff (twice), the Broncos have made a showing as to burden. Plaintiff is aware of the volumes currently involved and can extrapolate what volumes might look like under his demands just as the Broncos did. Thus, Plaintiff could have addressed volumes and proportionality in his Objection. He simply chose not to.

his claims against the Broncos boil down to a single interview. Proportionality is a meaningless requirement if it does not apply in cases like this.

The Magistrate Judge was obligated to consider proportionality, and she did so carefully and correctly after conducting three conferences, reviewing extensive letter briefing from all parties, and performing the careful balancing called for in Rule 26. The Order appropriately tailors discovery as to the Broncos to the claims actually asserted against the Broncos. That is precisely the type of exercise that Rule 26(b)(1) contemplates, and Plaintiff fails to demonstrate any clear error in the Magistrate Judge's analysis.

**IV. PLAINTIFF'S REQUEST FOR A MOTION *IN LIMINE* SHOULD BE REJECTED**

Throughout his Objection, Plaintiff argues that if he is not permitted to obtain the discovery demanded, the Defendants should be "estopped" from making arguments later in the litigation. (*See, e.g.*, Dkt. 373 at 3). It is grossly premature for the Court to determine what arguments should be permitted at some later date in this case. It is a near certainty that Defendants will argue contrary to Plaintiff's arguments and evidence. That fact does not warrant the expansion of discovery beyond the confines of Rule 26 and does not evidence that the Order was issued in "clear error."

**CONCLUSION**

For the foregoing reasons, the Magistrate Judge's Order is neither clearly erroneous nor contrary to law. After extensive argument from the parties, the Magistrate Judge appropriately balanced the breadth of Plaintiff's discovery demands against the narrow claims actually asserted against the Broncos, and fails to meet the "heavy burden" required to overturn a magistrate judge's discovery order under Rule 72(a). Additionally, Plaintiff fails to address the production the Broncos voluntarily agreed to make or address why that production is insufficient. The Court should overrule Plaintiff's Objections as to the Denver Broncos Football Club in their entirety.

Dated: September 25, 2026

**KUTAK ROCK LLP**

By: */s/ Reid A. Page*
Reid A. Page (admitted *pro hac vice*)
Marcia A. Washkuhn (admitted *pro hac vice*)
Anna M. Berman (admitted *pro hac vice*)
Tara A. Leesar (admitted *pro hac vice*)
2001 16th Street, Suite 1800
Denver, Colorado 80202
Telephone: (303) 297-2400
reid.page@kutakrock.com
marcia.washkuhn@kutakrock.com
anna.berman@kutakrock.com
tara.leesar@kutakrock.com

*Attorneys for Defendant Denver Broncos Football Club, d/b/a Denver Broncos*