**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRIAN FLORES, STEVE WILKS and RAY HORTON, as Class Representatives, on behalf of themselves and all others similarly situated,

Plaintiffs,

- v. -

THE NATIONAL FOOTBALL LEAGUE; NEW YORK FOOTBALL GIANTS, INC. d/b/a NEW YORK GIANTS; MIAMI DOLPHINS, LTD. d/b/a MIAMI DOLPHINS; DENVER BRONCOS FOOTBALL CLUB d/b/a DENVER BRONCOS; HOUSTON NFL HOLDINGS, L.P. d/b/a HOUSTON TEXANS; ARIZONA CARDINALS FOOTBALL CLUB LLC d/b/a ARIZONA CARDINALS; TENNESSEE TITANS ENTERTAINMENT, INC. d/b/a TENNESSEE TITANS and JOHN DOE TEAMS 1 through 26,

Defendants.

Docket No. 22-cv-00871 (VEC)

**DEFENDANT THE NATIONAL FOOTBALL LEAGUE'S OPPOSITION TO PLAINTIFF'S RULE 72(A) OBJECTIONS TO MAGISTRATE JUDGE CAVE'S DISCOVERY ORDER**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000

*Attorneys for Defendant the National Football League*

Dated: September 25, 2026

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ........................................................................................................... 2

I. Denying Discovery of Alleged Discrimination at the NFL League Office or By Non-Head Coach Club Employees Was Not Clear Error ........................................ 2

II. Denying Discovery into Incidents Involving Colin Kaepernick and Jon Gruden Was Not Clear Error ........................................................................................ 8

III. The Ordered Custodial Searches of the NFL's Commissioner and General Counsel Were Not Clear Error ........................................................................................ 9

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Assured Guar. Mun. Corp.* v. *UBS Real Est. Sec. Inc.*,
2013 WL 1195545 (S.D.N.Y. Mar. 25, 2013) ....9

*Benedict* v. *Manfred*,
2026 WL 836679 (S.D.N.Y. Mar. 26, 2026) ....7

*Blackrock Allocation Target Shares* v. *Bank of New York Mellon*,
2018 WL 2215510 (S.D.N.Y. May 15, 2018) ....10

*Burger* v. *New York Inst. of Tech.*,
94 F.3d 830 (2d Cir. 1996)....7

*Chen-Oster* v. *Goldman, Sachs & Co.*,
293 F.R.D. 557 (S.D.N.Y. 2013) ....3, 4, 6

*Copantitla* v. *Fiskardo Estiatorio, Inc.*,
2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010)....7

*Cronas* v. *Willis Grp. Holdings Ltd.*,
2008 WL 4548861 (S.D.N.Y. Oct. 8, 2008) ....3, 6

*Curtis* v. *Citibank, N.A.*,
70 Fed. Appx. 20 (2d Cir. 2003) ....4

*Delancy* v. *Wells*,
2025 WL 1009415 (S.D.N.Y. Apr. 4, 2025)....4

*Elisa W. by Barricelli* v. *City of New York*,
2018 WL 6695278 (S.D.N.Y. Dec. 20, 2018) ....8

*Fort Worth Employees' Ret. Fund* v. *J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) ....9

*Hill* v. *Major League Soccer*,
2024 WL 3361216 (S.D.N.Y. July 10, 2024) ....7

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
336 F.R.D. 400 (S.D.N.Y. 2020) ....2, 6

*Lieberman* v. *Gant*,
630 F.2d 60 (2d Cir. 1980)....7

*Moll* v. *Telesector Res. Grp., Inc.*,
760 F.3d 198 (2d Cir. 2014)....................7

*Mumin* v. *City of New York*,
2026 WL 2620238 (S.D.N.Y. Sept. 4, 2026)....................2, 4

*Quaratino* v. *Tiffany & Co.*,
71 F.3d 58 (2d Cir. 1995)....................7

*Rifkinson* v. *CBS Inc.*,
1995 WL 614565 (S.D.N.Y. Oct. 18, 1995)....................6

*Sasikumar* v. *Brooklyn Hosp. Ctr.*,
2011 WL 1642585 (E.D.N.Y. May 2, 2011)....................3

*Suggs* v. *Cap. Cities/ABC, Inc.*,
122 F.R.D. 430 (S.D.N.Y. 1988)....................7

*Wal-Mart Stores, Inc.* v. *Dukes*,
564 U.S. 338 (2011)....................4, 5

*White* v. *Cnty. of Suffolk*,
2022 WL 1154839 (E.D.N.Y. Apr. 19, 2022)....................8

## PRELIMINARY STATEMENT

Flores's Objection falls far shy of the exacting standard to overturn Judge Cave's well-reasoned and thorough discovery order.

While Defendants' motions to dismiss remain pending, Flores has seized the opportunity to seek expansive discovery from the NFL and the defendant clubs that goes well beyond what is relevant or proportional to his claims, even assuming they were to survive. Over the past two months, Judge Cave has devoted substantial effort to working with the parties to resolve their discovery disputes, holding four conferences (each lasting 2–3 hours and together generating over 400 transcript pages). Judge Cave also requested and considered multiple rounds of briefing before issuing discovery orders. During that process, Judge Cave repeatedly made clear that Flores has not been "realistic about what's not overly broad and unduly burdensome and what is really necessary to prove [his] case," ECF No. 375 ("Sept. 9 Tr.") at 13:2–4; that he has "lost perspective on how to focus on what is relevant and what is achievable," ECF No. 366 ("Aug. 14. Tr.") at 92:7–8; and that there must be a "limiting principle" to his discovery requests, *id.* at 36:7–8; ECF No. 362 ("Aug. 21 Tr.") at 10:12–14. Because this case has been brought by "individuals who didn't get head coaching jobs" and are asserting purported race discrimination, discovery must be focused on "the coaching process, the coach hiring process, and not, however unfortunate it may be, every incident of racial discrimination that may have happened throughout the entire NFL." ECF No. 337 ("Aug. 4 Tr.") at 22:12–14.

Consistent with these limiting principles, Judge Cave issued a meticulous and well-supported 36-page order that defined a reasonable and proportional scope of discovery focused on the hiring and employment of head coaches by member clubs. ECF No. 365 (the "Order"). Her decision resolved numerous disputes, finding in favor of Flores on certain issues (to which the NFL has not objected) and for the NFL and defendant clubs on others. While Flores might be

disappointed with the portions of the Order where he did not prevail, the Order is by no means "clearly erroneous or contrary to law," as is required for his Objection to be sustained. His repackaging of arguments he made to Judge Cave is nothing more than a Hail Mary attempt to have this Court reconsider Judge Cave's discovery decisions, over which she has broad discretion. For the following reasons, the Objection is meritless and Judge Cave's Order should be affirmed.

## ARGUMENT

Magistrate Judges "are afforded broad discretion in resolving discovery disputes," and the district court "must affirm" a Magistrate Judge's discovery order unless it is "clearly erroneous or contrary to law." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403 (S.D.N.Y. 2020). An order is clearly erroneous "only if the reviewing court is left with the definite and firm conviction that a mistake has been committed," and is contrary to law only if "it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Mumin* v. *City of New York*, 2026 WL 2620238, at *2 (S.D.N.Y. Sept. 4, 2026). This is a "highly deferential" standard where "the objector carries a heavy burden." *Id.* Flores comes nowhere close to meeting this high bar.

### I. Denying Discovery of Alleged Discrimination at the NFL League Office or By Non-Head Coach Club Employees Was Not Clear Error

The NFL has agreed to produce documents in its possession related to allegations of race discrimination by any head coach or head coach candidate at any club. Flores, however, has continued to ask for far more, seeking documents related to any allegation or complaint of race discrimination (i) made "against [Commissioner] Goodell and his direct reports," (ii) that concern "systemic" race discrimination at the League Office; or (iii) made by any club employee regardless of seniority, admittedly going so far as to include a club's "janitors." Obj. 1; Aug. 4 Tr. at 40:4–8. Such expansive discovery—which seeks discrimination complaints from the highest to lowest

levels of League and club employees—is inconsistent with what is permitted in putative class action employment discrimination cases, where discovery into claims of other acts of discrimination within an organization "is often limited to a plaintiff's employment department or unit." *Chen-Oster* v. *Goldman, Sachs & Co.*, 293 F.R.D. 557, 567 (S.D.N.Y. 2013); *Sasikumar* v. *Brooklyn Hosp. Ctr.*, 2011 WL 1642585, at *4 (E.D.N.Y. May 2, 2011). That is because "[e]vidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that plaintiffs had suffered discrimination." *Cronas* v. *Willis Grp. Holdings Ltd.*, 2008 WL 4548861, at *2 (S.D.N.Y. Oct. 8, 2008). Here, Flores alleges he was denied head coach positions at certain defendant clubs for discriminatory reasons. Flores concedes that head-coach hiring decisions are "unfettered" and "discretionary" club decisions, ECF No. 274, ¶ 145, and does not dispute that the club decisionmakers for hiring head coaches differ from the club decisionmakers who hire other coaches, other club employees, and, of course, employees of the League who are hired by League employees.

After hearing extensive argument and evaluating letter briefs on these issues, Judge Cave ruled—across almost 10 pages of her Order—that Flores was not entitled to discovery from the NFL beyond documents concerning complaints or allegations "by any head coach or head coach candidate alleging race discrimination." Order 13. Judge Cave explained that it was undisputed that "NFL head office employees and non-coach Team employees are not subject to the same hiring decision-making process as head coaches," such that expanding discovery into discrimination complaints beyond head coaches would be disproportional. *Id.* 13–14. In addition, Judge Cave ordered the NFL to produce any "policies and procedures regarding how it receives, records, organizes, maintains, or investigates complaints of race discrimination," which she found

"address[ed] Plaintiffs' demands for discovery regarding their contention that the NFL and the Teams are a single or joint employer." *Id*.

Flores does not meet the "heavy burden" of showing this decision was "clearly erroneous or contrary to law." *Mumin*, 2026 WL 2620238, at *2.

*First*, Flores mistakenly invokes *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011), to argue he is entitled to discrimination complaints by non-head coaches because he must demonstrate commonality at class certification. Obj. 2–3. But *Wal-Mart*—which *denied* certification of a class seeking to challenge employment decisions made by different decisionmakers across the organization—was not a case regarding the scope of discovery and does not speak to what discovery is permissible regarding alleged discrimination disconnected from the putative class. The cases that *do* speak to the proper scope of discovery (including *Chen-Oster*, upon which Flores primarily relies) provide—consistent with Judge Cave's Order—that discovery should be limited to discrimination complaints concerning the same employment units or decisionmakers as plaintiff. *Chen-Oster*, 293 F.R.D. at 567; *Curtis* v. *Citibank, N.A.,* 70 Fed. Appx. 20, 24 (2d Cir. 2003) ("[T]he district court acted within its discretion in rejecting plaintiffs' sweeping discovery request for all formal and informal complaints of racial and sexual harassment and discrimination throughout the company, and in limiting discovery to the plaintiffs' supervisors and to their division."); *Delancy* v. *Wells*, 2025 WL 1009415, at *4 (S.D.N.Y. Apr. 4, 2025) (courts "typically cabin the discovery to complaints involving the same type of conduct about which the plaintiff complains and to complaints in the same work unit, location or event involving the same alleged wrongdoer."). This is fully aligned with Judge Cave's decision to limit discovery of other complaints of discrimination to head coaches and head coach candidates, and this principle

necessarily applies here, where, at least with respect to League employees, the decisionmakers work not in different divisions or units, but for entirely separate employers.

In nevertheless arguing that he needs further discovery to pursue *Wal-Mart's* requirements for commonality, Flores overstates the nature of his claims. Obj. 2–3. To that end, Flores asserts that he is entitled to any discrimination complaints made against Commissioner Goodell or his direct reports to show repeated "animus" from the "same supervisor." *Id.* But there is no allegation that any League employee—Commissioner Goodell, his direct reports, or anyone else—supervised any head coach or was otherwise a decisionmaker in any challenged employment decision. In fact, Flores's Complaint concedes the opposite: it alleges that the owners and executives of each club exclusively make the "discretionary" decisions of who to hire as head coach for their club. ECF No. 274, ¶ 145. Flores nowhere explains how any complaints of alleged discrimination at the League Office could be probative of supposed discrimination in the clubs' hiring of head coaches.

Flores also argues discrimination complaints by club employees other than head coaches "may suggest delegated discretion and a common, discriminatory manner of exercising it." Obj. 3. To start, *Wal-Mart* states that having a "'policy' of *allowing discretion* by local supervisors over employment matters . . . is just the opposite of a uniform employment practice that would provide the commonality needed for a class action," 564 U.S. at 355 (emphasis original), which cuts against Flores's stated need for this discovery. In any event, here, there is no "discretion" to "delegate"—each individual club hires and employs its own employees. And Flores ignores that he already will receive any documents in the NFL's possession as to purported discrimination against head coaches and head coach candidates, which, if it exists, would be sufficient for him to attempt to demonstrate commonality for any class-wide claim he has standing to assert. Flores does not credibly argue that it was clear error for Judge Cave to find that expanding the scope of

discovery beyond head coach-related discrimination complaints was not proportional. With respect to allegations of discrimination concerning assistant coaches, discovery is not relevant or proportional because those individuals are generally hired and supervised *by head coaches* and therefore are subject to "significantly different" management and supervision than head coaches. *Chen-Oster*, 293 F.R.D. at 567–68. And Flores cannot defend his requests as to employees outside of a club's coaching staff (such as locker room attendants), who are not "similarly situated" to head coaches in any respect. *Rifkinson* v. *CBS Inc.*, 1995 WL 614565, at *1 (S.D.N.Y. Oct. 18, 1995); Aug 4. Tr. at 21:25–22:5 (Judge Cave explaining to Flores that "the claims here are by individuals who didn't get head coaching jobs. You are not bringing claims on behalf of players. You are not bringing claims on behalf of people who worked in the locker room and alleged that [] they were discriminated on the basis of their race.").[1]

*Second*, Flores argues that this discovery may reveal "discriminatory patterns" across the League and clubs for the purposes of his individual claims, Obj. 4–5, but again fails to explain why the discovery he will be receiving related to head coaches and head coach candidates would not be enough for such purposes. Nor does Flores address the lack of relevance of alleged discrimination of individuals other than head coaches, who are not similarly situated to head coaches in material respects. *Cronas*, 2008 WL 4548861, at *2 ("[e]vidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that plaintiffs had suffered discrimination."). Each of Flores's cited cases is inapposite. In

---

[1] Flores argues that if his Objection is overruled, "Defendants should be estopped" from making certain arguments when opposing class certification. Obj. 4. Flores cites no authority (and the NFL is aware of none) that supports the proposition that a party who loses a motion to compel is somehow permitted to receive a premature order foreclosing a party from making an argument later in the case based on the absence of record evidence. In any event, Flores did not make this request before Judge Cave, and cannot raise it now. *In re Keurig*, 336 F.R.D. at 405 ("[n]ew arguments and factual assertions cannot properly be raised for the first time in objections, and indeed may not be deemed objections at all.").

*Quaratino* v. *Tiffany & Co.*, 71 F.3d 58, 62, 65 (2d Cir. 1995), the court considered testimony regarding other pregnant employees who worked *under the same supervisor* and experienced the same type of alleged discrimination. In *Lieberman* v. *Gant*, 630 F.2d 60, 69 (2d Cir. 1980), the court considered the admissibility of evidence regarding other employees in the *same department*, but upheld the finding that it was inadmissible. *Moll* v. *Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014), is distinguishable because it involved a reduction in force, which often involves comparing employees in similar roles to determine whether the RIF criteria were consistently applied throughout the organization, and is treated differently than cases asserting other adverse employment actions. *See Burger* v. *New York Inst. of Tech.*, 94 F.3d 830, 833 (2d Cir. 1996).

*Third*, Flores is wrong that non-head coach discrimination complaints would be probative of his indirect employer theories. The relevant inquiry in those contexts is control over "employment matters ***related to the person claiming discrimination***," which Flores has failed even to allege. *Hill* v. *Major League Soccer*, 2024 WL 3361216, at *4 (S.D.N.Y. July 10, 2024); *Benedict* v. *Manfred*, 2026 WL 836679, at *5 (S.D.N.Y. Mar. 26, 2026); ECF No. 285 at 11–17; ECF No. 353 at 2–7. Discovery into discrimination complaints asserted by those in positions other than head coach therefore has no relevance to control in this context. *Suggs* v. *Cap. Cities/ABC, Inc.*, 122 F.R.D. 430, 431 (S.D.N.Y. 1988). Flores also ignores that Judge Cave has ordered that if the NFL maintains any policies for receipt or investigation of club-related discrimination complaints, it must produce those to "accommodate Plaintiffs' professed need for evidence" on the single and joint employer issues. Order 14–15; *Copantitla* v. *Fiskardo Estiatorio, Inc.*, 2010 WL 1327921, at *11 (S.D.N.Y. Apr. 5, 2010) ("plaintiffs must serve . . . discovery requests narrowly tailored to information regarding [defendant's] potential status as a joint employer.").

*Finally*, Flores mischaracterizes the Order by wrongly asserting that Judge Cave "resist[ed] binding authority" that Flores cited, when she noted those cases were decided prior to the 2015 amendments to Rule 26. Following those amendments, "proportionality has taken on heightened significance," and Judge Cave's decision to set a reasonable limiting principle related to head coaches is consistent with Rule 26's requirement. *Elisa W. by Barricelli* v. *City of New York*, 2018 WL 6695278, at *2 (S.D.N.Y. Dec. 20, 2018). That Judge Cave might have found Flores's pre-amendment cases less persuasive was appropriate, not contrary to law, and consistent with the approach taken by other courts. *White* v. *Cnty. of Suffolk*, 2022 WL 1154839, at *4 (E.D.N.Y. Apr. 19, 2022) ("Plaintiff's reliance on [the cited case], where the Court found that twenty years of records was relevant, is misguided . . . [because it] was decided in 2006 before the amendment to Rule 26 commanding that proportionality be considered.").

## II. Denying Discovery into Incidents Involving Colin Kaepernick and Jon Gruden Was Not Clear Error

For the same reasons, Judge Cave did not err when denying discovery into incidents surrounding Colin Kaepernick and Jon Gruden. As Judge Cave explained, Mr. Kaepernick "was a player during the 2016–2017 season, not a head coach or head coach candidate, and the hiring cycles relevant to Plaintiffs' claims were in 2019 and after." Order 16. Likewise, Mr. Gruden made "offensive statements [] when he was not an NFL coach, and while they apparently came to light when he was a head coach of the Raiders in 2021, he resigned and there are no allegations that the Raiders' head-coach hiring processes involved racial discrimination." *Id.* Judge Cave therefore ruled that any "minimal relevance" these incidents have is outweighed by the burden of conducting discovery into them. *Id.*

Flores does not address Judge Cave's reasoning, but instead reasserts the same arguments as to relevance that Judge Cave considered and rejected, and which the NFL has addressed in

Section I. *See* Obj. 10. He provides the Court with no basis to find that Judge Cave's decision that this discovery is not proportional to the needs of the case was clear error or contrary to law.

### III. The Ordered Custodial Searches of the NFL's Commissioner and General Counsel Were Not Clear Error

Although Flores and the NFL agreed that four senior-level NFL employees were proper document custodians, the NFL refused to add as custodians Commissioner Goodell or Jeff Pash, the NFL's former General Counsel. Judge Cave compelled the NFL to do so, but determined that Commissioner Goodell's and Mr. Pash's files should only be searched narrowly for specific issues where they would be likely to have unique communications. Order 19–20. That approach was not clear error. *See Assured Guar. Mun. Corp.* v. *UBS Real Est. Sec. Inc.*, 2013 WL 1195545, at *3–*4 (S.D.N.Y. Mar. 25, 2013) (refusing to compel additional custodians who were unlikely to have unique, responsive documents); *Fort Worth Employees' Ret. Fund* v. *J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (refusing to compel additional custodians where custodians from the same business unit were already designated).

***Commissioner Goodell.*** Judge Cave delineated three issues for which Commissioner Goodell is a proper custodian: communications "with Mr. Flores, the Texans, or about this action"; "about the head coach hiring cycles in which Mr. Flores was a candidate"; and the arbitration (in light of Flores's newly-added claim that the Court-ordered arbitration constituted retaliation). Order 19–20. Flores sought to have Commissioner Goodell's files searched more broadly for all agreed-to or ordered discovery topics throughout the "entire class period." Obj. 7–9. But he makes no effort to explain why that expansion would be likely to uncover unique documents not otherwise covered by the NFL's other custodians, two of whom are Commissioner Goodell's direct reports. In fact, he makes no mention of these other custodians at all. Instead, Flores argues that Commissioner Goodell is a proper custodian because he needs contemporaneous evidence of what

he purports to be "Goodell's ongoing practices" for the purposes of his class claims and his claim for injunctive relief. *Id.* While Flores does not specify what "ongoing practices" he has in mind, he presumably is referring to certain NFL policies and procedures, including the Rooney Rule, which he previously argued (without evidence) that Commissioner Goodell, as the League's chief executive, "controls." ECF No. 336 at 3. Judge Cave rightly rejected that argument, as simply being the chief executive of an organization does not suffice to render an individual a proper custodian. *Blackrock Allocation Target Shares* v. *Bank of New York Mellon*, 2018 WL 2215510, at *12–*13 (S.D.N.Y. May 15, 2018) (refusing to compel senior executives as custodians who plaintiff alleged were "key decisionmakers" but had only "general knowledge" as compared to other custodians).

***Jeff Pash***. Judge Cave ordered that Mr. Pash's files be searched for his "communications with the Texans concerning this action after Mr. Flores filed it in 2022," and "concerning the 2022 head coach hiring process." Order 20. The Order was based upon a showing that Mr. Pash spoke orally to the Texans about their head coach hiring decision after Flores filed this lawsuit. Sept. 9 Tr. at 84:19–25, 85:1–4 ("[T]he reason . . . there was an independent basis to have Mr. Pash as a custodian is that . . . the Texans had disclosed that they had communicated with him. And so that was the scope of what I was focused on . . . there was a basis for thinking that those communications existed.").

Flores makes two arguments for additional discovery. First, he speculates that Mr. Pash "perhaps" communicated with others beyond the Texans about this lawsuit. Obj. 11. Judge Cave has already addressed that: she has ordered that if Flores learns of a basis to expand the scope of Mr. Pash's custodial search during the course of discovery, he is permitted to submit a renewed request. ECF No. 371 at 1. Second, Flores assumes Mr. Pash was "likely" involved in

administering the arbitration. Obj. 10–11. That is an argument Judge Cave found Flores abandoned at oral argument, Order 20, and is too speculative to be a basis to further expand Mr. Pash's custodial search, particularly when Commissioner Goodell's files will be searched for issues concerning the arbitration.

Flores otherwise focuses on whether Mr. Pash's communications are privileged. Obj. 11–12. While the NFL disputes Flores's arguments regarding privilege—as well as the fact that Flores apparently does not appreciate it would be extremely burdensome to do a significant review of a General Counsel's emails given privilege concerns—the fact that Mr. Pash's emails may or may not be privileged was not the basis for Judge Cave's Order. Flores has not demonstrated that Mr. Pash would have unique communications on issues beyond what has already been ordered, and therefore has not shown the ordered custodial search was clear error.

## **CONCLUSION**

Flores's Objection to Judge Cave's Order should be overruled.

Dated: New York, New York
September 25, 2026

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**

By: *_/s/ Loretta E. Lynch_*

Loretta E. Lynch
Brad S. Karp
Lynn B. Bayard
Daniel J. Toal
Brette Tannenbaum
B. Aubrey Smith
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3900
lelynch@paulweiss.com
bkarp@paulweiss.com
lbayard@paulweiss.com
dtoal@paulweiss.com
btannenbaum@paulweiss.com
asmith@paulweiss.com

*Attorneys for Defendant the National Football League*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Opposition to Plaintiff' s Rule 72(a) Objections complies with the requirements of Local Civil Rule 7.1(c) for the United States District Courts for the Eastern and Southern Districts of New York. According to the word processing system used to prepare this Memorandum of Law, the total word count for all printed text, exclusive of the material omitted under Local Civil Rule 7.1(c), is 3,500 words.

*/s/ Loretta E. Lynch*
Loretta E. Lynch